**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 3 2026

CLERK, U.S. DISTRICT COURT
By: _____
Deputy

| | |
|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § § § |
| Plaintiff, *Pro Se,* | § § |
| v. | § § |
| **JPMORGAN CHASE BANK, N.A.,** **JPMORGAN CHASE & CO., and** **J.P. MORGAN SECURITIES LLC,** | § § § § |
| Defendants. | § § |

Case No. **4-26CV-950-P**

FINRA Case No. 24-01208
EEOC Charge No. 450-2024-04743
AAA Case No. 01-26-0000-7215

**JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Joshua David Sappi Biering, appearing *pro se*, files this Original Complaint against Defendants JPMorgan Chase Bank, N.A. ("JPM Bank" or "Private Bank"), JPMorgan Chase & Co. ("JPMC"), and J.P. Morgan Securities LLC ("JPMS").

Plaintiff alleges as follows:

## I.    NATURE OF THE ACTION

1. This action concerns statutory employment claims and related Texas tort and contract claims that no arbitral or judicial forum has adjudicated, together with Plaintiff's election under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401–402, to have this case determined in court.

2. Defendants investigated and acted against Plaintiff in a matter they opened and conducted as a sexual-harassment matter and characterized internally, at a senior Human Resources level, as a serious allegation of sexual assault. Plaintiff alleges that Defendants' creation, circulation, and use of that characterization resulted in sex-based discrimination and harassment under applicable law.

3. Plaintiff elects under 9 U.S.C. § 402(a) that no predispute arbitration agreement is valid or enforceable with respect to this case. Under 9 U.S.C. § 402(b), the applicability of Chapter 4 and the validity and enforceability of the asserted agreements are questions for this Court, irrespective of any delegation clause.

4. Plaintiff previously filed FINRA Case No. 24-01208 against JPMS, JPM Bank, and JPMC. The original pleading included statutory employment-discrimination, harassment, retaliation, leave-related, tort, and contractual claims arising from Plaintiff's employment, investigation, termination, and Form U5.

5. JPMS declined in writing to consent to FINRA arbitration of the statutory employment claims. JPM Bank and JPMC did not execute FINRA Submission Agreements and did not voluntarily submit to FINRA jurisdiction. FINRA thereafter directed Plaintiff to remove the statutory employment claims before the operative Statement of Claim was filed.

6. The resulting arbitration proceeded on twelve submitted common-law and contract claims against JPMS alone. Those claims arose from or were associated with JPMS's functions as Plaintiff's broker-dealer, registration sponsor, Form U4 custodian, Form U5 filer, and regulatory-reporting entity.

7. The panel heard evidence concerning Plaintiff's employment, investigation, resignation, termination, and Form U5 because those facts were relevant to the submitted claims against JPMS.

8. JPMS represented in that proceeding that it was not Plaintiff's employer and that JPM Bank employed Plaintiff. The employment, human-resources, leave, accommodation, compensation, notice-period, and separation functions on which the claims pleaded here depend were not JPMS functions.

9. The panel adjudicated the twelve submitted claims against JPMS. It did not adjudicate the statutory employment claims pleaded in this Complaint. It stated twice that it made no determination with respect to the claims against JPM Bank or JPMC.

10. No forum has adjudicated the employment, compensation, leave, accommodation, notice-period, tort, or contractual obligations attributable to JPM Bank or JPMC, as to which the panel made no determination.

11. Plaintiff does not seek to vacate, modify, relitigate, or disturb the confirmed Award or the twelve submitted claims adjudicated against JPMS.

12. The panel found that the Form U5 filed by JPMS was inaccurate and that one of the primary reasons for its timing was to hinder Plaintiff's ability to transfer his client book to a competitor. It ordered JPMS to amend the Form U5 to state "Voluntary," to delete the termination explanation, and to change the termination date to October 28, 2023.

13. This Court confirmed the Award and entered final judgment on July 31, 2026. Biering v. J.P. Morgan Securities LLC, No. 4:26-cv-00381-O-BP (N.D. Tex.) (Dkt. 54, 55). Plaintiff thereafter submitted the confirmed Award, the confirmation order, the final judgment, and the ordered Form U5 language to FINRA for execution against his Central Registration Depository record.

14. The corrective Form U5 relief does not adjudicate or compensate Plaintiff for the unadjudicated statutory, tort, contractual, and Defendant-specific injuries alleged in this action.

15. Plaintiff asserts claims under the Texas Commission on Human Rights Act, Tex. Lab. Code ch. 21, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654, together with related Texas tort and contract claims. Plaintiff's statutory employment claims arise principally from his employment by JPM Bank in the Private Bank. His tort and contract claims against JPM Bank and JPMC arise from conduct attributable to those entities and their personnel. JPMS is named only on claims and theories not foreclosed by the confirmed Award.

16. Plaintiff asserts and preserves his rights under Article III of the Constitution and the Seventh Amendment as to claims and issues triable in court. Cf. Smith v. SEC, No. 24-

3907, slip op. at 8–17 (6th Cir. Mar. 27, 2026) (declining to reach Article III and Seventh Amendment challenges to securities-industry adjudication because they had not been raised in the prior proceeding).

17. If the Court determines that any claim must be arbitrated, Plaintiff alternatively requests that only those claims be compelled and that this action be stayed under 9 U.S.C. § 3 rather than dismissed, with any arbitrable claims proceeding through the existing protective AAA matter.

## II.   PARTIES AND SERVICE

18. Plaintiff Joshua David Sappi Biering is an individual and a citizen of Texas residing in Fort Worth, Tarrant County, Texas.

19. Plaintiff is a former Captain in the United States Army. He is a graduate of the United States Military Academy at West Point and holds a Master of Business Administration from Southern Methodist University. He served in Afghanistan in support of Operation Enduring Freedom, received the Bronze Star Medal, and is a service-connected disabled veteran recognized by the United States Department of Veterans Affairs.

20. Plaintiff is a dual citizen of the United States and Brazil and is Brazilian-American.

21. Plaintiff held securities registrations through JPMS under CRD No. 6883842. He is presently employed by Raymond James & Associates, Inc. as a Senior Vice President, Wealth Management.

22. Defendant JPMorgan Chase Bank, N.A. is a national banking association whose articles of association designate a main office in Columbus, Ohio. JPM Bank directly employed Plaintiff and administered his employment in the Private Bank. JPM Bank is the counterparty identified in the Binding Arbitration Agreement executed in connection with Plaintiff's employment and is the respondent named in Plaintiff's administrative charge of discrimination.

4

23. Defendant JPMorgan Chase & Co. is a Delaware corporation with its principal place of business in New York, New York. JPMC is the ultimate parent of JPM Bank and JPMS and maintained the centralized functions described in Section IV.

24. Defendant J.P. Morgan Securities LLC is a Delaware limited liability company and a FINRA member broker-dealer, CRD No. 79. JPMS sponsored Plaintiff's securities registrations, maintained his Form U4, and filed and controlled the correction of the Form U5 at issue. On information and belief, no member of JPMS is a citizen of Texas.

25. Each Defendant may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

26. Plaintiff attributes conduct to each Defendant only as specifically alleged.

## III.    JURISDICTION AND VENUE

27. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Counts VIII and IX arise under the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654.

28. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining claims. Those claims arise from the same employment relationship, requests for leave and accommodation, investigative matters, resignation, termination, regulatory filing, and resulting injuries as the federal claims, and form part of the same case or controversy.

29. Count I seeks declaratory relief under 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57. Count I rests on the jurisdictional bases alleged in this Section and not on the Federal Arbitration Act as an independent source of federal jurisdiction.

30. In the alternative, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of Texas. JPM Bank is a citizen of the State in which its articles of association designate its main office. JPMC is a citizen of Delaware and New York. On information and belief, no member of JPMS is a citizen of Texas. The amount in controversy exceeds $75,000, exclusive of interest and costs.

31. Each Defendant is subject to personal jurisdiction in Texas because the employment, investigation, termination, regulatory reporting, interference, and resulting injuries alleged below were directed at Plaintiff in Texas.

32. Venue is proper under 28 U.S.C. § 1391(b)(2). Plaintiff performed his employment duties for the Private Bank from its Fort Worth office, and a substantial part of the events giving rise to this action occurred in Fort Worth, Tarrant County, Texas.

33. This action is related to Biering v. J.P. Morgan Securities LLC, No. 4:26-cv-00381-O-BP (N.D. Tex.). The notice required by Local Civil Rule 3.3 accompanies this Complaint.

## IV.   THE DEFENDANTS' RESPECTIVE FUNCTIONS

34. JPM Bank employed Plaintiff and administered his payroll, benefits, personnel records, leave requests, accommodation requests, incentive compensation, notice period, and separation from the Private Bank.

35. JPMS sponsored Plaintiff's securities registrations, maintained his Form U4, and controlled the filing and correction of his Form U5. JPMS did not administer Plaintiff's employment, leave, accommodation, or compensation.

36. JPMC maintained or controlled centralized human-resources, Employee Relations, Global Security, legal, compliance, compensation, and employment-policy functions used by JPM Bank and JPMS. Personnel assigned to those functions received the allegations concerning Plaintiff, opened and conducted the investigative matters, recommended the disposition, determined compensation treatment, approved or executed the termination, and supplied or approved the information used in the Form U5.

37. Defendants operated under common policies, including a Code of Conduct, an Anti-Harassment policy, a disability-accommodation process, and an FMLA policy. Defendants' records and personnel did not consistently distinguish among JPM Bank, JPMC, JPMS, and the Private Bank when administering Plaintiff's employment and separation. Personnel who participated in the matter signed communications as JPMorgan Chase & Co.

38. Plaintiff pleads that JPM Bank was his direct employer. He pleads agency, ratification, joint-employer, and integrated-employer responsibility only to the extent supported by each Defendant's participation in or control over the conduct alleged below. Plaintiff does not plead alter ego or veil piercing. The allegations in this Section concern statutory employment responsibility and agency; they are not allegations of contractual identity, arbitral consent, privity, or preclusion.

## V.   FACTUAL ALLEGATIONS

### A.  A. Employment, Production, and Recognition

39. Plaintiff joined the J.P. Morgan enterprise in approximately February 2016 and rose to Executive Director and Private Banker in the Private Bank in Fort Worth, Texas. He was qualified for his position.

40. Near the end of his employment Plaintiff managed approximately $1 billion in client assets. Defendants' 2023 performance records reflected approximately $5.433 million in annualized risk-adjusted revenue associated with his practice, and other contemporaneous records reflected approximately $5.8 million in total annualized revenue.

41. Plaintiff achieved approximately 14 percent year-over-year revenue growth, compared with approximately 8 percent for the Fort Worth market and approximately 6 percent for the broader Private Bank. His growth accounted for approximately 21.34 percent of the total revenue growth generated by the seventeen-advisor Fort Worth team. His contemporaneous scorecard reflected approximately 233 percent new-client-growth attainment.

42. During arbitration discovery Defendants produced a version of the 2023 scorecard from which the section reporting new-client growth was absent. A fuller version was produced only after compelled production. Plaintiff alleges this fact as relevant to performance, pretext, and his discovery of the facts underlying his claims, and not as an independent cause of action.

7

43. Plaintiff carried a substantial pipeline of completed and pending transactions, prospective liquidity events, and new-client opportunities. His closed-transaction pipeline during 2023 exceeded $1 billion in aggregate transaction value.

44. Defendants recognized Plaintiff as a Gold Producer during a United States Private Bank national town hall on October 23, 2023.

45. Plaintiff's annual performance reviews during his employment did not record adverse conduct findings. Defendants' October 27, 2023 Employee Relations opening memorandum recorded that, apart from a separate Global Security matter, Plaintiff "has no notable conduct or performance history." (CX-129; JPMS_00029307.)

### B. Disability, Accommodation, and Protected Leave

46. Plaintiff has a disability within the meaning of Tex. Lab. Code ch. 21. His disability is service-connected and recognized by the United States Department of Veterans Affairs.

47. Defendants knew of Plaintiff's disability. His registration record contained financial-disclosure entries arising from a student-loan discharge based on total and permanent disability. A JPMS compliance witness later acknowledged that aspects of those disability-related disclosures had been filed or categorized incorrectly.

48. On or about March 30, 2023, Plaintiff communicated with management concerning leave associated with the impending birth of his child.

49. Management and Human Resources advised Plaintiff that taking FMLA leave would prohibit him from communicating with clients. Defendants did not offer an adequate coverage plan for his clients, pending transactions, liquidity events, or new-business pipeline during any leave.

50. At that time Plaintiff had substantial client transactions, liquidity events, and new business pending. Because no workable coverage solution was provided and because management discouraged the leave, Plaintiff took approximately four days of leave around the birth of his child. He continued working on and closing client transactions during that

period. Defendants accepted and retained the revenue and other benefits generated by that work.

51. On information and belief, employees outside Plaintiff's protected classes were permitted greater discretion concerning client contact while on leave.

52. Plaintiff's health and disability needs increased after multiple unanswered requests for support and assitance. On September 7, 2023, Plaintiff wrote to his manager: "I don't like the emotional state I'm in. We need to figure something out." (CX-025; BIERING_0001779.) On September 14, 2023, Plaintiff wrote to a Human Resources representative requesting contact with the firm's EAP resource. On or about October 6, 2023, Plaintiff again contacted Human Resources concerning his health, expressly raised FMLA leave for his own serious health condition, and requested reasonable accommodation. That request concerned Plaintiff's own health condition and was distinct from his earlier parental-leave discussions.

53. JPM Bank did not grant the requested leave and did not provide an accommodation. It did not conduct a meaningful interactive process or propose an effective alternative. It did not provide an FMLA eligibility notice, a rights-and-responsibilities notice, or a designation notice, and it did not request medical certification and make a determination after reviewing it.

54. Defendants' own records reflect knowledge of Plaintiff's health condition. On October 27, 2023, Plaintiff's manager wrote that he "relayed the number to EAP." (CX-127; JPMS_00023389.) On November 7, 2023, Defendants' investigator recorded that Plaintiff "said 'Spring Health is great' and is already utilizing it." (CX-120; JPMS_00001276.)

55. On multiple occasions Plaintiff told his managers, including the Fort Worth market manager, that he believed he was being treated differently because of his disability and his military background.

## C. The Dallas Comparator

56. On information and belief, during the relevant period a non-Brazilian, non-disabled male employee in a comparable senior position in the Dallas office engaged in materially the same consensual conduct involving a female colleague. On information and belief, that employee was not subjected to comparable investigation, discipline, termination, compensation loss, or regulatory reporting, and was promoted. He was subject to the same promotion metrics and the same annual discretionary compensation pool as Plaintiff, and were similarly situated at all relevant times.

57. The Dallas comparator is not the female participant in the conduct involving Plaintiff. Plaintiff does not identify the Dallas comparator by name in this Complaint because his identity is unnecessary to provide notice of the claims and may be addressed through discovery and an appropriate protective order. Plaintiff identified the comparator in his charge of discrimination and in his September 19, 2024 response to Defendants' administrative position statement.

## D. The Anticipated Transition to Merrill Lynch

58. By October 2023, Plaintiff was in discussions with Merrill Lynch, a Tier One competitor, concerning a position that would have allowed him to continue serving his clients through another major financial institution. The discussions progressed beyond preliminary inquiry and included substantive meetings, diligence, pre-onboarding activity, and transition planning.

59. On October 17, 2023, Plaintiff met with Merrill Lynch personnel concerning the anticipated position. On or about October 24, 2023, Plaintiff verbally advised supervisors that he intended to resign, subject to guidance concerning the notice period, compensation, and transition treatment. Defendants knew that Plaintiff intended to join a competitor and to attempt to transfer client relationships to that platform.

### E. Three Investigative Tracks

60. After learning that Plaintiff was considering a move to a competitor, Defendants opened or maintained three investigative tracks concerning him: an HR Talent Management matter concerning expenses, opened or initiated on or about October 17, 2023; a Global Security expense investigation opened on October 23, 2023; and an Employee Relations Rapid Response matter opened on October 26, 2023.

61. The panel later found that, after learning Plaintiff was contemplating resignation and work for a competitor, Respondent "began investigating reasons to terminate Claimant so as to make it more difficult for Claimant to go to work with a competitor."

62. Coordination between Plaintiff's manager and Human Resources concerning Plaintiff began no later than approximately October 9, 2023.

63. On October 17, 2023, the same date as Plaintiff's Merrill Lynch meeting, management opened or initiated the HR Talent Management matter concerning Plaintiff's expenses. Plaintiff had submitted the expense report at issue on October 2, 2023. It was approved immediately upon submission and covered expenses incurred between August 31 and September 17, 2023.

64. On October 23, 2023, the same day Plaintiff received Gold Producer recognition, Global Security opened a formal expense investigation. On October 25, 2023, Plaintiff's manager supplied or directed additional expense allegations to the Global Security investigator.

65. On October 24, 2023, Plaintiff's manager reported the resignation internally, and a Human Resources representative responded that "anything to help move this forward" would be appreciated. Internal communications from that period also discussed whether Defendants could "fall back on performance."

66. On October 26, 2023, at approximately 1:05 p.m., Plaintiff sent a routine paid-time-off communication to his manager while awaiting guidance concerning his resignation

11

and notice period. Approximately twenty-nine minutes later, Employee Relations opened a Rapid Response matter identifying Plaintiff as the subject.

67. The female employee did not submit the Employee Relations intake herself. On information and belief, based on the record produced in the FINRA proceeding, the report was conveyed by management. Management submitted the intake and designated Plaintiff as the subject. The intake stated that management believed Plaintiff may have made inappropriate sexual advances toward a female analyst.

68. Defendants' peer comparison reflected similar expense patterns and no extreme differences between Plaintiff and the comparison employees. The expense inquiry originated with the supervisor to whom Plaintiff had communicated his intent to resign and was the first expense-policy inquiry ever submitted concerning Plaintiff. The expense track later closed as "Not Supported."

## F. Administrative Leave and the Sexualized Characterization

69. On October 27, 2023, Plaintiff attended scheduled pre-onboarding or transition meetings with Merrill Lynch. Defendants accessed or reviewed Plaintiff's calendar during the period surrounding those meetings.

70. On October 27, 2023, a senior Human Resources executive wrote internally to Employee Relations leadership that Defendants had learned of "a very serious allegation of sexual assault by the male subject towards a female employee." The communication recommended placing Plaintiff on paid administrative leave. Plaintiff was not a recipient of that communication and was not told that the characterization had been made.

71. No investigator ultimately adopted a finding of sexual assault. Defendants' opening Employee Relations memorandum the same day described the matter as an allegation that the complainant "has been sexually harassed." (CX-129; JPMS_00029307.) Defendants' closing memorandum of November 30, 2023 recorded a violation of the "Code of Conduct and Anti-Harassment policy." (CX-172; JPMS_00029313.) Defendants did not

12

produce a contemporaneous correction or withdrawal of the sexual-assault characterization from the records circulated to the personnel who decided Plaintiff's employment.

72. Later on October 27, 2023, Defendants placed Plaintiff on paid administrative leave. Defendants did not tell Plaintiff the substance of the claim asserted against him. The panel found that Plaintiff was placed on administrative leave without being informed of the claim asserted against him. At 4:51 p.m. that day Plaintiff wrote to Human Resources requesting guidance.

73. Plaintiff disputes the underlying allegations and alleges that the interaction was consensual and reciprocal. Defendants treated Plaintiff as the subject and the female participant as the complaining employee. Defendants did not subject the female participant to comparable investigation or discipline. On information and belief, the female participant received favorable employment treatment during or after the same period.

74. On or about October 27, 2023, JPMC's Global Head of Human Resources stated internally that she was "hoping to wrap" the matter "with a term."

**G. Resignation, Notice Period, and Disposition**

75. On October 28, 2023, Plaintiff submitted his written resignation. Defendants' system recorded the separation as voluntary, with a last-worked date of October 28, 2023. Defendants' notice-period arrangement continued Plaintiff's employment for approximately sixty days unless Defendants ended the relationship earlier. Defendants identified December 26, 2023 as the scheduled end of the notice period.

76. The Award stated that the employer was within its rights to end Plaintiff's employment during the notice period. Plaintiff does not seek in this Complaint to relitigate that submitted issue as adjudicated against JPMS. Plaintiff alleges that the Award's recital concerning the employer's rights does not adjudicate the statutory employment claims removed from FINRA or the claims against JPM Bank and JPMC, as to which the panel

made no determination. JPMS was the FINRA member and Form U5 filer. JPM Bank was Plaintiff's employer of record. The Award and the related record distinguish those functions.

77. On October 29, 2023, Defendants circulated an email titled "Urgent Request: Josh Biering Book" concerning retention or redistribution of Plaintiff's client relationships.

78. Before the Employee Relations closing memorandum issued, Defendants had already recorded or prepared termination-related disposition information. On November 16, 2023, before the investigations closed and before Plaintiff was terminated, Defendants determined that Plaintiff would receive zero incentive compensation.

79. On December 1, 2023, during the notice period, Defendants terminated Plaintiff's employment, stating a violation of the Code of Conduct and the anti-harassment policy as the basis.

80. On December 7, 2023, Plaintiff submitted a retaliation complaint through Defendants' Code of Conduct reporting line. That complaint was routed to the same Head of Human Resources for the U.S. Private Bank who had participated in the October 27, 2023 communications.

81. Between December 6 and December 20, 2023, Plaintiff objected in writing to any Form U5 marked "Discharged" and requested the voluntary marking corresponding to his October 28, 2023 resignation.

82. On December 22, 2023, JPMS filed a Form U5 for Plaintiff marked "Discharged." The Termination Explanation read: "After RR submitted resignation, but before expiration of Notice Period, RR was terminated for inappropriate behavior. Not related to the sale of securities or any customer complaints."

83. Defendants characterized the same underlying events differently to different audiences over time. Internally on October 27, 2023, Human Resources described "a very serious allegation of sexual assault." The termination basis stated on December 1, 2023 was

a violation of the Code of Conduct and the anti-harassment policy. The Form U5 published on December 22, 2023 used the phrase "inappropriate behavior."

### H. Effect on Transition and Forum History

84. After the discharge-marked U5 was filed on December 22, 2023, Merrill Lynch did not proceed with the signed onboarding. The reason given was the U5 and its timing.

85. On February 25, 2024, Plaintiff filed EEOC Charge No. 450-2024-04743, dual-filed with the Texas Workforce Commission Civil Rights Division, against JPM Bank. The charge identified the protected classifications and conduct pleaded in this Complaint.

86. On June 3, 2024, Plaintiff filed FINRA No. 24-01208 against all three Defendants. FINRA later required removal of the statutory employment claims. On October 11, 2024, under protest and reserving the removed claims, Plaintiff filed the operative Second Amended Statement of Claim.

87. On December 29, 2025, the panel served its Award. On February 10, 2026, Plaintiff filed a protective Statement of Claim in AAA Case No. 01-26-0000-7215, with express reservations of arbitrability, the EFAA election, and the judicial forum. On March 30, 2026, Plaintiff petitioned this Court on the Award. On July 31, 2026, this Court confirmed the Award and entered final judgment. (Dkt. 54, 55.) That judgment did not adjudicate the merits of the claims pleaded here.

## VI.   EXHAUSTION, CONDITIONS PRECEDENT, AND TIMELINESS

88. All conditions precedent to this action have been performed or have occurred.

89. Plaintiff exhausted his administrative remedies as to the TCHRA claims through the February 25, 2024 charge described above, which named JPM Bank and identified the protected classifications and conduct pleaded here.

90. The Texas Workforce Commission has not issued Plaintiff a notice of his right to file a civil action under Tex. Lab. Code § 21.252. The sixty-day period measured from receipt of such a notice has therefore not begun.

91. The Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights. Plaintiff pleads the TCHRA as the operative discrimination statute and pleads no separate Title VII or ADA counts in this Complaint.

92. Plaintiff submitted the dispute to arbitration as the Binding Arbitration Agreement required, thereby exhausting the arbitral process with respect to the claims that remained after the statutory claims were removed. He does not consent to remand to a second arbitral forum.

93. Before pursuing arbitration, Plaintiff used Defendants' internal human-resources portal to request guidance, personnel records, correction, and the operative notice-period terms. Defendants denied the personnel-file request on December 22, 2023 and directed him to subpoena records from separate entities.

94. Plaintiff submitted an internal retaliation complaint through Defendants' Conduct Hotline on December 7, 2023. The record does not reflect that the complaint remained with an external channel or that any independent determination was made before the Form U5 was filed.

95. All claims pleaded in this Complaint are timely. To the extent any limitations period is asserted, Plaintiff invokes equitable tolling, equitable estoppel, FINRA Rule 13206(c), the discovery rule where applicable, continuous pursuit, contractual preservation, and all other applicable statutory, contractual, and equitable tolling provisions.

96. Plaintiff asserted the statutory employment claims in FINRA on June 3, 2024, before the unadjusted TCHRA period expired, and FINRA retained them until directing their removal. Plaintiff filed the protective AAA demand on February 10, 2026, before the second anniversary of his administrative charge, and thereafter identified and preserved the claims in the related federal action. Defendants represented that another forum remained available and stipulated to the abeyance. Plaintiff acted diligently and did not abandon the claims.

97. The FMLA claims allege willful violations and are brought within the three-year period applicable to willful violations under 29 U.S.C. § 2617(c)(2). Plaintiff alleges willfulness because responsible management and Human Resources personnel knew he had invoked FMLA leave, maintained and administered an FMLA policy, and nevertheless failed to process the request, issue required notices, determine eligibility, or grant qualifying leave.

98. Plaintiff discovered material internal communications supporting the fraud and concealment allegations only through compelled arbitration production in 2025. The fraud and contract claims are brought within their applicable four-year periods.

## VII.　CAUSES OF ACTION

### COUNT I — Declaratory Relief — EFAA Election (9 U.S.C. §§ 401–02; 28 U.S.C. §§ 2201–02) — All Defendants

99. Plaintiff incorporates paragraphs 1 through 98.

100. An actual controversy exists concerning whether Defendants may compel arbitration under the Binding Arbitration Agreement, Plaintiff's Form U4, or another predispute arbitration agreement.

101. This case is filed under federal and state law and relates to a sexual-harassment dispute within the meaning of 9 U.S.C. § 401(4). Plaintiff is a person alleging conduct constituting such a dispute and has made the election authorized by 9 U.S.C. § 402(a).

102. Under 9 U.S.C. § 402(b), the applicability of Chapter 4 and the validity and enforceability of the relevant agreements must be determined by this Court, irrespective of any delegation clause.

103. Plaintiff's protective AAA filing waived no right and did not constitute a post-dispute agreement to arbitrate.

104. In the alternative, Defendants waived, or are equitably estopped from enforcing, compulsory arbitration through their prior forum positions and conduct.

105. In the further alternative, any Defendant invoking the Binding Arbitration Agreement is bound by the corresponding obligations, limitations, and protections contained in that agreement.

106. Plaintiff asserts and preserves his rights under Article III of the Constitution and the Seventh Amendment as to claims and issues triable in court.

107. Pending determination of Count I, Plaintiff requests maintenance of the existing AAA abeyance or such temporary stay as is necessary to permit this Court to decide the questions assigned to it by 9 U.S.C. § 402(b).

108. If the Court determines that one or more claims must be arbitrated, Plaintiff requests that only those claims be compelled and that this action be stayed under 9 U.S.C. § 3 rather than dismissed. See Smith v. Spizzirri, 601 U.S. 472, 475–79 (2024).

109. Plaintiff further requests that any arbitration proceed, to the extent consistent with the governing agreement and AAA administration, through existing AAA Case No. 01-26-0000-7215 or its administrative successor.

110. Plaintiff's alternative request for a stay or participation in arbitration does not concede arbitrability, withdraw his election, waive his objections, or consent to arbitral determination of questions assigned to the Court by 9 U.S.C. § 402(b).

**COUNT II — Sex Discrimination (Tex. Lab. Code § 21.051) — All Defendants**

111. Plaintiff incorporates paragraphs 1 through 98.

112. Plaintiff is a member of a protected class on the basis of sex. Plaintiff was qualified for his position.

113. Defendants subjected Plaintiff to adverse employment actions, including involuntary administrative leave, loss of incentive compensation, termination during the notice period, and the filing of a Form U5 marked "Discharged."

18

114. Defendants treated Plaintiff less favorably than the other participant in the same facially consensual conduct, who is of a different sex. Defendants investigated Plaintiff and did not investigate the other participant. Defendants disciplined Plaintiff and did not discipline the other participant.

115. Sex was a motivating factor in the adverse employment actions. Defendants' stated reasons changed over time and are false. The expense-report inquiry was closed as "Not Supported."

116. Plaintiff exhausted his administrative remedies. This Count is timely. Plaintiff seeks the remedies available under Tex. Lab. Code §§ 21.258 and 21.2585, and fees and costs as § 21.259 allows.

### COUNT III — Sexual Harassment and Hostile Work Environment (Tex. Lab. Code §§ 21.051, 21.141–.142) — All Defendants

117. Plaintiff incorporates paragraphs 1 through 98.

118. Plaintiff was subjected to unwelcome harassment consisting of the false sexualized characterization of his conduct.

119. The harassment was based on sex. It attributed to Plaintiff predatory sexual misconduct. The other participant in the same conduct, who is of a different sex, was not so characterized, investigated, or disciplined.

120. The harassment was severe or pervasive. It began with the intake of October 26, 2023, was repeated in internal Human Resources communications to the decision-makers on October 27, 2023, and was adopted at the disposition and in the Form U5. It reached Plaintiff's colleagues, clients, industry contacts, and family members.

121. The harassment affected a term, condition, or privilege of Plaintiff's employment. Plaintiff was placed on involuntary administrative leave, was excluded from client contact, and was terminated.

122. The harassment is attributable to Defendants. It was originated by a senior Bank Human Resources executive, was circulated by Human Resources to Employee Relations leadership, and was adopted at disposition. Defendants knew of the characterization and took no corrective action.

123. Plaintiff exhausted his administrative remedies. This Count is timely. Plaintiff seeks the remedies identified in paragraph 116.

## COUNT IV — National Origin Discrimination (Tex. Lab. Code § 21.051) — All Defendants

124. Plaintiff incorporates paragraphs 1 through 98.

125. Plaintiff is Brazilian-American and is within a class protected against discrimination because of national origin. He identified national origin among the bases in his charge of discrimination and was qualified for his position.

126. Defendants subjected Plaintiff to the adverse employment actions described above. The Dallas comparator is non-Brazilian, held a comparable senior position, and was not subjected to comparable consequences for materially the same consensual conduct.

127. National origin was a motivating factor. Plaintiff exhausted his administrative remedies. This Count is timely. Plaintiff seeks the remedies identified in paragraph 116.

## COUNT V — Disability Discrimination (Tex. Lab. Code § 21.051) — All Defendants

128. Plaintiff incorporates paragraphs 1 through 98.

129. Plaintiff has a disability within the meaning of Tex. Lab. Code ch. 21 and was qualified to perform the essential functions of his position.

130. Defendants knew of Plaintiff's disability. Plaintiff disclosed it to his management and to Human Resources on September 7, September 14, and October 6, 2023.

131. Defendants subjected Plaintiff to the adverse employment actions alleged above, each within weeks of the disclosures and requests.

20

132. Disability was a motivating factor in those actions. The management and human-resources personnel who received Plaintiff's 2023 disclosures and requests are the same personnel who opened the escalation, decided the disposition, and executed the termination.

133. Plaintiff exhausted his administrative remedies. This Count is timely. Plaintiff seeks the remedies identified in paragraph 116.

### COUNT VI — Failure to Accommodate (Tex. Lab. Code §§ 21.051, 21.128) — All Defendants

134. Plaintiff incorporates paragraphs 1 through 98.

135. Plaintiff has a disability, Defendants knew of it, and Plaintiff was qualified to perform the essential functions of his position with reasonable accommodation.

136. Plaintiff requested reasonable workplace accommodations on September 7 and September 14, 2023, and requested FMLA leave for his own serious health condition on October 6, 2023.

137. Defendants did not provide any accommodation and did not engage in an interactive process.

138. Defendants cannot establish that the requested accommodation would have imposed an undue hardship.

139. Defendants' failure to accommodate caused Plaintiff injury. Plaintiff exhausted his administrative remedies. This Count is timely. Plaintiff seeks the remedies identified in paragraph 116.

### COUNT VII — Retaliation (Tex. Lab. Code § 21.055) — All Defendants

140. Plaintiff incorporates paragraphs 1 through 98.

141. Plaintiff engaged in activity protected by Tex. Lab. Code ch. 21: his requests for disability accommodation on September 7, September 14, and October 6, 2023; his complaint of retaliation submitted through Defendants' Code of Conduct reporting line on December 7, 2023; and his EEOC and Texas Workforce Commission charge filed February 25, 2024.

21

142. Defendants took materially adverse actions after each protected activity. The escalation opened within three weeks of the October 6, 2023 request. The termination was executed December 1, 2023. The Form U5 marked "Discharged" was filed December 22, 2023, fifteen days after the Code of Conduct complaint.

143. But for Plaintiff's protected activity, Defendants would not have taken those actions when and as they did.

144. Plaintiff exhausted his administrative remedies. This Count is timely. Plaintiff seeks the remedies identified in paragraph 116.

### COUNT VIII — FMLA Interference (29 U.S.C. §§ 2615(a)(1), 2617) — All Defendants

145. Plaintiff incorporates paragraphs 1 through 98.

146. Defendants are covered employers. Plaintiff was an eligible employee. He was employed for more than twelve months and worked more than 1,250 hours during the twelve months preceding his requests.

147. Plaintiff was entitled to leave under the FMLA for the birth of his child and for his own serious health condition. Plaintiff gave notice of his need for leave, including the September 7 and September 14, 2023 communications concerning his health, and the October 6, 2023 FMLA request for his own serious health condition.

148. Defendants interfered with, restrained, and denied the exercise of FMLA rights. They conditioned FMLA leave on a client-contact ban, failed to grant the October 6, 2023 health-based FMLA request, and never ran an interactive or leave-approval process.

149. Plaintiff was prejudiced. He shortened parental leave, deferred and then was denied health-based leave and accommodations, and continued working through deteriorating health while Defendants retained the revenue from his production.

150. Defendants' violations were willful. This Count is timely under the three-year period of 29 U.S.C. § 2617(c)(2). Plaintiff seeks the remedies provided by § 2617.

22

## COUNT IX — FMLA Retaliation (29 U.S.C. §§ 2615(a)(2), 2617) — All Defendants

151. Plaintiff incorporates paragraphs 1 through 98.

152. Plaintiff engaged in activity protected by the FMLA through the leave requests and inquiries alleged above. Defendants' management and human-resources personnel had direct knowledge of that activity.

153. Defendants took materially adverse actions against Plaintiff. The escalation opened within three weeks of the October 6, 2023 request and within weeks of the September 2023 health communications.

154. But for Plaintiff's protected activity, Defendants would not have taken those actions when and as they did.

155. Defendants' violations were willful. This Count is timely. Plaintiff seeks the remedies identified in paragraph 150.

## COUNT X — Tortious Interference with Prospective Business Relations — JPM Bank and JPMC

156. Plaintiff incorporates paragraphs 1 through 98. This Count is pleaded against JPM Bank and JPMC only and does not re-plead any claim decided as to JPMS.

157. There was a reasonable probability that Plaintiff would have entered into employment with Merrill Lynch and transferred specific client relationships. JPM Bank and JPMC knew of those prospective relationships.

158. JPM Bank and JPMC intentionally interfered with those relationships through independently tortious or unlawful conduct, including the statutory violations pleaded in Counts II through IX and the publication of a Form U5 that a confirmed arbitration award has found inaccurate.

159. The interference caused Plaintiff injury. Merrill Lynch did not proceed with the signed onboarding after the Form U5 was filed. Plaintiff's clients were retained by

23

Defendants. Plaintiff's client-transfer rate was approximately 35 percent against an 80 to 90 percent benchmark.

160. This Count is timely.

**COUNT XI — Fraud and Fraudulent Nondisclosure — JPM Bank and JPMC**

161. Plaintiff incorporates paragraphs 1 through 98. This Count is pleaded against JPM Bank and JPMC only.

162. Between October 28 and December 1, 2023, JPM Bank and JPMC personnel administering Plaintiff's separation represented to Plaintiff that his October 28, 2023 resignation was accepted and that the notice period was being administered in the ordinary course through December 26, 2023.

163. Those representations were material and false when made. Before the Employee Relations closing memorandum issued, Defendants had already recorded or prepared termination-related disposition information. By November 16, 2023, Defendants had determined that Plaintiff would receive zero incentive compensation.

164. JPM Bank and JPMC concealed those facts. The facts were within their exclusive knowledge. Having spoken to Plaintiff about the status of his separation, they had a duty to disclose them.

165. Plaintiff relied on the representations. He remained employed through the notice period, deferred the mechanics of his transition, and did not take protective steps otherwise available to him consistent with his notice-period obligations.

166. Plaintiff's reliance was justifiable and caused him injury. The Form U5 published during his transition, and Merrill Lynch did not proceed.

167. Plaintiff did not discover and could not reasonably have discovered the concealed facts before 2025. The proof lay in Defendants' internal communications, which were produced only under motions to compel. This Count is timely within four years.

## COUNT XII — Breach of Contract and Quantum Meruit — JPM Bank and JPMC

168. Plaintiff incorporates paragraphs 1 through 98. This Count is pleaded against JPM Bank and JPMC only and does not re-plead any compensation claim decided as to JPMS.

169. A valid and enforceable agreement governed Plaintiff's notice period. Under that arrangement Plaintiff was to receive pay and employment status through December 26, 2023 in exchange for his continued availability and compliance. Plaintiff performed. Defendants breached by terminating Plaintiff on December 1, 2023 and ceasing the notice-period compensation.

170. Plaintiff earned incentive compensation on his performance-year 2023 production under the annual non-ERISA incentive arrangements applicable to his role. On November 16, 2023, before the investigation closed and before the termination, Defendants determined that Plaintiff was "in for zero IC." Plaintiff forfeited those awards.

171. In the alternative, Plaintiff pleads quantum meruit. Plaintiff rendered valuable services and originations to Defendants. Defendants accepted and retained the benefit of those services. Plaintiff reasonably expected compensation for them. Defendants did not pay it.

172. Plaintiff pleads no claim governed by ERISA in this action.

## COUNT XIII — Civil Conspiracy — All Defendants (Alternative)

173. Plaintiff incorporates paragraphs 1 through 98. This Count is pleaded in the alternative, and only to the extent Defendants are treated as separate legal actors capable of conspiring, consistent with their position that JPM Bank, JPMC, and JPMS are distinct entities.

174. Two or more Defendants were members of a combination. The object of the combination was to terminate Plaintiff's employment, retain his book of business, and prevent the transfer of his practice to a competitor.

25

175. The Defendants had a meeting of the minds on that object. One or more Defendants committed unlawful, overt acts in furtherance of the object, including the intake of October 26, 2023, the "Urgent Request: Josh Biering Book" email, the determination of zero incentive compensation on November 16, 2023, the termination, and the filing of the inaccurate Form U5 and its timing.

176. Plaintiff sustained damages as a proximate result. Each Defendant that participated is jointly and severally liable for those damages.

## VIII. EXEMPLARY DAMAGES

177. Plaintiff seeks exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41 on the Counts that permit them, upon clear and convincing evidence of fraud or malice.

178. Plaintiff pleads the following facts in support: the confirmed finding that one of the primary reasons for the timing of the Form U5 filing was to hinder Plaintiff's ability to transfer his book of business; the confirmed finding that Defendants began investigating reasons to terminate Plaintiff so as to make it more difficult for him to go to work with a competitor; the determination of zero incentive compensation in advance of any investigative finding; the successive changes in Defendants' stated characterization; and Defendants' failure to correct the Form U5 after it was found inaccurate and after this Court confirmed those findings. (Dkt. 54, 55.)

179. Plaintiff acknowledges the limits of Tex. Civ. Prac. & Rem. Code § 41.008 and Tex. Lab. Code § 21.2585, and seeks no duplicative recovery of any element of damages across Counts.

## IX. JURY DEMAND

180. Plaintiff demands a trial by jury on all issues so triable, under the Seventh Amendment and Fed. R. Civ. P. 38(b).

## X.    PRAYER FOR RELIEF

181. Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and:

(a) determine the questions assigned to the Court by 9 U.S.C. § 402(b);

(b) declare that Plaintiff's election under 9 U.S.C. § 402(a) is valid;

(c) declare that no predispute arbitration agreement is valid or enforceable with respect to this case;

(d) alternatively, declare that Defendants waived or are equitably estopped from compelling arbitration;

(e) maintain the existing abeyance of AAA Case No. 01-26-0000-7215, or stay that proceeding as necessary, until the Court determines Count I;

(f) if the Court determines that one or more claims are arbitrable, compel only those claims and stay this action under 9 U.S.C. § 3 rather than dismissing it;

(g) retain this action on the Court's docket and retain jurisdiction over nonarbitrable claims and proceedings for judicial assistance, enforcement, confirmation, modification, correction, or vacatur authorized by law;

(h) direct the parties, to the extent consistent with the governing agreement and AAA administration, to proceed in existing AAA Case No. 01-26-0000-7215 or its administrative successor without requiring a duplicative demand;

(i) provide that Plaintiff's alternative request for or participation in arbitration does not waive his EFAA election, arbitrability objections, Article III rights, Seventh Amendment rights, or limitations, tolling, estoppel, and preservation positions;

(j) award the remedies authorized by Tex. Lab. Code ch. 21 on Counts II through VII, including back pay, front pay, compensatory damages, punitive damages

27

within the applicable statutory limits, equitable relief, fees where recoverable, and costs;

(k) award the remedies authorized by 29 U.S.C. § 2617 on Counts VIII and IX, including lost compensation and benefits, actual monetary losses, interest, liquidated damages, equitable relief, fees where recoverable, and costs;

(l) award actual and consequential damages on Counts X through XIII, together with exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41 where available;

(m) award pre-judgment and post-judgment interest and costs of court;

(n) coordinate any relief affecting the CRD record with the confirmed Award and judgment in No. 4:26-cv-00381-O-BP (Dkt. 54, 55); and

(o) grant all other relief, at law or in equity, to which Plaintiff is justly entitled.


Respectfully submitted,


**JOSHUA DAVID SAPPI BIERING**
Plaintiff, *Pro Se*


**Dated**: August 3, 2026

## CERTIFICATE OF SERVICE

Plaintiff is opening this action by paper filing in the Fort Worth Division of this Court. Defendants have not yet been served with process. Plaintiff will serve the Summons, Complaint, and this Certificate on each Defendant by delivery to its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201, in accordance with Federal Rule of Civil Procedure 4. CT Corporation System is the registered agent of record in the State of Texas for J.P. Morgan Securities LLC, JPMorgan Chase Bank, N.A., and JPMorgan Chase & Co.

As a courtesy, and without waiver of any requirement of formal service, a copy of this Certificate is being transmitted by electronic mail to counsel who have appeared for these Defendants in the related action:

_Joshua David Sappi Biering_
JOSHUA DAVID SAPPI BIERING
Plaintiff, *Pro Se*

**Dated**: August 3, 2026

4635 Washburn Ave.
Ft. Worth, TX 76107
m 682.218.6738

29

JS 44 (Rev. 04/21)(TXND 4/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Joshua David Sappi Biering | JPMorgan Chase Bank, N.A.; JPMorgan Chase & Co.; J.P. Morgan Securities LLC |

**(b)** County of Residence of First Listed Plaintiff **Tarrant**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Franklin**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joshua David Sappi Biering, *Pro Se//* 682.218.6738
4635 Washburn Ave, Ft. Worth, TX 76107

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation / [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act / [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other / **IMMIGRATION** | | |
| | | [ ] 550 Civil Rights / [ ] 462 Naturalization Application | | |
| | | [ ] 555 Prison Condition / [ ] 465 Other Immigration Actions | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 2601 et seq.; 9 U.S.C. §§ 401-402
Brief description of cause:
FMLA; EFAA election; TCHRA and related Texas claims

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ $75,000+
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE Reed O'Connor
DOCKET NUMBER 4:26-cv-00381-O-BP

DATE 08/03/2026

SIGNATURE OF ATTORNEY OF RECORD *Joshua David Sappi Biering*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____