**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT D.03ar

## D.03ar-001 – D.03ar-010

| | |
|---|---|
| **Description:** | JPMS's position statement filed with the EEOC in response to Petitioner's charge of discrimination. |
| **Relevance:** | Captures JPMS's contemporaneous framing of the termination-and-performance narrative outside the FINRA forum. |
| **Source:** | EEOC Charge No. 450-2024-04743 – JPMS Position Statement (May 24, 2024) |
| **Petition Ref:** | Dkt. 11 ¶ 3; App. A p. 51 ("JPMS EEOC Position Statement") |
| **Disclosures:** | None — reproduced as produced, no added markings |
| **Filing Status:** | Public – not sealed |

Case 4:26-cv-0038-O-BP Document 20-5 Filed 04/29/26 Page 41 of

UBGreensfelder

Jeffrey S. Du
Partner

DIRECT 216.583.7026
DIRECT FAX 216.583.7027
EMAIL jdunlap@ubglaw.

May 24, 2024

U.S. Equal Employment Opportunity Commission
Dallas District Office
207 S. Houston Street, 3rd Floor
Dallas, TX 75202

**RE: *Joshua Biering v. JPMorgan Chase Bank, N.A.***
**EEOC Charge No. 450-2024-04743**

Dear Investigator:

JPMorgan Chase Bank, N.A. ("JPMorgan") respectfully submits this Position Statement in response to the above-reference Charge of Discrimination ("Charge") filed by Joshua Biering ("Mr. Biering"), alleging that he was subjected to discrimination and retaliation on the basis of his race, sex, national origin, and disability. JPMorgan terminated Mr. Biering in December 2023 after he violated the JPMorgan Code of Conduct (the "Code of Conduct") and JPMorgan's Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy (the "Policy"). JPMorgan did not discriminate or retaliate against Mr. Biering on the basis of his race, sex, national origin, disability, or any other status protected by applicable law. JPMorgan requests that the Equal Employment Opportunity Commission ("EEOC") dismiss this Charge after its review of the facts.

## I. Introduction

JPMorgan did not discriminate against or retaliate against Mr. Biering on the basis of his race, sex, national origin, or disability, and Mr. Biering does not allege any facts or provide any evidence to support his claims. JPMorgan's decision to terminate Mr. Biering's employment was based on a legitimate, non-discriminatory and non-retaliatory reason that was entirely unrelated to any status protected by applicable law.

JPMorgan terminated Mr. Biering in December 2023 after it became aware that Mr. Biering sexually harassed a female colleague over whom he had quasi-supervisory authority. JPMorgan became aware of Mr. Biering's conduct on October 26, 2023 when the female colleague reported it to her mentor and after JPMorgan's Employee Relations department initiated an internal investigation. That investigation confirmed that Mr. Biering engaged in conduct that violated the Code of Conduct and the Policy. As a result, JPMorgan terminated Mr. Biering's employment. Any suggestion by Mr. Biering that he was subjected to discrimination and retaliation on the basis of his race, sex, national origin, and disability are meritless. Mr. Biering's Charge should be dismissed.

## II. JPMorgan's Commitment to Providing Equal Employment Opportunities

JPMorgan is an equal opportunity employer and is firmly committed to the equal hiring, promotion and treatment of all qualified individuals without regard for race, religion, or any other status protected by law. JPMorgan makes employment decisions based on legitimate business criteria and the qualifications, skills, and experience of individual applicants. JPMorgan is committed to creating and maintaining an inclusive and diverse organization. JPMorgan recruits individuals with unique experiences and diverse backgrounds because it believes and understands that different perspectives bring strength and creativity to the firm and lead to the best solutions for its customers. JPMorgan is dedicated to maintaining a safe, productive, diverse, professional, collegial, and secure work environment in which all individuals are treated with respect and dignity. Discrimination, harassment, and inappropriate conduct are not tolerated by or against employees, customers, vendors, contractors or any other individuals who conduct business with JPMorgan.

In its policies, JPMorgan expressly prohibits all forms of discrimination and harassment and explains its commitment to providing a discrimination-free and harassment-free work environment for all employees. The Policy states that the firm will not tolerate any form of discrimination on any basis. *See* Exhibit A (Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy). JPMorgan requires employees to review the Policy upon hire and again periodically during their employment with JPMorgan. The Policy is made available to all employees on the firm's intranet site.

The Code of Conduct similarly prohibits any form of discriminatory, harassing, abusive, or otherwise inappropriate conduct. *See* Exhibit B (Code of Conduct, §3.2). The Code of Conduct explains that discrimination and harassment are not tolerated, and any behavior that creates an intimidating, hostile or offensive work environment is prohibited. Mr. Biering received yearly training on the JPMorgan Code of Conduct. Most recently, on July 12, 2023, Mr. Biering affirmed that he read, understood and was in compliance with the Code. The Code of Conduct and the Policy further explain that any employees who believe that they or any other employees have been subject to unlawful discrimination or harassment have the responsibility to report it to a manager, Human Resources, or via the Code of Conduct Reporting Hotline.

## III. Factual Background

### A. Mr. Biering began his employment with JPMorgan in 2016.

JPMorgan hired Mr. Biering on February 18, 2016 as a Military Officer Executive Program Associate. Mr. Biering started working for JPMorgan on May 23, 2016. At the time of his termination, Mr. Biering worked as an Executive Director at the Downtown Fort Worth branch located in Fort Worth, Texas. Mr. Biering's position required him to develop and maintain close relationships with JPMorgan's customers to assist them in reaching their short-term and long-

term financial goals. To successfully fulfill his role, he also had to develop and maintain positive working relationships with his colleagues.

### B. JPMorgan opened an investigation into Mr. Biering's use of his JPMorgan expense account.

In connection with Mr. Biering's employment, JPMorgan allowed Mr. Biering to use an expense account for client and business development purposes. On October 20, 2023, JPMorgan initiated an investigation into Mr. Biering's use of his JPMorgan expense account.

Mr. Biering's manager, Ben Stewart, received a weekly email containing a summary of all of his subordinate employees' submitted expenses. Stewart was responsible for reviewing the receipts submitted in connection with each expense report and making determinations regarding whether the expenses were appropriately refundable to the employee. During his review of Mr. Biering's submitted expenses between August 31, 2023 and September 17, 2023, Stewart noticed expenses that he believed to be suspicious and contacted Human Resources Business Advisor ("HRBA") Stephanie Stainback for assistance. Ms. Stainback notified JPMorgan's Global Security ("GS") team on October 20, 2023 to open an investigation.[1]

On October 25, 2020, Stewart emailed Ms. Stainback and GS investigator Nadia Muraira a summary of the entries in Biering's expense report that most concerned him. Stewart raised concerns regarding the use of company funds to pay for substantial amounts of alcohol and golf club fees. Stewart was also suspicious of expenses that indicated that Biering entertained the same group of clients on two consecutive days, and in one instance on a bank holiday where it would be unusual to entertain clients. The aggregate amount of firm funds at issue was $8,061.36.

Ultimately, GS found that the allegations into Mr. Biering's misuse of company funds were "unsubstantiated." GS reached this decision because the next step in its investigative process would have required JPMorgan to contact the customers identified in Mr. Biering's submitted expense report. For business reasons, GS determined that it did not wish to pursue the investigation in this way and, therefore, GS closed the investigation.[2]

---

[1] GS is the JPMorgan entity that is responsible for conducting internal investigations.

[2] GS does not reach out to customers to involve them in internal investigations unless there is an ongoing risk of future vi

Case 4:26-cv-00389-O-BP Document 20-5 Filed 04/29/26 Page 44 of


**C. JPMorgan terminated Mr. Biering because he violated the Code of Conduct and the Policy** [redacted]

As a JPMorgan employee, Claimant was required to comply with all of JPMorgan's policies and procedures, including the JPMorgan Code of Conduct. In relevant part, the Code of Conduct instructs:

> JPMorgan Chase is committed to ensuring employees act with honestly and integrity, treat customers fairly, and exercise sound judgment. This means doing the right thing, and speaking up, at all times, even when it is not easy or expedient. Our commitment to ethical business practices preserves our firm's reputation and creates a safe, healthy, productive, and collaborative work environment. **Personal accountability and ownership are priorities at our firm. We expect you to hold yourself to the highest standards of ethical conduct. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the workplace. Your actions should reflect the firm's culture of integrity, respect, and inclusivity.**

*See* Exhibit B at §1.1. (emphasis added). The Code of Conduct further mandates:

> We are committed to a working environment free of threats, intimidation and physical harm. A non-violent, safe, and healthy workspace is critical to our well-being. We rely on you to promptly report any acts or threats of violence, or situations that could pose a threat to others. **All workforce members are expected to comply with applicable laws and firm policies as they relate to the health, safety, and security of our workforce, our customers, and others who may be present on our premises. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the office. Your conduct matters and can be perceived as a reflection of our firm's standards.**

Exhibit B at §3.1. (emphasis added). As an Executive Director with managerial responsibilities, Mr. Biering had to comply with portions of the Code of Conduct directed specifically at managers. For instance, by Section 1.3.1, the Code of Conduct explains:

> **Managers have an even greater level of responsibility. They must set the example, leading with integrity and reinforcing the firm's ethical culture through their words and actions**.

> Managers are often the first resource for employees who have questions on ethical issues or potential violations of firm policy. If unsure of the best course of action, managers are responsible for directing their employees to the correct resource. They may be held responsible for their failure to report misconduct, escalate appropriately, or take steps to address or remediate an issue. **Managers must create an environment where others feel comfortable sharing concerns and ensure their employees are protected from retaliation for such concerns.**

Exhibit B, §1.3.1. (emphasis added). As set forth above, Mr. Biering affirmed his compliance with the JPMorgan Code of Conduct on an annual basis, and most recently on July 12, 2023, Claimant signed a Code of Conduct Affirmation which states in relevant part: "I hereby affirm that I have read, understand, and am in compliance with the JPMorgan Chase "JPMC" Code of Conduct and all internal JPMC policies that apply to me. **I agree, as a condition of my employment, to remain in compliance with the Code of Conduct and all applicable JPMC policies**." (emphasis added).

The Policy also strictly prohibits sexual harassment. The Policy prohibits "unwelcome sexual advances, requests for sexual favors and other verbal or nonverbal behavior or physical contact of a sexual nature – regardless of how the overture is communicated." Prohibited conduct includes, but is not limited to:

> - Inappropriate physical contact such as offensive, sexual or overly-familiar touching of another individual; and
>
> - Making sexual remarks, innuendoes, propositions or advances.

Exhibit A at §5.1. The Policy also makes clear that "[h]arassment and/or inappropriate conduct are often defined by the impact to the recipient, rather than the intent of the person." *Id.*

On October 26, 2023 HRBA Stainback received a report of [redacted] from Head of Investments and Advice (Fort Worth Market), Kyle Hitchcock. Hitchcock advised Stainback that his mentee, [redacted] reported to him that Mr. Biering [redacted]. Stainback immediately escalated the report to JPMorgan's Employee Relations team for further investigation. On October 27, 2023, Employee Relations investigator Jonathan Jacobs, accompanied by GS Investigator Chris Magee, interviewed [redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] October 27, 2023 interview, JPMorgan, through Jacobs, placed Mr. Biering on paid administrative leave effective end of day October 27, 2023. Jacobs contacted Mr. Biering's manager, Stewart, and directed him to inform Mr. Biering of JPMorgan's decision to place him on paid leave.

On following day, Saturday October 28, 2023, Mr. Biering sent an email to his supervisors resigning his employment. As an Executive Director, Mr. Biering was bound by JPMorgan's Notice Period Policy[5], which requires certain employees to provide their manager with advance notice of the resignation of their employment. Exhibit C (Notice Period Policy). As an Executive Director, Mr. Biering's Notice Period was 60 days. *Id.* During this time, Mr. Biering remained a JPMorgan employee, was paid at his then-current base salary rate, and remained eligible for benefits. *Id.*

Following his resignation, on November 7, 2023, Jacobs and McGee interviewed Mr. Biering [redacted]

---

[redacted]

[5] The Notice Period Policy defines "Notice Period" as the number of calendar days of advance written notice of resignation of employment covered employees are required to provide their manager. Exhibit C.

CONFIDENTIAL





UBGreensfelder



[redacted]

[redacted]

## IV. The Lack of Merit to Mr. Biering's Discrimination and Retaliation Claims

Mr. Biering's race, sex, national origin and disability discrimination claims have no merit. To establish a *prima facie* case of discrimination, a charging party must show: (1) he is a member of protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside the protected class(es). *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). If the charging party establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* The charging party must then show that the employer's proffered reason was pretext for a discriminatory motive. *Id.*

### A. Mr. Biering's discrimination claim does not survive the *prima facie* stage.

[redacted]

[redacted]

Case 4:26-cv-00389-O-BP Document 20-5 Filed 04/29/26 Page 48 of

UB Greensfelder



[redacted]

[redacted]

[redacted]

### B. Mr. Biering's retaliation claim does not survive the *prima facie* stage.

To make out a *prima facie* case of retaliation, the charging party must show that (1) he engaged in an activity protected by Title VII; (2) his employer took an adverse action against him; and (3) a causal connection existed between the protected activity and the materially adverse action. *Davis v. Fort Bend County,* 765 F.3d 480, 490 (5th Cir. 2014) Like Mr. Biering's alleged discrimination claims, if he can establish a *prima facie* case of retaliation, the burden then shifts to JPMorgan to articulate a legitimate, non-retaliatory reason for its conduct. *Id.* at 491. If JPMorgan does so, the burden shifts back to Mr. Biering to show that the reason articulated by JPMorgan was pre-text for unlawful retaliation. *Id.*

Mr. Biering's retaliation claim fails at the first prong of the *prima facie* case because he has not alleged any facts suggesting that he engaged in any activity protected by Title VII. Mr. Biering alleges that he was subjected to retaliation in two ways. First, Mr. Biering claims that he was retaliated against because JPMorgan audited his expense report "following his resignation." Charge at 2. Second, Mr. Biering claims that JPMorgan "intentionally and knowingly"

mismarked his Form U5 that was filed with FINRA. *Id.* An employee engages in protected activity when he "has (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII." *Riley v. Napolitano,* 537 Fed. Appx. 391, 392 (5th Cir. 2013). JPMorgan's investigation into Mr. Biering's use of a JPMorgan expense account is not an activity protected by Title VII, nor was he subjected to retaliation when J.P. Morgan Securities LLC[6] filed Mr. Biering's Form U5.

**C. JPMorgan had a legitimate, non-discriminatory and non-retaliatory reason for terminating Mr. Biering.**

Mr. Biering cannot point to any evidence that JPMorgan discriminated against him or subjected him to retaliation, and thus, his claims fail at the *prima facie* stage. However, even if he could establish either *prima facie* case, JPMorgan had a legitimate, non-discriminatory and non-retaliatory reason for its decision to terminate Mr. Biering's employment. As set forth in detail above, JPMorgan terminated Mr. Biering after an internal investigation into his conduct revealed that [redacted] behavior in violation of JPMorgan's Code of Conduct and the Policy. It was for this reason — and this reason alone — that JPMorgan terminated Mr. Biering's employment on December 1, 2023.

**D. There is no evidence that JPMorgan's proffered legitimate, non-discriminatory and non-retaliatory reasons for termination are pre-text for unlawful discrimination and/or retaliation.**

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, a charging party must show that the employer's reason was pretext by offering evidence that the proffered reason had no basis in fact; that the reason did not actually motivate the discharge; or that the reason was insufficient to motivate the discharge. *See Gary v. Combined Group*

---

[6] Mr. Biering was employed by JPMorgan Chase Bank, N.A. ("Chase"). JPMorgan's affiliate, J.P. Morgan Securities LLC ("JPMS") held Mr. Biering's securities licenses. JPMS is a member of the Financial Industry Regulatory Authority ("FINRA"). JPMorgan is not a member of FINRA. FINRA requires all member firms to timely file an accurate Form U5 for all licensed representatives when their registration with JPMS ends. FINRA requires member firms to state on the Form U5 the reason for the employee's registration termination. FINRA requires firms to file the Form U5 for multiple reasons. FINRA uses the information to identify individuals who may have violated FINRA rules. Regulatory authorities use the information to make informed registration and licensing decisions. FINRA member firms use the information to make informed employment decisions. Investors may use the information when deciding whether to do business with a registered person. JPMS is subject to administrative and civil penalties if it does not file a timely, complete, and accurate Form U5. To the extent that Mr. Biering included allegations related to his Form U5 in an effort to have the EEOC adjudicate JPMS's conduct, he has done so erroneously because disputes over Form U5 reporting must be adjudicated in FINRA arbitration. JPMS's regulatory obligation to file a timely, accurate and complete Form U5 cannot and does not support his allegation that JPMorgan "retaliated" against him.

Case 4:26-cv-00381-O-BP Document 20-5 Filed 04/29/26 Page 50 of
UB Greensfelder



*Ins. Servs.,* No. 3:08-cv-00228, 2009 U.S. Dist. LEXIS 80635 (N.D. Tex. July 27, 2009); *Stephens v. City of Austin,* No. 1:12-cv-659, 2014 U.S. Dist. LEXIS 104439 (W.D. Tex. July 31, 2014). Mr. Biering has not established and cannot establish that JPMorgan's decision to terminate his employment was pre-textual. Employee Relations investigated Mr. Biering's conduct and determined that he violated the Code of Conduct and the Policy [redacted]. Thus, JPMorgan terminated his employment. Mr. Biering's disagreement with JPMorgan's decision to terminate his employment alone does not establish pretext.

JPMorgan did not terminate Mr. Biering's employment based on his race, sex, national origin or disability status, nor can Mr. Biering demonstrate that any of these statuses were motivating factors in the termination decision. Likewise, Mr. Biering has not set forth any facts to support the conclusion that JPMorgan retaliated against him in any manner that is prohibited by law. Therefore, Mr. Biering's discrimination claims must be dismissed.

## V. Conclusion

Mr. Biering's race, sex, national origin and/or disability had nothing to do with JPMorgan's decision to terminate his employment, and there is no evidence to support his claims. JPMorgan made all decisions related to Mr. Biering's employment for legitimate, non-discriminatory and non-retaliatory reasons. Through this Position Statement, JPMorgan has attempted to respond to the most significant or meaningful allegations in the Charge. However, to the extent that there are any other allegations contained in Mr. Biering's Charge that have not been addressed to the EEOC's satisfaction, those allegations are categorically denied. Based on the foregoing, JPMorgan respectfully requests that the EEOC dismiss this Charge.

If you have any questions or need additional information, please contact me at 216-583-7026.

Sincerely,

*/s/ Jeffrey S. Dunlap*

Jeffrey S. Dunlap

cc: Emma Tomsick