**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

---

# EXHIBIT AAA_A.01

## AAA Statement of Claim

## AAA_A.01-001 - AAA_A.01-010

---

| | |
|---|---|
| **Description:** | Protective AAA Statement of Claim filed February 10, 2026. |
| **Relevance:** | Shows the AAA case was filed protectively while preserving the federal forum and requesting a stay pending judicial determination. |
| **Source:** | AAA Case No. 01-26-0000-7215, Statement of Claim filed February 10, 2026. |
| **Petition Ref:** | Dkt. 11; Motion for Accelerated Hearing, Dkt. 16. |
| **Disclosures:** | Redactions: Public redactions applied to personal contact information required by the exhibit redaction rules. |
| **Filing Status:** | Public - not sealed |

**AMERICAN ARBITRATION ASSOCIATION**
Employee Arbitration Rules and Procedures

| | | |
|---|---|---|
| JOSHUA DAVID SAPPI BIERING,<br>*Claimant, Pro Se,*<br>v.<br>J.P. MORGAN SECURITIES, LLC,<br>JPMORGAN CHASE & CO., and<br>JPMORGAN CHASE BANK, N.A.,<br>*Respondents*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | AAA Case No.: 01-26-0000-7215<br><br>Related Case(s):<br>FINRA Case No.: 24-01208<br>EEOC Charge No.450-2024-04743<br>U.S.D.C. N.D. Tex. Case No.: *[ ]* |

**PROTECTIVE STATEMENT OF CLAIM AND REQUEST FOR STAY PENDING JUDICIAL DETERMINATION**

**PRELIMINARY STATEMENT**

1. **Nature of Filing.** This Demand for Arbitration is filed as a necessary protective measure to preserve Claimant's statutory and tort claims—and to toll the applicable statute of limitations—following a manufactured procedural fracture engineered by Respondents JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co (collectively, the "Non-Signatories"); and together with J.P. Morgan Securities, LLC, all three are referred to as the "Firm" (as defined in the BAA)." Claimant's primary forum remains the United States District Court for the Northern District of Texas, where a Verified Petition to Confirm in Part and Vacate in Part the underlying arbitration award in *Biering v. J.P. Morgan Securities LLC, JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A.* (FINRA Case No. 24-01208) is currently anticipated and pending in the near term. This filing is made to ensure that Respondents cannot weaponize the very delays and jurisdictional evasions they created to argue a time-bar or a failure to exhaust arbitral remedies. This AAA filing is not a concession that AAA is the proper forum and is not a waiver of Claimant's right to a judicial forum.

2. **REQUEST FOR STAY.** Claimant requests that AAA stay all proceedings—including fee assessment beyond intake, arbitrator appointment, and scheduling—pending judicial determination of arbitrability and forum in the Northern District of Texas, including the effect of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–402.

3. **The Manufactured Fracture.** Claimant has always conceded to and intended to arbitrate all claims against all Respondents in a single, efficient forum. Indeed, Claimant's June 3, 2024, Original Statement of Claim in FINRA asserted 14 causes of action against all three entities defined as "the Firm" under the Binding Arbitration Agreement ("BAA"). However, Respondents subverted the spirit of the FAA and their own BAA by waiting 71 days—and until the eve of the arbitrator rank-and-strike deadline—to offensively deploy a "jurisdictional paradox." By

Case 4:26-cv-00381-O-BP Document 25-1 Filed 04/30/26 Page 3 of 11 PageID 1472

simultaneously objecting to the FINRA panel's jurisdiction over the Bank and its authority over statutory employment claims, Respondents forced Claimant, under duress of total dismissal, to exercise his Title VII, ADA, and claims pertaining to sexual harassment.

4. **Violation of the Spirit of the FAA.** The FAA mandates the "streamlined" and "speedy" resolution of disputes—principles JPMorgan itself has repeatedly invoked to enforce the BAA. Yet, Respondents' conduct here has been the antithesis of this mandate. By stripping these claims from the mutually agreed-upon FINRA forum and forcing a "litigation limbo," Respondents have replaced efficiency with procedural gamesmanship. This bad faith was further evidenced by a 250-day pattern of discovery obstruction, where Respondents ignored 60-day deadlines and delivered thousands of pages of critical evidence physically after final briefing deadlines, rendering a "mutual, final, and definite" award in FINRA impossible—as the Panel's $0 damages award against its own express findings of misconduct confirms.

5. **Preservation of Rights.** Claimant maintains that the Federal Court is the only venue capable of exercising global jurisdiction over all matters and all Respondents to provide the finality the FAA requires. This AAA filing serves as a necessary procedural safeguard to ensure that Respondents do not benefit from the delay and fracture they exclusively engineered. If the Federal Court retains jurisdiction over these statutory and tort claims, Claimant will move to dismiss or stay this proceeding accordingly. Compliance with these filing requirements is procedural only and does not constitute a concession of this forum.

6. **Embrace of Factual Findings vs. Challenge to Application.** Claimant does not contest the FINRA Panel's factual findings. Claimant embraces them:

(i) The Panel found that when Respondent learned Claimant was contemplating resigning, "Respondent began investigation reasons to terminate him."

(ii) The Panel found Respondent acted with "intent to hinder" Petitioner's career

(iii) The Panel found Respondent "began investigation reasons to terminate Claimant so as to make it more difficult for Claimant to go to work with a competitor."

(iv) The Panel found the Form U5 was "inaccurate."

(v) The Panel found "Respondent has been found to have done this in the past."

(vi) The Panel found "this may be a pattern of conduct."

(vii) The Panel affirmed the industry standard: "the absence of a clean U5 makes it very difficult to move to a Tier One competitor." Award at 5.

**7.** Claimant challenges the Panel's application of its own findings: specifically, its award of $0 in compensatory damages despite having found every element of defamation per se under Texas law. While the facts bind, the legal error does not. The Panel departed from governing law and imposed an outcome untethered to its own findings; an arbitrator 'may not dispense his own brand of industrial justice' but must draw the award's essence from the agreement and law. 9 U.S.C. § 10(a)(4); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *Stolt-Nielsen*, 559 U.S. at 671–72.

## I. THRESHOLD COMPLIANCE AND ADMINISTRATIVE EXHAUSTION

8. This filing is structured to satisfy, and Claimant affirmatively represents compliance with, every procedural prerequisite for the claims asserted herein.

### A. AAA Filing Requirements (Employment/Workplace Arbitration Rules, R-4)

9. AAA Rule R-4 requires the filing party to submit: (i) a written Demand for Arbitration; (ii) the applicable filing fee (or a request for deferral/waiver); (iii) a copy of the applicable arbitration agreement; and (iv) simultaneous notice to Respondents with a copy of the Demand and supporting documents. The Demand must set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy; and the remedy sought. Each of these requirements is satisfied by this filing and the accompanying cover materials. The Binding Arbitration Agreement is attached as Exhibit A. Claimant requests fee deferral as set forth in Section VII infra.

### B. TCHRA Administrative Exhaustion (Tex. Lab. Code §§ 21.201–21.202, 21.256).

10. Under Texas Labor Code Chapter 21, Subchapter F, the following prerequisites must be satisfied before a civil action may be brought:

(i) Filing of a verified complaint, in writing and under oath, with TWC-CRD. Tex. Lab. Code § 21.201(a)–(b). **SATISFIED**. On February 25, 2024, Claimant filed a verified Charge of Discrimination with the EEOC, which was simultaneously dual-filed with the TWC-CRD pursuant to the Annual Worksharing Agreement between the EEOC and TWC-CRD under 29 C.F.R. § 1601.13 and Tex. Lab. Code § 21.208. Under Texas law and established practice, an EEOC filing that is dual-filed with TWC-CRD satisfies the administrative filing requirement. See *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 485–86 (Tex. 1991); *Vielma v. Eureka Co.,* 218 F.3d 458, 462 (5th Cir. 2000).

(ii) Timely filing within 180 days of the unlawful employment practice. Tex. Lab. Code § 21.202(a). **SATISFIED**. The alleged unlawful employment practice (retroactive termination) occurred on December 1, 2023. The TWC-CRD complaint was filed (via dual-filing) on February 25, 2024—86 days later—well within the 180-day window.

(iii) Civil action filed within two years of the date the complaint was filed. Tex. Lab. Code § 21.256. **SATISFIED**. The TWC-CRD complaint was dual-filed on February 25, 2024. The two-year deadline is therefore February 25, 2026. This filing is made on or before that date.

(iv) The § 21.254 sixty-day window is inapplicable. Section 21.254 provides that a complainant must file suit "[w]ithin 60 days after the date a notice of the right to file a civil action is received" under § 21.252. That provision is triggered only when TWC-CRD itself issues a Notice of Right to File Civil Action. No such notice was issued by TWC-CRD. The EEOC's Dismissal and Notice of Rights issued on February 5, 2025 (forwarded by EEOC Investigator Lina Williams via cover letter dated March 19, 2025) is a federal administrative document issued under 42 U.S.C. § 2000e-5(f)(1); it is not a TWC-CRD § 21.252 notice and does not trigger the 60-day window of § 21.254. Because no § 21.252 notice was ever issued, the broader two-year limitation of § 21.256

Case 4:26-cv-00381-O-BP Document 25-1 Filed 04/30/26 Page 5 of 11 PageID 1474

governs as the operative deadline. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 510–11 (Tex. 2012); *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 492 (Tex. 1996).

(v) In the alternative, equitable tolling independently preserves timeliness. Even if the EEOC's February 5, 2025 Dismissal was construed as triggering § 21.254, equitable tolling independently preserves timeliness. Claimant was actively litigating all claims—including the statutory discrimination claims now asserted here—in FINRA arbitration from June 3, 2024, through December 29, 2025. Respondents' own procedural gamesmanship forced statutory claims out of FINRA, and Respondents' discovery obstruction spanned more than 250 days across nine rolling productions. Respondents may not benefit from delay they engineered. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990); *Harkless v. Sweeny Indep. Sch. Dist.,* 554 F.2d 1353 (5th Cir. 1977).

### C. Federal Claims: Title VII, ADA, ADEA (42 U.S.C. § 2000e-5(f)(1))

11. Claimant's EEOC Dismissal and Notice of Rights was issued on March 19, 2025. The 90-day federal filing deadline under 42 U.S.C. § 2000e-5(f)(1) expired on or about June 17, 2025. Claimant does not assert that the federal 90-day deadline has been independently met for purposes of Title VII, ADA, or ADEA claims. However, Claimant's federal statutory claims are independently preserved by:

(i) the EFAA election voiding the predispute arbitration agreement as to this sexual harassment-related dispute (see Section VIII infra);

(ii) equitable tolling during the FINRA arbitration; and

(iii) the fact that Claimant's primary forum election is the U.S. District Court for the Northern District of Texas, where confirmation/vacatur proceedings and federal claims will be consolidated. To the extent any federal claim is time-barred for this AAA filing, Claimant expressly preserves those claims for the federal court action and asserts them here protectively and in the alternative only.

12. The TCHRA claims, however, are independently and unambiguously timely under § 21.256, and no tolling argument is required for them.

### D. AAA Due Process Protocol Compliance

13. The AAA Employment Due Process Protocol requires:

(i) the right to representation;

(ii) access to neutral arbitrators;

(iii) adequate discovery; and

(iv) the power to grant any relief available at law. This filing expressly requests arbitrator qualifications that satisfy these standards (Section VII infra) and reserves all rights to full discovery and the full range of statutory remedies.

Case 4:26-cv-00381-O-BP Document 25-1 Filed 04/30/26 Page 6 of 11 PageID 1475

## II. PARTIES

### A. Claimant

14. **Joshua David Sappi Biering** is a dual citizen of the United States and Brazil, residing in the State of Texas. Petitioner is an Eagle Scout, graduate of the United States Military Academy at West Point with a Bachelor of Science in Civil Engineering, former U.S. Army Captain (honorably discharged), Bronze Star Medal recipient, and 100% service-connected disabled veteran. Petitioner holds a Master of Business Administration from the Southern Methodist University Cox School of Business.

15. At all relevant times, Petitioner was employed by JPMorgan Chase Bank, N.A., assigned to the JPMorgan Private Bank's Fort Worth office, and was an "Associated Person"[3] of J.P. Morgan Securities LLC (CRD# 79), which maintained his securities licenses (CRD# 6883842). All policies and procedures were administered by the parent entity, JPMorgan Chase & Co.

16. Petitioner is currently employed by and an Associated Person of Raymond James & Associates, Inc. (CRD# 705), where he serves as Senior Vice President, Wealth Management. Petitioner resides in Fort Worth, Tarrant County, Texas.

### B. Respondents

17. **J.P. Morgan Securities LLC ("JPMS")** is a Delaware LLC, FINRA member firm (CRD #79), with its principal place of business in New York. JPMS filed the Form U5 at issue and was the sole entity to sign the FINRA Submission Agreement (September 10, 2024). The FINRA Panel made "no determination" as to claims against JPMC or JPM Bank, finding they "did not voluntarily submit to arbitration." Those entities' claims have never been adjudicated in any forum.[1]

18. **JPMorgan Chase & Co. ("JPMC")** is a Delaware corporation (NYSE: JPM) and the publicly traded parent holding company that owns and controls JPMS and JPM Bank.

19. **JPMorgan Chase Bank, N.A. ("JPM Bank" or "Private Bank")** is a national banking association and Claimant's day-to-day employer for payroll, HR, benefits, and management purposes. JPM Bank directed the investigation and termination decision.

20. **All three entities are proper Respondents.** The BAA defines "JPMorgan Chase and the Firm" as "JPMorgan Chase & Co. and all of its direct and indirect subsidiaries." (Exhibit A hereto.) The FINRA Panel found the entities to be "***intertwined***" for discovery purposes.

21. **Statutory Employer Status**. Each Respondent is an "employer" within the meaning of Tex. Lab. Code § 21.002(8), employing fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. Each

[1] Throughout the FINRA proceedings—including in pre-hearing communications, Chair Cromartie's conduct and rulings leading up to the hearing, and the panel's treatment of the entities as intertwined for discovery purposes—Claimant reasonably understood that all three entities were proper parties subject to full adjudication. The panel's sua sponte determination that JPMC and JPM Bank "did not voluntarily submit to arbitration" was made without prior notice to Claimant and represented a complete reversal of the procedural posture established throughout the case.

Case 4:26-cv-00381-O-BP Document 25-1 Filed 04/30/26 Page 7 of 11 PageID 1476

Respondent is likewise an "employer" under Title VII (42 U.S.C. § 2000e(b)), the ADA (42 U.S.C. § 12111(5)), and the ADEA (29 U.S.C. § 630(b)). JPMorgan Chase & Co. and its subsidiaries employ over 250,000 individuals worldwide. For claims of sexual harassment under TCHRA, § 21.141 extends employer status to entities with one or more employees.

## III. ARBITRATION AGREEMENT / JURISDICTIONAL BACKGROUND

22. Claimant and Respondents are parties to a Binding Arbitration Agreement ("BAA"), attached as Exhibit A, which defines "JPMorgan Chase and the Firm" to include JPMC and its direct and indirect subsidiaries.

23. In FINRA Case No. 24-01208, Respondents successfully compelled Claimant to remove Title VII/ADA/ADEA and related statutory employment claims by asserting that FINRA lacked jurisdiction over JPM Bank and JPMC and lacked authority over statutory employment claims. The FINRA Panel expressly made no determination as to claims against JPM Bank or JPMC.

## IV. CHAPTER 21 EMPLOYER LIABILITY: ALL THREE ENTITIES

24. The TCHRA claims asserted herein are brought against **all three JPMorgan entities**, each of which independently qualifies as Claimant's "employer" under Tex. Lab. Code § 21.002(8). The FINRA Panel made "no determination" as to JPMS, JPMC, or JPM Bank. The claims against those entities have **never been adjudicated in any forum**. No res judicata or claim preclusion attaches. Claimant's TCHRA claims against JPMS, JPMC, and JPM Bank are presented here for the first time.

## V. SUMMARY OF FACTS (ABBREVIATED)

25. Claimant was employed by JPM Bank in the JPMorgan Private Bank (Fort Worth) while his securities licenses were held through JPMS. On October 22, 2023, Claimant was publicly recognized as a Gold Producer—top approximately 10% of advisors nationally. Two days later, on October 24, 2023, Claimant disclosed his intent to resign. Within hours, HR directed staff to "amend [his] U4 asap" because they suspected he was headed to Merrill Lynch (CX-185, CX-186).

26. On October 27, 2023—before Claimant was interviewed, before witnesses were contacted, and before any evidence was gathered—Jenna Cohen, Head of Private Bank Human Resources ("PBHR"), emailed: "FYI, hoping to wrap up early next week with a termination" (CX-134, CX-135, CX-136). The conclusion was predetermined before the investigation began. The FINRA Panel itself found that "Respondent began investigating reasons to terminate [Claimant] so as to make it more difficult for [Claimant] to go to work with a competitor." Award at 4.

27. On October 27, 2023, Claimant was placed on administrative leave. He was terminated retroactively on December 1, 2023. On December 22, 2023, JPMS filed a Form U5 stating Claimant was "Discharged" for "inappropriate behavior." Respondents' own Global Security division found the expense-related allegations against Claimant "not supported" and "unsubstantiated," yet the termination and defamatory U5 proceeded regardless.

Case 4:26-cv-00381-O-BP Document 25-1 Filed 04/30/26 Page 8 of 11 PageID 1477

28. The FINRA Panel found: the U5 was "inaccurate"; Respondent acted with "intent to hinder" Claimant's career; Respondent "has been found to have done this in the past"; and "this may be a pattern of conduct." The Panel ordered full expungement. Despite these findings—which establish every element of defamation per se under Texas law—the Panel awarded $0 in compensatory damages. At least five prospective employers refused to hire Claimant because of the defamatory U5, including Merrill Lynch (rescinded signed onboarding), Texas Capital (withdrew offer), Morgan Stanley, UBS, and RBC.

## VI. CLAIMS ASSERTED (PROTECTIVE)

29. The following claims track the causes of action asserted in Claimant's Second Amended Statement of Claim (FINRA Case No. 24-01208, filed October 11, 2024) and the verified EEOC Charge of Discrimination (No. 450-2024-04743, filed February 25, 2024). Claims that were forced out of the FINRA proceeding at Respondents' insistence are reasserted here; claims that were submitted but never adjudicated against JPMs, JPM Bank and JPMC are asserted as first-instance claims.

### A. Statutory Discrimination and Retaliation (TCHRA — All Respondents)

30. Pursuant to the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq.:

(i) Sex discrimination and sexual harassment (§§ 21.051, 21.142). The EEOC Charge alleged that Respondents investigated Claimant for a consensual relationship with a female co-worker but did not investigate the female co-worker's identical conduct.

(ii) Disability discrimination and failure to accommodate (§§ 21.051, 21.128). Claimant is a 100% service-connected disabled veteran with service-connected disabilities documented by the U.S. Department of Veterans Affairs. Claimant requested FMLA leave and reasonable accommodations during his employment in 2023, including accommodations related to his service-connected disabilities. Respondents failed to engage in the interactive process required under § 21.128 and denied requested accommodations. Respondents' subsequent investigation, termination, and U5 filing were undertaken without regard to Claimant's protected status as a disabled veteran.

(iii) Retaliation (§ 21.055). After Claimant complained about discriminatory treatment, reasonable accommodations, and expressed a desire to leave, Respondents retaliated by, among other things, overriding his voluntary resignation, retroactively terminating him, and intentionally mismarking his FINRA Form U5.

### B. Common-Law Tort Claims (All Respondents; Counts 1–6 from Second Amended Statement of Claim)

(iv) Defamation / Defamation Per Se (Count 1). Respondents published false and defamatory statements on Claimant's Form U5 and to third parties, imputing unfitness for his profession. The FINRA Panel found the U5 "inaccurate" and filed with "intent to hinder." Against JPMC and JPM Bank, these claims have never been adjudicated.

(v) Business Disparagement (Count 2). Respondents published disparaging statements concerning Claimant's integrity and business practices to clients and prospective employers.

Case 4:26-cv-00381-O-BP Document 25-1 Filed 04/30/26 Page 9 of 11 PageID 1478

(vi) Tortious Interference with Business Relations (Count 3). Respondents interfered with Claimant's prospective employment (including signed onboarding documents with Merrill Lynch) and existing client relationships through the defamatory U5 and direct communications.

(vii) Unfair Competition (Count 4). Respondents' defamatory statements to Claimant's clients and on his U5 caused Claimant to lose clients to JPM.

(viii) Wrongful Discharge (Count 5). Respondents overrode Claimant's voluntary resignation, retroactively terminated him, and used the manufactured "discharge" as a basis for the defamatory U5.

(ix) Weaponization of U5 / Blacklisting (Count 6; Tex. Lab. Code § 52.031). Respondents weaponized the FINRA Form U5 filing process as a tool of competitive sabotage, marking Claimant as "Discharged" for "inappropriate behavior" in retaliation for his departure. This conduct constitutes blacklisting in violation of Tex. Lab. Code § 52.031, which prohibits an employer from preventing or attempting to prevent a discharged employee from obtaining employment with another employer. The Panel found Respondent's conduct was intentional, had been done before, and "may be a pattern of conduct." At least five prospective employers refused to hire Claimant as a direct result.

### C. Contract and Compensation Claims (All Respondents; Counts 7–12 from Second Amended SOC).

(x) Breach of Contract (Count 7). Respondents breached contractual commitments regarding Claimant's employment terms, including commitments made in connection with a baseless customer complaint.

(xi) Promissory Estoppel (Count 8; in the alternative to Count 7).

(xii) Quantum Meruit / Unjust Enrichment (Count 9). Claimant rendered valuable services to Respondents for which he was not fully compensated.

(xiii) Illegal Forfeiture of Earned Compensation (Count 10). Respondents unilaterally forfeited Claimant's vested right to earned compensation in violation of Texas and New York law.

(xiv) Forfeiture of Deferred Compensation — ERISA (Count 11). Respondents forfeited Claimant's deferred compensation in violation of ERISA.

(xv) Violation of Texas and/or New York Labor and Wage Laws (Count 12). Commissions, deferred compensation, and other payments due to Claimant were unlawfully withheld.

### D. Federal Statutory Claims (Title VII / ADA / ADEA) Protective and in the Alternative.

31. Federal statutory claims are asserted protectively and, in the alternative, only, and are preserved for the federal court action, including based on the EFAA election and equitable tolling.

## VII. PRAYER FOR RELIEF

32. Claimant seeks all relief available at law and in equity, including back pay; front pay; compensatory damages; punitive damages (including under Tex. Lab. Code § 21.2585); statutory wage recovery; costs; and pre- and post-judgment interest. Damages exceed $10,000,000.

## VIII. RESERVATION OF RIGHTS / NO WAIVER

33. Claimant expressly reserves and does not waive any rights in the federal court proceedings, including the right to seek a judicial forum and a jury trial if the BAA is unenforceable under the EFAA. Nothing in this filing is a concession of arbitrability, a forum election, or a waiver of any defenses, including challenges to arbitrability and jurisdiction.

## IX. EXHIBITS (TO BE ATTACHED)

Exhibit A — Binding Arbitration Agreement (BAA)

Exhibit B — FINRA Arbitration Award (Dec. 29, 2025), Case No. 24-01208

Exhibit C — EEOC Charge / TWC Dual-Filing Confirmation (Feb. 25, 2024)

Exhibit D — EEOC Dismissal and Notice of Rights (Feb. 5, 2025 / forwarded Mar. 19, 2025)

Exhibit E — Any key supporting documents (optional for intake)

## X. CERTIFICATE OF SERVICE

I hereby certify that on this February 12, 2026, a true and correct copy of the foregoing Protective Statement of Claim and Request for Stay Pending Judicial Determination was served via First Class Mail, Postage Prepaid and/or Certified Mail Return Receipt Requested to the following entities and persons:

**JPMorgan Chase Bank, N.A.**
Attn: Legal Department
1111 Polaris Parkway
Columbus, OH 43240
USPS Tracking #: ____________________

**J.P. Morgan Securities LLC**
Attn: Office of the Secretary
383 Madison Avenue
New York, NY 10179
USPS Tracking #: ____________________

I further certify that a copy has been filed contemporaneously via the AAA online portal at www.adr.org.

Respectfully submitted,

Joshua David Sappi Biering
*Claimant*, *Pro Se*

## XI. FILING NOTES

**Filing Fee:** Per AAA Employment/Workplace Fee Schedule. Claimant requests deferral/waiver given $950,000+ in FINRA legal fees.

**Location:** Dallas/Fort Worth, Texas.

**Arbitrator Qualifications:** Employment law and securities industry experience; no affiliations with any JPMorgan entity, FINRA, or their counsel.

**Related Proceedings:**

(i) FINRA Case No. 24-01208 (Award issued December 29, 2025)

(ii) U.S. District Court, N.D. Tex. — Petition to Partially Confirm/Vacate (Pending/Anticipated)

(iii) EEOC Charge No. 450-2024-04743 (Closed — Dismissal issued February 5, 2025)

(iv) TWC-CRD Complaint (dual-filed Feb. 25, 2024; charge transferred Dec. 5, 2024)