MOTION FOR A BILL OF PARTICULARS

In broad and conclusory fashion, defendant seeks specification, through a bill of particulars, of matters not set forth in the indictment which defendant alleges are essential to the preparation of his defense. Although defendant requests a laundry list of some 19 items, he provides not the first hint of legal analysis to support his position and no citation to caselaw or other authority. This motion, standing as it does with no accompanying or incorporated memorandum of law, is filed in direct violation of Local Rules of Practice and Procedure 4.04, E.D.N.C. Defendant's motion is, therefore, summarily DENIED.

SO ORDERED.[5]

[redacted]

**DONDI PROPERTIES CORPORATION and the Federal Savings and Loan Insurance Corporation as Receiver for Vernon Savings and Loan Association, FSA, Plaintiffs,**

**v.**

**COMMERCE SAVINGS AND LOAN ASSOCIATION, et al., Defendants.**

**Jean Rinard KNIGHT, Plaintiff,**

**v.**

**PROTECTIVE LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. Nos. CA3-87-1725-H, CA3-87-2692-D.**

United States District Court, N.D. Texas, Dallas Division.

July 14, 1988.

[redacted]

[redacted]

---

Don T. O'Bannon of Arter, Hadden & Witts, Dallas, Tex., and Jerome A. Hochberg and Douglas M. Mangel of Arter &

5. Because I have previously granted defendant's motion for a determination of his mental competency to stand trial, and because defendant may wish to testify with respect to his motion to suppress, an evidentiary hearing on that matter will not be scheduled until defendant returns from Butner and is determined to be competent.

Standards of Civil Litigation Conduct.

Hadden, Washington, D.C., for Dondi Properties Corp., et al.

Ernest E. Figari, Alan S. Loewinsohn, and James A. Jones of Figari & Davenport, Dallas, Tex., for Gerald Stool, et al.

Gordon M. Shapiro, Michael L. Knapek, and Patricia J. Kendall of Jackson & Walker, Dallas, Tex., for Commerce Sav. Assn.

Paul E. Coggins and Weston C. Loegering of Davis, Meadows, Owens, Collier & Zachry, Dallas, Tex., for W. Deryl Comer.

Randall L. Freedman, Dallas, Tex., for Jack Franks.

Christopher M. Weil and Amy Brook Ganci of Weil & Renneker, P.C., Dallas, Tex., for R.H. Westmoreland.

Mark T. Davenport of Figari & Davenport, Dallas, Tex., for Jean Rinard Knight.

David M. Kendall of Thompson & Knight, Austin, Tex., for Protective Life Ins. Co.

Before PORTER, Chief Judge, SANDERS, Acting Chief Judge, and WOODWARD, MAHON, BELEW, ROBINSON, BUCHMEYER, FISH, MALONEY, FITZWATER, and CUMMINGS, District Judges.

PER CURIAM:

We sit en banc to adopt standards of litigation conduct for attorneys appearing in civil actions in the Northern District of Texas.

## I.

*Dondi Properties* is a suit for recovery based upon civil RICO, common law and statutory fraud, the Texas Fraudulent Transfer Act, federal regulations prohibiting affiliate transactions, civil conspiracy, negligent misrepresentation, and usury, arising in connection with activities related to the failed Vernon Savings and Loan Association. *Knight* is an action for violations of the Texas Insurance Code and Texas Deceptive Trade Practices—Consumer Protection Act, and for breach of duty of good faith and breach of contract, arising from defendant's refusal to pay plaintiff the proceeds of a life insurance policy.

In *Dondi Properties*, the following motions have been referred to the magistrate pursuant to 28 U.S.C. § 636(b) and N.D. Tex.Misc.Order No. 6, Rule 2(c): the Stool defendants'[1] third motion for sanctions or, in the alternative, to compel (and supplement to the motion); the third motion for sanctions of defendant, Commerce Savings Association (and supplement to the motion); defendant, W. Deryl Comer's, first motion for sanctions or, in the alternative, motion to compel (and supplement to the motion); the Stool defendants' motion for sanctions against plaintiffs' attorney; defendant, Jack Franks', first motion for sanctions or, in the alternative, motion to compel; defendant, R.H. Westmoreland's, motion for sanctions and, in the alternative, to compel; and various submissions containing additional authorities in support of the motions and briefs already filed. Plaintiffs have responded to the motions, and the Stool defendants have filed a motion for leave to file reply to plaintiffs' response.

Perpetual / duplicative / petty filings

The sanction motions complain of plaintiffs' failure to answer interrogatories, failure to comply with prior orders of the court pertaining to discovery, misrepresenting facts to the court, and improperly withholding documents. The magistrate had previously entered orders on March 29, 1988 and April 28, 1988 and defendants contend plaintiffs' conduct with respect to prior orders of the magistrate warrants dismissing their action or awarding other relief to movants.

In *Knight*, there is pending before a judge of this court plaintiff's motion to strike a reply brief that defendant filed without leave of court. On April 8, 1988, defendant filed four motions, including motions for separate trials and to join another

1. The Stool defendants are Gerald Stool, Donald F. Goldman, AMF Partnership, Ltd., Park Cosmopolitan Associates, Duck Hook Associates,

party.[2] On April 27, 1988, plaintiff filed her response to the motions. Thereafter, without leave of court, defendant, on May 26, 1988, filed a reply to plaintiff's response. On June 3, 1988, plaintiff filed a motion to strike the reply, to which motion defendant has filed a response.

Plaintiff contends the reply brief should be stricken because defendant did not, as required by Local Rule 5.1(f), obtain leave to file a reply, because defendant failed to seek permission immediately upon receipt of plaintiff's response, and, alternatively, because defendant's reply was filed in excess of 20 days after plaintiff filed her response. In the event the court does not strike the reply, plaintiff requests leave to file an additional response.

At the request of a member of the court, we convened the en banc court[3] for the purpose of establishing standards of litigation conduct to be observed in civil actions litigated in the Northern District of Texas. In section II of the opinion we establish such standards. In section III the magistrate decides the *Dondi Properties* motions, and in section IV a judge of the court decides the *Knight* motion, in accordance with the standards we adopt.[4]

II.

[redacted] The judicial branch of the United States government is charged with responsibility for deciding cases and controversies and for administering justice. We attempt to carry out our responsibilities in the most prompt and efficient manner, recognizing that justice delayed, and justice obtained at excessive cost, is often justice denied.[5]

We address today a problem that, though of relatively recent origin, is so pernicious that it threatens to delay the administration of justice and to place litigation beyond the financial reach of litigants. With alarming frequency, we find that valuable judicial and attorney time is consumed in resolving unnecessary contention and sharp practices between lawyers. Judges and magistrates of this court are required to devote substantial attention to refereeing abusive litigation tactics that range from benign incivility to outright obstruction. Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive.

★"Beyond the financial reach of litigants"

As judges and former practitioners from varied backgrounds and levels of experience, we judicially know that litigation is conducted today in a manner far different from years past. Whether the increased size of the bar has decreased collegiality, or the legal profession has become only a business, or experienced lawyers have ceased to teach new lawyers the standards to be observed, or because of other factors not readily categorized, we observe patterns of behavior that forebode ill for our system of justice.[6] We now adopt standards designed to end such conduct.

A.

We begin by recognizing our power to adopt standards for attorney conduct in

Turnpike Waldrop Joint Venture, Alamo Associates, and Seven Flags Partnership.

2. The other motions are motions to compel and for protective order.

3. We concede the unusual nature of this procedure. We note, however, that the U.S. District Court for the Central District of California recently sat en banc to decide the constitutionality of the sentencing guidelines promulgated pursuant to the Sentencing Reform Act of 1984. *See United States v. Ortega Lopez,* 684 F.Supp. 1506 (C.D.Cal.1988) (en banc).

4. While we adopt en banc the standards for civil litigation conduct, the decisions regarding the particular motions are those of the magistrate and district judge, respectively, before whom the motions are pending.

5. We do so in the spirit of Fed.R.Civ.P. 1, which provides that the federal rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."

6. Nor are we alone in our observations. In December 1984 the Texas Bar Foundation conducted a "Conference on Professionalism." The conference summary, issued in March 1985, recounts similar observations from leading judges, lawyers, and legal educators concerning the subject of lawyer professionalism.

civil actions and by determining, as a matter of prudence, that we, rather than the circuit court, should adopt such standards in the first instance.

By means of the Rules Enabling Act of 1934, now codified as 28 U.S.C. § 2072, Congress has authorized the Supreme Court to adopt rules of civil procedure. The Court has promulgated rules that empower district courts to manage all aspects of a civil action, including pretrial scheduling and planning (Rule 16) and discovery (Rule 26(f)). We are authorized to protect attorneys and litigants from practices that may increase their expenses and burdens (Rules 26(b)(1) and 26(c)) or may cause them annoyance, embarrassment, or oppression (Rule 26(c)), and to impose sanctions upon parties or attorneys who violate the rules and orders of the court (Rules 16(f) and 37). We likewise have the power by statute to tax costs, expenses, and attorney's fees to attorneys who unreasonably and vexatiously multiply the proceedings in any case. 28 U.S.C. § 1927. We are also granted the authority to punish, as contempt of court, the misbehavior of court officers. 18 U.S.C. § 401. In addition to the authority granted us by statute or by rule, we possess the inherent power to regulate the administration of justice. *See Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546, 550 (5th Cir.1986) (federal courts possess inherent power to assess attorney's fees and litigation costs when losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons); *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc) (district court has inherent power to award attorney's fees when losing party has acted in bad faith in actions that led to the lawsuit or to the conduct of the litigation).

We conclude also that, as a matter of prudence, this court should adopt standards of conduct without awaiting action of the circuit court. We find support for this approach in *Thomas*, where, in the Rule 11 context, the Fifth Circuit noted the singular perspective of the district court in deciding the fact intensive inquiry whether to impose or deny sanctions. The court noted that trial judges are "in the best position to review the factual circumstances and render an informed judgment as [they are] intimately involved with the case, the litigants, and the attorneys on a daily basis." 836 F.2d at 873. We think the circuit court's rationale for eschewing "secondhand review of the facts" in Rule 11 cases may be applied to our adopting standards of litigation conduct: " 'the district court will have a better grasp of what is acceptable trial-level practice among litigating members of the bar than will appellate judges.' ". *Id.* at 873 (quoting *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 566 (E.D.N.Y.1986)).

B.

We next set out the standards to which we expect litigation counsel to adhere.

The Dallas Bar Association recently adopted "Guidelines of Professional Courtesy" and a "Lawyer's Creed"[7] that are both sensible and pertinent to the problems we address here. From them we adopt the following as standards of practice[8] to be observed by attorneys appearing in civil actions in this district:

(A) In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.

(B) A lawyer owes, to the judiciary, candor, diligence and utmost respect.

(C) A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.

(D) A lawyer unquestionably owes, to the administration of justice, the fun-

7. We set out in an appendix pertinent portions of the guidelines and the creed in the form adopted by the Dallas Bar Association.

8. We also commend to counsel the American College of Trial Lawyers' Code of Trial Conduct (rev. 1987). Those portions of the Code that are applicable to our decision today are set out in the appendix.

damental duties of personal dignity and professional integrity.

(E) Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times.

(F) A client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct. A lawyer shall always treat adverse witnesses and suitors with fairness and due consideration.

(G) In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, or demeanor towards opposing lawyers.

(H) A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client.

(I) Lawyers will be punctual in communications with others and in honoring scheduled appearances, and will recognize that neglect and tardiness are demeaning to the lawyer and to the judicial system.

(J) If a fellow member of the Bar makes a just request for cooperation, or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonably withhold consent.

(K) Effective advocacy does not require antagonistic or obnoxious behavior and members of the Bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

Attorneys who abide faithfully by the standards we adopt should have little difficulty conducting themselves as members of a learned profession whose unswerving duty is to the public they serve and to the system of justice in which they practice.[9] Those litigators who persist in viewing themselves solely as combatants, or who perceive that they are retained to win at all costs without regard to fundamental principles of justice, will find that their conduct does not square with the practices we expect of them. Malfeasant counsel can expect instead that their conduct will prompt an appropriate response from the court, including the range of sanctions the Fifth Circuit suggests in the Rule 11 context: "a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Thomas,* 836 F.2d at 878.[10]

We do not, by adopting these standards, invite satellite litigation of the kind we now see in the context of Fed.R.Civ.P. 11 motions. To do so would defeat the fundamental premise which motivates our action. We do intend, however, to take the steps necessary to ensure that justice is not removed from the reach of litigants either because improper litigation tactics interpose unnecessary delay or because such actions increase the cost of litigation beyond the litigant's financial grasp.[11]

Similarly, we do not imply by prescribing these standards that counsel are excused from conducting themselves in any manner otherwise required by law or by court rule. We think the standards we now adopt are a

9. We note that these standards are consistent with both the American Bar Association and State Bar of Texas Codes of Professional Responsibility. *See, e.g.,* ethical considerations EC 7–10, EC 7–36, EC 7–37, and EC 7–38 set out in the appendix.

10. We draw the parallel to Fed.R.Civ.P. 11 with the *caveat* that we are not adopting Rule 11 jurisprudence in the context presented here.

11. We note, by way of example, the Dallas Bar Association guideline that eliminates the necessity for motions, briefs, hearings, orders, and other formalities when "opposing counsel makes a reasonable request which does not prejudice the rights of the client." This salutary standard recognizes that every contested motion, however simple, costs litigants and the court time and money. Yet our court has experienced an increasing number of instances in which attorneys refuse to agree to an extension of time in which to answer or to respond to a dispositive motion, or even to consent to the filing of an amended pleading, notwithstanding that the extension of time or the amended pleading would delay neither the disposition of a pending matter nor the trial of the case.

necessary corollary to existing law, and are appropriately established to signal our strong disapproval of practices that have no place in our system of justice and to emphasize that a lawyer's conduct, both with respect to the court and to other lawyers, should at all times be characterized by honesty and fair play.

### III.

The *Dondi Properties* motions referred to the magistrate for determination raise issues concerning plaintiffs' compliance with prior discovery orders of the court and the conduct of one of plaintiffs' attorneys in contacting a possible witness.

### A.

### *Discovery Issues*

[redacted] Although in excess of 20 pleadings and letters from counsel have been presented to the court involving various defendants' motions for sanctions, the common denominator of all is whether or not plaintiffs have complied with the previous discovery orders of the magistrate.

The case at hand presents complex legal and factual theories involving hundreds of thousands of documents. The logistical problems presented in discovery are compounded by several factors, among them being that (a) none of the Receiver (FSLIC)'s employees were employed by either Vernon Savings and Loan Association, FSA, or its predecessor; (b) prior to the Receiver's receipt of documents they were not kept in a complete and orderly manner; (c) that plaintiffs have had three sets of attorneys of record in this case; and (d) plaintiffs and their counsel, past and present, have not taken adequate measures to assure compliance with the court's prior orders.

In seeking dismissal of plaintiffs' case, the moving defendants have categorized plaintiffs' conduct and that of their counsel as being in "bad faith" and "in defiance" of the court's prior orders. Such characterization of a party opponent's conduct should be sparingly employed by counsel and should be reserved for only those instances in which there is a sound basis in fact demonstrating a party's deliberate and intentional disregard of an order of the court or of obligations imposed under applicable Federal Rules of Civil Procedure. Such allegations, when inappropriately made, add much heat but little light to the court's task of deciding discovery disputes.

Although there are conceded instances of neglect on the part of plaintiffs and their counsel and instances of lack of communication or miscommunication among counsel for the parties in the present discovery disputes, there is no showing of intentional or willful conduct on the part of plaintiffs or their counsel which warrants dismissal under Rule 37(b), Federal Rules of Civil Procedure. However, the disputes which exist amply demonstrate an inadequate utilization of Local Rule 5.1(a).[12]

Local Rule 5.1(a) implicitly recognizes that in general the rules dealing with discovery in federal cases are to be self-executing. The purpose of the conference requirement is to promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus the matters in controversy before judicial resolution is sought. Regrettably over the years, in many instances the conference requirement seems to have evolved into a *pro forma* matter. With increased frequency I observe instances in which discovery disputes are resolved by the affected parties after a hearing has been set—sometimes within minutes before the hearing is to commence. If disputes can be resolved after motions have been filed, it follows that in all but the most extraordinary circumstances, they could have been resolved in the course of Rule 5.1(a) conferences.

A conference requires the participation of counsel for all affected parties. An attorney's refusal to return a call requesting a Rule 5.1(a) conference will not be

**12.** In part Local Rule 5.1(a) reads as follows: "Before filing a motion, counsel for a moving party shall confer with the counsel of all parties affected by the requested relief to determine whether or not the contemplated motion will be opposed."

tolerated. Of course, the conference requirement may be satisfied by a written communication as well. The manner in which the conference is held and the length of the conference will be dictated by the complexity of the issues and the sound judgment of attorneys in their capacities as advocates as well as officers of the court, with the objective of maximizing the resolution of disputes without court intervention. Properly utilized Rule 5.1(a) promotes judicial economy while at the same time reducing litigants' expenses incurred for attorneys' time in briefing issues and in preparing and presenting pleadings.[13]

Because the present controversies may well be resolved, or appreciably narrowed, following further communications among counsel and because the court is not presented with circumstances which warrant dismissal under Rule 37, the movant defendants' motions will be denied at this time.

B.

*Motion for Sanctions*

[redacted] In their motion filed on May 18, 1988, defendants, Goldman, Stool, AMF Partnership Ltd., et al. (the Stool defendants) seek an order sanctioning the conduct of David Hammond, an attorney practicing with the firm which is counsel of record for plaintiffs.

The undisputed facts are that on or about May 9, 1988, plaintiffs' attorney had a telephone conversation with Carl Edwards in which the attorney made inquiries about transactions pertinent to the present case, but the attorney did not identify himself as an attorney representing the plaintiffs.

As stated in the opinion issued in *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir.1975), "the courts have not only the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct *prejudicial to his adversaries.*" (Emphasis added). However, in the present case movants do not seek to disqualify plaintiffs' counsel nor have they shown any prejudice resulting from the communication. Except in those instances in which an attorney's conduct prejudicially affects the interests of a party opponent or impairs the administration of justice, adjudication of alleged ethical violations is more appropriately left to grievance committees constituted for such purpose. Deferring to such bodies permits proper resolution of attorneys' conduct while at the same time relieving courts of deciding matters which are unrelated or at most peripheral to the cases before them. As reflected in the pleadings pertinent to this motion, there are both legal issues and factual conflicts which must be resolved in deciding whether ethical standards were violated. Indeed, following the filing of the motion movants have sought to depose the attorney whose conduct is at issue, which has in turn precipitated a motion for protective order filed by the plaintiffs.

Insuring that members of the legal profession comply with ethical standards should be a matter of concern to all attorneys, and alleged breaches should be brought to the attention of the grievance committee by an attorney without charge to a client, which is appropriate only when resolution by a court is warranted. *Ceramco, Inc., supra.* By the same token, absent a motion to disqualify, which if granted would adversely affect his client's interests, an attorney whose conduct is called into question must himself bear the cost of defending his actions before a grievance committee.

For the foregoing reasons movants' motion for sanctions will be denied, but without prejudice to their counsel's right to present the allegations of misconduct to the grievance committee. The refusal to grant sanctions should not be understood as condoning an attorney's failure to identify himself and his client to a prospective witness. Had the attorney done so in the present case, the present issue may not

13. When Rule 5.1(a) conferences result in agreements, counsel may wish to memorialize such agreements in writing.

have arisen. An attorney is held to a higher standard of conduct than non-lawyers, and unlike non-lawyers, if rebuffed by a prospective witness, the attorney may use available discovery procedures to obtain the information sought.

It is, therefore, ordered that the defendants' motions relating to discovery are denied, but without prejudice to their right to file subsequent motions, if disputes remain after their counsel and plaintiffs' counsel have engaged in a Rule 5.1(a) conference consistent with this order.

It is further ordered that the Stool defendants' motion for sanctions against plaintiffs' attorney is denied, but without prejudice to presentation of the issues raised to the appropriate grievance committee.

It is further ordered that neither the Stool defendants' counsel nor the plaintiffs' attorneys will charge their clients for any time or expenses incurred relating in any manner to the Stool defendants' motion for sanctions against plaintiffs' attorney.

## IV.

[redacted] In *Knight*, plaintiff moves to strike a reply brief that defendant filed without the court's permission. In the alternative, plaintiff seeks leave to file a response to the reply brief.

### A.

It is undisputed that defendant did not obtain court permission to reply to plaintiff's response to defendant's motions for separate trials and to join a party. Defendant explains in its response to the motion to strike that "because of the flurry of activity in this case, it failed to secure permission from the Presiding Judge to file the reply." Although defendant clearly violated a Local Rule of this court, the court concludes that the error did not warrant plaintiff's filing a motion to strike.

The en banc court has adopted standards of civil litigation conduct that apply to attorneys who practice before this court. One standard requires that attorneys cooperate with one another in order to promote "the efficient administration of our system of justice." This and the other standards adopted by the court attempt to satisfy the goals of reducing litigation costs and expediting the resolution of civil actions. The attorneys in *Knight* did not cooperate in connection with the filing of the reply brief, and there resulted a dispute that has presumably increased counsel's fees to their clients, has unquestionably required of the court an unnecessary expenditure of time, and has not materially advanced the resolution of the merits of this case.

In Local Rule 5.1 we have established the briefing and decisional regimens for contested motions. Rules 5.1(a), (c), and (d) prescribe the movant's obligations. Rule 5.1(e) dictates the deadline for filing a response and provides when contested motions shall be deemed ready for disposition. A movant may not, as of right, file a reply to a response; instead, Rule 5.1(f) requires the movant to obtain permission to do so immediately upon receipt of a response. In the present case, defendant's counsel failed to cooperate with plaintiff's counsel because he did not ask him to agree [14] to the filing of a reply. Plaintiff's counsel failed to cooperate when he filed the motion to strike the reply.[15]

While our court has decided that the determination whether to permit a reply is discretionary with each judge, the principle is well-established that the party with the burden on a particular matter will normally be permitted to open and close the briefing. *See, e.g.,* Sup.Ct.R. 35(3); Fed.R.App.P. 28(c). It should thus be rare that a party

**14.** The court is not to be understood as holding that the parties can, by agreement, bind the presiding judge to grant permission to file a reply. Where the parties have so agreed, however, the court will usually grant such permission.

**15.** Plaintiff's motion to strike contains a certificate of conference that states that defendant and plaintiff could not agree regarding the motion to strike. Defendant disputes in its response that plaintiff and defendant had such a conference, but states that had there been one, defendant would have opposed the motion to strike.

who opposes a motion will object to the movant's filing a reply.

In the present case, the parties have presumably incurred the expense of preparing, and the court has expended time considering, pleadings that go *not* to a question that will advance the merits of this case but instead to a collateral determination whether the court should consider a particular pleading. In isolation, such expenditures may appear inconsequential. Considered in the proper context of numerous civil actions and frequent disputes, it is apparent that cooperation between opposing counsel is essential to the efficient operation of our justice system.

B.

Turning to the merits of the motion to strike, the court concludes that the reply brief should not be stricken and that plaintiff should not be permitted to file a further response. Although defendant did not immediately seek permission to file a reply, the court has yet to consider the underlying substantive motions; it thus will not interfere with the court's decisional process to consider the reply. The court declines to permit plaintiff to file a further response because the burden on the motions is upon the defendant, who should thus be given the opportunity to open and close the argument.

SO ORDERED.

## APPENDIX

Excerpts from the **Dallas Bar Association Guidelines of Professional Courtesy**

### PREAMBLE

A lawyer's primary duty is to the client. But in striving to fulfill that duty, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.

A lawyer owes, to the judiciary, candor, diligence and utmost respect.

A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.

A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.

In furtherance of these fundamental concepts, the following Guidelines of Professional Courtesy are hereby adopted.

### COURTESY, CIVILITY AND PROFESSIONALISM

1. General Statement

(a) Lawyers should treat each other, the opposing party, the court and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times.

(b) The client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct. A lawyer shall always treat adverse witnesses and suitors with fairness and due consideration.

(c) In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, or demeanor towards opposing lawyers.

2. Discussion

(a) A lawyer should not engage in discourtesies or offensive conduct with opposing counsel, whether at hearings, depositions or at any other time when involved in the representation of clients. In all contacts with the court and court personnel, counsel should treat the court and its staff with courtesy and respect and without regard to whether counsel agrees or disagrees with rulings of the court in any specific case. Further, counsel should not denigrate the court or opposing counsel in private conversations with their own client. We should all remember that the disrespect we bring upon our fellow members of the Bar and the judiciary re-

[redacted]
flects on us and our profession as well.

(b) Lawyers should be punctual in fulfilling all professional commitments and in communicating with the court and fellow lawyers.

## DEPOSITIONS, HEARINGS, AND DISCOVERY MATTERS

1. General Statement

(a) Lawyers should make reasonable efforts to conduct all discovery by agreement.

(b) A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or his client.

(c) Requests for production should not be excessive or designed solely to place a burden on the opposing party, for such conduct in discovery only increases the cost, duration, and unpleasantness of any case.

2. Scheduling Lawyers should, when practical, consult with opposing counsel before scheduling hearings and depositions in a good faith attempt to avoid scheduling conflicts.

3. Discussion

(a) General Guidelines

(1) When scheduling hearings and depositions, lawyers should communicate with the opposing counsel in an attempt to schedule them at a mutually agreeable time. This practice will avoid unnecessary delays, expense to clients, and stress to lawyers and their secretaries in the management of the calendars and practice.

(2) If a request is made to clear time for a hearing or deposition, the lawyer to whom the request is made should confirm that the time is available or advise of a conflict within a reasonable time (preferably the same business day, but in any event before the end of the following business day).

(3) Conflicts should be indicated only when they actually exist and the requested time is not available. The courtesy requested by this guideline should not be used for the purpose of obtaining delay or any unfair advantage.

(b) Exceptions to General Guidelines

(1) A lawyer who has attempted to comply with this rule is justified in setting a hearing or deposition without agreement from opposing counsel if opposing counsel fails or refuses promptly to accept or reject a time offered for hearing or deposition.

(2) If opposing counsel raises an unreasonable number of calendar conflicts, a lawyer is justified in setting a hearing or deposition without agreement from opposing counsel.

(3) If opposing counsel has consistently failed to comply with this guideline, a lawyer is justified in setting a hearing or deposition without agreement from opposing counsel.

(4) When an action involves so many lawyers that compliance with this guideline appears to be impractical, a lawyer should still make a good faith attempt to comply with this guideline.

(5) In cases involving extraordinary remedies where time associated with scheduling agreements could cause damage or harm to a client's case, then a lawyer is justified in setting a hearing or deposition without agreement from opposing counsel.

[redacted]

4. Minimum Notice for Depositions and Hearings

(a) Depositions and hearings should not be set with less than one week notice except by agreement of counsel or when a genuine need or emergency exists.

(b) If opposing counsel makes a reasonable request which does not prejudice the rights of the client, compliance herewith is appropriate without motions, briefs, hearings, orders and other formalities and without attempting to exact unrelated or unreasonable consideration.

5. Cancelling Depositions, Hearings and Other Discovery Matters

(a) General Statement Notice of cancellation of depositions and hearings should be given to the court and opposing counsel at the earliest possible time.

(b) Discussion

(1) Calling at or just prior to the time of a scheduled hearing or deposition to advise the court or opposing counsel of the cancellation lacks courtesy and consideration.

(2) Early notice of cancellation of a deposition or a hearing avoids unnecessary travel and expenditure of time by opposing counsel, witnesses, and parties. Also, early notice of cancellation of hearings to the Court allows the time previously reserved to be used for other matters.

* * * * * *

TIME DEADLINES AND EXTENSIONS

1. General Statement Reasonable extensions of time should be granted to opposing counsel where such extension will not have a material, adverse effect on the rights of the client.

Does NOT mean automatic "courtesy"

2. Discussion

(a) Because we all live in a world of deadlines, additional time is often required to complete a given task.

(b) Traditionally, members of this bar association have readily granted any reasonable request for an extension of time as an accommodation to opposing counsel who, because of a busy trial schedule, personal emergency or heavy work load, needs additional time to prepare a response or comply with a legal requirement.

(c) This tradition should continue; provided, however, that no lawyer should request an extension of time solely for the purpose of delay or to obtain any unfair advantage.

Not automatic

(d) Counsel should make every effort to honor previously scheduled vacations of opposing counsel which dates have been established in good faith.

* * * * * *

**Dallas Bar Association Lawyer's Creed:**

1. I revere the Law, the System, and the Profession, and I pledge that in my private and professional life, and in my dealings with fellow members of the Bar, I will uphold the dignity and respect of each in my behavior toward others.

2. In all dealings with fellow members of the Bar, I will be guided by a fundamental sense of integrity and fair play; I know that effective advocacy does not mean hitting below the belt.

3. I will not abuse the System or the Profession by pursuing or opposing discovery through arbitrariness or for the purpose of harassment or undue delay.

4. I will not seek accommodation from a fellow member of the Bar for the rescheduling of any Court setting or dis-

Case 4:26-cv-00950-P-BJ Document 9-9 Filed 08/09/26 Page 12 of 13 PageID 117



[redacted]

covery unless a legitimate need exists. I will not misrepresent conflicts, nor will I ask for accommodation for the purpose of tactical advantage or undue delay.

5. In my dealings with the Court and with fellow counsel, as well as others, my word is my bond.

6. I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.

7. I recognize that my conduct is not governed solely by the Code of Professional Responsibility, but also by standards of fundamental decency and courtesy.

8. I will strive to be punctual in communications with others and in honoring scheduled appearances, and I recognize that neglect and tardiness are demeaning to me and to the Profession.

9. If a fellow member of the Bar makes a just request for cooperation, or seeks scheduling accommodation, I will not arbitrarily or unreasonably withhold consent.

10. I recognize that effective advocacy does not require antagonistic or obnoxious behavior, and as a member of the Bar, I pledge to adhere to the higher standard of conduct which we, our clients, and the public may rightfully expect.

The **American College of Trial Lawyers' Code of Trial Conduct** (rev. 1987) provides, in pertinent part:

PREAMBLE

Lawyers who engage in trial work have a specific responsibility to strive for prompt, efficient, ethical, fair and just disposition of litigation....

* * * * * *

To his client, a lawyer owes undivided allegiance, the utmost application of his learning, skill and industry, and the employment of all appropriate legal means within the law to protect and enforce legitimate interests. In the discharge of this duty, a lawyer should not be deterred by any real or fancied fear of judicial disfavor, or public unpopularity, nor should he be influenced directly or indirectly by any considerations of self-interest.

To opposing counsel, a lawyer owes the duty of courtesy, candor in the pursuit of the truth, cooperation in all respects not inconsistent with his client's interests and scrupulous observance of all mutual understandings.

To the office of judge, a lawyer owes respect, diligence, candor and punctuality, the maintenance of the dignity and independence of the judiciary, and protection against unjust and improper criticism and attack, and the judge, to render effective such conduct, has reciprocal responsibilities to uphold and protect the dignity and independence of the lawyer who is also an officer of the court.

To the administration of justice, a lawyer owes the maintenance of professional dignity and independence. He should abide by these tenets and conform to the highest principles of professional rectitude irrespective of the desires of his client or others.

This Code expresses only minimum standards and should be construed liberally in favor of its fundamental purpose, consonant with the fiduciary status

[redacted]

of the trial lawyer, and so that it shall govern all situations whether or not specifically mentioned herein.

* * * * * *

12. DISCRETION IN COOPERATING WITH OPPOSING COUNSEL

The lawyer, and not the client, has the sole discretion to determine the accommodations to be granted opposing counsel in all matters not directly affecting the merits of the cause or prejudicing the client's rights, such as extensions of time, continuances, adjournments and admission of facts. In such matters no client has a right to demand that his counsel shall be illiberal or that he do anything therein repugnant to his own sense of honor and propriety.

13. RELATIONS WITH OPPOSING COUNSEL

(a) A lawyer should adhere strictly to all express promises to and agreements with opposing counsel, whether oral or in writing, and should adhere in good faith to all agreements implied by the circumstances or by local custom. When he knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.

(b) A lawyer should avoid disparaging personal remarks or acrimony toward opposing counsel, and should remain wholly uninfluenced by any ill feeling between the respective clients. He should abstain from any allusion to personal peculiarities and idiosyncracies of opposing counsel.

* * * * * *

**American Bar Association** and **State Bar of Texas Codes of Professional Responsibility** ethical considerations:

EC 7–10. The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.

EC 7–36. Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and above-board in his relations with a judge or hearing officer before whom he appears. He should avoid undue solicitude for the comfort or convenience of judge or jury and should avoid any other conduct calculated to gain special consideration.

EC 7–37. In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer in his conduct, attitude, and demeanor towards opposing lawyers. A lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system.

EC 7–38. A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so. A lawyer should be punctual in fulfilling all professional commitments.

EC 7–39. In the final analysis, proper functioning of the adversary system depends upon cooperation between lawyers and tribunals in utilizing procedures which will preserve the impartiality of the tribunal and make their decisional processes prompt and just, without impinging upon the obligation of the lawyer to represent his client zealously within the framework of the law.

[redacted]