# PLAINTIFF'S APPENDIX IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## VOLUME 1 OF 4

## INDEX


| APP. | DESCRIPTION |
|---|---|
| **0001-0008** | Executed Declaration of Joshua David Sappi Biering |
| **0009-0016** | FINRA Award |
| **0017-0027** | Award-Confirmation Orders and Judgment |
| **0028-0070** | EEOC Position Statement |
| **0071-0074** | EEOC Charge of Discrimination |
| **0075-0080** | Form U5 (Filed December 22, 2023) |
| **0081-0111** | Employee Relations Investigation File and Communications |
| **0112-0127** | Career/Performance Track and Global Security Expense Investigation |
| **0128-0131** | ER Opening/Closing Memoranda and Findings |
| **0132-0142** | ER Intake and Escalation Records |
| **0143-0280** | Stewart Support/Leave Texts; Disability, EAP, Leave, and FMLA Records |


Relied-upon passages are highlighted and bracketed in the margin. Each page carries a consecutive record label at the top right (App. NNNN).

# Executed Declaration of Joshua David Sappi Biering

**App. 0002-0008**

Executed declaration under 28 U.S.C. § 1746 (signed 2026-08-17). Qualification and disability records are separately collected at App. 0144-0280 and App. 0664-0714.

# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JOSHUA DAVID SAPPI BIERING,**

Plaintiff, *Pro Se,*

v.

**JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO., AND J.P. MORGAN SECURITIES LLC,**

Defendants.

§ § § § § § § § § § §

**Case No.** 4:26-cv-00950-P

Related Case No. 4:26-cv-00381-O
FINRA Case No. 24-01208
EEOC Charge No. 450-2024-04743
AAA Case No. 01-26-0000-7215

## DECLARATION OF JOSHUA DAVID SAPPI BIERING IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Joshua David Sappi Biering, declare under 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and am appearing *pro se*. I am over eighteen and competent to testify. I make this Declaration from personal knowledge. When I identify a document produced by another person or entity, I identify it only as the copy I received, produced, maintained, or used in the proceedings described below.

2. I hold securities-industry registrations under CRD No. 6883842. I graduated with honors from the United States Military Academy at West Point, served as a U.S. Army Captain, deployed in support of Operation Enduring Freedom, and received the Bronze Star Medal. I began employment with JPMorgan Chase Bank, N.A. on May 23, 2016. By 2023, I was an Executive Director, Grade 604, in the J.P. Morgan U.S. Private Bank in Fort Worth. I am presently a financial advisor at Raymond James.

3. I am male and a Brazilian-American dual citizen. I am also a United States Army veteran with a VA-recognized service-connected disability rated at 100%. My VA records include an

anxiety-related service-connected condition.

4. In 2023, my annual base salary was $225,000, and I had been recognized as a Gold Producer. On September 27, 2023, I emailed Ben Stewart my year-end self-assessment. It reported approximately $5.433 million in annualized risk-adjusted revenue and a client book of approximately $973 million.

5. In May 2023, I disclosed my 100% service-connected disability rating to JPMorgan registration and management personnel in connection with financial-disclosure items arising from federal total-and-permanent-disability student-loan discharges. I supplied supporting disability documentation.

6. On September 7, 2023, I told Stewart in writing that I did not like the emotional state I was in and that we needed to figure something out. On September 10, I asked about taking two to three weeks away, working from home part of the time, and other options that would allow me to step away while monitoring pending responsibilities. Stewart did not approve that proposed arrangement.

7. On September 14, 2023, I asked Stephanie Stainback for the JPMorgan Employee Assistance Program contact she had referenced, and she connected me with John Tuttle. I discussed health and leave options with the EAP. On September 26, J.T. Aughinbaugh told me that taking FMLA or short-term leave was not the right move.

8. On October 6, 2023, I again contacted Stainback regarding FMLA and leave options for my own health condition. I did not receive an FMLA eligibility notice, a written rights-and-responsibilities notice, a designation notice, or a request for medical certification for leave relating to my own condition.

9. By October 2023, I had participated in Merrill Lynch recruiting meetings, diligence, a

financial pro forma, background and onboarding steps, and transition planning. On October 27, 2023, I was physically at Merrill Lynch completing onboarding-related steps when I received notice that my JPMorgan virtual workspace had been accessed.

10. On the morning of October 24, 2023, I met with Kyle Hitchcock. I told him I was overwhelmed by the work environment and lack of support, became emotional, and told him I intended to resign. Later that day, I verbally resigned to Stewart and Aughinbaugh. I told them I was a veteran with an anxiety disability and asked about incentive compensation for work I had already completed.

11. On October 27, 2023, Stewart told me by speakerphone that I was being placed on paid involuntary administrative leave. He did not tell me the accusation or give me a substantive explanation. I told him that I was resigning. I also sought information from Stainback and did not receive a substantive explanation of the allegation.

12. On October 28, 2023, at approximately 10:45 a.m., I submitted my written resignation by email to Stewart, Aughinbaugh, and Hitchcock and separately through JPMorgan's HR system. The HR workflow reflected 'Approved Resignation' and a projected notice-period end date of December 26, 2023. I understood that I remained in JPMorgan's notice-period process unless the firm took further action.

13. I complied with JPMorgan's notice-period restrictions and instructions, remained available as required, and structured my transition around that process while awaiting the firm's separation and Form U5 actions.

14. On November 2, 2023, Jonathan Jacobs contacted me about what he described as a confidential investigation without disclosing its subject. On November 7, I participated in an Employee Relations interview conducted by Jacobs and Chris McGee. I asked that my counsel be

permitted to participate, but Jacobs did not permit counsel to join the interview.

15. The sealed text-message exhibit in the Appendix contains approximately 183 pages of contemporaneous messages between me and the employee referred to in the public filings as the Employee Raising Complaint. I sent and received those messages. On December 21, 2023, before JPMS filed the Form U5, I provided that message record to JPMorgan for review.

16. Before I was told that my employment had been terminated, people outside the termination call were already using 'fired' or 'canned' language about me. On November 2, 2023, my assistant asked me why I had been fired. On November 28, a principal of the client referred to as XYZ Dental asked when I was going to explain where I was moving and why I was going to get 'canned.' I had not yet been told I was being fired.

17. On December 1, 2023, Stewart and Aughinbaugh informed me by recorded telephone call that my JPMorgan Chase employment was terminated effective that day following an Employee Relations investigation and based on the firm's Code of Conduct and anti-harassment policies. During the call, I asked about reviewing and rebutting the underlying reports and about the timing and language of my Form U5.

18. My annual base salary remained $225,000 at the time of termination. I did not receive regular base salary for December 2 through December 26, 2023. I requested payment of compensation I believed remained due for 2023 and for the remaining notice period. I also did not receive the incentive compensation that JPMorgan's internal November 2023 records reflected as zero.

19. Before the Form U5 was filed, my counsel and I objected in writing to a discharge characterization and requested that the separation be reported as voluntary. I personally participated in, reviewed, or authorized written objections dated December 6, 12, 13, 19, 20, and

21, 2023. At the time, I understood that a discharge-marked U5 would create a serious obstacle to my pending competitor transition.

20. On December 21, 2023, I sent a written complaint to JPMorgan personnel concerning my disability, FMLA, requests for leave and work adjustments, and my treatment during the separation process. I sent that complaint before JPMS filed my Form U5 the next day.

21. On December 22, 2023, JPMS filed my Form U5 marked 'Discharged' with an explanation stating that I had resigned and was later terminated for 'inappropriate behavior.' I had objected to that characterization before the filing and had requested voluntary treatment.

22. Merrill Lynch did not complete my onboarding. I continued seeking employment and joined Raymond James in January 2024. Approximately 35% of my former JPMorgan client book ultimately transferred with me to Raymond James. After the U5 filing, I also received inquiries concerning my record from securities regulators in Missouri, Hawaii, Colorado, and Massachusetts.

23. I have continued working to rebuild my practice at Raymond James, but the business has not recovered. The practice I managed at JPMorgan was approximately $973 million in September 2023. Only approximately 35% of that client book transferred to Raymond James, and my client assets have continued to decline. As of August 2026, my assets under management at Raymond James are approximately $75 million.

24. My work and client relationships were centered in Fort Worth, where my professional, social, and community relationships overlap. After my separation, clients, colleagues, and other people in the community asked me why I had been fired or what had happened. Members of my family also encountered questions about the circumstances. These events have substantially affected my professional reputation and my family's social reputation and relationships in the Fort

Worth community.

25. On September 10, 2024, I executed a verified petition under Texas Rule of Civil Procedure 202 seeking pre-suit depositions concerning the dissemination of statements about me and related privacy issues. I did not seek damages through that proceeding. My purpose was to identify the source and extent of the dissemination and to stop further dissemination of statements I believed were false.

26. Since my termination and the professional events that followed, I have experienced worsening anxiety and emotional health and have undergone ongoing therapy and medical treatment.

27. The February 18, 2016 Binding Arbitration Agreement referenced in the Brief and Appendix is the agreement I executed as a condition of my employment. The copy filed in the Appendix is a true and correct copy of the agreement I executed.

28. I participated throughout FINRA Arbitration No. 24-01208, including discovery and the six-day evidentiary hearing in December 2025. I attended the hearing and heard the testimony. The Panel served its Award on December 29, 2025. I also participated in the related federal confirmation action, Biering v. J.P. Morgan Securities, LLC, No. 4:26-cv-00381-O, in which the Award was confirmed on July 31, 2026.

29. The exhibits filed in Plaintiff's Appendix and cited in Plaintiff's Brief and Statement of Undisputed Material Facts include documents Defendants produced in FINRA Arbitration No. 24-01208; documents I produced; exhibits marked or used in that proceeding; the FINRA Award and tribunal records; court records from the related federal action; public regulatory records; and records and correspondence I sent, received, or maintained. When I identify those materials as true and correct copies, I mean that the copies filed are the same records I received, produced,

maintained, downloaded, or used in the underlying proceedings.

30. Where the Appendix cites a working transcript excerpt prepared from the FINRA hearing audio, the underlying hearing audio is the source of the testimony. I attended the testimony and have reviewed the cited transcript materials in connection with this litigation. The transcript excerpts identify the corresponding testimony in the hearing record and will be conformed to any certified transcript if one becomes available.

31. The exhibits identifying non-party individuals and entities referred to by role or pseudonym in the public filings, including the Employee Raising Complaint, XYZ Dental, XYZ Energy, and the comparator, are filed under seal. Their identities appear only in the sealed materials.

I declare under penalty of perjury that the foregoing is true and correct.

**JOSHUA DAVID SAPPI BIERING**
Plaintiff, *Pro Se*
4635 Washburn Avenue
Fort Worth, Texas 76107
(682) 218-6738
jdsb@bierfam.com

Executed on August 17, 2026, in Fort Worth, Texas.

# FINRA Award

**App. 0010-0016**

Final arbitration award, FINRA Case No. 24-01208.

**Award**
**FINRA Dispute Resolution Services**

---

In the Matter of the Arbitration Between:

Claimant
Joshua David Sappi Biering

vs.

Respondents
J.P. Morgan Securities, LLC
JPMorgan Chase & Co.
JPMorgan Chase Bank, N.A.

Case Number: 24-01208

Hearing Site: Dallas, Texas

---

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

Nature of the Dispute: Associated Person vs. Member and Non-Members

## REPRESENTATION OF PARTIES

For Claimant Joshua David Sappi Biering ("Claimant"): Joshua J. Iacuone, Esq. and Greg McAllister, Esq., Iacuone McAllister Potter PLLC, Dallas, Texas.

For Respondent J.P. Morgan Securities, LLC ("Respondent"): Jeffrey S. Dunlap, Esq. and Sarah Richardson, Esq., UB Greensfelder LLP, Cleveland, Ohio.

Respondent JPMorgan Chase & Co. did not enter an appearance in this matter.

Respondent JPMorgan Chase Bank, N.A. (collectively, with Respondent and JPMorgan Chase & Co., "Respondents") did not enter an appearance in this matter.

## CASE INFORMATION

Statement of Claim filed on or about: June 3, 2024.
Amended Statement of Claim filed on or about: August 12, 2024.
Second Amended Statement of Claim filed on or about: October 11, 2024.
Claimant signed the Submission Agreement: June 3, 2024.

Statement of Answer filed by Respondent on or about: September 5, 2024.
Statement of Answer to Second Amended Statement of Claim filed by Respondent on or about: October 31, 2024.
Respondent signed the Submission Agreement: September 10, 2024.

JPMorgan Chase & Co. did not file a Statement of Answer or sign the Submission Agreement.

JPMorgan Chase Bank, N.A. did not file a Statement of Answer or sign the Submission Agreement.

## CASE SUMMARY

In the Second Amended Statement of Claim, Claimant asserted the following causes of action: defamation/defamation per se and violation of FINRA rules; business disparagement; tortious interference; unfair competition; wrongful discharge; weaponization of U5; breach of contract; promissory estoppel; quantum merit and unjust enrichment; illegal forfeiture of earned compensation; forfeiture of deferred compensation (violation of ERISA); and violation of Texas and/or New York labor and wage laws.

Unless specifically admitted in the Statement of Answer to Second Amended Statement of Claim, Respondent denied the allegations made in the Second Amended Statement of Claim and asserted various affirmative defenses.

## RELIEF REQUESTED

In the Second Amended Statement of Claim, Claimant requested damages at least more than $10,000,000.00, including:

a) Damages Claimant suffered from loss of clients, including, without limitation, lost commissions and profits;
b) Expungement and modification of the Form U5 in Claimant's registration records maintained by the Central Registration Depository ("CRD");
c) Specific performance of Respondents' promise to pay Claimant's attorneys' fees in connection with expungement of a customer complaint referenced in the Second Amended Statement of Claim (or, alternatively, damages due to Respondents' failure to perform such promise);
d) Lost or forfeited deferred compensation;
e) Reasonable attorneys' fees incurred in the prosecution of Claimant's claims in this action;
f) Statutory penalties and damages;
g) Liquidated damages;
h) Punitive damages;
i) Damages to Claimant's reputation;
j) Past lost earnings;
k) Future lost earnings;
l) Consequential damages;
m) Mental anguish and emotional distress damages;
n) Future lost earning capacity;
o) The highest pre- and post-judgment interest permitted by law on all damages;
p) FINRA forum and other fees; and
q) Such other and furth relief, general or special, at law or in equity, to which the Panel determines Claimant is entitled.

In the Statement of Answer to the Second Amended Statement of Claim, Respondent requested that the Panel deny Claimant's claims; assess all costs and forum fees against Claimant; and award any other relief to Respondent that the Panel deems just and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

The original Statement of Claim filed on June 3, 2024, and an Amended Statement of Claim filed on August 12, 2024, were not served on Respondent or considered by the Panel. The Statement of Claim filed on October 11, 2024, is deemed the only Statement of Claim filed in this matter.

JPMorgan Chase & Co. is not a member or associated person of FINRA and did not voluntarily submit to arbitration. Therefore, the Panel made no determination with respect to the claims against JPMorgan Chase & Co.

JPMorgan Chase Bank, N.A. is not a member or associated person of FINRA and did not voluntarily submit to arbitration. Therefore, the Panel made no determination with respect to the claims against JPMorgan Chase Bank, N.A.

The Panel has provided an explanation of the decision in this award. The explanation is for the parties' information only and is not precedential in nature.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant's claims, except for expungement, are denied in their entirety.

2. The Panel recommends the expungement of the Reason for Termination and Termination Explanation in Section 3 of Joshua David Biering's (CRD Number 6883842) Form U5 filed by J.P. Morgan Securities, LLC (CRD Number 79) on December 22, 2023 and maintained by the CRD. The Reason for Termination shall be changed to "Voluntary" and the Termination Explanation should be deleted in its entirety and shall appear blank. This directive shall apply to all references to the Reason for Termination and Termination Explanation.

   The Panel further recommends the expungement of the Date Terminated field in Section 4 of the Form U5. The entry should be deleted in its entirety and shall be replaced with the following date: "10/28/2023".

   The above recommendations are made with the understanding that the registration records are not automatically amended. Joshua David Sappi Biering must obtain confirmation of this Award from a court of competent jurisdiction, before the CRD will execute the expungement directive, and must forward a copy of the Court Order to FINRA's Credentialing, Registration, Education and Disclosure Department for the amendments to be incorporated into the Registration Records.

3. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, treble damages, and attorneys' fees, are denied.

## ARBITRATORS' EXPLANATION OF DECISION

The Panel believes that when Respondent learned that Claimant was contemplating resigning from Respondent and going to work for a competitor of Respondent, Respondent began investigating reasons to terminate Claimant so as to make it more difficult for Claimant to go to work with a competitor of Respondent. Based on the testimony and the citation to instances in which Respondent has been found to have done this in the past, the Panel is concerned that this may be a pattern of conduct.

Claimant was placed on administrative leave on October 27, 2023, without being informed of the claim being asserted against him. On October 28, 2023, Claimant resigned from Respondent. Respondent's policies required Claimant to remain an employee on a "Notice Period" or "garden leave" for 60 days after resignation, unless earlier terminated by Respondent. At no time following October 27, 2023, was Claimant permitted to engage in any conduct with Respondent for which registration would be required.

On December 1, 2023, Claimant was notified his employment was terminated for violation of Respondent's code of conduct. Both parties concede the violation did not involve regulatory concerns. On December 22, 2023, Respondent filed a Form U-5 annotating that Claimant was "Discharged" with an explanation of "After RR submitted resignation, but before expiration of Notice Period, RR was terminated for inappropriate behavior. Not related to the sale of securities or any customer complaints."

While the Panel believes Respondent was within its rights, based on the continuing employment status of Claimant and the results of its investigation, to terminate Claimant subsequent to his resignation, the Panel believes one of the primary reasons for the timing of the filing of the U-5 was to hinder Claimant's ability to transfer his book of business to a competitor of Respondent. The Panel does not find the reasons for termination given in the Form U-5 to be "defamatory." It does find, however, based on the facts in this case, the Form U-5 to be inaccurate. Accordingly, the Panel orders the Form U-5 to be expunged and amended to reflect that the termination was "Voluntary;" the explanation for termination be omitted, and; the date of termination be amended to October 28, 2023.

As to Claimant's claim that Respondent agreed to pay his attorneys' fees with respect to the expungement of a customer claim from his Form U-4, the Panel finds that while there may have been some discussions in that regard while Claimant was still employed by Respondent no such agreement was ever reduced to writing and any benefit/consideration that Respondent might derive from such an action vanished once Claimant was no longer employed by Respondent. The expungement was commenced after Claimant left Respondent and the correspondence between counsel for Claimant and Respondent shows Respondent did not acknowledge the

existence of any such agreement. There was, therefore, no detrimental reliance on any such promise by Claimant in proceeding with the expungement.

With respect to damages, although the Panel acknowledges the absence of a clean U-5 makes it very difficult to move to a Tier One competitor of Respondent, the Panel notes Claimant secured lucrative employment with a highly respected national brokerage firm less than two months after his termination from Respondent. The Panel further reiterates its finding that the reason for termination in the Form U-5 submitted by Respondent was not "defamatory." Accordingly, Claimant's claim for damages is denied.

## FEES

Pursuant to the Code of Arbitration Procedure, the following fees are assessed:

**Filing Fees**
FINRA Dispute Resolution Services assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$ 2,300.00 |

**The filing fee is made up of a non-refundable and a refundable portion.*

FINRA Dispute Resolution Services administratively waived Claimant's refundable portion of the filing fee of $ 1,500.00.

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute. Accordingly, as a party, Respondent is assessed the following:

| | |
|---|---|
| Member Surcharge | =$ 4,325.00 |
| Member Process Fee | =$ 7,300.00 |

**Discovery-Related Motion Fees**
Fees apply for each decision rendered on a discovery-related motion.

| | |
|---|---|
| One (1) decision on a discovery-related motion on the papers with one (1) Arbitrator @ $200.00/decision | =$ 200.00 |

Claimant submitted one (1) discovery-related motion

| | |
|---|---|
| Total Discovery-Related Motion Fees | =$ 200.00 |

The Panel has assessed the total discovery-related motion fees to Respondent.

**Hearing Session Fees and Assessments**
The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the Arbitrators, including a pre-hearing conference with the Arbitrators, which lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Two (2) pre-hearing sessions with a single Arbitrator @ $450.00/session | | | =$ 900.00 |
| Pre-Hearing Conferences: | May 8, 2025 | 1 session | |
| | August 27, 2025 | 1 session | |
| | | | |
| One (1) pre-hearing session with the Panel @ $1,575.00/session | | | =$ 1,575.00 |
| Pre-Hearing Conference: | November 21, 2024 | 1 session | |
| | | | |
| Eleven (11) hearing sessions @ $1,575.00/session | | | =$ 17,325.00 |
| Hearings: | December 3, 2025 | 2 sessions | |
| | December 4, 2025 | 2 sessions | |
| | December 5, 2025 | 2 sessions | |
| | December 11, 2025 | 2 sessions | |
| | December 12, 2025 | 2 sessions | |
| | December 15, 2025 | 1 session | |
| **Total Hearing Session Fees** | | | =$ 19,800.00 |

The Panel has assessed the total hearing session fees to Respondent.

All balances are payable to FINRA Dispute Resolution Services and are due upon receipt.

FINRA Dispute Resolution Services




## ARBITRATION PANEL

| | | |
|---|---|---|
| Eric Ross Cromartie | - | Public Arbitrator, Presiding Chairperson |
| Christine Rister | - | Public Arbitrator |
| Alison Battiste Clement | - | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

**Concurring Arbitrators' Signatures**

***Eric Ross Cromartie*** **12/24/2025**

Eric Ross Cromartie
Public Arbitrator, Presiding Chairperson

Signature Date

***Christine Rister*** **12/29/2025**

Christine Rister
Public Arbitrator

Signature Date

***Alison Battiste Clement*** **12/26/2025**

Alison Battiste Clement
Non-Public Arbitrator

Signature Date

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

December 29, 2025
Date of Service (For FINRA Dispute Resolution Services use only)

# Award-Confirmation Orders and Judgment

**App. 0018-0027**

Order confirming award, final judgment, and Rule 59(e) motion (Related Case No. 4:26-cv-00381-O).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00381-O-BP** |
| | § | |
| **J.P. MORGAN SECURITIES, LLC, *et al*.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and any objections thereto, in accordance with 28 U.S.C. § 636(b)(1), the undersigned Chief United States District Judge believes that the Findings and Conclusions of the Magistrate Judge are correct, and they are accepted as the Findings and Conclusions of the Court.

Accordingly, it is **ORDERED** that Plaintiff Joshua Biering's petition to confirm, modify, and vacate in part a FINRA arbitration award (ECF No. 11) is **GRANTED** in part to the extent he seeks confirmation of the award and **DENIED** as to the remainder, and the arbitration award is **CONFIRMED**.

**SO ORDERED** on this **31st day** of **July, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00381-O-BP** |
| | § | |
| **J.P. MORGAN SECURITIES, LLC, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## JUDGMENT

This Judgment is issued pursuant to Fed. R. Civ. P. 58(a).

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered.

It is **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. Plaintiff Joshua Biering's petition to confirm, modify, and vacate in part a FINRA arbitration award (ECF No. 11) is **GRANTED** in part to the extent he seeks confirmation of the award and **DENIED** as to the remainder, and the arbitration award is **CONFIRMED**.

2. The clerk shall transmit a true copy of this Judgment, together with a true copy of the Order accepting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge, to the parties.

3. Costs are taxed against the party incurring such costs.

**SO ORDERED** on this **31st day** of **July, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| | § | |
| Petitioner, *Pro Se,* | § | **Case No.** 4:26-cv-00381-O-BP |
| v. | § | |
| | § | FINRA Case No. 24-01208 |
| **J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,** | § | EEOC Charge No. 450-2024-04743 |
| | § | AAA Case No. 01-26-0000-7215 |
| | § | |
| | § | |
| Respondents. | § | |

**PETITIONER'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER RULE 59(e), OR ALTERNATIVELY FOR RELIEF UNDER RULES 60(b)(1) AND 60(b)(3), AND BRIEF IN SUPPORT**

Petitioner Joshua David Sappi Biering, proceeding pro se, moves under Federal Rule of Civil Procedure 59(e) to alter or amend the Order and Judgment entered July 31, 2026. Dkts. 54–55. Alternatively, Petitioner requests relief under Rules 60(b)(1) and 60(b)(3).

This timely motion rests on the existing record, seeks no discovery or hearing, and does not disturb the Panel's liability findings, credibility findings, fee assessment, or Form U5 directives. It addresses two errors: (1) treating the Award's silence concerning archived Form U4 Occurrence Nos. 1977589 through 1977593 as a merits denial; and (2) disposing of distinct but-for expense categories as one sanctions demand without citing or applying *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017).

## I. STANDARD AND TIMELINESS

Rule 59(e) permits correction of a manifest error of law or fact. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). This motion is timely because it

was filed within twenty-eight days of the July 31 Judgment. Fed. R. Civ. P. 59(e). It relies only on the record before judgment.

Both subjects were preserved. The Amended Verified Petition requested relief under 9 U.S.C. §§ 11(b) and 11(c) concerning the archived occurrences and requested documented but-for expenses. Dkt. 11 ¶¶ 121–151, 158–169. Docket 45 presented the operative FINRA pleading, JPMS's corrective Form U4 amendment, the hearing transcript, Respondents' hearing acknowledgment, and the *Goodyear* framework. Docket 52 objected to the Recommendation's treatment of both subjects. Dkt. 52 at 11–12, 21–23.

Rule 60(b)(1) alternatively reaches a judicial legal mistake. *Kemp v. United States*, 596 U.S. 528, 533–34 (2022). Rule 60(b)(3) reaches an opposing party's material misrepresentation or misconduct upon clear and convincing proof that it prevented the movant from fully and fairly presenting his case. *Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 641–42 (5th Cir. 2005). Petitioner alleges no fraud on the Court and seeks no personal sanction.

## II. THE JUDGMENT CONVERTED AN UNRESOLVED FORM U4 ISSUE INTO A MERITS DENIAL

### A. The five financial disclosures are distinct from the customer-dispute expungement

Occurrence No. 2204024 concerned a customer complaint. It was adjudicated in FINRA Case No. 23-03445 and confirmed by the 96th District Court of Tarrant County in Cause No. 096-360735-25. It is not at issue.

This motion concerns Occurrence Nos. 1977589 through 1977593. Those entries reported federal student-loan balances discharged because of Petitioner's total and permanent disability as bankruptcy or creditor-compromise events. Dkt. 20-6 at 10–21,

29, 34, PageID 562–73, 581, 586. JPMS later submitted Form U4 Amendment ID 61688417 stating that the disclosures were removed as "DRP filed in Error" because the balances were forgiven. *Id.* at 40–41, PageID 592–93. The amendment corrected the current Form U4 but not the archived copies in CRD. Dkt. 33-3 at 169–74, PageID 2005–10.

The five entries are financial disclosures, not customer-dispute information. *Jonathan Edward Graham* confirms that Rule 2080 concerns customer-dispute information and that the SEC lacked jurisdiction to review FINRA's refusal to remove challenged non-customer CRD information. Exchange Act Release No. 89237, 2020 WL 3820988, at *4–7 (SEC July 7, 2020). That jurisdictional gap is not a merits determination.

**B. The issue was pleaded, examined, and acknowledged**

Respondents represented that "Ground Two is not part of Biering's Statement of Claim nor is it addressed in the Arbitration Award." Dkt. 41 at 3–4, PageID 2202–03. The second clause was correct. The first was not. The Recommendation found that the Statement of Claim "does mention the U4 expunction issue." Dkt. 51 at 4, PageID 2592. The pleading alleged the incorrect reporting, continuing archived access, and resulting licensing and employment impairment. Dkt. 20-4 ¶¶ 50, 53, 57, 129–132.

The hearing record confirms presentation. Petitioner's counsel explained that the incorrect entries remained archived and continued to appear in CRD. Dkt. 33-3 at 169–70, PageID 2005–06. The Chairperson confirmed that the incorrect loan information remained archived. *Id.* at 170–71, PageID 2006–07. Respondents' counsel Jeffrey S. Dunlap stated that this was "consistent with my understanding." *Id.* at 171, PageID

2007; Dkt. 45 at 4, PageID 2557. The Chairperson called the absence of a correction mechanism "bizarre." Dkt. 33-3 at 172–74, PageID 2008–10.

The Award identifies none of the five occurrences, mentions no corrective amendment, and grants or denies no archived-record remedy. The Recommendation agreed that the Award "contains no mention of the U4 or why the panel does not address it." Dkt. 51 at 5, PageID 2593.

### C. The Recommendation omitted the record-supported third possibility

The Recommendation reasoned that either Petitioner did not request removal and *Pioneer* barred relief, or he requested removal and the Award's residual denial rejected it. Dkt. 51 at 5–6. That binary omitted the possibility established by its own findings: the issue was submitted and examined but not completely adjudicated in the Award.

*Pioneer Natural Resources USA, Inc. v. PACE Local 4-487* concerns relief a party could have requested but did not, or relief the arbitrator declined to award. 328 F.3d 818, 821 (5th Cir. 2003). *Brown v. Witco Corp.* separately recognizes an issue "submitted but . . . not completely adjudicated by the original award" and an award "ambiguous in its scope and implementation." 340 F.3d 209, 219 (5th Cir. 2003). The Judgment adopted the Recommendation without resolving that distinction and without separately adjudicating the preserved § 11(b) ground.

## III. THE AWARD'S SILENCE MUST BE ANALYZED UNDER §§ 11(b) AND 11(c)

Section 11(c) permits modification where an award is "imperfect in matter of form not affecting the merits of the controversy" and directs correction "so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11(c). The requested correction alters no liability, damages, credibility determination, prevailing-party ruling,

fee allocation, Form U5 relief, or termination finding. JPMS already marked the five entries “filed in Error.” What remains is the legal effect of the Award’s omission and the archived residue—form and implementation, not a new merits contest.

Section 11(b) applies in the alternative only if the residual denial is construed to decide the distinct archived-record remedy. Under that construction, the Award is given dispositive effect concerning occurrences it never identifies and a remedy it never addresses. Petitioner asks the Court to confine or strike only that implied determination while leaving the remainder of the Award standing. At minimum, the Court should expressly adjudicate the § 11(b) ground. If clarification by the original Panel is required, *Brown* permits a limited remand confined to whether the Award disposed of the five occurrences. 340 F.3d at 219.

This Court has previously applied § 11 to modify a FINRA award without altering its substantive disposition. *Purshe Kaplan Sterling Investments, Inc. v. Vungarala*, No. 4:21-cv-00889-O, ECF Nos. 16, 18 (N.D. Tex. Jan. 26, 2022); *see also* Dkt. 52 at 11. Petitioner likewise asks for no new merits determination—only an express ruling on whether the Award’s silence is a correctable non-merits defect.

## IV. THE EXPENSE RULING OMITTED THE PRESENTED CAUSATION STANDARD

Docket 22-8 organized forty-seven entries into four but-for categories totaling $861,407.26. Dkt. 22-8 at 1–7, PageID 1074–80. The Recommendation stated $864,407.26, described the request as “most like a sanction,” and denied it without findings concerning any category. Dkt. 51 at 7, PageID 2595. Docket 52 preserved both the $3,000 discrepancy and the category-specific objection. Dkt. 52 at 21–23.

The preserved categories are:

(i) **$293,017.06** — would not have been incurred ***but for*** the December 22, 2023 Form U5 the Panel found inaccurate and filed to hinder competing registration.

(ii) **$408,793.39** — would not have been incurred ***but for*** discovery delay and the resulting duplication, the burden the Panel assessed against Respondent.

(iii) **$123,536.06** — incurred in January and February 2026, after the December 29, 2025 Award, and therefore would not have been incurred ***but for*** the inaccurate U5.

(iv) **$36,060.75** — would not have been incurred ***but for*** the archived student-loan entries JPMS marked "DRP filed in Error" that remained archived. Dkt. 20-6 at 40–41, PageID 592–93; Dkt. 33-3 at 169–70, PageID 2005–06.

Under *Goodyear*, compensatory inherent-power relief is limited to expenses that would not have been incurred ***but for*** identified misconduct, and the Court may use reasonable estimates—"rough justice, not . . . auditing perfection." 581 U.S. at 108–10; *Fox v. Vice*, 563 U.S. 826, 836, 838 (2011); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 50 (1991). Docket 45 presented that framework. Dkt. 45 at 11–12, PageID 2564–65. The Recommendation never cited, discussed, or applied *Goodyear*.

The defect is not a sequencing dispute between *Positive Software Solutions, Inc. v. New Century Mortgage Corp.* and *Goodyear*. The defect is that the Recommendation disposed of all categories through one label while never addressing the governing but-for causation framework Petitioner presented. Whatever limits *Positive Software* may impose on relief for conduct occurring solely within arbitration, it did not decide the distinct post-Award and court-related categories without findings, and it did not eliminate the need to address *Goodyear* where authority otherwise exists. A category may fail for want of authority, a required finding, or causation. But the categories cannot be

adjudicated together while the controlling causation standard goes unmentioned.

## V. RESPONDENTS' CONFLICTING REPRESENTATIONS SUPPORT ALTERNATIVE RELIEF

Before the Panel, Dunlap heard that the erroneous student-loan entries remained archived and stated that the account was "consistent with my understanding." Dkt. 33-3 at 169–71, PageID 2005–07. He later signed Docket 41, which represented that the Form U4 issue was not part of Petitioner's Statement of Claim. Dkt. 41 at 3–4, PageID 2202–03. That representation conflicts with the pleading, JPMS's amendment, the hearing transcript, counsel's acknowledgment, and the Recommendation's express finding that the Statement of Claim mentioned the issue. Dkt. 51 at 4, PageID 2592.

The conflict was material because non-submission became one of the Recommendation's two dispositive alternatives. Dkt. 51 at 5–6. Petitioner requests correction under Rule 59(e), or alternatively relief under Rule 60(b)(1) or 60(b)(3), from the portions of the Judgment affected by the legal mistake or material misrepresentation.

Petitioner exposed the conflict in Docket 45, but Respondents never withdrew the representation, and the Recommendation retained non-submission as an operative premise. If the Court concludes that Docket 45 afforded Petitioner a full and fair opportunity sufficient to defeat Rule 60(b)(3), the same contradiction nevertheless establishes the manifest factual error requiring correction under Rule 59(e). Under either rule, non-submission should not remain a dispositive premise.

## VI. PRAYER

(i) **GRANT** this motion under Rule 59(e) and amend the Order and Judgment, Dkts. 54–55, to clarify that neither confirmation of the Award nor denial of

the remainder of the Amended Verified Petition adjudicates the merits of Form U4 Occurrence Nos. 1977589 through 1977593;

(i) **ADJUDICATE** the preserved grounds under 9 U.S.C. §§ 11(b) and 11(c), modify or correct the Award as authorized, or alternatively remand under *Brown v. Witco Corp.* solely to clarify whether the Award disposed of those occurrences;

(ii) **CORRECT** the expense total from $864,407.26 to $861,407.26, vacate or amend the aggregate denial, and separately adjudicate Categories A through D under the applicable authority and the but-for causation standard stated in *Goodyear* and *Fox*, awarding any supported nonduplicative amounts or ordering a limited prove-up as to amount alone; and

(iii) **ALTERNATIVELY, GRANT** the same corrective relief under Rule 60(b)(1) or Rule 60(b)(3), together with such other relief as the Court determines is authorized by law.

(iv) **GRANT** such other relief as the Court determines is authorized by law.

Respectfully submitted,

Joshua David Sappi Biering

**Joshua David Sappi Biering**
Petitioner, *Pro Se*

**CERTIFICATE OF SERVICE**

On August 5, 2026, this document was filed through CM/ECF, which will automatically serve notice on all counsel of record.

Joshua David Sappi Biering

**Joshua David Sappi Biering**
Petitioner, *Pro Se*

# EEOC Position Statement

**App. 0029-0070**

JPMorgan Chase Bank, N.A. position statement to the EEOC.

UBGreensfelder™

Jeffrey S. Dunlap
Partner
DIRECT 216.583.7026
DIRECT FAX 216.583.7027
EMAIL jdunlap@ubglaw.com

App. 0029

May 24, 2024

U.S. Equal Employment Opportunity Commission
Dallas District Office
207 S. Houston Street, 3rd Floor
Dallas, TX 75202

**RE:** ***Joshua Biering v. JPMorgan Chase Bank, N.A.***
**EEOC Charge No. 450-2024-04743**

Dear Investigator:

JPMorgan Chase Bank, N.A. ("JPMorgan") respectfully submits this Position Statement in response to the above-reference Charge of Discrimination ("Charge") filed by Joshua Biering ("Mr. Biering"), alleging that he was subjected to discrimination and retaliation on the basis of his race, sex, national origin, and disability. JPMorgan terminated Mr. Biering in December 2023 after he violated the JPMorgan Code of Conduct (the "Code of Conduct") and JPMorgan's Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy (the "Policy"). JPMorgan did not discriminate or retaliate against Mr. Biering on the basis of his race, sex, national origin, disability, or any other status protected by applicable law. JPMorgan requests that the Equal Employment Opportunity Commission ("EEOC") dismiss this Charge after its review of the facts.

## I. Introduction

JPMorgan did not discriminate against or retaliate against Mr. Biering on the basis of his race, sex, national origin, or disability, and Mr. Biering does not allege any facts or provide any evidence to support his claims. JPMorgan's decision to terminate Mr. Biering's employment was based on a legitimate, non-discriminatory and non-retaliatory reason that was entirely unrelated to any status protected by applicable law.

JPMorgan terminated Mr. Biering in December 2023 after it became aware that Mr. [redacted]

JPMorgan became aware of Mr. Biering's conduct on October 26, 2023 when the female colleague reported it to her mentor and after JPMorgan's Employee Relations department initiated an internal investigation. That investigation confirmed that Mr. Biering engaged in conduct that violated the Code of Conduct and the Policy. As a result, JPMorgan terminated Mr. Biering's employment. Any suggestion by Mr. Biering that he was subjected to discrimination and retaliation on the basis of his race, sex, national origin, and disability are meritless. Mr. Biering's Charge should be dismissed.

ST. LOUIS
CLEVELAND
CINCINNATI
CHICAGO
COLUMBUS, OH
SO. ILLINOIS
CLAYTON, MO
NEW YORK
BOCA RATON
WASHINGTON DC
UBGLAW.COM

UBGreensfelder™





## II. JPMorgan's Commitment to Providing Equal Employment Opportunities

JPMorgan is an equal opportunity employer and is firmly committed to the equal hiring, promotion and treatment of all qualified individuals without regard for race, religion, or any other status protected by law. JPMorgan makes employment decisions based on legitimate business criteria and the qualifications, skills, and experience of individual applicants. JPMorgan is committed to creating and maintaining an inclusive and diverse organization. JPMorgan recruits individuals with unique experiences and diverse backgrounds because it believes and understands that different perspectives bring strength and creativity to the firm and lead to the best solutions for its customers. JPMorgan is dedicated to maintaining a safe, productive, diverse, professional, collegial, and secure work environment in which all individuals are treated with respect and dignity. Discrimination, harassment, and inappropriate conduct are not tolerated by or against employees, customers, vendors, contractors or any other individuals who conduct business with JPMorgan.

In its policies, JPMorgan expressly prohibits all forms of discrimination and harassment and explains its commitment to providing a discrimination-free and harassment-free work environment for all employees. The Policy states that the firm will not tolerate any form of discrimination on any basis. *See* Exhibit A (Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy). JPMorgan requires employees to review the Policy upon hire and again periodically during their employment with JPMorgan. The Policy is made available to all employees on the firm's intranet site.

The Code of Conduct similarly prohibits any form of discriminatory, harassing, abusive, or otherwise inappropriate conduct. *See* Exhibit B (Code of Conduct, §3.2). The Code of Conduct explains that discrimination and harassment are not tolerated, and any behavior that creates an intimidating, hostile or offensive work environment is prohibited. Mr. Biering received yearly training on the JPMorgan Code of Conduct. Most recently, on July 12, 2023, Mr. Biering affirmed that he read, understood and was in compliance with the Code. The Code of Conduct and the Policy further explain that any employees who believe that they or any other employees have been subject to unlawful discrimination or harassment have the responsibility to report it to a manager, Human Resources, or via the Code of Conduct Reporting Hotline.

## III. Factual Background

### A. Mr. Biering began his employment with JPMorgan in 2016.

JPMorgan hired Mr. Biering on February 18, 2016 as a Military Officer Executive Program Associate. Mr. Biering started working for JPMorgan on May 23, 2016. At the time of his termination, Mr. Biering worked as an Executive Director at the Downtown Fort Worth branch located in Fort Worth, Texas. Mr. Biering's position required him to develop and maintain close relationships with JPMorgan's customers to assist them in reaching their short-term and long-

UBGreensfelder™





term financial goals. To successfully fulfill his role, he also had to develop and maintain positive working relationships with his colleagues.

**B. JPMorgan opened an investigation into Mr. Biering's use of his JPMorgan expense account.**

In connection with Mr. Biering's employment, JPMorgan allowed Mr. Biering to use an expense account for client and business development purposes. On October 20, 2023, JPMorgan initiated an investigation into Mr. Biering's use of his JPMorgan expense account.

Mr. Biering's manager, Ben Stewart, received a weekly email containing a summary of all of his subordinate employees' submitted expenses. Stewart was responsible for reviewing the receipts submitted in connection with each expense report and making determinations regarding whether the expenses were appropriately refundable to the employee. During his review of Mr. Biering's submitted expenses between August 31, 2023 and September 17, 2023, Stewart noticed expenses that he believed to be suspicious and contacted Human Resources Business Advisor ("HRBA") Stephanie Stainback for assistance. Ms. Stainback notified JPMorgan's Global Security ("GS") team on October 20, 2023 to open an investigation.[1]

On October 25, 2020, Stewart emailed Ms. Stainback and GS investigator Nadia Muraira a summary of the entries in Biering's expense report that most concerned him. Stewart raised concerns regarding the use of company funds to pay for substantial amounts of alcohol and golf club fees. Stewart was also suspicious of expenses that indicated that Biering entertained the same group of clients on two consecutive days, and in one instance on a bank holiday where it would be unusual to entertain clients. The aggregate amount of firm funds at issue was $8,061.36.

Ultimately, GS found that the allegations into Mr. Biering's misuse of company funds were "unsubstantiated." GS reached this decision because the next step in its investigative process would have required JPMorgan to contact the customers identified in Mr. Biering's submitted expense report. For business reasons, GS determined that it did not wish to pursue the investigation in this way and, therefore, GS closed the investigation.[2]

[1] GS is the JPMorgan entity that is responsible for conducting internal investigations.

[2] GS does not reach out to customers to involve them in internal investigations unless there is an ongoing risk of future violations or without a business justification to do so.

UB Greensfelder™





**C. JPMorgan terminated Mr. [redacted]**

As a JPMorgan employee, Claimant was required to comply with all of JPMorgan's policies and procedures, including the JPMorgan Code of Conduct. In relevant part, the Code of Conduct instructs:

> JPMorgan Chase is committed to ensuring employees act with honestly and integrity, treat customers fairly, and exercise sound judgment. This means doing the right thing, and speaking up, at all times, even when it is not easy or expedient. Our commitment to ethical business practices preserves our firm's reputation and creates a safe, healthy, productive, and collaborative work environment. **Personal accountability and ownership are priorities at our firm. We expect you to hold yourself to the highest standards of ethical conduct. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the workplace. Your actions should reflect the firm's culture of integrity, respect, and inclusivity.**

*See* Exhibit B at §1.1. (emphasis added). The Code of Conduct further mandates:

> We are committed to a working environment free of threats, intimidation and physical harm. A non-violent, safe, and healthy workspace is critical to our well-being. We rely on you to promptly report any acts or threats of violence, or situations that could pose a threat to others. **All workforce members are expected to comply with applicable laws and firm policies as they relate to the health, safety, and security of our workforce, our customers, and others who may be present on our premises. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the office. Your conduct matters and can be perceived as a reflection of our firm's standards.**

Exhibit B at §3.1. (emphasis added). As an Executive Director with managerial responsibilities, Mr. Biering had to comply with portions of the Code of Conduct directed specifically at managers. For instance, by Section 1.3.1, the Code of Conduct explains:

> **Managers have an even greater level of responsibility. They must set the example, leading with integrity and reinforcing the firm's ethical culture through their words and actions**.

UBGreensfelder™





> Managers are often the first resource for employees who have questions on ethical issues or potential violations of firm policy. If unsure of the best course of action, managers are responsible for directing their employees to the correct resource. They may be held responsible for their failure to report misconduct, escalate appropriately, or take steps to address or remediate an issue. **Managers must create an environment where others feel comfortable sharing concerns and ensure their employees are protected from retaliation for such concerns.**

Exhibit B, §1.3.1. (emphasis added). As set forth above, Mr. Biering affirmed his compliance with the JPMorgan Code of Conduct on an annual basis, and most recently on July 12, 2023, Claimant signed a Code of Conduct Affirmation which states in relevant part: "I hereby affirm that I have read, understand, and am in compliance with the JPMorgan Chase "JPMC" Code of Conduct and all internal JPMC policies that apply to me. **I agree, as a condition of my employment, to remain in compliance with the Code of Conduct and all applicable JPMC policies**." (emphasis added).

[redacted]

> [redacted]
>
> [redacted]

Exhibit A at §5.1. The Policy also makes clear that "[h]arassment and/or inappropriate conduct are often defined by the impact to the recipient, rather than the intent of the person." *Id.*

[redacted] Hitchcock advised Stainback that his mentee, K.K.[3], a married-female analyst in Biering's branch, reported to him that Mr. [redacted] Stainback immediately escalated the report to JPMorgan's Employee Relations team for further investigation. On October 27, 2023, Employee Relations investigator Jonathan Jacobs, accompanied by GS Investigator Chris Magee, interviewed K.K. regarding her concerns.

[3] The name of the victim of Mr. [redacted] She will hereinafter be referred to only by her initials, "K.K."

UBGreensfelder™





The October 27, 2023 interview with K.K. revealed that Mr. [redacted] K.K. explained to the investigators that she and Mr. Biering had attended a golf outing at a client's (and close friend of Mr. Biering's) home from September 10th to 11th, 2023.[4] When K.K. and Mr. Biering arrived at the client's home, K.K. was informed that K.K. and Mr. [redacted] K.K. reported numerous instances during the two-day outing where Mr. [redacted]

During the interview, K.K. recounted Mr. [redacted] She explained that in response, Mr. [redacted]

When K.K. and Mr. Biering returned from the golf outing, Mr. Biering encouraged K.K. to download a cell phone application known as "Signal," which allows users to send encrypted text messages that automatically delete. Mr. Biering asked K.K. [redacted]

At the conclusion of K.K.'s October 27, 2023 interview, JPMorgan, through Jacobs, placed Mr. Biering on paid administrative leave effective end of day October 27, 2023. Jacobs contacted Mr. Biering's manager, Stewart, and directed him to inform Mr. Biering of JPMorgan's decision to place him on paid leave.

On following day, Saturday October 28, 2023, Mr. Biering sent an email to his supervisors resigning his employment. As an Executive Director, Mr. Biering was bound by JPMorgan's Notice Period Policy[5], which requires certain employees to provide their manager with advance notice of the resignation of their employment. Exhibit C (Notice Period Policy). As an Executive Director, Mr. Biering's Notice Period was 60 days. *Id.* During this time, Mr. Biering remained a JPMorgan employee, was paid at his then-current base salary rate, and remained eligible for benefits. *Id.*

Following his resignation, on November 7, 2023, Jacobs and McGee interviewed Mr. [redacted] During his interview, Mr. Biering admitted

---

[4] JPMorgan requires employees to obtain advance approval for stays at client's homes from the employee's Region Head. Mr. Biering did not obtain Region Head approval for his and K.K.'s stay at the client's home for the September 2023 golf outing.

[5] The Notice Period Policy defines "Notice Period" as the number of calendar days of advance written notice of resignation of employment covered employees are required to provide their manager. Exhibit C.

UB Greensfelder™





that he and K.K. [redacted]

Following Mr. Biering's interview, JPMorgan concluded that Mr. [redacted] during the September golf outing and also by messaging K.K. [redacted] K.K.'s job was primarily dedicated to supporting Mr. Biering's book of business, giving Mr. Biering quasi-supervisory authority over her. The inherent power dynamic between Mr. Biering and K.K. led JPMorgan to conclude that Mr. [redacted] Biering and K.K.'s JPMorgan determined that termination was the appropriate, and JPMorgan terminated Mr. Biering's employment on December 1, 2023. Exhibit D (Recommendation for Termination).

**IV. The Lack of Merit to Mr. Biering's Discrimination and Retaliation Claims**

Mr. Biering's race, sex, national origin and disability discrimination claims have no merit. To establish a *prima facie* case of discrimination, a charging party must show: (1) he is a member of protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside the protected class(es). *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000). If the charging party establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* The charging party must then show that the employer's proffered reason was pretext for a discriminatory motive. *Id.*

**A. Mr. Biering's discrimination claim does not survive the *prima facie* stage.**

Mr. Biering's discrimination allegations are two-fold. First, he alleges that he was subjected to discrimination on the basis of his sex, national origin, and disability because "to [his] knowledge, the female co-worker was not disciplined," and because "to [his] understanding, JPMorgan did not conduct an investigation of the female co-worker's actions." Charge at 1. Second, he alleges that he was subjected to discrimination on the basis of his race, veteran status and disability because he was "treated differently than [his] peer in the Dallas JPMorgan Private Bank office" who was "afforded adequate time to report his inter-office relationship with a junior partner to management." Charge at 1.

Mr. Biering has not alleged any facts that show that he was treated less favorably or differently than a similarly situated employee of a different race, sex, national origin or disability status.

UBGreensfelder™





The U.S. Court of Appeals for the Fifth Circuit has narrowly defined "similarly situated," requiring the employees' situations to be "nearly identical." *West v. City of Houston,* 960 F.3d 736, 740 (5th Cir. 2020). Employees are similarly situated when they (1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person, and (3) have essentially comparable violation histories. *Id.*

Mr. Biering is not "similarly situated" to K.K. because they did not have the same job and/or job responsibilities; because they did not share the same supervisor or have their employment status determined by the same person; and because they do not have "essentially comparable violation histories." K.K. was a financial analyst who reported to Will Brawly. In practice, however, K.K. received a large majority of her work assignments from Mr. Biering. Indeed, K.K. explained to investigators Jacobs and Magee that "99%" of her work on a daily basis was for Mr. Biering, such that Mr. Biering had quasi-supervisory authority over her. In contrast, Mr. Bering was an Executive Director who reported directly to his manager, Ben Stewart and indirectly to J.T. Auginbaugh. In addition, Mr. Biering and K.K. engaged in substantially different conduct. As set forth above, K.K. was the victim of Mr. [redacted]

The individual Mr. Biering references in his Charge as being the "Head of Investments and Advice for Dallas" is also not similarly situated to Mr. Biering. First, the "Head of Investments and Advice" is not the same job title that Mr. Biering held, nor does this position have Mr. Biering's job responsibilities. Mr. Biering worked in the Fort Worth, Texas market and reported to Ben Stewart and J.T. Auginbaugh. The Dallas Head of Investments and Advice works in the Dallas, Texas market and reports to a different supervisor. Second, the individual identified in Mr. Biering's Charge dated and then married an individual whom he met at work. In contrast, Mr. [redacted]

### B. Mr. Biering's retaliation claim does not survive the *prima facie* stage.

To make out a *prima facie* case of retaliation, the charging party must show that (1) he engaged in an activity protected by Title VII; (2) his employer took an adverse action against him; and (3) a causal connection existed between the protected activity and the materially adverse action. *Davis v. Fort Bend County,* 765 F.3d 480, 490 (5th Cir. 2014) Like Mr. Biering's alleged discrimination claims, if he can establish a *prima facie* case of retaliation, the burden then shifts to JPMorgan to articulate a legitimate, non-retaliatory reason for its conduct. *Id.* at 491. If JPMorgan does so, the burden shifts back to Mr. Biering to show that the reason articulated by JPMorgan was pre-text for unlawful retaliation. *Id.*

Mr. Biering's retaliation claim fails at the first prong of the *prima facie* case because he has not alleged any facts suggesting that he engaged in any activity protected by Title VII. Mr. Biering alleges that he was subjected to retaliation in two ways. First, Mr. Biering claims that he was retaliated against because JPMorgan audited his expense report "following his resignation." Charge at 2. Second, Mr. Biering claims that JPMorgan "intentionally and knowingly"

UBGreensfelder™





mismarked his Form U5 that was filed with FINRA. *Id.* An employee engages in protected activity when he "has (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII." *Riley v. Napolitano,* 537 Fed. Appx. 391, 392 (5th Cir. 2013). JPMorgan's investigation into Mr. Biering's use of a JPMorgan expense account is not an activity protected by Title VII, nor was he subjected to retaliation when J.P. Morgan Securities LLC[6] filed Mr. Biering's Form U5.

**C. JPMorgan had a legitimate, non-discriminatory and non-retaliatory reason for terminating Mr. Biering.**

Mr. Biering cannot point to any evidence that JPMorgan discriminated against him or subjected him to retaliation, and thus, his claims fail at the *prima facie* stage. However, even if he could establish either *prima facie* case, JPMorgan had a legitimate, non-discriminatory and non-retaliatory reason for its decision to terminate Mr. Biering's employment. As set forth in detail above, JPMorgan terminated Mr. [redacted] It was for this reason — and this reason alone — that JPMorgan terminated Mr. Biering's employment on December 1, 2023.

**D. There is no evidence that JPMorgan's proffered legitimate, non-discriminatory and non-retaliatory reasons for termination are pre-text for unlawful discrimination and/or retaliation.**

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, a charging party must show that the employer's reason was pretext by offering evidence that the proffered reason had no basis in fact; that the reason did not actually motivate the discharge; or that the reason was insufficient to motivate the discharge. *See Gary v. Combined Group*

[6] Mr. Biering was employed by JPMorgan Chase Bank, N.A. ("Chase"). JPMorgan's affiliate, J.P. Morgan Securities LLC ("JPMS") held Mr. Biering's securities licenses. JPMS is a member of the Financial Industry Regulatory Authority ("FINRA"). JPMorgan is not a member of FINRA. FINRA requires all member firms to timely file an accurate Form U5 for all licensed representatives when their registration with JPMS ends. FINRA requires member firms to state on the Form U5 the reason for the employee's registration termination. FINRA requires firms to file the Form U5 for multiple reasons. FINRA uses the information to identify individuals who may have violated FINRA rules. Regulatory authorities use the information to make informed registration and licensing decisions. FINRA member firms use the information to make informed employment decisions. Investors may use the information when deciding whether to do business with a registered person. JPMS is subject to administrative and civil penalties if it does not file a timely, complete, and accurate Form U5. To the extent that Mr. Biering included allegations related to his Form U5 in an effort to have the EEOC adjudicate JPMS's conduct, he has done so erroneously because disputes over Form U5 reporting must be adjudicated in FINRA arbitration. JPMS's regulatory obligation to file a timely, accurate and complete Form U5 cannot and does not support his allegation that JPMorgan "retaliated" against him.

UBGreensfelder™





*Ins. Servs.,* No. 3:08-cv-00228, 2009 U.S. Dist. LEXIS 80635 (N.D. Tex. July 27, 2009); *Stephens v. City of Austin,* No. 1:12-cv-659, 2014 U.S. Dist. LEXIS 104439 (W.D. Tex. July 31, 2014). Mr. Biering has not established and cannot establish that JPMorgan's decision to terminate his employment was pre-textual. Employee Relations investigated Mr. [redacted] Thus, JPMorgan terminated his employment. Mr. Biering's disagreement with JPMorgan's decision to terminate his employment alone does not establish pretext.

JPMorgan did not terminate Mr. Biering's employment based on his race, sex, national origin or disability status, nor can Mr. Biering demonstrate that any of these statuses were motivating factors in the termination decision. Likewise, Mr. Biering has not set forth any facts to support the conclusion that JPMorgan retaliated against him in any manner that is prohibited by law. Therefore, Mr. Biering's discrimination claims must be dismissed.

## V. Conclusion

Mr. Biering's race, sex, national origin and/or disability had nothing to do with JPMorgan's decision to terminate his employment, and there is no evidence to support his claims. JPMorgan made all decisions related to Mr. Biering's employment for legitimate, non-discriminatory and non-retaliatory reasons. Through this Position Statement, JPMorgan has attempted to respond to the most significant or meaningful allegations in the Charge. However, to the extent that there are any other allegations contained in Mr. Biering's Charge that have not been addressed to the EEOC's satisfaction, those allegations are categorically denied. Based on the foregoing, JPMorgan respectfully requests that the EEOC dismiss this Charge.

If you have any questions or need additional information, please contact me at 216-583-7026.

Sincerely,

*/s/ Jeffrey S. Dunlap*

Jeffrey S. Dunlap

cc: Emma Tomsick

Policy

# Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy

Current Effective Date: March 3, 2023

TABLE OF CONTENTS

1. Summary or Rationale .......... 2
2. Scope .......... 2
2.1. Included in Scope .......... 2
3. Changes from Previous Version .......... 2
4. Policy Statements .......... 2
5. Equal Opportunity: Prohibition Against Discrimination and Harassment .......... 3
5.1. Prohibited Harassment .......... 4
6. Reporting .......... 5
6.1. Investigation Procedures/Obligation to Cooperate .......... 6
7. Non-Retaliation .......... 6
8. Culture and Conduct Workplace Training .......... 6
9. Country Specific Policies and Guidelines .......... 7
10. Defined Terms .......... 7
11. Legal and Other References .......... 7
12. Firm References .......... 7
13. Document Information .......... 8

## 1. Summary or Rationale

JPMorgan Chase ("the firm") is committed to maintaining a productive, diverse, inclusive, professional, collegial, safe and secure work environment where all individuals are treated with respect. The firm does not tolerate discrimination, harassment or inappropriate conduct by or against employees, customers, clients, vendors, contractors or any other individuals who conduct business with the firm.

This policy applies to conduct in the firm's offices, work locations, and while engaged in work-related activities outside the workplace, such as business-related meetings, conferences, trips, social events and communications.

The firm expects that every employee shares in the responsibilities for supporting and upholding this policy, including reporting concerns. This is also an expectation of employees under our Code of Conduct.

## 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| **Lines of Business** | • All | • |
| **Function(s)** | • All | • Human Resources |
| **Locations** | • All | |
| **Legal Entities** | • All | |

### 2.1. Included in Scope

This policy applies to all employees, customers, clients, vendors, contractors or any other individuals who conduct business with the firm.

## 3. Changes from Previous Version

Additional clarification has been provided throughout the policy as part of the 2023 re-approval.

## 4. Policy Statements

*Equal Opportunity: Prohibition against Discrimination and Harassment*. The firm prohibits discrimination, harassment, bias, prejudice and inappropriate conduct in the workplace.

*Reporting*. Employees who are aware of possible policy violations must immediately contact their manager, the JPMC Conduct Hotline or Employee Relations through the online HR Answers app.

*Non-Retaliation*. The firm prohibits intimidation of or retaliation against any individual because they objected to prohibited behavior, reported a concern in good faith, or assisted with an inquiry or investigation.

*Policy Violations.* An employee found to have violated this policy will be subject to disciplinary action, up to and including employment termination, subject to applicable law.

*Culture and Conduct Training*: The firm requires employees and some contractors (based on location) to complete training on the firm's culture of respect and inclusion, as well as expected conduct, when assigned to them.

*Country Specific Policies and Guidelines*. Some countries or jurisdictions may have local policies/guidelines that include country-specific requirements, information, procedures or practices not described in this policy.

## 5. Equal Opportunity: Prohibition Against Discrimination and Harassment

The firm does not tolerate discrimination, harassment, inappropriate or abusive conduct in any form, by or against employees, customers, vendors, clients, contractors or any other individuals who conduct business with the firm.

All employees, including managers and employees in non-managerial positions, are required to promote equal opportunity and prevent discrimination, harassment and inappropriate and abusive conduct. They are also expected to help create and maintain an atmosphere where concerns can be raised without fear of retaliation or intimidation.

Violations may result in disciplinary action, up to and including immediate employment termination, subject to local law, or possible termination of other contractual arrangements for non-employees such as vendors, contractors and contingent workers.

The firm is committed to providing equal opportunity in accordance with applicable local law in all areas of people management, including recruitment, employment, assignment, transfer, promotion, compensation, benefits and training.

The firm makes employment decisions based upon legitimate business criteria and the qualifications, skills and experience of individuals. The firm may also take positive actions based on gender, disability, or other characteristics, for example in hiring practices, where required under local law that would not be considered a violation of this policy. Employees may refer to Section 12 for local information links.

The firm prohibits discrimination, harassment, bias or prejudice in its terms and conditions of employment based on an individual's:

| | | | |
|---|---|---|---|
| • Race | • Age | • Color | • Creed |
| • National Origin/Ancestry | • Sex or Gender | • Transgender Status | • Military/Veteran Status |
| • Intersex status | • Sexual Orientation | • Gender Identity or Expression | • Religion |
| • Ethnic Origin | • Marital or Relationship Status | • Physical/Mental Disability | • Religious Affiliation |
| • Citizenship Status | • Civil Partnership | • Genetic Information | • An individual being the victim of, or witness to a crime |
| • Pregnancy, maternity, paternity or caring responsibilities, or reproductive health decisions | | | |
| • An individual being the victim of domestic violence, sexual assault or abuse | | | |
| • Membership in the Traveller community or any community group protected by law | | | |

HUMAN RESOURCES

- Any other protected status under applicable local law

In addition, the firm makes reasonable accommodations for applicants' and employees' religious practices and beliefs, mental and physical disabilities, and for pregnancy, childbirth and related medical conditions, including lactation, in accordance with applicable local law.

### 5.1. Prohibited Harassment

Harassment is any unwelcome conduct -- verbal, nonverbal or physical -- that has the purpose or effect of creating a hostile or offensive environment or can reasonably be expected to cause an individual to feel uncomfortable, intimidated, threatened, bullied, humiliated, offended, denigrated or distressed.

The following lists some of the behaviors prohibited by this policy:

| Prohibited Behavior |
|---|
| • comments, jokes or stereotyping made through any form of communication (including email, social media, communication apps, Zoom, etc.) that are insulting, degrading, exploitative, derogatory or discriminatory in nature; |
| • making threats or intimidating remarks or creating or circulating materials that denigrate or show hostility or aversion toward an individual or group of people based on a legally protected characteristic or classification; |
| • accessing, viewing, or displaying or circulating discriminatory or sexually explicit or suggestive materials, including pornography, cartoons, calendars, drawings and e-mails, during working hours or on JPMC systems or devices |
| • circulating discriminatory or sexually explicit or suggestive materials, including pornography, cartoons, calendars, drawings and emails to other JPMC employees or displaying such materials in a way that other JPMC employees could see or hear them; |
| • repeatedly requesting a personal relationship when the recipient of the request has declined; or |
| • any inappropriate or abusive conduct that unreasonably interferes with another's work performance or creates an intimidating, offensive or hostile environment and which is inconsistent with the firm's standards of professionalism and conduct for employees and others with whom JPMorgan Chase does business. |

[redacted]

| |
|---|
| [redacted] |
| [redacted] |
| [redacted] |
| [redacted] |

HUMAN RESOURCES

It is important to understand that:

- Inappropriate conduct may involve individuals of the same or different sex or gender and is prohibited regardless of sex, gender identity or whether the individual submits to it or rejects it.
- Harassment and/or inappropriate conduct are often defined by the impact to the recipient, rather than by the intent of the other person.

The firm does not allow inappropriate behavior to be excused or justified by claiming that it was unintentional, humorous or occurred under the influence of alcohol or other substances. Employees who are responsible for hosting social events should be mindful in selecting a venue that is inclusive and comfortable for all employees.

[redacted]

Employees are reminded of the procedures to report these relationships to Employee Relations through the online HR Answers app and for managers to immediately report this information to Employee Relations via the online HR Answers app. This procedure must be adhered to in all cases, subject to local legal requirements. The firm reserves the right to take appropriate action to address these risks, concerns and/or conflicts of interest.

Refer to the Employment of Relatives and Employees in Personal Relationships Policy - Firmwide and the Code of Conduct for further details.

### 5.2. Pay Transparency

U.S. employees should refer to the U.S. Pay Transparency Policy Statement for additional details about their obligations regarding compensation discussions.

## 6. Reporting

Unless otherwise provided in a country-specific policy listed in Section 12, employees who are aware of possible violations of this policy must immediately report it to:

- Their manager;
- The JPMC Conduct Hotline; or
- Employee Relations via the online HR Answers app

When using the JPMC Conduct Hotline, employees can report and identify themselves or remain anonymous, where permissible by law. If employees choose to remain anonymous, they should provide as much detail as possible so the firm can properly review the issue. When employees identify themselves on the online HR Answers app, the firm will share their identity only with those who have a business need to know to review the issue.

Managers who become aware of potential violations must immediately report the information to the Conduct Hotline or Employee Relations via HR Answers.

Employees concerned about their own safety or the safety of others in the workplace must immediately report their concerns to the Global Security Operations Center, as outlined in

the Violence-Free Workplace Policy. In a life-threatening emergency, immediately contact your local police or emergency services first.

Your obligations to report to the firm do not prevent you from reporting to the government or regulators conduct that you believe to be in violation of the law.

### 6.1. Investigation Procedures/Obligation to Cooperate

The firm is committed to promptly and effectively reviewing all potential violations of this policy and, where appropriate, may conduct an inquiry or investigation. An investigation will generally include the following:

- The investigation will be conducted by an independent member of Human Resources, Employee Relations, Global Security, and/or another corporate function, or such other independent person as determined by JPMorgan Chase.
- Managers should not attempt to conduct an inquiry or investigation on their own.
- Employees have an obligation to cooperate fully with any inquiry or investigation. Those who fail to do so may be subject to disciplinary action up to and including termination of employment, subject to applicable local law.
- The firm will maintain confidentiality to the extent possible in conducting a thorough inquiry or investigation and responding where appropriate.
- The firm will conduct inquiries and investigations of potential violations as quickly as possible without compromising the integrity of the process.
- If the firm finds a violation, it will take any appropriate remedial action.
- Current employees who report concerns generally will be informed that the investigation has concluded and any next steps, as appropriate. However, the reporting employee typically won't be informed of specific actions taken with other employees.

## 7. Non-Retaliation

The firm prohibits intimidation of or retaliation against an individual because they objected to behavior, reported a concern in good faith, or assisted with an inquiry or investigation under this policy.

It is the responsibility of every employee who has concerns about or is aware of possible retaliatory action to contact their manager, Conduct Hotline or Employee Relations.

## 8. Culture and Conduct Workplace Training

All employees must complete the firm's training when it's assigned.

In addition, and as part of this training, employees located in Australia, India and the Philippines, as well as U.S. employees located in California; Connecticut; Delaware; Chicago, Illinois; state of Illinois; Maine; New York City; New York state; and Oregon should review the appropriate Location Specific Anti-Harassment Supplemental Information to learn more about definitions, requirements and resources available in that location.

## 9. Country Specific Policies and Guidelines

Employees may refer to the Firm References section below as well as their local HR policies for any country-specific information.

## 10. Defined Terms

| | |
|---|---|
| **Abusive Conduct** | Conduct that a reasonable person would find hostile, offensive, and unrelated to the employer's legitimate business interests (or as otherwise defined in applicable local laws). |
| **Gender Identity** | The term "gender identity," distinct from the term "sexual orientation" refers to a person's innate, deeply felt psychological identification, which may or may not correspond to the person's assigned sex at birth (meaning what sex was originally listed in a person's birth certificate). |
| **Intersex** | Intersex is an individual born with any of several variations in sex characteristics including chromosomes, gonads, sex hormones, or genitals that, according to the UN Office of the High Commissioner for Human Rights, "do not fit the typical definitions for male or female bodies". |
| [redacted] | |
| [redacted] | |
| **Unwelcomed Conduct** | Conduct that is not requested, wanted or invited by an individual and that the individual regarded as undesirable or offensive. |

## 11. Legal and Other References

| | |
|---|---|
| **Enterprise Library Application (ELA) Link** | • n/a |
| **Statutes, Laws, Rules, Regulations or External Guidance** | • None |

## 12. [redacted]

| | |
|---|---|
| [redacted] | |
| [redacted] | |
| [redacted] | |

HUMAN RESOURCES

## 13. Document Information

| | | | |
|---|---|---|---|
| **Policy Level** | Level 2 | | |
| **Policy Type** | Firmwide | | |
| **Document Owner-Approver \| Function or Line of Business \|Country** | Pat Press, E098241, Managing Director | Global Employee Relations | United States |
| **Document Primary Contact** | Online: HR Answers app | | |
| **Document Manager** | Lynda Cantatore, U374562, Global Policy and Standards Manager | | |
| **Annual Approval Date** | March 3, 2023 | | |
| **Initial Effective Date** | May 19, 2014 | | |
| **Off-cycle Update Date** | n/a | | |
| **Additional Contacts** | Online: HR Answers app | | |

App. 0047

EXHIBIT B

# Code of Conduct 2023






















JPMORGAN CHASE & CO.



# Code of Conduct – Your Actions Matter

JPMorgan Chase is deeply committed to being ethical, accountable and honest in all of our business dealings across the globe.

The Code of Conduct represents our shared obligation to operate with the highest level of integrity and ethical conduct. We do the right thing – even when it's not expedient. We abide by the letter and spirit of the laws and regulations everywhere we do business and have zero tolerance for unethical behavior. Personal accountability and ownership are priorities at our firm.

Our Code of Conduct and firm policies are designed to encourage honest business relationships, enabling us to continually build on our proud heritage. We must act with integrity and be responsible for our actions, showing respect for each other as well as those with whom we do business.

We all must do our part to preserve the values that have made JPMorgan Chase the respected company it is today. That's why it's important to speak up when you see something that doesn't seem right. If you encounter or suspect illegal or unethical conduct, report it immediately.

Remember, your actions matter.

Jamie Dimon
July 2023

# Table of Contents


About This Document

Report a Potential Violation or Concern

| | |
|---|---|
| 1.0 Leading with Integrity | 3 |
| 1.1 Our Ethics | 3 |
| 1.2 Compliance with the Law and Firm Policies | 4 |
| 1.3 Personal Integrity and Ethical Decision Making | 5 |
| 1.3.1 Manager Responsibilities | 5 |
| 1.4 Sharing Concerns | 6 |
| 1.4.1 Our Commitment to Non-Retaliation | 6 |
| 2.0 Avoiding Conflicts and Managing Information | 7 |
| 2.1 Avoiding Conflicts of Interest | 7 |
| 2.1.1 Outside Interests and External Activities | 7 |
| 2.1.2 Personal Relationships | 7 |
| 2.1.3 Gifts and Business Hospitality | 8 |
| 2.1.4 Political Engagement | 8 |
| 2.1.5 Personal Finances | 8 |
| 2.2 Managing Information | 9 |
| 2.2.1 Communicating Responsibly | 9 |
| 2.2.2 Maintaining Data | 10 |
| 2.2.3 Using Firm Assets | 10 |
| 3.0 Our Winning Culture | 11 |
| 3.1 A Dynamic and Thriving Workplace | 11 |
| 3.2 Diversity and Inclusion is a Priority | 12 |
| Closing Thoughts | 13 |




# About This Document

The Code of Conduct (“Code”) sets forth the expectation that employees conduct themselves with integrity, at all times. It provides employees with the principles to help govern their conduct with clients, customers, suppliers, vendors, shareholders, fellow employees, regulators, markets, and the communities in which we operate. The Code applies to the employees and directors of JPMorgan Chase & Co. (“firm” or “JPMorgan Chase”) and its direct and indirect subsidiaries.

The Code is designed to be consistent with the regulatory and legal framework that governs our industry. It may be amended as required by law or regulation. All amendments are effective immediately upon posting.

The Code is administered by Code of Conduct Compliance. The most current version can be accessed on our firm’s internal and external websites.

Code of Conduct Compliance can provide interpretative guidance on the principles in the Code, in consultation with LOB Compliance, the Chief Compliance Officer or the General Counsel, as appropriate. Any waiver of the provisions of this Code or internal policy for a member of the JPMorgan Chase Operating Committee or a director must be reported to the Office of the Secretary for Board of Directors approval and prompt disclosure to JPMorgan Chase stockholders.

In general, consultants, agents and contract or temporary workers are expected to comply with the underlying principles of the Code as well as the Supplier Code of Conduct. The Code does not create any rights to continued employment and is not an employment contract.

# Report a Potential Violation or Concern

Every JPMorgan Chase employee has the right and the obligation to report actual and potential violations of our Code and firm policies, as well as laws and regulations that govern JPMorgan Chase business.

There are several ways to report a potential or actual violation or raise a concern. Reporting can be done anonymously, where permitted by law. Translation services are also available.

JPMorgan Chase strictly prohibits intimidation or retaliation against anyone who shares a potential or actual violation of our Code of Conduct, in good faith, or assists with an investigation or inquiry.

You can report concerns to the JPMC Conduct Hotline in three ways:

| PHONE | ONLINE | MOBILE |
|---|---|---|
| **1-855-JPMCODE**<br>(U.S. and Canada Only)<br><br>All others - Click here | **Submit here** | **Scan** |

For concerns that are specifically related to accounting, internal controls, auditing matters or financial reporting practices, contact the JPMC Conduct Hotline, or the General Counsel of JPMorgan Chase & Co. Office of the General Counsel: 383 Madison Avenue, New York, NY 10179.




# 1.0 Leading with Integrity

## 1.1 Our Ethics

JPMorgan Chase is committed to ensuring employees act with honesty and integrity, treat customers fairly, and exercise sound judgment. This means doing the right thing, and speaking up, at all times, even when it is not easy or expedient. Our commitment to ethical business practices preserves our firm's reputation and creates a safe, healthy, productive, and collaborative work environment.

Personal accountability and ownership are priorities at our firm. We expect you to hold yourself to the highest standards of ethical conduct. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the workplace. Your actions should reflect the firm's culture of integrity, respect, and inclusivity.

## 1.2 Compliance with the Law and Firm Policies

The financial industry is highly regulated. Being aware of and complying with the laws and regulations under which we operate is not just a critical part of our business, but fundamental to who we are. It is important to comply with the letter, spirit, and intent of laws, regulations, and firm policies. Violating the law or engaging in unfair, deceptive, and abusive acts or practices may weaken customer confidence, put our reputation at risk, impact market integrity, or result in regulator criticism, legal action, fines or penalties, or other negative repercussions.

You are expected to know and comply with the laws, regulations and firm policies that apply to you. Always follow the Code. If your business unit adopts policies that are more specific than the Code, you must follow those policies. In the event of a conflict with any provision of the Code and local law, you should always follow the law.

## 1.3 Personal Integrity and Ethical Decision Making

The Code will help guide you in making ethical decisions, but you won't find the answer to every situation. In the absence of a specific policy or procedure, you have a responsibility to use good judgment, comply with the spirit and the intent of the Code, and seek help from your manager or Compliance Officer.

Always deal fairly and in good faith with our customers, suppliers, competitors, business partners, regulators, and other employees. Never take unfair advantage of anyone through manipulation, concealment, abuse of privileged or confidential information, misrepresentation of material fact, or any other unfair dealings or practices.

Our competitive advantage comes through our superior products and services, never through unethical or illegal business practices. JPMorgan Chase is committed to complying with both the laws and regulations that address market integrity. Be mindful of sharing information and your interactions with competitors and refrain from any action that may prevent, restrict, or alter fair competition. Do not compromise our firm's reputation or your own by engaging or appearing to engage in any form of corruption. Never give, offer, promise, solicit, or accept anything of value - whether directly or indirectly through others such as third-party intermediaries – if it is intended or could be perceived as intended to improperly influence decisions on behalf of our firm. Be alert and escalate activities that are designed to hinder or prevent the detection of improper or illegal activity (e.g., money laundering, tax evasion, bribery, etc.).

Take ownership – anticipate, identify, and manage the risk and impacts of the decisions and actions you take at work. You are in charge of your decisions. No one has the authority to tell you to do something unethical or illegal.

You must do the right thing when it comes to your own conduct, and you must speak up about conduct by others that might violate our Code or firm policies. This includes cooperating as directed by our firm with any investigation or inquiry.

We all have a responsibility to understand and uphold the principles of the Code. Compliance with the Code is a condition of employment. Action may be taken against employees who violate the Code or who fail to report the violations of others, up to and including termination of employment.

### 1.3.1 Manager Responsibilities

Managers have an even greater level of responsibility. They must set the example, leading with integrity and reinforcing the firm's ethical culture through their words and actions. Managers are often the first resource for employees who have questions on ethical issues or potential violations of firm policy. If unsure of the best course of action, managers are responsible for directing their employees to the correct resource. They may be held responsible for their failure to report misconduct, escalate appropriately, or take steps to address or remediate an issue. Managers must create an environment where others feel comfortable sharing concerns and ensure their employees are protected from retaliation for reporting such concerns.

**Principles In Practice**

I am covering a new client and see a customer transaction that seems odd. I don't know if I should escalate. What should I do?

You should escalate to your manager and, if necessary, your Compliance Officer for assistance. Every employee is responsible for escalating unusual or potentially suspicious transactions or activities. Doing so will protect you and our firm from involvement in questionable or illegal activities.

## 1.4 Sharing Concerns

Use your voice and escalate your concerns, regardless of whether it directly affects you or your line of business. Promptly report any potential or actual violations of the Code, firm policy, law, or regulation related to our business. You are encouraged to ask questions and have open conversations with your manager on business and conduct issues. We rely on you to speak up when something is unclear.

If you see or suspect that something is illegal or unethical, you have the right and an obligation to share your concerns. You must also immediately report to Human Resources certain charges or arrests that involve you personally, whether they relate to the business of our firm or not.

There are several ways to report your concerns. You can raise issues with your manager, your Compliance Officer, Global Security or Human Resources. You can also call the JPMC Conduct Hotline toll-free at 1-855-JPMCODE (1-855-576-2633). The Hotline is operated by an independent third-party service and is available any time, night or day. You can also file a report online at www.tnwgrc.com/jpmc. Where permitted by applicable law, you may report anonymously. For more information on who to contact, refer to the Report a Potential Violation or Other Concern page.

You are required to report violations whether they involve you or someone else, including other employees, consultants, contract or temporary workers, business partners or agents, or our customers or suppliers. Do not investigate potential violations yourself. Report it and the matter will be investigated by the appropriate parties. You must cooperate as directed by our firm in any investigation or inquiry.

Just as you will be held responsible for your own actions, you can also be held responsible for not reporting actions you knew or should have known were in violation of any applicable policy, law, or regulation. Reporting to our firm does not prevent you from reporting conduct that you believe an actual or potential violation of law to the government or regulators

## 1.4.1 Our Commitment to Non-Retaliation

Don't be afraid to speak up. JPMorgan Chase policies and restrictions on disclosing confidential information do not prevent you from reporting concerns to the government, a regulator, your attorney, or a court under seal. Our firm strictly prohibits intimidation or retaliation against anyone who makes a good faith report about a potential or actual violation of the Code, firm policy, or any law or regulation governing our business. We also strictly prohibit intimidation or retaliation against anyone who assists with an inquiry or investigation of any such violation.

Be assured that the information you provide will be handled discreetly and only shared with those we must inform, such as regulators and those involved in investigating, resolving, and remediating the issue. Employees who have concerns about or are aware of possible retaliatory action must report it, either to their manager, Human Resources, or the JPMC Conduct Hotline.

### Principles In Practice

I overheard a colleague discussing something that I think may violate the Code of Conduct. I'm not sure I should report it since it doesn't directly affect me.

Not complying with the Code can cause immeasurable damage to our reputation and put your co-workers, our customers, and our firm at risk. It can also lead to regulatory and legal consequences. Where permitted by law, you may report concerns anonymously for additional peace of mind. Not reporting concerns is also a violation of the Code and could lead to disciplinary consequences. Your voice helps promote our ethical culture. Use it!



# 2.0 Avoiding Conflicts and Managing Information

## 2.1 Avoiding Conflicts of Interests

Your personal interests should never conflict – or appear to conflict – with our firm's interests. Avoid activities or relationships that might affect your objectivity in making decisions on behalf of our firm or undermine your credibility. Conflicts may damage the firm's reputation, cause loss of business, and lead to increased regulatory scrutiny or litigation risk.

Our firm often has fiduciary obligations to our clients to act in their best interest. Always escalate perceived and actual conflicts of interest so that the proper review is completed, and the required steps are taken to help mitigate the conflict. Never place personal interests ahead of our clients.

Some conflicts may be obvious while others are more subtle, but both can have lasting effects. Potential conflicts may arise in a variety of ways, including through: (1) Outside Interests and other external activities; (2) personal and business relationships; (3) the exchange of gifts and business hospitality; (4) political engagement; and (5) personal finances.

It's not possible to list every situation that could present a potential conflict, but you should be familiar with the risks associated with the activities listed above. Use good judgment and ask for help whenever you are unsure of the proper course of action. Appropriately addressing conflicts helps protect the firm by preventing the misuse of confidential information and firm assets.

Personal accountability and ownership are priorities at JPMorgan Chase. Always anticipate the impact of your decisions. Your actions may lead to unfair client or customer outcomes, impact market integrity, compromise our firm's reputation, or negatively affect our firm's culture. Our policies are designed to build honest business relationships and promote fairness in the marketplace. Use firm resources to help guide your decisions.

**Whether big or small, all conflicts need to be addressed.**

## 2.1.1 Outside Interests and Other External Activities

Your Outside Interests and other external activities cannot restrict the firm's business opportunities, reflect adversely on our firm (e.g., create exposure to regulatory, reputational, or financial risk), or create a perceived or actual conflict of interest with our firm, clients or suppliers. You are expected to put your job at our firm ahead of personal business opportunities, government service or second jobs.

We encourage you to become involved in your community and with charitable organizations that support your personal philanthropic goals. Be sure to follow the firm's policies governing personal activity to ensure that your charitable work and the Firm's interests are not in conflict. Soliciting customers, suppliers, and fellow employees or using firm assets in connection with your Outside Interests is generally prohibited.

## 2.1.2 Personal Relationships

It is always important to remain objective in your business dealings. Personal relationships with someone you know inside or outside of work can create a conflict of interest or raise the appearance of a conflict. Personal conflicts of interest may occur when your interests (or the interest of someone you know personally) conflict with the interests of JPMorgan Chase or one of its clients.

Don't engage in self-dealing or act for the firm in any transaction or business relationship that involves yourself, members of your family, or other people or organizations where you or your family have a significant personal connection or financial interest.

## 2.1.3 Gifts and Business Hospitality

While the exchange of gifts and business hospitality may be common business practices, such activity can be misinterpreted or suggest the appearance of something improper, even when there is no improper intent. Avoid accepting or providing gifts and business hospitality to customers, suppliers, and business partners of the firm if it creates a perceived or actual conflict of interest or violates laws, regulations, or our firm's policies. Employees should never solicit, suggest, or request gifts or business hospitality in exchange for firm business or an unfair advantage.

## 2.1.4 Political Engagement

We respect your right to engage in personal political activity. Your political activities are personal endeavors, but you must be mindful of potential impact to the firm's reputation. Your contributions and activities must be lawful, consistent with firm policies, and may not involve the use of firm time or resources (including staff, facilities, equipment, stationery, email, phones, supplies or mailing lists).

You may not invite government officials or political figures to speak at or attend firm events unless you comply with our firm's policy requirements. Do not promise or imply firm sponsorship, contributions, or other support. You may not use firm funds to contribute to or make expenditures or election-related communications on behalf of candidates, political party committees or political action committees.

## 2.1.5 Your Personal Finances

You must comply with all applicable laws, regulations and firm policies when managing your personal finances and investment activities. Our firm expects you to handle your personal finances responsibly and with integrity, and to base your personal investment decisions with long-term objectives in mind. Investing in the business of a client or supplier with whom you have – or recently had – dealings with, in your role at the firm, can raise significant conflicts.

In addition, the improper handling of your personal finances could undermine your credibility and the firm's or lead to increased regulatory scrutiny. Engaging in financial transactions (e.g., borrowing, joint investments, gambling or betting, etc.) with fellow employees, customers, suppliers is prohibited for these reasons.

As an employee of a publicly traded company, you may have access to confidential or non-public information about our firm, clients and other companies that conduct or seek to do business with us. You must protect this information from unauthorized use, including from other employees who do not have a legitimate and continuous business need to access the information. Insider trading is illegal and strictly prohibited by firm policies. You must never use privileged or confidential information for personal gain or tell, "tip", or share information you learned through work with others.

## 2.2 Managing Information

Customers, suppliers, employees, and others who do business with our firm trust us to be good stewards of their financial, personal, and business information. No matter the format, protect information you manage on behalf of the firm from theft, loss, or unauthorized access or disclosure. Do not discuss, access or use confidential information unless you have a legitimate business need to do so.

Your duty to protect confidential information includes taking precautions before sharing it with anyone. Confidential information should never be disclosed to anyone inside or outside our firm except as permitted by law, in the proper conduct of our business, where disclosure is required by legal process, or where the Compliance or the Legal Department otherwise determines it is appropriate. The loss or unauthorized disclosure of confidential information may harm our firm and its clients and can result in termination.

Working remotely should be considered an extension of the workplace. Exercise the same degree of care in protecting confidential information away from the office as you do when working in the office. Only use approved communication channels to conduct JPMorgan Chase business.

Your responsibility to protect confidential information also applies to work you may have done before coming to JPMorgan Chase. Sharing confidential information from a former employer is unethical and can expose you and JPMorgan Chase to legal liabilities.

JPMorgan Chase policies and restrictions on disclosing confidential information do not prevent employees from reporting concerns of any potential or actual violation to our firm's management or directors, the government, a regulator, employees' attorneys, or a court under seal. They also do not prevent employees from reporting retaliation for reporting such concerns or responding truthfully to questions or requests from the government, a regulator, or in a court of law.

## 2.2.1 Communicating Responsibly

JPMorgan Chase is committed to making sure communications about ou and its business are accurate and made by employees who are authoriz to speak on our behalf. We also recognize our obligation to protect the confidentiality of our business and customer information.

Be alert to situations where you may be perceived as representing or speaking on behalf of JPMorgan Chase. Making recommendations or referring people or companies that do or have done business with our firm may be considered a firm endorsement, which is not allowed. Know the limits on your authority to speak, sign, or otherwise act on behalf of our firm, and don't take any action that exceeds those limits. Remember to seek preclearance before speaking about JPMC's business or your role and responsibilities at the firm, in any public forum or publication.

The firm respects your right to engage in social, professional, and political dialogue outside of work. You must use good judgment when making personal statements in public, including on your personal social media accounts. Also use care in internal communications and be responsible with your comments on intranet postings.

Nothing in the Code should be interpreted to prevent employees from engaging in activities that are protected under laws and regulations that allow employees to discuss or disclose their personal compensation information.

### Principles In Practice

I want to start a financial blog. I don't plan to disclose that I'm an employee. Is this permitted?

You may not opine on or provide information relating to our firm's business, your role or job responsibilities in a public forum unless you are specifically authorized to do so. This applies whether you identify yourself as an employee or blog on your personal time. Your comments should not have an adverse impact on our firm.

## 2.2.2 Maintaining Data

Creating and maintaining accurate and complete data is essential for our ability to meet our business needs as well as legal and regulatory requirements. Make sure any disclosure we make to the government, regulatory authorities and investors meet these standards, and never falsify any data. You are responsible for maintaining the integrity of firm data, and complying with all recordkeeping policies, controls, and procedures we have in place.

## 2.2.3 Using Firm Assets

Our assets are the resources we use to conduct firm business. Use firm assets for legitimate firm business and appropriately safeguard them against cyber-related risk and attack, theft, loss, waste, or abuse. By protecting our assets, we protect our competitive advantage in the marketplace. You also have a responsibility to extend the same degree of care to assets entrusted to our firm by others. It is essential that you respect and protect the firm's physical and intellectual property.

Avoid using JPMorgan Chase assets, including technology and information resources, for your personal activities. Personal use of our devices, technology and assets should be kept to a minimum and should never interfere with your business obligations, burden firm assets, introduce additional risk to our firm, or negatively impact or disrupt colleagues.

# 3.0 Our Winning Culture



## 3.1 A Dynamic and Thriving Workplace

Nothing is more vital to the long-term growth of JPMorgan Chase than our ability to attract and retain talented and dedicated employees. You are our most valuable asset. Always treat each other, and our customers and suppliers, respectfully and fairly. Stay true to the principles embedded in our culture: honesty, integrity, accountability, diversity, and inclusion.

We are committed to a working environment free of threats, intimidation, and physical harm. A non-violent, safe, and healthy workplace is critical to our well-being. We rely on you to promptly report any acts or threats of violence, or situations that could pose a threat to others. All workforce members are expected to comply with applicable laws and firm policies as they relate to the health, safety and security of our workforce, our customers, and others who may be present on our premises.

Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the office. Your conduct matters and can be perceived as a reflection of our firm's standards.

### Principles In Practice

I noticed that some of my co-workers aren't following the posted guidelines to maintain a clean work environment. What should I do?

If you observe behavior that does not align with guidelines, you can raise directly with the individual if you feel comfortable doing so. You can also escalate to your manager, contact Human Resources or report to the JPMC Conduct Hotline.

## 3.2 Diversity and Inclusion is a Priority

A diverse network of people, a vibrant mix of cultures, a broad range of skills and experiences – we celebrate all the people of JPMorgan Chase around the world. A diversity of colleagues means diverse ideas and a more inclusive work experience. It also means that our workforce reflects the diverse set of customers we serve and helps us to address – and respond to – a wide variety of needs and opportunities in the marketplace.

We prohibit discrimination, harassment, bias and prejudice in our workplace and against our workforce based on an individual's race, color, national origin or ancestry, ethnic origin, citizenship status, creed, religion, religious affiliation, age, sex, gender, pregnancy, maternity, paternity, caring responsibilities, marital status, relationship status, civil partnership, sexual orientation, transgender status, gender identity, gender expression, intersex status, genetic information, physical or mental disability or protected condition, military or veteran status, an individual having been a victim of domestic violence, sexual assault or abuse, an individual being the victim of a crime, any other community group protected under applicable law, or any other status protected under applicable local law.

We do not tolerate discrimination, harassment, or inappropriate or abusive conduct by or against employees, customers, suppliers, contractors, or any other individuals who conduct business or seek to do business with our firm.

We take all allegations of discrimination or harassment seriously. It is each employee's responsibility to report any concern or conduct that is or may be unlawful, abusive, or otherwise violates firm policies.



## Closing Thoughts

Our core values are at the heart of what we do. Managers set the "tone from-the top" and remind employees that it is paramount for each of us to be culture carriers. You must always maintain your personal integrity and never lower your standards. Always provide first-class service in a first-class way.

The people, products and services, and dedication to integrity have made JPMorgan Chase one of the largest and most successful financial institutions in the world. Just as we are a leader in the financial industry, we want to be known as a leader in ethics.

Our collective commitment to being accountable, straightforward, and honest in all of our business dealings makes JPMorgan Chase a respected company. Encourage others to deal fairly with clients and suppliers, be good stewards of the firm's resources and foster a diverse and inclusive work environment.

Remember, it is your responsibility to report any violations you know about and those you suspect. JPMorgan Chase doesn't tolerate retaliation against anyone who raises an issue or concern in good faith.

If you have questions about the Code of Conduct or any firm policy, ask your manager, Human Resources, or local Compliance Officer for guidance.

Our continued success is based on your ability to do the right thing.

Be a leader and proud culture carrier. We depend on YOU!

© 2023 JPMorgan Chase & Co.
All rights reserved.
July 2023

Policy

# Notice Period Policy - U.S.

Current Effective Date: June 20, 2023

TABLE OF CONTENTS

1. Summary or Rationale ........ 2
2. Scope ........ 2
3. Changes from Previous Version ........ 2
4. Policy Statements ........ 2
5. Notice Period ........ 2
   5.1. Employee's Responsibilities During the Notice Period ........ 3
   5.2. Consequences of Breach/Remedies ........ 3
   5.3. Employment-At-Will ........ 4
6. Defined Terms ........ 4
7. Legal and Other ........ 4
8. Firm References ........ 4
9. Document Information ........ 4

HUMAN RESOURCES

## 1. Summary or Rationale

JPMorgan Chase operates in a highly competitive industry. Our success is based, in large part, on our employees' efforts to build and maintain client relationships both internally and outside the organization. As a result, it's critical that the firm protect its ability to sustain those client relationships and ensure business continuity in times of employee transition.

## 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| **Lines of Business** | • Refer to the Notice Period Policy Overview Chart | • n/a |
| **Function(s)** | • Refer to the Notice Period Policy Overview Chart | • Human Resources |
| **Locations** | • United States | |
| **Legal Entities** | • All | |

## 3. Changes from Previous Version

There are no significant changes as a result of the re-approval of the policy.

## 4. Policy Statements

Notice Period. JPMorgan Chase requires that all identified employees (as outlined in section 5) provide the Firm with advance notice of the resignation of their employment.

## 5. Notice Period

The firm requires that certain employees at or above the level of Vice President or the equivalent, provide their manager advance notice of the resignation of their employment. Some employees below the Vice President level may also have a notice period requirement. Employees should provide this notice in writing. In addition, employees should submit their resignation via me@jpmc.

Additionally, if you have a separate agreement or terms for your business area that provides for a longer notice period than is stated under this Policy, the longer notice period will apply.

To determine if you are subject to this Notice Period Policy and, if so, the number of days of advance notice (referred to as "Notice Period") you are required to provide, please click on the link below:

Notice Period Policy Overview Chart

The notice period will start the day you provide your resignation. For instance, if you submit your resignation on 6/1 and have a 30-day notice period requirement, then the end of the notice period would be on 6/30.

Generally, the firm will seek to enforce its Notice Period Policy. In certain cases, however, the firm may, in its sole discretion, decide to waive all or any part of your Notice Period and set an earlier termination date. If this occurs, you will be paid in lieu of notice and will receive a lump-sum payment equivalent to your base salary for all or the remaining part of the applicable Notice Period (less applicable deductions).

Line of business (LOB) managers may not waive notice period requirements. In very rare circumstances where an exception to the Notice Period is considered, the exception **must** be approved by the LOB Head (OC Member), the HR LOB Executive (HR OC Member) and, if applicable, the Regional HR Executive (HR OC Member); or in leave of absence scenarios, the HR LOB Executive.

### 5.1. Employee's Responsibilities During the Notice Period

During the Notice Period, you will remain an employee of the firm and will be prohibited from working for, or performing any services for, another employer or from being self-employed. You will continue to be paid at your current base salary throughout your Notice Period and will remain benefits eligible. Once you provide notice of your resignation, you will no longer be eligible for any discretionary incentive compensation or equity award, even if your Notice Period includes the date on which such an award would otherwise be granted or paid.

As an employee of JPMorgan Chase, you will have a continuing duty of loyalty to the firm throughout your Notice Period and will remain bound by the provisions of the firm's Code of Conduct, including its requirements regarding confidential and proprietary information, non-solicitation of employees and customers, and no-hire obligations, as well as any other applicable employment policies.

It's within the firm's sole discretion to determine whether you will be expected to continue to perform your duties or otherwise provide services during the Notice Period. The firm may remove you from any assigned duties, assign other duties to you, require you to refrain from performing any job duties or from reporting to work, and may prohibit you from directly or indirectly contacting its customers, suppliers or employees until your employment ends. Regardless of the extent to which the firm directs you to perform your duties or report to work during the Notice Period, you will be expected to be available as reasonably necessary and will continue to work cooperatively and professionally with the firm to ensure an effective transition of your responsibilities.

In addition, you remain obligated to cooperate fully with, and provide full and accurate information to JPMorgan Chase and its counsel and other advisors in connection with any matter (including any audit, tax proceeding, litigation, investigation, governmental or regulatory proceeding) with respect to which you may have knowledge or information.

### 5.2. Consequences of Breach/Remedies

Failure to comply with this policy constitutes a breach of a term of your employment with the firm and may impact your eligibility for rehire.  JPMorgan Chase reserves its rights to pursue any legal and equitable remedies to which it may be entitled.

### 5.3. Employment-At-Will

At all times you remain an employee at will, which is to say that the firm can alter the terms of your employment and end your employment at any time.

This Notice Period Policy shall supersede any prior notice period policies set forth in any previous communications, except that, to the extent you have a separate specific agreement that provides for a longer notice period than is provided under this Policy for your business area, the longer notice period will continue to apply.

By continuing your employment, you agree to provide the required notice and to abide by the terms and conditions of this Policy as described above. This requirement is also included in the terms and conditions of any equity awards you may receive.

## 6. Defined Terms

| | |
|---|---|
| **Notice Period** | The number of calendar days of advance written notice of resignation of employment covered employees are required to provide to their manager. Certain responsibilities apply during the Notice Period. See Section 5.1 |

## 7. Legal and Other

| | |
|---|---|
| **Enterprise Library Application (ELA) Link** | • n/a |
| **Statutes, Laws, Rules, Regulations or External Guidance** | • None |

## 8. Firm References

| | |
|---|---|
| **Other Firm Policies or Standards** | • Notice Period Policy |
| **Policy Supplements, Procedures, and Other Documents** | • Code of Conduct<br>Notice Period Policy Overview Chart |
| **Forms and Systems** | • |

## 9. Document Information

| | | | |
|---|---|---|---|
| **Policy Level** | Level 3 | | |
| **Policy Type** | Country | | |
| **Document Owner-Approver \| Function or Line of Business \|Country** | Lynda Cantatore, U374562, Executive Director | Human Resources | United States |

| | |
|---|---|
| **Document Primary Contact** | HR Answers |
| **Document Manager** | Tracy Peterson, N619222, Vice President |
| **Annual Approval Date** | June 20, 2023 |
| **Initial Effective Date** | March 1, 2014 |
| **Additional Contacts** | HR Answers |

JPMORGAN CHASE & CO. EXHIBIT D



# RECOMMENDATION FOR TERMINATION

| | |
|---|---|
| Prepared by: Jonathan Jacobs, Employee Relations – D639971<br><br>On behalf of: Ben Stewart, Executive Director - N682989 | Date: November 30, 2023 |

**Recommendation for Termination of Employment of:**
Joshua Biering, Executive Director - I662283

I am recommending that Joshua Biering be terminated from employment for misconduct.

JPMC's annual Code of Conduct reinforces to employees our commitment to integrity in work dealings and our expectations of employees with regard to their personal and professional conduct. The firm also has in place its Equal Opportunity, Anti-Discrimination, and Anti-Harassment Policy ("the Policy," effective March 3, 2023)

Following an Employee Relations ("ER") review, it was found that Biering engaged in inappropriate conduct in violation of the Code of Conduct and the Policy.

Biering's actions violate the JPMC Code of Conduct and the Policy, expose the bank to risk, and negatively impact our customer and work experience. Therefore, I am recommending termination of employment.

| | |
|---|---|
| HR/ER Representative's Signature: /s Jonathan Jacobs | Date: November 30, 2023 |

Copies to: HRBP or HR Support Team and Employee Records: Employee.Records@Chase.com

# EEOC Charge of Discrimination

**App. 0072-0074**

Plaintiff's sworn EEOC charge and supporting materials.

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charg

☐ FEPA
☑ EEOC

The Texas Workforce Commission and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Joshua David Sappi Biering | [redacted] | [redacted] |

Street Address City, State and ZIP Code

[redacted]

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two are named, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| J.P. Morgan Chase Bank N.A. | 500+ | 817-656-5036 |

Street Address City, State and ZIP Code
420 Throckmorton St., Suite 300, Fort Worth, Texas 76102

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

Street Address City, State and ZIP Code

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☑ RACE ☐ COLOR ☑ SEX ☐ RELIGION ☑ NATIONAL ORIGIN
☑ RETALIATION ☐ AGE ☑ DISABILITY ☐ GENETIC INFORMATION
☑ OTHER (*Specify*) Requesting accommodations for disability; Inquiring about coworkers's salaries (unequal)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest Latest
October 2023
☑ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I am a 100% service connected- disabled army veteran and served in Afghanistan in support of Operation Enduring Freedom. I am a dual Brazilian-American citizen. The J.P. Morgan Private Bank knows these facts.

I resigned from the J.P. Morgan Private Bank (Fort Worth) in October 2023. Earlier in 2023, I requested FMLA and reasonable accommodations to focus on my health/disability but was denied. After I resigned to terminate my employment with J.P. Morgan, I was required to honor a 60 day notice period ("garden leave"), during which time I was instructed to perform no work. I resigned and was no longer working for J.P. Morgan with plans to join a competitive firm.

I requested my personnel file/records along with my rights during the 60 day "garden leave" but was denied this information.

Following my resignation, J.P. Morgan conducted an investigation of a consensual relationship with a female co-worker. To my understanding, J.P. Morgan did not conduct an investigation of the female co-worker's actions. I complained about this difference, and that J.P. Morgan was refusing to even consider or accept evidence I had proving the consensual, same and reciprocated behavior by the female co-worker. J.P. Morgan has never contested that this relationship was consensual. Despite this, J.P. Morgan - weeks after I had already resigned and terminated my employment - determined that it was instead "firing" me for "violating the firm's anti harassment policies." When asked for more detail as to communicate to new prospective employers why I was "terminated" - J.P. Morgan Counsel, Leadership, Employee Relations and Human Relations refused to timely provide any details or substantive evidence.

This was discrimination. I was treated differently from a female, non-disabled, and of a different national origin co-worker engaging in same actions. To my knowledge, the female co-worker was not disciplined. Furthermore, I was treated differently than my peer in the Dallas J. P. Morgan Private Bank office that was afforded adequate time to report his inter-office relationship with a junior partner to management. This white, non-veteran, non-disabled (to my knowledge) individual was rather praised and promoted to a senior leadership roll at J.P. Morgan Private Bank as Head of Investments and Advice for Dallas.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State or Local Agency Requirements*

Judith Moore Virginia, Prince William County

I declare under penalty of perjury that the above is true and correct.

02/25/2024 Joshua David Sappi Biering
Date Charging Party Signature

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT
Joshua David Sappi Biering

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) 02/25/2024

COMMONWEALTH OF VIRGINIA · ELECTRONIC NOTARY PUBLIC
Judith Moore
REGISTRATION NUMBER 8030982
COMMISSION EXPIRES October 31, 2026

Notarized remotely online using communication technology via Proof.

EEOC Form 5 (11/09)

App. 0073

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charg

☐ FEPA

☑ EEOC

Texas Workforce Commisison and EEOC

State or local Agency, if any

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Also following my resignation, and in retaliation, J.P. Morgan claimed to audit my expense reports, an uncommon practice as they were submitted per standard/years of SOP and other co-workers of different races/gender/and without disability - were not subject to the same scrutiny on their expense reports. This was part of a non-standard, non-protocol, non-procedural, pointed decision to plot a termination.

To make matters worse, after I complained about this discriminatory treatment, J.P. Morgan retaliated against me, by among other things, intentionally and knowingly mismarking my FINRA U5 form as "discharged" other than "voluntary", which is very damaging in my industry. Prospective employers did not extend offers and retracted their interest because of my Form U5 marking as well as my "vague" responses to why J.P. Morgan terminated me.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

02/25/2024 — Date

Joshua David Sappi Biering — Charging Party Signature

NOTARY – *When necessary for State or Local Agency Requirements*

Judith Moore

Virginia, Prince William County

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Joshua David Sappi Biering

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 02/25/2024

COMMONWEALTH OF VIRGINIA · ELECTRONIC NOTARY PUBLIC

Judith Moore

REGISTRATION NUMBER 8030982

COMMISSION EXPIRES October 31, 2026

Notarized remotely online using communication technology via Proof.

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# Form U5 (Filed December 22, 2023)

**App. 0076-0080**

The filed Form U5: Box 3 discharge classification and Questions 7B/7F disclosures.

**J.P. MORGAN SECURITIES LLC(79)** **Rev. Form U5 (05/2009)**

**Individual Name: Biering, Joshua D. (6883842)** **U5 Full - Fili** App. 0076

**Filing Date: 12/22/2023**

***NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING***

Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.

## 1. General Information

| | | | |
|---|---|---|---|
| **First Name:** | **Middle Name:** | **Last Name:** | **Suffix:** |
| Joshua | D. | Biering | |
| ***Firm* CRD #:** | ***Firm* Name:** | ***Firm* NFA #:** | |
| 79 | J.P. MORGAN SECURITIES LLC | | |
| **Individual CRD #:** | **Individual SSN:** | **Individual NFA #:** | ***Firm* Billing Code:** |
| 6883842 | xxx-xx-xxxx | | JPM-HNW |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 382178 | HNW-382178 | JPM | 500 EAST BORDER STREET<br>2ND FLOOR<br>ARLINGTON, TX 76010<br>United States | No | Located At | 11/16/2017 | 10/31/2019 |
| 382170 | USPB-382170 | JPM | 420 Throckmorton St<br>Floor 03<br>Fort Worth, TX 76102<br>United States | No | Located At | 11/01/2019 | 12/01/2023 |

## 2. Current Residential Address

| From | To | Street Address |
|---|---|---|
| 02/2022 | PRESENT | 3900 Bent Elm Ln<br>Fort Worth, TX 76109<br>United States |

## 3. Full Termination

**Is this a *FULL TERMINATION*?** ◉ **Yes** ○ **No**

Note: A "Yes" response will terminate ALL registrations with all SROs and all *jurisdictions*.

Exhibit
CX1

**Reason for Termination:** Discharged

**Termination Explanation:**

If the Reason for Termination entered above is Permitted to Resign, Discharged or Other, provide an explanation below:

After RR submitted resignation, but before expiration of Notice Period, RR was terminated for inappropriate behavior. Not related to the sale of securities or any customer complaints.

App. 0077

**4. Date of Termination**

**Date Terminated (MM/DD/YYYY): 12/01/2023**

A complete date of termination is required for *full termination*. This date represents the date the *firm* terminated the individual's association with the *firm* in a capacity for which registration is required.

For *partial termination*, the date of termination is only applicable to post-dated termination requests during the renewal period.

Notes: For *full termination*, this date is used by *jurisdictions*/SROs to determine whether an individual is required to requalify by examination or obtain an appropriate waiver upon reassociating with another *firm*.

The *SRO/jurisdiction* determines the effective date of termination of registration.

**6. Affiliated Firm Termination**

No Information Filed.

**7. Disclosure Questions**

IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.

**Disclosure Certification Checkbox (optional):** ☑

By selecting the Disclosure Certification Checkbox, the *firm* certifies that (1) there is no additional information to be reported at this time; (2) details relating to Questions 7A, 7C, 7D and 7E have been previously reported on behalf of the individual via Form U4 and/or amendments to Form U4 (if applicable); and (3) updated information will be provided, if needed, as it becomes available to the *firm*. Note: Use of "Disclosure Certification Checkbox" is optional

**Investigation Disclosure**

| | | Yes | No |
|---|---|---|---|
| **7A.** | Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.) | ○ | ○ |

**Internal Review Disclosure**

| | | Yes | No |
|---|---|---|---|
| **7B.** | Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ◉ |

**Criminal Disclosure**



**7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual:

1. convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*?
2. *charged* with any *felony*?
3. convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?
4. *charged* with a *misdemeanor* specified in 7(C)(3)?

**Regulatory Action Disclosure**

Yes No

**7D.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses?

**Customer Complaint/Arbitration/Civil Litigation Disclosure**

Yes No

**7E.** **1.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

**(a)** is still pending, or;

**(b)** resulted in an arbitration award or civil judgment against the individual, regardless of amount, or;

**(c)** was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;

**(d)** was settled, on or after 05/18/2009, for an amount of $15,000 or more?

**2.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that the individual was *involved* in one or more *sales practice violations*, and which

**(a)** was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;

**(b)** was settled, on or after 05/18/2009, for an amount of $15,000 or more?

**3.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(2) above, which:

**(a)** would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or

**(b)** would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.

**Answer questions (4) and (5) below only for arbitration claims or civil litigation filed o 05/18/2009**

**4.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations*, and which:

**(a)** was settled for an amount of $15,000 or more, or; ○ ○

**(b)** resulted in an arbitration award of civil judgment against any named respondent(s)/defendant(s), regardless of amount? ○ ○

**5.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an investment-related, consumer-initiated, arbitration claim or civil litigation not otherwise reported under question 7E(4) above, which:

**(a)** would be reportable under question 14I(5)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or ○ ○

**(b)** would be reportable under question 14I(5)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*. ○ ○

**Termination Disclosure**

| | Yes | No |
|---|---|---|
| **7F.** Did the individual voluntarily *resign* from your *firm*, or was the individual discharged or permitted to *resign* from your *firm*, after allegations were made that accused the individual of: | | |
| **1.** violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ◉ |
| **2.** fraud or the wrongful taking of property? | ○ | ◉ |
| **3.** failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ◉ |

**8. Signature**

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT

This section must be completed on all U5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

**8A. FIRM ACKNOWLEDGMENT**

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

**Person to contact for further information** **Telephone # of person to contact**

Employee Compliance Registration 614-217-5492

App. 0080

**Signature of *Appropriate Signatory*** **Date (MM/DD/YYYY)**

Greg Thompson 12/22/2023

**Signature** ______________________________

## Criminal DRP

No Information Filed

## Customer Complaint DRP

No Information Filed

## Internal Review DRP

No Information Filed

## Investigation DRP

No Information Filed

## Regulatory Action DRP

No Information Filed

## Termination DRP

No Information Filed

# Employee Relations Investigation File and Communications

**App. 0082-0111**

ER investigation file/work notes and staged ER communications; supplemented at App. 0944-0973 for the CX152-CX171 chronology.

Message

App. 0082

| | |
|---|---|
| **From**: | ben.stewart@jpmorgan.com [Teams:ben.stewart@jpmorgan.com] |
| **Sent**: | 10/24/2023 2:59:53 PM |
| **To**: | Stephanie.Stainback@jpmorgan.com [Teams:stephanie.stainback@jpmorgan.com] |
| **Subject**: | DIRECT_CHAT-Stephanie.Stainback@jpmorgan.com,ben.stewart@jpmorgan.com |

# Details: DIRECT_CHAT-Stephanie.Stainback@jpmorgan.com,ben.stewart@jpmorgan.com

**Network:** Teams
**Channel:** Chat
**Cluster:** teams
**Participants:** 2
**Start-Time:** Oct 24 2023 14:59:53.323 +0000
**End-Time:** Oct 24 2023 16:05:19.93 +0000
**Full Meta Data:** See Attachment: snapshot-meta.html

ben.stewart@jpmorgan.com (ben.stewart@jpmorgan.com) Oct 24 2023 14:59:53 **ID 306927362_41476483**

Not sure if you have a spare minute this morning but we have another update on this never ending scenario

Stephanie.Stainback@jpmorgan.com (stephanie.stainback@jpmorgan.com) Oct 24 2023 15:02:44 **ID 306927371_41476483**

just wrapped up a call

Stephanie.Stainback@jpmorgan.com (stephanie.stainback@jpmorgan.com) Oct 24 2023 15:02:48 **ID 306927386_41476483**

do you want to call me now?

ben.stewart@jpmorgan.com (ben.stewart@jpmorgan.com) Oct 24 2023 16:04:14 **ID 306927366_41476483**

And yet another update. Josh just approached me around discussing if he should resign. Can you call me at 817 884 4442 when you have another second?

Stephanie.Stainback@jpmorgan.com (stephanie.stainback@jpmorgan.com) Oct 24 2023 16:04:31 **ID 306927372_41476483**

on a calibration session for next hour

Stephanie.Stainback@jpmorgan.com (stephanie.stainback@jpmorgan.com) Oct 24 2023 16:04:45 **ID 306927384_41476483**

will call you after we wrap

ben.stewart@jpmorgan.com (ben.stewart@jpmorgan.com) Oct 24 2023 16:05:19 **ID 306927367_41476483**

Exhibit
**CX214**

Understood, told him nt and we would try for 1pmss when J.T. is present and we would try for 1pm

# Integrated Case Manager

Exported Date: 02/26/2025, 13:00:33

Item Id: EC_NA_1026230312

**Workflow Status**
Case Closed

**Date Open**
10/26/2023, 15:46:31

**Investigation Owner**
Jacobs, Jonathan

**Assigned Date**
12/21/2023, 18:56:03

**Created By**
I106272

**Disposition Owner**
Jacobs, Jonathan

**Subject**
Biering,Joshua(I662283)

**Tags**
[RAPID RESPONSE, HARASSMENT]

Item Details

**Workgroup**
ER Tier 4 Special Investigations

[redacted] **e**

**LOB**
ASSET & WEALTH MANAGEMENT

**Sub-LOB**
GLOBAL PRIVATE BANK

**Legal Entity**
0802 JPMORGAN CHASE BANK, N. A.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] riginal Inquiry: What have you done to address the behavior with the person(s) in question?: I am escalating a concern raised by a manager related to potential inappropriate behavior by an Executive Director (I662283) and his female analyst. I am the HRBA and [redacted]

**Is a Customer Involved?**
N

Exhibit
CX120

Referring & Submitting Party Information

**Referring Party**
Stephanie Stainback U729056

**Anonymous Request**
N

**Referral ID & Source**
Manual Alert

**Referral Channel**
HR Business Partner



**Submitting Party**
I106272

**Submitting Party Phone Number**

**Alternate**
9999999999

Notes

---

**Recent Notes**

01/02/2024, 19:58:00 Updated by Jacobs, Jonathan
original -01/02/2024, 19:58:00
[redacted]

01/02/2024, 19:55:11 Updated by Jacobs, Jonathan
original -01/02/2024, 19:55:11
Attachment removed by Srikanth Javvadi. Case re-recommended to conclude.

01/02/2024, 16:01:33 Updated by Jacobs, Jonathan
original -01/02/2024, 16:01:33
ERP submitted techhub ticket to help remove the attachment that does not have a hyperlink. ERP contacted by Ayelen Samarra and Michael Lunsford to help with issue.

12/22/2023, 14:42:16 Updated by Custodio, Cozy P
original -12/22/2023, 14:42:16
Justification comments: Connected with ERP.

12/22/2023, 00:11:12 Updated by Padilla, Linda
original -12/22/2023, 00:11:12
Justification comments: approved to adjust statements made in preliminary conclusion

12/21/2023, 18:56:06 Updated by Jacobs, Jonathan
original -12/21/2023, 18:56:06
[redacted]

12/05/2023, 17:49:58 Updated by Jacobs, Jonathan
original -12/05/2023, 17:47:25
Per Aileen Marilla (SID: R625885), "As I checked this again it seems that everything is okay now, as the termination reason of the employee shows as Misconduct."

12/01/2023, 19:04:32 Updated by Jacobs, Jonathan

App. 0086

original -12/01/2023, 19:04:32
Subject's manager advised ERP that he has processed the termination.

11/29/2023, 19:55:23 Updated by Jacobs, Jonathan
original -11/29/2023, 19:55:23
Subject's manager and skip-level manager both approved the Recommendation for Termination ("RFT") draft. See attachments for email approval.

11/27/2023, 16:45:30 Updated by Jacobs, Jonathan
original -11/27/2023, 15:37:44
[redacted]

11/27/2023, 21:06:35 Updated by Jacobs, Jonathan
original -11/20/2023, 19:00:27
HRBA Stephanie Stainback sent an email (attached hereto) that says that someone such as Subject needs approval to stay/lodge with clients. See attached email.

11/20/2023, 18:51:08 Updated by Jacobs, Jonathan
original -11/20/2023, 18:51:08
HRBA Stephanie Stainbeck said that Global Security matter did not result in a found violation of the code of conduct. Therefore, ERP scheduled meeting with Stainbeck and [redacted] for 11 /27 to discuss next steps.

11/29/2023, 20:05:31 Updated by Jacobs, Jonathan
original -11/16/2023, 20:15:20
HR Supervision ("HRS") check performed - Subject is not eligible for HRS. Update: ERP ran HRS check again on November 29, 2023, and Subject is still not eligible for HRS.

11/14/2023, 13:25:12 Updated by Jacobs, Jonathan
original -11/14/2023, 13:25:12
ERP waiting to disposition until conclusion of Global Security investigation related hereto, so that both cases can be dispositioned at the same time.

11/10/2023, 17:21:53 Updated by Jacobs, Jonathan
original -11/10/2023, 17:21:53
Related case is linked hereto because it is a concurrent investigation into Subject, and both cases will be dispositioned at the same time, per guidance from Legal.

[redacted] Later

11/09/2023, 22:45:32 Updated by Padilla, Linda

original -11/09/2023, 22:45:32

ERP & Manager discussed the case; thororugh review conducted. ok to move to disposition in accordance with the GS matter

11/06/2023, 16:21:49 Updated by Jacobs, Jonathan

original -11/06/2023, 16:21:49

ERP scheduled interview with Subject for November 7, 2023 at 2:30 p.m. EST, with Threat Management partner Chris Magee also attending.

11/01/2023, 19:34:59 Updated by Jacobs, Jonathan

original -11/01/2023, 19:34:59

ERP connected with HRBA Stephanie Stainback and Global Security ("GS") Nadia Mauraira to discuss GS case. Mauraira said that, upon advice from GS counsel, any interview by ERP should be separate from the GS interview. GS and ERP will endeavor to disposition cases at the same time.

10/30/2023, 19:12:43 Updated by Jacobs, Jonathan

original -10/30/2023, 19:12:43

ERP was advised that Subject resigned on October 28, 2023.

10/30/2023, 19:11:48 Updated by Jacobs, Jonathan

original -10/30/2023, 19:11:48

[redacted]

10/27/2023, 21:22:54 Updated by Jacobs, Jonathan

original -10/27/2023, 21:10:02

ERC requested to be placed on paid administrative leave, as per ERP's offer. Her manager William Brawley (SID: F654514) was made aware of her leave, and is in alignment with the recommendation.

10/27/2023, 21:09:41 Updated by Jacobs, Jonathan

original -10/27/2023, 21:09:41

Part 2: EE indicated that she did not want to embarrass him and worried about him being her banker or upsetting him so that he would make work miserable EE indicated that the next morning they went to play golf – he kept asking her if she was an [redacted] t [redacted]

[redacted]

[redacted]

the situation EE indicated that the client offered to talk to the subject employee as they were close friends – she asked him not to do it – next morning they left she told him to [redacted] e [redacted]

[redacted] he subject employee and work issues – do not have a concreate reason to feel physically threatened – more a what if scenario and knows where she works – afraid of seeing him EE indicated that the subject employee never expressed his anger in a physical way – recent example when talking with another banker he does not like the subject employee got really upset – "your dead to me and I cant trust you" – has seen him get frustrated with her – gets frustrated very easily EE indicated that there have been recent text messages – last one was sent this morning but she then subsequently blocked his number EE indicated that the subject employee has been a very paranoid person and has a hard time trusting people in general – EE worked very hard this year to be a trustworthy person to him (making him feel like she is not trying to get off his team) these convos are not about him – tried to talk to him as much as possible instead of others EE indicated that on September 10-11th she and the subject employee attended a golf tournament at a clients house; client is one [redacted]

[redacted]

10/27/2023, 17:12:04 Updated by Jacobs, Jonathan

original -10/27/2023, 17:12:04

ERP connected with HRBA Stephanie Stainback and recommended placing Subject on a paid

administrative leave; Stainback agreed. Stainback also advised that Subject is currently under simultaneous investigation by Global Security for potential misuse of company card. Stainback also agreed with ER recommendation that ERC be offered a paid administrative leave.

[redacted] utive Director (I662283) and his female analyst. I am the HRBA and can provide details to the ER case manager once assigned."

Tags

[RAPID RESPONSE, HARASSMENT]

Related Subject Alerts & Cases

**Christopher Magee (E811935) (E)**

EC_NA_0224259366 - 2025-02-24 - InvestigationInProcess (Ayala, Neoma M / R681177)

EC_NA_0605248244 - 2024-06-05 - CaseClosed (Pearson, Mark X / D642568)

EC_NA_0419240898 - 2024-04-19 - Close (Tumapon, Lady Rose B / O322063)

EC_NA_0320246668 - 2024-03-20 - CaseClosed (Toppins, Allen / E709469)

EC_NA_0308245456 - 2024-03-08 - CaseClosed (Suss, Lauren / V809271)

EC_NA_0209242518 - 2024-02-09 - CaseClosed (Fleming, Shannon / E929809)

EC_NA_0207242087 - 2024-02-07 - CaseClosed (Gurwin, Angela M / W260281)

EC_NA_0113249619 - 2024-01-13 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0108248899 - 2024-01-08 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0108248896 - 2024-01-08 - CaseClosed (Portannese, Dana / V481477)

EC_NA_0105248687 - 2024-01-05 - CaseClosed (Bedward, Daniela / E929369)

EC_NA_1212235186 - 2023-12-12 - CaseClosed (Miller, Anthony / E921987)

EC_NA_1208234784 - 2023-12-08 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_1205234309 - 2023-12-05 - CaseClosed (Cota, C. D / Z244274)

EC_NA_1013238898 - 2023-10-13 - CaseClosed (Burnett, Tricia / V821595)

EC_NA_1006238005 - 2023-10-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_0929237246 - 2023-09-29 - CaseClosed (Pina, Stacey / I785093)

EC_NA_0922236318 - 2023-09-22 - CaseClosed (Schulze, Steven / E929252)

EC_NA_0922236307 - 2023-09-22 - CaseClosed (Hersch, Michelle L / E784973)

EC_NA_0919235833 - 2023-09-19 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0918235701 - 2023-09-18 - CaseClosed (Fleming, Shannon / E929809)

EC_NA_0911234903 - 2023-09-11 - Close (Navarro, Brittany M / v105043)

EC_NA_0908234746 - 2023-09-08 - CaseClosed (Green, Denise / F695584)

EC_NA_0906234478 - 2023-09-06 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_0901234147 - 2023-09-01 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0808231594 - 2023-08-08 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0808231563 - 2023-08-08 - CaseClosed (Brown, Jamesia / O782795)

EC_NA_0803231048 - 2023-08-03 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_0802230938 - 2023-08-02 - CaseClosed (Lewis, Brie / W602348)

EC_NA_0728230462 - 2023-07-28 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0726230230 - 2023-07-26 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0725230046 - 2023-07-25 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0720239622 - 2023-07-20 - CaseClosed (Holtzman, Michael / V510276)

EC_NA_0717239151 - 2023-07-17 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0707238306 - 2023-07-07 - CaseClosed (Gurwin, Angela M / W260281)

EC_NA_0705238016 - 2023-07-05 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0630237739 - 2023-06-30 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0608235326 - 2023-06-08 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0605234803 - 2023-06-05 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0602234637 - 2023-06-02 - CaseClosed (Holtzman, Michael / V510276)

EC_NA_0531234393 - 2023-05-31 - CaseClosed (Carney, Lee / V768398)

EC_NA_0530234325 - 2023-05-30 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0518233211 - 2023-05-18 - CaseClosed (Carney, Lee / V768398)

EC_NA_0516232973 - 2023-05-16 - CaseClosed (Lewis, Brie / W602348)

EC_NA_0512232563 - 2023-05-12 - CaseClosed (Colville, George / E905099)

EC_NA_0510232273 - 2023-05-10 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0501239817 - 2023-05-01 - CaseClosed (Burnett, Tricia / V821595)

EC_NA_0426238743 - 2023-04-26 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0410234311 - 2023-04-10 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0325232914 - 2023-03-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0310231576 - 2023-03-10 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0310231485 - 2023-03-10 - CaseClosed (DANIEL A KRAMER / E926503)

EC_NA_0306231063 - 2023-03-06 - CaseClosed (Brown, Jamesia / O782795)

EC_NA_0303230934 - 2023-03-03 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0215239418 - 2023-02-15 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0215239400 - 2023-02-15 - CaseClosed (Diorio, Travis H / N617757)

EC_NA_0209238862 - 2023-02-09 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0131237900 - 2023-01-31 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0127237623 - 2023-01-27 - CaseClosed (Suss, Lauren / V809271)

EC_NA_0125237322 - 2023-01-25 - CaseClosed (Diorio, Travis H / N617757)

EC_NA_0120237026 - 2023-01-20 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0119236844 - 2023-01-19 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0111236258 - 2023-01-11 - Close (Cordero, Cody C / O077029)

EC_NA_1213224075 - 2022-12-13 - CaseClosed (Ambers, Tyre T / U285073)

EC_NA_1117222107 - 2022-11-17 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_1026220340 - 2022-10-26 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1006228339 - 2022-10-06 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0921226931 - 2022-09-21 - CaseClosed (Fields, Remi / I779223)

EC_NA_0921226832 - 2022-09-21 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0919226668 - 2022-09-19 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_0919226646 - 2022-09-19 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0913226144 - 2022-09-13 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0902225470 - 2022-09-02 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0817223943 - 2022-08-17 - CaseClosed (Toppins, Allen / E709469)

EC_NA_0808223127 - 2022-08-08 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0727222245 - 2022-07-27 - CaseClosed (Newton, Dawn M / V777733)

EC_NA_0720221647 - 2022-07-20 - CaseClosed (Suss, Lauren / V809271)

EC_NA_0720221645 - 2022-07-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0720221568 - 2022-07-20 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0713220968 - 2022-07-13 - CaseClosed (Bourbon, Robert / W587674)

EC_NA_0627229587 - 2022-06-27 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_0601227577 - 2022-06-01 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0526227175 - 2022-05-26 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0526227089 - 2022-05-26 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0517226262 - 2022-05-17 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0516226094 - 2022-05-16 - CaseClosed (Domingeaux, Joseph / E892461)

EC_NA_0504225234 - 2022-05-04 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0414223103 - 2022-04-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0411222047 - 2022-04-11 - CaseClosed (Fields, Remi / I779223)

EC_NA_0406221667 - 2022-04-06 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0406221579 - 2022-04-06 - CaseClosed (Domingeaux, Joseph / E892461)

EC_NA_0404221358 - 2022-04-04 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0401221326 - 2022-04-01 - CaseClosed (Bourbon, Robert / W587674)

EC_NA_0302228813 - 2022-03-02 - CaseClosed (Hinsman, Jean / E003884)

EC_NA_0228228610 - 2022-02-28 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0216227754 - 2022-02-16 - CaseClosed (Brown, Rayana / U434027)

EC_NA_0215227711 - 2022-02-15 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0203226825 - 2022-02-03 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0110225138 - 2022-01-10 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0106224916 - 2022-01-06 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1228214422 - 2021-12-28 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1206212787 - 2021-12-06 - CaseClosed (Austria, Jeanne / O507652)

EC_NA_1117211714 - 2021-11-17 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1112211439 - 2021-11-12 - CaseClosed (Hinsman, Jean / E003884)

EC_NA_1026210309 - 2021-10-26 - CaseClosed (Austria, Jeanne / O507652)

EC_NA_1026210306 - 2021-10-26 - CaseClosed (Gutierrez, Denise X / F677709)

**[redacted] (E)**

EC_NA_1207234613 - 2023-12-07T19:35:08Z - CaseClosed (Sanchez, Julie / V689725)

**Ben Stewart Jr. (N682989) (E)**

EC_NA_1227242657 - 2024-12-27 - InvestigationInProcess (Yu, Wai / W606906)



EC_NA_0118254842 - 2025-01-18 - Close (Whitehorse, Linda / I066856)

EC_NA_0615249372 - 2024-06-15 - CaseClosed (Reid, James E / E094115)

EC_NA_0610248727 - 2024-06-10 - CaseClosed (Labicasi, Jasmin / E804116)

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0630229920 - 2022-06-30 - CaseClosed (Cadyma-Renard, Zadina / W599216)

**Rachel Tidwell-Neal (R659859) (E)**

EC_NA_0225259558 - 2025-02-25 - FurtherInvestigation (Pina, Stacey / I785093)

EC_NA_0218258686 - 2025-02-18 - FurtherInvestigation (Ambers, Tyre T / U285073)

EC_NA_0218258683 - 2025-02-18 - RecommendToConcludeNoDispoReqd (Holtzman, Michael / V510276)

EC_NA_0124255514 - 2025-01-24 - InvestigationInProcess (Yu, Wai / W606906)

EC_NA_0816246530 - 2024-08-16 - CaseClosePendingWorkItem (Ross, Michael / N801129)

EC_NA_0123255280 - 2025-01-23 - CaseClosed (Melichar, Megan / N794857)

EC_NA_1216241422 - 2024-12-16 - CaseClosed (Scott, Deidra / V026519)

EC_NA_1206240420 - 2024-12-06 - CaseClosed (Ambers, Tyre T / U285073)

EC_NA_1127249397 - 2024-11-27 - CaseClosed (McCullough, Lori / I806307)

EC_NA_1125249045 - 2024-11-25 - CaseClosed (Carney, Lee / V768398)

EC_NA_1030246087 - 2024-10-30 - Close (Zerulik, Jonathan / R691232)

EC_EM_1024245308 - 2024-10-24 - CaseClosed (Newman, Gina A / U777660)

EC_NA_1022244887 - 2024-10-22 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1018244565 - 2024-10-18 - CaseClosed (Pearson, Mark X / D642568)

EC_NA_1004242810 - 2024-10-04 - CaseClosed (Suss, Lauren / V809271)

EC_NA_1002242419 - 2024-10-02 - CaseClosed (Miller, Anthony / E921987)

EC_NA_1001242327 - 2024-10-01 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0923240974 - 2024-09-23 - CaseClosed (Bridges, Jessica / E663410)

EC_NA_0911249564 - 2024-09-11 - CaseClosed (Bridges, Jessica / E663410)

EC_NA_0828248000 - 2024-08-28 - CaseClosed (Wong, Tina W / Z920641)

EC_NA_0807245452 - 2024-08-07 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0802244845 - 2024-08-02 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_0718243074 - 2024-07-18 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0718243058 - 2024-07-18 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0715242491 - 2024-07-15 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0712242382 - 2024-07-12 - CaseClosed (Black, Pascha / E853087)

EC_NA_0711242198 - 2024-07-11 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_0709241991 - 2024-07-09 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0628240705 - 2024-06-28 - CaseClosed (Bridges, Jessica / E663410)

EC_NA_0620249794 - 2024-06-20 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0611248914 - 2024-06-11 - CaseClosed (Pearson, Mark X / D642568)

EC_NA_0607248484 - 2024-06-07 - CaseClosed (Melichar, Megan / N794857)

EC_NA_0603247625 - 2024-06-03 - CaseClosed (Fleming, Shannon / E929809)

EC_NA_0508244669 - 2024-05-08 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0501243235 - 2024-05-01 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0423241613 - 2024-04-23 - CaseClosed (Newton, Dawn M / V777733)

EC_NA_0423241611 - 2024-04-23 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0417240324 - 2024-04-17 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0411249169 - 2024-04-11 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0326247178 - 2024-03-26 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0311245548 - 2024-03-11 - CaseClosed (Domingeaux, Joseph / E892461)

EC_NA_0305245078 - 2024-03-05 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0304244855 - 2024-03-04 - CaseClosed (Shah, Ravin J / I699399)

EC_NA_0301244672 - 2024-03-01 - CaseClosed (Cano, Alberto S / V772785)

EC_NA_0228244404 - 2024-02-28 - Close (Bono, Jorj S / O403268)

EC_NA_0226244039 - 2024-02-26 - CaseClosed (Carney, Lee / V768398)

EC_NA_0222243740 - 2024-02-22 - CaseClosed (Yu, Wai / W606906)

EC_NA_0221243663 - 2024-02-21 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0221243650 - 2024-02-21 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0221243609 - 2024-02-21 - CaseClosed (Sebastian, Nancy R / E572376)

EC_NA_0220243516 - 2024-02-20 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0217243370 - 2024-02-17 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0213242696 - 2024-02-13 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1221237670 - 2023-12-21 - CaseClosed (Melichar, Megan / N794857)

EC_NA_1215235539 - 2023-12-15 - CaseClosed (Portannese, Dana / V481477)

EC_NA_1208234866 - 2023-12-08 - CaseClosed (Harling, Catherine / E916218)

EC_NA_1207234613 - 2023-12-07 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1115232549 - 2023-11-15 - CaseClosed (Allen, Tomika / V802282)

EC_NA_1102231088 - 2023-11-02 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1101230967 - 2023-11-01 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1027230508 - 2023-10-27 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_1024239986 - 2023-10-24 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_1016238947 - 2023-10-16 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1002237423 - 2023-10-02 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1002237385 - 2023-10-02 - CaseClosed (Lehman, Joseph / W017055)

EC_NA_0920236012 - 2023-09-20 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0919235872 - 2023-09-19 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0907234617 - 2023-09-07 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0824233297 - 2023-08-24 - CaseClosed (Holtzman, Michael / V510276)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0803231108 - 2023-08-03 - CaseClosed (Bentsen, Jennifer R / E058304)

EC_NA_0630237739 - 2023-06-30 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0607235230 - 2023-06-07 - CaseClosed (Vinh, Diane / E824351)

EC_NA_0605234804 - 2023-06-05 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0601234555 - 2023-06-01 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0522233500 - 2023-05-22 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0419236026 - 2023-04-19 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0417235020 - 2023-04-17 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0403233659 - 2023-04-03 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0327232944 - 2023-03-27 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0321232464 - 2023-03-21 - CaseClosed (Decarlo, Vito A / N718221)

EC_NA_0316232017 - 2023-03-16 - CaseClosed (Carney, Lee / V768398)

EC_NA_0315231937 - 2023-03-15 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0224230137 - 2023-02-24 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0213239205 - 2023-02-13 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0207238587 - 2023-02-07 - CaseClosed (Chelf, Shawn / F502194)

EC_NA_0110236134 - 2023-01-10 - CaseClosed (Bedward, Daniela / E929369)

EC_NA_0103235578 - 2023-01-03 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_1209223814 - 2022-12-09 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_1207223512 - 2022-12-07 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_1205223368 - 2022-12-05 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_1111221734 - 2022-11-11 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1024220004 - 2022-10-24 - CaseClosed (Suss, Lauren / V809271)

EC_NA_1024229925 - 2022-10-24 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1021229751 - 2022-10-21 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1012228814 - 2022-10-12 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0906225591 - 2022-09-06 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0825224673 - 2022-08-25 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0810223422 - 2022-08-10 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0722221835 - 2022-07-22 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0706220237 - 2022-07-06 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0617228995 - 2022-06-17 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0616228799 - 2022-06-16 - CaseClosed (Mackey, Kevin P / O735172)

EC_NA_0510225626 - 2022-05-10 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0321220267 - 2022-03-21 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0126226235 - 2022-01-26 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0125226103 - 2022-01-25 - CaseClosed (Montoya, Carlos J / I657096)

EC_NA_0121225951 - 2022-01-21 - CaseClosed (Watkins, Shannon HR / W587416)



**Stephanie Stainback (U729056) (E)**

EC_NA_0221259132 - 2025-02-21 - RecommendToConcludeNoDispoReqd (Ross, Michael / N801129)

EC_NA_0221259130 - 2025-02-21 - RecommendToConcludeNoDispoReqd (Ross, Michael / N801129)

EC_NA_0221259129 - 2025-02-21 - RecommendToConcludeNoDispoReqd (Ross, Michael / N801129)

EC_NA_0220259092 - 2025-02-20 - InvestigationInProcess (Turner, Tiffany T / E194718)

EC_NA_0220259091 - 2025-02-20 - InvestigationInProcess (Turner, Tiffany T / E194718)

EC_NA_0220259090 - 2025-02-20 - InvestigationInProcess (Turner, Tiffany T / E194718)

EC_NA_0211257800 - 2025-02-11 - InvestigationInProcess (Turner, Tiffany T / E194718)

EC_NA_0121255050 - 2025-01-21 - InvestigationInProcess (Lovelady, Pamela / I753067)

EC_NA_1113247574 - 2024-11-13 - InvestigationInProcess (Goldblum, Andrea / O777050)

EC_NA_0131256399 - 2025-01-31 - CaseClosed (Poole, Jene'e / I354851)

EC_NA_0110253886 - 2025-01-10 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0110253885 - 2025-01-10 - CaseClosed (Melichar, Megan / N794857)

EC_NA_0108253604 - 2025-01-08 - Close (Brown, Amanda M2 / D144802)

EC_NA_1220242023 - 2024-12-20 - CaseClosed (Pearson, Mark X / D642568)

EC_NA_1219242018 - 2024-12-19 - CaseClosed (Yu, Wai / W606906)

EC_NA_1218241851 - 2024-12-18 - CaseClosed (Paul, Mark / D640316)

EC_NA_1213241233 - 2024-12-13 - Close (Navarro, Brittany M / v105043)

EC_NA_1213241182 - 2024-12-13 - CaseClosed (Richards, Corey A / V445954)

EC_NA_1211240894 - 2024-12-11 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_1206240420 - 2024-12-06 - CaseClosed (Ambers, Tyre T / U285073)

EC_NA_1205240341 - 2024-12-05 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_1115247913 - 2024-11-15 - Close (Bono, Jorj S / O403268)

EC_NA_1113247573 - 2024-11-13 - CaseClosed (Brown, Jamesia / O782795)

EC_NA_1111247352 - 2024-11-11 - CaseClosed (Yu, Wai / W606906)

EC_NA_1028245628 - 2024-10-28 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_1028245579 - 2024-10-28 - CaseClosed (Cota, C. D / Z244274)

EC_NA_1004242726 - 2024-10-04 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0913249916 - 2024-09-13 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0913249795 - 2024-09-13 - CaseClosed (Bono, Jorj S / O403268)

EC_NA_0830248381 - 2024-08-30 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0827247914 - 2024-08-27 - CaseClosed (Pearson, Mark X / D642568)

EC_NA_0827247912 - 2024-08-27 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0801244632 - 2024-08-01 - CaseClosed (Poole, Jene'e / I354851)

EC_NA_0717242954 - 2024-07-17 - CaseClosed (Pearson, Mark X / D642568)

EC_NA_0715242491 - 2024-07-15 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0703241432 - 2024-07-03 - CaseClosed (Ferrugia, Tabatha / C003873)

EC_NA_0522246509 - 2024-05-22 - CaseClosed (Poole, Jene'e / I354851)

EC_NA_0424241642 - 2024-04-24 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0404248382 - 2024-04-04 - CaseClosed (Phillips, Kendra / O799150)

EC_NA_0304244887 - 2024-03-04 - CaseClosed (Suss, Lauren / V809271)

EC_NA_0301244710 - 2024-03-01 - CaseClosed (Miller, Lindsay / E879906)

EC_NA_0221243663 - 2024-02-21 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1206234513 - 2023-12-06 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_1205234222 - 2023-12-05 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1111232122 - 2023-11-11 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0928236929 - 2023-09-28 - CaseClosed (Yu, Wai / W606906)

EC_NA_0913235248 - 2023-09-13 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0817232513 - 2023-08-17 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0810231854 - 2023-08-10 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0323232726 - 2023-03-23 - CaseClosed (Bentsen, Jennifer R / E058304)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0214239284 - 2023-02-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0211239066 - 2023-02-11 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1103221016 - 2022-11-03 - Close (Bono, Jorj S / O403268)

EC_NA_1027220458 - 2022-10-27 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0824224631 - 2022-08-24 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0607227980 - 2022-06-07 - CaseClosed (Coleman, Marilyn / Z106661)

EC_NA_0428224615 - 2022-04-28 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_0216227763 - 2022-02-16 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0125226096 - 2022-01-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0118225602 - 2022-01-18 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1112211426 - 2021-11-12 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Joshua Biering (I662283) (E)**

EC_NA_1227242657 - 2024-12-27 - InvestigationInProcess (Yu, Wai / W606906)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

**Nadia Muraira (I780946) (E)**

EC_NA_0517245857 - 2024-05-17 - CaseClosed (Cano, Alberto S / V772785)

EC_NA_0415249501 - 2024-04-15 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0919235878 - 2023-09-19 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0812232074 - 2023-08-12 - CaseClosed (Black, Pascha / E853087)

EC_NA_1024220011 - 2022-10-24 - CaseClosed (Greenwood-Jackson, Gena / V802558)

Related Parties

| Name | Party Type | SID | Association | ECI | Related Party Id |
|---|---|---|---|---|---|
| Christopher Magee | Employee | E811935 | Relevant Partner | | PRTY_REL_NA_1027233419 |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| [redacted] | Employee | [redacted] | Employee Raising Complaint | | PRTY_REL_NA_1027233415 |
| Ben Stewart Jr. | Employee | N682989 | Subject Manager | | PRTY_REL_NA_1027233413 |
| [redacted] | | [redacted] | | | [redacted] |
| Stephanie Stainback | Employee | U729056 | HR Business Advisor | | PRTY_REL_NA_1026232961 |
| Joshua Biering | Employee | I662283 | Subject (Primary) | | PRTY_REL_NA_1026232749 |
| Nadia Muraira | Employee | I780946 | Relevant Partner | | PRTY_REL_NA_1109238702 |

## Attachments

| **File Name** | **File Description** | **File Size** | **Date Added** |
|---|---|---|---|
| Joshua Biering.pdf | HRC0202694 | 0.02 | 10/26/2023 |
| Acronym Explanation list.docx | List of acronyms used | 0.013 | 11/09/2023 |
| FW_ _EXTERNAL_Josh Biering Resignation.msg | Email notifying that Subject resigned | 0.087 | 10/30/2023 |
| Rapid Response Opening Memo--J_ Biering I662283.msg | Rapid Response Opening Memo email | 0.117 | 10/30/2023 |
| FW_ Business Hospitality.msg | Email from Stephanie Stainback on 11 20 2023 | 0.09 | 11/20/2023 |
| RFT approvals.pdf | Approval of Recommendation for Termination from manager and next-level manager | 0.932 | 11/29/2023 |
| HRS_Eligibility_Template1.xlsx | HR Supervision Results | 0.017 | 11/29/2023 |
| HRS Eligibility Results.msg | HR Supervision Results email | 0.104 | 11/29/2023 |
| RFT - Biering.pdf | Recommendation for Termination | 0.249 | 11/30/2023 |
| RR Closing Memo.pdf | Rapid Response Closing Memo - email | 0.823 | 11/30/2023 |

## Facilities

No data in Facilities

## Associated Work Item

| **Item ID** | **Relationship** | **Type** | **Subtype** | **Status** | **Owner** |
|---|---|---|---|---|---|
| EC_NA_1020239740 | Reference Only | Theft from Firm | Expense Reimbursement | Case Closed | Muraira, Nadia/I780946 |
| EC_NA_1207234613 | Reference Only | Retaliation | Complaint/Allegation | Case Closed | Sanchez, Julie/V689725 |

## Notifications

| **Type** | **Recipient** | **Method** | **Date Notified** | **Updated By** | **Date Added** | **Notification Id** |
|---|---|---|---|---|---|---|
| Initial Stakeholder Notification | Stephanie Stainback, HRBA | Phone | Oct 27,2023 | Jacobs, Jonathan (D639971) | 10/27/2023, 17:09:17 | NTFY_NA_1027239290 |

## Financials

No data in financials

[redacted]



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] curity [redacted] agement partner Christopher Magee, Relevant Partner Coordinate with Rachel Tidwell-Neal, attorney, Relevant Partner Coordinate regarding separate Global Security case (ICM EC_NA_1020239740) with Global Security investigator Nadia Muraira Additional Analysis: Review Subject's Conduct history and performance history in Answer Key (AK), ServiceNow and Integrated Case Manager(ICM). Review Subject's HR Profile for time in role and performance ratings. Search HRBA Matrix for the HRBA for the Subject.

## Outline of Findings

SUBJECT'S CONDUCT HISTORY Conduct cases(COC) - EC_NA_1020239740 – opened October 20, 2023 - Theft from Firm / Expense Reimbursement – Investigation in Process Performance cases - No performance cases found for the Subject in AK. No ServiceNow cases other than the paid administrative leave that Subject was on from October 27, 2023 (note: he tendered his resignation on October 28, 2023, but is still on what is referred to as "garden leave."). ADDITIONAL ANALYSIS Subject has a hire date of May 23, 2016 and has worked as an SC Banker since February 16, 2023. Annual Performance "Review" ratings: • 2022 was O/S/S • 2021 was S/S/O *Ratings: S=Strong, O=On-Track, G=Growth Area *Categories: Business Results / Client, Customer, Stakeholder / Team p HRBA aligned to Subject (as per HRBA Escalation Matrix) is Stephanie L Stainback FINDINGS ERC [redacted] has worked at the firm since February 2021, and that "99%" of work her is on Subject's book of b h Biering said he and ERC had a "very professional relationship" with Subject, and she did not report directly to him. Subject emphasized that he had "no decision-making authority" regarding which banker she was aligned to, and no impact or direct say in her performance reviews "or anything of that nature." ERC said that on September 10 and 11, 20 [redacted]

h

[redacted]

,

[redacted]

ssional" during the work day, and went on lunches together where they would talk about philosophy, life, and would also g [redacted] because Subject's wife went through his phone and learned he was ng [redacted] al" but [redacted] m and he had "no decision-making authority" about her work. Yet both Subject and ERC acknowledged that the vast majority of ERC's work was solely to support Subject's book of business, putting him at

[redacted]

**Preliminary C**[redacted]
The allegation of [redacted] is Supported. The Recommended Outcome is Termination.

Interviews

---

[redacted] **ty**
(Employee Raising Complaint)

**Interview Summary**
On Friday, October 27, 2023, at 2:44 p.m., ERP and Global Security/Threat Manage [redacted] opher Magee jointly interviewed ERC [redacted] ERP reminded ERC of firm policies reg [redacted] ty and non-retaliation. ERC indicated that she has fear in waiting until next week to tell her story, and is fearful. She said that she is fearful of both Subject and work issues. She said that Subject never expressed his anger in a physical way. He did once say to ERC, "you're dead to me" and that he cannot trust her when ERC was speaking with another banker. ERC said that Subject has texted her but that she blocked his number. She said that Subject is a "very paranoid person." She noted that on September 10 and 11, 2023, the two attended a golf tournament at a client's house, and the client is one of Subject's closest friends. She said that Subject told her originally that she could stay in a house with females. She said that she was excited to go on the trip. She noted that Subject was going through a [redacted] ued to ask for drinks for everyone, including clien [redacted] a [redacted] er and said you do not have to deal with this. She said that, later that day, they returned to [redacted] e [redacted]

[redacted] ct [redacted] to download Signal, an encrypted messaging app that auto [redacted] set [redacted] m [redacted] 99%” of work her is on Subject’s book of business. ERP advised about a paid administrative leave as well as EAP resources.

**Interview Date**
Oct 27,2023

**Interview Id**
INTVW_NA_1107230343

---

**Interview Summary**

On Tuesday, November 7, 2023, at 2:30 p.m., ERP - along with Threat Management partner Christopher Magee - interviewed Subject Josh Biering. Subject joined the firm in May 2016 as an associate, then was promoted to Vice President and then Executive Director. He resigned from the firm on October 28, 2023, and is on "garden leave" until December 26, 2023. ERP reminded Subject of firm policies regarding confidentiality and non-retaliation. Subject said that h[redacted]ent from September 10 - 12, 2023 at the [redacted] course in Montgomery County, Texas [redacted] as played on September 11, 2023, and everyone departed [redacted]. He stayed at cottages on the property, owned by [redacted] and available for out of town guests, which was [redacted]n the sponsorship package (how Subject stayed there). Subject said f[redacted]ayed [redacted] e [redacted] ubject, and she did not report directly to him. Subject emphasized that he had "no decision-making authority" regarding which banker she was

aligned to, and no impact or direct say in her performance reviews "or anything of that nature." Leading [illegible] tournament, he knew that ERC knew that he was an "avid golfer," and she said that she was a good golfer and was excited to join him on the trip. Subject said he had seen ERC be "noticeably stressed" and seemed "overcapacity relative to her peers," and Subject's mentor had taken him out socially for the "enjoyable" parts of the job, so that is what he tried to do with ERC. ERC and Subject drove down separatel [redacted] to [redacted] t, [redacted] pped ERC off at her parents' house, and met her father. He wo [redacted] ant [redacted] o kept exploring "what if?" after discussing their respective marital issues. “What would that look like if we decided our current marital situations weren’t working” and got together? Subject was reassured it was “incredibly mutual," as ERC told him that he is all she thinks about. The two "kept it professional" during the work day, and went on lunches together where they would talk about philosophy, life, and would also grab dinner after work. Subject “would constantly text her” if she were working late. Would tell her, "all of this can wait." Subject again said that he would “constantly check in on her.” ERC would often initiate a request for phone call, go on a walk, grab a coffee so that [redacted] hich has encrypted texting. They "explored other channels" because Subject's wife went through his phone and learned he was going to the golf outing with ERC. He described Signal as a "disappearing app." ERC had originally recommended Snapchat from when she had a "fling" with an analyst in New York. Subject was the one who suggested Signal. Subject said that he is no longer texting or Signalling ERC, as she [redacted] Houston on July 25,

**Interviewed Party**
Joshua Biering (Subject)

2023, and Subject noted that trip was planed with "market leadership approval." It was an overnight trip [redacted] company, during which the two stayed in separate rooms. Subject said that he told ERC he was thinking of resigning because of the toxicity of the work environment. He said that he did tell her about how bonuses work at the firm, and gave a "transparent overview of the process." ERP offered EAP resources and Spring Health, and Subject said "Spring Health is great" and is already utilizing it. The interview was concluded at 3:21 p.m.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**Date Outcome Provided to Subject**
Dec 01,2023

**Closing Summary**

ERP provided findings of the investigation to ERC [redacted] on November 30, 2023. ERP also provided findings of the investigation to HRBA Stephanie S er 27, 2023, and to Subject’s manager Ben Stewart, Jr. on November 29, 2023. Stewart communicated the termination to Subject on December 1, 2023.

**Executive Summary**
Program Analyst (“Complainant”) raised concerns about an Executive [redacted] rted as the vast majority of her job responsibilities. [redacted] She alleged that Subject made repeated physical, u h incl [redacted]

Exceeded Days Open Rationale

---

Overall Exceeded Days Rationale

**Exceeded Days Rationale**
Internal ER Delay

Message



**From:** Jacobs, Jonathan (HR, USA) [jonathan.jacobs@jpmchase.com]
**Sent:** 11/16/2023 10:07:25 PM
**To:** Stainback, Stephanie (WM, USA) [Stephanie.Stainback@jpmorgan.com]
**Subject:** Re: Josh Biering

Sounds very good - thank you!

---

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Sent:** Thursday, November 16, 2023 4:59:47 PM
**To:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Subject:** RE: RE: Josh Biering

Josh is in for zero IC. I will put time on the calendar soon to follow-up as I had a call with Nadia today.

---

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Thursday, November 16, 2023 1:25 PM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: Josh Biering

Hi Stephanie,

I just had my one-on-one with Linda, and she had one question that she wanted me to ask you: given Josh's resignation on October 28, 2023 (and subsequent garden leave until December 26, 2023), is his IC affected, and/or is it now at 0%? Thank you, and happy to speak by phone or Zoom to further discuss!

Best,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

Exhibit
**CX158**

# Career/Performance Track and Global Security Expense Investigation

**App. 0113-0127**

Career/Performance track and Global Security expense investigation records; supplemented at App. 0975-0992.

App. 0113

| | |
|---|---|
| Report Title | HR Talent Management Case Details |
| Run Date and Time | 2024-03-06 12:48:13 Argentine Time |
| Run by | Camila Alvarez |
| Table name | sn_hr_core_case_talent_management |

## HR Talent Management Case

| | | | |
|---|---|---|---|
| Number: | HRC0151920 | State: | Closed Complete |
| Transferred from: | | Resolution : | Education provided |
| Transferred to: | | Approval: | Not Yet Requested |
| Opened for: | Ben Stewart Jr. | Priority: | 3 - Moderate |
| Opened for contact: | | Source: | Self Service |
| Subject person: | Joshua Biering | Opened: | 2023-10-17 16:24:41 |
| Subject person contact: | | Opened by: | Ben Stewart Jr. |
| Stage: | | Skip auto assign: | false |
| Display order: | | Assignment group: | HR_NA_HRA_HRAnswers |
| HR service: | Career & Performance | Assigned to: | Arbs Bulaong |
| HR service subtype: | Career | Collaborators: | |
| HR service subtype topic: | I have a problem | Template: | Career & Performance |
| Restrict: | false | | |
| Parent: | | | |
| HR profile: | Ben Stewart Jr. | | |
| PDF Template: | | | |
| Skills: | | | |
| Related cases: | | | |

Short description:

Career & Performance case for Ben Stewart Jr.

Description:

The following fields have been provided:Are you submitting this for or about another employee?: YesSelect the employee: Joshua BieringWhat type of support do you need?: Career profileHow can we help you?: I have a problemPlease provide additional details or questions.: I have questions over an employees corporate card and spending activity. I have seen expense report totals and transactions that concerns me around abuse of the system. Can someone help me audit the expense reports related to RCCC for Josh Biering.

Original Description:

The following fields have been provided:Are you submitting this for or about another employee?: YesSelect the employee: Joshua BieringWhat type of support do you need?: Career profileHow can we help you?: I have a problemPlease provide additional details or questions.: I have questions over an employees corporate card and spending activity. I have seen expense report totals and transactions that concerns me around abuse of the system. Can someone help me audit the expense reports related to RCCC for Josh Biering.

Business justification:

Country travelling to:

Visa category:

## Background Check Details

| | | | |
|---|---|---|---|
| Background check details: | | Drug screening details: | |
| Background check order ID: | | Drug screening provider reference ID: | |
| Background check provider reference ID: | | Drug screening status: | |
| | | Drug screening result: | |

Exhibit
CX182

App. 0114

| | |
|---|---|
| Background check status: | |
| Background check result: | |
| Background check percentage complete: | |

## Comments/Worknotes

Additional comments:

2023-10-18 18:54:49 - Arbs Bulaong (Additional comments)
Hello Ben,

My name is Arbs, thank you for contacting HR Answers. I appreciate you reaching out and I hope this response finds you well. I understand your query regarding one of your employee's use of the corporate credit card. Let me provide some information.

Upon checking, HR answers may only be able to provide assistance regarding regular payroll and others connected to it. For concerns regarding the Corporate Credit Card, I can give you a couple of ways to reach out to the proper team to assist.

First, you may send an email to Accounts_Payable_Americas@jpmchase.com for further information regarding the corporate card if they can assist. You may also go to this website go/AskGSS then at the middle part of the screen where you see the tiles for apps, please click "View More" until you find "Corporate Card and Expenses". There, you could find additional assistance.

I also strongly suggest for you to check on go/Code for the Code of Conduct concern if indeed there was an abuse of Corporate product. After verifying from the Code, you can call our Code Reporting Hotline to report the incident. You may call them through 1-855-576-2633 anytime since they are open 24/7.

If you are satisfied with the answers provided, kindly accept the resolution by clicking 'Yes' in the Actions button. Should you have other questions about a different topic, kindly create another inquiry.

Thanks,
Arbs
HR Answers
For general help and resources on HR related topics, visit me@jpmc.

2023-10-17 16:24:41 - Ben Stewart Jr. (Additional comments)
User Ben Stewart Jr. has initiated a Career & Performance request

Work notes:

| | |
|---|---|
| Related List Title | HR Case List |
| Table name | sn_hr_core_case |
| Query Condition | Sys ID in da53afd69372f9581718366d6cba1081, 3b06814e93fdb994a198fc0d6cba101c, 63ecfa99837d79503ac632347daad395 |
| Sort Order | Created in descending order |

3 HR Cases

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | Assigned to |
|---|---|---|---|---|---|---|---|
| HRC0422429 | Closed Complete | Ben Stewart Jr. | Joshua Biering | Leaving the Company Support | Leaving the Company Support case for Ben Stewart Jr. | HR_GLB_EDOServicing | Lydia Dsouza |
| HRC0098308 | Closed Complete | Ben Stewart Jr. | | Employee Behavior Assistance | Career & Performance case for Ben Stewart Jr. | HR_AM_ER_Onshore | Beth Wilson |

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | |
|---|---|---|---|---|---|---|---|
| HRC0115347 | Cancelled | Ben Stewart Jr. | Joshua Biering | Career & Performance | Career & Performance case for Ben Stewart Jr. | HR_GLB_ER_AdminIntake | Delle Arciaga |

| | |
|---|---|
| Related List Title | Interaction List |
| Table name | interaction |
| Query Condition | Sys ID in |
| Sort Order | Number in ascending order |

None

| | |
|---|---|
| Related List Title | Interaction List |
| Table name | interaction |
| Query Condition | Opened for = Joshua Biering |
| Sort Order | Created in descending order |

5 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|---|---|---|---|---|---|---|---|---|
| IMS0105283 | 2023-11-29 14:37:31 | Pay & Tax Assistance (US) interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Tyk Williams [redacted] | 2023-11-29 15:05:35 | E778734 |
| IMS0102403 | 2023-11-28 12:03:53 | General Inquiry interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Mark Magtangol Gimenez | 2023-11-28 12:15:23 | D566310 |
| IMS0090500 | 2023-11-17 11:37:07 | Pay & Tax Assistance (US) interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Pamela Nelson | 2023-11-17 11:40:31 | N604018 |
| IMS0068112 | 2023-11-02 18:18:18 | | Joshua Biering | Closed Complete | Phone | Kane Victoria | 2023-11-02 18:24:30 | V749410 |
| IMS0059925 | 2023-10-30 11:38:39 | General Inquiry interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Eli Candelaria | 2023-10-30 11:48:42 | N636764 |

| | |
|---|---|
| Related List Title | Task SLA List |
| Table name | task_sla |
| Query Condition | Task = HRC0151920 |
| Sort Order | None |

App. 0116

SLAs

| SLA definition | Type | Target | Stage | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|---|---|---|---|---|---|---|---|---|
| 2 Day | SLA | Resolution | Completed | 6 Hours 29 Minutes | 11 Hours 30 Minutes | 63.92 | 2023-10-17 16:24:41 | 2023-10-25 18:55:04 |

| | |
|---|---|
| Related List Title | Attachment List |
| Table name | sys_attachment |
| Query Condition | Table name = sn_hr_core_case_talent_management AND Table sys ID = fbfd08c8478af15806b0c43d026d4362 |
| Sort Order | Created in descending order |

None

| | |
|---|---|
| Related List Title | HR Case List |
| Table name | sn_hr_core_case |
| Query Condition | Sys ID = 63ecfa99837d79503ac632347daad395 |
| Sort Order | Created in descending order |

1 HR Cases

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | Assigned to |
|---|---|---|---|---|---|---|---|
| HRC0115347 | Cancelled | Ben Stewart Jr. | Joshua Biering | Career & Performance | Career & Performance case for Ben Stewart Jr. | HR_GLB_ER_AdminIntake | Delle Arciaga |

| | |
|---|---|
| Related List Title | Knowledge Use List |
| Table name | kb_use |
| Query Condition | Sys ID in 160d8423472442908da68bda436d430b, 6929bbd7c3a44690668cbe0fb001319f, 767f9a8747a48a50f3102efd046d4394, |
| Sort Order | Created in descending order |

Appointment



**From:** Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com]
**Sent:** 10/18/2023 1:16:24 PM
**To:** Wilson, Beth A [beth.a.wilson@chase.com]

**Subject:** Accepted: Joshua Biering case (HRC0098308)
**Location:** Zoom 333 058 6031

**Start:** 10/20/2023 2:30:00 PM
**End:** 10/20/2023 3:00:00 PM
**Show Time As:** Tentative

**Recurrence:** (none)

Exhibit
CX121

Message



**From:** Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com]
**Sent:** 10/24/2023 9:21:32 PM
**To:** Wilson, Beth A [beth.a.wilson@chase.com]
**Subject:** RE: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

Appreciate your reaching out. Things have escalated this week. We will work through this situation and follow-up with someone else if we need to continue to manage through the performance concerns.

I am sorry to hear you will be out due to medical leave. Sending good vibes your way for health and healing! Take care.

Best,
Stephanie

**From:** Wilson, Beth A (HR, USA) <beth.a.wilson@chase.com>
**Sent:** Tuesday, October 24, 2023 4:01 PM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

Hi Stephanie,

I reached out to Nadia and she let me know you are speaking with her tomorrow morning. I'm actually quite surprised this case has received this much attention already, much faster than I ever expected. I believe she's also spoken to Ben a few times so I have no doubt she understands the time sensitivity here.

I will be on a medical leave starting Friday. I will ensure the performance case is well documented so that if there is a plausible reason for Joshua's expenses and we have to fall back on performance, one of my colleagues can pick up where we left off. If this occurs, Ben can send an update to the case via me@jpmc (or you can) referencing the performance case: HRC0098308. I will not be in a position to be checking emails and I am doing everything possible to avoid having managers reaching our directly to my manager, Pam Mayer.

Thank you!

**Beth A. Wilson** | ER Partner | Employee Relations | Human Resources | **JPMorgan Chase & Co.** |
**1111 Polaris Pkwy, E1, Columbus, OH 43240-2050**

Note: I will be OOO indefinitely starting 10/27/2023. If you have an update or request regarding a current case, please refer to me@jpmc jpmc > Search HR Resources, Apps or Requests > Performance Management Assistance

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Sent:** Tuesday, October 24, 2023 3:54 PM
**To:** Wilson, Beth A (HR, USA) <beth.a.wilson@chase.com>
**Subject:** FW: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

FYI – if you can do anything to help move this forward it would be appreciated. Nadia spoke with Ben yesterday.

**From:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Sent:** Tuesday, October 24, 2023 11:20 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

Exhibit
**CX186**

Hello Stephanie,



I apologize for the delay. I will be in office tomorrow and Thursday if either of those days work for you.

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Sent:** Monday, October 23, 2023 3:35 PM
**To:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Subject:** RE: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

Hi Nadia. I am free now if you'd like to speak today. I am the HR Business Advisor who supports the region so not the LOB contact but happy to help.

**From:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Sent:** Monday, October 23, 2023 1:02 PM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

Hello Stephanie,

I am the assigned investigator regarding Joshua Biering (I662283). I connected with Ben Stewart (N682989) this afternoon. He advised me you were the LOB point of contact regarding this employee. Can we schedule a time to discuss?

I am also on the 4th floor of the 712 Main Building in Houston, TX. In person, phone or zoom works. Let me know when works best for you. I appreciate your time and attention regarding this matter, and I look forward to hearing from you. Thank you and have a safe day!

Respectfully,

**Nadia Muraira** | Investigator VP | Global Security | JP Morgan Chase & Co. | 712 Main Street, Houston, TX 77002 | T: 713-216-7247 | nadia.muraira@jpmchase.com

**Learn more at** go/besecure
Be secure

# EC_NA_1020239740

**STATEMENT OF ALLEGATION(S):**

I am an HR Business Advisor. One of the managers who I support, Ben Stewart, reported to me that he thinks his employee, Joshua Biering, has been repeatedly charging and expensing personal charges to JPM. The manager became concerned after he received details on prior expense report(s) with no known reason for these charges. The repeated charges are at a country club and include alcohol, golf fees and meals and total approximately $3500.

**APPLICABLE CODE OF CONDUCT/POLICES:**

The allegations above implicate, but are not limited to, the following Code of Conduct Sections:

2.2 Managing Information

2.2.3 Using Firm Assets

**INVESTIGATION DETAILS & METHODOLOGY**

As part of this investigation, GS conducted the following:

1. Communicated with Executive Director, Ben Stewart Jr. (N682989)
2. Communicated with VP Employee Relations, Beth A. Wilson (I396012)
3. Communicated with Executive Director/HR Business, Stephanie Stainback (U729056)
4. Communicated with VP Employee Relations, Jonathan A. Jacobs (D639971)
5. Reviewed attachments
6. Reviewed Emails
7. Communicated with Executive Director/Travel Services, Van T. Huynh (U174832)
8. Employee Expense Report
9. Redacted - Privilege
10. Attorney retained for Executive Director, Joshua Biering (I662283)
11. Interview with Executive Director, Joshua Biering (I662283)

**OUTLINE OF FINDINGS:**

Stewart, reported to me that he thinks his employee, Joshua Biering, has been repeatedly charging and expensing personal charges to JPM. The manager became concerned after he received details on prior expense report(s) with no known reason for these charges. The

repeated charges are at a country club and include alcohol, golf fees and meals and total approximately $3500".

On 10/23/2023, GS was notified via ICM Web Referral/Navex regarding a potential code of conduct violation involving JPMC Executive Director, Joshua Biering (Josh).

On 10/23/2023, GS communicated with Executive/Managing Director, Ben Stewart (Ben) regarding the matter. Ben reported that he had noticed a corporate card expense by Josh on the following dates:

09/17/2023: $664.45 (River Crest Country Club)
09/04/2023: $754.00 (River Crest Country Club)
08/31/2023: $311.56 (River Crest Country Club)
08/30/2023: $551.45 (River Crest Country Club)

Ben reported Josh is going through a divorce and believed he had been abusing alcohol. Ben explained that the above expenses appeared to be personal expenses for the following reasons:

09/17/2023: Event was not listed on Josh's calendar and the prospect client did not golf with him or the other employees. Employee Keith Wiley confirmed the prospect client (J[redacted] M[redacted]) was at the River Crest Country Club on this date.

09/04/2023: Event was not listed on Josh's calendar and event was on a Monday (labor day/bank holiday). Ben reported it was "not typical" to see clients on holidays. Ben reported the charges were separated and Ben believed there was "potential abuse" of company limitations.

08/30/2023 and 08/31/2023: Ben believed it was "extremely unlikely" to golf with the same clients "two days in a row". Ben suspected Josh separated the charges and believed Josh was "covering up a personal outing on 08/30/2023". Ben expressed his concerns; however, there was no evidence produced by management that validated these were personal expenses in lieu of common line of business expenses associated with the corporate expense policy.

On 10/24/2023, GS communicated with VP Employee Relations, Beth Wilson (Beth) who reported she had other information regarding Josh that "HR" is currently investigating. Beth reported matters such as behavioral and alcohol abuse issues as it related to his personal life (separation/divorce).

On 10/31/2023, GS communicated with the line of business Human Resource Executive Director, Stephanie Stainback (Stephanie) who reported the same concerns as Beth. Stephanie elaborated that Josh is currently going through a divorce and his behavior at work had been "aggressive". Stephanie was asked about engaging the Global Security Work Place Violence team to which she explained Josh had not overtly showed aggression but his behavior was escalating. Stephanie mentioned Employee Relations (ER) and Human Resources (HR) were currently investigating a separate matter.

On 11/01/2023, GS received a phone call from Josh and requested information about his “involuntarily leave”. GS had no knowledge about Josh being placed on leave. Josh informed GS that he was placed on paid leave by his manager (Ben) on Friday 10/27/2023 without reason. Josh explained he was provided GS information (Investigator name and phone number) to contact to explain the paid administrative leave. GS advised Josh that he would need to contact his manager for the explanation and GS did not have that information. Josh volunteered information to include his attorney’s name and contact information. Josh also explained he submitted his voluntary resignation on Saturday 10/28//2023 and was on “garden leave” until 12/26/2023. Josh asked GS to contact him at any time to discuss any related issues. Josh provided his cell phone number and hours of availability for reference.

On 11/01/2023, GS communicated with Stephanie and the assigned HR personnel, Jonathan Jacobs (Jon) who advised GS that they had placed Josh on a paid administrative leave on Friday 10/27/2023 for a separate issue that involved allegations of sexual misconduct with another employee. Jon requested an HR/GS joint interview with Josh.

**Redacted - Privilege**

On 11/08/2023, GS was notified by Jon that he had concluded his investigation. Jon advised he had a successful interview with Josh. No further details were provided.

On 11/15/2023, GS conducted an interview by phone (912-308-5781) with Josh who reported the following: He has been with JPMC over six (6) years and his current role is an Executive Director in Private Bank (Asset and Wealth Management).

Josh advised he had retained an attorney but wanted to speak to GS about “corporate card expenses” that he was informed about by HR. Josh was asked about his recent expenses on 08/30/2023, 08/31/2023, 09/04/2023 and 09/17/2023. Josh stated he is very meticulous with his expense reports and often has administrative assistants (Katy Lind, Michelle Marlin and Tana McClure) complete his expense report(s) as well. Josh voluntarily stated that he has never falsified any information when submitting expenses regarding the use of his corporate card. Josh asked GS to compare his expense report to his peers, naming Keith Wiley, Ben Stewart, Allison Westmoreland, Patrick Borer, Madison Nadler and Tye McClue.

Josh explained there are controls and monitoring regarding expenses and Private Bank has a “high level” access when it comes to corporate expenses and reimbursement. Josh explained everything is written in the policy; however, he has been reporting his expenses similarly over the last two years. Josh stressed that GS would find nothing different between his expense report and the expense report of his peers. Josh noted the Private Bank operates differently than other lines of businesses.

Josh was asked about an expense report where he listed “J[redacted] M[redacted]” as a prospect client. Josh explained while he no longer had access to his work calendar, he recalled he had a team

building golf event at River Crest Country Club in September and while with his coworkers saw [redacted] at the venue. Josh explained he purchased [redacted] at least one alcoholic beverage and described it as a "transfusion". Josh explained [redacted] did not join their outing; however, since he purchased him a drink or two, he listed it on the same expense report as he normally would. (GS compared this information to the receipt and to the information another employee provided Ben and all information was corroborated).

Josh was asked about his back to back golf outing with a client in late August. Josh immediately stated that while not always frequent, often times he will have a back to back outings with a client. Josh voluntarily stated that he paid for expenses for the "[redacted]" at the same golfing venue (River Crest Country Club) on both dates, 08/30/2023 and 08/31/2023. Josh advised he recorded everything in his expense report.

Josh explained he did not abuse any corporate expense reimbursement policy. Josh volunteered information about his personal situation (divorce and mental health); however, explained he did not use his corporate card at any time for personal reasons without reporting true and accurate information. Josh denied any and allegations of fraud and/or theft.

GS compared expense reports amongst his peers (Keith Wiley and Ben) and found similar patterns of expense activity. Similar expenses between his peers were identified as golf venues, travel, entertainment, concerts and alcohol. Most, if not all receipts list a business client, prospect client, prospect business client, spouse of business client and spouse of prospect client.

GS did not find any extreme differences in expense reports between Josh and his peers. Expense reports were fairly consistent for at least 12 months.

On 11/16/2023, GS communicated with Stephanie about comparable data used in this investigation. Stephanie explained she believed HR had enough reason to "term" Josh and wanted to ensure GS completed their investigation into the potential falsification issue before proceeding with termination. GS advised Stephanie that GS did not have access to "potential business clients" to validate falsification regarding the "guests" Josh noted on his expense report; however, GS had spoken with Josh who provided information about each outing Ben reported. Stephanie advised she would get with Ben and their management team to determine if there was any evidence to substantiate Josh falsified any information as it pertained to the four dates given or at any other time.

During the course of this investigation, GS was in receipt of two emails Josh provided as it pertained to JPMC and his role. They have been attached in ICM for reference.

As of 11/29/2023, GS was not in receipt of any evidence to substantiate the allegations.

Based on the totality of the information/investigation, GS determined there is no evidence to support the allegations of Theft from Firm/Expense Reimbursement.

Message

**From**: Muraira, Nadia [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=9AF9C792477A47E9AB8A7A07534D73E0-I780946]
**Sent**: 11/29/2023 7:41:42 PM
**To**: Compliance Registration [compliance.registration@jpmorgan.com]
**Subject**: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL
**Attachments**: Compliance Registration Summary Results.pdf

See attached Summary Results.

RE: JPMC Executive Director, Private Banker, Joshua Biering (I662283)/CRD#6883842
Allegations: Theft from Firm/Expense Reimbursement
Disposition: Allegations NOT supported.

Case opened: 10/23/2023
Case RTC: 11/29/2023

**Nadia Muraira** | Investigator VP | Global Security | JP Morgan Chase & Co. | 712 Main Street, Houston, TX 77002 | T: 713-216-7247 | nadia.muraira@jpmchase.com

**Learn more at** go/besecure
Be secure

**Bush, Carla A (Compliance, USA)**

App. 0125

| | |
|---|---|
| **From:** | Jacobs, Jonathan (HR, USA) |
| **Sent:** | Tuesday, December 05, 2023 1:31 PM |
| **To:** | Bush, Carla A (Compliance, USA); Tidwell-Neal, Rachel L (Legal, USA); Thompson, Greg (Compliance, USA) |
| **Subject:** | RE: Term - U5 |

Hi Carla,

The RFT is based solely on my ER investigation (ICM case EC_NA_1026230312). The GS case (ICM EC_NA_1020239740) did not have a supported allegation, and so was not part of the termination. Quoting that case's preliminary conclusion, "GS determined there is no evidence to support the allegations of Theft from Firm/Expense Reimbursement."

Please let me know if I can provide any additional information!

Best,

Jonathan

Jonathan A. Jacobs | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

---

**From:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Sent:** Tuesday, December 05, 2023 1:28 PM
**To:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** RE: Term - U5

Thank you Jonathan! After reviewing the RFT; the GS case# EC_NA_1020239740 is not mentioned in the RFT however the disposition is listed that as a termination for misconduct. Was the GS case part of the termination?

---

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Tuesday, December 05, 2023 12:52 PM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** RE: Term - U5

Absolutely; please see attached.

Jonathan A. Jacobs | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

---

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Tuesday, December 05, 2023 12:50 PM
**To:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>

Exhibit
**CX34**

**Cc:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Subject:** [redacted]



[redacted]

---

**From:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Sent:** Tuesday, December 05, 2023 11:49 AM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** [redacted]

[redacted]

---

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Tuesday, December 05, 2023 12:46 PM
**To:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** [redacted]

[redacted]

---

**From:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Sent:** Friday, December 01, 2023 1:53 PM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** [redacted]

[redacted]

[redacted]

**Carla Bush** | Associate – Employee Conduct Sr Officer | **J.P. Morgan Securities LLC – Compliance Registration** |1111 Polaris Parkway, Suite 2J, Columbus, OH 43240 | 614 213-8677 | Compliance Registration Website | go/vic

---

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Friday, December 01, 2023 2:32 PM
**To:** Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>; Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Subject:** [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# ER Opening/Closing Memoranda and Findings

**App. 0129-0131**

Jacobs closing memorandum and termination recommendation.

Message



**From:** Cohen, Jena B [jena.b.cohen@jpmorgan.com]
**Sent:** 12/1/2023 12:04:55 AM
**To:** Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com]
**Subject:** RE: Rapid Response Closing Memo--J. Biering I662283

Thank you

---

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Thursday, Nov 30, 2023 at 1:23 PM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** FW: Rapid Response Closing Memo--J. Biering I662283

---

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Thursday, November 30, 2023 12:21 PM
**To:** Broda, Reid R (Legal, USA) <reid.r.broda@jpmchase.com>; Press, Patrick (HR, USA) <patrick.press@chase.com>; Koch, Scott R (Legal, USA) <scott.r.koch@jpmchase.com>; Williams, Tara S (HR, USA) <tara.s.williams@jpmchase.com>; Padilla, Linda (HR, USA) <linda.padilla@jpmchase.com>; Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Subject:** Rapid Response Closing Memo--J. Biering I662283

Confidential

J. [redacted]

[redacted]

Investigation:

- As detailed below, ERP and Christopher Magee from Global Security/Threat Management interviewed [redacted] ("ERC"), SID: [redacted] a Program Analyst in Fort Worth, Texas. By all accounts, 99% of ERC's work was supporting Subject's book of business. The ERP/GS interview of ERC occurred on October 27, 2023. [redacted]
- ERC was offered EAP counseling as well as the option of taking a paid administrative leave, which she did for one week.
- Subject was placed on paid administrative leave on October 27, 2023, following the ERP/GS interview of ERC.
- Subject resigned from the firm on October 28, 2023. His "garden leave" notice period was scheduled to run until December 26, 2023.
- ERP and GS interviewed Subject on November 7, 2023. [redacted] (Subject denied the physical allegations that ERC credibly detailed.)

- As noted below, Subject was also the subject in a separate GS investigation. That investigation has concluded with no supported allegations.

[redacted] This is due especially to Subject being in a quasi-supervisory role over ERC. The Recommended Outcome is Termination. ER has communicated these findings to HR Legal, who has reviewed the Recommendation for Termination ("RFT"). The RFT has also been approved by Subject's manager and next-level manager, and the HR Supervision check has been duly run. Subject's termination will be communicated to him on December 1, 2023.

Please let me know if you have any questions, or would like any further information.

Thank you,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

**From:** Jacobs, Jonathan (HR, USA)
**Sent:** Friday, October 27, 2023 6:05 PM
**To:** Broda, Reid R (Legal, USA) <reid.r.broda@jpmchase.com>; Press, Patrick (HR, USA) <patrick.press@chase.com>; Koch, Scott R (Legal, USA) <scott.r.koch@jpmchase.com>; Williams, Tara S (HR, USA) <tara.s.williams@jpmchase.com>; Padilla, Linda (HR, USA) <linda.padilla@jpmchase.com>; Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Cc:** Magee, Christopher J <christopher.j.magee@jpmorgan.com>
**Subject:** Rapid Response Opening Memo--J. [redacted]

[redacted]

[redacted]

**Alleged Actions/Comments**
Today, Global Security/Threat Management Partner Christopher Magee and I spoke with [redacted]

[redacted] During that time, she estimated that 99% of her work has been in supporting Subject's book of business.

- [redacted] said that she and Subject traveled to a golf outing on September 10 and 11th, and stayed in a home along with two clients. [redacted]

[redacted]

- [redacted] noted that she did not want to make Subject upset, as he was going through a divorce and had been having a difficult time lately.

- [redacted] said that, on Monday, September 11th, multiple times Subject had asked her if she was upset with him. [redacted]

Inappropriate Conduct

- ERC said that, since the golf outing, Subject has texted her – sometimes using the encrypted application Signal – daily. She has recently blocked his text messages.
- ERC said that Subject texts her every day, on the weekends, at night, and in the mornings.
- [redacted]

**Rapid Response Review**

- As noted, ERC spoke with ERP and Chris Magee this afternoon. Magee provided ERC with Global Security resources. ER advised her of the opportunity to take a paid administrative leave. ERC said that she would like to take a paid administrative effective 10/30.
- Subject's manager and the HRBA have been engaged, and are in alignment that Subject should be placed on a paid administrative leave effective end of day today. Subject was notified of this leave within the last 20 minutes. He has been provided standard talking points, including the phone number for EAP.
- ER and Global Security are continuing to review this matter. Notably, Subject is also the subject in a separate Global Security investigation, unrelated to the instant allegation.
- Besides that other investigation, Subject has no notable conduct or performance history.
- Subject has a hire date of May 23, 2016 and has worked as a SC Banker since February 16, 2023. He received performance review ratings of O/S/S/ in 2022, and S/S/O in 2021.

**Next Steps**

- As noted, Subject will be placed on a paid administrative leave effective end of day.
- ERC will begin her paid administrative leave on October 30.
- ER and Global Security will interview Subject and any other relevant parties.
- ER to determine if review of any documents is necessary to the outcome in the investigation.

Please let me know if you have any questions or would like further information.

Thank you,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

# ER Intake and Escalation Records

**App. 0133-0142**

HRC0202694 October 26 manager-raised ticket; timezone reconciliation; October 27 escalation.

App. 0133

| | |
|---|---|
| Report Title | Employee Relations Case Details |
| Run Date and Time | 2023-10-26 23:43:31 Philippines Standard Time |
| Run by | Kita Dytiapco- Purcia |
| Table name | sn_hr_er_case |

## Employee Relations Case

| | | | |
|---|---|---|---|
| Number: | HRC0202694 | State: | Ready |
| Parent: | | Resolution : | |
| Transferred from: | | Approval: | Not Yet Requested |
| External opened for: | false | Priority: | 3 - Moderate |
| Opened for: | Stephanie Stainback | Source: | Self Service |
| Opened for contact: | | Opened: | 2023-10-26 01:34:46 |
| Subject person: | | Opened by: | Stephanie Stainback |
| Subject person contact: | | Skip auto assign: | false |
| Stage: | | Assignment group: | HR_GLB_ER_AdminIntake |
| Display order: | | Assigned to: | Kita Dytiapco- Purcia |
| Preferred contact method: | Not Specified | Collaborators: | |
| HR service: | Employee Behavior Assistance | Template: | Employee Behavior Assistance |
| HR service subtype: | Behavioral | | |
| HR service subtype topic: | I want to address an individual's behavior | | |
| HR profile: | Stephanie Stainback | | |
| PDF Template: | | | |
| Incident date: | | | |
| Skills: | | | |
| Case update: | false | | |
| Related cases: | | | |

Short description:

Employee Behavior Assistance case for Stephanie Stainback

Description:

The following fields have been provided:How can we help you?: I want to address an individual's behaviorUser: Joshua BieringInvolved Party Type: respondentWhat have you done to address the behavior with the person(s) in question?: I am escalating a concern raised by a manager related to potential inappropriate behavior by an Executive Director (I662283) and his female analyst. [redacted]

Original Description:

The following fields have been provided:How can we help you?: I want to address an individual's behaviorUser: Joshua BieringInvolved Party Type: respondentWhat have you done to address the behavior with the person(s) in question?: I am escalating a concern raised by a manager related to potential inappropriate behavior by an Executive Director (I662283) and his female analyst. [redacted]

## Comments/Worknotes

Additional comments:

2023-10-26 01:34:46 - Stephanie Stainback (Additional comments)
User Stephanie Stainback has initiated a Employee Behavior Assistance request

Exhibit
CX122

Work notes:

| | |
|---|---|
| Related List Title | Task SLA List |
| Table name | task_sla |
| Query Condition | Task = HRC0202694 |
| Sort Order | None |

1 Task SLAs

| Task | SLA definition | Stage | Type | Target | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|---|---|---|---|---|---|---|---|---|---|
| HRC0202694 | ER - 30 day | In progress | | | 10 Days 23 Hours 22 Minutes | 6 Hours 37 Minutes | 2.46 | 2023-10-26 01:34:46 | |

| | |
|---|---|
| Related List Title | Involved Party List |
| Table name | sn_hr_er_involved_party |
| Query Condition | HR case = HRC0202694 |
| Sort Order | Display name in descending order |

2 Involved Parties

| HR case | Display name ▼ | Type |
|---|---|---|
| HRC0202694 | Stephanie Stainback | Submitting party |
| HRC0202694 | Joshua Biering | Subject of incident |

| | |
|---|---|
| Related List Title | Evidence List |
| Table name | sn_em_evidence |
| Query Condition | Parent = 6a708d62474ab190a6ec9915126d437f |
| Sort Order | Number in ascending order |

None

| | |
|---|---|
| Related List Title | Employee Relations Case List |
| Table name | sn_hr_er_case |
| Query Condition | Sys ID in f9bdcb4997e9b590f09577a71153af97, e5dc33c69321f9d01889b84c5cba10c4, 3b06814e93fdb994a198fc0d6cba101c, |
| Sort Order | in ascending order |

4 Employee Relations Cases

App. 0135

| Number ▲ | State | Opened for | HR service | Short description | |
|---|---|---|---|---|---|
| HRC0015275 | Closed Complete | Employee Relations Anonymous NAMR | Employee Behavior Assistance | Employee Behavior Assistance request for Employee Relations Anonymous NAMR | |
| HRC0098308 | Work in Progress | Ben Stewart Jr. | Employee Behavior Assistance | Career & Performance case for Ben Stewart Jr. | |
| HRC0116576 | Closed Complete | Employee Relations Anonymous NAMR | Employee Behavior Assistance | Employee Behavior Assistance request for Employee Relations Anonymous NAMR | |
| HRC0162502 | Work in Progress | Patrick Minnick | Performance Management Assistance | Performance Management Assistance case for Patrick Minnick | Madison Kovach |

| | |
|---|---|
| Related List Title | Associated Allegation List |
| Table name | sn_hr_er_m2m_allegation_party |
| Query Condition | Subject of allegation HR case = HRC0202694 |
| Sort Order | None |

None

| | |
|---|---|
| Related List Title | Accommodation List |
| Table name | sn_hr_er_accommodation |
| Query Condition | Sys ID = NULL AND Employee User = (empty) |
| Sort Order | None |

None

App. 0136

| | |
|---|---|
| Report Title | Employee Relations Case Details |
| Run Date and Time | 2024-03-06 12:56:49 Argentine Time |
| Run by | Camila Alvarez |
| Table name | sn_hr_er_case |

## Employee Relations Case

| | | | |
|---|---|---|---|
| Number: | HRC0426680 | State: | Closed Complete |
| Parent: | | Resolution : | Duplicate |
| Transferred from: | HRC0445952 | Approval: | Not Yet Requested |
| External opened for: | false | Priority: | 3 - Moderate |
| Opened for: | Joshua Biering | Source: | Self Service |
| Opened for contact: | | Opened: | 2023-12-03 13:04:22 |
| Subject person: | Joshua Biering | Opened by: | Joshua Biering |
| Subject person contact: | | Skip auto assign: | true |
| Stage: | | Assignment group: | HR_AM_ER_Onshore |
| Display order: | | Assigned to: | Linda Padilla |
| Preferred contact method: | Not Specified | Collaborators: | |
| HR service: | Dispute or Appeal Assistance | Template: | Dispute or Appeal Assistance |
| HR service subtype: | Dispute or appeal | | |
| HR service subtype topic: | I want to dispute my position elimination/redundancy | | |
| HR profile: | Joshua Biering | | |
| PDF Template: | | | |
| Incident date: | | | |
| Skills: | | | |
| Exclude: | false | | |
| Related cases: | | | |

Short description:

Career & Performance case for Joshua Biering

Description:

The following fields have been provided:Are you submitting this for or about another employee?: NoWhat type of support do you need?: CareerHow can we help you?: I have a problemPlease provide additional details or questions.: I was informed I was terminated on 12/1/2023 for violation of the JPMorgan Code of Conduct. I submitted my Voluntary Resignation due to my dissatisfaction with workplace conditions on 10/28/2023. At the time of my voluntary resignation that was accepted by JPMorgan's HR, I was informed that my notice period was 60 days, and my effective termination date would be 12/26/2023. Given the recent news, I need help with the following: 1. I feel that the workplace investigation that was completed was partial, biased, incomplete, and did not interview several material witnesses. I would like to formally request documentation, evidence, and the overall claims for the findings that were made without an opportunity for me to review or submit a response. I feel these are all factors that developed and support my claim that a wrongful termination and constructive termination took place. 2. I requested, on multiple occasions, the privacy policy in which I'm concerned because JPMorgan, per terms of a privacy policy I do not have access to, can try and claim they have access to my personal mobile devices. 3. I requested, on multiple occasions, the terms and conditions of my Garden Leave Policy/Notice Period that outlines what is or is not permissible during my Garden Leave. I still, am actively requesting this documentation and have not received anything. 4. I am now requesting a copy of my Termination agreement/provisions as to review what JPMorgan alleges are their rights/ my rights, particularly towards contacting former colleagues/employees and/or alleged clients. 5. I would like to review the Self Assessment/official performance review I submitted to my manager for performance/metric year 2023. I feel that I am still entitled to incentive compensation for my performance in 2023. 6. I would like to formally request that my Peer Reviews/Feedback since my employment with JPMorgan are shared with me. If they cannot be shared via this medium without formal legal action- I request, that JPMorgan makes a meaningful effort to preserve that documentation and feedback.

Original Description:

Exhibit
CX189

The following fields have been provided:Are you submitting this for or about another employee?: NoWhat type of support do you need [App. 0137] elp you?: I have a problemPlease provide additional details or questions.: I was informed I was terminated on 12/1/2023 for violation of the JPMorgan Code of Conduct. I submitted my Voluntary Resignation due to my dissatisfaction with workplace conditions on 10/28/2023. At the time of my voluntary resignation that was accepted by JPMorgan's HR, I was informed that my notice period was 60 days, and my effective termination date would be 12/26/2023. Given the recent news, I need help with the following: 1. I feel that the workplace investigation that was completed was partial, biased, incomplete, and did not interview several material witnesses. I would like to formally request documentation, evidence, and the overall claims for the findings that were made without an opportunity for me to review or submit a response. I feel these are all factors that developed and support my claim that a wrongful termination and constructive termination took place. 2. I requested, on multiple occasions, the privacy policy in which I'm concerned because JPMorgan, per terms of a privacy policy I do not have access to, can try and claim they have access to my personal mobile devices. 3. I requested, on multiple occasions, the terms and conditions of my Garden Leave Policy/Notice Period that outlines what is or is not permissible during my Garden Leave. I still, am actively requesting this documentation and have not received anything. 4. I am now requesting a copy of my Termination agreement/provisions as to review what JPMorgan alleges are their rights/ my rights, particularly towards contacting former colleagues/employees and/or alleged clients. 5. I would like to review the Self Assessment/official performance review I submitted to my manager for performance/metric year 2023. I feel that I am still entitled to incentive compensation for my performance in 2023. 6. I would like to formally request that my Peer Reviews/Feedback since my employment with JPMorgan are shared with me. If they cannot be shared via this medium without formal legal action- I request, that JPMorgan makes a meaningful effort to preserve that documentation and feedback.

## Comments/Worknotes

Additional comments:

2023-12-06 11:14:22 - Neil Franccini Cortezano (Additional comments)
2023-12-04 00:04:22 - Joshua Biering (Additional comments)
User Joshua Biering has initiated a Career & Performance request

Work notes:

2024-01-19 13:20:16 - Linda Padilla (Work notes)
This inquiry is being closed as a duplicate matter as the former employee also raised allegations of retaliation against his manager for raising concerns as well allegations of inappropriate conduct - behavioral misconduct. Dispute / Appeal is being reviewed as part of case # EC_NA_1207234613 - ER Investigator Julie Sanchez

2023-12-06 11:16:11 - Neil Franccini Cortezano (Work notes)
Directing case as a Dispute/Appeal of Termination for Conduct in related case #EC_NA_1026230312

As this inquiry is from a now "Former Employee", no ServiceNow email acknowledgment was sent to the Submitter.

2023-12-06 11:14:22 - Neil Franccini Cortezano (Work notes)
2023-12-05 04:41:57 - Mel Teope (Work notes)
received call from ee following up on this case. forwarding to ER. ee is requesting to be contacted at 9123085781 asap.
kindly assist

| | |
|---|---|
| Related List Title | Task SLA List |
| Table name | task_sla |
| Query Condition | Task = HRC0426680 |
| Sort Order | None |

App. 0138

SLAs

| Task | SLA definition | Stage | Type | Target | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|---|---|---|---|---|---|---|---|---|---|
| HRC0426680 | ER - 30 day | Completed | | | 0 Seconds | 12 Days 1 Hour 25 Minutes | 107.19 | 2023-12-06 11:14:21 | 2024-01-19 13:25:30 |

| | |
|---|---|
| Related List Title | Involved Party List |
| Table name | sn_hr_er_involved_party |
| Query Condition | HR case = HRC0426680 |
| Sort Order | Name in ascending order |

1 Involved Parties

| HR case | Display name | Type |
|---|---|---|
| HRC0426680 | Joshua Biering | Reporting party |

| | |
|---|---|
| Related List Title | Evidence List |
| Table name | sn_em_evidence |
| Query Condition | Parent = 0ac6e0c44703f99806b0c43d026d43e0 |
| Sort Order | Number in ascending order |

None

| | |
|---|---|
| Related List Title | Employee Relations Case List |
| Table name | sn_hr_er_case |
| Query Condition | Sys ID in 3b06814e93fdb994a198fc0d6cba101c, 6a708d62474ab190a6ec9915126d437f, 141744f4934b3dd8a2f833db5cba107b |
| Sort Order | in ascending order |

3 Employee Relations Cases

| Number ▲ | Short description | HR service subtype | State | User ID | Subject person | Opened for | Assignment group | Assigned to | Created |
|---|---|---|---|---|---|---|---|---|---|
| HRC0098308 | Career & Performance case for Ben Stewart Jr. | Behavioral | Closed Complete | | | Ben Stewart Jr. | HR_AM_ER_Onshore | Beth Wilson | 2023-10-09 16:08:35 |
| HRC0202694 | Employee Behavior Assistance case for Stephanie Stainback | Behavioral | Closed Complete | | | Stephanie Stainback | HR_GLB_ER_AdminIntake | Kita Dytiapco-Purcia | 2023-10-25 14:34:46 |

| Number ▲ | Short description | HR service subtype | State | User ID | Subject person | Opened for | Assignment group | Ass | |
|---|---|---|---|---|---|---|---|---|---|
| HRC0426682 | Leaving the Company Support case for Joshua Biering | General question | Closed Complete | I662283.TERM | Joshua Biering | Joshua Biering | HR_GLB_ER_AdminIntake | Verne Batucal | 2023-12-03 13:07:42 |

Related List Title Associated Allegation List

Table name sn_hr_er_m2m_allegation_party

Query Condition Subject of allegation HR case = HRC0426680

Sort Order None

None

Related List Title Accommodation List

Table name sn_hr_er_accommodation

Query Condition Employee User = Joshua Biering

Sort Order None

None

Message

App. 0140

| | |
|---|---|
| **From:** | Velasquez, Michelle D (HR, USA) [michelle.d.velasquez@jpmchase.com] |
| **Sent:** | 10/27/2023 3:34:15 PM |
| **To:** | Jacobs, Jonathan (HR, USA) [jonathan.jacobs@jpmchase.com] |
| **CC:** | Stainback, Stephanie (WM, USA) [Stephanie.Stainback@jpmorgan.com]; Padilla, Linda (HR, USA) [linda.padilla@jpmchase.com] |
| **Subject:** | URGENT FW: Rapid Response |

Jonathan –

You are about to be assigned EC_NA_1026230312. We learned today that there is a very serious allegation of sexual assault by the male subject towards a female employee (SIDs below). I would recommend placing the subject on paid admin leave today if possible.

Stephanie (copied) has some of the details.

Michelle

---

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Sent:** Friday, October 27, 2023 10:30 AM
**To:** Velasquez, Michelle D (HR, USA) <michelle.d.velasquez@jpmchase.com>
**Subject:** Rapid Response

Male employee is I662283. Femaie analyst is [redacted]. Both are in Fort Worth.

Stephanie

---

**Stephanie Stainback** | Executive Director | HR Business Partner | **J.P. Morgan Private Bank** |
712 Main St, Floor 15N | Houston, TX 77002 | T: 713 216 8773 | Stephanie.Stainback@jpmorgan.com |
privatebank.jpmorgan.com

JPMorgan Chase Bank, N.A.

Exhibit
CX123

Message

App. 0141

**From:** Jacobs, Jonathan (HR, USA) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=0DA06F12967A49D88BF7186AAF76FD60-764AC4D3-47]
**Sent:** 11/8/2023 5:45:09 PM
**To:** Muraira, Nadia [nadia.muraira@jpmchase.com]
**Subject:** RE: Josh Biering

Hi Nadia,

Yes, I spoke with him yesterday from 2:30 p.m. – 3:20 p.m.

Best,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

---

**From:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Sent:** Wednesday, November 08, 2023 12:45 PM
**To:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Subject:** RE: Josh Biering

Hello Jonathan,

Were you able to get him to speak with you about the matter?

---

[redacted]

[redacted]

[redacted] I just wanted to check in to see the status of your investigation, so that we can disposition simultaneously.

Best,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

Exhibit
CX156

**From:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Sent:** Tuesday, October 31, 2023 1:57 PM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>

**Cc:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: Josh Biering

Hello Jacob,

Redacted

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Tuesday, October 31, 2023 12:34 PM
**To:** Muraira, Nadia <nadia.muraira@jpmchase.com>; Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Cc:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Josh Biering

Hi,

Redacted

Thanks,
Rachel

Privileged/confidential

**Rachel Tidwell-Neal** | Assistant General Counsel | **JPMorgan Chase** | 10 S. Dearborn, 6th Floor, Chicago, IL 60603 | P: (312) 732-6517 | rachel.l.tidwell-neal@jpmchase.com

# Stewart Support/Leave Texts; Disability, EAP, Leave, and FMLA Records

**App. 0144-0280**

September-October support and leave communications and benefits materials.

3:13

BS

Ben

Thu, Sep 7 at 6:05 PM

....

I talked to Meursing. And then Kyle

Can we please connect tomorrow? I don't like the emotional state I'm in. We need to figure something out. Despite me being in my own head. I can't help but think conversations are being had behind the scenes and I don't like it. I don't know if this is the right place for me.

Of course. I tried to call you.

Fri, Sep 8 at 11:44 AM

Lunch?

Exhibit
CX25

Lyndon and I have client meeting at shady. Will be back after

App. 0144

6:37

Stephanie

Oct 6, 2023 at 10:34 AM

Hi Stephanie- do you have a few minutes for a call today? This is Josh Biering from Fort Worth. Sorry to bother you again

Hi Josh. I have a few minutes to speak now.

Oct 27, 2023 at 4:51 PM

Can you please call me. I was just told I've been placed on a voluntary administrative leave. Can you please guide me to the right contact.

Oct 28, 2023 at 9:51 AM

Please disregard. I submitted my resignation this morning. Thank you for your support.

iMessage
8/7/2023 8:39:20 PM

App. 0146

J t and I get into it yet again

Laughed at "J t and I get into it yet again "

No way

What happened?!

Need the details

8/8/2023 6:49:27 PM

Dude this is getting exhausting. I don't know how much more I can take

Home life or JT?

Both. Lol. I almost resigned today. Jt and I had another blow out disagreement in his office

Wtf dude?!

Stop

What did he do???

I don't want to kiss the ring. Don't really care about the people who are speaking up just to hear themselves talk…

Yeh man. I dunno

It's getting to the point where I think JT will try to make a point

To put you in your place?

Yeah

If I didn't have this NMOHM tour tomottow I'd be taking a week or so off

Taking a week off is not a solution

Laughed at "If I didn't have this NMOHM tour tomottow I'd be t…"

I think you should go in and apologize to JT. You are a great banker, but he is the boss

Man I dunno. We will see

8/9/2023 12:33:47 PM

I sucked it up and apologized

Way to go

Exhibit
CX24

# Integrated Case Manager

Exported Date: 03/06/2024, 17:28:28

Item Id: EC_NA_0104248622

**Workflow Status**
Closed Alert

**Date Open**
01/04/2024, 18:08:01

**Investigation Owner**
Gamilla, Lerry

**Assigned Date**
01/04/2024, 20:15:29

**Created By**
ICM Web Referral

**Subject**
Stewart Jr.,Ben(N682989)

**Tags**
[MANAGING DIRECTOR]

## Item Details

**Workgroup**
ER Intake & Triage

**Type**
Inappropriate Conduct

**Subtype**
Behavioral Misconduct

**LOB**
ASSET & WEALTH MANAGEMENT

**Sub-LOB**
GLOBAL PRIVATE BANK

**Legal Entity**
0802 JPMORGAN CHASE BANK, N. A.

**Country**
US

**Region**
NA

## Incident Information

**Incident Date**
2023-12-21

**Incident Location**
Other

**Aware of Incident Date**
2024-01-04

**Incident Description**
Following WM Supervisory Communications review, submitting alert for ER review for workplace issue. Submitter is not a witness or involved party and this submission is being made in course of role of the submitter, thus all known information has been shared and Submitter does not have additional information. It appears this has been raised already to HR.

**Is a Customer Involved?**
N

## Referring & Submitting Party Information

**Referring Party**
Joshua Biering I662283

**Anonymous Request**
N

**Referral ID & Source**
[WEBREF-NA-ICM-456262] ICM Web Referral

**Referral Channel**
WM Supervisory

Exhibit
CX188

**Submitting Party**
E579849

**Submitting Party Phone Number**

**Alternate**

Notes

**Recent Notes**

01/08/2024, 13:14:07 Updated by Cranford-Searcy, Lakeisha R
original -01/08/2024, 13:14:07
MANAGER REVIEW: Alert/Alert Assessment not selected for Random 25% QC sample for 1/8/2024. No QC form will be completed in Webstats.

01/05/2024, 15:54:57 Updated by Gamilla, Lerry
original -01/05/2024, 15:54:57
Justification Reason: No Further Action, No Further Action Rationale Reason: Other, No Further Action Rationale Comments: Ring fenced to ICM case EC_NA_1207234613

01/05/2024, 15:53:24 Updated by Gamilla, Lerry
original -01/05/2024, 15:52:41
MANAGER REVIEW Conduct Intake Analyst submitted the Intake Assessment Summary to the Intake manager/Team Lead requesting review and approval.

01/05/2024, 15:53:17 Updated by Gamilla, Lerry
original -01/05/2024, 15:52:20
INTAKE STATEMENT: Additional ICM case EC_NA_0104248622 received as a result of a flagged email. Associating ICM case EC_NA_0104248622 with ICM case EC_NA_1207234613 as it same ERC and similar concerns. Reached out to Nancy Sebastian since ERP is on leave. Nancy instructed to fold this new alert into Julie's existing case and add the additional subjects and attachment. Please note ICM case EC_NA_0209238835 will be closed as an associated item.

Tags

[MANAGING DIRECTOR]

Related Subject Alerts & Cases

**Keith Wiley (R628994) (E)**

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

**Peter Chilian (U359832) (E)**

EC_NA_1026230376 - 2023-10-26 - DispositionInProcess (Decarlo, Vito A / N718221)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_0802231020 - 2023-08-02 - Close (Alimario, Andre / N083227)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1129222807 - 2022-11-29 - CaseClosed (Yu, Wai / W606906)

EC_NA_1026220208 - 2022-10-26 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0718221254 - 2022-07-18 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Elaine Agather (U711076) (E)**

EC_NA_0221243663 - 2024-02-21 - AlertAssessment (Dejaro, Eydie A / O589797)

EC_NA_0216243199 - 2024-02-16 - CaseClosed (Richards, Corey A / V445954)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1205234222 - 2023-12-05 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0928236929 - 2023-09-28 - CaseClosed (Yu, Wai / W606906)

EC_NA_0926236480 - 2023-09-26 - Close (Andrade, Helen Rose F / I573223)

EC_NA_0901234220 - 2023-09-01 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0823233128 - 2023-08-23 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0815232338 - 2023-08-15 - Close (Gamilla, Lerry / W278285)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)



EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0720239645 - 2023-07-20 - Close (Harkless, Aquita M / W243183)

EC_NA_0506231804 - 2023-05-06 - Close (Harkless, Aquita M / W243183)

EC_NA_0502239870 - 2023-05-02 - Close (Andrade, Helen Rose F / I573223)

EC_NA_0501239796 - 2023-05-01 - Close (Doogan, Jenna R / F658669)

EC_NA_0427239126 - 2023-04-27 - CaseClosed (Yu, Wai / W606906)

EC_NA_0329233202 - 2023-03-29 - Close (Alimario, Andre / N083227)

EC_NA_0324232858 - 2023-03-24 - Close (Bono, Jorj S / O403268)

EC_NA_0322232664 - 2023-03-22 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0322232658 - 2023-03-22 - Close (Bono, Jorj S / O403268)

EC_NA_0322232651 - 2023-03-22 - Close (Tumapon, Lady Rose B / O322063)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0320232352 - 2023-03-20 - Close (Bono, Jorj S / O403268)

EC_NA_0224230182 - 2023-02-24 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0224230179 - 2023-02-24 - Close (Harkless, Aquita M / W243183)

EC_NA_0214239284 - 2023-02-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1129222807 - 2022-11-29 - CaseClosed (Yu, Wai / W606906)

EC_NA_1103221065 - 2022-11-03 - Close (Harkless, Aquita M / W243183)

EC_NA_1027220458 - 2022-10-27 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0922227025 - 2022-09-22 - Close (Cordero, Cody C / O077029)

EC_NA_0909225982 - 2022-09-09 - Close (Alimario, Andre / N083227)

EC_NA_0428224615 - 2022-04-28 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_0228228635 - 2022-02-28 - Close (Navarro, Brittany M / v105043)

EC_NA_0125226096 - 2022-01-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Ben Stewart Jr. (N682989) (E)**

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0630229920 - 2022-06-30 - CaseClosed (Cadyma-Renard, Zadina / W599216)

**John Aughinbaugh (V034411) (E)**

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1117222114 - 2022-11-17 - CaseClosed (Yu, Wai / W606906)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

**Joshua Biering (I662283) (E)**

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

## Associated Work Item

| **Item ID** | **Relationship** | **Type** | **Subtype** | **Status** | **Owner** |
|---|---|---|---|---|---|
| EC_NA_0104248622 | Parent | Inappropriate Conduct | Behavioral Misconduct | Closed Alert | Gamilla, Lerry/W278285 |
| EC_NA_0104248622 | Child | Inappropriate Conduct | Behavioral Misconduct | Closed Alert | Gamilla, Lerry/W278285 |

## Facilities

No data in Facilities

## Attachments

| **File Name** | **File Description** | **File Size** | **Date Added** |
|---|---|---|---|
| Joshua Biering Flagged Email.pdf | Joshua Biering Flagged Email | 0.29 | 01/04/2024 |

## Related Parties

| **Name** | **Party Type** | **SID** | **Association** | **ECI** | **Related Party Id** |
|---|---|---|---|---|---|
| Keith Wiley | Employee | R628994 | Subject | | PRTY_REL_NA_0105248120 |
| Peter Chilian | Employee | U359832 | Subject | | PRTY_REL_NA_0105248122 |
| Elaine Agather | Employee | U711076 | Subject | | PRTY_REL_NA_0105248123 |
| Ben Stewart Jr. | Employee | N682989 | Subject (Primary) | | PRTY_REL_NA_0105248118 |
| John Aughinbaugh | Employee | V034411 | Subject | | PRTY_REL_NA_0105248119 |
| Joshua Biering | Employee | I662283 | Employee Raising Complaint | | PRTY_REL_NA_0105248117 |

## Financials

No data in financials

**From:** josh.biering@gmail.com
**To:** iacuone@roggedunngroup.com; Tidwell-Neal, Rachel L (Legal, USA); Cohen, Jena B (WM, USA)
**Cc:** Aughinbaugh, John T (WM, USA); Agather, Elaine (WM, USA); Chilian, Peter C (WM, USA); Hitchcock, Kyle E (WM, USA); Stewart, Ben (WM, USA)
**Subject:** Re: [EXTERNAL]Re: Biering/JPMS - Friday Docs
**Date:** Thursday, December 21, 2023 8:46:56 PM

---

+ all of the guilty parties.

Exhibit A will be the series of events in which my 1:1 with Pete Chilian (recorded) was rescheduled so he could game plan with JT/Ben/Elaine prior to my in person meeting.

I will not fall victim to this.

Regards,

JB

---

**From:** Josh Biering
**Sent:** Thursday, December 21, 2023 6:06:04 PM
**To:** Cohen, Jena B ; Josh Iacuone ; Tidwell-Neal, Rachel L
**Subject:** Re: [EXTERNAL]Re: Biering/JPMS - Friday Docs

It has been relayed.

You all have profited off a person who has nothing else to lose. And you all knew that. YOU KNEW. I trusted you.

I gave my literal heart, soul, blood, sweat and TEARS to this company as documented by my 14% revenue growth vs a down market of 6%. I asked for resources. NOTHING.

I asked for HELP! NOTHING!!!

I didn't take paternity leave. I was on a phone call with Dave Frame the morning of my child's birth to PLEAD with him to onboard my large prospect. The same prospect JT, Ben and Kyle did not support. The same prospect YOU ALL KNEW had a big liquidity event in 2024. The same prospect that the JPMorgan bus of "replacements" went to visit at their office 24 HOURS before the alleged "close out of the investigation and findings" to then terminate me? After you checked the box that the metaphorical "back door" is protected?!

You give a former market manager 1 year severance and he signs an NDA after 3 sexual harrasment claims. But I- do the right thing- escalate concerns to management- multiple times- try to leave- try to take FMLA- try to request REASONABLE accommodations.

I didn't care about the money. I didn't care about sticking around until January for my EARNED incentive compensation because it was that TOXIC. This will all come out in my well documented library.

You don't think [redacted] told me the morning of the 10/24 that management COERCED her into planning m all documented. It's all going to come out. That KEITH WILEY tried to coerce females into black balling me? The same KEITH WILEY that uses terminology

like "she can suck a bowling ball out of a garden hose?!" When he shares that with JT over beers during their weekly Buff Bros happy hours that are fraudently expensed?

You do not get to claim you all are this place of diversity and inclusion that promotes "being your genuine true self." How self fulfilling.

I came to you all- in confidence- as a "trusted" source and leadership conveying my problems both personally and professionally since January 2023. You all ignored them. You brushed them under the rug.

I requested FMLA leave on TWO OCCASIONS. I AM A DOCUMENTED 100% SERVICE CONNECTED DISABLED veteran due to PTSD/stress/anxiety and you all ORCHESTRATED my demise. ON A MONTH YOU ALL CLAIMED TO BE MENTAL HEALTH AWARENESS MONTH.

This is cruel. I hoped I would not have to disclose the materials I had because I was incorrectly hopeful that JPMorgan was an organization that stood for the right values and integrity.

How I was very wrong. Clients will see this. Stakeholders will see this. You facilitated this.

Regards,

JB

---

**From:** Cohen, Jena B
**Sent:** Thursday, December 21, 2023 5:48:26 PM
**To:** Josh Biering ; Josh Iacuone ; Tidwell-Neal, Rachel L
**Subject:** RE: [EXTERNAL]Re: Biering/JPMS - Friday Docs

Josh, please connect with your counsel - he has been in dialogue with Rachel. I'm not sure if that's not being cascaded, she has relayed amended language.

---

**From:** Josh Biering <josh.biering@gmail.com>
**Date:** Thursday, Dec 21, 2023 at 6:39 PM
**To:** Josh Iacuone <iacuone@roggedunngroup.com>, Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Cc:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** [EXTERNAL]Re: Biering/JPMS - Friday Docs

This is 100% a planned and strategic move. This is MALICIOUS and CRUEL.

Cannot wait to have my recorded phone calls with magegemt. and documented meetings/ text messages presented in a forum that is not incorrigible.

Regards,

JB

---

**From:** Josh Biering
**Sent:** Thursday, December 21, 2023 3:31:52 AM
**To:** Josh Iacuone ; Tidwell-Neal, Rachel L
**Cc:** Cohen, Jena B
**Subject:** Re: Biering/JPMS - Friday Docs

Anxiously standing by.

Regards,

JB

---

**From:** Josh Biering
**Sent:** Tuesday, December 19, 2023 4:57:21 PM
**To:** Josh Iacuone ; Tidwell-Neal, Rachel L
**Cc:** Cohen, Jena B
**Subject:** Re: Biering/JPMS - Friday Docs

I just checked my FinPro and got off the phone with FINRA- they have not received any disclosures or reports yet.

They also were kind enough to remind me that FINRA's operating schedule is closed Monday, December 25th and closes early on Friday, December 29th at 1pm CST.

The contact I spoke with informed me that any filings must be filed before 5pm CST on Tuesday, 12/26 for licenses, disclosures, forms, etc and they reopen this department on Tuesday, Jan 2nd.

I think JPM is aware of this window and also the time it takes to interview and diligence prospective employers... as well as transfer licenses assuming it is not marked in a defamatory or false manner... This leaves me without an income through December and the Holidays- which I find to be a little unethical and cruel... and arguably, contradicts the JPM Code of Conduct and How "we" do Business.

---

**From:** Josh Iacuone
**Sent:** Tuesday, December 19, 2023 12:25 PM
**To:** Tidwell-Neal, Rachel L
**Cc:** 'Josh Biering' ; Cohen, Jena B
**Subject:** RE: Biering/JPMS - Friday Docs

Rachel:

Did I miss something? Did you intend to respond to my 2 letters re: U5 and appropriate marking?

Joshua J. Iacuone
**Rogge Dunn Group P.C.**
500 N. Akard, Ste. 1900
Dallas, Texas 75201
DD: 214-239-2763
Cell: 214-274-8393

---

**From:** Josh Iacuone
**Sent:** Tuesday, December 19, 2023 8:26 AM
**To:** Tidwell-Neal, Rachel L
**Cc:** 'Josh Biering' ; Cohen, Jena B
**Subject:** Biering/JPMS - Friday Docs

Rachel:

Attached is all I received, which is the Notice Period Policy.

I didn’t get a response to my letters re: U5 correct marking.

Joshua J. Iacuone
**Rogge Dunn Group, P.C.**
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
Fax: 214-220-3833
Tel: 214-888-5000
DD: 214-239-2763
Cell: 214-274-8393

BOARD CERTIFIED
Texas Board of Legal Specialization
LABOR AND EMPLOYMENT LAW

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

# Integrated Case Manager

Exported Date: 11/01/2023, 13:44:25

Item Id: EC_NA_1026230312

**Workflow Status**
Investigation in Process

**Date Open**
10/26/2023, 15:46:31

**Investigation Owner**
Jacobs, Jonathan

**Assigned Date**
10/27/2023, 15:29:13

**Created By**
I106272

**Disposition Owner**

**Subject**
Biering,Joshua(I662283)

**Tags**
[RAPID RESPONSE, HARASSMENT]

Item Details

**Workgroup**
ER Tier 4 Special Investigations

[redacted] **e**

**LOB**
ASSET & WEALTH MANAGEMENT

**Sub-LOB**
GLOBAL PRIVATE BANK

**Legal Entity**
0802 JPMORGAN CHASE BANK, N. A.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] riginal Inquiry: What have you done to address the behavior with the person(s) in question?: I am escalating a concern raised by a manager related to potential inappropriate behavior by an Executive Director (I662283) and his female analyst. I am the HRBA and [redacted]

**Is a Customer Involved?**
N

Referring & Submitting Party Information

**Referring Party**
Stephanie Stainback U729056

**Anonymous Request**
N

**Referral ID & Source**
Manual Alert

**Referral Channel**
HR Business Partner

App. 0158

**Submitting Party**
I106272

**Submitting Party Phone Number**

**Alternate**
9999999999

Notes

---

**Recent Notes**

10/30/2023, 19:12:43 Updated by Jacobs, Jonathan
original -10/30/2023, 19:12:43
ERP was advised that Subject resigned on October 28, 2023.

10/30/2023, 19:11:48 Updated by Jacobs, Jonathan
original -10/30/2023, 19:11:48
ERP conferred with Rachel Tidwell-Neal, [redacted]

10/27/2023, 21:22:54 Updated by Jacobs, Jonathan
original -10/27/2023, 21:10:02
ERC requested to be placed on paid administrative leave, as per ERP's offer. Her manager William Brawley (SID: F654514) was made aware of her leave, and is in alignment with the recommendation.

10/27/2023, 21:09:41 Updated by Jacobs, Jonathan
original -10/27/2023, 21:09:41
Part 2: EE indicated that she did not want to embarrass him and worried about him being her banker or upsetting him so that he would make work miserable EE indicated that the next morning they went to play golf – he kept asking her if she was an [redacted] t [redacted] following the subject employee asked her to download a app called signal – we need to talk on signal – she downloaded the app and messaged

[redacted]

[redacted] he subject employee and work issues – do not have a concreate reason to feel physically threatened – more a what if scenario and knows where she works – afraid of seeing him EE indicated that the subject employee never expressed his anger in a physical way – recent example when talking with another banker he does not like the subject employee got really upset – “your dead to me and I cant trust you” – has seen him get frustrated with her – gets frustrated very easily EE indicated that there have been recent text messages – last one was sent this morning but she then subsequently blocked his number EE indicated that the subject employee has been a very paranoid person and has a hard time trusting people in general – EE worked very hard this year to be a trustworthy person to him (making him feel like she is not trying to get off his team) these convos are not about him – tried to talk to him as much as possible instead of others EE indicated that on September 10-11th she and the subject employee attended a golf tournament at a clients house; client is one [redacted]

[redacted]

10/27/2023, 17:12:04 Updated by Jacobs, Jonathan

original -10/27/2023, 17:12:04

ERP connected with HRBA Stephanie Stainback and recommended placing Subject on a paid administrative leave; Stainback agreed. Stainback also advised that Subject is currently under simultaneous investigation by Global Security for potential misuse of company card. Stainback also agreed with ER recommendation that ERC be offered a paid administrative leave.

[redacted] utive Director (I662283) and his female analyst. I am the HRBA and can provide details to the ER case manager once assigned."

Tags

[RAPID RESPONSE, HARASSMENT]

Related Subject Alerts & Cases

**Christopher Magee (E811935) (E)**

EC_NA_1013238898 - 2023-10-13 - InvestigationInProcess (Burnett, Tricia / V821595)

EC_NA_0808231563 - 2023-08-08 - RecommendToConcludeNoDispoReqd (Brown, Jamesia / O782795)

EC_NA_0510232273 - 2023-05-10 - InvestigationInProcess (Halterman, Ryan / E920608)

EC_NA_0929237246 - 2023-09-29 - CaseClosed (Pina, Stacey / I785093)

EC_NA_0922236318 - 2023-09-22 - CaseClosed (Schulze, Steven / E929252)

EC_NA_0922236307 - 2023-09-22 - CaseClosed (Hersch, Michelle L / E784973)

EC_NA_0919235833 - 2023-09-19 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0918235701 - 2023-09-18 - CaseClosed (Fleming, Shannon / E929809)

EC_NA_0911234903 - 2023-09-11 - Close (Navarro, Brittany M / v105043)

EC_NA_0908234746 - 2023-09-08 - CaseClosed (Green, Denise / F695584)

EC_NA_0906234478 - 2023-09-06 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_0901234147 - 2023-09-01 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0808231594 - 2023-08-08 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0803231048 - 2023-08-03 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_0802230938 - 2023-08-02 - CaseClosed (Lewis, Brie / W602348)

EC_NA_0728230462 - 2023-07-28 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0725230046 - 2023-07-25 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0720239622 - 2023-07-20 - CaseClosed (Holtzman, Michael / V510276)

EC_NA_0717239151 - 2023-07-17 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0707238306 - 2023-07-07 - CaseClosed (Gurwin, Angela M / W260281)

EC_NA_0705238016 - 2023-07-05 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0630237739 - 2023-06-30 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0608235326 - 2023-06-08 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0605234803 - 2023-06-05 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0602234637 - 2023-06-02 - CaseClosed (Holtzman, Michael / V510276)

EC_NA_0531234393 - 2023-05-31 - CaseClosed (Carney, Lee / V768398)

EC_NA_0530234325 - 2023-05-30 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0518233211 - 2023-05-18 - CaseClosed (Carney, Lee / V768398)

EC_NA_0516232973 - 2023-05-16 - CaseClosed (Lewis, Brie / W602348)

EC_NA_0512232563 - 2023-05-12 - CaseClosed (Colville, George / E905099)

EC_NA_0501239817 - 2023-05-01 - CaseClosed (Burnett, Tricia / V821595)

EC_NA_0426238743 - 2023-04-26 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0410234311 - 2023-04-10 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0325232914 - 2023-03-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0310231576 - 2023-03-10 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0310231485 - 2023-03-10 - CaseClosed (DANIEL A KRAMER / E926503)

EC_NA_0306231063 - 2023-03-06 - CaseClosed (Brown, Jamesia / O782795)

EC_NA_0303230934 - 2023-03-03 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0215239418 - 2023-02-15 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0215239400 - 2023-02-15 - CaseClosed (Diorio, Travis H / N617757)

EC_NA_0209238862 - 2023-02-09 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0131237900 - 2023-01-31 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0127237623 - 2023-01-27 - CaseClosed (Suss, Lauren / V809271)

EC_NA_0125237322 - 2023-01-25 - CaseClosed (Diorio, Travis H / N617757)

EC_NA_0120237026 - 2023-01-20 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0119236844 - 2023-01-19 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0111236258 - 2023-01-11 - Close (Cordero, Cody C / O077029)

EC_NA_1213224075 - 2022-12-13 - CaseClosed (Ambers, Tyre T / U285073)

EC_NA_1117222107 - 2022-11-17 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_1026220340 - 2022-10-26 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1006228339 - 2022-10-06 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0921226931 - 2022-09-21 - CaseClosed (Fields, Remi / I779223)

EC_NA_0921226832 - 2022-09-21 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0919226668 - 2022-09-19 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_0919226646 - 2022-09-19 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0913226144 - 2022-09-13 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0902225470 - 2022-09-02 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0817223943 - 2022-08-17 - CaseClosed (Toppins, Allen / E709469)

EC_NA_0808223127 - 2022-08-08 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0727222245 - 2022-07-27 - CaseClosed (Newton, Dawn M / V777733)

EC_NA_0720221647 - 2022-07-20 - CaseClosed (Suss, Lauren / V809271)

EC_NA_0720221645 - 2022-07-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0720221568 - 2022-07-20 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0713220968 - 2022-07-13 - CaseClosed (Bourbon, Robert / W587674)

EC_NA_0627229587 - 2022-06-27 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_0601227577 - 2022-06-01 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0526227175 - 2022-05-26 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0526227089 - 2022-05-26 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0517226262 - 2022-05-17 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0516226094 - 2022-05-16 - CaseClosed (Domingeaux, Joseph / E892461)

EC_NA_0504225234 - 2022-05-04 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0414223103 - 2022-04-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0411222047 - 2022-04-11 - CaseClosed (Fields, Remi / I779223)

EC_NA_0406221667 - 2022-04-06 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0406221579 - 2022-04-06 - CaseClosed (Domingeaux, Joseph / E892461)

EC_NA_0404221358 - 2022-04-04 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0401221326 - 2022-04-01 - CaseClosed (Bourbon, Robert / W587674)

EC_NA_0302228813 - 2022-03-02 - CaseClosed (Hinsman, Jean / E003884)

EC_NA_0228228610 - 2022-02-28 - CaseClosed (Hebeler, [redacted] / F720148)

EC_NA_0216227754 - 2022-02-16 - CaseClosed (Brown, Rayana / U434027)

EC_NA_0215227711 - 2022-02-15 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0203226825 - 2022-02-03 - CaseClosed (Shah, Anish X2 / F720664)

EC_NA_0110225138 - 2022-01-10 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0106224916 - 2022-01-06 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1228214422 - 2021-12-28 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1206212787 - 2021-12-06 - CaseClosed (Austria, Jeanne / O507652)

EC_NA_1117211714 - 2021-11-17 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1112211439 - 2021-11-12 - CaseClosed (Hinsman, Jean / E003884)

EC_NA_1026210309 - 2021-10-26 - CaseClosed (Austria, Jeanne / O507652)

EC_NA_1026210306 - 2021-10-26 - CaseClosed (Gutierrez, Denise X / F677709)

**[redacted] (E)**

**Kyle Hitchcock (E549615) (E)**

EC_NA_1005228200 - 2022-10-05T20:40:26Z - CaseClosed (Padilla, Linda / U231503)

**Ben Stewart Jr. (N682989) (E)**

EC_NA_1020239740 - 2023-10-20 - InvestigationInProcess (Muraira, Nadia / I780946)

EC_NA_0630229920 - 2022-06-30 - CaseClosed (Cadyma-Renard, Zadina / W599216)

**Rachel Tidwell-Neal (R659859) (E)**

EC_NA_1002237385 - 2023-10-02 - InvestigationInProcess (Lehman, Joseph / W017055)

EC_NA_0920236012 - 2023-09-20 - InvestigationInProcess (Richards, Corey A / V445954)

EC_NA_0907234617 - 2023-09-07 - DispositionInProcess (Niswonger, Cherie L / V031290)

EC_NA_0824233297 - 2023-08-24 - InvestigationInProcess (Holtzman, Michael / V510276)

EC_NA_1016238947 - 2023-10-16 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0630237739 - 2023-06-30 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0607235230 - 2023-06-07 - CaseClosed (Vinh, Diane / E824351)

EC_NA_0605234804 - 2023-06-05 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0601234555 - 2023-06-01 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0522233500 - 2023-05-22 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0419236026 - 2023-04-19 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0417235020 - 2023-04-17 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0403233659 - 2023-04-03 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0327232944 - 2023-03-27 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0321232464 - 2023-03-21 - CaseClosed (Decarlo, Vito A / N718221)

EC_NA_0316232017 - 2023-03-16 - CaseClosed (Carney, Lee / V768398)

EC_NA_0315231937 - 2023-03-15 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0224230137 - 2023-02-24 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0213239205 - 2023-02-13 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0207238587 - 2023-02-07 - CaseClosed (Chelf, Shawn / F502194)

EC_NA_0110236134 - 2023-01-10 - CaseClosed (Bedward, Daniela / E929369)

EC_NA_0103235578 - 2023-01-03 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_1209223814 - 2022-12-09 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_1207223512 - 2022-12-07 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_1205223368 - 2022-12-05 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_1111221734 - 2022-11-11 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1024220004 - 2022-10-24 - CaseClosed (Suss, Lauren / V809271)

EC_NA_1024229925 - 2022-10-24 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1021229751 - 2022-10-21 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1012228814 - 2022-10-12 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0906225591 - 2022-09-06 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0825224673 - 2022-08-25 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0810223422 - 2022-08-10 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0722221835 - 2022-07-22 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0706220237 - 2022-07-06 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0617228995 - 2022-06-17 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0616228799 - 2022-06-16 - CaseClosed (Mackey, Kevin P / O735172)

EC_NA_0510225626 - 2022-05-10 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0321220267 - 2022-03-21 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0126226235 - 2022-01-26 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0125226103 - 2022-01-25 - CaseClosed (Montoya, Carlos J / I657096)

EC_NA_0121225951 - 2022-01-21 - CaseClosed (Watkins, Shannon HR / W587416)

**Stephanie Stainback (U729056) (E)**

EC_NA_1020239740 - 2023-10-20 - InvestigationInProcess (Muraira, Nadia / I780946)

EC_NA_0913235248 - 2023-09-13 - InvestigationInProcess (Niswonger, Cherie L / V031290)

EC_NA_0817232513 - 2023-08-17 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0810231854 - 2023-08-10 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0323232726 - 2023-03-23 - CaseClosed (Bentsen, Jennifer R / E058304)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0214239284 - 2023-02-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0211239066 - 2023-02-11 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1103221016 - 2022-11-03 - Close (Bono, Jorj S / O403268)

EC_NA_1027220458 - 2022-10-27 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0824224631 - 2022-08-24 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0607227980 - 2022-06-07 - CaseClosed (Coleman, Marilyn / Z106661)

EC_NA_0428224615 - 2022-04-28 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_0216227763 - 2022-02-16 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0125226096 - 2022-01-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0118225602 - 2022-01-18 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1112211426 - 2021-11-12 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Joshua Biering (I662283) (E)**

EC_NA_1020239740 - 2023-10-20T19:11:59Z - InvestigationInProcess (Muraira, Nadia / I780946)

Related Parties

| Name | Party Type | SID | Association | ECI | Related Party Id |
|---|---|---|---|---|---|
| Christopher Magee | Employee | E811935 | Relevant Partner | | PRTY_REL_NA_1027233419 |
| [redacted] | Employee | [redacted] | Employee Raising Complaint | | PRTY_REL_NA_1027233415 |
| Kyle Hitchcock | Employee | E549615 | Witness | | PRTY_REL_NA_1027233411 |
| Ben Stewart Jr. | Employee | N682989 | Subject Manager | | PRTY_REL_NA_1027233413 |
| Rachel Tidwell-Neal | Employee | R659859 | Relevant Partner | | PRTY_REL_NA_1030234085 |
| Stephanie Stainback | Employee | U729056 | HR Business Advisor | | PRTY_REL_NA_1026232961 |
| Joshua Biering | Employee | I662283 | Subject (Primary) | | PRTY_REL_NA_1026232749 |

Attachments

| File Name | File Description | File Size | Date Added |
|---|---|---|---|
| Joshua Biering.pdf | HRC0202694 | 0.02 | 10/26/2023 |
| FW_ _EXTERNAL_Josh Biering Resignation.msg | Email notifying that Subject resigned | 0.087 | 10/30/2023 |

[redacted]



[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

---

[redacted]

[redacted]

[redacted]

No Related Issues Present



## Determination

| | |
|---|---|
| **Joshua Biering (I662283)** | **Disciplinary Outcome:** |
| **Primary Allegation ALLG_NA_1027239007** | [redacted]ng |

## Investigation Details & Methodology

Interview Joshua Biering : Subject Interview Kyle Hitchcock : Witness [redacted] : Employee Raising Complaint Christopher Magee : Relevant Partner Stephanie Stainback : HR Busin [redacted] art Jr. : Subject Manager Additional Analysis: Review Subject's Conduct history and performance history in Answer Key(AK), ServiceNow and Integrated Case Manager(ICM). Review Subject's HR Profile for time in role and performance ratings. Search HRBA Matrix for the HRBA for the Subject.

## Case Summary

**Outline of Findings**

SUBJECT'S CONDUCT HISTORY Conduct cases(COC) - EC_NA_1020239740 – opened October 20, 2023 - Theft from Firm / Expense Reimbursement – Investigation in Process Performance cases - No performance cases found for the Subject in AK. Unable to access ServiceNow and therefore unable to view any cases that are possibly in that system. ADDITIONAL ANALYSIS Subject has a hire date of May 23, 2016 and has worked as a SC Banker since February 16, 2023. Annual Performance "Review" ratings: • 2022 was O/S/S • 2021 was S/S/O *Ratings: S=Strong, O=On-Track, G=Growth Area *Categories: Business Results / Client, Customer, Stakeholder / Teamwork & Leadership HRBA aligned to Subject (as per HRBA Escalation Matrix) is Stephanie L Stainback

**Preliminary Conclusion**

## Interviews

No data in interview

## Disposition

No Data in disposition

**From:** Stainback, Stephanie (WM, USA)
**To:** Jacobs, Jonathan (HR, USA)
**Subject:** FW: [EXTERNAL]Josh Biering Resignation
**Date:** Saturday, October 28, 2023 12:11:56 PM

FYI

**From:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:04 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Fwd: [EXTERNAL]Josh Biering Resignation

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Saturday, October 28, 2023 9:45:17 AM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>
**Cc:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Subject:** [EXTERNAL]Josh Biering Resignation

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

App. 0171

| | |
|---|---|
| Report Title | Employee Relations Case Details |
| Run Date and Time | 2023-10-26 23:43:31 Philippines Standard Time |
| Run by | Kita Dytiapco- Purcia |
| Table name | sn_hr_er_case |

## Employee Relations Case

| | | | |
|---|---|---|---|
| Number: | HRC0202694 | State: | Ready |
| Parent: | | Resolution : | |
| Transferred from: | | Approval: | Not Yet Requested |
| External opened for: | false | Priority: | 3 - Moderate |
| Opened for: | Stephanie Stainback | Source: | Self Service |
| Opened for contact: | | Opened: | 2023-10-26 01:34:46 |
| Subject person: | | Opened by: | Stephanie Stainback |
| Subject person contact: | | Skip auto assign: | false |
| Stage: | | Assignment group: | HR_GLB_ER_AdminIntake |
| Display order: | | Assigned to: | Kita Dytiapco- Purcia |
| Preferred contact method: | Not Specified | Collaborators: | |
| HR service: | Employee Behavior Assistance | Template: | Employee Behavior Assistance |
| HR service subtype: | Behavioral | | |
| HR service subtype topic: | I want to address an individual's behavior | | |
| HR profile: | Stephanie Stainback | | |
| PDF Template: | | | |
| Incident date: | | | |
| Skills: | | | |
| Case update: | false | | |
| Related cases: | | | |

Short description:

Employee Behavior Assistance case for Stephanie Stainback

Description:

The following fields have been provided:How can we help you?: I want to address an individual's behaviorUser: Joshua BieringInvolved Party Type: respondentWhat have you done to address the behavior with the person(s) in question?: I am escalating a concern raised by a manager related to potential inappropriate behavior by an Executive Director (I662283) and his female analyst. [redacted]

Original Description:

The following fields have been provided:How can we help you?: I want to address an individual's behaviorUser: Joshua BieringInvolved Party Type: respondentWhat have you done to address the behavior with the person(s) in question?: I am escalating a concern raised by a manager related to potential inappropriate behavior by an Executive Director (I662283) and his female analyst. [redacted]

## Comments/Worknotes

Additional comments:

2023-10-26 01:34:46 - Stephanie Stainback (Additional comments)
User Stephanie Stainback has initiated a Employee Behavior Assistance request

Work notes:

| | |
|---|---|
| Related List Title | Task SLA List |
| Table name | task_sla |
| Query Condition | Task = HRC0202694 |
| Sort Order | None |

1 Task SLAs

| Task | SLA definition | Stage | Type | Target | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|---|---|---|---|---|---|---|---|---|---|
| HRC0202694 | ER - 30 day | In progress | | | 10 Days 23 Hours 22 Minutes | 6 Hours 37 Minutes | 2.46 | 2023-10-26 01:34:46 | |

| | |
|---|---|
| Related List Title | Involved Party List |
| Table name | sn_hr_er_involved_party |
| Query Condition | HR case = HRC0202694 |
| Sort Order | Display name in descending order |

2 Involved Parties

| HR case | Display name ▼ | Type |
|---|---|---|
| HRC0202694 | Stephanie Stainback | Submitting party |
| HRC0202694 | Joshua Biering | Subject of incident |

| | |
|---|---|
| Related List Title | Evidence List |
| Table name | sn_em_evidence |
| Query Condition | Parent = 6a708d62474ab190a6ec9915126d437f |
| Sort Order | Number in ascending order |

None

| | |
|---|---|
| Related List Title | Employee Relations Case List |
| Table name | sn_hr_er_case |
| Query Condition | Sys ID in f9bdcb4997e9b590f09577a71153af97, e5dc33c69321f9d01889b84c5cba10c4, 3b06814e93fdb994a198fc0d6cba101c, |
| Sort Order | in ascending order |

4 Employee Relations Cases

| Number ▲ | State | Opened for | HR service | Short description | |
|---|---|---|---|---|---|
| HRC0015275 | Closed Complete | Employee Relations Anonymous NAMR | Employee Behavior Assistance | Employee Behavior Assistance request for Employee Relations Anonymous NAMR | |
| HRC0098308 | Work in Progress | Ben Stewart Jr. | Employee Behavior Assistance | Career & Performance case for Ben Stewart Jr. | |
| HRC0116576 | Closed Complete | Employee Relations Anonymous NAMR | Employee Behavior Assistance | Employee Behavior Assistance request for Employee Relations Anonymous NAMR | |
| HRC0162502 | Work in Progress | Patrick Minnick | Performance Management Assistance | Performance Management Assistance case for Patrick Minnick | Madison Kovach |

| | |
|---|---|
| Related List Title | Associated Allegation List |
| Table name | sn_hr_er_m2m_allegation_party |
| Query Condition | Subject of allegation HR case = HRC0202694 |
| Sort Order | None |

None

| | |
|---|---|
| Related List Title | Accommodation List |
| Table name | sn_hr_er_accommodation |
| Query Condition | Sys ID = NULL AND Employee User = (empty) |
| Sort Order | None |

None

# Integrated Case Manager

Exported Date: 03/06/2024, 17:19:50

Item Id: EC_NA_1207234613

**Workflow Status**
Case Reopened - Pending Approval

**Date Open**
12/07/2023, 19:35:08

**Investigation Owner**
Sanchez, Julie

**Assigned Date**
03/06/2024, 17:09:44

**Created By**
O322063

**Disposition Owner**
Sanchez, Julie

**Subject**
Aughinbaugh,John(V034411)

**Tags**
[RETALIATION, MANAGING DIRECTOR, DISPUTE /APPEALS, SPECIAL PROJECT 9]

## Item Details

**Workgroup**
ER Tier 3 HR Led A

**Type**
Retaliation

**Subtype**
Complaint/Allegation

**LOB**
ASSET & WEALTH MANAGEMENT

**Sub-LOB**
GLOBAL PRIVATE BANK

**Legal Entity**
0802 JPMORGAN CHASE BANK, N. A.

**Country**
US

**Region**
NA

## Incident Information

**Incident Date**
2023-12-07

**Incident Location**
Workplace

**Aware of Incident Date**

**Incident Description**
INTAKE STATEMENT Code Hotline Report 100034014 Manually creating case as it is not yet loaded in ICM. Details: In Septem [redacted] l, [redacted] , voiced his concerns about the hostility and unprofessionalism transpiring on the work floor. On October 27, Joshua received a text from Ben. Ben told Joshua to call him after he was finished with the meeting he had with a competitor. After the meeting Joshua called Ben. Ben then told Joshua that the concerning tips were brought forth and he would be placed on a Involuntary paid administrative leave and employee relations would be following up with him. The following day, Joshua submitted his resignation notice. On December 1, Joshua was notified that he was terminated for violation of code on conduct and anti-harassme[redacted] Joshua believes that information about him and [redacted] ly consensual relationship was spreading [redacted] husband forced her to file a harassment report [redacted] lieves that he was retaliated against by Ben and John

for voicing his concerns on October 24 because the investigation was conducted in an impartial began to file a report regarding wrongful terminated Due to Joshua terminating the call prior to the completion of intake, no additional details were gathered, and NAVEX was unable to read back the report. Joshua caller did not receive access information (report key and password) and will be unable to review or follow up on this report.

**Is a Customer Involved?**
Y

Referring & Submitting Party Information

---

**Referring Party**
Joshua Biering I662283

**Anonymous Request**
N

**Referral ID & Source**
Manual Alert

**Referral Channel**
HR Business Partner

**Submitting Party**
O322063

**Submitting Party Phone Number**

**Alternate**

Notes

---

**Recent Notes**

03/06/2024, 17:09:45 Updated by Sanchez, Julie
original -03/06/2024, 17:09:45
Justification comments: ERP Julie Sanchez was asked to reopen the case in order to remove a tag.

01/23/2024, 14:44:18 Updated by Sanchez, Julie
original -01/23/2024, 14:44:18
Added Associated Work Item EC_NA_1026230312 which is the investigation that led to ERC Joshua Biering's involuntary termination, and Joshua disagrees with his involuntary termination.

01/23/2024, 13:54:00 Updated by Andales, Anagrace
original -01/23/2024, 13:54:00
Justification comments: Please see email for the information.

01/20/2024, 01:10:12 Updated by Andales, Anagrace
original -01/20/2024, 01:10:12
Justification comments: Please see webstats form for the details.

01/18/2024, 20:08:38 Updated by Sanchez, Julie
original -01/18/2024, 20:08:38

After ERP Julie Sanchez spoke to Evette Campbell on 1/18, Evette sent Julie an email which Julie attached to this case (named it "Information from Evette Campbell"). Evette indicated that Joshua had reached to her on 8/28/23, and she was coordinating behind the scenes to find the best time. She stated that it fell off her radar a bit due to Peter's changing schedule.

01/16/2024, 16:53:45 Updated by Sanchez, Julie

original -01/16/2024, 16:53:45

Meetings scheduled with [redacted] for 1/16 at 11:30am CT, Ben Stewart for 1/16 at 2:30pm CT, Keith Wiley for 1/16 at 3[redacted]ilian for 1/16 at 4pm CT, Elaine Agather for 1/17 at 9am CT, John Aughinbaugh for 1/17 at 11:30am CT

01/12/2024, 00:19:26 Updated by Sanchez, Julie

original -01/12/2024, 00:17:54

Meeting requests sent to Joseph Graham Wyatt, Kyle Hitchcock, and Kevin Benesh for 1/12 at 8amCT, 8:30am CT, and 1:30pm CT, respectively.

01/12/2024, 00:12:56 Updated by Sanchez, Julie

original -01/12/2024, 00:12:56

Attached is ERP Julie's email reply to Joshua Biering on 1/11/24.

01/11/2024, 16:27:06 Updated by Sanchez, Julie

original -01/11/2024, 16:27:06

ERP Julie added 5 attachments that Joshua Biering included in his email on 1/10/24. There was 1 attachment that contained medical information, so that will not be added to this case.

01/11/2024, 13:27:25 Updated by Sanchez, Julie

original -01/11/2024, 13:22:47

ERP Julie Sanchez tried to attach an email exchange between Joshua Biering and ERP Julie Sanchez from 1/9 through 1/10; however she received an error message from the Integrated Case Management (ICM) system indicating that it exceeds the maximum megabites. Joshua had 6 attachments he included in his email; Julie will open and save each separately and will try to to attach to this case again.

01/09/2024, 19:54:53 Updated by Sanchez, Julie

original -01/09/2024, 19:54:53

ERP Julie tried to call ERC Joshua Biering on 1/9 at the phone number on file (912-308-5781); however, it went straight to voicemail. Julie sent Joshua an email on 1/9 at 1:53pm CT asking him for his availability to speak.

01/08/2024, 14:41:40 Updated by Sanchez, Julie

original -01/08/2024, 14:13:17

ERP Julie Sanchez returned from vacation on 1/8/24, and reviewed notes added by Lerry Gamilla and Chase De Leon to this case on 1/5/24 and 1/6/24, respectively,. In Lerry's note, Lerry references EC_NA_0104248622 which is a closed Alert due to the same ERC in this case providing additional details as to the concerns he raised (attachment to this case called "Joshua Biering Flagged Email"). Lerry also references EC_NA_0209238835 as an Associated Work Item; however, that case is not related to this case and was not attached as an Associated Work Item. EC_NA_1207234632 is the Associated Work Item that was attached to this case due to it being another closed Alert that has the same ERC and same concerns in this case. ERP Julie will proceed to investigate. ERP Julie also reviewed Associated Work Item

EC_NA_1226237894 that was added by Chase DeLeon due to it being another closed Alert that has the same ERC and concerns in this case. The attachment called "Follow Up J Biering" that was added to this case on 1/6 is related to Associated Work Item EC_NA_1226237894. ERP Julie will proceed to investigate.

01/06/2024, 17:30:05 Updated by De Leon, Chase

original -01/06/2024, 17:30:05

INTAKE STATEMENT Exit Survey case EC_NA_1226237894 has been submitted by Employee Joshua Biering related to subject John Aughinbaugh. Due to this open investigation, adding new Exit Survey details here for ring fence purposes.

01/05/2024, 15:53:56 Updated by Gamilla, Lerry

original -01/05/2024, 15:53:56

INTAKE STATEMENT: Additional ICM case EC_NA_0104248622 received as a result of a flagged email. Associating ICM case EC_NA_0104248622 with ICM case EC_NA_1207234613 as it same ERC and similar concerns. Reached out to Nancy Sebastian since ERP is on leave. Nancy instructed to fold this new alert into ERP's existing case and add the additional subjects and attachment. Please note ICM case EC_NA_0209238835 will be closed as an associated item.

12/26/2023, 20:51:03 Updated by Sanchez, Julie

original -12/26/2023, 20:51:03

ERP Julie Sanchez will be on vacation beginning tomorrow, 12/27 and returning on 1/8. Julie will continue investigating the allegations in this case at that time.

12/14/2023, 17:17:57 Updated by Sanchez, Julie

original -12/14/2023, 17:17:57

Meeting request sent to Rachel Tidwell-Neal for 12/20 at 11:30am CT

12/11/2023, 21:51:01 Updated by Sebastian, Nancy R

original -12/11/2023, 21:51:01

MANAGER NOTE : ER Manager Nancy Sebastian discussed case with ERP and agreed on investigation steps and approach.

12/11/2023, 14:47:42 Updated by Sanchez, Julie

original -12/11/2023, 14:47:42

On 12/11, ERP Julie Sanchez reviewed the note added by Cody Cordero to this case on 12/8 as well as EC_NA_1207234632 that Cody added as an Associated Work Item to this case. The Incident Description in that case is identical to this case.

12/08/2023, 20:54:14 Updated by Cordero, Cody C

original -12/08/2023, 20:54:04

INTAKE STATEMENT Please note that there is a duplicate case ICM EC_NA_1207234632 (from the same code hotline report 100034014 ) that has been closed. Duplicate reports were due to NAVEX [redacted] ll, analyst, went on a [redacted] On October 24, Josh [redacted] professionalism transpiring on the work floor. On October 27, Joshua received a text from Ben. Ben told Joshua to call him after he was finished with the meeting he had with a competitor. After the meeting Joshua called Ben. Ben then told Joshua that the concerning tips were brought forth and he would be placed on a Involuntary p

administrative leave and employee relations would be following up with him. The following day, Joshua submitted his resignation notice. On December 1, Joshua was notified that he was terminated for [redacted] of code on conduct and anti-harassment policies. Josh [redacted] hat information about him and [redacted] s mutually consensual relationship was spreading, and [redacted] s husband forced her to file a h report. Joshua also believes that he was retaliated agai [redacted] nd John for voicing his concerns on October 24 because the investigation was conducted in an impartial manner. Joshua began to file a report regarding wrongful terminated Due to Joshua terminating the call prior to the completion of intake, no additional details were gathered, and NAVEX was unable to read back the report. Joshua caller did not receive access information (report key and password) and will be unable to review or follow up on this report.

12/08/2023, 16:27:43 Updated by Sanchez, Julie

original -12/08/2023, 16:27:43

Meeting request sent to Stephanie Stainback for 12/13 at 11am CT

12/07/2023, 22:50:21 Updated by Alimario, Andre

original -12/07/2023, 22:50:21

INTAKE STATEMENT Escalating case to Tier 3 for further investigation on alleged retaliation comingled with performance termination dispute involving a Managing Director from Asset Wealth Management. Joshua also believes that he was retaliated against by Ben and John for voicing his concerns on October 24 because the investigation was conducted in an impartial manner. Joshua began to file a report regarding wrongful termination.

Tags

[RETALIATION, MANAGING DIRECTOR, DISPUTE/APPEALS, SPECIAL PROJECT 9]

Related Subject Alerts & Cases

**Joshua Biering (I662283) (E)**

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

**Rachel Tidwell-Neal (R659859) (E)**

EC_NA_0301244672 - 2024-03-01 - InvestigationInProcess (Wayans, Ryan O / D439501)

EC_NA_0222243740 - 2024-02-22 - InvestigationInProcess (Yu, Wai / W606906)

EC_NA_0221243650 - 2024-02-21 - InvestigationInProcess (Bradfield, Nancy / I786039)

EC_NA_0217243370 - 2024-02-17 - InvestigationInProcess (Sanchez, Julie / V689725)

EC_NA_0213242696 - 2024-02-13 - InvestigationInProcess (Niswonger, Cherie L / V031290)

EC_NA_1221237670 - 2023-12-21 - RecommendToConcludeDispoReqd (Melichar, Megan / N794857)

EC_NA_1215235539 - 2023-12-15 - InvestigationInProcess (Portannese, Dana / V481477)

EC_NA_0228244404 - 2024-02-28 - Close (Bono, Jorj S / O403268)

EC_NA_0226244039 - 2024-02-26 - CaseClosed (Carney, Lee / V768398)

EC_NA_1208234866 - 2023-12-08 - CaseClosed (Harling, Catherine / E916218)

EC_NA_1115232549 - 2023-11-15 - CaseClosed (Allen, Tomika / V802282)

EC_NA_1102231088 - 2023-11-02 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1101230967 - 2023-11-01 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1027230508 - 2023-10-27 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1024239986 - 2023-10-24 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_1016238947 - 2023-10-16 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1002237423 - 2023-10-02 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1002237385 - 2023-10-02 - CaseClosed (Lehman, Joseph / W017055)

EC_NA_0920236012 - 2023-09-20 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0919235872 - 2023-09-19 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_0907234617 - 2023-09-07 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0824233297 - 2023-08-24 - CaseClosed (Holtzman, Michael / V510276)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0630237739 - 2023-06-30 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_0607235230 - 2023-06-07 - CaseClosed (Vinh, Diane / E824351)

EC_NA_0605234804 - 2023-06-05 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0601234555 - 2023-06-01 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0522233500 - 2023-05-22 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0419236026 - 2023-04-19 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0417235020 - 2023-04-17 - CaseClosed (Bradfield, Nancy / I786039)

EC_NA_0403233659 - 2023-04-03 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0327232944 - 2023-03-27 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0321232464 - 2023-03-21 - CaseClosed (Decarlo, Vito A / N718221)

EC_NA_0316232017 - 2023-03-16 - CaseClosed (Carney, Lee / V768398)

EC_NA_0315231937 - 2023-03-15 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0224230137 - 2023-02-24 - CaseClosed (Zerulik, Jonathan / R691232)

EC_NA_0213239205 - 2023-02-13 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0207238587 - 2023-02-07 - CaseClosed (Chelf, Shawn / F502194)

EC_NA_0110236134 - 2023-01-10 - CaseClosed (Bedward, Daniela / E929369)

EC_NA_0103235578 - 2023-01-03 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_1209223814 - 2022-12-09 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_1207223512 - 2022-12-07 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_1205223368 - 2022-12-05 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_1111221734 - 2022-11-11 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1024220004 - 2022-10-24 - CaseClosed (Suss, Lauren / V809271)

EC_NA_1024229925 - 2022-10-24 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1021229751 - 2022-10-21 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1012228814 - 2022-10-12 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0906225591 - 2022-09-06 - CaseClosed (Miller, Anthony / E921987)

EC_NA_0825224673 - 2022-08-25 - CaseClosed (Ritchie, Diandra N / I745473)

EC_NA_0810223422 - 2022-08-10 - CaseClosed (Harling, Catherine / E916218)

EC_NA_0722221835 - 2022-07-22 - CaseClosed (Allen, Tomika / V802282)

EC_NA_0706220237 - 2022-07-06 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0617228995 - 2022-06-17 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0616228799 - 2022-06-16 - CaseClosed (Mackey, Kevin P / O735172)

EC_NA_0510225626 - 2022-05-10 - CaseClosed (Greenwood-Jackson, Gena / V802558)

EC_NA_0321220267 - 2022-03-21 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0126226235 - 2022-01-26 - CaseClosed (Rhodes, Kelly / E884758)

EC_NA_0125226103 - 2022-01-25 - CaseClosed (Montoya, Carlos J / I657096)

EC_NA_0121225951 - 2022-01-21 - CaseClosed (Watkins, Shannon HR / W587416)

**Stephanie Stainback (U729056) (E)**

EC_NA_0301244710 - 2024-03-01 - AlertAssessment (Cordero, Cody C / O077029)

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1206234513 - 2023-12-06 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_1205234222 - 2023-12-05 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1111232122 - 2023-11-11 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0928236929 - 2023-09-28 - CaseClosed (Yu, Wai / W606906)

EC_NA_0913235248 - 2023-09-13 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0817232513 - 2023-08-17 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0810231854 - 2023-08-10 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0323232726 - 2023-03-23 - CaseClosed (Bentsen, Jennifer R / E058304)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0214239284 - 2023-02-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0211239066 - 2023-02-11 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1103221016 - 2022-11-03 - Close (Bono, Jorj S / O403268)

EC_NA_1027220458 - 2022-10-27 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0824224631 - 2022-08-24 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0607227980 - 2022-06-07 - CaseClosed (Coleman, Marilyn / Z106661)

EC_NA_0428224615 - 2022-04-28 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_0216227763 - 2022-02-16 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0125226096 - 2022-01-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0118225602 - 2022-01-18 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1112211426 - 2021-11-12 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Ben Stewart Jr. (N682989) (E)**

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0630229920 - 2022-06-30 - CaseClosed (Cadyma-Renard, Zadina / W599216)

**Peter Chilian (U359832) (E)**

EC_NA_1026230376 - 2023-10-26 - DispositionInProcess (Decarlo, Vito A / N718221)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_0802231020 - 2023-08-02 - Close (Alimario, Andre / N083227)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1129222807 - 2022-11-29 - CaseClosed (Yu, Wai / W606906)

EC_NA_1026220208 - 2022-10-26 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0718221254 - 2022-07-18 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**John Aughinbaugh (V034411) (E)**

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1117222114 - 2022-11-17 - CaseClosed (Yu, Wai / W606906)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

**Jonathan Jacobs (D639971) (E)**

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0718239275 - 2023-07-18 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_0710238429 - 2023-07-10 - CaseClosed (Fleming, Shannon / E929809)

**[redacted] (E)**

EC_NA_1026230312 - 2023-10-26T15:46:31Z - CaseClosed (Jacobs, Jonathan / D639971)

**Evette Campbell (N009645) (E)**

EC_NA_1129222807 - 2022-11-29T09:14:09Z - CaseClosed (Yu, Wai / W606906)

**Kevin Benesh II (N633468) (E)**

**David Frame (U126659) (E)**

EC_NA_0928236929 - 2023-09-28 - CaseClosed (Yu, Wai / W606906)

EC_NA_0913235248 - 2023-09-13 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0822232969 - 2023-08-22 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0801230732 - 2023-08-01 - Close (Harkless, Aquita M / W243183)

EC_NA_0727230393 - 2023-07-27 - CaseClosed (Craze, Jenn L / Z102299)

EC_NA_0506231804 - 2023-05-06 - Close (Harkless, Aquita M / W243183)

EC_NA_0502239870 - 2023-05-02 - Close (Andrade, Helen Rose F / I573223)

EC_NA_0501239796 - 2023-05-01 - Close (Doogan, Jenna R / F658669)

EC_NA_0329233202 - 2023-03-29 - Close (Alimario, Andre / N083227)

EC_NA_0324232858 - 2023-03-24 - Close (Bono, Jorj S / O403268)

EC_NA_0322232658 - 2023-03-22 - Close (Bono, Jorj S / O403268)

EC_NA_0322232651 - 2023-03-22 - Close (Tumapon, Lady Rose B / O322063)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0224230179 - 2023-02-24 - Close (Harkless, Aquita M / W243183)

EC_NA_0207238587 - 2023-02-07 - CaseClosed (Chelf, Shawn / F502194)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1205223368 - 2022-12-05 - CaseClosed (Sayyed, Muhammad / N767910)

EC_NA_0922227025 - 2022-09-22 - Close (Cordero, Cody C / O077029)

EC_NA_0909225982 - 2022-09-09 - Close (Alimario, Andre / N083227)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_1026210314 - 2021-10-26 - CaseClosed (Offsey, Michelle A / N596822)

**Joseph Wyatt (I707308) (E)**

**Kyle Hitchcock (E549615) (E)**

EC_NA_1005228200 - 2022-10-05T20:40:26Z - CaseClosed (Padilla, Linda / U231503)

**Keith Wiley (R628994) (E)**

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

**Elaine Agather (U711076) (E)**

EC_NA_0221243663 - 2024-02-21 - AlertAssessment (Dejaro, Eydie A / O589797)

EC_NA_0216243199 - 2024-02-16 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1205234222 - 2023-12-05 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0928236929 - 2023-09-28 - CaseClosed (Yu, Wai / W606906)

EC_NA_0926236480 - 2023-09-26 - Close (Andrade, Helen Rose F / I573223)

EC_NA_0901234220 - 2023-09-01 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0823233128 - 2023-08-23 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0815232338 - 2023-08-15 - Close (Gamilla, Lerry / W278285)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0720239645 - 2023-07-20 - Close (Harkless, Aquita M / W243183)

EC_NA_0506231804 - 2023-05-06 - Close (Harkless, Aquita M / W243183)

EC_NA_0502239870 - 2023-05-02 - Close (Andrade, Helen Rose F / I573223)

EC_NA_0501239796 - 2023-05-01 - Close (Doogan, Jenna R / F658669)

EC_NA_0427239126 - 2023-04-27 - CaseClosed (Yu, Wai / W606906)

EC_NA_0329233202 - 2023-03-29 - Close (Alimario, Andre / N083227)

EC_NA_0324232858 - 2023-03-24 - Close (Bono, Jorj S / O403268)

EC_NA_0322232664 - 2023-03-22 - CaseClosed (Richards, Corey A / V445954)

EC_NA_0322232658 - 2023-03-22 - Close (Bono, Jorj S / O403268)

EC_NA_0322232651 - 2023-03-22 - Close (Tumapon, Lady Rose B / O322063)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0320232352 - 2023-03-20 - Close (Bono, Jorj S / O403268)

EC_NA_0224230182 - 2023-02-24 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0224230179 - 2023-02-24 - Close (Harkless, Aquita M / W243183)

EC_NA_0214239284 - 2023-02-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1129222807 - 2022-11-29 - CaseClosed (Yu, Wai / W606906)

EC_NA_1103221065 - 2022-11-03 - Close (Harkless, Aquita M / W243183)

EC_NA_1027220458 - 2022-10-27 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0922227025 - 2022-09-22 - Close (Cordero, Cody C / O077029)

EC_NA_0909225982 - 2022-09-09 - Close (Alimario, Andre / N083227)

EC_NA_0428224615 - 2022-04-28 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_0228228635 - 2022-02-28 - Close (Navarro, Brittany M / v105043)

EC_NA_0125226096 - 2022-01-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

Associated Work Item

| Item ID | Relationship | Type | Subtype | Status | Owner |
|---|---|---|---|---|---|
| EC_NA_1207234632 | Child | Retaliation | Complaint/Allegation | Closed Alert | Cordero, Cody C/O077029 |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| EC_NA_1226237894 | Child | Retaliation | Complaint/Allegation | Closed Alert | De Leon, Chase/W064058 |
| EC_NA_1026230312 | Reference Only | [redacted] | | Case Closed | Jacobs, Jona |



Facilities

No data in Facilities

Attachments

| File Name | File Description | File Size | Date Added |
|---|---|---|---|
| case_100034014.pdf | Code Hotline Report | 0.106 | 12/07/2023 |
| Follow Up J Biering.pdf | email from Exit Survey Employee Raising Concern | 0.303 | 01/06/2024 |
| Resignation attachment to 1.10.24 Biering email.pdf | Resignation attachment to 1.10.24 Biering email | 0.08 | 01/11/2024 |
| Email to ALL leaders attachment to 1.10.24 Biering email.pdf | Email to ALL leaders attachment to 1.10.24 Biering email | 0.297 | 01/11/2024 |
| Letter to Senator Cruz attachment to 1.10.24 Biering email.pdf | Letter to Senator Cruz attachment to 1.10.24 Biering email | 3.772 | 01/11/2024 |
| Exit Survey attachment to 1.10.24 Biering email.pdf | Exit Survey attachment to 1.10.24 Biering email | 0.352 | 01/11/2024 |
| Resignation email attachment to 1.10.24 Biering email.pdf | Resignation email attachment to 1.10.24 Biering email | 0.208 | 01/11/2024 |
| Joshua Biering Flagged Email.pdf | Joshua Biering Flagged Email | 0.288 | 01/05/2024 |
| Email exchange between Joshua Biering and Julie Sanchez.msg | Email exchange between Joshua Biering and Julie Sanchez | 0.074 | 01/12/2024 |
| Information from Evette Campbell.msg | Information from Evette Campbell | 0.598 | 01/18/2024 |

Related Parties

| Name | Party Type | SID | Association | ECI | Related Party Id |
|---|---|---|---|---|---|
| Joshua Biering | Employee | I662283 | Employee Raising Complaint | | PRTY_REL_NA_1207239308 |
| Rachel Tidwell-Neal | Employee | R659859 | Relevant Partner | | PRTY_REL_NA_1220234216 |
| Stephanie Stainback | Employee | U729056 | HR Business Advisor | | PRTY_REL_NA_1208239625 |
| Ben Stewart Jr. | Employee | N682989 | Subject | | PRTY_REL_NA_1207239309 |
| Peter Chilian | Employee | U359832 | Subject | | PRTY_REL_NA_1208239626 |
| John Aughinbaugh | Employee | V034411 | Subject (Primary) | | PRTY_REL_NA_1207239159 |
| Jonathan Jacobs | Employee | D639971 | Relevant Partner | | PRTY_REL_NA_1208239624 |
| [redacted] | Employee | [redacted] | Witness | | PRTY_REL_NA_0116242082 |
| Evette Campbell | Employee | N009645 | Witness | | PRTY_REL_NA_0118243023 |
| Kevin Benesh II | Employee | N633468 | Witness | | PRTY_REL_NA_0112241474 |
| David Frame | Employee | U126659 | Subject Manager | | PRTY_REL_NA_0117242323 |
| Joseph Wyatt | Employee | I707308 | Witness | | PRTY_REL_NA_0112241170 |
| Kyle Hitchcock | Employee | E549615 | Subject | | PRTY_REL_NA_0112241471 |
| Keith Wiley | Employee | R628994 | Subject | | PRTY_REL_NA_0105248334 |
| Elaine Agather | Employee | U711076 | Subject | | PRTY_REL_NA_0105248333 |

Notifications

| Type | Recipient | Method | Date Notified | Updated By | Date Added | Notification Id |
|---|---|---|---|---|---|---|
| Initial Stakeholder Notification | Stephanie Stainback | Email | Dec 08,2023 | Sanchez, Julie (V689725) | 12/08/2023, 16:28:01 | NTFY_NA_1208232682 |

## Financials

No data in financials

## Associated Accounts

No data in Accounts

## Forensics

No data in forensics

## Investigation Scope

### Allegations

**Primary Statement of Allegation**
ERC is a former employee Joshua Biering who disagrees with his involuntary termination. He claims that Subjects John Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and Kyle Hitchcock retaliated against him for voicing concerns.

**Allegation Id**
ALLG_NA_1208231454

**Type**
Retaliation

**Subtype**
Complaint/Allegation

**Code of Conduct Policies**
[1.4.1 Our Commitment to Non-Retaliation]

**Associated Subjects**
[Stewart Jr.,Ben-N682989, Agather,Elaine-U711076, Aughinbaugh,John-V034411, Hitchcock,Kyle-E549615, Chilian,Peter-U359832]

---

**Additional Statement of Allegation**
ERC Joshua also claims that Keith Wiley acts inappropriately and makes inappropriate comments.

**Allegation Id**
ALLG_NA_0118243350

**Type**
Inappropriate Conduct

**Subtype**
Behavioral Misconduct

**Code of Conduct Policies**
[3.1 A Dynamic and Thriving Workplace]

**Associated Subjects**
[Wiley,Keith-R628994]

---

## Related Issues

No Related Issues Present

## Determination

| | |
|---|---|
| **Ben Stewart Jr. (N682989)** | **Disciplinary Outcome: N/A** |
| **Primary Allegation ALLG_NA_1208231454** | Retaliation : Complaint/Allegation<br>Not Supported |

| | |
|---|---|
| **Kyle Hitchcock (E549615)** | **Disciplinary Outcome: N/A** |
| **Primary Allegation ALLG_NA_1208231454** | Retaliation : Complaint/Allegation<br>Not Supported |

| | |
|---|---|
| **Keith Wiley (R628994)** | **Disciplinary Outcome: N/A** |
| **Additional Allegation ALLG_NA_0118243350** | Inappropriate Conduct : Behavioral Misconduct<br>Not Supported |

| | |
|---|---|
| **Elaine Agather (U711076)** | **Disciplinary Outcome: N/A** |
| **Primary Allegation ALLG_NA_1208231454** | Retaliation : Complaint/Allegation<br>Not Supported |

| | |
|---|---|
| **Peter Chilian (U359832)** | **Disciplinary Outcome: N/A** |
| **Primary Allegation ALLG_NA_1208231454** | Retaliation : Complaint/Allegation<br>Not Supported |

| | |
|---|---|
| **John Aughinbaugh (V034411)** | **Disciplinary Outcome: N/A** |
| **Primary Allegation ALLG_NA_1208231454** | Retaliation : Complaint/Allegation<br>Not Supported |

## Investigation Details & Methodology

Review Answer Key, Integrated Case Management system (ICM), and Service Now history for John Aughinbaugh Review Answer Key, Integrated Case Management system (ICM), and Service Now history for Ben Stewart Review Answer Key, Integrated Case Management system (ICM), and Service Now history for Kyle Hitchcock Review Answer Key, Integrated Case Management system (ICM), and Service Now history for Elaine Agather Review Answer Key, Integrated Case Management system (ICM), and Service Now history for Peter Chilian Review Answer Key, Integrated Case Management

system (ICM), and Service Now history for Keith Wiley Conduct the following interviews: -Employee Raising Complaint (ERC) Joshua Biering -Subject Keith's manager is Ben Stewart and Ben is also a Subject in this case; Subje[...] Hitchcock's manager and Ben's manager is John Aughinbaugh and John is also a Subject in this case; John's manager is Peter Chilian and Peter is also a Subject in this case; Peter's manager is Elaine Agather and Elaine is also a Subject in this case; Elaine's manager is David Frame. David will be considered the Subject's manager in this case. Please note that David was not initially interviewed by ERP Julie Sanchez as HRBA Stephanie Stainback confirmed that David was already aware of the allegations and investigation. ERP Julie will share investigative findings wit [redacted] phanie once the investigation is complete. -Witness Joseph Wyatt -Witness Kevin Benesh -Witness [redacted] -Witness Evette Campbell -Please note that while other parties may had been named during the cou [redacted] ion, Employee Relations Partner did not feel it was necessary to interview additional parties to complete the investigation. -Please note that though ERC Joshua told ERP Julie Sanchez that he wanted an apology from Jena Cohen and Rachel Tidwell-Neal, he did not provide any examples as to what they did wrong. As such, they were not added as Subjects to this case. -Please note that in some of the attachments to this case, Joshua uses the words discrimination and discloses that he is a disabled veteran; however, Joshua did not provide any examples or details as to how he was discriminated in his written documentation (attached) or when speaking to ERP Julie. Hence, discrimination was not added as an allegation to this case. -Please note that in some attachments to this case, Joshua uses the word harassment; however does not provide further details. Hence, harassment was not added as an allegation to this case. Joshua does provide several examples of situations he had with Subjects which he described as raising concerns that led to them retaliating against him. ERP Julie proceeded to investigate the examples Joshua provided and his allegations of inappropriate conduct by Keith Wiley and retaliation by all other Subjects. -HRBA Stephanie Stainback -Relevant partner Rachel Tidwell-Neal -Relevant partner Jonathan Jacobs -Subject John Aughinbaugh -Subject Ben Stewart -Subject Elaine Agather -Subject Peter Chilian -Subject Kyle Hitchcock -Subject Keith Wiley

## Case Summary

**Outline of Findings**

SUBJECT'S CONDUCT HISTORY John Aughinbaugh has 1 prior Code of Conduct case: -EC_NA_1117222114: Opened 11/17/22 and Closed 12/22/22; GS Investigation; Allegation of Anti-Corruption/Gifts and Entertainment was Not Supported. SUBJECT'S CONDUCT HISTORY Ben Stewart does not have any prior Code of Conduct cases. SUBJECT'S CONDUCT HISTORY Kyle Hitchcock does not have any prior Code of Conduct cases. SUBJECT'S CONDUCT HISTORY Elaine Agather has 5 prior Code of Conduct cases: -EC_NA_0928236929: Opened on 9/28/23 and Closed on 12/21/23; Sales Practices/Management Pressure; Allegation was Not Supported. -EC_NA_0322232559: Opened 3/22/23 and Closed 6/27/23; Allegation of Discrimination/Race was Not Supported; however, closing case type of Harassment /Unacceptable Conduct-Protected Class was Supported resulting in a Written Warning because Elaine made insensitive comments about Blacks and LGBTQ+ community -EC_NA_0214239284: Opened 2/14/23 and Closed 6/29/23; Allegations of Discrimination/Gender, Discrimination/Race, Ethical Decision Making/Unsatisfactory Decision Making-HR, and Discrimination/Age were Not Supported -EC_NA_0120237023: Opened 1/20/23 and Closed 2/7/23; Allegation of Inappropriate Conduct/Favoritism was Not Supported -AK Case 9462628-0: GHR-COC-Harassment: Hostile Work Environment/Bullying; Opened 9/12/20 and Closed 11/17/20 with allegation Not Supported. -AK Case 9462628-0: GHR-COC-Harassment: Hostile Work Environment/Bullying; Opened 9/12/20 and Closed 11/17/20 with allegation Not Supported. SUBJECT'S CONDUCT HISTORY Peter Chilian has 3 prior Code of Conduct cases: -AK Case 8627821-0: Opened on 7/8/19 and Closed on 7/30/19; GHR - COC - Ethical Business Practices/Anti-Money Laundering; allegation was Not Supported. -EC_NA_1129222807: Opened on 11/29/22 and Closed on 12/21/22; Global Security Investigations Data Loss Prevention/Company Information; Verbal Warning to Peter because he had instructed his assistant to email names of employees to his spouse in order to send out holiday cards. The spouse's email address is not a company email address. -EC_NA_1028210495: Opened on 10/28/21 and Closed on 2/1/22; Harassment-Bullying/Intimidation - Protected Class; Allegation was Not Supported. SUBJECT'S CONDUCT HISTORY Keith Wiley does not have any prior Code of Conduct cases. ADDITIONAL ANALYSIS No additional analysis was identified. FINDINGS -ERC Jo [redacted] Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and [redacted] ck retaliated against him for that. In addition, Joshua alleges behavioral misconduct by Keith Wiley. [redacted] did not corroborate Joshua's allegation. She stated that nobody coerced her to plan his exit, that she did not tell [redacted] and that she raised the concerns about Joshua's inappropriate behavior because of encouragement from her non-employee friends to do so after she spent time debating whether she should. She also stated that she does not have concerns about Keith Wiley's behavior currently or in the past. -When 2 witnesses who Joshua named were interviewed, both stated that they have never observed Kyle to ridicule or be condescending towards Joshua. 1 of the 2 witnesses stated that Joshua can come across as aggressive, but not Kyle. -Subjects John, Ben, Elaine, Peter, Kyle and Keith denied allegation and examples that Joshua raised. John, Ben, Elaine, and Kyle stated that Joshua was one who

would continue to persist when he didn't receive what he wanted; however, John, Ben, and Kyle stated that they began to personally observe unprofessional/atypical behavior from Joshua in the August/September/October 2023 ti[redacted] Witness Evette Campbell stated that nobody, including John and Peter, ever asked her to postpone scheduling meetings with Joshua Biering and Peter. -Subject's manager David Frame was not interviewed as HRBA confirmed that he was aware of the allegations/investigation, and that he will wait for ERP to schedule ti[redacted]

technically report to Joshua, the majority of her work (over 90%) was Joshua's book of business. Even if [redacted] ly exchanged texts with Joshua, Joshua who was an Executive Director who had direct impact on [redacted] work and performance. Based on a review of the information gathered, evidence was not found to suggest tion or Inappropriate Conduct/Behavioral Misconduct. Subject Keith denied allegation[redacted] ice she received from her no[redacted] riends. [redacted] stated th the firm coerced her to do so. In addition, the ERP who investigated [redacted] concer at even if [redacted] willingly exchanged communication with Joshua, the fact that he was Director who had direct i r work and performance reflects poor judgment on his part and behavior that is not appropriate. As such, the involuntary termination of Joshua Biering is the appropriate outcome. Dispute/Appeal Not Upheld.

**Preliminary Conclusion**

The evidence reviewed does not support the allegation of Retaliation-Complaint/Allegation against John Aughinbaugh. The evidence reviewed does not support the allegation of Retaliation-Complaint/Allegation against Ben Stewart. The evidence reviewed does not support the allegation of Retaliation-Complaint/Allegation against Elaine Agather. The evidence reviewed does not support the allegation of Retaliation-Complaint/Allegation against Peter Chilian. The evidence reviewed does not support the allegation of Retaliation-Complaint/Allegation against Kyle Hitchcock. The evidence reviewed does not support the allegation of Inappropriate Conduct/Behavioral Misconduct against Keith Wiley. Dispute/Appeal Not Upheld.

## Interviews

**Interviewed Party**

Stephanie Stainback (HR Business Advisor)

**Interview Summary**

Stephanie Stainback shared the following on 12/13 at 11am CT -Joshua Biering was recently the Subject in 2 investigations. One was investigated by ERP Jonathan Jacobs about concerns that a female analyst raised about him, and the other by Global Security Investigations (GSI). She knows that GSI had indicated that the only way they would be able to definitively tell if Joshua falsified his expenses would be if they spoke to customers; however, it is not their practice to speak to customers so the outcome was not supported. -She knows that when Subject Ben placed Josh[redacted] nows [redacted] She knows that Joshua engaged in other inappropriate behavior such as telling Subject John "fuck you."

**Interview Date**

Dec 13,2023

**Interview Id**

INTVW_NA_1214234615

App. 0193

**Interviewed Party**
Rachel Tidwell-Neal (Relevant Partner)

**Interview Date**
Dec 20,2023

**Interview Id**
INTVW_NA_1220235330

**Interview Summary**
On 12/20, ERP Julie Sanchez and Rachel Tidwell [redacted]

---

**Interviewed Party**
Jonathan Jacobs (Relevant Partner)

**Interview Date**
Dec 21,2023

**Interview Id**
INTVW_NA_1221235547

**Interview Summary**
Jonathan Jacobs shared the following on 12/21 at 11:30am CT -He was assigned t [redacted] and Global Security spoke to ERC [redacted] that day, and he worked with Ben Stew n a paid administrative leave that day. The following day, Joshua submitted his resignation. -Other than being Joshua's managers, Ben and John Aughinbaugh did not have any influence and did not share their own opinions on the investigation or outcome. HRBA Stephanie Stainback reported the allegations to [redacted] r Kyle Hitchcock told Stephanie about it. Kyle [redacted] mentor and noticed she seemed withdrawn, and [redacted] tually confided in Kyle about the golf trip. -Jon aguely remembers J [redacted] mentioning something about texts that both he and [redacted] exchanged a while before the golf trip. They then s d to the Signal app where the texts disappear; th [redacted] also before the golf trip. -The main issue is even if [redacted] ed Joshua, there was a power dynamic. Even tho [redacted] did not technically report to Joshua, the majority of h k (over 90%) was Joshua [redacted] of business. Joshua was an Executive Direc [redacted] is an Analyst, and Joshua has direct impact on [redacted]. Joshua would be d to provide feedbac [redacted] work performance. [redacted] manager does e day-to-day intera h [redacted] as Joshua did, so [redacted] want Joshua's feedback. - an also described [redacted] as extremely credible. She was emotional and distr to her [redacted]

---

**Interview Summary**
Joshua (goes by Josh) Biering shared the following on 1/9 at 4:29pm CT (Julie called Josh on his cell phone and the call lasted for 21 minutes) -ERP Julie Sanchez let Josh know that

**Interviewed Party**
Joshua Biering (Employee Raising Complaint)

she will be looking into the concerns he raised. Josh confirmed that he does not agree with his ter[illegible] he did not act inappropriately, and that the termination was because of retaliation due to concerns he raised about the work environment, inclusive of compensation and asking for more help/coverage/support. He stated that Jonathan Jacobs investigation was inadequate as it is clear through the texts Josh sent to Jena that it was consensual and he did not act inappropriately. -Josh further stated that he was retaliated and humiliated by many not just by J.T. Aughinbaug. Josh said Ben used to be his champion, but J.T. had told Ben to not speak to Josh without J.T.'s knowledge/presence. When ERP Julie asked Josh for examples and if other employees witnessed that, Josh stated that he already sent a detailed timeline with examples. Julie let Josh know that she had reviewed most of the information he sent, but that it would be helpful for him to describe to her as they were speaking today. Josh proceeded to share that in 2022, the Private Bank in Fort Worth had the worst Employee Opinion Survey results and as a result, they blamed manage [redacted] o, in ey shared a client who raised a complaint. Josh stated that it went on Josh's U4 even though it did not need to, but Josh wanted to be a team player. He was told that it would be expunged a year later. In April 2022, Kyle and Josh had a pre-call, and Josh asked Kyle if they should look into better investment recommendations. Kyle then began to ridicule Josh by saying that Josh did not know what he was talking about; that Josh was just throwing anything at the wall to see what sticks. Josh stated that Joseph Graham Wyatt, Jacob Schneider, and Kevin Benesh were witnesses. Josh then spoke to David Nolet about it. -When ERP Julie asked Josh to spell the last names of the witnesses, Josh asked Julie what was the point and what really is going to be the outcome of all of this. Julie explained to Josh what her role is: that she is gathering information from Josh in order to look into his concerns, and that she does not have an outcome to share with him at this time. Julie asked Josh what outcome is he ideally looking for, and Josh stated: •He wants a written apology, and acknowledgement from all the wrong doers: J.T., Ben, Kyle, Jena Cohen, Elaine Agather, Peter Chilian, and Rachel Tidwell-Neal (please note that Joshua did not provide any details or examples how Jena Cohen or Rachel Tidwell-Neal are wrong doers/inappropriate behavior by them). •An admission by Nadia Muraira that the investigation into the expenses was bogus •He wants to review Jonathan Jacobs' investigative notes, and be told exactly what conduct led to an involuntary termination. Josh wants to know exactly how he violated the Code of Conduct •He wants the U5 expunged -Josh then asked Julie if they could reschedule their call because he was getting charged up, and wanted the opportunity to speak to his attorney. He said he needs to talk to his attorney about what to do moving forward. When Julie asked Josh when he would like to reschedule to, he said tomorrow. Julie explained that she will not be available tomorrow due to an offsite meeting. Josh then said Thursday morning, and that he would like the call recorded or have a 3rd person join the call. Julie told Josh

that she does not record calls, and does not consent to having a call recorded. Julie explained that she does receive requests for that or for a 3rd party to join. Julie asked Josh why he was asking that, and who he was requesting to have on the call with them. Josh stated that he already knows what is going to happen; nothing. He then said he wanted to have Jonathan Jacobs on the call. -Julie told Josh that she understands from an email that Josh sent to Jena that he has a recording of Peter Chilian. Julie asked Josh what did Peter say, and Josh responded that he will not tell Julie. He said that will be for the lawsuit. He said just look at all of his calendar requests in which Peter's assistant delayed meetings. When Julie asked Josh if he sent the calendar requests to ER or Jena, Josh said no. Josh then stated that he has a documented library of information that he will only selectively provide from at this time. His legal action will show how the findings of Jonathan's investigation was based on bogus facts. Josh then stated that: “this is not about money; this is about you guys fucked up.”

**Interview Date**
Jan 09,2024

**Interview Id**
INTVW_NA_0109246742

---

**Interview Summary**
cock shared the following on 1/12 at 8:30am CT - [redacted] is an [redacted] the office who he has mentored. ticed [redacted] being distracted and not herself. - On 10/23/23, J ent Kyle an email asking to meet in person the next day. Joshua felt that Kyle was not paying attention to him in work related ways/clients. When they spoke in person on Tuesday, 10/24, Joshua told Kyle he was frustrated, but almost immediately said he was ok based on the initial response Kyle had (which was that he was not ignoring Joshua). Joshua proceeded to talk to Kyle about personal issues he was going through, and had gotten emotional (Joshua cried). Prior to Joshua getting emotional, he did tell Kyle that he was frustrated with work and management in what he felt was a lack of support/resources. He had told Kyle that he was planning to meet with John and Ben later that day (which Kyle did not know about before Joshua told him), and that Joshua may need a hard re-set. Kyle does not remember [redacted] g the words resigning or quitting. -Kyle knew that [redacted] worked closely with Joshua as she was Joshua uppo le spoke to Joshua, Kyle began to think that [redacted] not being herself could be related to Joshua. t that because he noticed that Joshua seemed to be paranoid and had told Kyle he was experiencing difficulty with personal issues an [redacted]. Kyle did not know if that was affecting [redacted] in any way. So, K [redacted] hat after he spoke to ouched base with [redacted] (the same day). He asked her if e as o she was doing. Kyle stated that [redacted] just stared at Ky h t like her. A coupl ter on Thursday, [redacted] asked Kyle if she could speak to him the follo ay ot at work. He agreed, and met her for coffee on Friday.

**Interviewed Party**
Kyle Hitchcock (Subject)

Kyle later learned that [redacted] had taken the previous 2 days ( nd ff as perso Friday, [redacted] told Kyle that she had taken time to think and she ns of inappropriate behavior by Joshua. She told Kyle that she appreciated Kyle's open door policy, and his words rang through to her. Kyle explained that about a week prior, there was an employee death in the office in which he addressed the entire group of employees about. He had told them about company resources, and that if anyone ever wanted to talk about anything he and the firm are here to listen. Kyle then [redacted] BA Stephanie Stainback about the concerns [redacted] had. -The large prospective busine wh eferring to is a company called [redacted] Kyle was not unsupportive, and they did beco t. Kyle explained that there were challenges during the vetting process as things were flagged about the client. However, the firm has to go through the due diligence /vetting process with each and every prospective client. Joshua expressed that it was taking too long and that we were not supportive. It was explained to Joshua that it is nothing personal to him or the client, but the necessary process in which they have to go through and Joshua called them roadblocks. One example is that the firm's loan team could not do a loan, but again that was based on the vetting process and not because Kyle, John or Ben were not supportive. When Joshua refers to big liquidity; what that means is that there is more money for the banker(s) (this client was in Joshua's name). This client is going through liquidity. The firm is required to notify clients if there is banker coverage changes, and they did so with this client but only after Joshua was no longer with the firm. They let the client know that Joshua was no longer with the firm, not that he was discharged. -Kyle denied ever ridiculing Joshua. Kyle stated he may have made a comment such as: "let's be thoughtful about how we approach investment recommendations," but not that Joshua didn't know what he was doing. He has not been condescending or retaliatory towards Joshua.

**Interview Date**
Jan 12,2024

**Interview Id**
INTVW_NA_0112247171

---

**Interviewed Party**
Joseph Wyatt (Witness)

**Interview Summary**
Joseph (goes by Graham) Wyatt shared the following on 1/12 /24 at 8am -He used to work in the Fort Worth office, and moved to New York in July 2022 to work with another team. -Kyle has always been professional and communicated in a respectful manner to everyone. -He has never observed Kyle to ridicule or be condescending to any employee. -Graham was Joshua's direct report when Graham worked in Fort Worth. Graham never heard Kyle tell Joshua that Joshua did not know what he was talking about, that Joshua did something wrong, that Joshua should not have done something, that Joshua was throwing anything at the wall to see what sticks or anything to that effect. -Graham does not remember any interaction or comments made by Kyle that

stood out as being inappropriate. Graham did not observe any tension between Kyle and Joshua.



**Interview Date**
Jan 12,2024

**Interview Id**
INTVW_NA_0112247090

---

**Interviewed Party**
Kevin Benesh II (Witness)

**Interview Summary**
Kevin (goes by Scott) Benesh shared the following on 1/12 at 1:30pm CT -He has never observed Kyle to be condescending to employees or ridiculing anyone. -He did help Kyle and Joshua on some clients who they partnered with (client overlap). Scott can only remember normal interactions between Kyle and Joshua, and did not observe any tension between them. Scott described Joshua as sometimes coming across as aggressive, but not Kyle. -Scott did not hear Kyle ever tell Joshua that he didn't know what he was talking about or that Joshua was just throwing anything at the wall to see what sticks or anything to that effect. ERP Julie Sanchez provided Scott with the possible context of Joshua commenting on them looking into better investment recommendations and the timing of 2022; however, Scott did not recall that.

**Interview Date**
Jan 12,2024

**Interview Id**
INTVW_NA_0112247178

---

**Interview Summary**
Ben Stewart shared the following on 1/16 at 2:45pm CT and again at 5pm CT (ERP Julie Sanchez had to schedule more time at 5pm as she did not get through all of her questions for Ben at 2:45pm CT) due to another meeting she had scheduled at 3:30pm CT -There was never a time where Ben didn't support a large prospective business pro Joshua wanted to onboard. Joshua had a client [redacted] who had challenges during the due diligence a process. Ben tried to help Joshua throughout the process, so is not sure why Joshua would think Ben was not supportive of Joshua. When Joshua resigned (as with any banker leaving the firm), the firm is obli o notify clients of reassignment. The firm notifying [redacted] or any of Joshua's clients did not have anything to d the investigati being conducted on Joshua or involuntary termination. [redacted] was notified on 11/15. -There were no fraudulent expe related to happy hours at Buff Bros, and Ben has not heard Keith use terminology like "she can suck a bowling ball out of a garden hose." -From what Ben can recall, Joshua began expressing concerns that John (J.T.) and Kyle did not like him around July 2023. Ben spent time trying to ensure Joshua that JT and Kyle did like him, and set up meetings with J.T., Joshua and himself where J.T. told Joshua that he is a valued member of the team. Ben had also heard Kyle tell

Joshua that as well. Joshua kept insisting that they did not Joshua never expressed concerns with comp not having enough coverage/suppor shua had more support than his peers; he had [redacted] for over 90% of his work that nobody else had. J ll Ben that he had personal problems (with his wife) around May 2023, and when Joshua did, Ben informed Joshua about firm resources (such as the Employee Assistance Program (EAP), and Leave Management). Joshua did not want to utilize the firm's resources. Ben remembers encouraging Joshua to utilize the firm's resources several times between then and the end of his employment as well. There were no other employees who expressed concerns about J.T. or Kyle to Ben. -Joshua was one to always seem to get frustrated about the firm's process of doing things, and thought it took too long. Ben is not aware of Joshua being told that he has plenty of coverage /support and should be more efficient with his time, resources, and tasks. Ben is aware that there was a customer complaint that went on Joshua's U4 in 2022, but nobody at the firm has a choice on what goes on the U4. The customer complained to the Federal Industry Regulatory Authority (FINRA) that the customer lost money based on recommendations made by Kyle and Joshua. The firm informed FINRA that upon an internal review, there was nothing wrong with what Kyle and Joshua did. Joshua had told Ben that Joshua consulted with attorneys who said that the firm can ask FINRA to expunge the language on his U4. However, Ben helped Joshua by escalating that request internally, and Ben was informed that it is not within the firm's procedures and that the firm already informed FINRA about our viewpoint on it. Ben is not aware of anyone telling Joshua to cease and desist, but Ben told Joshua that the language on the U4 does not limit Joshua and that Ben had escalated it to the appropriate parties within the firm. Ben also told Joshua that we see similar disclosures on prospective employee candidates, and that does not prevent us from hiring them. Joshua did not tell Ben that he was told that it would be expunged after 1 year. -Ben received a text from Joshua on 3/30/2023 asking why J.T. gets annoyed when people ask him for help. Ben believes Joshua was waiting for a response from J.T., and Ben spoke to Joshua to let him know that J.T. can get busy in meetings, so there may be a delay in his reply. Joshua was one who thought if he had something that needed to get approved for instance, he could walk up to the person and get it done quickly. -Ben does not remember Joshua having a mental breakdown on 5 /25/23, but does remember Joshua telling Ben that he was having problems with his spouse involving their newborn. Ben does not remember Joshua crying, but Joshua was definitely upset. Joshua texted Ben on 5/24/23 to thank him for cookies Ben gave him to cheer Joshua up. That is also when Ben provided Joshua with information about firm resources (EAP, leave management). -Joshua sent Ben a text on 8/9/23 with a picture of a building with the words Anger Management, and Joshua said something like this is fitting laugh out loud (LOL), as Joshua was taking a licensing exam. What Ben remembers happened prior to that text is that J.T. told Joshua that the Private Bank (PB) does not bank government entities. Joshua was trying to persist, and J. T. had told Ben that they will need to have a sit down with Joshua as Joshua may be promising clients something we

**Interviewed Party**
Ben Stewart Jr. (Subject)

can't do. J.T. did not tell Ben that Ben had to inform/include J.T. about anything Joshua does, but there w[illegible] this where Joshua seemed to not understand/not want to follow firm procedures. -Joshua told Ben that a senior managing director named Marcus told Joshua that if Joshua isn't getting what he wants, then Joshua should just go to Peter and Elaine who are senior managers (Peter is J.T.'s manager and Elaine is Peter's manager). Ben told Joshua that there is business protocol, and that neither Peter, Elaine, or J.T. would be happy if Joshua began to bypass Ben and J. T. on business matters. Ben explained to Joshua that Peter and Elaine expect J.T. to be in the loop on matters. Ben did not tell J.T. about what Joshua told Ben. Ben does not remember the specific date of the conversation he had with Joshua about that; it may have been in August 2023. -Ben does remember Josh texting him on Friday, 8/25 at 8:46 pm saying: "I quit and I am out." Ben asked what happened, and Josh responds with: "send me whatever form I need to fill out to quit." Ben tries to call Joshua but there is no response. Ben then texted Joshua on Saturday morning, and Joshua tells Ben that he is trying. Ben asked what is he trying, and that he will call Joshua. Joshua tells Ben that everything is fine. Ben calls Joshua around 10am because he was worried about Joshua. Joshua explains that he was meeting with J.T. and things were going well until J.T. told Joshua that it would not be good if Joshua was circumventing J.T. (going around/above him to his managers) or something of that nature. Joshua told Ben that Joshua told J.T. to stop fucking with his top producers and walked away. Joshua said J.T. had a personal vendetta and that Joshua cussed J.T. out and left. When asked by ERP Julie Sanchez whether Joshua mentioned J.T. talking about Marcus and Joshua and an insurgency, Ben stated Joshua mentioned Marcus's name to Ben, but not about an insurgency or anything of that nature. Ben does not remember what exactly Joshua told Ben about Marcus though. The following Monday, he did not know where Joshua was. Later that week, Joshua and J.T. spoke and Joshua told Ben that Joshua overreacted over the weekend. -On 9/7/23, Joshua texted Ben about meeting the next day as Joshua does not like the emotional state he is in as he doesn't think this is the right place for him. Ben responded of course they could talk, and that Ben had tried to call Joshua after reading the text but Joshua didn't answer. The situation that led to this was that a client expressed that the assigned investor may not be right for the client. When Joshua told Ben about the client's request, Ben told Joshua that honest feedback needs to be provided to the investor and Ben/Joshua needed to get Kyle Hitchcock involved because he leads the investor team. Joshua told Ben that he did not want to and that Joshua will just speak to the client. Ben gave Kyle a heads up about it, and left a message with Joshua. That night, Joshua returned Ben's call, and with slurred speech told Ben that he told the client that they can get a better looking (attractive female) banker to be assigned to the client but that the investment performance won't change. Both Kyle and Ben told Joshua that was not appropriate to ever say to a client. -Ben did reach to HRBA Stephanie Stainback to talk about Joshua's behavior as well as what Joshua had shared (personal issues). Stephanie did reach out to Joshua to remind him of firm resources as Ben had been trying to encourage Joshua to use as well. -On

App. 0200

Sunday, 9/10 at 11:30, Joshua texted Ben and asked if he could take time off and unofficially say it is paternity leave even though it is not. Ben told Joshua that he did not know if that was possible since it had been over 16 weeks after the event (birth of his child). Ben circled back to Joshua to let him know that he could not go on a paternity leave at that time, but encouraged and reiterated the firm's resources (Leave Management team). -Ben remembers that Joshua eventually does contact EAP which he tells Ben about sometime in September 2023. Joshua didn't show up to work, and called Ben later in the day to let him know that he contacted EAP. -Joshua did not share a draft of his year-end performance review to Ben with a bullet point of: "Per 9 /22/2023 Business Management Dashboard; $3.62MM risk adjusted revenue growth accounts for 21.34% of the 17-Advisor Fort Worth Single Coverage Team's overall revenue growth." Ben stated that is not an accurate statement even if Joshua had brought that up to Ben. What Joshua did tell Ben during a 1:1 meeting is that Joshua would have been a Gold performer as opposed to a Silver performer. Joshua was part of the Prism trade which recognizes employees for revenue, but not flows. Joshua had asked Ben in the past why Joshua didn't get flows, and Ben had even escalated his question. After internal review, they were informed that the firm does not give flows to any employee for the Prism trade (not just Joshua). So, during the 1:1, Joshua had made a comment to the effect of he knows he's Silver but that is because Ben could not get Joshua flow credit on Prism trade. Ben reminded Joshua that his question had been escalated and answered. There was no other discussion about compensation. -Joshua did express concerns to Ben about known increase in workload expected in Q2 2024, and did not ask for more cov[redacted]. What Joshua had asked Ben for was more of [redacted] time to support Joshua, even though Ben ha[redacted] ve another Associate partner with Joshua. -Ben did not have any advanced knowledge of a meeting Joshua wanted to schedule with Peter Chilian. Joshua told Ben that Joshua met with Peter after the meeting. Joshua did not tell Ben that Peter was running later to their meeting. -On 10/24/23, Ben tried to contact Joshua because he was being unresponsive to clients and employees. Joshua texted Ben at 12:47pm and asked to speak to J.T. and Ben at 1pm. Joshua had walked into the Client Service Center and asked to speak to JT and Ben . They all sit down at 1pm and Joshua told them that he knows they don't want him here, that he wanted them to figure out what to do, and that he knew the firm pays for employees to go away. J.T. and Ben told Joshua that they don't have anything to discuss with him that day. Joshua asked them if he should resign, and Ben said if that is what Joshua wants to do he can process that. Joshua then said he has to think about that. However, there was no discussion or comments about insubordination. -Joshua did not request in advance or tell Ben that he was taking personal days on 10/25, 10/26 or 10/27. Ben was not aware that Joshua had on his work calendar that he was going to meet with Merrill Lynch on 10 /27. Ben did call Joshua in the afternoon on 10/27 upon guidance from ERP Jonathan Jacobs to place Joshua on an administrative leave pending Jonathan's investigation which Ben was not involved in other than being Joshua's manager. Ben left Joshua a message and Joshua returned Ben's call

about 2 hours after he left the message.



**Interview Date**
Jan 16,2024

**Interview Id**
INTVW_NA_0117247372

---

[redacted] **ary**
[redacted] shared the following on 1/16 at 11:30am emembers Joshua driving them back form a client meeting. She remember not speaking much, and Joshua kept trying to dig on why. He asked her why she was being so quiet. She told him that she didn't feel like they should be working together anymore, but did not provide further details. He had said that he thought that the workplace was toxic; that he was looking for another job but wasn't sure he wanted to make any moves until bonus season. Since about August, he had told her and other employees that he thinks management was going to fire him and that people were out to get him. Joshua did not provide any details to her on why he thought that. She had not heard him complain about the workplace before August. She had told him that he should resign if he was not happy and he had been complaining for about 3 months, but he did not tell her he was going to resign that day and she didn't think he was going to at that time based on what he was saying about bonus season. She absolutely did not tell him that management or anyone coerced her into planning his exit because that is not true and nobody did. -She is a Christian and Kyle is a Christian and in a leadership position, so she considers him a mentor in that way. Kyle had asked her if she was ok and that she seemed off for about 2 months. She had not told anyone at work about what had happened, and had gone back-and-forth about whether she should. Her friend group encouraged her to do so as she shared it with them, so she finally asked Kyle to meet her at a Starbuck's and told him. Her husband was aware that she was going to report the behavior as well, so had driven her to the Starbuck's so she could tell Kyle. She then told ERP Jonathan Jacobs about the specifics of her concerns. Prior to speaking to Kyle and Jonathan, she had not shared anything she went through to any employee. -When she was new and had joined the team, Joshua had asked her how things were going. She did tell Joshua at that time that she noticed that Keith Wiley drank a lot and seemed to always want to get drinks with employees (both female and male) any chance he got. She did not tell Joshua as a concern or because she thought Keith was inappropriate; just as an observation. She did not say Keith was creepy. She did know that Joshua and Keith had some [redacted] head butting at times. For instance, Joshua asked [redacted] why she was talki [redacted] after he playe [redacted] Keith. Joshua told [redacted] that she had no loyalty and things like that. She [redacted] didn't get along. She did not have and does not think that there are concerns with Keith's behavior.

[redacted] **ty**
[redacted] (Witness)

**Interview Date**
Jan 16,2024

**Interview Id**
INTVW_NA_0116247322

---

**Interviewed Party**
Peter Chilian (Subject)

**Interview Summary**
Peter Chilian shared the following on 1/16 at 4:12pm CT - He became the South Region head last May, and it is not uncommon for bankers to set up time to meet with Peter. It is also not uncommon for Peter to try to get to know bankers as well. -His calendar is sometimes packed with meetings that can change, so if there was any delay in Peter’s assistant scheduling time it would not have been because of Joshua but rather she keeping up with Peter’s schedule. ERP Julie Sanchez makes note that her meeting with Peter was scheduled for 4pm CT, and he ran just a bit late today. -Peter stated that he did not speak to John (J.T.) or Elaine or anyone about Joshua prior to Peter speaking to Joshua. Peter was not aware of any issues related to Joshua prior to speaking to Joshua. -Peter did speak to J.T. after his meeting with Joshua, but not before. -Peter was late to his meeting with Joshua because Peter was speaking to a colleague in the office who lost his dad in a tragedy. -Peter does not believe the call with Joshua was awkward, and did not say anything on the call that was wrong or inappropriate. Peter was extending the same level of support to Joshua that he has and would to any banker.

**Interview Date**
Jan 16,2024

**Interview Id**
INTVW_NA_0116247366

---

**Interviewed Party**
Keith Wiley (Subject)

**Interview Summary**
Keith Wiley shared the following on 1/16 at 3:30pm CT -His role with the firm is in business development, so he does have drinks with colleagues, both male and female about twice a month. Sometimes, it will be at Buffalo Bros which is a restaurant near the office with Ben and John (J.T.). But, he does not have attend weekly happy hours with them or share inappropriate comments when with them. Keith has not made any comments to the effect that “she can suck a bowling ball out of a garden hose.” -He does not know what black balling Joshua means, but part of Keith’s job as a senior banker at the firm is to try to help analysts by checking in with them to see how they are doing and ensure they have resources they need. It is a way to encourage employee development and growth, and help if they are not understanding the work. He [redacted] with each analyst, and when he checked in with [redacted] in July or August 2023, she had made commen[redacted]orkload was heavy, that there was a lack of training from Joshua, and that Joshua expected her to drop everything anytime he needed something. Keith shared that with Joshua (did not use [redacted]

Ann's name but rather some analysts instead) and Joshua did not agree and said that we pay the analysts so why are they complaining.

**Interview Date**
Jan 16,2024

**Interview Id**
INTVW_NA_0116247360

---

**Interview Summary**

John (goes by J.T.) Aughinbaugh shared the following on 1/17 at 11:30am CT and at 3:30pm CT (ERP Julie scheduled additional time at 3:30pm as she had not finished asking all of the questions she planned to ask as J.T. had a hard stop at 12:30pm CT). -Joshua never told J.T. about personal problems he was having. J.T. began to notice a change in Joshua in August/September 2023 timeframe. Joshua seemed to be paranoid and acting more unprofessionally; in an erratic/intense/aggressive manner. His communication and interaction with others began to become more unprofessional and not respectful. J.T. is not aware of Joshua requesting to take a leave or absence or accommodations; however, J.T. and Ben had provided Joshua with information about the firm's resources (Employee Assistance Program EAP and Leave Management) and had over time encouraged Joshua to utilize the resources when noticing the change in Joshua's behavior. Josh [redacted] ined. -J.T. was supportive of Joshua's [redacted] t [redacted] who is the founder of a company called [redacted] J [redacted] aware of Joshua's business efforts and they did become a client. What Joshua was looking for was to go outside policy and not follow appropriate procedures. So, if Joshua considers J.T. describing why they could not do that as unsupportive, then that is unfortunate but that is what happened. The firm does notify clients of who will be the client's new contact when an employee leaves the firm. In Joshua's situation, he resigned and they did notify clients. The notification had nothing to do with the investigation or outcome (involuntary resignation), and they did not disclose to clients that Joshua was terminated. -He did not chastise Joshua, but does remember providing Joshua with constructive feedback in March 2023. There was a pre-call that Joshua came unprepared for. The call was not just between Joshua and J.T. but other employees as well. J.T. told Joshua that he needed to come prepared to meetings in order to utilize time efficiently. J.T. did not tell Joshua that the pre-call was a waste of time or not needed. J.T. coached Joshua as J.T. would any employee who came unprepared. -There is a Market Leadership Team budget that is used to enhance the firm's impact on communities. J.T. remembers at least 3 events in which Joshua received some of the budget (which is more than Joshua's peers received), but J.T. does not remember ever denying any from Joshua. J.T. does not remember anything specific to 4/2/23 and a Southlake concert). J.T. did not consider Joshua a troublemaker as a result. -Regarding the National Medal of Honor Museum, Adam Rudner had vetted Joshua's request for $1 million and when Joshua learned of Adam's decision of not pursuing,

**Interviewed Party**
John Aughinbaugh (Subject)

Joshua did not like Adam's decision. J.T. does not agree that the way in which Joshua went about it was p[illegible] Joshua tried to persist with Adam, but did not present Adam with any new information other than trying to tell Adam to change his mind. J.T. coached Joshua to come up with a business plan or provide additional information to Adam rather than just stomping his feet because he didn't get his way type of approach. -J.T. does not remember specifics about May 2023 whether Joshua wad told that he has plenty of coverage and support. However, J.T. shared that he has had that conversation with every employee at some point and likely Joshua as well. Each employee has at some point expressed being under sourced and needing more help. J.T. would tell each that there is equitable but not necessarily equal distribution of resources. He is transparent about each employee understanding that it depends on how much work they are doing and contributions each is making. Recommendations to be efficient with time and resources would not be specific to Joshua. -There was a lunch both he and Joshua attended on 8/8 with the Arlington Tomorrow Foundation. The Foundation was not asking, but Joshua wanted to pursue as a client. The firm declined his request, and Joshua wanted to persist, and basically wanted to evade the firm's controls and policies since the decision was already made. J.T. told Joshua that they would not be presenting to the Client Review Forum as a result. Joshua did not make any comments to J.T. about J.T. serving as an informal transfer agent for public company/prospectus sale and transaction, and that is not accurate regardless. J.T. did not tell Joshua that Joshua did not prepare J.T. for the meeting, and if any meeting requests for a pre-call were declined it would have been because there were already other meetings on the calendar. J.T. described how Joshua would often times send meeting requests for times that were already booked on J.T.'s calendar. Joshua did not seem to care that the times he proposed were not available; Joshua seemed to want to set up meetings at times that were convenient to him without regard to time conflicts /unavailable times that would have already appeared on J.T.'s Outlook calendar. J.T. did not view pre-calls a waste of time and did not tell Joshua to use his time more efficiently. -J.T. never told Peter or Peter's assistant to delay any request from Joshua to meet with Peter. -J.T. is not sure about exact date of 8/25/23, but he does remember having a constructive and enjoyable conversation with Joshua after hour [redacted] mbers he was wit [redacted] oshua was with [redacted] at the same place. [redacted] had left, so Josh ed and J.T. After Ben d Joshua stayed, but at no time did J.T. tell Joshua that Joshua and Marcus were planning an insurgency and/or that Joshua doesn't want to be a part of it. J.T. never alluded to or was planning an exit plan for Marcus or Joshua. What J.T. did mention to Joshua was that he saw Joshua and Marcus go to lunch, and asked what they were working on/what that was about. Joshua then began to raise his voice, became visibly upset, and told J.T. something to the effect that J.T. better stop fucking with the top producers and see what happens and best of luck to J.T. if he continues to do that. Joshua was yelling in a public place in front of people they did not know, and then Joshua stormed out. From what he said, J.T. gathered that Joshua considers himself and Marcus as top producers, but J.T. did

not understand what Joshua meant by J.T. messing with the top producers. J.T. stated that he did not tell Joshua that he should not go to Peter or Elaine or that it would not be good for Joshua to go above J.T. or anything of that nature. J.T. shared with ERP Julie Sanchez that he later became aware of Marcus telling Joshua that from a development perspective, it is sometimes good to get visibility so reaching out to senior management like Peter and Elaine is one way to do so. J.T. stated that Marcus told J.T. that. -J.T. did call Joshua to speak to him about his behavior and walking out the way he did the following week. J.T. does not remember if it was 8 /28/23, and if it was and Joshua was out-of-office, J.T. would not have known that Joshua had a scheduled day off at that time. When they spoke, J.T. did tell Joshua that he was not going to fire him because there were rumors that J. T. heard about that Joshua was telling employees that he was going to get fired. However, J.T. did not tell Joshua that :"I would have figured as a man you would have called me by now apologizing for your behavior" or that he has to come in and we need to settle this/bury this today. -J.T. never told Joshua that he does not think that a leave of absence is the right move for Joshua. J.T. had encouraged Joshua to utilize the firm resources including leaves, and he knows Ben encouraged Joshua as well. -He did not tell Joshua "What the fuck; we agreed we were going to keep the disagreement over beers between us." However, he did tell Joshua that there are rumors spreading, that J.T. had not started them, and told Joshua that if he is telling employees about him cussing and storming out or that J.T. was going to fire him, that would not be productive. He did not tell Joshua that he doesn't know what he's going to do with Joshua yet, or Joshua talking about an insurgency or toxic work environment. -J.T. did not talk to Peter about Joshua before Joshua met with Peter in October 2023. J.T. remembers Peter had given J.T. a heads up that someone on his team (Joshua) had scheduled time to speak to Peter. J.T. did have a reminder on his own calendar to follow up with Joshua after to see how it went. When asked by ERP Julie, J.T. indicated that he does not remember when exactly Peter told him but it would have been verbally and likely in passing when speaking about something else; a professional courtesy. J.T. stated that he meets with Elaine regularly, so a meeting with her on the same day had nothing to do with Joshua. He did not have any pre-calls with Peter about how to deal with Joshua, and did not tell Peter anything about Joshua prior to Joshua meeting with Peter that day. J.T. was unaware that Keith Wiley had met with Peter, so did not have a reminder on his calendar for that. If J.T. was aware, he would have also done the same (reminder in order to follow up to see how things went). -He remembers the meeting with Joshua and Ben on 10/24. Joshua did not say it was a toxic/hostile work environment or talk about his mental health. What he did say were things like: "Be a man, do I need to resign?" "Be a man, should I resign?" From J.T.' s perspective, it felt like Joshua was fishing with his questions and comments and was looking for the firm to pay him to quit and/or for them to tell him to resign. Joshua made a comment during that meeting that he is a veteran with a disability of anxiety. It was the first time J.T. heard of that, and neither he or Ben asked for more information especially in light of the attempts they had made previously

to encourage Joshua to utilize firm resources. At the time of the meeting, there was already an investigati[on] Security) underway, and perhaps Joshua sen[sed that.] However, J.T. did not become hostile or accusatory. J.T. did not tell Joshua that he has a pattern of insubordination or about Joshua's behavior. J.T. spoke as little as possible as it felt more like a trap: like Joshua trying to get them to say or do something. J.T. indicated that they were not in a position to advise him to resign or not, so did not say too much. Joshua did not say he wanted to resign but could not because of his divorce and having mouths to feed. -J.T. was not aware that Joshua took personal days off subsequent to that meeting, and did not know that Joshua had an interview /appointment with Merrill Lynch on 10/27. -J.T. has never heard Keith Wiley make comments like: "she can suck a bowling ball out of a garden hose," was not aware of Keith or anyone getting females to black ball Joshua, and J.T. does not have weekly outings to Buffalo Bros and/or expense any happy hours fraudulently.

**Interview Date**
Jan 17,2024

**Interview Id**
INTVW_NA_0117247510

---

**Interviewed Party**
Elaine Agather (Subject)

**Interview Summary**
Elaine Agather shared the following on 1/17 at 9am CT -She didn't have much interaction with Joshua. The National Medal of Honor was being built and she was on the Board. He started calling them and she tried to help him. The Commercial Bank (CB) had told Joshua that they were not ale to do what Joshua was asking; that CB could not onboard his new business opportunity. He began to plead in a demanding and persistent way. Elaine shared that her viewpoint is always that maybe we can find a way, but in this case CB could not give the line of credit he was pushing for. Other employees also do the same in the sense of trying to get business done; however, the difference with Joshua was that most other bankers know when to stop and Joshua's tone was like you have to do this. She tried to explain to him the why and tried to help him see that it was not something to continue to pursue, but she did not pressure him or the prior Market Manager; there was no pressuring on her part. -She does remember the specific prospective business prospect or specific date when Joshua met with her in 2022, but she does remember that there was issues with the client at that time that were being flagged during the due diligence process and that the lending team could not proceed when Joshua wanted them to. The process was not something she or anyone could bypass. She does not know the details of a liquidity event and/or when that client would have been notified of a replacement; however, they do let clients know when an employee is no longer at the firm and who the replacement will be. That is not specific to Joshua, but to any employee who leaves. In 2023, they would not have told the client the reason Joshua is no longer at the firm (if it was a discharge or not). -She did not know that Joshua met with Peter Chilian until after they met in October. She did have a

meeting with John (J.T.) on 10/18/23 at 2:15pm CT as Elaine looked at her Outlook calendar. However, she did not speak to Peter before he spoke to Joshua. Her Outlook calendar is accessible to any employee. She does remember that Joshua's managers were noticing behavior from him that was not typical, but she does not remember if she learned that before or after Joshua met with Peter. Again, she did not speak to Peter before Joshua met with Peter, but did after they met.

**Interview Date**
Jan 17,2024

**Interview Id**
INTVW_NA_0117247420

---

**Interviewed Party**
Evette Campbell (Witness)

**Interview Summary**
Evette Campbell shared the following on 1/18 at 9am CT - She has been Peter Chilian's executive assistant since 2017. -She has never been instructed or asked to postpone any employee requests to meet with Peter. Peter is open to meeting with any employee, and wants to be available when asked. -If there has been any delay in scheduling a meeting, it may be because of Peter's schedule. He tends to schedule back-to-back meetings, he travels at times, and he may have to attend meetings that come up last minute. She tries her best to be responsive to employee requests to meet with Peter. -John (J.T.) Aughinbaugh has never told her/asked her to postpone scheduling meetings with Joshua Biering and Peter. Nobody has ever told her/asked her that. -She does not remember whether Joshua reached out in August 2023, but does remember that he met with Peter last year. If Peter was late to their scheduled meeting time, she was not aware. She shared that if Peter was late, that is not uncommon as his meetings do run late at times and/or sometimes employees will ask to speak to him quickly between meetings.

**Interview Date**
Jan 18,2024

**Interview Id**
INTVW_NA_0118247545

---

Disposition

---

**Ben Stewart Jr.** **Disposition ID: DSPN_NA_0130241547**
**Status: SUBMITTED**

Disposition

---

**Primary Allegation**
**ALLG_NA_1208231454**
ERC is a former employee Joshua Biering who disagrees with his involuntary termination. He claims that

Subjects John Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and Kyle Hitchcock retaliated against him for voicing concerns.

| Type | Determination | Sub Determination |
|---|---|---|
| Retaliation | Not Supported | No Further Action |

**Sub Type**
Complaint/Allegation

Disposition Outcome

**Disposition Outcome**
N/A

**Is there other remediation or non-disciplinary outcome?**
No

**Date Outcome Provided to Subject**
Jan 30,2024

**Closing Summary**
On 1/24/23, ERP debriefed Subject's Manager David Frame and HRBA Stephanie Stainback regarding investigation outcome: allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute/Appeal Not Upheld. On 1/30/23, ERP debriefed ERC Joshua Biering regarding the investigation outcome.

**Executive Summary**
ERC is a former employee who disagrees with his involuntary termination that resulted from an ER investigation. ERC claims that the investigation was because he raised concerns about the workplace, and Subject retaliated against him for that. ERC provided specific examples to ER. The information ERC provided and ERC's allegations were not corroborated by witnesses or Subject. The involuntary termination was due to ERC's behavior as reported by an employee (not the Subject); such employee stated that she was not coerced by any employee to raise the concerns. The ERP who conducted the investigation that led to the involuntary termination of ERC stated that the Subject did not have influence on the investigation or outcome reached. As such, allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute /Appeal Not Upheld.

**Keith Wiley** **Disposition ID: DSPN_NA_0130241549**
**Status: SUBMITTED**

Disposition

**Additional Allegation**
**ALLG_NA_0118243350**
ERC Joshua also claims that Keith Wiley acts inappropriately and makes inappropriate comments.

| Type | Determination | Sub Determination |
|---|---|---|
| Inappropriate Conduct | Not Supported | No Further Action |

**Sub Type**

Behavioral Misconduct



Disposition Outcome

**Disposition Outcome**
N/A

**Is there other remediation or non-disciplinary outcome?**
No

**Date Outcome Provided to Subject**
Jan 30,2024

**Closing Summary**
On 1/24/23, ERP debriefed Subject's Manager David Frame and HRBA Stephanie Stainback regarding investigation outcome: allegation of Inappropriate Conduct/Behavioral Misconduct was Not Supported. Dispute/Appeal Not Upheld. On 1/30/23, ERP debriefed ERC Joshua Biering regarding the investigation outcome.

**Executive Summary**
ERC is a former employee who alleges that Subject acts and communicates in an inappropriate way. Subject denied allegation, and witnesses interviewed did not corroborate the allegation. One witness who ERC named stated that she has not had concerns about Subject's behavior (in the past or currently). As such, allegation of Inappropriate Conduct /Behavioral Misconduct was Not Supported. Dispute/Appeal Not Upheld.

**Elaine Agather** **Disposition ID: DSPN_NA_0130241551**
**Status: SUBMITTED**

Disposition

**Primary Allegation**
**ALLG_NA_1208231454**
ERC is a former employee Joshua Biering who disagrees with his involuntary termination. He claims that Subjects John Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and Kyle Hitchcock retaliated against him for voicing concerns.

| Type | Determination | Sub Determination |
|---|---|---|
| Retaliation | Not Supported | No Further Action |

**Sub Type**
Complaint/Allegation

Disposition Outcome

**Disposition Outcome**
N/A

**Is there other remediation or non-disciplinary outcome?**
No

**Date Outcome Provided to Subject**
Jan 30,2024

**Closing Summary**
On 1/24/23, ERP debriefed Subject's Manager David Frame and HRBA Stephanie Stainback regarding investigation outcome: allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute/Appeal Not Upheld. On 1/30/23, ERP debriefed ERC Joshua Biering regarding the investigation outcome.

**Executive Summary**
ERC is a former employee who disagrees with his involuntary termination that resulted from an ER investigation. ERC claims that the investigation was because he raised concerns about the workplace, and Subject retaliated against him for that. ERC provided specific examples to ER. The information ERC provided and ERC's allegations were not corroborated by witnesses or Subject. The involuntary termination was due to ERC's behavior as reported by an employee (not the Subject); such employee stated that she was not coerced by any employee to raise the concerns. The ERP who conducted the investigation that led to the involuntary termination of ERC stated that the Subject did not have influence on the investigation or outcome reached. As such, allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute /Appeal Not Upheld.

**John Aughinbaugh** **Disposition ID: DSPN_NA_0130241553**
**Status: SUBMITTED**

Disposition

**Primary Allegation**
**ALLG_NA_1208231454**
ERC is a former employee Joshua Biering who disagrees with his involuntary termination. He claims that Subjects John Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and Kyle Hitchcock retaliated against him for voicing concerns.

| **Type** | **Determination** | **Sub Determination** |
|---|---|---|
| Retaliation | Not Supported | No Further Action |

**Sub Type**
Complaint/Allegation

Disposition Outcome

**Disposition Outcome**
N/A

**Is there other remediation or non-disciplinary outcome?**
No

**Date Outcome Provided to Subject**
Jan 30,2024

**Closing Summary**
On 1/24/23, ERP debriefed Subject's Manager David Frame and HRBA Stephanie Stainback regarding investigation outcome: allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute/Appeal Not Upheld. On 1/30/23, ERP debriefed ERC Joshua Biering regarding the investigation outcome.

**Executive Summary**
ERC is a former employee who disagrees with his involuntary termination that resulted from an ER investigation. ERC claims that the investigation was because he raised concerns about the workplace, and Subject retaliated against him for that. ERC provided specific examples to ER. The information ERC provided and ERC's allegations were not corroborated by witnesses or Subject. The involuntary termination was due to ERC's behavior as reported by an employee (not the Subject); such employee stated that she was not coerced by any employee to raise the concerns. The ERP who conducted the investigation that led to the involuntary termination of ERC stated that the Subject did not have influence on the investigation or outcome reached. As such, allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute /Appeal Not Upheld.

---

**Kyle Hitchcock** **Disposition ID: DSPN_NA_0130241548**
**Status: SUBMITTED**

Disposition

**Primary Allegation**
**ALLG_NA_1208231454**
ERC is a former employee Joshua Biering who disagrees with his involuntary termination. He claims that Subjects John Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and Kyle Hitchcock retaliated against him for voicing concerns.

| Type | Determination | Sub Determination |
|---|---|---|
| Retaliation | Not Supported | No Further Action |

**Sub Type**
Complaint/Allegation

Disposition Outcome

**Disposition Outcome**
N/A

**Is there other remediation or non-disciplinary outcome?**
No

**Date Outcome Provided to Subject**
Jan 30,2024

**Closing Summary**

On 1/24/23, ERP debriefed Subject's Manager David Frame and HRBA Stephanie Stainback regarding inv outcome: allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute/Appeal Not Upheld. On 1/30/23, ERP debriefed ERC Joshua Biering regarding the investigation outcome.

**Executive Summary**

ERC is a former employee who disagrees with his involuntary termination that resulted from an ER investigation. ERC claims that the investigation was because he raised concerns about the workplace, and Subject retaliated against him for that. ERC provided specific examples to ER. The information ERC provided and ERC's allegations were not corroborated by witnesses or Subject. The involuntary termination was due to ERC's behavior as reported by an employee (not the Subject); such employee stated that she was not coerced by any employee to raise the concerns. The ERP who conducted the investigation that led to the involuntary termination of ERC stated that the Subject did not have influence on the investigation or outcome reached. As such, allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute /Appeal Not Upheld.

---

**Peter Chilian** **Disposition ID: DSPN_NA_0130241552**

**Status: SUBMITTED**

## Disposition

**Primary Allegation**
**ALLG_NA_1208231454**

ERC is a former employee Joshua Biering who disagrees with his involuntary termination. He claims that Subjects John Aughinbaugh, Ben Stewart, Elaine Agather, Peter Chilian, and Kyle Hitchcock retaliated against him for voicing concerns.

| Type | Determination | Sub Determination |
|---|---|---|
| Retaliation | Not Supported | No Further Action |

**Sub Type**
Complaint/Allegation

## Disposition Outcome

**Disposition Outcome**
N/A

**Is there other remediation or non-disciplinary outcome?**
No

**Date Outcome Provided to Subject**
Jan 30,2024

**Closing Summary**

On 1/24/23, ERP debriefed Subject's Manager David Frame and HRBA Stephanie Stainback regarding investigation outcome: allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute/Appeal Not Upheld. On 1/30/23, ERP debriefed ERC Joshua Biering regarding the investigation outcome.

**Executive Summary**

ERC is a former employee who disagrees with his involuntary termination that resulted from an ER investigation. ERC claims that the investigation was because he raised concerns about the workplace, and Subject retaliated against him for that. ERC provided specific examples to ER. The information ERC provided and ERC's allegations were not corroborated by witnesses or Subject. The involuntary termination was due to ERC's behavior as reported by an employee (not the Subject); such employee stated that she was not coerced by any employee to raise the concerns. The ERP who conducted the investigation that led to the involuntary termination of ERC stated that the Subject did not have influence on the investigation or outcome reached. As such, allegation of Retaliation: Complaint/Allegation was Not Supported. Dispute /Appeal Not Upheld.

# Case: 100034014 - Hotline Phone
HR - Americas
Employee Relations

## Case Snapshot

**Opened:** 12/02/2023 4:48 PM
**Days open:** 4
**Last modified:** 12/07/2023 2:35 PM
**Intake method:** Hotline Phone
**Status:** New
**Alert:** Green

## General Case Info

**Data privacy:**
Yes
**Case number:**
100034014
**Received/Reported date:**
12/02/2023
**Language:**
English
**Assigned tier:**
HR - Americas

### Issue

**Primary issue:**
Employee Relations

## Case Details

### Reported tier information

**Case type:**
Allegation
**Intake method:**
Hotline Phone

### Location

**Reporter's location:**
United States
**Organization/Building name:**
JPMorgan Chase Bank
**Country/Territory:**
United States

### Reporter Information

**Reporter anonymous:**
No
**Reporter first name:**
Joshua
**Reporter last name:**
Biering

**Phone number:**
912-308-5781
**Email address:**
Joshua.Biering@gmail.com
**Contact availability:**
anytime

**Case Information**

**What is your relationship to JPMorgan Chase?**
Former Employee
**SID#:**
I662283
**First Name:**
Ben
**Last Name:**
Stewart
**Title:**
executive director
**First Name:**
John
**Last Name:**
Aughinbaugh
**Title:**
managing director
**Details:**
[redacted] imball, analyst, went on a [redacted]

On October 24, Joshua had a meeting with John and Ben and voiced his concerns about the hostility and unprofessionalism transpiring on the work floor.

On October 27, Joshua received a text from Ben. Ben told Joshua to call him after he was finished with the meeting he had with a competitor. After the meeting Joshua called Ben. Ben then told Joshua that the concerning tips were brought forth and he would be placed on a Involuntary paid administrative leave and employee relations would be following up with him. The following day, Joshua submitted his resignation notice.

On December 1, Joshua was notified that he was termin [redacted] ation of code on conduct and anti-harassment poli [redacted] believes that information about him and [redacted] mutually consensual relationship was spreading, and [redacted] husband forced her to file a harassment [redacted] ua also believes that he was retaliated against by [redacted] n for voicing his concerns on October 24 because the investigation was conducted in an impartial manner.

Joshua began to file a report regarding wrongful terminated Due to Joshua terminating the call prior to the completion of intake, no additional details were gathered, and NAVEX was unable to read back the report. Joshua caller did not receive access information (report key and password) and will be unable to review or follow up on this report.

## Follow-ups

**Reporter Additional Information**
There are no additional notes for this incident.

**Questions/Comments and Reporter Responses**
There are no questions asked by the client.

## Assignments & Access

**Case assignee(s):** None
**Restricted access:** None
**Case access list:** Alimario, Aleandre; Andrade, Helen Rose; Bennett, Pamela; Bono, Marjorie; Cordero, Cotton; Cranford-Searcy, Lakeisha; De Leon, Jason; Disher, Iris; ER Mailbox, Corporate; ER, Email Notification; Gamilla, Larizza; Griffith, Michelle A; Harkless, Aquita; Marshall-Figueroa, Gloria J; Navarro, Brittany; Policarpio, Jennifer; Tumapon, Lady Rose

## Participants

| Name | Job Title | Relationship | Role | Results | Notes |
|---|---|---|---|---|---|
| Joshua Biering | None | None | Reporter | None | |

## Attachments

None

## Synopsis

### Outcome of case

### Additional details

**JPMC Reference Number:**
EC_NA_1207234613

## Case Notes

None

## Related Cases

### Cases marked as related to this case

None

# Info Contributors

None

## Case History

| Date | User | Activity |
|---|---|---|
| 12/07/2023 2:35 PM | Tumapon, Lady Rose | Downloaded Case |
| 12/07/2023 2:35 PM | Tumapon, Lady Rose | Edited Field - Synopsis - JPMC Reference Number |
| 12/07/2023 2:28 PM | Tumapon, Lady Rose | Viewed Case |

| | | |
|---|---|---|
| 12/05/2023 8:12 AM | Alimario, Aleandre | Viewed Case |
| 12/05/2023 5:02 AM | [System] | Notification - Unreviewed Cases Reminder Notification - to Harkless, Aquita (Aquita.M.Harkless@chase.com); Bennett, Pamela (pamela.j.bennett@chase.com); ER, Email Notification (er.partnersupport.americas@jpmchase.com); Navarro, Brittany (BRITTANY.M.NAVARRO@JPMORGAN.COM); Cranford-Searcy, Lakeisha (LAKEISHA.R.CRANFORD-SEARCY@JPMCHASE.COM); Disher, Iris (iris.disher@chase.com); Alimario, Aleandre (ANDRE.ALIMARIO@JPMORGAN.COM); Cordero, Cotton (cotton.candy.cordero@chase.com); Bono, Marjorie (marjorie.s.bono@jpmorgan.com); Policarpio, Jennifer (jennifer.s.policarpio@jpmorgan.com); Griffith, Michelle A (michelle.a.griffith@jpmchase.com); Tumapon, Lady Rose (ladyrose.b.tumapon@chase.com); Andrade, Helen Rose (helenrose.f.andrade@jpmchase.com); De Leon, Jason (CHASE.DELEON@JPMORGAN.COM); Gamilla, Larizza (lerry.gamilla@chase.com); Marshall-Figueroa, Gloria J (gloria.j.marshall-figueroa@chase.com) |
| 12/02/2023 4:48 PM | [System] | Notification - New hotline case - to Harkless, Aquita (Aquita.M.Harkless@chase.com); Bennett, Pamela (pamela.j.bennett@chase.com); ER, Email Notification (er.partnersupport.americas@jpmchase.com); Navarro, Brittany (BRITTANY.M.NAVARRO@JPMORGAN.COM); Cranford-Searcy, Lakeisha (LAKEISHA.R.CRANFORD-SEARCY@JPMCHASE.COM); Disher, Iris (iris.disher@chase.com); Alimario, Aleandre (ANDRE.ALIMARIO@JPMORGAN.COM); Cordero, Cotton (cotton.candy.cordero@chase.com); Bono, Marjorie (marjorie.s.bono@jpmorgan.com); Policarpio, Jennifer (jennifer.s.policarpio@jpmorgan.com); Griffith, Michelle A (michelle.a.griffith@jpmchase.com); Tumapon, Lady Rose (ladyrose.b.tumapon@chase.com); Andrade, Helen Rose (helenrose.f.andrade@jpmchase.com); De Leon, Jason (CHASE.DELEON@JPMORGAN.COM); Gamilla, Larizza (lerry.gamilla@chase.com); Marshall-Figueroa, Gloria J (gloria.j.marshall-figueroa@chase.com) |
| 12/02/2023 4:42 PM | [Reporter] | Submitted Case |

## Summary

I was always proud to work at JPMorgan and wish I could have made a career at JPMorgan. Following 7 previous years of stellar performance reviews, zero written reprimands or notices, overwhelmingly positive stakeholder and peer feedback, the last 12 months became unsustainable due to the hostile and toxic working conditions that I endured for several months before resigning- which I strongly believe any reasonable person would have resigned if they were experiencing the similar toxic work conditions and retaliation I faced, outlined further.

**The purpose of this report is to outline the many examples where I was unfairly treated, rebuked, which collectively, created a hostile and toxic work environment for me. I feel and know, and peers/management would agree, I'm a known anxious individual who is incredibly focused on delivering results and upholding high standards. I should not be penalized for this, particularly when these characteristics are highlighted as positive employee attributes in "How We Do Business Principles."**[1]

I refer to "Leadership" collectively as:

- J.T. Aughinbaugh, Managing Director, Fort Worth Market Manager
- Kyle Hitchcock, Managing Director, Fort Worth Head of Investments and Advice
- Ben Stewart, Executive Director, Fort Worth Market Team Lead

## Background

I worked for JPMorgan from May 2016 until December 1, 2023. I discussed my resignation with management, Ben Stewart, and J.T. Aughinbaugh on Tuesday, 10/24/2023 at approximately 2:30pm CST, regarding my dissatisfaction in the workplace and overall concerns. I took personal days 10/25, 10/26 and 10/27.

I discussed my plan to submit my resignation with several employees (documented via multiple text messages and happy to share upon request). After dropping [redacted] (alleged Complainant for a peculiar investigation raised considering my desire to resign) off at the office at 10:30am CST on 10/24/2023, we agreed the workplace was "toxic" and I shared with [redacted] I planned to resign.

Following an email I sent to Kyle Hitchcock, the Fort Worth Market Head of Investments and Advice, on 10/23/2023, disappointed in the lack of support and follow up email he sent to my client, I requested a meeting to discuss in person with Hitchcock at 11:30am CST on 10/24/2023. In tears, I shared with Kyle my frustration with the political office landscape and my

[1] JPMorgan "How We Do Business" Principles; https://www.jpmorganchase.com/about/our-business/business-principles

overall troubles I had with management and lack of support/resources. I shared with Kyle I was planning to resign and meet with J.T. and Ben Stewart that afternoon.

I had a scheduled meeting with competitor, Merrill Lynch, on Friday 10/27 at 3:00pm CST, which was a private calendar event on my work calendar.[2]




I received a text message from my manager, Ben Stewart, at 2:35pm CST, asking I call him at the office as soon as possible. I called him following my interview and was told "effective immediately, you are being placed on involuntary, paid administrative leave. This is all the information I can share at this time."

As I had planned to do for several months, I submitted my formal resignation via me@jpmc and via email to my leadership Saturday morning, 10/28/2023. [3]

**33 days after I submitted my Voluntary Resignation, Aughinbaugh and Stewart terminated me on 12/1/2023 for violation of the JPMorgan Conduct and anti-harassment**

[2] Josh's work calendar events on 10/27/2023
[3] Voluntary resignation submission and email

**policies**[4]. They did not tell me any background or supporting evidence. This confirmed their intention to mark a "discharge" on my FormU5, which is common knowledge in the industry, that reputable firms will not hire a well-qualified candidate with a "discharged" FormU5.

Chase De Leon, JPMorgan Employee Relations Intake Team, sent me a follow up email on Tuesday, 12/26/2023, requesting more information pertaining to some of my answers I submitted in my JPMorgan Chase Exit Survey. [5]

Question: *In your Exit Survey response, you have shared that you have been consistently humiliated and retaliated against by the above newly appointed manager for protected activities. Please provide more details about your concerns*

*What were the protected activities involved and please also provide the date/time, and what happened in the incident/s of retaliation.*

**Relevant Legal Code and Regulations**

- **Title I of the Americans with disabilities Act (ADA)** protect veterans from employment discrimination.
    - Title 1 of the ADA is enforced by the U.S. Equal Employment Opportunity Commission (EEOC), prohibits private and state and local government employers with 15 or more employees from discriminating against individuals on the basis of disability.
    - Any veteran with a disability who meets the ADA's definition is covered, regardless of whether the disability is service connected.
    - The ADA defines an "individual with a disability" as a person who **(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.**
- **National Labor Relations Board ("NLRB")**:
    - The National Labor Relations Act ("NLRA"), which is enforced by the NLRB, ensures the right of private-sector workers to organize, to bargain collectively, and to otherwise engage in concerted activities, with or without union representation, in an effort to **improve their pay and working conditions.**
    - Reference, "NLRB General Counsel Issues Memo on Non-competes Violating the National Labor Relations Act" on 5/30/2023[6]- "the memo explains that **overbroad non-compete agreements** are unlawful because they chill employees from exercising their rights under Section 7 of the National Labor Relations Act,

[4] Voicemail Recording- Termination Call- 12/1/2023
[5] Email from Employee Relations 12/26/2023

[6] https://www.nlrb.gov/news-outreach/news-story/nlrb-general-counsel-issues-memo-on-non-competes-violating-the-national

which protects employee's rights to **improve their working conditions**. Specifically, protect an employee's rights to 1. Concertedly threaten to resign to secure better working conditions….
    - "You have the right to act with coworkers to address work-related issues in many ways…. Your employer cannot discharge, discipline, or threat you for or coercively question you about, this "**protected concerted**" activity."[7]

- What are Prohibited and Unlawful Employment Activities?
  - Unfair treatment because of disability
  - Harassment by managers, co-workers, or others in your workplace, because of disability
    - The harasser can be your manager, a manager in another area, a co-worker, or others in your workplace, such as clients or customers.
    - For inappropriate behavior to rise to the level of illegal harassment, it must be unwelcome or unwanted. It must also be severe or pervasive (meaning that it happened frequently).
  - Retaliation because you complained about job discrimination or assisted with a job discrimination proceeding, such as an investigation or lawsuit.
    - The laws protect you whether you are complaining about discrimination directed at you or discrimination directed at others. These laws also protect you from being punished, treated differently, or harassed at work because you help someone else report job discrimination. [8]
  - Retaliation for protected concerted activities as protected by the NLRA
  - Heightened scrutiny or backlash

## Facts

- I am a 100% Service- Connected Disabled Veteran
  - My redacted Disability Letter and Rating was issued by the Department of Veteran Affairs on July 26, 2016, for my military service from May 2011 to May 2016.[9]
  - Page 10 of my VA Disability Letter outlines the applicable disability "attention deficit hyperactivity disorder, combined and unspecified anxiety disorder (also claimed as anxiety, insomnia, post-traumatic stress).
  - These disabilities are based on: Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform

[7] https://www.nlrb.gov/about-nlrb/rights-we-protect/whats-law
[8] Texas Workforce Commission- https://www.twc.texas.gov/programs/civil-rights/employment-discrimination#:~:text=What%20Is%20Prohibited%3F,older)%2C%20or%20genetic%20information.
[9] Biering VA Disability Letter;Redacted_7/26/2016

occupational tasks **<u>only during periods of significant stress</u>**, suspiciousness, anxiety, chronic sleep impairment, panic attacks more than once a week.

- JPMorgan Aware of my Disability
    - My Veteran and Disability Status was reported to JPMorgan during my intake and employment onboarding paperwork circa Summer 2016
    - 8-years of service with the firm- commonly understood that I am a high performer but can often exude and portray heightened periods of anxiety, particularly during times of significant stress.
    - Common knowledge, and confirmed by management, that I did not use the parking garage at work to save on the monthly parking costs, approximately $170/month. Instead, I parked on the street at parking meters for free since I had "Disabled Veteran" license plates- which the city offers free metered parking.

**<u>Timeline, Events and Examples</u>**

- **<u>1/26/2022</u>**- U4 Complaint- Customer Dispute- Denied by JPMorgan
    - The customer submitted written complaint, alleging unsuitable mutual fund investment, JPMorgan determined recommendation was suitable and denied complaint.
    - U4 disclosure was only required for, Kyle Hitchcock, but I **<u>volunteered</u>** to take the U4 disclosure as well as show of good faith/teamwork. JPMorgan Counsel, Supervisory Management and Market Manager promised to support expungement of disclosure in the following 12 months.
- **<u>4/4/2022</u>**- Kyle Hitchcock openly criticizes and ridicules me in front of office, in front of junior peers. I speak with Market Manager because Complainant felt the ridicule was not warranted. [10]
    - *Established contentious relationship with Kyle, when he eventually was appointed Head of Investments for Fort Worth branch/office* on 6/30/2022
- **<u>8/28/2022</u>**- My son was born. I took 4 days off, did not take extended paternity leave, due to large prospective business opportunity.
    - Initial element of "unjust enrichment"; I was on the phone with Elaine Agather and Kyle Hitchcock, pleading for the opportunity to onboard this group of clients due to the upside. Also pleading for a private stock loan. I used all my political capital for this client, the same client that JPMorgan sends the "bus" to protect the back door on 11/28/2023, and says I've been discharged.[11]
- **<u>10/1/2022</u>**- Former Market Manager, takes administrative leave for health concerns- no further information provided or shared, office morale low with uncertainty and direction.
- **<u>11/7/2022</u>**- Appointment with Psychiatrist (Dr. Marvin) regarding Work Stress and explores medication management.

---

[10] Text message with David Nolet, discuss Kyle's actions
[11] Text message with Dr. Mauricio [redacted]

- **12/1/2022**- Fort Worth Market Manager resigned.
    - Recently learned on 11/6/2023, Market Manager took FMLA to seek federal protection given toxic environment and retaliation from Region Head- "EBA"
- **o/a 1/5/2023**- J.T. Aughinbaugh appointed as Fort Worth Market Manager
- **o/a 1/15/2023**- I raised concern to management that our 'metrics' did not accurately account for a $50 million prepaid variable forward and penalized scorecards.
    - My concern was disregarded and viewed as non-material.
    - Fort Worth leadership firmly told me that the only credit that matters is "Revenue Growth" which was recognized. I countered stating that leadership looks to (per all scorecards) Revenue Growth, Investment Banking and Credit Flows, as well as New Client Points.
- **1/24/2023**- My mental health appointment with Psychiatrist (Dr. Marvin) regarding Work Stress that continues to build.
- **2/1/2023**- My effective promotion date to Executive Director
    - Promotion decision made by leadership for prior years continued performance and discussed during October 2022 talent review.
- **3/7/2023**- I request Market Manager support to pursue large prospective client opportunity- [redacted]
    - I request 30-minute pre-call to discuss opportunity. Complainant chastised by Market Manager for "wasting [Market Manager's] time" with a pre-call
    - Following the meeting- Market Manager criticizes me for not preparing or briefing Market Manager on the opportunity.
- **3/14/2023**- I finally receives response from JPMorgan Counsel after following up on 1/21/2023, 1/27/2023, 2/21/2023, 3/14/2023 and 3/20/2023.
    - **5/1/2023**- Supervisory Management directs me to HR. HR emails me back, confirming "the process of expunging your U4 does not place you at risk."
    - **5/10/2023**- Supervisory Manager, Kimberly Burns, and Market Manager, J.T., firmly instruct Complainant to "cease and desist" pursuit to expunge U4. I expresses frustration with new management and breach of trust to supervisor, Ben Stewart.
- **3/30/2023**- I text direct manager/supervisor (Ben Stewart) "Why is J.T. so annoyed anytime I try and ask him for help?" Ben does not respond.
- **4/2/2023**- I request Market support for returning sponsorships that JPMorgan supported for 4+ years in a row. Request consideration for Sponsorship for event that ties directly to new business opportunity (Southlake VIP concert for [redacted] Team); Market Manager denies, views me as troublemaker…again.
    - Sponsorship dollars redirected to fund Business "40 under 40" submissions for Ben Stewart and Belen Garren
- **4/11/2023**- Market Manager criticizes me for email to Commercial Bank, Non-Profit Group Head. Adam Rudner, regarding new business opportunity. I disagree and thinks the communication to be professional.

  - National Medal of Honor Museum opportunity- Region Head, Elaine Agather, pressures Complainant and prior Market Manager for not pursuing loan opportunity.
- **5/4/2023**- Raising support/analyst coverage concerns to Brooke Reeb, co-Analyst Manager
  - Response from leadership is that the Complainant has plenty of coverage/support and should be more efficient with time, resources, and tasks.
- **5/25/2023**- I had first mental breakdown in the office. In conference room with Ben Stewart, in tears, raising concerns and elevated stress level/toxic work environment. I take Personal Day and Ben and [redacted] sends Tiff Treats cookies. Expressed dissatisfaction and discomfort in the workplace- driven by new leadership.
- **6/22/2023**- I show Supervisor LinkedIn message from Texas Capital Recruiter regarding $750k compensation. Supervisor acknowledges that I am a highly sought after Banker that is actively recruited.
- **7/31/2023**- Mid-Year Review with Supervisor/Manager, Ben Stewart
  - Praised for strong business results and pipeline.
  - I raised concerns and requested assistance with transitioning clients to Advisors with more capacity, more support resources, scorecard corrections, sponsorships, and compensation expectations.
- **8/8/2023**- Market Manager and I get into a disagreement regarding prospective client ($100 million Endowment, quasi-government entity)
  - Market Manager, yet again, claims I did not prepare Market Manager for meeting. I sent multiple calendar invitations for a pre-call which were declined. Market Manager viewed as a waste of time.
  - Market Manager denies me the opportunity to seek guidance from the Private Bank's Client Review Forum to determine if we can pursue this opportunity. Escalated, heated discussion over the phone and in the office.
  - I plead with Market Manager that the request to present a new business opportunity to the Client Review Forum is significantly less risky than his decision to serve as an informal transfer agent for public company/prospectus sale and transaction. Market Manager, J.T., gets super defensive and argumentative as he knows this transaction breached several SEC and compliance issues.
  - I text Ben Stewart, "this is exhausting" referencing the work environment, politics and toxicity.
- **8/9/2023**- I texts Manager requesting a 1:1 meeting, frustrated with work environment and culture.
- **8/10/2023**- I have a Therapy Session with Counselor through Spring Health, EAP. Concerned with management style and dissatisfaction in the workplace. Reference Therapist notes.
  - **8/10/2023**- My appointment with Psychiatrist, Dr. Marvin. Specifically struggling and stated "butting heads with new Market Manager."
- **8/23/2023- I grab lunch with Senior Managing Director, Marcus, asking for advice on how to navigate the new leadership. Struggling to connect and unhappy.**

  - **Share with Marcus if this continues, I have no choice to leave to another firm as I have been considering for several months. Marcus supportive- wants me to be happy.**
- **8/24/2023**- Follow up 1:1 with Ben Stewart. No resolution on issues/concerns raised before.
  - Shared with Ben Stewart the guidance Marcus shared- establish close relationship directly with Pete and Elaine (South Region Heads aka J.T.'s boss)
  - Stewart shares this information with J.T., despite me asking to keep it confidential.
  - I reach out to Pete Chillian's assistant to schedule meeting(s). She drags her feet, at the request of J.T. to postpone scheduling any meeting with me.
- **8/25/2023**- Market Manager and I have a meaningful disagreement over several beers (6+ each). Following accusation that Complainant and Marcus were planning an "insurgency."
  - **8/27/2023**- I immediately call Ben Stewart and shares what happened. Continues to express frustration with toxic work environment and leadership. **Market Manager, J.T., suggests there is an insurgency and that "you do not want to be part of it" suggesting they have an "exit plan" for Marcus. Following multiple accusations, I walk out saying "f*** you, keep treating people like this, you are going to lose your top produces."**
  - **8/28/2023**- I take day off for son's birthday. Market Manager calls me stating "I would have figured as a man you would have called me by now apologizing for your behavior. I want you to come in and we need to settle this today. Don't worry, I'm not going to terminate you or anything, but we need to bury this." Market Manager ensures this will not be escalated to HR or senior leadership- "handling locally."
- **9/5/2023**- I keep hearing rumors that I'm allegedly overworking my Analyst partners. Requests feedback from Analyst managers on what I should do better/differently. They do not provide any feedback.
- **9/7/2023**- I text Ben Stewart, "Can we please connect tomorrow? I don't like the emotional state I'm in. We need to figure something out. Despite me being in my own head. I can't help but think conversations are behind had behind the scenes and I don't like it. I don't know if this is the right place for me."
  - **9/7/2023**- Complainant texts confidant and co-Analyst Manager, Will Brawley, "Bro. I don't know if JPM is the right place for me. This sh** is driving me crazy. I think I'm going to put my notice in tomorrow."
  - **9/8/2023**- Manager coordinates HR call (Stephanie Stainbeck) with me to discuss leave options and Employee Assistance Program resources- despite my specific request that I did not want to engage HR at this time. HR/EAP representative share information on FMLA/ short term medical leave. Complainant told expectation **would be not to contact Clients**- I'm uneasy given business pipeline/opportunities leading into 2024 metric year.

- **9/10/2023**- I request different solutions and accommodations for leave to manage any negative 'optics' on a leave of absence while incubating new business opportunities. Proposed **solution denied by Manager, Ben Stewart**.
- **9/13/2023**- I have an additional Therapy Session with Counselor through Spring Health, EAP. Dissatisfaction in the workplace continues and "conspiring thoughts" are getting worst. Reference Therapist notes.
- **9/14/2023**- I follow up with Human Resources representative to explore Employee Assistance Program options. HR connects me with local, Dallas, Employee Assistance Program representative- John Tuttle.
  - **John Tuttle oddly keeps pressuring me to take FMLA or medical leave which raised my suspicions further that JPMorgan trying to squeeze me out on established client relationships.** I share this feedback with Ben Stewart that I got an eerie feeling following the call.
- **9/26/2023**- Market Manager, J.T., asks me to meet for drinks at Railhead BBQ.
  - Market Manager shares he did not think that FMLA or a short-term leave of absence is the right move for me- no further information on why.
- **9/28/2023**- Follow up 1:1 with Manager. No resolution on issues/concerns raised before.
  - Specifically discussed compensation expectations and work performance/recognition relative to underperformers.
  - Shared draft of the 2023-year end performance review. Manager specifically did not like the bullet point "Per 9/22/2023 Business Management Dashboard; $3.62MM risk adjusted revenue growth accounts for 21.34% of the 17-Advisor Fort Worth Single Coverage Team's overall revenue growth." The manager claimed that bullet point, although factual, did not promote or foster the team approach and culture.
- **10/6/2023-** I reengaged HR contact to discuss FMLA options. Workplace continues to be unmanageable and toxicity increasing and concerns unaddressed.
- **10/10/2023**- I expressed concerns, again, to Manager regarding coverage and support for the known increase in workload expected in Q2 2024. Requested redundancy coverage and support. Ben Stewart and I entered into a heated verbal disagreement.
  - **I'm, fighting back tears, ends on "I'm not sure JPMorgan is the right culture or home for me anymore. I need to do some serious introspective thinking on where I belong."**
- **10/17/2023**- I have another emotional breakdown in Market Manager's office after Market Manager rebukes Complainant.
  - Market Manager accuses me, again, "What the f***, we agreed we were going to keep the disagreement over beers between us, but now rumors are spreading. I don't know what I'm going to do yet with you, but this is not good for you."
  - I ensure Market Manager that he is not inciting an insurgency, "all I have been doing is keeping my head down, working on what I can and not ruffling feathers. I've been

walking on eggshells. I want to work here, but this environment is becoming way too toxic, and I am officially "combat ineffective".

- **10/18/2023**- I have a scheduled meeting with South Region Head, Pete Chillian
  - Recommended by Marcus Mainord, and agreed upon by Ben Stewart, that I should meet with Pete Chillian for a 1:1 in advance of talent review season (mid to late October typically)
  - Note- J.T. had a reminder on his calendar for when Complainant planned to meet with Pete. This is not common. Specifically reference Keith Wiley's (my peer) shared calendar. Keith had 1:1 with Pete the week prior and J.T. did not track his meeting.
  - **2:15pm CST – 3:15pm CST**- J.T. and Elaine Agather (Pete Chillian's predecessor/manager) have 1:1 scheduled in Fort Worth office
  - **1:00pm CST**- Complainant calls manager, Ben Stewart, to discuss upcoming 1:1 with Pete.
  - **3:00pm CST**- Original meeting scheduled with Pete and Complainant in Pete's office in Dallas. Pete has "last minute meetings" pop up and pushes time of meeting to 3:15pm CST (to strategize with J.T. and Elaine on Complainant's exit)
  - **3:22pm CST-** Ben Stewart finally returns Complainant's call, and surprised Complainant answered. Ben caught off guard and Complainant shared that Pete was still "in his meeting" and was running late.
  - 1:1 with Pete was very awkward and brief. Very confident Pete was trouble following his meeting, which I presume to be a pre call with J.T. and Elaine, on how to 'deal with Josh'
- **10/23/2023**- The United States JPMorgan Private Bank Town Hall
  - Complainant recognized as overall "Gold" performer across the United States
  - CEO then recognized Advisers who achieved "Gold" in each metric category: Revenue, AUM Flows, and New Client Points. Complainant frustrated and disappointed since Management failed to address and correct the metrics pertaining to the prepaid variable forward. **Not about Revenue, driven and motivated by proper recognition across the Firm**
- **10/24/2024**- Complainant confides in Analyst partner that the work toxicity and work politics are becoming unmanageable and unsustainable. Shared with Analyst partner/confidant that I am requesting a meeting with leadership to resign most likely.
- **10/25/2023**- Complainant requests private meeting with Market Manager and Manager
  - Complainant requests amicable resolution to part ways given the unsustainable and toxic work environment that has taken a toll on mental health. Complainant also states that he is paranoid about closed door conversations being had on strategies to terminate Complainant while protecting from potential lost business and revenue.
  - Market Manager becomes hostile and accusatory- states that Complainant has exuded a pattern of insubordination and behaviors that do not align with the Company

culture. Complainant asks for specific examples on how to improve but Market Manager does not share any examples.
  - Complainant distinctly expresses desire to resign but cannot since going through a contested divorce and "I still have mouths to feed. So what do we do?" Market Manager responds, "Business as usual."

- **10/27/2023**-
  - 8:30am CST- Complainant emails Manager regarding Personal Day
  - 2:35pm CST- Manager texts Complainant to "call me at the office as soon as possible"
  - 3:00pm CST- Complainant meets with Merrill Lynch regarding new employment. Meeting is on Complainant's calendar as a "private" meeting.
  - 4:36pm CST- Complainant calls Manager following meeting with Merrill Lynch Market Executive and new, prospective business partner. Manager states, "effective immediately, you are being placed on an involuntary, paid administrative leave without access to client or JPMorgan systems until further notice." No additional explanation or detail was provided, nor was a tentative timeline provided.
- **10/28/2023**- Complainant submits formal resignation to JPMorgan, initiating 'clock' for 60 day Garden Leave, estimated to expire 12/26/2023.
- **11/1/2023**- Complainant Counsel connects with JPMorgan Counsel via phone call. JPMorgan Counsel communicates two internal investigations initiated regarding Harassment and Expense Policy violation.
- **11/7/2023**- JPMorgan Investigator/ Employee Relations, Jonathan Jacobs, and a separate Global Securities representative, interview Complainant regarding alleged Harassment complaint.
- **11/15/2023**- Separate JPMorgan Investigator, Nadia Muraira, interviews Complainant regarding two expense reports that were submitted and approved by JPMorgan. JPMorgan randomly selected the two expense reports for a bespoke and targeted audit- no others included to Complainant's knowledge.
  - **11/17/2023**- I email Nadi Muraira, at her request, the highlights and SOPs pertaining to expense report submissions. I also highlight the suspicious nature and impetus of the decision to 'audit' and single out my approved/submitted expense reports.
  - **11/20/2023**- I tried calling Nadia, as we agreed to reconnect on Monday (11/20)- but her number was no longer active/in service. **Very suspect, since I shared specific examples of leadership violating policies**.
- **11/28/2023-** I emailed Jonathan Jacobs (Employee Relations) and Rachel Tidwell-Neal (JPM Counsel) for an update on investigation- no response
  - **11/29/2023**- Requested another update from Jonathan
  - **11/29/2023-** JPMorgan sends new advisors to the large client/prospects I won for the Bank [redacted] Prior to the meeting, the prospect asks "why was I canned?!"

- **11/29/2023-** Jonathan Jacobs responds saying the investigation and findings are confidential and he cannot share the results. He hopes "something would be communicated within the next week"
- 11/29/2023- I email employee.records@chase.com and my local Leadership team, requesting my personnel file, and Terms/Conditions of my Notice Period, which I requested on several occasions, but was ignored by ask HR contacts, JPM Employee Relations contacts, and JPM Counsel
- **12/1/2023**- J.T. Aughinbaugh and Ben Stewart call me at 11am CST and share "effective today, 12/1/2023, you have been terminated following an internal investigation that concluded you violated the Firm's Code of Conduct Policy and anti-harassment policies…" No further information shared.
- **12/7/2023**- I called the Code of Conduct Report Line and reported harassment and retaliation.
    - **12/26/2023**- First time I hear back regarding this report; only after repeated emails I sent to Jena Cohen, USPB Head of HR, as well as the response to my Exit Survey
- **12/21/2023**- I'm not proud about this, but I texted J.T. Aughinbaugh and Ben Stewart "you all are malicious, Cruel. And you will be seeing me again. And you are cowards for not responding like men. Stakeholders and constituents will realize this very quickly."
- **12/22/2023**- Form U5 filed by JPMorgan (JPM waited until the very last day to file)
    - Despite multiple requests with JPM Counsel, and multiple letters sent insisting the U5 be marked correctly with a "voluntary discharge" on 12/6/2023, 12/12/2023, 12/13/2023, 12/19/2023 and 12/20/2023.

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 11:03:40 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Seeing that the Exit Survey case that I was assigned to is a duplicate to an existing one, it would be advisable to send it to Ms. Cohen to ensure we have only one case being reviewed.

I shall note the Exit Survey case as a duplicate and associate it to the existing one that is currently being reviewed so as to avoid confusion among the relevant partners handling the case. Please feel free to reply to this email should you have questions on the Exit Survey. Thank you for your partnership and happy holidays!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:56 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

no not yet, i will send it to you both.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:54 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Thank you for confirming. May I know if the details in the follow up response have been shared to Ms. Jena Cohen?

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:51 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

They are connected, but my follow up response is going to be incredibly detailed, with more examples and instances since my initial report to the employee relations hotline was cut short. I will also be including legal code, exhibits and examples.

I will hope to have this submitted in the next few hours.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:49 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Since you mentioned that you are currently working with one of our HR Business advisors, may I confirm if the allegation of retaliation shared in the Exit Survey is related to the Conduct Hotline Report you have sent regarding the wrongful termination allegation previously raised to HR? The reason I asked is to determine whether the Exit Survey may need to be associated to the existing case that is currently being looked into in response to the Code Hotline Report opened

in 12/07/23. The latter is currently being reviewed and if the Exit Survey has the same concerns, it would help to just have one ongoing investigation on the matter.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:42 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

I would prefer not

Regards,

JB

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:40:36 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

Thank you for your response. I do see that Ms. Cohen is an HR Business Advisor and I do see an open case on the Subject of the exit survey. May I call you on your mobile number ending in 5781 so I can confirm if the open case is related to the exit survey response? This will take less than 5 minutes. Thank you!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:36 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** [EXTERNAL]Re: Follow Up

Chase- thank you for following up.

I am in the process of typing out a very long and detailed response. I appreciate your patience.

I'm not sure the relevance of this information, but I also have been in active dialogue with Jena Cohen. Should I include her as well on these communications>

Many thanks,

Josh

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:34 AM
**To:** josh.biering@gmail.com <josh.biering@gmail.com>
**Subject:** RE: Follow Up

Hello Joshua,

Good day! I wish to follow up on the email below to obtain additional information in order to refer your case to the appropriate group within Employee Relations. Please respond to this email and provide a brief description of the incident/s that took place by answering the question below. Thank you!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** De Leon, Chase (HR, PHL)
**Sent:** Tuesday, December 26, 2023 12:43 PM
**To:** josh.biering@gmail.com
**Subject:** Follow Up

Hello Joshua,

My name is Chase De Leon and I am from the JP Morgan Chase Employee Relations Intake Team. I received your Exit Survey response for an initial assessment regarding the allegations of retaliation by the newly appointed manager, J.T. Aughinbaugh . I am reaching out to obtain additional information so we can route your inquiry to the appropriate group within Employee Relations.

Please do respond to this email and provide a brief description of the incident/s that took place by answering the questions below.

*1. In your Exit Survey response, you have shared that you have been consistently humiliated and retaliated against by the above newly appointed manager for protected activities. Please provide more details about your concerns*
*– What were the protected activities involved and please also provide the date/time, and what happened in the incident/s of retaliation.*

Once I receive your detailed response, the case will be assigned to an ER partner who will lead the investigation and communicate with you moving forward. Thank you for your partnership.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of

electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 11:55 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I have tried to call you on your mobile number ending in 5781, however, my call was routed to voice mail. I have left a voice mail as well to advise that I have associated your Exit Survey case to the existing case that is being reviewed. I'll be glad to help in any way I can. May I know if you have questions about the Exit Survey case that I can assist with?

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 12:46 PM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

Can you call me

Regards,

JB

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 11:03:40 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Seeing that the Exit Survey case that I was assigned to is a duplicate to an existing one, it would be advisable to send it to Ms. Cohen to ensure we have only one case being reviewed.

I shall note the Exit Survey case as a duplicate and associate it to the existing one that is currently being reviewed so as to avoid confusion among the relevant partners handling the case. Please feel free to reply to this email should you have questions on the Exit Survey. Thank you for your partnership and happy holidays!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:56 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

no not yet, i will send it to you both.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:54 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Thank you for confirming. May I know if the details in the follow up response have been shared to Ms. Jena Cohen?

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:51 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

They are connected, but my follow up response is going to be incredibly detailed, with more examples and instances since my initial report to the employee relations hotline was cut short. I will also be including legal code, exhibits and examples.

I will hope to have this submitted in the next few hours.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:49 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Since you mentioned that you are currently working with one of our HR Business advisors, may I confirm if the allegation of retaliation shared in the Exit Survey is related to the Conduct Hotline Report you have sent regarding the wrongful termination allegation previously raised to HR? The reason I asked is to determine whether the Exit Survey may need to be associated to the existing case that is currently being looked into in response to the Code Hotline Report opened in 12/07/23. The latter is currently being reviewed and if the Exit Survey has the same concerns, it would help to just have one ongoing investigation on the matter.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**
- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:42 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

I would prefer not

Regards,

JB

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:40:36 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

Thank you for your response. I do see that Ms. Cohen is an HR Business Advisor and I do see an open case on the Subject of the exit survey. May I call you on your mobile number ending in 5781 so I can confirm if the open case is related to the exit survey response? This will take less than 5 minutes. Thank you!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**
- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:36 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** [EXTERNAL]Re: Follow Up

Chase- thank you for following up.

I am in the process of typing out a very long and detailed response. I appreciate your patience.

I'm not sure the relevance of this information, but I also have been in active dialogue with Jena Cohen. Should I include her as well on these communications>

Many thanks,

Josh

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:34 AM
**To:** josh.biering@gmail.com <josh.biering@gmail.com>
**Subject:** RE: Follow Up

Hello Joshua,

Good day! I wish to follow up on the email below to obtain additional information in order to refer your case to the appropriate group within Employee Relations. Please respond to this email and provide a brief description of the incident/s that took place by answering the question below. Thank you!

Warm Regards,

**Chase De Leon** **|** Employee Relations **|** Human Resources | JPMorgan Chase **|** JPMorgan Chase & Co Tower **|** Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** **I** **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** De Leon, Chase (HR, PHL)
**Sent:** Tuesday, December 26, 2023 12:43 PM
**To:** josh.biering@gmail.com
**Subject:** Follow Up

Hello Joshua,

My name is Chase De Leon and I am from the JP Morgan Chase Employee Relations Intake Team. I received your Exit Survey response for an initial assessment regarding the allegations of retaliation by the newly appointed manager, J.T. Aughinbaugh . I am reaching out to obtain additional information so we can route your inquiry to the appropriate group within Employee Relations.

Please do respond to this email and provide a brief description of the incident/s that took place by answering the questions below.

*1. In your Exit Survey response, you have shared that you have been consistently humiliated and retaliated against by the above newly appointed manager for protected activities. Please provide more details about your concerns*
*– What were the protected activities involved and please also provide the date/time, and what happened in the incident/s of retaliation.*

Once I receive your detailed response, the case will be assigned to an ER partner who will lead the investigation and communicate with you moving forward. Thank you for your partnership.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

**From:** josh.biering@gmail.com
**To:** iacuone@roggedunngroup.com; Tidwell-Neal, Rachel L (Legal, USA); Cohen, Jena B (WM, USA)
**Cc:** Aughinbaugh, John T (WM, USA); Agather, Elaine (WM, USA); Chilian, Peter C (WM, USA); Hitchcock, Kyle E (WM, USA); Stewart, Ben (WM, USA)
**Subject:** Re: [EXTERNAL]Re: Biering/JPMS - Friday Docs
**Date:** Thursday, December 21, 2023 8:46:56 PM

---

+ all of the guilty parties.

Exhibit A will be the series of events in which my 1:1 with Pete Chilian (recorded) was rescheduled so he could game plan with JT/Ben/Elaine prior to my in person meeting.

I will not fall victim to this.

Regards,

JB

---

**From:** Josh Biering
**Sent:** Thursday, December 21, 2023 6:06:04 PM
**To:** Cohen, Jena B ; Josh Iacuone ; Tidwell-Neal, Rachel L
**Subject:** Re: [EXTERNAL]Re: Biering/JPMS - Friday Docs

It has been relayed.

You all have profited off a person who has nothing else to lose. And you all knew that. YOU KNEW. I trusted you.

I gave my literal heart, soul, blood, sweat and TEARS to this company as documented by my 14% revenue growth vs a down market of 6%. I asked for resources. NOTHING.

I asked for HELP! NOTHING!!!

I didn't take paternity leave. I was on a phone call with Dave Frame the morning of my child's birth to PLEAD with him to onboard my large prospect. The same prospect JT, Ben and Kyle did not support. The same prospect YOU ALL KNEW had a big liquidity event in 2024. The same prospect that the JPMorgan bus of "replacements" went to visit at their office 24 HOURS before the alleged "close out of the investigation and findings" to then terminate me? After you checked the box that the metaphorical "back door" is protected?!

You give a former market manager 1 year severance and he signs an NDA after 3 sexual harrasment claims. But I- do the right thing- escalate concerns to management- multiple times- try to leave- try to take FMLA- try to request REASONABLE accommodations.

I didn't care about the money. I didn't care about sticking around until January for my EARNED incentive compensation because it was that TOXIC. This will all come out in my well documented library.

You don't think [redacted] told me the morning of the 10/24 that management COERCED her into planning m [redacted] all documented. It's all going to come out. That KEITH WILEY tried to coerce females into black balling me? The same KEITH WILEY that uses terminology

like "she can suck a bowling ball out of a garden hose?!" When he shares that with JT over beers during their weekly Buff Bros happy hours that are fraudently expensed?

You do not get to claim you all are this place of diversity and inclusion that promotes "being your genuine true self." How self fulfilling.

I came to you all- in confidence- as a "trusted" source and leadership conveying my problems both personally and professionally since January 2023. You all ignored them. You brushed them under the rug.

I requested FMLA leave on TWO OCCASIONS. I AM A DOCUMENTED 100% SERVICE CONNECTED DISABLED veteran due to PTSD/stress/anxiety and you all ORCHESTRATED my demise. ON A MONTH YOU ALL CLAIMED TO BE MENTAL HEALTH AWARENESS MONTH.

This is cruel. I hoped I would not have to disclose the materials I had because I was incorrectly hopeful that JPMorgan was an organization that stood for the right values and integrity.

How I was very wrong. Clients will see this. Stakeholders will see this. You facilitated this.

Regards,

JB

---

**From:** Cohen, Jena B
**Sent:** Thursday, December 21, 2023 5:48:26 PM
**To:** Josh Biering ; Josh Iacuone ; Tidwell-Neal, Rachel L
**Subject:** RE: [EXTERNAL]Re: Biering/JPMS - Friday Docs

Josh, please connect with your counsel - he has been in dialogue with Rachel. I'm not sure if that's not being cascaded, she has relayed amended language.

---

**From:** Josh Biering <josh.biering@gmail.com>
**Date:** Thursday, Dec 21, 2023 at 6:39 PM
**To:** Josh Iacuone <iacuone@roggedunngroup.com>, Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Cc:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** [EXTERNAL]Re: Biering/JPMS - Friday Docs

This is 100% a planned and strategic move. This is MALICIOUS and CRUEL.

Cannot wait to have my recorded phone calls with magegemt. and documented meetings/ text messages presented in a forum that is not incorrigible.

Regards,

JB

---

**From:** Josh Biering
**Sent:** Thursday, December 21, 2023 3:31:52 AM
**To:** Josh Iacuone ; Tidwell-Neal, Rachel L
**Cc:** Cohen, Jena B
**Subject:** Re: Biering/JPMS - Friday Docs

Anxiously standing by.

Regards,

JB

---

**From:** Josh Biering
**Sent:** Tuesday, December 19, 2023 4:57:21 PM
**To:** Josh Iacuone ; Tidwell-Neal, Rachel L
**Cc:** Cohen, Jena B
**Subject:** Re: Biering/JPMS - Friday Docs

I just checked my FinPro and got off the phone with FINRA- they have not received any disclosures or reports yet.

They also were kind enough to remind me that FINRA's operating schedule is closed Monday, December 25th and closes early on Friday, December 29th at 1pm CST.

The contact I spoke with informed me that any filings must be filed before 5pm CST on Tuesday, 12/26 for licenses, disclosures, forms, etc and they reopen this department on Tuesday, Jan 2nd.

I think JPM is aware of this window and also the time it takes to interview and diligence prospective employers... as well as transfer licenses assuming it is not marked in a defamatory or false manner... This leaves me without an income through December and the Holidays- which I find to be a little unethical and cruel... and arguably, contradicts the JPM Code of Conduct and How "we" do Business.

---

**From:** Josh Iacuone
**Sent:** Tuesday, December 19, 2023 12:25 PM
**To:** Tidwell-Neal, Rachel L
**Cc:** 'Josh Biering' ; Cohen, Jena B
**Subject:** RE: Biering/JPMS - Friday Docs

Rachel:

Did I miss something? Did you intend to respond to my 2 letters re: U5 and appropriate marking?

Joshua J. Iacuone
**Rogge Dunn Group P.C.**
500 N. Akard, Ste. 1900
Dallas, Texas 75201
DD: 214-239-2763
Cell: 214-274-8393

---

**From:** Josh Iacuone
**Sent:** Tuesday, December 19, 2023 8:26 AM
**To:** Tidwell-Neal, Rachel L
**Cc:** 'Josh Biering' ; Cohen, Jena B
**Subject:** Biering/JPMS - Friday Docs

Rachel:

Attached is all I received, which is the Notice Period Policy.

I didn't get a response to my letters re: U5 correct marking.

Joshua J. Iacuone
**Rogge Dunn Group, P.C.**
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
Fax: 214-220-3833
Tel: 214-888-5000
DD: 214-239-2763
Cell: 214-274-8393

BOARD CERTIFIED
Texas Board of Legal Specialization
LABOR AND EMPLOYMENT LAW

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

# U.S. Senator Ted Cruz
## United States Senator • Texas
## Standard Information and Privacy Act Form

The Privacy Act requires your written consent before a government agency will release information to our office. Please complete this form and return it as indicated below. ***A brief letter outlining the nature of your problem is required. An inquiry cannot be submitted without it.*** Please be as specific as possible. Please also attach any relevant correspondence* that you have initiated or received concerning your problem. Submit your completed form and any pertinent attachments to:

U.S. Senator Ted Cruz
961 J.J. Pickle Federal Building
300 E. 8th Street
Austin, Texas 78701
Fax: 512-916-5839
casework@cruz.senate.gov

*Because of security measures, mail is now irradiated, which can damage sensitive items such as cassette tapes, videos, CD's and DVD's. Fax, e-mail (must be less than 5MB ) and web form are the quickest ways to forward your information.

---

**Name: Mr. / Mrs. / Ms. / Other** (please specify): Mr. Joshua Biering

**Address** 3900 Bent Elm Ln

**City/State/Zip** Ft. Worth Texas, 76109

**Preferred Phone:** 682-218-6738 **Other Phone:** 912-308-5781

**Email:** josh.biering@gmail.com

**Social Security Number** [redacted] **Date of Birth** [redacted]

**Federal Agency Involved** [redacted] FTC/D[redacted]

**Requested Benefits** Immediate relief/injunction form US

***Please complete sections applicable to your case:***

**Veterans Claim Number** ____________ **Military ID/ Branch** ____________

**Medicare Provider PTAN, NPI, TAX ID, CSA/CSF#:** ____________

**Other (If IRS, please indicate tax year (s) and form):** ____________

**Have you requested assistance from any other elected official?** ☐ **YES or** ☒ **NO**

**If yes, which office(s)?** ____________

**Did you receive a final response?** ☐ **YES or** ☒ **NO**

*Pursuant to the Privacy Act of 1974 (5 U.S.C. § 552a), I hereby authorize appropriate governmental agencies to release information about me and relevant to this inquiry to U.S. Senator Ted Cruz. For IRS inquiries, I give permission to the IRS/TAS to communicate with me and Senator Cruz's staff. I understand that by requesting assistance of Senator Cruz and his staff I am obligated to provide true and correct information regarding my situation. Failure to disclose all information or any deliberate attempt to mislead Senator Cruz or his staff may result in the discontinuance of assistance.*

Josh Biering 12/25/2023

*(Signature)* *(Date)*

Joshua David Sappi Biering
3900 Bent Elm Lane
Fort Worth, Texas 76109

December 25, 2023

The Honorable Ted Cruz
961 J.J. Pickle Federal Building
300 E. 8th Street
Austin, Texas 78701

Dear Senator Cruz:

My name is Josh Biering and I reside at 3900 Bent Elm Ln, Fort Worth, Texas 76109. I am a West Point graduate (class of 2011) and a 100% Service-Connected Disabled Veteran due to my military service from 2011 to 2016, in which I was deployed to Afghanistan as a Combat Engineer- Route Clearance Platoon Leader in 2012 in support of Operation Enduring Freedom. I was humbly awarded the Bronze Star Medal for my service. I come from a family of West Point graduates and thankful to fight for and live in the great state of Texas and the United States. I share this information with you to reiterate my lifelong commitment to service and to fight **for what is right- no matter the cost.**

Following my military service, I was honorably discharged with the rank of Captain (O-3) and joined JPMorgan Chase through their Veteran Hiring initiative and programs in 2016. I am very grateful that the private sector facilitates pathways programs, particularly for Veterans, who as you are aware, have certain obstacles to surmount to make a successful transition. Similarly, to you, this is a cause I am also personally passionate about and am an active advocate for the Veteran Community through my Board of Director memberships for the [redacted] North Texas organization and the West Point Society of North Texas. I have always done my best to serve honorably with the utmost integrity, to set an example for future Veterans with a desire to successfully transition into Corporate America.

I am writing to you with a sense of hope and angst that your team could help me in a true **David vs. Goliath** story. Following a very stressful 12 months at the JPMorgan Private Bank in Fort Worth, I tried resigning on multiple occasions in hopes of finding greener pastures that was a better overall situation for me personally and professionally, but most importantly, better for my clients and your constituents. The culture became unbearable for a variety of reasons, but ultimately, I submitted my resignation and was subject to a *mandatory(?)* 60-day Garden Leave. About 33 days into my Garden Leave, JPMorgan terminated me for a violation in which I had zero opportunity to review the facts or findings- a tactic I fear is common in the banking industry to try and prevent clients from leaving the firm (i.e. revenue) even if following their advisor is in the best interest of the client- not the large bank. In what I originally hoped to be an amicable departure when I approached my management for reprieve on October 24, 2023, I was met with a malicious plot deployed to toss me aside while protecting the $5million+ of revenue that I bled, sweat, and consistently delivered to the Firm that was so quick to admonish me.

All I know is that I no longer had an income going into the Holiday Season and that my health insurance that my family and I relied on would stop. Particularly as my former Employers knew how much I was relying on my health insurance for my mental health treatment as my treatments were also tied to my service-connected disabilities. Furthermore, of the utmost importance to me for the time being,

is **how can I fight through the red tape** to ensure I exercise my rights and due process to continue my livelihood and employment.

Under the currently policies and landscape- large banks and financial institutions like JP Morgan (i.e. Goliath) have the wherewithal and resources to withstand any potential claims against constituents/advisors (i.e. David) as they have what I deem to be unlimited resources in terms of money and time. **Unfortunately, I have neither.** Despite my consistent pleas to JPMorgan, they knowingly marked my Form U5 (document required for departing advisors that is made publicly available) in a defamatory and malicious manner, that they knew would hinder any future prospective employers within the industry. I am not sure how much fight or willpower I have left in me. I mistakenly trusted leadership with my concerns on multiple occasions, only to be met with backlash and closed-door politicking on how to structure my exit, toss me to the side, but retain the fruits of my labor that I went above and beyond to deliver.

**I am deeply concerned and pray that your Office can help me navigate this situation before it is too late** and I become another constituent lost in the sea of red tape, fending off a slew of policies and regulations between the behemoth of JPMorgan and the uncertainties and inconsistencies of arbitration via the Financial Industry Regulation Authority (FINRA). It is confirmed and well understood amongst the Banks and Financial Institutions (i.e. my future Employers) that hiring an Advisor with **any** marks on their Form U5 is not worth the **potential** scrutiny inquiries from FINRA despite the rationale and narrative of the departure. Guilty until proven innocent is unfortunately the established precedent- something that directly conflicts with the foundation of the U.S. Constitution. Whenever behemoths of JPMorgan, and private self-regulatory organization such as, FINRA, operate without checks and balances, their relative recourse is a slap on the wrist while the livelihood and reputation of an undeserving constituent, veteran, father, son is undoubtedly tarnished and undoubtedly stacked against the greatest of odds.

As you can see- this is rather problematic as there are incredible amounts of inconsistencies, particularly for at-will employment and employed states such as Texas. **I would like to request any assistance your o[redacted]articularly as the FTC and Department of Labor partner to protect Workers [redacted] unfair and deceptive practices**- an initiative I am incredibly passionate about, now more than ever. I reviewed the FTC's September 21, 2023, press release regarding this issue and am very optimistic on how that initiative will serve as an agent of ethical progress.

I appreciate your help and ask that you please send me a response letting me know the best approach and plan of action for this matter. I am accessible 24/7 and more than happy to travel and meet in person at your earliest convenience.

Thank you for your time and considering my request.

Sincerely,

Joshua D. S. Biering

Joshua D. S. Biering

Email: josh.biering@gmail.com
Mobile: (682)-218-6738
Address: 3900 Bent Elm Ln, Fort Worth, TX 76109

**From:** Sanchez, Julie (HR, USA)
**To:** Josh Biering
**Subject:** RE: [EXTERNAL]Re: Your concerns
**Date:** Thursday, January 11, 2024 8:25:00 PM

---

Joshua,
I have had the chance to review the attachments you sent to me, and do not need to call you again as the information you provided answers the questions I had asked you when we spoke a couple of days ago. Thank you for sending the details.

I will look into the concerns you raised, and will circle back to you soon.

Best regards,
Julie

**Julie Sanchez** | Employee Relations | Human Resources | Julie.sanchez@jpmchase.com
For HR help and resources, visit **me@jpmc**

---

**From:** Sanchez, Julie (HR, USA)
**Sent:** Thursday, January 11, 2024 8:52 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Your concerns

As you requested, I am confirming receipt of this email and the one you sent with several attachments (the date stamp on that email is 6:22pm which is 1 minute before the one you sent below).

As mentioned in my email yesterday (below), I will email you after I have had the chance to read through the attachments in your email.

Best regards,
Julie

**Julie Sanchez** | Employee Relations | Human Resources | Julie.sanchez@jpmchase.com
For HR help and resources, visit **me@jpmc**

---

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, January 10, 2024 6:23 PM
**To:** Sanchez, Julie (HR, USA) <julie.sanchez@jpmchase.com>
**Subject:** Re: [EXTERNAL]Re: Your concerns

I just sent you an email with attachments- and I appreciate your "email of record" below.

Can you please confirm receipt of the email with several attachments as I have had trouble sending out attachments when the files are too large.

Many thanks,

Josh

---

**From:** Sanchez, Julie <julie.sanchez@jpmchase.com>
**Sent:** Wednesday, January 10, 2024 6:12 PM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Your concerns

Joshua,
As follow up to our call yesterday, you had mentioned that you had written a detailed timeline and would email it to me. You also requested to reschedule our conversation to another day, that you would like the call to be recorded and/or have a 3rd person join, and that you wanted to speak to your attorney to discuss how you wanted to proceed. I let you know that I do not record my calls, that I do not consent to being recorded, and that I do not typically receive requests to have a 3rd person join.

You and I also spoke about me calling you tomorrow (Thursday, 1/11) at 7:30am CT. At this point, I have not received the timeline from you and do not know if you have had time to speak to your attorney about next steps. As such, I will not call you tomorrow; however, please email me the timeline and after I have had a chance to read through that I will email you to reschedule.

Best regards,
Julie

**Julie Sanchez** | Employee Relations | Human Resources | Julie.sanchez@jpmchase.com
For HR help and resources, visit **me@jpmc**

---

**From:** Sanchez, Julie (HR, USA)
**Sent:** Tuesday, January 09, 2024 4:28 PM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Your concerns

Great; I can call you right now.

**Julie Sanchez** | Employee Relations | Human Resources | Julie.sanchez@jpmchase.com
For HR help and resources, visit **me@jpmc**

---

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Tuesday, January 09, 2024 4:08 PM
**To:** Sanchez, Julie (HR, USA) <julie.sanchez@jpmchase.com>
**Subject:** Re: [EXTERNAL]Re: Your concerns

yes, I am.

---

**From:** Sanchez, Julie <julie.sanchez@jpmchase.com>
**Sent:** Tuesday, January 9, 2024 3:48 PM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Your concerns

I am available at 4:30CT this afternoon; does that work?

**Julie Sanchez** | Employee Relations | Human Resources | Julie.sanchez@jpmchase.com
For HR help and resources, visit **me@jpmc**

---

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Tuesday, January 09, 2024 3:01 PM
**To:** Sanchez, Julie (HR, USA) <julie.sanchez@jpmchase.com>
**Subject:** [EXTERNAL]Re: Your concerns

Thank you for reaching out. Are you available at 4:15pm CST?

Regards,

JB

---

**From:** Sanchez, Julie <julie.sanchez@jpmchase.com>
**Sent:** Tuesday, January 9, 2024 1:52:55 PM
**To:** josh.biering@gmail.com <josh.biering@gmail.com>
**Subject:** Your concerns

Joshua,
I work on the Employee Relations team at JPMorgan Chase. I am contacting you regarding concerns you have raised.

Please let me know which day(s)/time(s) work best for you to speak. I tried to call you at the number we have on file (912-308-5781); however, I was unable to reach you.

Best regards,
Julie Sanchez

**Julie Sanchez** | Employee Relations | Human Resources | Julie.sanchez@jpmchase.com
For HR help and resources, visit **me@jpmc**

This message is confidential and subject to terms at:

https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or le entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at:
https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at:
https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

Voluntary Termination

# Joshua Biering

SID **I662283**

Reason **Dissatisfied with Work Conditions**

Effective **26-Dec-2023**

Your resignation was processed. You will receive an email from jpmcesm@servicenow.jpmchase.com with a link to tools and next steps for leaving the company.

If you did not initiate this change (directly or by request), please speak with your manager.

## Termination Details

| | |
|---|---|
| Legal Employer | JPMorgan Chase Bank, National Association |
| Notification Date | 2023-10-28 |
| Termination Date | 2023-12-26 |
| Last Day Worked | 2023-10-26 |
| Post JPMC Employment Plans | Unknown |
| Notice Period | Exceeds by 0 days |

### Approvers

28-Oct-2023 10:39 AM

Approved by **Workflow System**

28-Oct-2023 10:39 AM

Submitted by **Joshua Biering**

## Josh Biering Resignation

Josh Biering <josh.biering@gmail.com>
Sat 10/28/2023 9:45 AM
To:John.T.Aughinbaugh@jpmorgan.com <John.T.Aughinbaugh@jpmorgan.com>;ben.stewart@jpmorgan.com <ben.stewart@jpmorgan.com>;kyle.e.hitchcock@jpmorgan.com <kyle.e.hitchcock@jpmorgan.com>
Cc:Peter.C.Chilian@jpmorgan.com <Peter.C.Chilian@jpmorgan.com>;Elaine.Agather@jpmorgan.com <Elaine.Agather@jpmorgan.com>

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

# Integrated Case Manager

Exported Date: 03/06/2024, 17:24:45

Item Id: EC_NA_1207234632

**Workflow Status**
Closed Alert

**Date Open**
12/07/2023, 20:12:18

**Investigation Owner**
Cordero, Cody C

**Assigned Date**
12/08/2023, 12:07:49

**Created By**
NAVEX

**Subject**
Aughinbaugh,John(V034411)

**Tags**
[RETALIATION, MANAGING DIRECTOR, DISPUTE /APPEALS]

## Item Details

**Workgroup**
ER Intake & Triage

**Type**
Retaliation

**Subtype**
Complaint/Allegation

**LOB**
ASSET & WEALTH MANAGEMENT

**Sub-LOB**
GLOBAL PRIVATE BANK

**Legal Entity**
0802 JPMORGAN CHASE BANK, N. A.

**Country**
US

**Region**
NA

## Incident Information

**Incident Date**

**Incident Location**
US

**Incident Description**
In Septem [redacted] nd voiced his concerns about the hostility and unprofessionalism transpiring on the work floor. On October 27, Joshua received a text from Ben. Ben told Joshua to call him after he was finished with the meeting he had with a competitor. After the meeting Joshua called Ben. Ben then told Joshua that the concerning tips were brought forth and he would be placed on a Involuntary paid administrative leave and employee relations would be following up with him. The following day, Joshua submitted his resignation notice. On December 1, Joshua was notified that he was terminated for violation of code on conduct and anti-harassme [redacted] oshua believes that information about him and [redacted] tually consensual relationship was spreading [redacted] s husband forced her to file a harassment report. [redacted] believes that he was retaliated against by Ben and John for voicing his concerns on October 24 because the investigation was conducted in an impartial manner. Joshua began to file a report regarding wrongful

**Aware of Incident Date**

terminated Due to Joshua terminating the call prior to the completion of intake, no additional details w[illegible] and NAVEX was unable to read back the report. Joshua caller did not receive access information (report key and password) and will be unable to review or follow up on this report.

**Is a Customer Involved?**

Referring & Submitting Party Information

---

**Referring Party**
Joshua Biering

**Anonymous Request**
N

**Referral ID & Source**
100034014 NAVEX

**Referral Channel**
NAVEX

**Submitting Party**

**Submitting Party Phone Number**

**Alternate**
912-308-5781

Notes

---

**Recent Notes**

12/11/2023, 13:04:40 Updated by Cranford-Searcy, Lakeisha R

original -12/11/2023, 13:04:40

MANAGER REVIEW: Alert/Alert Assessment not selected for Random 50% QC sample for 12/11/2023. No QC form will be completed in Webstats.

12/08/2023, 20:53:42 Updated by Cordero, Cody C

original -12/08/2023, 20:53:42

Justification Reason: Duplicate, Justification comments: ICM EC_NA_1207234613

12/08/2023, 20:53:00 Updated by Cordero, Cody C

original -12/08/2023, 20:50:24

MANAGER REVIEW Conduct Intake Analyst submitted the Intake Assessment Summary to the Intake manager/Team Lead requesting review and approval.

12/08/2023, 20:52:54 Updated by Cordero, Cody C

original -12/08/2023, 20:49:59

INTAKE STATEMENT Closing this alert as a duplicate of ICM EC_NA_1207234613 which was manually created from the same code hotline report 100034014 Subject EE: J.T. T Aughinbaugh Role: Managing Director Job level: 605 LOB: AWM

12/08/2023, 20:41:45 Updated by Cordero, Cody C

original -12/08/2023, 20:41:45



Referral ID & Source 100034014 NAVEX Referral Channel NAVEX

12/07/2023, 20:12:18 Updated by NAVEX

original -12/07/2023, 20:12:18

CaseNote = Primary Issue Type:Employee Relations Date Submitted = Org Name = JPMorgan Chase Bank Date Opened = 2023-12-02T13:48:02 EthicsPoint Case ID = 7279693 Participant[0]: Participant First Name = Joshua Participant Last Name = Biering Participant Role = Reporter Intake Question[0]: Question Text = SID#: Answer Provided = I662283 Intake Question[1]: Question Text = What is your relationship to JPMorgan Chase? Answer Provided = Former Employee Intake Question[2]: Question Text = First Name Answer Provided = Ben Intake Question[3]: Question Text = Last Name Answer Provided = Stewart Intake Question[4]: Question Text = Title Answer Provided = executive director Intake Question[5]: Question Text = First Name Answer Provided = John Intake Question[6]: Question Text = Last Name Answer Provided = Aughinbaugh Intake Question[7]: Question Text = Title Answer Provided = managing director

## Tags

[RETALIATION, MANAGING DIRECTOR, DISPUTE/APPEALS]

## Related Subject Alerts & Cases

**John Aughinbaugh (V034411) (E)**

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1117222114 - 2022-11-17 - CaseClosed (Yu, Wai / W606906)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

**Joshua Biering (I662283) (E)**

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

**Peter Chilian (U359832) (E)**

EC_NA_1026230376 - 2023-10-26 - DispositionInProcess (Decarlo, Vito A / N718221)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1226237894 - 2023-12-26 - Close (De Leon, Chase / W064058)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_0802231020 - 2023-08-02 - Close (Alimario, Andre / N083227)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1129222807 - 2022-11-29 - CaseClosed (Yu, Wai / W606906)

EC_NA_1026220208 - 2022-10-26 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0718221254 - 2022-07-18 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Jonathan Jacobs (D639971) (E)**

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0718239275 - 2023-07-18 - CaseClosed (Goldblum, Andrea / O777050)

EC_NA_0710238429 - 2023-07-10 - CaseClosed (Fleming, Shannon / E929809)

**Stephanie Stainback (U729056) (E)**

EC_NA_0301244710 - 2024-03-01 - AlertAssessment (Cordero, Cody C / O077029)

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1206234513 - 2023-12-06 - CaseClosed (Watkins, Shannon HR / W587416)

EC_NA_1205234222 - 2023-12-05 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_1111232122 - 2023-11-11 - CaseClosed (Lovelady, Pamela / I753067)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0928236929 - 2023-09-28 - CaseClosed (Yu, Wai / W606906)

EC_NA_0913235248 - 2023-09-13 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0817232513 - 2023-08-17 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0810231854 - 2023-08-10 - CaseClosed (Halterman, Ryan / E920608)

EC_NA_0804231265 - 2023-08-04 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0804231249 - 2023-08-04 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0327232987 - 2023-03-27 - CaseClosed (Grinshteyn, Eleonora / N728035)

EC_NA_0323232726 - 2023-03-23 - CaseClosed (Bentsen, Jennifer R / E058304)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0214239284 - 2023-02-14 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_0211239066 - 2023-02-11 - CaseClosed (Sanchez, Julie / V689725)

EC_NA_0120237023 - 2023-01-20 - CaseClosed (Ellington, Patricia G / I513174)

EC_NA_1103221016 - 2022-11-03 - Close (Bono, Jorj S / O403268)

EC_NA_1027220458 - 2022-10-27 - CaseClosed (Toppins, Allen / E709469)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

EC_NA_0824224631 - 2022-08-24 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_0607227980 - 2022-06-07 - CaseClosed (Coleman, Marilyn / Z106661)

EC_NA_0428224615 - 2022-04-28 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0408221875 - 2022-04-08 - CaseClosed (Vogel, David R / V627039)

EC_NA_0216227763 - 2022-02-16 - CaseClosed (Elias, Jose / Z210401)

EC_NA_0125226096 - 2022-01-25 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_0118225602 - 2022-01-18 - CaseClosed (Ayala, Neoma M / R681177)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1112211426 - 2021-11-12 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Ben Stewart Jr. (N682989) (E)**

EC_NA_0125240727 - 2024-01-25 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

EC_NA_0630229920 - 2022-06-30 - CaseClosed (Cadyma-Renard, Zadina / W599216)

## Associated Work Item

| **Item ID** | **Relationship** | **Type** | **Subtype** | **Status** | **Owner** |
|---|---|---|---|---|---|
| EC_NA_1207234613 | Parent | Retaliation | Complaint /Allegation | Case Reopened - Pending Approval | Sanchez, Julie /V689725 |

## Facilities

No data in Facilities

## Attachments

| **File Name** | **File Description** | **File Size** | **Date Added** |
|---|---|---|---|
| case_100034014.pdf | Code Hotline report | 0.106 | 12/08/2023 |

## Related Parties

| Name | Party Type | SID | Association | ECI | Related Party Id |
|---|---|---|---|---|---|
| John Aughinbaugh | Employee | V034411 | Subject (Primary) | | PRTY_REL_NA_1208239791 |
| Joshua Biering | Employee | I662283 | Employee Raising Complaint | | PRTY_REL_NA_1208239792 |
| Peter Chilian | Employee | U359832 | Subject Manager | | PRTY_REL_NA_1208239793 |
| Jonathan Jacobs | Employee | D639971 | Relevant Partner | | PRTY_REL_NA_1208239794 |
| Stephanie Stainback | Employee | U729056 | HR Business Advisor | | PRTY_REL_NA_1208239795 |
| Ben Stewart Jr. | Employee | N682989 | Subject | | PRTY_REL_NA_1208239796 |

## Financials

No data in financials

# Case: 100034014 - Hotline Phone
## HR - Americas
## Employee Relations

## Case Snapshot

**Opened:** 12/02/2023 4:48 PM
**Days open:** 4
**Last modified:** 12/07/2023 2:35 PM
**Intake method:** Hotline Phone
**Status:** New
**Alert:** Green

## General Case Info

**Data privacy:**
Yes
**Case number:**
100034014
**Received/Reported date:**
12/02/2023
**Language:**
English
**Assigned tier:**
HR - Americas

### Issue

**Primary issue:**
Employee Relations

## Case Details

### Reported tier information

**Case type:**
Allegation
**Intake method:**
Hotline Phone

### Location

**Reporter's location:**
United States
**Organization/Building name:**
JPMorgan Chase Bank
**Country/Territory:**
United States

### Reporter Information

**Reporter anonymous:**
No
**Reporter first name:**
Joshua
**Reporter last name:**
Biering

**Phone number:**
912-308-5781
**Email address:**
Joshua.Biering@gmail.com
**Contact availability:**
anytime

---

### Case Information

**What is your relationship to JPMorgan Chase?**
Former Employee
**SID#:**
I662283
**First Name:**
Ben
**Last Name:**
Stewart
**Title:**
executive director
**First Name:**
John
**Last Name:**
Aughinbaugh
**Title:**
managing director
**Details:**
[redacted] imball, analyst, went on a [redacted]

On October 24, Joshua had a meeting with John and Ben and voiced his concerns about the hostility and unprofessionalism transpiring on the work floor.

On October 27, Joshua received a text from Ben. Ben told Joshua to call him after he was finished with the meeting he had with a competitor. After the meeting Joshua called Ben. Ben then told Joshua that the concerning tips were brought forth and he would be placed on a Involuntary paid administrative leave and employee relations would be following up with him. The following day, Joshua submitted his resignation notice.

On December 1, Joshua was notified that he was termin [redacted] ation of code on conduct and anti-harassment poli [redacted] believes that information about him and [redacted] mutually consensual relationship was spreading, and [redacted] husband forced her to file a harassment [redacted] ua also believes that he was retaliated against by [redacted] n for voicing his concerns on October 24 because the investigation was conducted in an impartial manner.

Joshua began to file a report regarding wrongful terminated Due to Joshua terminating the call prior to the completion of intake, no additional details were gathered, and NAVEX was unable to read back the report. Joshua caller did not receive access information (report key and password) and will be unable to review or follow up on this report.

---

## Follow-ups

### Reporter Additional Information

There are no additional notes for this incident.

### Questions/Comments and Reporter Responses

There are no questions asked by the client.

---

## Assignments & Access

**Case assignee(s):** None
**Restricted access:** None
**Case access list:** Alimario, Aleandre; Andrade, Helen Rose; Bennett, Pamela; Bono, Marjorie; Cordero, Cotton; Cranford-Searcy, Lakeisha; De Leon, Jason; Disher, Iris; ER Mailbox, Corporate; ER, Email Notification; Gamilla, Larizza; Griffith, Michelle A; Harkless, Aquita; Marshall-Figueroa, Gloria J; Navarro, Brittany; Policarpio, Jennifer; Tumapon, Lady Rose

## Participants

| Name | Job Title | Relationship | Role | Results | Notes |
|---|---|---|---|---|---|
| Joshua Biering | None | None | Reporter | None | |

## Attachments

None

## Synopsis

### Outcome of case

### Additional details

**JPMC Reference Number:**
EC_NA_1207234613

## Case Notes

None

## Related Cases

### Cases marked as related to this case

None

# Info Contributors

None

## Case History

| Date | User | Activity |
|---|---|---|
| 12/07/2023 2:35 PM | Tumapon, Lady Rose | Downloaded Case |
| 12/07/2023 2:35 PM | Tumapon, Lady Rose | Edited Field - Synopsis - JPMC Reference Number |
| 12/07/2023 2:28 PM | Tumapon, Lady Rose | Viewed Case |

| | | |
|---|---|---|
| 12/05/2023 8:12 AM | Alimario, Aleandre | Viewed Case |
| 12/05/2023 5:02 AM | [System] | Notification - Unreviewed Cases Reminder Notification - to Harkless, Aquita (Aquita.M.Harkless@chase.com); Bennett, Pamela (pamela.j.bennett@chase.com); ER, Email Notification (er.partnersupport.americas@jpmchase.com); Navarro, Brittany (BRITTANY.M.NAVARRO@JPMORGAN.COM); Cranford-Searcy, Lakeisha (LAKEISHA.R.CRANFORD-SEARCY@JPMCHASE.COM); Disher, Iris (iris.disher@chase.com); Alimario, Aleandre (ANDRE.ALIMARIO@JPMORGAN.COM); Cordero, Cotton (cotton.candy.cordero@chase.com); Bono, Marjorie (marjorie.s.bono@jpmorgan.com); Policarpio, Jennifer (jennifer.s.policarpio@jpmorgan.com); Griffith, Michelle A (michelle.a.griffith@jpmchase.com); Tumapon, Lady Rose (ladyrose.b.tumapon@chase.com); Andrade, Helen Rose (helenrose.f.andrade@jpmchase.com); De Leon, Jason (CHASE.DELEON@JPMORGAN.COM); Gamilla, Larizza (lerry.gamilla@chase.com); Marshall-Figueroa, Gloria J (gloria.j.marshall-figueroa@chase.com) |
| 12/02/2023 4:48 PM | [System] | Notification - New hotline case - to Harkless, Aquita (Aquita.M.Harkless@chase.com); Bennett, Pamela (pamela.j.bennett@chase.com); ER, Email Notification (er.partnersupport.americas@jpmchase.com); Navarro, Brittany (BRITTANY.M.NAVARRO@JPMORGAN.COM); Cranford-Searcy, Lakeisha (LAKEISHA.R.CRANFORD-SEARCY@JPMCHASE.COM); Disher, Iris (iris.disher@chase.com); Alimario, Aleandre (ANDRE.ALIMARIO@JPMORGAN.COM); Cordero, Cotton (cotton.candy.cordero@chase.com); Bono, Marjorie (marjorie.s.bono@jpmorgan.com); Policarpio, Jennifer (jennifer.s.policarpio@jpmorgan.com); Griffith, Michelle A (michelle.a.griffith@jpmchase.com); Tumapon, Lady Rose (ladyrose.b.tumapon@chase.com); Andrade, Helen Rose (helenrose.f.andrade@jpmchase.com); De Leon, Jason (CHASE.DELEON@JPMORGAN.COM); Gamilla, Larizza (lerry.gamilla@chase.com); Marshall-Figueroa, Gloria J (gloria.j.marshall-figueroa@chase.com) |
| 12/02/2023 4:42 PM | [Reporter] | Submitted Case |

# Integrated Case Manager

Exported Date: 03/06/2024, 17:26:41

Item Id: EC_NA_1226237894

**Workflow Status**
Closed Alert

**Date Open**
12/26/2023, 08:13:21

**Investigation Owner**
De Leon, Chase

**Assigned Date**
12/26/2023, 14:10:51

**Created By**
K022816

**Subject**
Aughinbaugh,John(V034411)

**Tags**
[RETALIATION, MANAGING DIRECTOR, SPECIAL PROJECT 10]

## Item Details

**Workgroup**
ER Intake & Triage

**Type**
Retaliation

**Subtype**
Complaint/Allegation

**LOB**
ASSET & WEALTH MANAGEMENT

**Sub-LOB**
GLOBAL PRIVATE BANK

**Legal Entity**
0802 JPMORGAN CHASE BANK, N. A.

**Country**
US

**Region**
NA

## Incident Information

**Incident Date**
2023-12-21

**Incident Location**

**Aware of Incident Date**

**Incident Description**
(E-Mail: josh.biering@jpmorgan.com) [Question Q59]: I would recommend my current manager to a colleague or friend. If no, why not? [Response to Q59]: see prior commentary. manager retaliated against me on a consistent basis, to the point where I had to seek employee assistance programs and mental health treatment. [Question Q61]: Please use the space below to share any additional feedback about your employment at JPMC. [Response to Q61]: I was consistently humiliated and retaliated by the newly appointed manager, J.T. Aughinbaugh for a variety of different actions, many of which are protected activities as well as actions I took that aligned directly with the JPMorgan "How We Do Business Principles." I was so proud to work for JPMorgan Chase and would have loved to spend the remainder of my career at JPMorgan. All I asked was to be respected, valued and appreciated for my contributions to the team. I went above and beyond. I always gave 200% and then some when it came to business results, client/customer/stakeholder focus and teamwork/leadership. Despite being praised for my teamwork leadership and other contributions- I was berated and chastised by a manager I

tried, on multiple instances, to partner and understand /appreciate each other's leadership styles. Ins were met, not with leadership/mentorship, b closed door conversations, constructing my needed exit.

**Is a Customer Involved?**

Referring & Submitting Party Information

---

**Referring Party**
I662283

**Anonymous Request**

**Referral ID & Source**
ML4HR - Exit Survey

**Referral Channel**

**Submitting Party**

**Submitting Party Phone Number**

**Alternate**

Notes

---

**Recent Notes**

01/08/2024, 13:23:54 Updated by Cranford-Searcy, Lakeisha R

original -01/08/2024, 13:23:54

MANAGER REVIEW: Alert/Alert Assessment not selected for Random 25% QC sample for 1/8/2024. No QC form will be completed in Webstats.

01/06/2024, 17:48:21 Updated by De Leon, Chase

original -01/06/2024, 17:48:21

Justification Reason: Duplicate, Justification comments: Duplicate to EC_NA_1207234613

01/06/2024, 17:47:12 Updated by De Leon, Chase

original -01/06/2024, 17:47:12

MANAGER REVIEW Conduct Intake Analyst submitted the Intake Assessment Summary to the Intake manager/Team Lead requesting review and approval.

01/06/2024, 17:45:42 Updated by De Leon, Chase

original -01/06/2024, 17:33:10

INTAKE STATEMENT Response from Employee Raising Concern received on 12/27/2023 and additional information was obtained. After complete Alert Assessment, it was determined that Subject John Aughinbaugh is also the subject in open investigation EC_NA_1207234613 linked below. Adding details to open investigation EC_NA_1207234613 and this alert is recommended for closure as an associated item.

12/27/2023, 16:36:29 Updated by De Leon, Chase

original -12/27/2023, 16:36:29

INTAKE STATEMENT Analyst reached out to the Employee Raising Concern via email on 12/27/2023 (second attempt) to obtain additional information.

12/26/2023, 17:44:19 Updated by De Leon, Chase
original -12/26/2023, 17:44:19
INTAKE STATEMENT Analyst reached out to the Employee Raising Concern via email on 12/26/2023 to obtain additional information.

12/26/2023, 14:10:46 Updated by Cranford-Searcy, Lakeisha R
original -12/26/2023, 14:10:46
INTAKE STATEMENT Employee shared feedback during 2023 Exit Survey. Please determine if formal ER investigation is required

Tags

[RETALIATION, MANAGING DIRECTOR, SPECIAL PROJECT 10]

Related Subject Alerts & Cases

**John Aughinbaugh (V034411) (E)**

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1117222114 - 2022-11-17 - CaseClosed (Yu, Wai / W606906)

EC_NA_1005228200 - 2022-10-05 - CaseClosed (Padilla, Linda / U231503)

**Peter Chilian (U359832) (E)**

EC_NA_1026230376 - 2023-10-26 - DispositionInProcess (Decarlo, Vito A / N718221)

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_0802231020 - 2023-08-02 - Close (Alimario, Andre / N083227)

EC_NA_0322232559 - 2023-03-22 - CaseClosed (Niswonger, Cherie L / V031290)

EC_NA_1129222807 - 2022-11-29 - CaseClosed (Yu, Wai / W606906)

EC_NA_1026220208 - 2022-10-26 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0718221254 - 2022-07-18 - CaseClosed (Cadyma-Renard, Zadina / W599216)

EC_NA_0707220386 - 2022-07-07 - CaseClosed (Cota, C. D / Z244274)

EC_NA_1206212820 - 2021-12-06 - CaseClosed (Wayans, Ryan O / D439501)

EC_NA_1028210495 - 2021-10-28 - CaseClosed (Wayans, Ryan O / D439501)

**Joshua Biering (I662283) (E)**

EC_NA_0104248622 - 2024-01-04 - Close (Gamilla, Lerry / W278285)

EC_NA_1207234632 - 2023-12-07 - Close (Cordero, Cody C / O077029)

EC_NA_1207234613 - 2023-12-07 - CaseReopenedPendingApproval (Sanchez, Julie / V689725)

EC_NA_1026230312 - 2023-10-26 - CaseClosed (Jacobs, Jonathan / D639971)

EC_NA_1020239740 - 2023-10-20 - CaseClosed (Muraira, Nadia / I780946)

## Associated Work Item

| Item ID | Relationship | Type | Subtype | Status | Owner |
|---|---|---|---|---|---|
| EC_NA_1207234613 | Parent | Retaliation | Complaint /Allegation | Case Reopened - Pending Approval | Sanchez, Julie /V689725 |

## Facilities

No data in Facilities

## Attachments

| File Name | File Description | File Size | Date Added |
|---|---|---|---|
| Follow Up J Biering.pdf | Response from Employee Raising Concern | 0.303 | 01/06/2024 |

## Related Parties

| Name | Party Type | SID | Association | ECI | Related Party Id |
|---|---|---|---|---|---|
| John Aughinbaugh | Employee | V034411 | Subject (Primary) | | PRTY_REL_NA_1226235501 |
| Peter Chilian | Employee | U359832 | Subject Manager | | PRTY_REL_NA_1226235502 |
| Joshua Biering | Employee | I662283 | Employee Raising Complaint | | PRTY_REL_NA_1226235362 |

## Financials

No data in financials

**Is this alert duplicate?**
Yes

App. 0270

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 11:03:40 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Seeing that the Exit Survey case that I was assigned to is a duplicate to an existing one, it would be advisable to send it to Ms. Cohen to ensure we have only one case being reviewed.

I shall note the Exit Survey case as a duplicate and associate it to the existing one that is currently being reviewed so as to avoid confusion among the relevant partners handling the case. Please feel free to reply to this email should you have questions on the Exit Survey. Thank you for your partnership and happy holidays!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:56 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

no not yet, i will send it to you both.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:54 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Thank you for confirming. May I know if the details in the follow up response have been shared to Ms. Jena Cohen?

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** **I** **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:51 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

They are connected, but my follow up response is going to be incredibly detailed, with more examples and instances since my initial report to the employee relations hotline was cut short. I will also be including legal code, exhibits and examples.

I will hope to have this submitted in the next few hours.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:49 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Since you mentioned that you are currently working with one of our HR Business advisors, may I confirm if the allegation of retaliation shared in the Exit Survey is related to the Conduct Hotline Report you have sent regarding the wrongful termination allegation previously raised to HR? The reason I asked is to determine whether the Exit Survey may need to be associated to the existing case that is currently being looked into in response to the Code Hotline Report opened

in 12/07/23. The latter is currently being reviewed and if the Exit Survey has the same concerns, it would help to just have one ongoing investigation on the matter.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:42 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

I would prefer not

Regards,

JB

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:40:36 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

Thank you for your response. I do see that Ms. Cohen is an HR Business Advisor and I do see an open case on the Subject of the exit survey. May I call you on your mobile number ending in 5781 so I can confirm if the open case is related to the exit survey response? This will take less than 5 minutes. Thank you!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:36 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** [EXTERNAL]Re: Follow Up

Chase- thank you for following up.

I am in the process of typing out a very long and detailed response. I appreciate your patience.

I'm not sure the relevance of this information, but I also have been in active dialogue with Jena Cohen. Should I include her as well on these communications>

Many thanks,

Josh

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:34 AM
**To:** josh.biering@gmail.com <josh.biering@gmail.com>
**Subject:** RE: Follow Up

Hello Joshua,

Good day! I wish to follow up on the email below to obtain additional information in order to refer your case to the appropriate group within Employee Relations. Please respond to this email and provide a brief description of the incident/s that took place by answering the question below. Thank you!

Warm Regards,

**Chase De Leon |** Employee Relations **|** Human Resources | JPMorgan Chase **|** JPMorgan Chase & Co Tower **|** Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** De Leon, Chase (HR, PHL)
**Sent:** Tuesday, December 26, 2023 12:43 PM
**To:** josh.biering@gmail.com
**Subject:** Follow Up

Hello Joshua,

My name is Chase De Leon and I am from the JP Morgan Chase Employee Relations Intake Team. I received your Exit Survey response for an initial assessment regarding the allegations of retaliation by the newly appointed manager, J.T. Aughinbaugh . I am reaching out to obtain additional information so we can route your inquiry to the appropriate group within Employee Relations.

Please do respond to this email and provide a brief description of the incident/s that took place by answering the questions below.

*1. In your Exit Survey response, you have shared that you have been consistently humiliated and retaliated against by the above newly appointed manager for protected activities. Please provide more details about your concerns*

*– What were the protected activities involved and please also provide the date/time, and what happened in the incident/s of retaliation.*

Once I receive your detailed response, the case will be assigned to an ER partner who will lead the investigation and communicate with you moving forward. Thank you for your partnership.

Warm Regards,

**Chase De Leon |** Employee Relations **|** Human Resources | JPMorgan Chase **|** JPMorgan Chase & Co Tower **|** Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of

electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 11:55 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I have tried to call you on your mobile number ending in 5781, however, my call was routed to voice mail. I have left a voice mail as well to advise that I have associated your Exit Survey case to the existing case that is being reviewed. I'll be glad to help in any way I can. May I know if you have questions about the Exit Survey case that I can assist with?

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC I EMEA**
- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 12:46 PM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

Can you call me

Regards,

JB

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 11:03:40 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Seeing that the Exit Survey case that I was assigned to is a duplicate to an existing one, it would be advisable to send it to Ms. Cohen to ensure we have only one case being reviewed.

I shall note the Exit Survey case as a duplicate and associate it to the existing one that is currently being reviewed so as to avoid confusion among the relevant partners handling the case. Please feel free to reply to this email should you have questions on the Exit Survey. Thank you for your partnership and happy holidays!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC I EMEA**
- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:56 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

no not yet, i will send it to you both.

---

App. 0277

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:54 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Thank you for confirming. May I know if the details in the follow up response have been shared to Ms. Jena Cohen?

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:51 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

They are connected, but my follow up response is going to be incredibly detailed, with more examples and instances since my initial report to the employee relations hotline was cut short. I will also be including legal code, exhibits and examples.

I will hope to have this submitted in the next few hours.

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:49 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

I appreciate the response. Since you mentioned that you are currently working with one of our HR Business advisors, may I confirm if the allegation of retaliation shared in the Exit Survey is related to the Conduct Hotline Report you have sent regarding the wrongful termination allegation previously raised to HR? The reason I asked is to determine whether the Exit Survey may need to be associated to the existing case that is currently being looked into in response to the Code Hotline Report opened in 12/07/23. The latter is currently being reviewed and if the Exit Survey has the same concerns, it would help to just have one ongoing investigation on the matter.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**
- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:42 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** Re: [EXTERNAL]Re: Follow Up

I would prefer not

Regards,

JB

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:40:36 AM
**To:** Josh Biering <josh.biering@gmail.com>
**Subject:** RE: [EXTERNAL]Re: Follow Up

Hello Joshua,

Thank you for your response. I do see that Ms. Cohen is an HR Business Advisor and I do see an open case on the Subject of the exit survey. May I call you on your mobile number ending in 5781 so I can confirm if the open case is related to the exit survey response? This will take less than 5 minutes. Thank you!

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**
- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, December 27, 2023 11:36 AM
**To:** De Leon, Chase (HR, PHL) <chase.deleon@jpmorgan.com>
**Subject:** [EXTERNAL]Re: Follow Up

Chase- thank you for following up.

I am in the process of typing out a very long and detailed response. I appreciate your patience.

I'm not sure the relevance of this information, but I also have been in active dialogue with Jena Cohen. Should I include her as well on these communications>

Many thanks,

Josh

---

**From:** De Leon, Chase <chase.deleon@jpmorgan.com>
**Sent:** Wednesday, December 27, 2023 10:34 AM
**To:** josh.biering@gmail.com <josh.biering@gmail.com>
**Subject:** RE: Follow Up

Hello Joshua,

Good day! I wish to follow up on the email below to obtain additional information in order to refer your case to the appropriate group within Employee Relations. Please respond to this email and provide a brief description of the incident/s that took place by answering the question below. Thank you!

Warm Regards,

**Chase De Leon |** Employee Relations **|** Human Resources | JPMorgan Chase **|** JPMorgan Chase & Co Tower **|** Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

**From:** De Leon, Chase (HR, PHL)
**Sent:** Tuesday, December 26, 2023 12:43 PM
**To:** josh.biering@gmail.com
**Subject:** Follow Up

Hello Joshua,

My name is Chase De Leon and I am from the JP Morgan Chase Employee Relations Intake Team. I received your Exit Survey response for an initial assessment regarding the allegations of retaliation by the newly appointed manager, J.T. Aughinbaugh . I am reaching out to obtain additional information so we can route your inquiry to the appropriate group within Employee Relations.

Please do respond to this email and provide a brief description of the incident/s that took place by answering the questions below.

*1. In your Exit Survey response, you have shared that you have been consistently humiliated and retaliated against by the above newly appointed manager for protected activities. Please provide more details about your concerns*
*– What were the protected activities involved and please also provide the date/time, and what happened in the incident/s of retaliation.*

Once I receive your detailed response, the case will be assigned to an ER partner who will lead the investigation and communicate with you moving forward. Thank you for your partnership.

Warm Regards,

**Chase De Leon** | Employee Relations | Human Resources | JPMorgan Chase | JPMorgan Chase & Co Tower | Email: chase.deleon@jpmchase.com

**Find answers faster!** Check out **HR Help & Support** for answers to top HR questions: **APAC** I **EMEA**

- For general HR help and resources, visit **me@jpmc**.
- **Need further assistance?** Use the **HR Answers app** to submit your question.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.