# PLAINTIFF'S APPENDIX IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## VOLUME 3 OF 4

## INDEX


| APP. | DESCRIPTION |
|---|---|
| **0610-0614** | Recruiting/Compliance Text Communications |
| **0615-0623** | May 2023 Registration-Disclosure and Disability Records |
| **0624-0659** | U4/U5 Direction and Employee-Support Records |
| **0660-0662** | Pre-Interview Termination-Forecast Record |
| **0663-0714** | Personnel, Reporting-Line, Disability, and Lifecycle Records |
| **0715-0717** | ERC / Mutual Text-Message Records |
| **0718-0750** | Merrill Briefing and FINRA Hearing Testimony Supplements |
| **0751-0757** | Aughinbaugh Cross (Relied Excerpts) |
| **0758-0776** | Notice-Period Policy and Restrictions |
| **0777-0796** | RFT/U5 Narrative and Registration Routing |
| **0797-0853** | Payroll, Hours, Staffing, and Personnel-System Records |


Relied-upon passages are highlighted and bracketed in the margin. Each page carries a consecutive record label at the top right (App. NNNN).

# Recruiting/Compliance Text Communications

**App. 0611-0614**

RBC (Duphorne) recruiting and compliance-review text thread.

Text message
12/14/2023 1:43:19 PM

App. 0611

Hi Josh. It's Courtney Duphorne from RBC. Do you have time t for a call this afternoon or tomorrow after 1:30 pm CST? Thank you - CD

Hi Courtney- thanks for reaching out. I'm tied up this afternoon and tomorrow afternoon. Perhaps Monday?

Great. I am free before 10 Monday and after 2:30. Do either of those work for you?

I can do 9:30am Monday?

Liked "I can do 9:30am Monday?"

Sounds great. I will send you a meeting invite.

Terrific- Josh.Biering@gmail.com

12/20/2023 11:04:27 AM

Hi Courtney- just wanted to confirm- are we meeting g via WebEx?

Yes but you should have received an email from Olivia With updated web ex link.

12/20/2023 12:07:54 PM

Also forgot to ask- what is the timing or typical forum for the committee to review these transition cases etc?

12/21/2023 11:21:59 AM

Checking on this.

Thank you! Hope you're staying dry!

12/28/2023 1:43:29 PM

Hi Josh. Can you meet me tomorrow around 10 for coffee?

Of course! Preference on location?

Why don't we meet at Ascension in the Crescent?

Sure thing- Crescent Dallas correct?

Yep

excellent- see you then

Liked "excellent- see you then "

12/29/2023 8:35:18 AM

Good morning Courtney - I look forward to our visit at Ascension.

Take your time- I'm planning to be there a little early at 9:30am to beat traffic.

12/29/2023 6:25:42 PM

It was great meeting you today. Let's visit Tuesday!

Let's do it! My former employer is trying to renew that transaction with my guys on Tuesday 😂

Exhibit
CX107

12/30/2023 4:23:09 PM

App. 0612




I hope you're having a great weekend- was just excited to share this note. Sorry to bother you.

Happy new year!!

12/30/2023 5:54:37 PM

That's awesome Josh!

1/1/2024 3:57:33 PM

I am doing a write up for Darryl Traweek my divisional mgr. What do you really think would be a realistic AUA and revenue goal for you years 1-4?

Do you have a quick second for me to call?

Thank you for doing this!

Sure. Give me a few minutes and I'll call you?

Perfect

Sent!

1/2/2024 9:56:11 AM

Can you do a 10:30 call with compliance?

Yes maam- I have a 10am zoom but I think it should be done by 10:30

That ok?

Yep. I am gonna set it up. If someone else can't make that time I will reschedule and text you

Thank you

They can not do the call today. Will let you know asap

Ok do I need to dial in

Or no

Sorry no.

No worries - got me excited!

Just sent you an email

Received! If I get that to you by 2/2:30 is that too late?

Nope.

Ok. Sent from iPhone. If you need more I can send afternoon

Need a little more "color" on U5 language - what event prompted the term language. If you can just put that in your own words.

Ok. How about that? I just don't want any of that to be misconstrued- I genuinely have been told very little - which has made me incredibly suspicious.

I think I would just discuss events that transpired up to time you were notified of term.

Bueno. Sent.

Ty

You're welcome!

1/3/2024 9:39:23 AM

Hi there! Just wanted to give you a quick update and ask a question

Can you call me when free?

On calls this am. Anything I can do texting?

No worries. Just giving you broad update. Also- any chance your compliance team would be available this evening? Technically meeting with one of my top guys tomorrow morning- I can try and push it but putting out feelers with you first

1/3/2024 12:30:50 PM

Will be tomorrow at 10:30. Can you chat for a sec about tomorrow's call.

I can't I'm free whenever you are

Can you not do 10:30 call tomorrow?

I can. Sorry I thought you wanted to chat about tomorrow

I do.

Sounds good - what time works for you. I'm relatively open

What was your salary at JPM

275; ML offering 400

Incentive discretionary comp target this year was 250ish? 20% of that RSUs

1/3/2024 5:37:19 PM

Ok. Very long email coming your way. Sorry in advance. But it's important. And I appreciate you

😬

1/4/2024 10:13:29 AM

Do you have a final list on whose attending from RBC

Rachel Heidelberg (compliance) Karen Rasmussen risk, Cyndy freeman (recruiting), Vikesh Nemani (finance strategy ) and Amy Alerie (HR)

I jokingly told my recruiter I was speaking with Karen and her team today.... nice

Thank you!

In waiting room- your dial in

I'll let you in - sit tight

1/4/2024 4:09:49 PM

Thank you for setting up the call- eager to hear the feedback

1/4/2024 5:26:52 PM

App. 0614

Waiting to hear

1/8/2024 10:50:08 AM

Good luck to you Josh.

Thank you, Courtney. I'm sorry I had to move so quickly and I appreciate all of your time and getting to know you. I'm sure our paths will cross again!!

Liked "Thank you, Courtney. I'm sorry I had to move so qu…"

2/23/2024 3:33:25 PM

Ugh. Is it too late to go to RBC lol

What's up Josh? Things that bad?

Ugh. More like they are not coming through on what my credit needs or derivatives are like they promised. But yall never got back to me

Well it was slow I will grant you that but.... hang in there. We can keep comm open.

Did they even approve it

I met my 1 million production number in 5 weeks. And $120million assets will be met by next week. Only thing that took long was their process. Ugh

I was a big fan of your style and your credit/lending head

Liked "I was a big fan of your style and your credit/lend…"

But Jeremy bet on me

If yall said no that's ok too. I need to know

11/21/2024 3:44:34 PM

Courtney- is RBC still on the table? RJ has been great but the lack of lending has been detrimental to my business

What came out on your U4?

U4 customer complaint - expungement granted.

U5 hearing. September 2025....

My two $1.5 billion + deals closed......

PDF
Award 23-03445 Biering Awards.pdf

On a plane. Will talk to Kirk and get back to ya.

Ok. I'll email you my production. My T10 (not 12) is 2$mm production. 295$mm AUM. and 700$k lost production due to lack of lending RBC could provide.

But. I'd prefer to be a separate/distinct team from High group.

Btw are you a dad now?

I am!

Baby name??

# May 2023 Registration-Disclosure and Disability Records

**App. 0616-0623**

May 1, 2023 disclosure email, attachments, and compliance response.

| | |
|---|---|
| **From:** | Biering, Josh (WM, USA) |
| **Sent:** | Monday, May 01, 2023 3:34 PM |
| **To:** | JPM Registration Disclosure Review |
| **Cc:** | Burns, Kimberly S (WM, USA); Greaves, Dexter W (WM, USA); Ramirez, Frank (Compliance, USA); Stewart, Ben (WM, USA) |
| **Subject:** | FW: Form U4- Financial Compromise- J. Biering |
| **Attachments:** | J B U4 Report May 2023.pdf; Letter_TPD Approval.pdf |

Good Afternoon-

I am writing you to kindly assist in submitting a request to remove the 5 “Financial Compromises” that were reported and added to my Form U4 on March 9, 2018.

- Broker Check Report Attached, effective May 1, 2023
- Timeline:
  - I attended Southern Methodist University for an Executive MBA Program from 2016 to 2018. I received 5 separate loans from 2016 to 2017, totaling $157,957.00. Each loan obligation is currently a separate disclosure as a Financial Compromise on my Form U4
  - After reporting these loan discharges in March 2018, FINRA issued additional clarification regarding a “Compromise with Creditors” (screenshot below)- April 13, 2020
  - March 9, 2018: I received my confirmation letter from the U.S. Department of Education approving my student loan discharge due to my 100% Service Connected Disability issued by the Department of Veteran Affairs (confirmation letter attached)
    - Post discharge monitoring/reporting period not applicable for 100% Service Connected Disabled Veterans
    - Department of Veteran Affairs confirming my 100% rating available upon request.
- Supporting Information:
  - “Forgivable loans are not considered compromise with creditors if the original term of the loan specify discharge provisions”
  - The Higher Education Act of 1965, as amended by the Higher Education Opportunity Act in 2008 and other acts (Higher Education Act), honors veterans who are totally and permanently disabled as a result of their service to the Nation by providing for the discharge of their Federal student loan debt.

122 STAT. 3258 PUBLIC LAW 110–315—AUG. 14, 2008

“(ii) has earned income in excess of the poverty line; or

“(B) the Secretary determines necessary.”.

(b) DISABILITY DETERMINATIONS.—Section 437(a) (20 U.S.C. 1087(a)) is further amended by adding at the end the following:

“(2) DISABILITY DETERMINATIONS.—A borrower who has been determined by the Secretary of Veterans Affairs to be unemployable due to a service-connected condition and who provides documentation of such determination to the Secretary of Education, shall be considered permanently and totally disabled for the purpose of discharging such borrower’s loans under this subsection, and such borrower shall not be required to present additional documentation for purposes of this subsection.”.

20 USC 1087 note.

(c) EFFECTIVE DATE.—The amendments made by subsection (a) shall take effect on July 1, 2010.

- 



Exhibit CX67

- Total and Permanent Disability Discharge provisions included in initial loan provisions related to the following loan types:
  - William D. Ford Federal Direct Loan (Direct Loan) Program Loans (https://studentaid.gov/manage-loans/forgiveness-cancellation/disability-discharge)
  - FFEL Program Loans
  - Federal Perkins Loans
- All 5 Loans, currently reported on my CRD, are considered William D. Ford Federal Direct Loans and contained loan discharge provisions for disabled veterans, satisfying FINRA's criteria to **exclude** these loans as "Financial Compromises" on disclosures .

| | | |
|---|---|---|
| Direct PLUS for Graduate or Professional Students | $51,610.00 | 8/31/2017 |
| Direct PLUS for Graduate or Professional Students | $10,847.00 | 6/9/2017 |
| Direct PLUS for Graduate or Professional Students | $54,500.00 | 8/18/2016 |
| Direct Stafford Unsubsidized | $20,500.00 | 8/11/2017 |
| Direct Stafford Unsubsidized | $20,500.00 | 8/17/2016 |
| | **$157,957.00** | |

- **Question 14K**

  **Q1:** What is a "Compromise with Creditors" for purposes of responding to Question 14K on Form U4?

  **A:** A compromise with one or more creditors[1] generally involves an agreement between a borrower and a creditor in which a creditor agrees to accept less than the full amount owed in full satisfaction of an outstanding debt, unless such an agreement is included in the original terms of the loan (*e.g.*, forgivable loan or forgivable promissory note). A creditor can be a natural person or an entity, but is often a financial institution that extends credit and typically charges interest on a loan. In general, for purposes of Form U4 Question 14K, any agreement between a borrower and a creditor that changes only the terms of the repayment and does not result in a decrease in the full amount owed does not constitute a compromise with a creditor. (Originally posted 03/23/12; revised 04/13/20)

---

**Josh Biering** | Executive Director | Banker | **J.P. Morgan Private Bank** | 420 Throckmorton St, Suite 300 | Fort Worth, TX 76102 | T: 817 212 3096 | work Mobile: 817 798 7654 | josh.biering@jpmorgan.com | privatebank.jpmorgan.com

J.P.Morgan
PRIVATE BANK

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

Our *Form CRS* (Client Relationship Summary) and *Guide to Investment Services and Brokerage Products* contain important information about the ways we can serve you, the different investment products and services we offer, their fees and costs, how we are compensated and potential conflicts of interest we may have.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail)**. For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. For questions, please call your J.P. Morgan representative. JPMorgan Chase & Co. and its affiliates and employees do not provide tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any financial transactions. Please submit personal information to J.P. Morgan through a secure manner (e.g., Secure Message Center, Client Exchange, postal mail, fax or in person). **Important risk**

considerations for certain investment products and asset classes can be found **HERE.**

**INVESTMENT PRODUCTS: NOT FDIC INSURED ● NO BANK GUARANTEE ● MAY LOSE VALUE**



---

**From:** Ramirez, Frank (Compliance, USA) <frank.ramirez@jpmorgan.com>
**Sent:** Monday, May 01, 2023 1:52 PM
**To:** Burns, Kimberly S (WM, USA) <kimberly.s.burns@jpmorgan.com>; Biering, Josh (WM, USA) <josh.biering@jpmorgan.com>
**Cc:** Greaves, Dexter W (WM, USA) <dexter.w.greaves@jpmorgan.com>
**Subject:** RE: Form U4- Financial Compromise- J. Biering

I checked with the Registration Disclosure group. Here is the response –

*Hi Frank,*

*I am familiar with the update – we would need further details regarding the loan in order to work with FINRA to see if they would be willing to remove/archive. Also, the TPD discharge is for COVID relief; the 4/13/20 update only states that an agreement can be included in the original terms of the loan; or if only the repayment terms of a loan are changed and does not result in a decrease in the full amount of owed, this does not constitute a compromise with a creditor. Not sure what the specifics are in this case.*

*He can send the documents and explanation to our Disclosure Review mailbox (copied) and we can take a look.*

*Greg*

Here is the email address he referenced - JPM Registration Disclosure Review
jpm.registration.disclosure.review@jpmchase.com

Regards,
Frank

---

**From:** Burns, Kimberly S (WM, USA) <kimberly.s.burns@jpmorgan.com>
**Sent:** Monday, May 01, 2023 12:31 PM
**To:** Biering, Josh (WM, USA) <josh.biering@jpmorgan.com>; Ramirez, Frank (Compliance, USA) <frank.ramirez@jpmorgan.com>
**Cc:** Greaves, Dexter W (WM, USA) <dexter.w.greaves@jpmorgan.com>
**Subject:** RE: Form U4- Financial Compromise- J. Biering

I've added in Frank, who might remember this.

SMs don't have any information on how to get these removed. I suggest looking at the FINRA guidance you might find on their website, or maybe Frank has another contact you can reach out to.

---

**Kimberly Burns** | Executive Director, Supervisory Team Manager, Central Region | **J.P. Morgan Private Bank** |
420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 | T: 817 884 4677 M: 817 939 9161 |
kimberly.s.burns@jpmorgan.com | jpmorgansecurities.com

J.P.Morgan

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail)**. For informational purposes only. This does not represent an official account of the holdings,

balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. **Important risk considerations for certain investment products and asset classes can be found HERE.**

**Swap related material subject to the Swap Dealer Associated Persons Disclosure, has been prepared by a Swap Dealer Associated Person of JPMorgan**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

**Please do not send personal, sensitive or confidential information via unsecured mail.**
**PLEASE RETURN ALL INFORMATION IN A SECURE MANNER** (ex. Secure Message Center 'SMC,' Client Exchange, Mail, Fax or In Person.)

---

**From:** Biering, Josh (WM, USA) <josh.biering@jpmorgan.com>
**Sent:** Monday, May 01, 2023 12:20 PM
**To:** Burns, Kimberly S (WM, USA) <kimberly.s.burns@jpmorgan.com>
**Cc:** Greaves, Dexter W (WM, USA) <dexter.w.greaves@jpmorgan.com>
**Subject:** Form U4- Financial Compromise- J. Biering

Kim-

In spirit of cleaning up my U4, you may recall that we initially updated my U4 in March 2018 to include 5 separate line items related to my Student Loan Discharges. As a reminder, I have a 100% Service Connected Disability Rating through the Department of Veteran Affairs, and the rating allowed me to successfully discharge my student loan debts/commitments, which I successfully discharged. (https://studentaid.gov/manage-loans/forgiveness-cancellation/disability-discharge)

FINRA changed their guidance, and further specified exactly what a "Compromise with Creditors" consisted of. Note, this update was made in 4/13/2020, in light of PPP Loan Forgiveness… **after my Compromise disclosures**. As you can imagine, I would prefer my student loan discharge information, and my VA Disability Status to be more private, and not available to the public. With this information, are there routes I could explore through JPMorgan channels to have these Compromise disclosures removed?

https://www.finra.org/sites/default/files/Interpretive-Guidance-final-03.05.15.pdf

- **Question 14K**

  **Q1:** What is a "Compromise with Creditors" for purposes of responding to Question 14K on Form U4?

  **A:** A compromise with one or more creditors[1] generally involves an agreement between a borrower and a creditor in which a creditor agrees to accept less than the full amount owed in full satisfaction of an outstanding debt, unless such an agreement is included in the original terms of the loan (*e.g.*, forgivable loan or forgivable promissory note). A creditor can be a natural person or an entity, but is often a financial institution that extends credit and typically charges interest on a loan. In general, for purposes of Form U4 Question 14K, any agreement between a borrower and a creditor that changes only the terms of the repayment and does not result in a decrease in the full amount owed does not constitute a compromise with a creditor. (Originally posted 03/23/12; revised 04/13/20)

---

**Josh Biering** | Executive Director | Banker | **J.P. Morgan Private Bank** | 420 Throckmorton St, Suite 300 | Fort Worth, TX 76102 | T: 817 212 3096 | work Mobile: 817 798 7654 | josh.biering@jpmorgan.com | privatebank.jpmorgan.com

J.P.Morgan

PRIVATE BANK

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

Our *Form CRS* (Client Relationship Summary) and *Guide to Investment Services and Brokerage Products* contain important information about the ways we can serve you, the different investment products and services we offer, their fees and costs, how we are compensated and potential conflicts of interest we may have.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail)**. For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. For questions, please call your J.P. Morgan representative. JPMorgan Chase & Co. and its affiliates and employees do not provide tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any financial transactions. Please submit personal information to J.P. Morgan through a secure manner (e.g., Secure Message Center, Client Exchange, postal mail, fax or in person). **Important risk considerations for certain investment products and asset classes can be found HERE.**

**INVESTMENT PRODUCTS: NOT FDIC INSURED ● NO BANK GUARANTEE ● MAY LOSE VALUE**

**Reynolds, Danielle C (Compliance, USA)**



| | |
|---|---|
| **From:** | Thompson, Greg (Compliance, USA) |
| **Sent:** | Monday, May 01, 2023 2:48 PM |
| **To:** | Ramirez, Frank (Compliance, USA) |
| **Cc:** | JPM Registration Disclosure Review |
| **Subject:** | RE: Form U4- Financial Compromise- J. Biering |

Hi Frank,

I am familiar with the update – we would need further details regarding the loan in order to work with FINRA to see if they would be willing to remove/archive. Also, the TPD discharge is for COVID relief; the 4/13/20 update only states that an agreement can be included in the original terms of the loan; or if only the repayment terms of a loan are changed and does not result in a decrease in the full amount of owed, this does not constitute a compromise with a creditor. Not sure what the specifics are in this case.

He can send the documents and explanation to our Disclosure Review mailbox (copied) and we can take a look.

Greg

---

**From:** Ramirez, Frank (Compliance, USA) <frank.ramirez@jpmorgan.com>
**Sent:** Monday, May 01, 2023 2:26 PM
**To:** Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** FW: Form U4- Financial Compromise- J. Biering

Hello Greg,

Are you familiar with the below 4/13/20 update to the Interpretive Guidance on "Compromises with Creditors"? Any thoughts as to whether or not this individual's Service Connected Disability qualifies for removal of the student loan compromises currently on the U4?

Thank you,
Frank

---

**From:** Burns, Kimberly S (WM, USA) <kimberly.s.burns@jpmorgan.com>
**Sent:** Monday, May 01, 2023 12:31 PM
**To:** Biering, Josh (WM, USA) <josh.biering@jpmorgan.com>; Ramirez, Frank (Compliance, USA) <frank.ramirez@jpmorgan.com>
**Cc:** Greaves, Dexter W (WM, USA) <dexter.w.greaves@jpmorgan.com>
**Subject:** RE: Form U4- Financial Compromise- J. Biering

Exhibit
**CX68**

I've added in Frank, who might remember this.

SMs don't have any information on how to get these removed. I suggest looking at the FINRA guidance you might find on their website, or maybe Frank has another contact you can reach out to.

---

**Kimberly Burns** | Executive Director, Supervisory Team Manager, Central Region | **J.P. Morgan Private Bank** | 420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 | T: 817 884 4677 M: 817 939 9161 | kimberly.s.burns@jpmorgan.com | jpmorgansecurities.com

J.P.Morgan

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail)**. For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. **Important risk considerations for certain investment products and asset classes can be found HERE.**

**Swap related material subject to the Swap Dealer Associated Persons Disclosure, has been prepared by a Swap Dealer Associated Person of JPMorgan**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

**Please do not send personal, sensitive or confidential information via unsecured mail.**
**PLEASE RETURN ALL INFORMATION IN A SECURE MANNER** (ex. Secure Message Center 'SMC,' Client Exchange, Mail, Fax or In Person.)

---

**From:** Biering, Josh (WM, USA) <josh.biering@jpmorgan.com>
**Sent:** Monday, May 01, 2023 12:20 PM
**To:** Burns, Kimberly S (WM, USA) <kimberly.s.burns@jpmorgan.com>
**Cc:** Greaves, Dexter W (WM, USA) <dexter.w.greaves@jpmorgan.com>
**Subject:** Form U4- Financial Compromise- J. Biering

Kim-

In spirit of cleaning up my U4, you may recall that we initially updated my U4 in March 2018 to include 5 separate line items related to my Student Loan Discharges. As a reminder, I have a 100% Service Connected Disability Rating through the Department of Veteran Affairs, and the rating allowed me to successfully discharge my student loan debts/commitments, which I successfully discharged. (https://studentaid.gov/manage-loans/forgiveness-cancellation/disability-discharge)

FINRA changed their guidance, and further specified exactly what a “Compromise with Creditors” consisted of. Note, this update was made in 4/13/2020, in light of PPP Loan Forgiveness… **after my Compromise disclosures**. As you can imagine, I would prefer my student loan discharge information, and my VA Disability Status to be more private, and not available to the public. With this information, are there routes I could explore through JPMorgan channels to have these Compromise disclosures removed?

https://www.finra.org/sites/default/files/Interpretive-Guidance-final-03.05.15.pdf

- **Question 14K**

**Q1:** What is a "Compromise with Creditors" for purposes of responding to Question 14K on Form U4?

**A:** A compromise with one or more creditors[1] generally involves an agreement between a borrower and a creditor in which a creditor agrees to accept less than the full amount owed in full satisfaction of an outstanding debt, unless such an agreement is included in the original terms of the loan (*e.g.*, forgivable loan or forgivable promissory note). A creditor can be a natural person or an entity, but is often a financial institution that extends credit and typically charges interest on a loan. In general, for purposes of Form U4 Question 14K, any agreement between a borrower and a creditor that changes only the terms of the repayment and does not result in a decrease in the full amount owed does not constitute a compromise with a creditor. (Originally posted 03/23/12; revised 04/13/20)

---

**Josh Biering** | Executive Director | Banker | **J.P. Morgan Private Bank** | 420 Throckmorton St, Suite 300 | Fort Worth, TX 76102 | T: 817 212 3096 | work Mobile: 817 798 7654 | josh.biering@jpmorgan.com | privatebank.jpmorgan.com

J.P.Morgan

PRIVATE BANK

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

Our *Form CRS* (Client Relationship Summary) and *Guide to Investment Services and Brokerage Products* contain important information about the ways we can serve you, the different investment products and services we offer, their fees and costs, how we are compensated and potential conflicts of interest we may have.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail)**. For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. For questions, please call your J.P. Morgan representative. JPMorgan Chase & Co. and its affiliates and employees do not provide tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any financial transactions. Please submit personal information to J.P. Morgan through a secure manner (e.g., Secure Message Center, Client Exchange, postal mail, fax or in person). **Important risk considerations for certain investment products and asset classes can be found HERE.**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

# U4/U5 Direction and Employee-Support Records

**App. 0625-0659**

October 28 Cohen "amend the u4 asap" and Stainback "hold the U5" direction; 2018 U4 filed-in-error record.

Message

App. 0625

**From:** Cohen, Jena B [jena.b.cohen@jpmorgan.com]
**Sent:** 10/28/2023 5:30:21 PM
**To:** Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com]
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

I told him to hold and he is waiting on our view so it doesn't need to be this weekend. I just looped in Jeremy – Ben had told him pieces already. Turns out that his resignation is likely to go work for Michael Parrelly at MS or ML so we should make sure we amend the u4 asap as he likely just cleared their background.

Jena B. Cohen | US Private Bank HR Head |390 Madison Ave, 27th Floor
J.P. Morgan Chase | Telephone: (212) 464-2647 | jena.b.cohen@jpmorgan.com

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 11:56 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

I think it could be amazing too but would wait for him to do so. When she spoke with Kyle he promised it would be held within HR at this point and she is very fragile right now. I'll check with Jonathan and Linda to get their view. Is he wanting to call her this weekend? I suggest holding for now and then maybe he reaches out early next week if Linda/Jonathan agree.

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:45 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Dave is aski my if he should call her to show his support and that we have her back - I'm torn on it (could be amazing but also could be embarrassing for her to know he knows). Can you get Jonathan and Linda's view? He wants her to know she is fully supported by all of us

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:21 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Yes, I think that will be the plan. ER and Global Security have not spoken with him yet so will get their guidance but he is obligated to continue to cooperate during the investigation(s).

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:12 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Thank you - will we tell him there is an ongoing investigation which may result in a change in his status to term for cause?

Exhibit
CX140

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:09 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** FW: [EXTERNAL]Josh Biering Resignation

---

**From:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:04 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Fwd: [EXTERNAL]Josh Biering Resignation

---

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Saturday, October 28, 2023 9:45:17 AM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>
**Cc:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Subject:** [EXTERNAL]Josh Biering Resignation

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

Message

**From:** Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com]
**Sent:** 10/28/2023 5:37:31 PM
**To:** Cohen, Jena B [jena.b.cohen@jpmorgan.com]
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

His term date is 12/26 based on garden leave. I will reach out to Registration and ask that they not file the U5 until further notice so we can finalize wording before they file.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 12:30 PM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

I told him to hold and he is waiting on our view so it doesn't need to be this weekend. I just looped in Jeremy – Ben had told him pieces already. Turns out that his resignation is likely to go work for Michael Parrelly at MS or ML so we should make sure we amend the u4 asap as he likely just cleared their background.

Jena B. Cohen | US Private Bank HR Head | 390 Madison Ave, 27th Floor
J.P. Morgan Chase | Telephone: (212) 464-2647 | jena.b.cohen@jpmorgan.com

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 11:56 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

I think it could be amazing too but would wait for him to do so. When she spoke with Kyle he promised it would be held within HR at this point and she is very fragile right now. I'll check with Jonathan and Linda to get their view. Is he wanting to call her this weekend? I suggest holding for now and then maybe he reaches out early next week if Linda/Jonathan agree.

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:45 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Dave is aski my if he should call her to show his support and that we have her back - I'm torn on it (could be amazing but also could be embarrassing for her to know he knows). Can you get Jonathan and Linda's view? He wants her to know she is fully supported by all of us

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:21 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Exhibit
CX141

Yes, I think that will be the plan. ER and Global Security have not spoken with him yet so will get their guidance but he is obligated to continue to cooperate during the investigation(s).

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:12 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Thank you - will we tell him there is an ongoing investigation which may result in a change in his status to term for cause?

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:09 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** FW: [EXTERNAL]Josh Biering Resignation

**From:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:04 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Fwd: [EXTERNAL]Josh Biering Resignation

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Saturday, October 28, 2023 9:45:17 AM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>
**Cc:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Subject:** [EXTERNAL]Josh Biering Resignation

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

**Reynolds, Danielle C (Compliance, USA)**

| | |
|---|---|
| **From:** | JPM Registration Disclosure Review |
| **Sent:** | Friday, June 16, 2023 12:58 PM |
| **To:** | Biering, Josh (WM, USA) |
| **Cc:** | Stewart, Ben (WM, USA) |
| **Subject:** | Josh Biering - Action Required - U4 Amendment - Response Required by 6/21/2023 |
| **Attachments:** | FINRA Rule 2263 Disclosure U4 Attachment-.pdf; Draft - U4 Amendment.pdf |

You are receiving this email as notification that the following has been deemed to be a reportable event on your Form U4. Based on this reporting requirement, JPMorgan Securities, LLC ("JPMS") will be filing an amendment to your Form U4.

| | | |
|---|---|---|
| [ ] **Initial Amendment** | [X] **Resolution Amendment** | [ ] **Subsequent Amendment** |

| | | |
|---|---|---|
| [ ] | **Criminal** | |
| X | **Financial** | Student Loan Compromise(s) – Removed disclosures "DRP filed in Error" since the full student loan balances were forgiven |
| [ ] | **Regulatory Action** | |
| [ ] | **Customer Complaint** | |
| [ ] | **Other** | |

Attached is a draft copy of this amendment for your review. Please review and acknowledge this amendment by 2pm EST on 6/21/2023 by replying to this email.

- FINRA has enacted Rule 2263 which contains special rules applicable to the arbitration of employment discrimination claims. As a result JPMS is required to provide each person the attached Arbitration Disclosure form when they complete an initial Form U4 or amend their Form U4 because of disclosure. Please read the Arbitration Disclosure attached.
- Please note according to FINRA regulations written/electronic acknowledgment is required, however, be advised that JPMS. must file this amendment pursuant to FINRA Rule 1010(c) Electronic Filing Requirements for Uniform Forms and in accordance with Article V, Section 2 of the FINRA By-Laws. We must file this amendment regardless of the response received from you. If you don't reply by the date indicated above, your signature will be represented by the following language: "Representative Not Available at the Time of Filing".
- Please note certain disclosable events on your U4 may also need to be reported if you maintain insurance licenses. Reporting obligations may be found using NIPR, accessing the Attachment Warehouse and Reporting of Actions section. Refer to the firm's Insurance Licensing Policy – U.S. for further guidance.

Please note, according to FINRA regulations written/electronic acknowledgment is required, we will not be able to take acknowledgments over the phone.

Thank you,

**Compliance Registration**
| JPMorgan Securities LLC | Phone 614-217-5492 | jpm.registration.disclosure.review@jpmchase.com |go/vic

Exhibit
CX70

# FORM U4

## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

| Firm Name | Firm CRD# | Version | Submission Date |
| --- | --- | --- | --- |
| J.P. MORGAN SECURITIES LLC | 79 | Rev. Form U4 - 05/2009 | |

| Individual Name | Individual CRD # | Type of Filing | Filing ID |
| --- | --- | --- | --- |
| Biering, Joshua | 6883842 | U4 Amendment | 61688417 |

## 14. Disclosure Questions

If the answer to any of the following questions is 'Yes', complete details of all events or *proceeding* s on appropriate DRP(s)

Refer to the explanation of terms section of Form U4 instructions for explanations of italicized terms.

### Criminal Disclosure

14A. (1) Have you ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*?

○ Yes ◉ No

(b) been *charged* with any *felony*?

○ Yes ◉ No

(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any *felony*?

○ Yes ◉ No

(b) been *charged* with any *felony*?



◯ Yes ◉ No



14B. (1) Have you ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor* involving: investments or an *investment-related* business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?

◯ Yes ◉ No

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?

◯ Yes ◉ No

(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a *misdemeanor* specified in 14B(1)(a)?

◯ Yes ◉ No

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?

◯ Yes ◉ No

Regulatory Action Disclosure

14C. Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:

(1) *found* you to have made a false statement or omission?

◯ Yes ◉ No

(2) *found* you to have been *involved* in a violation of its regulations or statutes?

◯ Yes ◉ No

(3) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?

◯ Yes ◉ No

(4) entered an *order* against you in connection with *investment-related* activity?

◯ Yes ◉ No

(5) imposed a civil money penalty on you, or *order*ed you to cease and desist from any activity?

◯ Yes ◉ No

(6) *found* you to have willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or *found* you to have been unable to comply with any provision of such Act, rule or regulation?

○ Yes ◉ No

(7) *found* you to have willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?

○ Yes ◉ No

(8) *found* you to have failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?

○ Yes ◉ No

14D. (1) Has any other Federal regulatory agency or any state regulatory agency or *foreign financial regulatory authority* ever:

(a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical?

○ Yes ◉ No

(b) *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)?

○ Yes ◉ No

(c) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?

○ Yes ◉ No

(d) entered an *order* against you in connection with an *investment-related* activity?

○ Yes ◉ No

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented you from associating with an *investment-related* business or restricted your activities?

○ Yes ◉ No

(2) Have you been subject to any *final order* of a state securities commission (or any agency or officer performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate *federal banking agency*, or the National Credit Union Administration, that:

(a) bars you from association with an entity regulated by such commission, authority, agency, or officer, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or

○ Yes ◉ No

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?

○ Yes ◉ No

14E. Has any *self-regulatory organization* ever:

(1) *found* you to have made a false statement or omission?

○ Yes ◉ No

(2) *found* you to have been *involved* in a violation of its rules (other than a violation designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission)?

○ Yes ◉ No

(3) *found* you to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?

○ Yes ◉ No

(4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities?

○ Yes ◉ No

(5) *found* you to have willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or *found* you to have been unable to comply with any provision of such Act, rule or regulation?

○ Yes ◉ No

(6) *found* you to have willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?

○ Yes ◉ No

(7) *found* you to have failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?

Yes ◉ No

14F. Have you ever had an authorization to act as an attorney, accountant or federal contractor that was revoked or suspended?

Yes ◉ No

14G. Have you been notified, in writing, that you are now the subject of any:

(1) regulatory complaint or *proceeding* that could result in a "yes" answer to any part of 14C, D or E? (If "yes", complete the Regulatory Action Disclosure Reporting Page.)

Yes ◉ No

(2) *investigation* that could result in a "yes" answer to any part of 14A, B, C, D or E? (If "yes", complete the *Investigation* Disclosure Reporting Page.)

Yes ◉ No

Civil Judicial Disclosure

14H. (1) Has any domestic or foreign court ever:

(a) *enjoined* you in connection with any *investment-related* activity?

Yes ◉ No

(b) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s)?

Yes ◉ No

(c) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*?

Yes ◉ No

(2) Are you named in any pending *investment-related* civil action that could result in a "yes" answer to any part of 14H(1)?

Yes ◉ No

Customer Complaint/Arbitration/Civil Litigation Disclosure

14I. (1) Have you ever been named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that you were *involved* in one or more *sales practice violations* and which:

(a) is still pending, or;

Yes ◉ No

(b) resulted in an arbitration award or civil judgment against you, regardless of amount, or;

○ Yes ◉ No

(c) was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;

○ Yes ◉ No

(d) was settled, on or after 05/18/2009, for an amount of $15,000 or more?

○ Yes ◉ No

(2) Have you ever been the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that you were *involved* in one or more *sales practice violations*, and which:

(a) was settled, prior to 05/18/2009 for an amount of $10,000 or more, or;

○ Yes ◉ No

(b) was settled, on or after 05/18/2009, for an amount of $15,000 or more?

○ Yes ◉ No

(3) Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 14I(2) above, which:

(a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;

◉ Yes ○ No

(b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?

○ Yes ◉ No

Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009.

(4) Have you ever been the subject of an *investment-related*, consumer-initiated arbitration claim or civil litigation which alleged that you were *involved* in one or more *sales practice violations*, and which:

(a) was settled for an amount of $15,000 or more, or;

○ Yes ◉ No

(b) resulted in an arbitration award or civil judgment against any named respondent(s)/defendant(s), regardless of any amount?

○ Yes ◉ No



(5) Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated arbitration claim or civil litigation not otherwise reported under question 14I(4)

above, which:

(a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no da amount is alleged, the arbitration claim or civil litigation, must be reporte *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;

- [ ] Yes
- [x] No

(b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?

- [ ] Yes
- [x] No

Termination Disclosure

14J. Have you ever voluntarily *resign*ed, been discharged or permitted to *resign* after allegations were made that accused you of:

(1) violating *investment-related* statutes, regulations, rules, or industry standards of conduct?

- [ ] Yes
- [x] No

(2) fraud or the wrongful taking of property?

- [ ] Yes
- [x] No

(3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?

- [ ] Yes
- [x] No

Financial Disclosure

14K. Within the past 10 years:

(1) have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?

- [ ] Yes
- [x] No

(2) based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?

- [ ] Yes
- [x] No

(3) based upon events that occurred while you exercised *control* over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act?

- [ ] Yes
- [x] No

14L. Has a bonding company ever denied, paid out on, or revoked a bond for you?

Yes No



14M. Do you have any unsatisfied judgments or liens against you?



Yes No

©2023 FINRA, All Rights Reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority. Inc.

Privacy | Legal

# FORM U4

## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

| Firm Name | Firm CRD# | Version | Submission Date |
|---|---|---|---|
| J.P. MORGAN SECURITIES LLC | 79 | Rev. Form U4 - 05/2009 | |

| Individual Name | Individual CRD # | Type of Filing | Filing ID |
|---|---|---|---|
| Biering, Joshua | 6883842 | U4 Amendment | 61688417 |

## 15. Signatures

Please Read Carefully

All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

- 15A INDIVIDUAL/*APPLICANT*'S ACKNOWLEDGMENT AND CONSENT
  This section must be completed on all initial or Temporary Registration form filings.
- 15B *FIRM*/*APPROPRIATE SIGNATORY* REPRESENTATIONS
  This section must be completed on all initial or Temporary Registration form filings.
- 15C TEMPORARY REGISTRATION ACKNOWLEDGMENT
  This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.
- 15D INDIVIDUAL/*APPLICANT*'S AMENDMENT ACKNOWLEDGMENT AND CONSENT
  This section must be completed on any amendment filing that amends any information in Disclosures section or any Disclosure Reporting Page (DRP).
- 15E *FIRM*/*APPROPRIATE SIGNATORY* AMENDMENT REPRESENTATIONS
  This section must be completed on all amendment form filings.
- 15F *FIRM*/*APPROPRIATE SIGNATORY* CONCURRENCE
  This section must be completed to concur with a U4 filing made by another *firm* (IA/BD) on behalf of an individual that is also registered with that other *firm* (IA/BD).

15C. TEMPORARY REGISTRATION ACKNOWLEDGEMENT

If an *applicant* has been registered in a *jurisdiction* or self regulatory organization (*SRO*) in the 30 days prior to the date an application for registration is filed with the Central Registration Depository or Investment Adviser Registration Depository, he or she may qualify for a Temporary Registration to conduct securities [illegible] *jurisdiction* or *SRO* if this acknowledgment is executed and filed with the Form U4 at the *applicant*'s *firm*.

This acknowledgment must be signed only if the *applicant* intends to apply for a Temporary Registration while the application for registration is under review.

I request a Temporary Registration in each *jurisdiction* and/or *SRO* requested on this Form U4, while my registration with the *jurisdiction*(s) and/or *SRO*(s) requested is under review;

I am requesting a Temporary Registration with the *firm* filing on my behalf for the *jurisdiction*(s) and/or *SRO*(s) noted in Section 4 (*SRO* REGISTRATION) and/or Section 5 (*JURISDICTION* REGISTRATION) of this Form U4;

I understand that I may request a Temporary Registration only in those *jurisdiction*(s) and/or *SRO*(s) in which I have been registered with my prior *firm* within the previous 30 days;

I understand that I may not engage in any securities activities requiring registration in a *jurisdiction* and/or *SRO* until I have received notice from the CRD or IARD that I have been granted a Temporary Registration in that *jurisdiction* and/or *SRO*;

I agree that until the Temporary Registration has been replaced by a registration, any *jurisdiction* and/or *SRO* in which I have applied for registration may withdraw the Temporary Registration;

If a *jurisdiction* or *SRO* withdraws my Temporary Registration, my application will then be held pending in that *jurisdiction* and/or *SRO* until its review is complete and the registration is granted or denied, or the application is withdrawn;

I understand and agree that, in the event my Temporary Registration is withdrawn by a *jurisdiction* and/or *SRO*, I must immediately cease any securities activities requiring a registration in that *jurisdiction* and/or *SRO* until it grants my registration;

I understand that by executing this Acknowledgment I am agreeing not to challenge the withdrawal of a Temporary Registration; however, I do not waive any right I may have in any *jurisdiction* and/or *SRO* with respect to any decision by that *jurisdiction* and/or *SRO* to deny my application for registration.

Date (MM/DD/YYYY) | Signature of Applicant

Signature________________________________

15D. AMENDMENT INDIVIDUAL/*APPLICANT*'S ACKNOWLEDGEMENT AND CONSENT

Date (MM/DD/YYYY) | Signature of Applicant

Signature________________________________

15E. *FIRM*/*APPROPRIATE SIGNATORY* AMENDMENT REPRESENTATIONS

Date (MM/DD/YYYY) | Signature of Appropriate Signatory

Greg Thompson

Signature________________________________

©2023 FINRA, All Rights Reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority. Inc.

Privacy | Legal

# FORM U4

## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

| Firm Name | Firm CRD# | Version | Submission Date |
|---|---|---|---|
| J.P. MORGAN SECURITIES LLC | 79 | Rev. Form U4 - 05/2009 | |

| Individual Name | Individual CRD # | Type of Filing | Filing ID |
|---|---|---|---|
| Biering, Joshua | 6883842 | U4 Amendment | 61688417 |

## DRPs

### Bankruptcy/SIPC/Compromise DRP

This Disclosure Reporting Page is an

○ Initial ◉ Amended

response to report details for affirmative response(s) to Question(s) 14K on Form U4:

### Bankruptcy/SIPC/Compromise DRP | Rev. DRP (05/2009)

Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":

☑ 14K(1) ☐ 14K(2) ☐ 14K(3)

If events result in affirmative answers to both 14K(1) and 14K(2), details to each must be provided on separate DRPs.

1. Action Type (select appropriate item):

( ) Bankruptcy

(•) Compromise ( ) Declaration ( ) Liquidation ( ) Receivership
( ) Other

2. Action Date (MM/DD/YYYY) (Provide date bankruptcy was filed, or date SIPC was initiated, or date of compromise with creditor)

03/09/2018

( ) Exact Date (•) Explanation

If not exact, provide explanation:

DRP filed in error

3. If the financial action relates to an organization over which you exercise(d) control, provide:

A. Organization Name:

B. Position, title or relationship:

C. *Investment-related* business?

( ) Yes ( ) No

4. Court action brought in:

( ) Federal Court ( ) State Court ( ) Foreign Court ( ) Other

A. Name of Court (Federal, State, Foreign or Other):

B. Location of Court (City or County and State or Country):

C. Docket/Case#:

[ ] Check this box if the Docket/Case# is your SSN, a Bank Card number, or a Personal Identification Number.

5. Is action currently pending?

( ) Yes (•) No

6. If not pending, provide Disposition Type (select appropriate item):

( ) Direct Payment Procedure (•) Discharged ( ) Dismissed ( ) Dissolved
( ) Satisfied/Released ( ) SIPA Trustee Appointed ( ) Other

7. Disposition Date (MM/DD/YYYY):

03/09/2018



( ) Exact Date (•) Explanation

If not exact, provide explanation:

DRP filed in error



8. If a compromise with creditors, provide:

A. Name of Creditor

DRP filed in error

B. Original Amount Owed

$0.00

C. Terms/Compromise reached with creditor

DRP filed in error

9. If a SIPA trustee was appointed or a direct payment procedure was begun:

A. Amount paid or agreed to be paid by you:

$

Or the name of the Trustee:

B. Currently Open?

○ Yes ○ No

C. Date Direct Payment Initiated/Filed or Trustee Appointed (MM/DD/YYYY):

○ Exact Date ○ Explanation

If not exact, provide explanation:

10. Comment (Optional) *You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or final disposition. Your information must fit within the space provided.*

---

This Disclosure Reporting Page is an

○ Initial ◉ Amended

response to report details for affirmative response(s) to Question(s) 14K on Form U4:

---

Bankruptcy/SIPC/Compromise DRP | Rev. DRP (05/2009)

Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":

☑ 14K(1) ☐ 14K(2) ☐ 14K(3)

If events result in affirmative answers to both 14K(1) and 14K(2), details to each must be provided on separate DRPs.

1. Action Type (select appropriate item):

○ Bankruptcy

◉ Compromise ○ Declaration ○ Liquidation ○ Receivership

○ Other

2. Action Date (MM/DD/YYYY) (Provide date bankruptcy was filed, or date SIPC was initiated, or date of compromise with creditor)

03/09/2018

○ Exact Date ◉ Explanation

If not exact, provide explanation:

DRP filed in error

3. If the financial action relates to an organization over which you exercise(d) control, provide:

A. Organization Name:

B. Position, title or relationship:

C. *Investment-related* business?

○ Yes ○ No

4. Court action brought in:

○ Federal Court ○ State Court ○ Foreign Court ○ Other

A. Name of Court (Federal, State, Foreign or Other):

B. Location of Court (City or County and State or Country):

C. Docket/Case#:

☐ Check this box if the Docket/Case# is your SSN, a Bank Card number, or a Personal Identification Number.

5. Is action currently pending?

○ Yes ◉ No

6. If not pending, provide Disposition Type (select appropriate item):

○ Direct Payment Procedure ◉ Discharged ○ Dismissed ○ Dissolved

○ Satisfied/Released ○ SIPA Trustee Appointed ○ Other

7. Disposition Date (MM/DD/YYYY):

03/09/2018



App. 0645

( ) Exact Date (•) Explanation

If not exact, provide explanation:

DRP filed in error

8. If a compromise with creditors, provide:

A. Name of Creditor

DRP filed in error

B. Original Amount Owed

$0.00

C. Terms/Compromise reached with creditor

DRP filed in error

9. If a SIPA trustee was appointed or a direct payment procedure was begun:

A. Amount paid or agreed to be paid by you:

$

Or the name of the Trustee:

B. Currently Open?

( ) Yes ( ) No

C. Date Direct Payment Initiated/Filed or Trustee Appointed (MM/DD/YYYY):

( ) Exact Date ( ) Explanation

If not exact, provide explanation:

10. Comment (Optional) *You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or final disposition. Your information must fit within the space provided.*

---

This Disclosure Reporting Page is an

( ) Initial (•) Amended

response to report details for affirmative response(s) to Question(s) 14K on Form U4:

---

Bankruptcy/SIPC/Compromise DRP | Rev. DRP (05/2009)

ⓘ Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":

- [x] 14K(1)
- [ ] 14K(2)
- [ ] 14K(3)

ⓘ If events result in affirmative answers to both 14K(1) and 14K(2), details to each must on separate DRPs.

1. Action Type (select appropriate item):

- ( ) Bankruptcy
- (•) Compromise
- ( ) Declaration
- ( ) Liquidation
- ( ) Receivership
- ( ) Other

2. Action Date (MM/DD/YYYY) (Provide date bankruptcy was filed, or date SIPC was initiated, or date of compromise with creditor)

03/09/2018

- ( ) Exact Date
- (•) Explanation

If not exact, provide explanation:

DRP filed in error

3. If the financial action relates to an organization over which you exercise(d) control, provide:

A. Organization Name:

B. Position, title or relationship:

C. *Investment-related* business?

- ( ) Yes
- ( ) No

4. Court action brought in:

- ( ) Federal Court
- ( ) State Court
- ( ) Foreign Court
- ( ) Other

A. Name of Court (Federal, State, Foreign or Other):

B. Location of Court (City or County and State or Country):

C. Docket/Case#:

- [ ] Check this box if the Docket/Case# is your SSN, a Bank Card number, or a Personal Identification Number.

5. Is action currently pending?

- ( ) Yes
- (•) No

6. If not pending, provide Disposition Type (select appropriate item):

- ( ) Direct Payment Procedure
- (•) Discharged
- ( ) Dismissed
- ( ) Dissolved
- ( ) Satisfied/Released
- ( ) SIPA Trustee Appointed
- ( ) Other

7. Disposition Date (MM/DD/YYYY):
03/09/2018

○ Exact Date ● Explanation

If not exact, provide explanation:
DRP filed in error

8. If a compromise with creditors, provide:

A. Name of Creditor
DRP filed in error

B. Original Amount Owed
$0.00

C. Terms/Compromise reached with creditor
DRP filed in error

9. If a SIPA trustee was appointed or a direct payment procedure was begun:

A. Amount paid or agreed to be paid by you:
$

Or the name of the Trustee:

B. Currently Open?

○ Yes ○ No

C. Date Direct Payment Initiated/Filed or Trustee Appointed (MM/DD/YYYY):

○ Exact Date ○ Explanation

If not exact, provide explanation:

10. Comment (Optional) *You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or final disposition. Your information must fit within the space provided.*

---

This Disclosure Reporting Page is an

○ Initial ● Amended

response to report details for affirmative response(s) to Question(s) 14K on Form U4:

---

Bankruptcy/SIPC/Compromise DRP | Rev. DRP (05/2009)

ⓘ Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":

☑ 14K(1) ☐ 14K(2) ☐ 14K(3)

ⓘ If events result in affirmative answers to both 14K(1) and 14K(2), details to each must be provided on separate DRPs.

1. Action Type (select appropriate item):

○ Bankruptcy

◉ Compromise ○ Declaration ○ Liquidation ○ Receivership

○ Other

2. Action Date (MM/DD/YYYY) (Provide date bankruptcy was filed, or date SIPC was initiated, or date of compromise with creditor)

03/09/2018

○ Exact Date ◉ Explanation

If not exact, provide explanation:

DRP filed in error

3. If the financial action relates to an organization over which you exercise(d) control, provide:

A. Organization Name:

B. Position, title or relationship:

C. *Investment-related* business?

○ Yes ○ No

4. Court action brought in:

○ Federal Court ○ State Court ○ Foreign Court ○ Other

A. Name of Court (Federal, State, Foreign or Other):

B. Location of Court (City or County and State or Country):

C. Docket/Case#:

☐ Check this box if the Docket/Case# is your SSN, a Bank Card number, or a Personal Identification Number.

5. Is action currently pending?

○ Yes ◉ No

6. If not pending, provide Disposition Type (select appropriate item):

( ) Direct Payment Procedure (•) Discharged ( ) Dismissed ( ) Dissolved

( ) Satisfied/Released ( ) SIPA Trustee Appointed ( ) Other



7. Disposition Date (MM/DD/YYYY):
03/09/2018

( ) Exact Date (•) Explanation

If not exact, provide explanation:
DRP filed in error

8. If a compromise with creditors, provide:

A. Name of Creditor
DRP filed in error

B. Original Amount Owed
$0.00

C. Terms/Compromise reached with creditor
DRP filed in error

9. If a SIPA trustee was appointed or a direct payment procedure was begun:

A. Amount paid or agreed to be paid by you:
$

Or the name of the Trustee:

B. Currently Open?

( ) Yes ( ) No

C. Date Direct Payment Initiated/Filed or Trustee Appointed (MM/DD/YYYY):

( ) Exact Date ( ) Explanation

If not exact, provide explanation:

10. Comment (Optional) *You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or final disposition. Your information must fit within the space provided.*

---

This Disclosure Reporting Page is an

( ) Initial (•) Amended

response to report details for affirmative response(s) to Question(s) 14K on Form U4:

---

ⓘ Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":

☑ 14K(1) ☐ 14K(2) ☐ 14K(3)

ⓘ If events result in affirmative answers to both 14K(1) and 14K(2), details to each must be provided on separate DRPs.

1. Action Type (select appropriate item):

○ Bankruptcy

◉ Compromise ○ Declaration ○ Liquidation ○ Receivership

○ Other

2. Action Date (MM/DD/YYYY) (Provide date bankruptcy was filed, or date SIPC was initiated, or date of compromise with creditor)

03/09/2018

○ Exact Date ◉ Explanation

If not exact, provide explanation:

DRP filed in error

3. If the financial action relates to an organization over which you exercise(d) control, provide:

A. Organization Name:

B. Position, title or relationship:

C. *Investment-related* business?

○ Yes ○ No

4. Court action brought in:

○ Federal Court ○ State Court ○ Foreign Court ○ Other

A. Name of Court (Federal, State, Foreign or Other):

B. Location of Court (City or County and State or Country):

C. Docket/Case#:

☐ Check this box if the Docket/Case# is your SSN, a Bank Card number, or a Personal Identification Number.

5. Is action currently pending?



◯ Yes ◉ No



6. If not pending, provide Disposition Type (select appropriate item):

◯ Direct Payment Procedure ◉ Discharged ◯ Dismissed ◯ Dissolved
◯ Satisfied/Released ◯ SIPA Trustee Appointed ◯ Other

7. Disposition Date (MM/DD/YYYY):
03/09/2018

◯ Exact Date ◉ Explanation

If not exact, provide explanation:
DRP filed in error

8. If a compromise with creditors, provide:

A. Name of Creditor
DRP filed in error

B. Original Amount Owed
$0.00

C. Terms/Compromise reached with creditor
DRP filed in error

9. If a SIPA trustee was appointed or a direct payment procedure was begun:

A. Amount paid or agreed to be paid by you:
$

Or the name of the Trustee:

B. Currently Open?

◯ Yes ◯ No

C. Date Direct Payment Initiated/Filed or Trustee Appointed (MM/DD/YYYY):

◯ Exact Date ◯ Explanation

If not exact, provide explanation:

10. Comment (Optional) *You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or final disposition. Your information must fit within the space provided.*

---

Bond DRP

ⓘ No Information Filed

Civil Judicial DRP

No Information Filed



Criminal DRP

No Information Filed

Customer Complaint DRP

Customer Complaint DRP | Rev. DRP (05/2009)

Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":

- [ ] 14I(1)(a)
- [ ] 14I(1)(b)
- [ ] 14I(1)(c)
- [ ] 14I(1)(d)
- [ ] 14I(2)(a)
- [ ] 14I(2)(b)
- [x] 14I(3)(a)
- [ ] 14I(3)(b)
- [ ] 14I(4)(a)
- [ ] 14I(4)(b)
- [ ] 14I(5)(a)
- [ ] 14I(5)(b)

- [ ] By selecting this box, I hereby request that the data on this Form U4 filing be used to satisfy my firm's reporting obligation pursuant to the applicable provision of FINRA Rule 4530(a)(1).

One matter may result in more than one affirmative answer to the above items. Use a single DRP to report details relating to a particular matter (i.e., a customer complaint/arbitration/CFTC reparation/civil litigation). Use a separate DRP for each matter.

DRP Instructions:

- Complete items 1-6 for all matters (i.e., customer complaints, arbitrations/CFTC reparations and civil litigation in which a customer alleges that you were *involved* in *sales practice violations* and you are not named as a party, as well as arbitrations/CFTC reparations and civil litigation in which you are named as a party).
- If the matter involves a customer complaint, or an arbitration/CFTC reparation or civil litigation in which a customer alleges that you were *involved* in *sales practice violations* and you are not named as a party, complete items 7-11 as appropriate.
- If a customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.
- If the matter involves an arbitration/CFTC reparation in which you are a named party, complete items 12-16, as appropriate.
- If the matter involves a civil litigation in which you are a named party, complete items 17-23.
- Item 24 is an optional field and applies to all event types (i.e., customer complaint, arbitration/CFTC reparation, civil litigation).

Complete items 1-6 for all matters (i.e., customer complaints, arbitrations/CFTC reparations, civil litigation).

1. Customer Name(s):

FLOYD THOMAS BRADSHAW

2. A. Customer(s) State of Residence (select "not on list" when the customer's residence is a foreign address):

TEXAS

B. Other state(s) of residence/detail:

3. Employing Firm when activities occurred which led to the customer complaint, arbitration, CFTC reparation or civil litigation:

J.P. MORGAN SECURITIES LLC

4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:

Customer alleges unsuitable recommendation regarding mutual fund investment. Activity dates 1.26.22 - 1.26.22.

5. Product Type(s) (select all that apply)

- [ ] No Product
- [ ] Annuity-Charitable
- [ ] Annuity-Fixed
- [ ] Annuity-Variable
- [ ] Banking Product (other than CD)
- [ ] CD
- [ ] Commodity Option
- [ ] Debt-Asset Backed
- [ ] Debt-Corporate
- [ ] Debt-Government
- [ ] Debt-Municipal
- [ ] Derivative
- [ ] Direct Investment-DPP & LP Interest
- [ ] Equipment Leasing
- [ ] Equity Listed (Common & Preferred Stock)
- [ ] Equity-OTC
- [ ] Futures Commodity
- [ ] Futures-Financial
- [ ] Index Option
- [ ] Insurance
- [ ] Investment Contract
- [ ] Money Market Fund
- [x] Mutual Fund
- [ ] Oil & Gas
- [ ] Options
- [ ] Penny Stock
- [ ] Prime Bank Instrument
- [ ] Promissory Note
- [ ] Real Estate Security
- [ ] Security Futures
- [ ] Unit Investment Trust
- [ ] Viatical Settlement
- [ ] Other:

6. Alleged Compensatory Damage Amount:

$109,697.16

- (●) Exact Amount
- ( ) Explanation (If no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged conduct would be less than $5,000)

If the matter involves a customer complaint, arbitration/CFTC reparation or civil litigation in which a customer alleges that you were involved in sales practice violations and you are <u>not</u> named as a party, complete items 7-11 as appropriate.

Note: Report in Items 12-16, or 17-23, as appropriate, only arbitrations/CFTC reparations or civil litigation in which you <u>are</u> named as a party.

7. A Is this an oral complaint?

( ) Yes (•) No

B. Is this a written complaint?

(•) Yes ( ) No

C. Is this an arbitration/CFTC reparation or civil litigation?

( ) Yes (•) No

If yes, provide:

i. Arbitration/reparation forum or court name and location

ii. Docket/Case#:

iii. Filing date or arbitration/CFTC reparation or civil litigation (MM/DD/YYYY)

D. Date received by/served on firm

04/13/2022

(•) Exact Date ( ) Explanation

If not exact, provide explanation:

8. Is the complaint, arbitration/CFTC reparation or civil litigation Pending?

( ) Yes (•) No

If "No", complete Item 9.

9. If the complaint, arbitration/CFTC reparation or civil litigation is not pending, provide status

( ) Closed/No Action ( ) Withdrawn (•) Denied ( ) Settled

( ) Arbitration Award/Monetary Judgment (for claimants/plaintiffs)

( ) Arbitration Award/Monetary Judgment (for respondents/defendants)

( ) Evolved into Arbitration/CFTC reparation (you are a named party)

( ) Evolved into Civil Litigation (you are a named party)

If status is arbitration/CFTC reparation in which you are not a named party, provide details in item 7C.
If status is arbitration/CFTC reparation in which you are a named party, complete items 12-16.
If status is civil litigation in which you are a named party, complete items 17-23.

10. Status Date (MM/DD/YYYY)

05/13/2022

(•) Exact Date ( ) Explanation

If not exact, provide explanation:

11. Settlement/Award/Monetary Judgment:

A. Settlement/Award/Monetary Judgment Amount:

$



B. Your Contribution Amount:

$



If the matter involves arbitration or CFTC reparation in which you are a named respondent, complete items 12-16, as appropriate.

12. A. Arbitration/CFTC reparation claim filed with (FINRA, AAA, CFTC, etc.)

B. Docket/Case#:

C. Date notice/process was served (MM/DD/YYYY)

○ Exact Date ○ Explanation

If not exact, provide explanation:

13 Is arbitration/CFTC Reparation pending?

○ Yes ○ No

If "No", complete Item 14.

14. If the arbitration/CFTC reparation is not pending, what was the disposition?

○ Award to Applicant (Agent/Representative) ○ Award to Customer ○ Denied
○ Dismissed ○ Judgment (other than monetary) ○ No Action ○ Settled
○ Withdrawn ○ Other:

15. Disposition Date (MM/DD/YYYY):

○ Exact Date ○ Explanation

If not exact, provide explanation:

16. Monetary Compensation Details (award, settlement, reparation amount):

A. Total Amount:

$

B. Your Contribution Amount:

$

If the matter involves a civil litigation in which you are a defendant, complete items 17-23.

17. Court in which case was filed:

○ Federal Court ○ State Court ○ Foreign Court ○ Military Court ○ Other

A. Name of Court:

B. Location of Court (City or County and State or Country):

C. Docket/Case#:



18. Date notice/process was served (MM/DD/YYYY):

Exact Date Explanation

If not exact, provide explanation:

19. Is the civil litigation pending?

◯ Yes ◯ No

If "No", complete item 20.

20. If the civil litigation is not pending, what was the disposition?

◯ Denied ◯ Dismissed ◯ Judgment (other than monetary)

◯ Monetary Judgment to Applicant (Agent/Representative)

◯ Monetary Judgment to Customer ◯ No Action ◯ Settled ◯ Withdrawn

◯ Other

21. Disposition Date (MM/DD/YYYY):

◯ Exact Date ◯ Explanation

If not exact, provide explanation:

22. Monetary Compensation Details (judgment, restitution, settlement amount):

A. Total Amount:$

$

B. Your Contribution Amount:

$

23. If action is currently on appeal:

Date appeal filed (MM/DD/YYYY):

◯ Exact Date ◯ Explanation

If not exact, provide explanation:

B. Court appeal filed in:

◯ Federal Court ◯ State Court ◯ Foreign Court ◯ Military Court

◯ Other

i. Name of Court:

ii. Location of Court (City or County and State or Country):

iii. Docket/Case#:

24. Comment (Optional) *You may use this field to provide a brief summary of the circumstances leading to the customer complaint, arbitration/CFTC reparation and/or civil litigation as well as the current status or final*

*disposition(s). Your information must fit within the space provided.*

After an internal review and investigation, it was determined that the recommended investments were suitable based on the client's profile, including risk tolerance, time horizon and investment experience.



Investigation DRP

No Information Filed

Judgment/Lien DRP

No Information Filed

Regulatory Action DRP

No Information Filed

Termination DRP

No Information Filed

©2023 FINRA, All Rights Reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority. Inc.

| | |
|---|---|
| **From:** | Thompson, Greg (Compliance, USA) |
| **Sent:** | Tuesday, June 20, 2023 11:07 AM |
| **To:** | JPM Registration Disclosure Review |
| **Subject:** | FW: Josh Biering - Action Required - U4 Amendment - Response Required by 6/21/2023 |
| **Attachments:** | FINRA Rule 2263 Disclosure U4 Attachment-.pdf; Draft - U4 Amendment.pdf |

Ok. Thanks

**Greg Thompson** | Vice President – Employee Conduct Lead | **J.P. Morgan Securities LLC - Compliance Registration** | 1111 Polaris Parkway, Suite 2J, Columbus, Ohio 43240 | Phone (614) 217-8041.

---

**From:** JPM Registration Disclosure Review <jpm.registration.disclosure.review@jpmchase.com>
**Sent:** Friday, June 16, 2023 12:58 PM
**To:** Biering, Josh (WM, USA) <josh.biering@jpmorgan.com>
**Cc:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Subject:** Josh Biering - Action Required - U4 Amendment - Response Required by 6/21/2023

You are receiving this email as notification that the following has been deemed to be a reportable event on your Form U4. Based on this reporting requirement, JPMorgan Securities, LLC ("JPMS") will be filing an amendment to your Form U4.

[ ] **Initial Amendment** [X] **Resolution Amendment** [ ] **Subsequent Amendment**

| | | |
|---|---|---|
| | **Criminal** | |
| X | **Financial** | Student Loan Compromise(s) – Removed disclosures "DRP filed in Error" since the full student loan balances were forgiven |
| | **Regulatory Action** | |
| | **Customer Complaint** | |
| | **Other** | |

Attached is a draft copy of this amendment for your review. Please review and acknowledge this amendment by 2pm EST on 6/21/2023 by replying to this email.

- FINRA has enacted Rule 2263 which contains special rules applicable to the arbitration of employment discrimination claims. As a result JPMS is required to provide each person the attached Arbitration Disclosure form when they complete an initial Form U4 or amend their Form U4 because of disclosure. Please read the Arbitration Disclosure attached.
- Please note according to FINRA regulations written/electronic acknowledgment is required, however, be advised that JPMS. must file this amendment pursuant to FINRA Rule 1010(c) Electronic Filing Requirements for Uniform Forms and in accordance with Article V, Section 2 of the FINRA By-Laws. We must file this amendment

regardless of the response received from you. If you don't reply by the date indicated above, your signature will be represented by the following language: "Representative Not Available at the Time of Filing"

- Please note certain disclosable events on your U4 may also need to be reported if you maintain insurance licenses. Reporting obligations may be found using NIPR, accessing the Attachment Warehouse and Reporting of Actions section. Refer to the firm's Insurance Licensing Policy – U.S. for further guidance.

Please note, according to FINRA regulations written/electronic acknowledgment is required, we will not be able to take acknowledgments over the phone.

Thank you,

**Compliance Registration**
| JPMorgan Securities LLC | Phone 614-217-5492 I jpm.registration.disclosure.review@jpmchase.com |go/vic

# Pre-Interview Termination-Forecast Record

**App. 0661-0662**

October 27 Cohen "hoping to wrap early next week with a term" email.

Message

**From**: Cohen, Jena B [jena.b.cohen@jpmorgan.com]
**Sent**: 10/27/2023 10:30:20 PM
**To**: Tyler, Lauren M [lauren.m.tyler@jpmorgan.com]
**Subject**: FW: Rapid Response Opening Memo--J. Biering I662283

FYI - hoping to wrap early next week with a term.

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Friday, October 27, 2023 5:05 PM
**To:** Broda, Reid R (Legal, USA) <reid.r.broda@jpmchase.com>; Press, Patrick (HR, USA) <patrick.press@chase.com>; Koch, Scott R (Legal, USA) <scott.r.koch@jpmchase.com>; Williams, Tara S (HR, USA) <tara.s.williams@jpmchase.com>; Padilla, Linda (HR, USA) <linda.padilla@jpmchase.com>; Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Cc:** Magee, Christopher J <christopher.j.magee@jpmorgan.com>
**Subject:** Rapid Response Opening Memo--J. Biering I662283

Good Afternoon,

# Redacted - Privilege

Exhibit
CX130

Redacted - Privilege

Thank you,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

# Personnel, Reporting-Line, Disability, and Lifecycle Records

**App. 0664-0714**

VA disability rating, TPD approval, HR lifecycle/leave, exit survey, and wellness records.

DEPARTMENT OF VETERANS AFFAIRS

July 26, 2016

JOSHUA DAVID BIERING
[redacted]

In reply, refer to:
377/CR
File Number:
Joshua Biering

Dear Joshua Biering:

We made a decision regarding your entitlement to VA benefits.

This letter tells you about your entitlement amount, payment start date, and what we decided. It includes the evidence used and reasons for our decision. We have also included information about what to do if you disagree with our decision and who to contact if you have questions or need assistance.

## Payment Summary

Your monthly entitlement amount is shown below:

| Monthly Entitlement Amount | Payment Start Date | Reason |
|---|---|---|
| [redacted] | Jun 1, 2016 | Original Award |

We are currently paying you as a single Veteran with no dependents.

## You Can Expect Payment

Generally, payments begin the first day of the month following the effective date. When applicable, a retroactive payment, minus any withholdings, will be issued. Thereafter, payment will be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

**Your payment will be directed to the financial institution and account number that you specified. To confirm when your payment was deposited, please contact your financial institution.**

File Number: [redacted]
BIERING, JOSHUA D

| |
|---|
| ***If this account is no longer open, please notify us immediately.*** |

## What We Decided

We made the following decision(s):

[redacted]

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

File Number [redacted]
BIERING, JOSHUA D

[redacted]

App. 0668

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

App. 0671

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

App. 0672

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

App. 0673

File Number: [redacted]
BIERING, JOSHUA D

| Explanation |
| --- |
| • This is the highest schedular evaluation allowed under the law for limited motion of the wrist.<br>• We have assigned a 10 percent evaluation for your right wrist sprain, chronic (also claimed as bilateral wrist condition) based on: • Painful motion of the wrist (38 CFR §4.59 allows consideration of functional loss due to painful motion to be rated to at least the minimum compensable rating for a particular joint. Since you demonstrate painful motion of the wrist, the minimum compensable evaluation of 10 percent is assigned.) Additional symptom(s) include: • Dorsiflexion limited to 15° or beyond • Palmar flexion limited, but not in line with forearm.<br>• The provisions of 38 CFR §4.40 and §4.45 concerning functional loss due to pain, fatigue, weakness, or lack of endurance, incoordination, and flare-ups, as cited in DeLuca v. Brown and Mitchell v. Shinseki, have been considered and applied under 38 CFR §4.59. |

| Issue/Contention | Percent (%) Assigned | Effective Date |
| --- | --- | --- |
| attention deficit hyperactivity disorder, combined and unspecified anxiety disorder (also claimed as anxiety, insomnia; post traumatic stress) | 30% | May 23, 2016 |

| Explanation |
| --- |
| • The overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 30 percent disability evaluation.<br>• A higher evaluation of 50 percent is not warranted for unspecified anxiety disorder unless the evidence shows occupational and social impairment with reduced reliability and productivity due to such symptoms as:• flattened affect• circumstantial, circumlocutory, or stereotyped speech• panic attacks more than once a week• difficulty in understanding complex commands• impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks)• impaired judgment• impaired abstract thinking• disturbances of motivation and mood• difficulty in establishing and maintaining effective work and social relationships.<br>• We have assigned a 30 percent evaluation for your attention deficit hyperactivity disorder, combined and unspecified anxiety disorder (also claimed as anxiety and insomnia) based on: • Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress • Suspiciousness • Anxiety • Chronic sleep impairment • Panic attacks more than once a week . |

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

App. 0675

File Number: [redacted]
BIERING, JOSHUA D

[redacted]

File Number: [redacted]
BIERING, JOSHUA D

We have reviewed your records and they suggest you may be entitled to an additional benefit. If you want to file a claim for fracture of the radius/ ulna closed radius with ulna. (R mid-shaft forearm FX) please submit a completed VA Form 21-526EZ, *Application For Disability Compensation And Related Compensation Benefits,* to the appropriate address listed on the attached *Where to Send Your Written Correspondence* chart. You can download the form at http://www.va.gov/vaforms or you can call us at 1-800-827-1000. We recommend you return the form as soon as you can, in order to ensure the earliest possible payment date, if an award is authorized.

Your overall or combined rating is 100%.

**Note**: The percentages assigned for each of your conditions may not always add up to your combined rating evaluation. We do not add the individual percentages of each condition to determine your combined rating. Instead, we use a combined rating table that considers the effect from the most serious to the least serious conditions.

## Are You Entitled to Additional Benefits?

Did you know you may be eligible for a VA guaranteed mortgage with no down payment (potentially exempt from a funding fee depending on your rating)? For more information about this benefit, or to determine and print your Loan Guaranty Certificate of Eligibility, please visit the eBenefits website at http://www.ebenefits.va.gov.

If you served overseas in support of a combat operation you may be eligible for mental health counseling at no cost to you at the Veteran's Resource Center. For more information on this benefit please visit https://www.myhealth.va.gov/mhv-portal-web/.

The VA provides Blind Rehabilitation services to eligible blind, low vision, or visually impaired Veterans to help them regain their independence and quality of life. The Veteran's blindness, low vision, or vision impairment does NOT have to be related or caused by military service. If you need help with your vision loss, please contact your nearest Visual Impairment Services Team Coordinator (VIST) at the eye clinic at your nearest VA Medical Center. For more information, go to www.va.gov/blindrehab/.

You may be eligible for medical care by the VA health care system for any service-connected disability. You may apply for medical care or treatment at the nearest medical facility. If you apply in person, present a copy of this letter to the Patient Registration/Eligibility Section. If you apply by writing a letter, include your VA file number and a copy of this letter.

If you receive care at a VA medical facility, **please call our Health Benefits Call Center at 1-877-222-VETS (8387) or notify your local VA Medical Center** of this change in your compensation benefits. This may reduce or eliminate your co-payments for your VA-provided

File Number: [redacted]
BIERING, JOSHUA D

medical care. You may also be eligible for a refund based on this decision. Information regarding VA health care eligibility and co-payments is available at our website http://www.va.gov/healtheligibility.

You may be eligible for a clothing allowance or more than one clothing allowance because of your service-connected disability(ies). If you would like to apply for this benefit, please call us at 1-800-827-1000 or download VA Form 10-8678, *Application for Annual Clothing Allowance*, at http://www.va.gov/vaforms.

You should contact your state office of Veterans' affairs for information on any tax, license, or fee-related benefits for which you may be eligible as a Veteran (or surviving dependent of a Veteran). State offices of Veterans' affairs are available at http://www.va.gov/statedva.htm.

Some Veterans may be entitled to VA dental treatment. For additional information, contact your nearest VA Medical Center or outpatient clinic.

A monthly educational assistance allowance is payable to certain Veterans. If you need help with your VA education benefits, you can call toll-free 1-888-442-4551 or visit the VA national education website at http://www.gibill.va.gov.

You may be eligible for reimbursement for beneficial travel mileage for previous VA medical appointments due to your newly granted service-connected conditions. You must make a request for such reimbursement **within 30 days of this letter** by contacting the Enrollment office at your Medical Center and providing a copy of this letter.

You may be eligible for Service-Disabled Veterans Insurance (S-DVI) if you:

- Were released from active duty after April 25, 1951;
- are in good health (except for any service connected conditions), and;
- apply within two years of this notification of disability rating.

**You should receive a package with information about S-DVI and an application within two weeks.** Call the VA Insurance toll free number 1-800-669-8477, or visit the Insurance website at http://www.insurance.va.gov for further information about S-DVI.

You may be able to receive vocational rehabilitation employment services. For more information on this benefit please visit http://www.vba.va.gov/bln/vre/ or call us at 1-800-827-1000.

File Number: [redacted]
BIERING, JOSHUA D

Your combined evaluation is 30 percent or more disabling; therefore, you may be eligible for additional benefits based on dependency. We may be able to pay you retroactive benefits for your dependents if you submit your dependency claim within a year from the date of this letter. If you wish to notify us of your dependents, please do so through eBenefits, an electronic resource in a self-service environment. Use of these resources often helps us serve you faster! Just visit www.eBenefits.va.gov to enroll and submit your dependency information.

Your dependents may be eligible for Dependents' Educational Assistance (DEA). A dependent may not receive DEA benefits while the primary VA beneficiary is receiving payments with additional allowance for the same dependent. If you have a school child over 18 years of age on your award, note that the effective date of payment of the DEA award for the child may create an overpayment if it overlaps any previous payments you have received for that child. For more information on this program please visit the following website: http://www.gibill.va.gov/benefits/other_programs/dea.html or call 1-888-GIBILL-1 (1-888-442-4551).

You and your dependents may be eligible for benefits under CHAMPVA. CHAMPVA is a health benefits program in which the Department of Veterans Affairs (VA) shares the cost of certain healthcare and supplies with eligible beneficiaries. To be eligible for the CHAMPVA program a dependent must be the spouse or child of a Veteran who is permanently and totally disabled from a service-connected disability. You should call 1-800-733-8387 if additional information is needed , or visit http://www.va.gov/hac/forbeneficiaries/champva/champva.asp.

If you have government life insurance, you may be eligible to have your premiums waived (this does not apply to Veterans' Group Life Insurance). Call the VA Insurance toll free number 1-800-669-8477, or visit the Insurance website, http://www.insurance.va.gov, for more information if you answer "yes" to the following questions:

- Do you have an active government life insurance policy for which you pay premiums?
- Are you unable to work due to your disability?
- Were you under age 65 when you became unable to work?
- Have you been unable to work for 6 or more consecutive months?

The Social Security Administration (SSA) administers several benefit programs, including Social Security retirement and disability benefits and Medicare. For more information about Social Security benefits, call SSA at 1-800-772-1213 (Hearing Impaired TTY line 1-800-325-0778) or visit the following website http://www.ssa.gov/.

Some severely disabled Veterans may be entitled to a monetary grant for Automobile and Adaptive Equipment benefits. For more information about this allowance, please visit the

File Number: [redacted]
BIERING, JOSHUA D

following website: http://www.benefits.va.gov/compensation/claims-special-auto-allowance.asp, or call us at 1-800-827-1000.

Veterans with certain disabilities can receive grants to help purchase or construct an adapted home, or modify an existing home to accommodate a disability. For more information on these benefits, please visit the following website: http://www.benefits.va.gov/homeloans/adaptedhousing.asp or call us at 1-800-827-1000.

The Department of Education provides a program for Veterans to discharge their student loans. To be eligible, the Veteran must have a service-connected disability(ies) that is 100% disabling, or be totally disabled based on an Individual Unemployability determination. For more information concerning this benefit, please call toll-free 1-888-303-7818. Visit the website at http://www.disabilitydischarge.com/home/.

You may be entitled to Armed Forces Commissary and Exchange privileges. Honorably discharged veterans evaluated as 100 percent disabled due to service-connected disability; or, Medal of Honor recipients; or, military retirees and their dependents may qualify for entitlement to this additional benefit. To obtain a certification for commissary store and exchange privileges, please visit eBenefits at www.eBenefits.va.gov, or you can request a copy by visiting your local Regional Benefit Office. To locate your Regional Benefit Office, please visit following website: http://www.benefits.va.gov/benefits/offices.asp.

## Conditions That Affect Your Right to Payments

Your award of disability compensation is subject to future adjustment upon receipt of evidence showing any change in the degree of disability.

Your payments may also be affected by any of the following circumstances which you must promptly call to our attention.

- Reentrance into active service.
- Receipt of uniformed service retirement pay, unless your retirement pay has been reduced because of award of disability compensation.
- Receipt of benefits from the Office of Federal Employees Compensation.
- Receipt of active duty or drill pay as a reservist or member of the Federally recognized National Guard.

If you have a disability rating of 30% or more, you must promptly advise us of any change in the status of your dependents.

If your award includes special monthly compensation due to the need for aid and attendance, this additional allowance is generally subject to reduction from the first day of the second calendar month of admission to hospitalization, nursing home or domiciliary care at VA expense.

File Number: [redacted]
BIERING, JOSHUA D

Benefits will be reduced upon incarceration in a Federal, State, or local penal institution in excess of 60 days for conviction of a felony. The amount not payable may be apportioned to a spouse, dependent children or parents.

Monthly payments of your award may be stopped if you fail to furnish evidence as requested, fail to cooperate or submit to a VA examination when requested, or if you furnish VA, or cause to be furnished, any false or fraudulent evidence. Information submitted is subject to verification through computer matching programs with other agencies.

The law provides severe penalties, which include fine, imprisonment, or both, for the fraudulent acceptance of any payment to which you are not entitled.

**Note**: Compensation payments are exempt from claims of creditors. With certain exceptions, the payments are not assignable and are not subject to attachment, levy, or seizure except as to claims of the United States.

**IMPORTANT**

Please notify VA *immediately* if there is a change in any condition affecting your right to continued payments. Failure to notify us of these changes immediately may result in a debt that you will have to repay.

## Evidence Considered

In making our decision, we considered:

- VA Examinations; dated June 9, 2015, June 15, 2016
- VA Form 21-526 EZ: Application for Disability Compensation and Related Compensation Benefits; received May 2, 2016
- Service treatment records; received May 17, 2016 and May 28, 2016

## What You Should Do If You Disagree With Our Decision

**For Compensation Claims:**

If you do not agree with our decision, you must complete and return to us the enclosed VA Form 21-0958, *Notice of Disagreement*, in order to initiate your appeal. You have *one year from the date of this letter to appeal the decision*. The enclosed VA Form 4107, "*Your Rights to Appeal Our Decision*," explains your right to appeal.

File Number: [redacted]
BIERING, JOSHUA D

## What is eBenefits?

eBenefits provides electronic resources in a self-service environment to Servicemembers, Veterans, and their families. Use of these resources often helps us serve you faster! Through the eBenefits website you can:

- Submit claims for benefits and/or upload documents directly to the VA
- Request to add or change your dependents
- Update your contact and direct deposit information and view payment history
- Request a Veterans Service Officer to represent you
- Track the status of your claim or appeal
- Obtain verification of military service, civil service preference, or VA benefits
- And much more!

Enrolling in eBenefits is easy. Just visit www.eBenefits.va.gov for more information. If you submit a claim in the future, consider filing through eBenefits. Filing electronically, especially if you participate in our fully developed claim program, may result in a faster decision than if you submit your claim through the mail.

## If You Have Questions or Need Assistance

If you have any questions or need assistance with this claim, you may contact us by telephone, e-mail, or letter.

| If you | Here is what to do. |
|---|---|
| Telephone | Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the Federal number is 711. |
| Use the Internet | Send electronic inquiries through the Internet at https://iris.va.gov. |
| Write | VA now uses a centralized mail system. For all written communications, put your full name and VA file number on the letter. Please mail or fax all written correspondence to the appropriate address listed on the attached *Where to Send Your Written Correspondence* chart, below. |

In all cases, be sure to refer to your VA file number [redacted].

If you are looking for general information about benefits and eligibility, you should visit our web site at http://www.va.gov, or search the Frequently Asked Questions (FAQs) at http://iris.va.gov.

App. 0682

File Number: [redacted]
BIERING, JOSHUA D

We sent a copy of this letter to VETERANS OF FOREIGN WARS OF THE US, who you have appointed as your representative. If you have questions or need assistance, you can also contact your representative.

Thank you for your service,

**Regional Office Director**

Enclosure(s): VA Form 4107
VA Form 21-0958
Where to Send Your Written Correspondence

cc: VETERANS OF FOREIGN WARS OF THE US

March 09, 2018

nelnet
EDUCATION PLANNING & FINANCING

U.S. Department of Education
Information about your federal student loan

Total and Permanent Disability Servicing Unit

JOSH BIERING
[redacted]

Account Number: [redacted]

Dear JOSH BIERING:

The U.S. Department of Education (the Department) has completed its review of your Total and Permanent Disability (TPD) discharge application requesting discharge of your William D. Ford Federal Direct Loan (Direct Loan) Program loan, Federal Family Education Loan (FFEL) Program loan, Federal Perkins Loan (Perkins Loan) Program loan, and/or your Teacher Education Assistance for College and Higher Education (TEACH) Grant Program service obligation. Throughout this letter, we use the term "loan" to refer to one or more loans. In addition, we use the terms "you" and "your" to refer to the disabled individual who applied for discharge, JOSH BIERING.

Nelnet assists the Department in administering the TPD discharge process, and we will communicate with you on behalf of the Department concerning your discharge request.

Effective 03/09/2018, the Department has approved your application for discharge of the federal student loan or TEACH Grant service obligation identified below on the basis of your total and permanent disability. This letter contains important information regarding the TPD discharge.

Your holder(s) will discharge your loan or TEACH Grant service obligation. Your loan holder(s) will return any payments that were received after your disability date to the person who made the payments. For this purpose, your disability date is the effective date of the determination by the Department of Veterans Affairs that you were unemployable due to a service-connected disability.

The discharge of your loan or TEACH Grant service obligation, due to a total and permanent disability, cancels your obligation to repay the remaining balance of your loan or to complete your TEACH Grant service obligation.

**WHAT YOU NEED TO DO:**

Information about your loan and/or TEACH Grant service obligation that will be discharged is shown below. Carefully review this information and notify us immediately if you do not see one of your loan holders or TEACH Grant service obligation holders included in the list. Also let us know if you do not see one of your loans or TEACH Grant service obligations included in the list, or if you continue to receive bills from your loan holder(s).

| Holder Name | Holder Phone | Type | Date | Amount | School ID |
|---|---|---|---|---|---|
| DEPT OF ED/CORNERSTONE - UHEAA | (800) 663-1662 | Direct PLUS for Graduate or Professional Students | 08/31/2017 | $51,610 | 00361300 |
| DEPT OF ED/CORNERSTONE - UHEAA | (800) 663-1662 | Direct PLUS for Graduate or Professional Students | 06/09/2017 | $10,847 | 00361300 |
| DEPT OF ED/CORNERSTONE - UHEAA | (800) 663-1662 | Direct PLUS for Graduate or Professional Students | 08/18/2016 | $54,500 | 00361300 |
| DEPT OF ED/CORNERSTONE - UHEAA | (800) 663-1662 | Direct Stafford Unsubsidized | 08/11/2017 | $20,500 | 00361300 |

T04

| Holder Name | Holder Phone | Type | Date | Am | ID |
|---|---|---|---|---|---|
| DEPT OF ED/CORNERSTONE - UHEAA | (800) 663-1662 | Direct Stafford Unsubsidized | 08/17/2016 | $20,500 | 00361300 |

**WHAT YOU NEED TO KNOW:**

**Eligibility for New Loans or TEACH Grants:**

After you receive a TPD discharge, you are not eligible to receive a new Direct Loan, Perkins Loan, or TEACH Grant in the future unless:

- You obtain a certification from a physician that you are able to engage in substantial gainful activity; and
- You sign a statement acknowledging that the new loan or TEACH Grant service obligation cannot be discharged in the future on the basis of any injury or illness present at the time the new loan or TEACH Grant is made, unless your condition substantially deteriorates so that you are again totally and permanently disabled

**Tax Implications after Approval and Discharge of Your Loan Balances:**

The Department reports the discharge of any loan debt totaling $600.00 or more to the Internal Revenue Service (IRS) upon the completion of the three year post discharge monitoring period. If your loans are discharged, we will send you an IRS Form 1099-C that will identify the total amount of your discharged debt upon the completion of the three year post discharge monitoring period. The amount of the discharged debt will be considered income for federal tax purposes and possibly for state tax purposes. You may want to consult with a tax professional to determine how this may affect your personal taxes.

**HOW TO CONTACT US:**

Written correspondence can be sent to:

U.S. Department of Education
P.O. Box 87130
Lincoln, NE 68501-7130

In addition, you can visit DisabilityDischarge.com to check the status of your discharge application, upload any supporting documentation that we may request from you, and/or update your personal information.

If you have questions, you can call us at 888.303.7818 from 8 a.m. to 8 p.m. (Eastern) Monday through Friday and 8 a.m. to 7 p.m. Saturday, or you can email us at **disabilityinformation@nelnet.net**. If you are hearing impaired, you may web chat with a representative by visiting DisabilityDischarge.com and clicking Chat Now.

Sincerely,

Nelnet Total and Permanent Disability Servicer

| | |
|---|---|
| Report Title | HR Total Rewards Case Details |
| Run Date and Time | 2024-03-06 12:50:19 Argentine Time |
| Run by | Camila Alvarez |
| Table name | sn_hr_core_case_total_rewards |

## HR Total Rewards Case

| | | | |
|---|---|---|---|
| Number: | HRC0233554 | State: | Closed Complete |
| Transferred from: | | Resolution : | Request completed or approved |
| Transferred to: | | Approval: | Not Yet Requested |
| Opened for: | HR Internal Servicing NAMR | Priority: | 3 - Moderate |
| Opened for contact: | | Source(contact_type): | Email |
| Subject person: | Joshua Biering | Opened: | 2023-10-31 11:22:25 |
| Subject person contact: | | Opened by: | Deaneen Mullins |
| Stage: | | Skip auto assign: | true |
| Display order: | | Assignment group: | HR_NA_LOA |
| HR service: | Leaves (US & Canada) | Assigned to: | Deaneen Mullins |
| HR service subtype: | Other | Collaborators: | |
| HR service subtype topic: | I want to submit a leave request | Template: | Leaves (US & Canada) |
| Alight service process: | | | |
| Restrict: | false | | |
| Parent: | | | |
| HR profile: | HR Internal Servicing NAMR | | |
| Benefit plan: | | | |
| PDF Template: | | | |
| Skills: | | | |
| Related cases: | | | |
| Universal Request: | | | |

Short description:

Paid Admin Leave 10/27/2023

Description(rich_description):

To: Mullins, Deaneen (HR, USA) <deaneen.mullins@jpmorgan.com>Cc: Kiriluk, Anastasia (HR, USA) <anastasia.kiriluk@jpmorgan.com>Subject: Paid administrative leave

Good afternoon, Deaneen, and Anastasia:

I have an urgent matter where the Subject's manager and HRBA have just agreed to place employee Josh Biering (SID: I662283) on a paid administrative leave, effective end of day 10/27/2023 (also the the last day worked). Please let me know if you would like any additional information. I appreciate your help, as always!

Best,

Jonathan

Jonathan A. Jacobs | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

Original Description:

Exhibit
CX58

## Reimbursement

| | | | |
|---|---|---|---|
| School or Program name: | | Course title: | |
| Course justification: | | Course start date: | |
| Reimbursement status: | Submitted | Course end date: | |
| Refund amount: | $0.00 | Course cost: | $0.00 |

## Comments/Worknotes

| |
|---|
| Additional comments: |
| Work notes: |

2023-12-08 10:46:13 - Deaneen Mullins (Work notes)
EE termed 12/2/2023-closing case

2023-12-08 09:23:50 - Ashwini R Poojari (Work notes)
.

2023-12-08 09:21:53 - Ashwini R Poojari (Work notes)
Employee has been overpaid in 11/30/2023 paycheck with PAL and created overpayment case.

2023-12-08 09:21:22 - Ashwini R Poojari (Work notes)
Employee has been overpaid in 11/30/2023 paycheck with PAL.

2023-12-04 17:51:54 - Deaneen Mullins (Work notes)
Leave case summary
LDW: 10/26/2023
PTD: 12/1/2023
Term Reason: Misconduct

Updated PayOps Task
EE due 21.67 PAL begin date 10/27/2023 end date 10/31/2023
EE due 86.67 PAL begin date 11/1/2023 end date 11/30/2023
EE due 7.88 PAL begin date 12/1/2023 end date 12/1/2023

2023-11-22 12:18:34 - Deaneen Mullins (Work notes)
pymt processed

2023-11-21 10:02:09 - Kiran Kumar (Work notes)
Payroll has processed 86.67 PAL for 11/16/2023 to 11/30/2023 on cycle and funds will be available on 11/30/2023

2023-11-13 15:55:08 - Deaneen Mullins (Work notes)
pymt processed

2023-11-08 07:57:07 - Ashwini R Poojari (Work notes)
Payroll has processed 86.67 PAL for 11/1/2023 to 11/15/2023 on cycle and funds will be available on 11/15/2023

Regards,
Ashwini. P

2023-10-31 11:37:06 - Deaneen Mullins (Work notes)
Manually updated HCM placing EE on PLA/Admin leave eff 10/27/2023; LDW 10/26/2023
Manually updated Absence Tracker to reflect PLA/Admin 10/27/2023-12/26/2023

Per HCM, EE SM E - FT Mon-Fri (40/5) 8 hr days

Opened HR Task for PayOps
EE due 21.67 PAL begin date 10/27/2023 end date 10/31/2023
EE due 86.67 PAL begin date 11/1/2023 end date 12/15/2023
EE due 60.67 PAL begin date 12/16/2023 end date 12/26/2023

2023-10-31 11:29:18 - Deaneen Mullins (Work notes)
Reminder: EE termed 12/27/2023-closing case. Deaneen Mullins

App. 0688

## Parental Leave Details

| | |
|---|---|
| Leave of absence Leave type: | Leave of absence Number of Increments: |
| Leave of absence Type of leave requested: | Leave of absence Last Day Worked: |
| Leave of absence Leave status: | Leave of absence First day of leave: |
| Leave of absence Leave subtype: | Leave of absence Unpaid leave start date: |
| Leave of absence Birthing Parent: | Leave of absence Return to active status date: |
| Leave of absence Number of Existing Children: | Leave of absence Return to Work Date: |
| Leave of absence Submission Date: | Leave of absence Expected Leave Start Date (2nd Increment): |
| Leave of absence Child's Date of Birth: | Leave of absence Expected 2nd return to active status date: |
| Leave of absence Child's Date of Placement: | Leave of absence Expected Return To Work Date (2nd Increment): |
| | Leave of absence Statutory leave end date: |

| | |
|---|---|
| Related List Title | Task List |
| Table name | task |
| Query Condition | Parent = HRC0233554 |
| Sort Order | Number in ascending order |

1 Tasks

| Number ▲ | Priority | State | Assigned to | Short description | Task type |
|---|---|---|---|---|---|
| HRT0072017 | 4 - Low | Closed Complete | Ashwini R Poojari | Admin Leave Pay-SM TERM | HR Task |

| | |
|---|---|
| Related List Title | HR Task List |
| Table name | sn_hr_core_task |
| Query Condition | Parent = HRC0233554 |
| Sort Order | Number in ascending order |

1 HR Tasks

| Number ▲ | Short description | State | Assignment group | Assigned to | Due date |
|---|---|---|---|---|---|
| HRT0072017 | Admin Leave Pay-SM TERM | Closed Complete | HR_NA_LOAPayOps | Ashwini R Poojari | 2023-12-08 12:34:55 |

App. 0689

| | |
|---|---|
| Related List Title | HR Case List |
| Table name | sn_hr_core_case |
| Query Condition | Sys ID in d4b2a599473c8614b8878b69736d4318, 95e0add547f88614b8878b69736d43e5, 504fd59547b88614b8878b69736d4324, |
| Sort Order | Created in descending order |

50 HR Cases

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | Assigned to |
|---|---|---|---|---|---|---|---|
| HRC0990383 | Closed Complete | HR Internal Servicing NAMR | Wendy Liang | Hiring & Internal Mobility | WLE- Liang,Wendy V835051 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0990312 | Suspended | HR Internal Servicing NAMR | Sasha Cui | Hiring & Internal Mobility | WLE- Cui,Sasha F753277 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0990233 | Suspended | HR Internal Servicing NAMR | Angela Meiying Qu | Hiring & Internal Mobility | WLE- Qu,Angela Meiying F753331 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0990085 | Suspended | HR Internal Servicing NAMR | Thea Pan | Hiring & Internal Mobility | WLE-Pan,Thea N800029 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0989983 | Suspended | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | WLE error_Khayami,Alice_F753365 | HR_GLB_OnboardSupportOps | Benadect Samuel |
| HRC0989959 | Ready | HR Internal Servicing NAMR | Toni Morris | Accommodation Request | Accommodation Request request for Toni Morris - Escalation | HR_GLB_Accommodations | Tony Mason |
| HRC0989865 | Suspended | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | WLE error_Hong,Jay Hyunseung_N800112 | HR_GLB_OnboardSupportOps | Benadect Samuel |
| HRC0989860 | Suspended | HR Internal Servicing NAMR | Jeffrey Xie | Hiring & Internal Mobility | WLE- V835089 Xie,Jeffrey | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0989836 | Work in Progress | HR Internal Servicing NAMR | Cheryl Lenker | Leaves (US & Canada) | Leaves (US & Canada) LTD | HR_NA_LOA | Renae Dennis |
| HRC0989750 | Closed Complete | HR Internal Servicing NAMR | Kate Derbyshire | Document Requests (US) | Document Requests (US) request for HR Internal Servicing NAMR | HR_NA_EEDocuments | Jeannet Browne |
| HRC0989734 | Suspended | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | WLE error_Panchal,Mayank_O802910 | HR_GLB_OnboardSupportOps | Benadect Samuel |
| HRC0989710 | Draft | HR Internal Servicing NAMR | Aimee Turner | Employee Data Administration | Employee Data Administration request for HR Internal Servicing NAMR | HR_GLB_EDOServicing | |
| HRC0989582 | Closed Complete | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | WLE - Error- | HR_GLB_OnboardSupportOps | Monique Simmons |

| Number | State | Opened for | Subject person | HR service | Short description | Assignmen p | |
|---|---|---|---|---|---|---|---|
| HRC0989565 | Closed Complete | HR Internal Servicing NAMR | Casey Stein | Document Requests (US) | Document Requests (US) request for HR Internal Servicing NAMR | HR_NA_EEDocuments | Jeannet Browne |
| HRC0989494 | Ready | HR Internal Servicing NAMR | Anthony Rogers-Rose | General Inquiry | General Inquiry request for HR Internal Servicing NAMR | HR_NA_EEDocuments | BobbyJo Geissler |
| HRC0989382 | Closed Complete | HR Internal Servicing NAMR | Angeles Torres | Hiring & Internal Mobility | WLE-Torres,Angeles V835102 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0989343 | Suspended | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Employee Mass Data Changes | Employee Mass Data Changes request for HR Internal Servicing NAMR | HR_GLB_EDOOperations | Regulas Rodrigues |
| HRC0989316 | Closed Complete | HR Internal Servicing NAMR | Christina Carino Taylor | Leaves (US & Canada) | FMLA Eligibility Request | HR_NA_LOA | France Villamer-Padoc |
| HRC0989193 | Suspended | HR Internal Servicing NAMR | Ruth Mbanali | Hiring & Internal Mobility | WLE-Mbanali,Ruth - N800045 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0989162 | Closed Complete | HR Internal Servicing NAMR | Moises Arcelay III | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | Nusrath Taj |
| HRC0989164 | Closed Complete | HR Internal Servicing NAMR | Alejandro Escorcia Rios | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | Nusrath Taj |
| HRC0989161 | Ready | HR Internal Servicing NAMR | Margo Wilkinson | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | Nusrath Taj |
| HRC0989163 | Closed Complete | HR Internal Servicing NAMR | Terrance Pottorff | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | Nusrath Taj |
| HRC0989160 | Closed Complete | HR Internal Servicing NAMR | Michele Armstrong | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | Nusrath Taj |
| HRC0989158 | Ready | HR Internal Servicing NAMR | Liza Sepulveda Ortiz | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | Nusrath Taj |
| HRC0989157 | Ready | HR Internal Servicing NAMR | Carl Foulke | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPayOps | M P Medappa |

App. 0691

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | |
|---|---|---|---|---|---|---|---|
| HRC0989156 | Ready | HR Internal Servicing NAMR | "Q" Roberts | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | M P Medappa |
| HRC0989159 | Ready | HR Internal Servicing NAMR | Charnell Stewart | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | M P Medappa |
| HRC0989155 | Ready | HR Internal Servicing NAMR | Lydia Gutierrez | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | M P Medappa |
| HRC0989154 | Closed Complete | HR Internal Servicing NAMR | Terressa Brown | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Kunja Pandey |
| HRC0989153 | Ready | HR Internal Servicing NAMR | Lorena Estrada | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | M P Medappa |
| HRC0989152 | Ready | HR Internal Servicing NAMR | Denise Rendon | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | M P Medappa |
| HRC0989148 | Closed Complete | HR Internal Servicing NAMR | Johann Reyes | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Kunja Pandey |
| HRC0989149 | Closed Complete | HR Internal Servicing NAMR | Sarina Elsbree | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Kunja Pandey |
| HRC0989151 | Closed Complete | HR Internal Servicing NAMR | Heather Hill | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Kunja Pandey |
| HRC0989150 | Closed Complete | HR Internal Servicing NAMR | Charlee Strozier | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Kunja Pandey |
| HRC0989146 | Closed Complete | HR Internal Servicing NAMR | Angelica Roe | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Ashwini R Poojari |
| HRC0989147 | Closed Complete | HR Internal Servicing NAMR | Kristel Garcia | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Ashwini R Poojari |

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | |
|---|---|---|---|---|---|---|---|
| HRC0989144 | Closed Complete | HR Internal Servicing NAMR | Danielle Ballinger | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Ashwini R Poojari |
| HRC0989145 | Closed Complete | HR Internal Servicing NAMR | Aimee Turner | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Ashwini R Poojari |
| HRC0989143 | Closed Complete | HR Internal Servicing NAMR | Mark Plummer Jr. | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Ashwini R Poojari |
| HRC0989096 | Ready | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | Duplicate HcM records(FTC_FTE)-I810186 971773 Kai Milici 210492120 | HR_GLB_OnboardSupportOps | Ayush Tyagi |
| HRC0989066 | Ready | HR Internal Servicing NAMR | Kerry Ostrander | Document Requests (US) | Document Requests (US) request for HR Internal Servicing NAMR | HR_NA_EEDocuments | BobbyJo Geissler |
| HRC0989014 | Ready | HR Internal Servicing NAMR | William Imig | General Inquiry | General Inquiry request for HR Internal Servicing NAMR | HR_NA_EEDocuments | BobbyJo Geissler |
| HRC0989008 | Ready | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | Duplicate HcM records- D551499 971299 Brian Kim 210449515 | HR_GLB_OnboardSupportOps | Rebekah Buggs |
| HRC0988936 | Suspended | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | Duplicate HCM Records-R671298 971701 Valene Samuels 210479941 | HR_GLB_OnboardSupportOps | Lisandra Frias |
| HRC0988828 | Suspended | HR Internal Servicing NAMR | Adam Schaaf | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOAPay Ops | Kisha Craig |
| HRC0988820 | Closed Complete | HR Internal Servicing NAMR | HR Internal Servicing NAMR | Hiring & Internal Mobility | WLE Error-Chen,Weiqi-R747430 | HR_GLB_OnboardSupportOps | Monique Simmons |
| HRC0988637 | Closed Complete | HR Internal Servicing NAMR | Nathan Murphy | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOA | Waki Bag |

| | |
|---|---|
| Related List Title | Interaction List |
| Table name | interaction |
| Query Condition | Sys ID in |

App. 0693

| | |
|---|---|
| Sort Order | Number in ascending order |

None

| | |
|---|---|
| Related List Title | Interaction List |
| Table name | interaction |
| Query Condition | Opened for = Joshua Biering |
| Sort Order | Created in descending order |

5 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|---|---|---|---|---|---|---|---|---|
| IMS0105283 | 2023-11-29 14:37:31 | Pay & Tax Assistance (US) interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Tyk Williams [redacted] | 2023-11-29 15:05:35 | E778734 |
| IMS0102403 | 2023-11-28 12:03:53 | General Inquiry interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Mark Magtangol Gimenez | 2023-11-28 12:15:23 | D566310 |
| IMS0090500 | 2023-11-17 11:37:07 | Pay & Tax Assistance (US) interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Pamela Nelson | 2023-11-17 11:40:31 | N604018 |
| IMS0068112 | 2023-11-02 18:18:18 | | Joshua Biering | Closed Complete | Phone | Kane Victoria | 2023-11-02 18:24:30 | V749410 |
| IMS0059925 | 2023-10-30 11:38:39 | General Inquiry interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Eli Candelaria | 2023-10-30 11:48:42 | N636764 |

| | |
|---|---|
| Related List Title | Attachment List |
| Table name | sys_attachment |
| Query Condition | Table name = sn_hr_core_case_total_rewards AND Table sys ID = dd6f8314839abd583ac632347daad351 |
| Sort Order | Created in descending order |

1 Attachments

| | |
|---|---|
| Related List Title | HR Case List |
| Table name | sn_hr_core_case |
| Query Condition | Sys ID in 25abb1eb477ff1148372d759126d43a2, 497549df832f391800d93aa8beaad36e, cabd788b4763f190a6ec9915126d4340, |
| Sort Order | Created in descending order |

50 HR Cases

App. 0694

| Number | State | Opened for | Subject person | HR service | Short description | Assignmen p | |
|---|---|---|---|---|---|---|---|
| HRC0723803 | Closed Complete | HR Internal Servicing NAMR | Jorge Quintero | Leaves (US & Canada) | Paid Admin Leave 1/24/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0638987 | Closed Complete | HR Internal Servicing NAMR | Michael Mauro IV | Leaves (US & Canada) | Paid Admin Leave 1/10/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0632918 | Closed Complete | HR Internal Servicing NAMR | Sebastian Garcia | Leaves (US & Canada) | Paid Admin Leave 1/10/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0601665 | Closed Complete | HR Internal Servicing NAMR | Sage Dante | Leaves (US & Canada) | Leaves (US & Canada) request for HR Internal Servicing NAMR | HR_NA_LOA | Tamera Bailey |
| HRC0597238 | Closed Complete | HR Internal Servicing NAMR | Jeffrey Hart | Leaves (US & Canada) | Paid Admin Leave 1/4/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0582682 | Closed Complete | HR Internal Servicing NAMR | Sheena Gray | Leaves (US & Canada) | Paid Admin Leave 1/3/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0582256 | Work in Progress | HR Internal Servicing NAMR | Chris Nunez | Leaves (US & Canada) | Paid Admin Leave 1/2/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0581893 | Work in Progress | HR Internal Servicing NAMR | Jake Hart | Leaves (US & Canada) | Paid Admin Leave 1/2/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0580964 | Closed Complete | HR Internal Servicing NAMR | Christopher Crownover | Leaves (US & Canada) | Paid Admin Leave 1/2/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0573016 | Closed Complete | Doreen Warren | Priscilla Vieira | Leaves (US & Canada) | Leaves (US & Canada) case for Doreen Warren | HR_NA_LOA | Irish Ann Balase |
| HRC0569363 | Closed Complete | HR Internal Servicing NAMR | Dragana Hutson | Leaves (US & Canada) | Unpaid JBS 12/29/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0547490 | Closed Complete | Mirna Boktor | Mirna Boktor | Leaves (US & Canada) | Leaves (US & Canada) request for Mirna Boktor | HR_NA_LOAPay Ops | Vijay kumar Ganga Reddy |
| HRC0547448 | Closed Complete | HR Internal Servicing NAMR | Dashawna Mason | Leaves (US & Canada) | Paid Admin Leave 12/26/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0545572 | Closed Complete | HR Internal Servicing NAMR | Michael Mastrocco | Leaves (US & Canada) | Paid Admin Leave 12/22/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0542662 | Closed Complete | HR Internal Servicing NAMR | Idina Wilson | Leaves (US & Canada) | Leaves (US & Canada) Return to Work | HR_NA_LOA | Carletta Roseboro |
| HRC0539588 | Closed Complete | HR Internal Servicing NAMR | Leslie Corley | Leaves (US & Canada) | Paid Admin Leave 12/14/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0538988 | Closed Complete | Sabrina Williams | Neeraj Kumar | Leaves (US & Canada) | Paid Admin Leave 1/2/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0530979 | Closed Complete | HR Internal Servicing NAMR | Karen Ziomek Kaczmarczyk | Leaves (US & Canada) | Admin Only CCL | HR_NA_LOAPay Ops | Vijay kumar Ganga Reddy |
| HRC0530570 | Work in Progress | HR Internal Servicing NAMR | Michael Dobbins | Leaves (US & Canada) | Paid Admin Leave 1/2/2024 | HR_NA_LOA | Deaneen Mullins |
| HRC0525200 | Closed Complete | HR Internal Servicing NAMR | Luis Ortiz | Leaves (US & Canada) | Paid Admin Leave 12/23/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0514637 | Closed Complete | HR Internal Servicing NAMR | Melissa George | Leaves (US & Canada) | Admin Only CCL | HR_NA_LOAPay Ops | Vijay kumar Ganga Reddy |

App. 0695

| Number | State | Opened for | Subject person | HR service | Short description | Assignmen p | |
|---|---|---|---|---|---|---|---|
| HRC0509165 | Closed Complete | HR Internal Servicing NAMR | Sage Dante | Leaves (US & Canada) | Paid Admin Leave 10/27/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0505210 | Closed Incomplete | Danielle Kelez | Sam Williams | Leaves (US & Canada) | Paid Admin Leave 12/13/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0491312 | Closed Complete | HR Internal Servicing NAMR | Alexis Anderson | Leaves (US & Canada) | Paid Admin Leave 12/14/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0490169 | Closed Complete | HR Internal Servicing NAMR | Abby Swiatkowski | Leaves (US & Canada) | Paid Admin Leave 12/14/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0487312 | Closed Complete | HR Internal Servicing NAMR | Cynthia Krebbeks | Leaves (US & Canada) | Paid Admin Leave 9/25/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0487292 | Closed Complete | HR Internal Servicing NAMR | Subrahmanyam Mamidi | Leaves (US & Canada) | Leaves (US & Canada) Admin Leave from AK | HR_NA_LOA | Jessica Dale |
| HRC0479370 | Closed Complete | HR Internal Servicing NAMR | Darry Gaspard | Leaves (US & Canada) | Paid Admin Leave 12/12/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0474084 | Closed Complete | HR Internal Servicing NAMR | Mark Glasser | Leaves (US & Canada) | Paid Admin Leave 12/12/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0465101 | Closed Complete | HR Internal Servicing NAMR | Daniel Mendes | Leaves (US & Canada) | Paid Admin Leave 12/11/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0463204 | Closed Complete | HR Internal Servicing NAMR | Thando Kole | Leaves (US & Canada) | Paid Admin Leave 12/6/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0456169 | Closed Incomplete | HR Internal Servicing NAMR | Francesco Guadagno | Leaves (US & Canada) | Paid Admin Leave 12/8/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0455346 | Closed Complete | Liz Gaudet | Sarah Zava | Leaves (US & Canada) | Leaves (US & Canada) case for Liz Gaudet | HR_GLB_TimeAwayGAT | Arnette Menezes |
| HRC0446733 | Closed Complete | HR Internal Servicing NAMR | Tobi Robertson | Leaves (US & Canada) | Admin Only CCL | HR_NA_LOAPay Ops | Whitney Vanover |
| HRC0439520 | Closed Complete | HR Internal Servicing NAMR | Jason Hoffman | Leaves (US & Canada) | Paid Admin Leave 12/5/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0432935 | Closed Complete | Patrick McDonagh | Patrick McDonagh | Leaves (US & Canada) | Leaves (US & Canada) request for Patrick McDonagh | HR_NA_LOAPay Ops | Kiran Kumar |
| HRC0426318 | Closed Complete | HR Internal Servicing NAMR | Samira El Wardini | Leaves (US & Canada) | Admin Only CCL | HR_NA_LOAPay Ops | Whitney Vanover |
| HRC0423302 | Work in Progress | Nina Cattano | Nina Cattano | Leaves (US & Canada) | Leaves (US & Canada) Admin case for Nina Cattano 3/11 | HR_NA_LOA | Jessica Dale |
| HRC0417483 | Work in Progress | HR Internal Servicing NAMR | Phil Chen | Leaves (US & Canada) | Paid Admin Leave 12/4/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0414737 | Closed Complete | HR Internal Servicing NAMR | David Humphrey | Leaves (US & Canada) | Paid Admin Leave 11/29/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0398942 | Work in Progress | HR Internal Servicing NAMR | Bill Tovell | Leaves (US & Canada) | Paid Admin Leave 11/29/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0398356 | Closed Complete | HR Internal Servicing NAMR | Jonah LeBlanc | Leaves (US & Canada) | Paid Admin Leave 11/29/2023 | HR_NA_LOA | Deaneen Mullins |

| Number | State | Opened for | Subject person | HR service | Short description | Assignmen p | |
|---|---|---|---|---|---|---|---|
| HRC0393950 | Closed Complete | HR Internal Servicing NAMR | Brayden Cutler | Leaves (US & Canada) | Paid Admin Leave 11/21/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0373422 | Closed Complete | Luis Ortiz | Luis Ortiz | Leaves (US & Canada) | Leaves (US & Canada) request for Luis Ortiz | HR_NA_LOAPay Ops | Kiran Kumar |
| HRC0372762 | Closed Complete | HR Internal Servicing NAMR | Deimi Mendoza | Leaves (US & Canada) | Paid Admin Leave 11/23/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0366691 | Closed Complete | Joseph Domingeaux | Jayla Timley | Leaves (US & Canada) | Paid Admin Leave 11/19/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0365672 | Closed Complete | HR Internal Servicing NAMR | Betsy Sanchez | Leaves (US & Canada) | Paid Admin Leave 11/22/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0363333 | Closed Complete | HR Internal Servicing NAMR | Carol Tinsley | Leaves (US & Canada) | Admin Only CCL | HR_NA_LOAPay Ops | Whitney Vanover |
| HRC0357104 | Closed Complete | HR Internal Servicing NAMR | Onosetale Iyobhebhe | Leaves (US & Canada) | Paid Admin Leave 10/21/2023 | HR_NA_LOA | Deaneen Mullins |
| HRC0349381 | Closed Complete | HR Internal Servicing NAMR | Stephanie Batton | Leaves (US & Canada) | Paid Admin Leave 11/18/2023 | HR_NA_LOA | Deaneen Mullins |

| | |
|---|---|
| Related List Title | Knowledge Use List |
| Table name | kb_use |
| Query Condition | Sys ID in |
| Sort Order | Created in descending order |

## Summary

I was always proud to work at JPMorgan and wish I could have made a career at JPMorgan. Following 7 previous years of stellar performance reviews, zero written reprimands or notices, overwhelmingly positive stakeholder and peer feedback, the last 12 months became unsustainable due to the hostile and toxic working conditions that I endured for several months before resigning- which I strongly believe any reasonable person would have resigned if they were experiencing the similar toxic work conditions and retaliation I faced, outlined further.

**The purpose of this report is to outline the many examples where I was unfairly treated, rebuked, which collectively, created a hostile and toxic work environment for me. I feel and know, and peers/management would agree, I'm a known anxious individual who is incredibly focused on delivering results and upholding high standards. I should not be penalized for this, particularly when these characteristics are highlighted as positive employee attributes in "How We Do Business Principles."**[1]

I refer to "Leadership" collectively as:

- J.T. Aughinbaugh, Managing Director, Fort Worth Market Manager
- Kyle Hitchcock, Managing Director, Fort Worth Head of Investments and Advice
- Ben Stewart, Executive Director, Fort Worth Market Team Lead

## Background

I worked for JPMorgan from May 2016 until December 1, 2023. I discussed my resignation with management, Ben Stewart, and J.T. Aughinbaugh on Tuesday, 10/24/2023 at approximately 2:30pm CST, regarding my dissatisfaction in the workplace and overall concerns. I took personal days 10/25, 10/26 and 10/27.

I discussed my plan to submit my resignation with several employees (documented via multiple text messages and happy to share upon request). After dropping [redacted] (alleged Complainant for a peculiar investigation raised considering my desire to resign) off at the office at 10:30am CST on 10/24/2023, we agreed the workplace was "toxic" and I shared with [redacted] I planned to resign.

Following an email I sent to Kyle Hitchcock, the Fort Worth Market Head of Investments and Advice, on 10/23/2023, disappointed in the lack of support and follow up email he sent to my client, I requested a meeting to discuss in person with Hitchcock at 11:30am CST on 10/24/2023. In tears, I shared with Kyle my frustration with the political office landscape and my

[1] JPMorgan "How We Do Business" Principles; https://www.jpmorganchase.com/about/our-business/business-principles

overall troubles I had with management and lack of support/resources. I shared with Kyle I was planning to resign and meet with J.T. and Ben Stewart that afternoon.

I had a scheduled meeting with competitor, Merrill Lynch, on Friday 10/27 at 3:00pm CST, which was a private calendar event on my work calendar.[2]




I received a text message from my manager, Ben Stewart, at 2:35pm CST, asking I call him at the office as soon as possible. I called him following my interview and was told "effective immediately, you are being placed on involuntary, paid administrative leave. This is all the information I can share at this time."

As I had planned to do for several months, I submitted my formal resignation via me@jpmc and via email to my leadership Saturday morning, 10/28/2023. [3]

**<u>33 days after I submitted my Voluntary Resignation, Aughinbaugh and Stewart terminated me on 12/1/2023 for violation of the JPMorgan Conduct and anti-harassment</u>**

[2] Josh's work calendar events on 10/27/2023
[3] Voluntary resignation submission and email

**policies**[4]. They did not tell me any background or supporting evidence. This confirmed their intention to mark a "discharge" on my FormU5, which is common knowledge in the industry, that reputable firms will not hire a well-qualified candidate with a "discharged" FormU5.

Chase De Leon, JPMorgan Employee Relations Intake Team, sent me a follow up email on Tuesday, 12/26/2023, requesting more information pertaining to some of my answers I submitted in my JPMorgan Chase Exit Survey. [5]

Question: *In your Exit Survey response, you have shared that you have been consistently humiliated and retaliated against by the above newly appointed manager for protected activities. Please provide more details about your concerns*

*What were the protected activities involved and please also provide the date/time, and what happened in the incident/s of retaliation.*

**Relevant Legal Code and Regulations**

- **Title I of the Americans with disabilities Act (ADA)** protect veterans from employment discrimination.
  - Title 1 of the ADA is enforced by the U.S. Equal Employment Opportunity Commission (EEOC), prohibits private and state and local government employers with 15 or more employees from discriminating against individuals on the basis of disability.
  - Any veteran with a disability who meets the ADA's definition is covered, regardless of whether the disability is service connected.
  - The ADA defines an "individual with a disability" as a person who **(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.**
- **National Labor Relations Board ("NLRB")**:
  - The National Labor Relations Act ("NLRA"), which is enforced by the NLRB, ensures the right of private-sector workers to organize, to bargain collectively, and to otherwise engage in concerted activities, with or without union representation, in an effort to **improve their pay and working conditions.**
  - Reference, "NLRB General Counsel Issues Memo on Non-competes Violating the National Labor Relations Act" on 5/30/2023[6]- "the memo explains that **overbroad non-compete agreements** are unlawful because they chill employees from exercising their rights under Section 7 of the National Labor Relations Act,

[4] Voicemail Recording- Termination Call- 12/1/2023
[5] Email from Employee Relations 12/26/2023

[6] https://www.nlrb.gov/news-outreach/news-story/nlrb-general-counsel-issues-memo-on-non-competes-violating-the-national

which protects employee's rights to **improve their working conditions**. Specifically, protect an employee's rights to 1. Concertedly threaten to resign to secure better working conditions….

    - "You have the right to act with coworkers to address work-related issues in many ways…. Your employer cannot discharge, discipline, or threat you for or coercively question you about, this "**protected concerted**" activity."[7]

- What are Prohibited and Unlawful Employment Activities?
    - Unfair treatment because of disability
    - Harassment by managers, co-workers, or others in your workplace, because of disability
        - The harasser can be your manager, a manager in another area, a co-worker, or others in your workplace, such as clients or customers.
        - For inappropriate behavior to rise to the level of illegal harassment, it must be unwelcome or unwanted. It must also be severe or pervasive (meaning that it happened frequently).
    - Retaliation because you complained about job discrimination or assisted with a job discrimination proceeding, such as an investigation or lawsuit.
        - The laws protect you whether you are complaining about discrimination directed at you or discrimination directed at others. These laws also protect you from being punished, treated differently, or harassed at work because you help someone else report job discrimination. [8]
    - Retaliation for protected concerted activities as protected by the NLRA
    - Heightened scrutiny or backlash

## Facts

- I am a 100% Service- Connected Disabled Veteran
    - My redacted Disability Letter and Rating was issued by the Department of Veteran Affairs on July 26, 2016, for my military service from May 2011 to May 2016.[9]
    - Page 10 of my VA Disability Letter outlines the applicable disability "attention deficit hyperactivity disorder, combined and unspecified anxiety disorder (also claimed as anxiety, insomnia, post-traumatic stress).
    - These disabilities are based on: Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform

[7] https://www.nlrb.gov/about-nlrb/rights-we-protect/whats-law
[8] Texas Workforce Commission- https://www.twc.texas.gov/programs/civil-rights/employment-discrimination#:~:text=What%20Is%20Prohibited%3F,older)%2C%20or%20genetic%20information.
[9] Biering VA Disability Letter;Redacted_7/26/2016

occupational tasks **only during periods of significant stress**, suspiciousness, anxiety, chronic sleep impairment, panic attacks more than once a week.

- JPMorgan Aware of my Disability
  - My Veteran and Disability Status was reported to JPMorgan during my intake and employment onboarding paperwork circa Summer 2016
  - 8-years of service with the firm- commonly understood that I am a high performer but can often exude and portray heightened periods of anxiety, particularly during times of significant stress.
  - Common knowledge, and confirmed by management, that I did not use the parking garage at work to save on the monthly parking costs, approximately $170/month. Instead, I parked on the street at parking meters for free since I had "Disabled Veteran" license plates- which the city offers free metered parking.

## Timeline, Events and Examples

- **1/26/2022**- U4 Complaint- Customer Dispute- Denied by JPMorgan
  - The customer submitted written complaint, alleging unsuitable mutual fund investment, JPMorgan determined recommendation was suitable and denied complaint.
  - U4 disclosure was only required for, Kyle Hitchcock, but I **volunteered** to take the U4 disclosure as well as show of good faith/teamwork. JPMorgan Counsel, Supervisory Management and Market Manager promised to support expungement of disclosure in the following 12 months.
- **4/4/2022**- Kyle Hitchcock openly criticizes and ridicules me in front of office, in front of junior peers. I speak with Market Manager because Complainant felt the ridicule was not warranted. [10]
  - *Established contentious relationship with Kyle, when he eventually was appointed Head of Investments for Fort Worth branch/office* on 6/30/2022
- **8/28/2022**- My son was born. I took 4 days off, did not take extended paternity leave, due to large prospective business opportunity.
  - Initial element of "unjust enrichment"; I was on the phone with E[redacted] A[redacted] and Kyle Hitchcock, pleading for the opportunity to onboard this group of clients due to the upside. Also pleading for a private stock loan. I used all my political capital for this client, the same client that JPMorgan sends the "bus" to protect the back door on 11/28/2023, and says I've been discharged.[11]
- **10/1/2022**- Former Market Manager, takes administrative leave for health concerns- no further information provided or shared, office morale low with uncertainty and direction.
- **11/7/2022**- Appointment with Psychiatrist (Dr. Marvin) regarding Work Stress and explores medication management.

[10] Text message with D[redacted] N[redacted] requesting meeting to discuss Kyle's actions
[11] Text message with Dr. M[redacted] D[redacted] M[redacted]

- **12/1/2022**- Fort Worth Market Manager resigned.
  - Recently learned on 11/6/2023, Market Manager took FMLA to seek federal protection given toxic environment and retaliation from Region Head- "EBA"
- **o/a 1/5/2023**- J.T. Aughinbaugh appointed as Fort Worth Market Manager
- **o/a 1/15/2023**- I raised concern to management that our 'metrics' did not accurately account for a $50 million prepaid variable forward and penalized scorecards.
  - My concern was disregarded and viewed as non-material.
  - Fort Worth leadership firmly told me that the only credit that matters is "Revenue Growth" which was recognized. I countered stating that leadership looks to (per all scorecards) Revenue Growth, Investment Banking and Credit Flows, as well as New Client Points.
- **1/24/2023**- My mental health appointment with Psychiatrist (Dr. Marvin) regarding Work Stress that continues to build.
- **2/1/2023**- My effective promotion date to Executive Director
  - Promotion decision made by leadership for prior years continued performance and discussed during October 2022 talent review.
- **3/7/2023**- I request Market Manager support to pursue large prospective client opportunity- [redacted]
  - I request 30-minute pre-call to discuss opportunity. Complainant chastised by Market Manager for "wasting [Market Manager's] time" with a pre-call
  - Following the meeting- Market Manager criticizes me for not preparing or briefing Market Manager on the opportunity.
- **3/14/2023**- I finally receives response from JPMorgan Counsel after following up on 1/21/2023, 1/27/2023, 2/21/2023, 3/14/2023 and 3/20/2023.
  - **5/1/2023**- Supervisory Management directs me to HR. HR emails me back, confirming "the process of expunging your U4 does not place you at risk."
  - **5/10/2023**- Supervisory Manager, Kimberly Burns, and Market Manager, J.T., firmly instruct Complainant to "cease and desist" pursuit to expunge U4. I expresses frustration with new management and breach of trust to supervisor, Ben Stewart.
- **3/30/2023**- I text direct manager/supervisor (Ben Stewart) "Why is J.T. so annoyed anytime I try and ask him for help?" Ben does not respond.
- **4/2/2023**- I request Market support for returning sponsorships that JPMorgan supported for 4+ years in a row. Request consideration for Sponsorship for event that ties directly to new business opportunity (Southlake VIP concert for M[redacted] Team); Market Manager denies, views me as troublemaker…again.
  - Sponsorship dollars redirected to fund Business "40 under 40" submissions for Ben Stewart and Belen Garren
- **4/11/2023**- Market Manager criticizes me for email to Commercial Bank, Non-Profit Group Head. Adam Rudner, regarding new business opportunity. I disagree and thinks the communication to be professional.

- N[redacted] Region Head, E[redacted] pressures Complainant and prior Market Manager for not pursuing loan opportunity.

- **5/4/2023**- Raising support/analyst coverage concerns to Brooke Reeb, co-Analyst Manager
  - Response from leadership is that the Complainant has plenty of coverage/support and should be more efficient with time, resources, and tasks.
- **5/25/2023**- I had first mental breakdown in the office. In conference room with Ben Stewart, in tears, raising concerns and elevated stress level/toxic work environment. I take Personal Day and Ben and [redacted] sends Tiff Treats cookies. Expressed dissatisfaction and discomfort in the workplace- driven by new leadership.
- **6/22/2023**- I show Supervisor LinkedIn message from Texas Capital Recruiter regarding $750k compensation. Supervisor acknowledges that I am a highly sought after Banker that is actively recruited.
- **7/31/2023**- Mid-Year Review with Supervisor/Manager, Ben Stewart
  - Praised for strong business results and pipeline.
  - I raised concerns and requested assistance with transitioning clients to Advisors with more capacity, more support resources, scorecard corrections, sponsorships, and compensation expectations.
- **8/8/2023**- Market Manager and I get into a disagreement regarding prospective client ($100 million Endowment, quasi-government entity)
  - Market Manager, yet again, claims I did not prepare Market Manager for meeting. I sent multiple calendar invitations for a pre-call which were declined. Market Manager viewed as a waste of time.
  - Market Manager denies me the opportunity to seek guidance from the Private Bank's Client Review Forum to determine if we can pursue this opportunity. Escalated, heated discussion over the phone and in the office.
  - I plead with Market Manager that the request to present a new business opportunity to the Client Review Forum is significantly less risky than his decision to serve as an informal transfer agent for public company/prospectus sale and transaction. Market Manager, J.T., gets super defensive and argumentative as he knows this transaction breached several SEC and compliance issues.
  - I text Ben Stewart, "this is exhausting" referencing the work environment, politics and toxicity.
- **8/9/2023**- I texts Manager requesting a 1:1 meeting, frustrated with work environment and culture.
- **8/10/2023**- I have a Therapy Session with Counselor through Spring Health, EAP. Concerned with management style and dissatisfaction in the workplace. Reference Therapist notes.
  - **8/10/2023**- My appointment with Psychiatrist, Dr. Marvin. Specifically struggling and stated "butting heads with new Market Manager."
- **8/23/2023- I grab lunch with Senior Managing Director, Marcus, asking for advice on how to navigate the new leadership. Struggling to connect and unhappy.**

  - **Share with Marcus if this continues, I have no choice to leave to another firm as I have been considering for several months. Marcus supportive- wants me to be happy.**
- **8/24/2023**- Follow up 1:1 with Ben Stewart. No resolution on issues/concerns raised before.
  - Shared with Ben Stewart the guidance Marcus shared- establish close relationship directly with P[redacted] and E[redacted] (South Region Heads aka J.T.'s boss)
  - Stewart shares this information with J.T., despite me asking to keep it confidential.
  - I reach out to Pete Chillian's assistant to schedule meeting(s). She drags her feet, at the request of J.T. to postpone scheduling any meeting with me.
- **8/25/2023**- Market Manager and I have a meaningful disagreement over several beers (6+ each). Following accusation that Complainant and Marcus were planning an "insurgency."
  - **8/27/2023**- I immediately call Ben Stewart and shares what happened. Continues to express frustration with toxic work environment and leadership. **Market Manager, J.T., suggests there is an insurgency and that "you do not want to be part of it" suggesting they have an "exit plan" for Marcus. Following multiple accusations, I walk out saying "f*** you, keep treating people like this, you are going to lose your top produces."**
  - **8/28/2023**- I take day off for son's birthday. Market Manager calls me stating "I would have figured as a man you would have called me by now apologizing for your behavior. I want you to come in and we need to settle this today. Don't worry, I'm not going to terminate you or anything, but we need to bury this." Market Manager ensures this will not be escalated to HR or senior leadership- "handling locally."
- **9/5/2023**- I keep hearing rumors that I'm allegedly overworking my Analyst partners. Requests feedback from Analyst managers on what I should do better/differently. They do not provide any feedback.
- **9/7/2023**- I text Ben Stewart, "Can we please connect tomorrow? I don't like the emotional state I'm in. We need to figure something out. Despite me being in my own head. I can't help but think conversations are behind had behind the scenes and I don't like it. I don't know if this is the right place for me."
  - **9/7/2023**- Complainant texts confidant and co-Analyst Manager, Will Brawley, "Bro. I don't know if JPM is the right place for me. This sh** is driving me crazy. I think I'm going to put my notice in tomorrow."
  - **9/8/2023**- Manager coordinates HR call (Stephanie Stainbeck) with me to discuss leave options and Employee Assistance Program resources- despite my specific request that I did not want to engage HR at this time. HR/EAP representative share information on FMLA/ short term medical leave. Complainant told expectation **would be not to contact Clients**- I'm uneasy given business pipeline/opportunities leading into 2024 metric year.

- **9/10/2023**- I request different solutions and accommodations for leave to manage any negative 'optics' on a leave of absence while incubating new business opportunities. Proposed **solution denied by Manager, Ben Stewart**.

- **9/13/2023**- I have an additional Therapy Session with Counselor through Spring Health, EAP. Dissatisfaction in the workplace continues and "conspiring thoughts" are getting worst. Reference Therapist notes.
- **9/14/2023**- I follow up with Human Resources representative to explore Employee Assistance Program options. HR connects me with local, Dallas, Employee Assistance Program representative- John Tuttle.
  - **John Tuttle oddly keeps pressuring me to take FMLA or medical leave which raised my suspicions further that JPMorgan trying to squeeze me out on established client relationships.** I share this feedback with Ben Stewart that I got an eerie feeling following the call.
- **9/26/2023**- Market Manager, J.T., asks me to meet for drinks at Railhead BBQ.
  - Market Manager shares he did not think that FMLA or a short-term leave of absence is the right move for me- no further information on why.
- **9/28/2023**- Follow up 1:1 with Manager. No resolution on issues/concerns raised before.
  - Specifically discussed compensation expectations and work performance/recognition relative to underperformers.
  - Shared draft of the 2023-year end performance review. Manager specifically did not like the bullet point "Per 9/22/2023 Business Management Dashboard; $3.62MM risk adjusted revenue growth accounts for 21.34% of the 17-Advisor Fort Worth Single Coverage Team's overall revenue growth." The manager claimed that bullet point, although factual, did not promote or foster the team approach and culture.
- **10/6/2023**- I reengaged HR contact to discuss FMLA options. Workplace continues to be unmanageable and toxicity increasing and concerns unaddressed.
- **10/10/2023**- I expressed concerns, again, to Manager regarding coverage and support for the known increase in workload expected in Q2 2024. Requested redundancy coverage and support. Ben Stewart and I entered into a heated verbal disagreement.
  - **I'm, fighting back tears, ends on "I'm not sure JPMorgan is the right culture or home for me anymore. I need to do some serious introspective thinking on where I belong."**
- **10/17/2023**- I have another emotional breakdown in Market Manager's office after Market Manager rebukes Complainant.
  - Market Manager accuses me, again, "What the f***, we agreed we were going to keep the disagreement over beers between us, but now rumors are spreading. I don't know what I'm going to do yet with you, but this is not good for you."
  - I ensure Market Manager that he is not inciting an insurgency, "all I have been doing is keeping my head down, working on what I can and not ruffling feathers. I've been

walking on eggshells. I want to work here, but this environment is becoming way too toxic, and I am officially "combat ineffective".

- **<u>10/18/2023</u>**- I have a scheduled meeting with South Region Head, Pete Chillian
    - Recommended by Marcus Mainord, and agreed upon by Ben Stewart, that I should meet with Pete Chillian for a 1:1 in advance of talent review season (mid to late October typically)
    - Note- J.T. had a reminder on his calendar for when Complainant planned to meet with Pete. This is not common. Specifically reference Keith Wiley's (my peer) shared calendar. Keith had 1:1 with Pete the week prior and J.T. did not track his meeting.
    - **<u>2:15pm CST – 3:15pm CST</u>**- J.T. and E[redacted] A[redacted] (Pete Chillian's predecessor/manager) have 1:1 scheduled in Fort Worth office
    - **<u>1:00pm CST</u>**- Complainant calls manager, Ben Stewart, to discuss upcoming 1:1 with Pete.
    - **<u>3:00pm CST</u>**- Original meeting scheduled with Pete and Complainant in Pete's office in Dallas. Pete has "last minute meetings" pop up and pushes time of meeting to 3:15pm CST (to strategize with J.T. and E[redacted] on Complainant's exit)
    - **<u>3:22pm CST-</u>** Ben Stewart finally returns Complainant's call, and surprised Complainant answered. Ben caught off guard and Complainant shared that Pete was still "in his meeting" and was running late.
    - 1:1 with Pete was very awkward and brief. Very confident Pete was trouble following his meeting, which I presume to be a pre call with J.T. and E[redacted] on how to 'deal with Josh'
- **<u>10/23/2023</u>**- The United States JPMorgan Private Bank Town Hall
    - Complainant recognized as overall "Gold" performer across the United States
    - CEO then recognized Advisers who achieved "Gold" in each metric category: Revenue, AUM Flows, and New Client Points. Complainant frustrated and disappointed since Management failed to address and correct the metrics pertaining to the prepaid variable forward. **Not about Revenue, driven and motivated by proper recognition across the Firm**
- **<u>10/24/2024</u>**- Complainant confides in Analyst partner that the work toxicity and work politics are becoming unmanageable and unsustainable. Shared with Analyst partner/confidant that I am requesting a meeting with leadership to resign most likely.
- **<u>10/25/2023</u>**- Complainant requests private meeting with Market Manager and Manager
    - Complainant requests amicable resolution to part ways given the unsustainable and toxic work environment that has taken a toll on mental health. Complainant also states that he is paranoid about closed door conversations being had on strategies to terminate Complainant while protecting from potential lost business and revenue.
    - Market Manager becomes hostile and accusatory- states that Complainant has exuded a pattern of insubordination and behaviors that do not align with the Company

culture. Complainant asks for specific examples on how to improve but Market Manager does not share any examples.
    - Complainant distinctly expresses desire to resign but cannot since going through a contested divorce and "I still have mouths to feed. So what do we do?" Market Manager responds, "Business as usual."

- **10/27/2023**-
    - 8:30am CST- Complainant emails Manager regarding Personal Day
    - 2:35pm CST- Manager texts Complainant to "call me at the office as soon as possible"
    - 3:00pm CST- Complainant meets with Merrill Lynch regarding new employment. Meeting is on Complainant's calendar as a "private" meeting.
    - 4:36pm CST- Complainant calls Manager following meeting with Merrill Lynch Market Executive and new, prospective business partner. Manager states, "effective immediately, you are being placed on an involuntary, paid administrative leave without access to client or JPMorgan systems until further notice." No additional explanation or detail was provided, nor was a tentative timeline provided.
- **10/28/2023**- Complainant submits formal resignation to JPMorgan, initiating 'clock' for 60 day Garden Leave, estimated to expire 12/26/2023.
- **11/1/2023**- Complainant Counsel connects with JPMorgan Counsel via phone call. JPMorgan Counsel communicates two internal investigations initiated regarding Harassment and Expense Policy violation.
- **11/7/2023**- JPMorgan Investigator/ Employee Relations, Jonathan Jacobs, and a separate Global Securities representative, interview Complainant regarding alleged Harassment complaint.
- **11/15/2023**- Separate JPMorgan Investigator, Nadia Muraira, interviews Complainant regarding two expense reports that were submitted and approved by JPMorgan. JPMorgan randomly selected the two expense reports for a bespoke and targeted audit- no others included to Complainant's knowledge.
    - **11/17/2023**- I email Nadi Muraira, at her request, the highlights and SOPs pertaining to expense report submissions. I also highlight the suspicious nature and impetus of the decision to 'audit' and single out my approved/submitted expense reports.
    - **11/20/2023**- I tried calling Nadia, as we agreed to reconnect on Monday (11/20)- but her number was no longer active/in service. **Very suspect, since I shared specific examples of leadership violating policies**.
- **11/28/2023-** I emailed Jonathan Jacobs (Employee Relations) and Rachel Tidwell-Neal (JPM Counsel) for an update on investigation- no response
    - **11/29/2023**- Requested another update from Jonathan
    - **11/29/2023**- JPMorgan sends new advisors to the large client/prospects I won for the Bank (M[redacted]. Prior to the meeting, the prospect asks "why was I canned?!"

- **11/29/2023-** Jonathan Jacobs responds saying the investigation and findings are confidential and he cannot share the results. He hopes "something would be communicated within the next week"
- 11/29/2023- I email employee.records@chase.com and my local Leadership team, requesting my personnel file, and Terms/Conditions of my Notice Period, which I requested on several occasions, but was ignored by ask HR contacts, JPM Employee Relations contacts, and JPM Counsel
- **12/1/2023**- J.T. Aughinbaugh and Ben Stewart call me at 11am CST and share "effective today, 12/1/2023, you have been terminated following an internal investigation that concluded you violated the Firm's Code of Conduct Policy and anti-harassment policies…" No further information shared.
- **12/7/2023**- I called the Code of Conduct Report Line and reported harassment and retaliation.
    - **12/26/2023**- First time I hear back regarding this report; only after repeated emails I sent to Jena Cohen, USPB Head of HR, as well as the response to my Exit Survey
- **12/21/2023**- I'm not proud about this, but I texted J.T. Aughinbaugh and Ben Stewart "you all are malicious, Cruel. And you will be seeing me again. And you are cowards for not responding like men. Stakeholders and constituents will realize this very quickly."
- **12/22/2023**- Form U5 filed by JPMorgan (JPM waited until the very last day to file)
    - Despite multiple requests with JPM Counsel, and multiple letters sent insisting the U5 be marked correctly with a "voluntary discharge" on 12/6/2023, 12/12/2023, 12/13/2023, 12/19/2023 and 12/20/2023.

Message

App. 0709

**From:** Biering, Josh [josh.biering@jpmorgan.com]
**Sent:** 6/22/2023 1:03:16 PM
**To:** [redacted] Stewart, Ben [ben.stewart@jpmorgan.com]
**Subject:** Fwd: USPB Mindfulness Monthly June 2023

I really wanted to just say thank you both for really helping me out and stepping up for me last week so I could unplug and get my mind right.

It means a lot and I really appreciate you.

---

**Josh Biering** | Executive Director | Banker | **J.P. Morgan Private Bank** | 420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 | T: 817 212 3096 | M: 817 798 7654 | josh.biering@jpmorgan.com | privatebank.jpmorgan.com

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

Our *Form CRS* (Client Relationship Summary) and *Guide to Investment Services and Brokerage Products* contain important information about the ways we can serve you, the different investment products and services we offer, their fees and costs, how we are compensated and potential conflicts of interest we may have.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail).** For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. For questions, please call your J.P. Morgan representative. JPMorgan Chase & Co. and its affiliates and employees do not provide tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any financial transactions. Please submit personal information to J.P. Morgan through a secure manner (e.g., Secure Message Center, Client Exchange, postal mail, fax or in person). **Important risk considerations for certain investment products and asset classes can be found HERE.**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

---

**From:** David Frame, Mike Camacho and the USPB MH&W Taskforce <targetedemail@jpmchasebroadcast.com>
**Sent:** Thursday, June 22, 2023 8:00:01 AM
**Subject:** USPB Mindfulness Monthly June 2023

J.P.Morgan PRIVATE BANK

# USPB Mindfulness Monthly

## Taking care of yourself so you may take care of others, too.

In the Private Bank, we tend to find ourselves in a fast-paced environment with little to no down time throughout the day. We sign on in the morning ready to put our best foot forward for clients, and don't stop until the last problem is solved (sometimes hours after we leave the office). But what about when you sign off at night and have a loved one to take care of in addition to managing your business and your family's day-to-day needs? How do you continue to do it all, do it well, and keep a smile on your face?

This month, we are highlighting caregivers. Being a caregiver can have a lot of different meanings, but regardless of what it looks like for you, it can be tricky to balance. A popular term today is the sandwich generation. This cohort, usually in their 30s and 40s, are responsible for caring for others, including children as well as aging parents. And yes, it's a noble thing to take care of your family, particularly parents who are facing health issues. However, it can wreak havoc on a person's impact at work — and life — if they don't also care for themselves. Caregivers often are so busy caring for others that they tend to neglect their own emotional, physical and spiritual health. The demands on a caregiver's body, mind and emotions can easily seem overwhelming, leading to fatigue, hopelessness and ultimately burnout.

This article addresses signs and symptoms of caregiver stress and burnout, how to ask for help, and how to empower yourself in a caregiver position. The website also has other articles and resources focused on caregiving depending on what it looks like for you. To start, here are some ways you can tend to your own well-being while caring for others, too:

1. **Don't be afraid to say no.** Take time for yourself when you need it. If possible, find someone who can take your spot for a day so you can have time to yourself.
2. **Be honest with yourself and those around you.** Do your best not to overcommit to tasks. It's possible that your loved one needs expert care. If you can, find outside help from resources that specialize in home care. Being honest may also mean not overcommitting to tasks at work. While we all like to give J.P. Morgan our best effort, it's important to communicate with your manager when you may need more flexibility for a period of time to prevent burnout and high stress.
3. **Don't delay your own care.** Keep attending your own doctor's appointments and managing your health needs. Take a moment to yourself by going on a walk or enjoying a coffee while catching up on the news.
4. **Build a team.** Find people in your life who you know you can count on. Reach out to them when you need a break or a helping hand. This includes your J.P. Morgan team — can your analyst, associate, or other peer step up and handle more of the day-to-day? This presents an opportunity for them while taking some work off your plate.
5. **Delegate tasks.** Can another family member pick up the prescriptions or grab the groceries this week? Distributing tasks like this can lift some of the responsibility off your shoulders.
6. **Ask your community.** It's likely that you already have a built-in community around you who would be willing to help or could share their experiences. Think about your fellow church members, neighbors or school parents. In opening up, you may find comfort in having a peer or friend who can relate to your situation or relief if there is an additional person to help.

At J.P. Morgan, we are lucky to have a culture of understanding and lifting each other up. While we may know our colleagues in a work setting and spend 10+ hours a day together, remember we don't always know what each other have going on behind closed doors. We should lead our day-to-day with kindness and compassion, and keep in mind that we are all each other's caretakers.

---

## EVENT SPOTLIGHT

**June 27**
4:30 p.m. – 5:30 p.m. ET

### 4:30 MEETING: HOLISTIC CAREGIVING: TAKING CARE OF YOURSELF AND OTHERS

We are proud to be part of a community at J.P. Morgan that supports its employees through every stage of life and the unexpected.

To bring these stories to life, we're excited to bring you the webcast: Holistic Caregiving – Taking Care of Yourself and Others. We've gathered a panel of our peers to share their experiences. Whether they are caregiving for a spouse, sibling, or parent, their insights are extremely valuable.

Zoom ID: 955 8802 1295
In-person: Studio 27

By the end of this webcast, we hope you'll see that everyone will become a caregiver in some shape or form and learn more about both tactical and firmwide [...] get you through life's unforeseen challenges.

*Participants:* Susan Heidere, Noha Khalil-Valenti, Daniel Zigman, Susan Henderson, Diana Thomas, moderated by Todd Brown

---

## RESOURCES OF THE MONTH SPOTLIGHT

As a critical caregiver of a spouse/domestic partner, child (no age limit) or parent who is experiencing a serious health event, illness or injury, JPMC's Critical Caregiver Leave Policy covers up to four continuous weeks of paid leave one time in a rolling 12-month period. Click the link shared above to view the eligibility checklist and application.

For more resources and information for parents and caregivers of children or adults with special and learning needs, visit the EAP page here. In case you didn't know, JP Morgan also has a Business Resource Group called Access Ability, established to serve as a resource on disability issues, a voice for employees with disabilities, and a partner in the success of all JPMorgan Chase colleagues.
Their mission is to complement JPMorgan's global diversity efforts by maximizing the contributions of employees affected by disabilities, long-term illness or caregiving responsibilities.

## HUMANS OF THE PB

*In this month's edition, we asked our colleague to share her experience in caring for her family and truly "doing it all", and how that led to a critical decision after 38 years with JPMC*



**Cheryl Black**
Managing Director
Banker
New York, NY

As of March 2021, I entered into the Executive Advisor Glidepath to Retirement Program for tenured senior bankers, during which I am transitioning my clients to new bankers and stepping down the days I work each week over a three-year period. Why did I choose this path?

I joined JPMC 38 years ago as a young MBA to build a career in Real Estate Construction Lending. After the S&L Crisis in the early 1990's I became a banker in the Financial Institutions Group and then helped build a CRM for the Investment Bank. When that project was successfully completed, I found a home in the Private Bank. Over the last ~20 years, I built a successful business focused on the real estate industry in NYC and developed an expertise in Endowments and Foundations. Those that know me, view me as laser-focused on advising clients, new business development, committed to doing the right thing for clients and the firm, and having a high bar for delivering excellence for myself and my team members. I felt privileged advising the titans of NY real estate and thoroughly enjoyed winning their trust, partnering with my investors/lenders/service team, and developing talent in the PB.

While my career was a huge focus, my first priority was my family. I raised my son Adam as a single parent after getting divorced when he was a toddler. So, for me (like so many of us here), working was a necessity and I "did it all", balancing my "day job" with my home life. Many nights I ran for a bus or raced up the West Side Highway to

make it home in time for Adam's activities. I wasn't the one who went for drinks or hung out during work hours… I was sprinting through the day, trying to be an excellent advisor while also getting home for Adam. I loved being mom, creating a home for us, family dinners, going to his games and scout events, taking him on a multitude of ski trips, and traveling/exploring the world. Today he is 28, a Wharton grad and works in NYC for a real estate developer (mission accomplished).

I have always been extremely close to my parents, siblings and their kids. So, when my father passed in 2008 (same day as Lehman), I stepped in to take care of my mother, host all our family celebrations, and helped my mom buy/renovate/move into a new apartment. My brother was diagnosed with FSHD Muscular Dystrophy when we were in our early 20s. By 2010, he started to need my financial assistance and by 2018 I realized he needed to move out of his home as he was wheelchair bound. I bought him an apartment, renovated it to make it fully accessible, and helped him move in. I was so proud that I had the ability and resources to make his life easier. When COVID came, my role (besides helping clients all day from Zoom at home) was to bring my mother and brother groceries each week, stay in touch constantly with them to make sure they were mentally ok with the greater isolation and make sure my son was ok/well fed/etc. Unfortunately, my brother struggled physically and emotionally during the pandemic and died after taking the COVID vaccine in early 2021.

Life began to feel more normal that summer as we all resumed in-person activities and I was able to take some fun vacations and start coming to the office more. So, when Dave Frame announced the Executive Advisor Glidepath program in the fall of 2020, I thought it was interesting, but I was still working full-steam and was enjoying starting to see clients and peers in person.

Then we received the terrible news that my mother had pancreatic cancer and would need weekly chemo. That was my breaking point. My sister, the doctor, could help manage her care with the oncologist but couldn't take time off to bring her for her chemo treatments. I decided the time had come to take advantage of the Senior Advisor Glidepath. While I could have just asked for a four-day-a-week schedule, I knew that I needed more time to be there for my mother, my family and myself. I also wanted to be fully present when I was with her; not checking email or getting pulled into client matters. Further, I realized that I had been on the go for the last 38 years raising my son, working hard to be a top tier banker, helping my clients with their families' needs, being a weekend warrior on the tennis court, drinking in life in gulps… and that it was time for me to learn how to slow down, take better care of myself and further develop other interests in my life so that when I did stop working, I wouldn't be sitting in the dark not knowing what to do with myself. I took the plunge and signed on for the transition program.

As it turns out, it's exactly what I needed. With others stepping in with my clients, (particularly Jason Berger, who has been my partner for the last 10 years), I was able to spend every Thursday with my mother for a year, making her chemo a "fun time"; playing cards, talking, and letting her teach me to crochet baby blankets. (note: Mom is 92 and is doing great today, enjoying her family, friends, chair yoga and walking 1.5 miles each day). I was able to exercise more and get into better shape. As a bonus, I met an amazing man, who also just retired after a successful career in sports television. We are in the process of buying a home where we can enjoy our retirement together, that is big enough so that our adult kids can visit and we can host our extended family gatherings! We also plan to travel together and do all the things that we never had time to do.

While it has been emotional disengaging from many of my clients and difficult to not to take the lead in meetings, I am extremely confident that the people who are stepping into my place will take excellent care of my clients.

As I look back on my life over the last 38 years, I am proud of what I have accomplished in the office and at home. I am also happy that our organization has evolved into a place where we can share more openly about our personal lives, bring our whole selves to the office, and that better supports us during difficult times. That was not the case for most of my career as times were very different. My advice for young people is to make sure that you pursue what you love, try to be "present" in whatever you do (put down that device!), take the time care for yourself and your loved ones, and live beneath your means (so you can have resources to help your family and/or retire early!).

I am still not sure how I will feel when I walk out of JPMC's doors for the last time in Feb 2025, but I feel fortunate to have spent my career and my life at JPMC.

*In future editions of Mindfulness Monthly, we intend to continue spotlighting members of our organization and feature their story as it pertains to wellness, mental health, and more.*

*Email us at uspb.mindfulness.monthly@jpmorgan.com with suggested features.*

## UPCOMING EVENTS & RESOURCES

meQ

**June 22**
12 or 9 p.m. ET
**June 23**
7 a.m. ET
Register

### SHARPEN YOUR COMMUNICATION SKILLS

Being an active listener is key to building trust and stronger relationships. Join meQ's June Calm-Cast and find out how you can benefit and empower yourself in the workplace when you apply active listening.

Reserve your spot and choose from one of the three time slots.

Employee
**Assistance**
Program
Prevent. Support. Thrive.

### UPDATED JPMC EMPLOYEE ASSISTANCE PROGRAM (EAP)

The Employee Assistance Program (EAP) has a new look and focus. The EAP program can help you and your family through big and small challenges. Whether you need support through a crisis situation or help with daily life challenges, trained professionals are available to provide coaching and counseling every step of the way. Visit GO/EAP for help to ***prevent*** small issues from becoming big issues, ***support*** with life's challenges and to help you ***thrive*** day-to-day.

*Keep an eye out for the monthly **US Wellness newsletters**, highlighting ongoing resources and internal educational opportunities like those listed here.*

## RECENT EVENT REPLAYS

### LEARN ABOUT OUR NEW EAP – SPRING HEALTH

Spring Health

U.S. benefits eligible employees and their eligible family members will have access to a new mental health and well-being benefit through **Spring Health that launched on May 15**. This new benefit will provide a **digital first experience,** offer **easier navigation** and **faster access** to the right mental health support and professionals — when you need them!

Webcast Replay

You can find more replays for impactful events like these on the Health & Wellness Replay Page.

**Send us your feedback at** uspb.mindfulness.monthly@jpmorgan.com

*This message is being tracked for open-rate statistics.*

# ERC / Mutual Text-Message Records

**App. 0716-0717**

June 8, 2023 "Brazilian drama" national-origin message.

App. 0716

SMH.

No loyalty

zero loyalty

What! 😂 what kind of propaganda are you hearing about?

I would like to point out that the only time my axe stuck, it was on the bullseye

SMH can't be trusted




Dead to me

What do u mean

Hellooooo waiting for context!

🕵️‍♀️

🥸

Explain sir

Negative.

Joshua David

I cannot tell

I can't tell you what's on my mind

If u are being dramatic

But I have a Latina intuition

That u are

How so

U know

App. 0717

I don't

Oh please 👋 I know you have Brazilian drama in you

? No. I'm listening

Mhmm

?

Disliked "No loyalty "

Replying to you, 2023-06-08 17:39:01: « No loyalty »

I'm loyal in ways u don't even KNOW about sir so u can apologize for this now 🙌

I'm confused

About what

I don't know. Thought you were going a different direction

Gotta keep u on your toes!

Ok. I dunno

I must say

I am shocked that you recruited Keith to play golf!

K

You're playing us against eachother

You and Keith?

How so!

I won't put any of this in a text. We can catch up later.

Wait are u being Fr

Did he say something off color?

No

I'm about to call!

Call who? Why

For an explanation!

Replying to you, 2023-06-08 18:04:19: « Dead to me »

U can't be sayin stuff like this and give me no context!

I am so confused

I'm MORE confused!

Same

What's the issue

# Merrill Briefing and FINRA Hearing Testimony Supplements

**App. 0719-0750**

Merrill November 8 Private Briefing; selected Jacobs and Hitchcock hearing excerpts. Aughinbaugh cross excerpts follow at App. 0752-0757.

## Josh Biering – Private Briefing
## JPM Private Bank

**Date: 11_8_23 WebEx & Merrill Conf Room, 4th Floor Merrill Room, Star Central Time Zone**

## Breakfast to be served

| | |
|---|---|
| 9am | **Welcome and arrival (Chris, Rod and Michael)** |
| 9:10am – 9:45am | **Merrill One – Client Platform for Investment MGT (Finke/Calandra)** |
| 9:45am – 10:15am | **Wealth Management Banking, Custom Lending (Piersall/Carroll, Cuff)** |
| 10:15am – 10:45am | **ML Technology (Howard)** |
| 10:45am 11:00am | **Alternative Investments (Wynn)** |
| 11:00am - 11:30am | **Financial Structures & Close (Chris)** |

Christopher R. Miller
Managing Director
Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX 75034
940.297.6901

Exhibit
CX97

THE STANDARD
Greater Dallas Market

# GREATER DALLAS MARKET
# PRIVATE BRIEFING

## TABLE OF CONTENTS

I. Why Merrill
II. ML Capabilities
III. ML Technology
IV. ML One
V. ML PWA
VI. ML Compensation

# 2024 Merrill Lynch Financial Advisor Incentive Compensation Plan

The 2024 Advisor Incentive Compensation Plan (the "Plan") summarizes the key features of the compensation program for eligible Financial Advisors (FAs) and Private Wealth Advisors (PWAs) (referred to herein collectively as "Advisors"). The design of this program is subject to change by Merrill Lynch and/or Bank of America Corporation ("the Company"). An Advisor has no vested or contractual rights to any non-base salary compensation described in this Plan, the award and payment of which is always subject to management's sole discretion and local laws and regulations. All dollar ($) amounts in this Plan are in U.S. dollars. Eligibility to participate in this program is limited to Advisors in the Merrill Lynch Wealth Management organization.

Please click here for 2024 Summary of Compensation Plan Changes.

## Compensation

Advisors are paid a guaranteed monthly salary and each month they are also eligible for monthly incentive compensation. Monthly incentive compensation payments are advances and not earned until year end when final calculations are made. Monthly incentive compensation is calculated based on production credits (PCs) at grid rates detailed below, less salary and other applicable adjustments (as detailed under "Calculation of Incentive Compensation"). Advisors will have the opportunity to earn annual incentive awards as outlined in this incentive plan.

## Affluent Retail Grid

Incentive compensation under the affluent* retail grid is issued regardless of retail product type, business mix or transaction ticket size. All PCs regardless of grid rate and product type contribute to gross PCs and grid thresholds and all products generate PCs at the standard grid rate, unless otherwise noted in this Plan and/or the applicable product plans and guides. *Please visit Resource Central for information regarding how PCs are calculated. *Affluent for the purposes of the grid is defined as households above $250k.*

### Step-Up Grid

For Advisors with >1.85M in PCs in 2023 performance year, their monthly incentive compensation for 2024 will be calculated pursuant to the Step-Up incentive grid, which rewards Advisors with higher grid rates for increased PCs pursuant to the terms of this Plan. The T-12 grid does not apply to Advisors with PCs greater than 1.85M.

**Step Up Cash and Long-Term Productivity Grid**

| Production range | Cash grid | Long-term |
|---|---|---|
| 12,000,000+ | 51% | 7.25% |
| 6,000,000 – 11,999,999 | 49% | 7.00% |
| 3,750,000 – 5,999,999 | 47% | 6.75% |
| 2,500,000 – 3,749,999 | 46% | 6.50% |
| 1,850,000 – 2,499,999 | 45% | 6.25% |

The step-up grid rates are determined based upon total PCs for the 2024 performance year. Each incremental PC above the next range is calculated at the higher rates.

Advisors who ended 2023 year with 1.850M+ in PCs will start 2023 at 42%. Once actual YTD PCs exceed 1.85M, the Advisor will move to the next grid rate (e.g., 45% on the next 650,000 in PCs). As actual PCs increase, the Advisor will step-up to the next grid rate on the next set of incremental PCs.

### Trailing-12 Grid

For Advisors with <1.85M in PCs in the 2023 performance year, their monthly incentive compensation for 2024 will be calculated pursuant to the Trailing-12 incentive grid.

**Trailing-12 Cash and Long-Term Productivity Grid**

| Production range | Cash grid | Long-term |
|---|---|---|
| 1,300,000+ | 42% | 6.00% |
| 1,050,000 – 1,299,999 | 41% | 5.50% |
| 800,000 – 1,049,999 | 40% | 5.00% |
| 550,000 – 799,999 | 39% | 4.00% |
| 400,000 – 549,999 | 37% | 3.50% |
| 300,000 – 399,999 | 36% | 2.00% |
| 0 -299,999 | 34% | — |

Each month, the Trailing-12 grid rate will be determined based upon total PCs for the prior 12 months. This rate will apply to the PCs paying the next month (e.g., March 2024 grid rate will be based on the T-12 PCs for March 2023 through February 2024). If production exceeds 1.85M in the performance year, the advisor will move to the Step-up grid the following month.

For both Step-Up and Trailing-12 grids, advisors have the opportunity to be eligible for long-term contingent awards based on their PC levels. Advisors must be in the Advisor position through the end of the performance year and employed by the Company at the time the award is paid to qualify for any long term-contingent awards, except for retirees as described in the "Retirement" section.

**Successful Graduates of the ADP Program** ↳ Advisor Development Program / Advisor Growth Program

Advisors who have successfully graduate from the FADP/TFA/TPWM programs by meeting all the graduation requirements set forth in the applicable Incentive Plan will be eligible for a higher grid rate for households above the small household thresholds. The starting grid rate for these graduates will be a grid rate of 37% (plus 3.50% Long-Term Contingent Rate) or the standard grid rate for their level of PCs, whichever is higher for months 37 – 48 (for Team Financial Advisors) it applies to months 25-36). This rate applies to all grid PCs only. Once month 49 (or 37 for Team Financial Advisors (TFAs)) is reached, the Advisor will move to the standard grid as outlined above in the Cash and Long-Term Productivity Grid section.

Note: This does not apply to graduates of the Merrill Financial Solutions Advisory Program.

## Non-Retail PCs

All of the following Non-Retail PCs will be issued at a **20%** cash grid rate:

### Institutional Business

Legal entity accounts with assets intended for a business purposes are considered institutional accounts. Transactional PCs generated in institutional accounts will be issued at 20% cash rate, with transactional PCs defined as follows:

| Equities | Fixed Income | Custom |
|---|---|---|
| Listed Equities | Municipal Bonds | Market Linked |
| Listed Block | Government Products | Options |
| OTC Equities | Preferreds | Commodities |
| Convertibles | Debt New Issue | |

### DAC / RAP

- PCs generated in DAC / RAP accounts in a household < $1MM.
- PCs generated in DAC / RAP accounts in HH that only have other business / institutional accounts with assets > $1MM.
- Transactional PCs generated in accounts that are intended for a business purpose, other than personal wealth management and are also a DAC / RAP account with household > $1MM.
- Equity and option trades discounted =>80%+ in an institutional account will be paid at 0% payout rate.

### Equity Plans

- First trade PCs for Equity Award Choice (ESOP) and Employee stock purchase plans (ESPP)

### Other Non-Retail

- Equity and Option trades with discounts between 60% - 79%
- PCs for the 401K Index Fund products

Non-Retail PCs count toward the incentive cash grid hurdles and in the calculation of the incentive long-term grid and service award. Non-Retail PCs also count towards Top Advisor Recognition and Titles.

Requests to modify / increase the non-retail grid will be reviewed and must be identified and brought to MLWM Compensation Administration to be considered for review. If approved, adjustments will be processed using a maximum three-month look back period based on the date that issue was brought to GWIM Comp Admin.

**Exempt from Non-Retail PC Policy**

- PCs generated in DAC / RAP accounts in households that also have other individual, retail accounts (non-business accounts) with assets >$1MM will be calculated at affluent retail cash grid.
- PCs generated in DAC / RAP to UST accounts will be calculated at affluent retail cash grid regardless of household size
- All annuitized PCs (not in the institutional transactional list above) generated in an institutional account will be calculated at the affluent retail cash grid in accordance with household size.
- Legal entity accounts such as trusts / family investment vehicles that manage generational wealth only are considered personal wealth entities and therefore are not subject to the 20% cash grid rate.

**0% Payout PCs**

The following are subject to a 0% PC grid rate:

- PCs for business transacted in Merrill Edge accounts with a split back to the Advisor
- Equity and Option trades discounted 80%+
- Client Transition Program (CTP), Succession Planning Program (SPP) Death Benefit (DB) and Advisor to Leadership PCs

**Small Households – 0% Payout**

- USWM & PWM: PCs generated in households with combined assets / liabilities <$250,000
- PWM:
  - PCs generated in retail households $250K - $1.0MM assets/liabilities opened before July 2, 2007 that are not partnered with a USWM Advisor. (Households domiciled and partnered with a USWM Advisor where the PWA split is 50% or less are issued at the affluent retail grid).
  - PCs generated in retail households $250K - $2.5MM assets/liabilities opened after July 2, 2007 that are not partnered with a USWM Advisor. (Households domiciled and partnered with a USWM Advisor where the PWA split is 40% or less are issued at the affluent retail grid).
- NRC: PCs generated in all NRC households with combined assets/liabilities less than $500,000

For the first 12 months from hire date, Advisors hired from the competition will receive full grid payout on any new household opened between $100K-$250K. Starting in month 13, the small household policy will apply to these relationships and all other households. PWAs are not compensated on any retail household less than $250K assets/liabilities regardless of whether it is partnered or non-partnered.

**Exempt from Small Household Policy (Both USWM & PWM)**

- Registered employee stock option plans (must have STK OPT in the traits field)
- Employee stock purchase plans (ESPP)
- Leveled Institutional accounts, DAC / RAP accounts and PC Tracking accounts
- RCMA / SEP / SIMPLE / 401K
- Life Insurance products (includes Long Term Care and disability income products)

**Small Household Policy - New Relationships 90 Day Evaluation Period**

New domestic and NRC households opened during the year (not transferred) that are subject to the Small Household Policy will have a 90-day evaluation period from account open date. At the 90-day mark, if the household assets / liabilities are >$250K domestic, >$500 NRC, or >$2.5MM for PWM, PCs generated in the first 90 days that were credited at 0% will be adjusted up to the affluent retail grid rate.

The grid rate adjustment will not be processed until the 90-day evaluation is complete even if the assets/liabilities go >$250K ($500K NRC) prior to the end of 90 days.

After 90 days from household open date for new households, if the total household asset/liabilities at any point fall <$250K or <$2.5MM for PWM, the PCs generated going forward will be subject to the respective Small Household Policy.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**



| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,**<br>**Plaintiff, Pro Se,**<br><br>**v.**<br><br>**JPMORGAN CHASE BANK, N.A.,**<br>**JPMORGAN CHASE & CO., and**<br>**J.P. MORGAN SECURITIES LLC,**<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:26-cv-00950-P<br><br>Related Case No. 4:26-cv-00381-O<br>FINRA Case No. 24-01208<br>EEOC Charge No. 450-2024-04743<br>AAA Case No. 01-26-0000-7215 |

# PLAINTIFF'S APPENDIX REVIEW TAB 31B

*FINRA Hearing Transcript - Relied Excerpts*

**WORKING REVIEW ASSEMBLY - NO FINAL APPENDIX RANGE ASSIGNED**

| | |
|---|---|
| **DESCRIPTION** | Targeted working review copy of the marked Jacobs hearing-testimony passages cited for chronology, process, and source-reliability issues. |
| **SELECTED RECORD** | Telephone interview while Kimball was driving and pulled over; non-substantive return-to-work follow-up; parallel ER/Global Security disposition; November 8 conclusion and later open-status representations; cold-call, static, and raw-notes testimony. |
| **SOURCE / MARKS** | Built from the source-locked v14.06 marked derivative. Pale-yellow passage highlights and red margin brackets are permanent page content. The unofficial transcript remains subordinate to the native Zoom recording. Stale source-origin covers and non-relied pages are omitted from this targeted review copy. |
| **PAGINATION** | Local review pages only. No global appendix-page stamp or final appendix range is assigned. The complete source and complete marked derivative remain separately hash-locked. |

That is correct per my You know, Eeyore policy.

**Biering v. JPMS | FINRA 24-01208 | Page 22**

Did you have? Did you actually go to Fort Worth
and meet physically with?
3
The young woman or with Mr. Biering?
MR. JACOBS: No, uh, I personally am based in in an office in
Jersey City and we conduct our interviews over
Zoom or over telephone.
MR. IACUONE: In this instance, uh, was your interview with
Ms. Kimball over Zoom or was it Telecom?
MR. JACOBS: As I recall it was over telephone. I believe she
was in her car and pulled over.
MR. IACUONE: Was that the only time you talked to her?
MR. JACOBS: Yes. No, I'm sorry, I believe I had a follow up
conversation with her the the next week. Also by
telephone.
22
Also by telephone. Not regarding the. Substance
of the investigation.

**Biering v. JPMS | FINRA 24-01208 | Page 23**

1
Was that more a telephone call to see how she was
doing? If or let me what was the purpose of the
second phone call? If memory serves, she had
been.
7
She also was on leave for a period of days after
I had spoken with her, as you said, probably on
October 27th.
12
And I wanted to see if there were I I believe the
purpose of the phone call was to see if she would
be returning to work or to set a return to work
date.
MR. IACUONE: Thank you. Isn't it true, Sir, during well.
Prior to the.
21
The termination on December 1st.
MR. JACOBS: That Mr. Biering would reach out to you and say I

**Biering v. JPMS | FINRA 24-01208 | Page 24**

have evidence I can provide you to show it was

interview of Miss Kim and Mr. Biering.
17
Only when did that conclude? By the way, is Council correct or that's the only two people you interviewed?
MR. JACOBS: I believe so.
MR. IACUONE: When did you conclude that investigation?



MR. JACOBS: I don't recall a precise thing.
MR. IACUONE: For your findings, done. Weeks before. You submitted your.
6
Suggestion for termination.
MR. JACOBS: I don't know. Weeks. As we've discussed, I was assigned to the matter on October 27th.
12
At some point thereafter, I spoke with Mr. Biering. I drafted my findings, but as I sit here, I couldn't tell you precisely when I was penned down or pencils down on my on my confession. My question is.
MR. IACUONE: If it's a rapid response investigation. Why would you not provide the conclusion of that investigation as soon as it's actually done? Why would you hold it for a few weeks?
MR. JACOBS: There may be.



MR. IACUONE: 2 answers. So if I, if I may give both. The first is as we discussed, I was aware of a concurrent investigation from you know, regarding the expenses and so.
MR. JACOBS: We we meaning the employer relations space and I believe that investigation was being handled by Global Security.
MR. IACUONE: From an employee experience would likely disposition matters at the same time, right.
13
So if if one investigation was still pending and one was nearly concluded, oftentimes we will have both be dispositioned simultaneously. So that would be one reason.
MR. JACOBS: The second reason is I believe just based on these dates, there may also have been some days where either I was out of the office or others were as it was around Thanksgiving.

MR. IACUONE: So the expense report investigation by the



global security team and your investigation,
those are two very separate investigations,
aren't they?
MR. JACOBS: Separate in terms of conduct, similar in terms of
the.
MR. IACUONE: Individual, Sure, Sir. My question is why would
the conclusion of one investigation have
anything to do with the conclusion of the other
investigation?
12
In situations where two investigations may both
result in a termination.
16
We would not normally want to prepare 2 separate
recommendations for termination, but rather one
that would incorporate the, you know, findings
of of both investigations.
22
Us that the preference was that the fighting for
termination would be based on the expense report



investigation over your investigation, correct?
MR. JACOBS: I don't know who you mean discussed and I I don't
think there was a preference, no. OK.
MR. IACUONE: Let's look at some emails. As a matter of fact,
you concluded your investigation on November
8th, 2023, or three weeks before Mr. Biering was
told he was terminated, correct?
MR. JACOBS: That sounds about right.
MR. IACUONE: And you held those investigation results? For
three weeks, Fair.
MR. JACOBS: Again, I wouldn't say held they were. Ready. I
was again.
18
Wanting to make sure that a parallel
investigation also had the opportunity to
conclude if we were then going to be
dispositioned at the same time.
MR. IACUONE: Did did you make that decision or did someone

App. 0729

tell you, hey wait to publish your conclusions until the parallel investigation is over, or is that something you just decided on?

MR. JACOBS: I did not make that unilateral decision.

MR. IACUONE: What the situation that you were?

MR. JACOBS: Describing or rather the general situation is when both employer relations and global security have parallel investigations or even if there were two parallel employee relations investigations oftentimes we will want to

14

make sure that both investigations have had the opportunity to conclude and then disposition at the.

MR. IACUONE: Same time. All right, you, you said often times. In words like that, my question is who made the decision?

23

And told you not to publish your investigation



results on November 8th, 2023? Or did you make that decision on your own?

MR. JACOBS: I did not make that decision on my own. I do not recall. Who precisely said do this to?

MR. IACUONE: Me but someone did did miss Stainback tell you not to publish your sexual harassment conclusions on over the rate, but to wait until the. Expense report Investigation was completed. Believe mistake said that.

12

I don't think anyone said it in that precise manner. But again, I know you challenged me when I said oftentimes, but I'm I'm referring you to common employee relations practice.

18

Let me let me see if I can get get in here at all. In the ordinary course of things, who would you have provided your final report on the sexual misconduct investigation too?

MR. JACOBS: My my manager. And who was that? At the time,



Linda Padilla.

2

All right. Did Miss Padilla tell you to hold off on that final report until the other

App. 0730

investigation was concluded? I don't recall
precisely.
8
Would she have been the? Logical person to have
done it. You said you didn't do it unilaterally.
12
I'm trying to find out who would be the non
unilateral person. She would be a logical
candidate, but I don't know that it was for
specifically.
18
Can you give us who the other logical candidates
that might have told you that would have been?
It's possible that somebody from global security.
MR. IACUONE: Working on that parallel investigation would
have said, please don't you know move forward



with termination while while our investigation
is. Pending and who would that have been?
MR. JACOBS: I truly don't recall. OK.
MR. IACUONE: Can I follow up if that's in? Fact true that
they want you to hold it together. Then why
designate it as the rapid response?
MR. JACOBS: Cases designated as rapid response solely based
on the allegation type.
MR. IACUONE: Global security running their investigation
would have no input onto, you know, my case or
or any case similarly being designated as rapid
response. Rapid response does not necessarily
mean rapid conclusion.
MR. JACOBS: I think we've heard it means prioritizing it over
other investigations. That's that's a very fair
statement. Yes, Sir.
MR. IACUONE: Let's go to CX 156 because this might help
refresh your memory. Sure. 156. Yes, Sir, if you
go to the second page, there's a whole mess of



redactions in this, but I want to.
2
See if this repressions your memory. So when the
original e-mail second page.
MR. JACOBS: There's an e-mail from Rachel to O'Neill, who's
in this room?
MR. IACUONE: To Nadia, she's assistant General Counsel. To
Nadia Moreira, who was handling the expense

8th, 2023, correct?
MR. JACOBS: I represented on November 8th that it was.
MR. IACUONE: Concluded. So is that there before? But Mr. Biering was not informed of his or he was not terminated based on your investigation until December 1st, 2023, correct?
MR. JACOBS: Yes.
MR. IACUONE: Did Mr. Biering ask you as to the status of the investigation?
MR. JACOBS: Prior to December 1st, 2023. Yes.
MR. IACUONE: And would you tell him that the investigation remained open and was ongoing?
MR. JACOBS: I don't recall the exact language.
MR. IACUONE: Let's go to CX-157. Top e-mail. Mr. Actually, let's go that there's the one below the top you go from Mr. Biering on November thirty 13th, 2023.



1
See that and that post states the closing of your investigation fair.
MR. JACOBS: No closing. Including an investigation, meaning the investigation, fact finding and investigatory steps is different than an actual closure of the investigation.
MR. IACUONE: Your investigation was concluded prior to November 13th, correct?
MR. JACOBS: I had taken all investigatory steps prior to November 13th.
MR. IACUONE: Your investigation was concluded prior to November 13th.
MR. JACOBS: I think he you know whether you like his answer or not, he answered that question. I can understand why you may not like it, but. He answered it does your e-mail.
MR. IACUONE: Just looked at on November 8th, say your



investigation is quote concluded close quote.
MR. JACOBS: On November.
MR. IACUONE: 156. Sorry. You use the word concluded, do you not?
MR. JACOBS: On November 8th, the. Investigation is concluded.
MR. IACUONE: Thank you. Let's go to 157 with about 5 days to November 13th. Mr. Biering emails you.
12

I just want to check, check on the status of the investigation.

16

As you can imagine, with the holidays coming up, I have several administrative items I need to prepare for, including a new potential employer so I ensure I have income to support my family.

22

Employers will not enter in not entertain my inquiries with this opinion. You see that?



MR. JACOBS: Yes, Sir.
MR. IACUONE: And you respond to him on the November 13th. Good morning, Josh. Thank you for your e-mail.

6

This investigation remains open, right?
MR. JACOBS: Yes.
MR. IACUONE: Did you tell him that the investigation was concluded on November 13th, 2023 when he asked? Let's go to well. If your investigation is concluded.
MR. JACOBS: I guess then it remains open. It's still even though it's heading. We get the point.

19

You're just going to nitpick with her?
MR. IACUONE: Now. Yes, Sir. Well, may I get? different sure.

24



OK, sure. Let's go to CX-159. Middle e-mail again from Mr. Bean.

3

This is November 21st, so this is a couple weeks later. 9 days before his termination. Good morning. Any update or idea of expecting time moving?

9

Timing of any communication? You say thank you for your e-mail. The investigation continues to remain open.
MR. JACOBS: Correct. Yes, OK.
MR. IACUONE: Let's go to. CX162-1.
MR. JACOBS: OK.

20

Your position is going to be that as long as there was not a finding and a termination, it's

---------------------------------------
HEARING DAY 2 - DECEMBER 4, 2025
---------------------------------------
JONATHAN JACOBS - CROSS-EXAMINATION OF MR. JACOBS BY MR. DUNLAP
**==============================**

**SOURCE AUDIO: ZOOM0015**
**SESSION TIMECODE RANGE: 00:00:00 - 00:35:55**
**==============================**

**DIRECT EXAMINATION**
**OF MR. JACOBS**
**BY MR. DUNLAP**

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
**MR. DUNLAP:** Mr. McGee, Raw notes and again 2 plus years ago, so you'll forgive the bakeries of memory, but we had spoken to Miss Kimball while she was driving. She had pulled over to speak with us.

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
We didn't know at the time that she was in the car. We had, for lack of a better way of putting a cold, called her. And so there was a bit of

like.

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
You know, static or, you know, maybe certain words that I didn't hear perfectly.

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
So that's why I asked Mr. Nikki for his, at least my memory is, I think I wanted to make sure that I had his notes just so that we had everything accurate. Whereas when we spoke with Mr. Biering, it was.

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
**MS. CLEMENT:** A clear connection. OK, So there's not a policy that whatever raw notes or whatever notes in general, whether it's raw notes or a summary more formal are all put into this integrated?

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
**MR. DUNLAP:** Case management system. My own interview notes, which you can see reflected in. In my case are always in any interview that I conduct, I would put my own notes in.

**FROM ORIGINAL AUDIO: ZOOM0015 [00:00:00-00:35:55]**
In this case, Mr. Mcgee's would be supplementary

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**



| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,**<br>**Plaintiff, Pro Se,**<br><br>**v.**<br><br>**JPMORGAN CHASE BANK, N.A.,**<br>**JPMORGAN CHASE & CO., and**<br>**J.P. MORGAN SECURITIES LLC,**<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:26-cv-00950-P<br><br>Related Case No. 4:26-cv-00381-O<br>FINRA Case No. 24-01208<br>EEOC Charge No. 450-2024-04743<br>AAA Case No. 01-26-0000-7215 |

# PLAINTIFF'S APPENDIX REVIEW TAB 31C

*Kyle Hitchcock Testimony and JPMS00025396 Documentary Adjunct*

**WORKING REVIEW ASSEMBLY - NO FINAL APPENDIX RANGE ASSIGNED**

| | |
|---|---|
| **DESCRIPTION** | Targeted working review copy of Hitchcock testimony concerning the October intake sequence, the Kimball relationship, and the later prayer-call context, followed by the complete three-page JPMS00025396-JPMS00025398 documentary adjunct. |
| **SELECTED RECORD** | October 24 resignation discussion; awkward initial exchange; Thursday-versus-Friday meeting chronology; husband's role and jointly prepared write-up; immediate Stainback contact; shared-faith mentorship; post-December 1 four-person prayer call and duration; produced prayer-message sequence. |
| **SOURCE / MARKS** | Built from source-locked v14.06 marked derivatives. Pale-yellow passage highlights and red margin brackets are permanent page content. The complete three-page documentary adjunct follows the marked transcript excerpts; JPMS00025397 is the relied marked page and JPMS00025396/JPMS00025398 provide adjacent source context. The unofficial transcript remains subordinate to the native Zoom recordings. |
| **PAGINATION** | Local review pages only. No global appendix-page stamp or final appendix range is assigned. The page map separately identifies transcript and documentary-adjunct source pages. |

A. On 24th we didn't guess.

MS. RISTER: You had coffee? I think it was scheduled for Vaquero, but it might have been somewhere next door, maybe at the Caro or.

A. At Starbucks the the car on Fort Worth and we and we ended up walking several blocks to Starbucks. In Summit Square for.

MS. RISTER: That meeting on the 24th?

A. He explained an interest or intent to resign, right. He did explain that he would guess.

MS. RISTER: And let's look. Hopefully get exhibit. 188. The next binder under right. 188 we see is an integrated case manager document where it's returned to page 55 zero.

A. It shows you at the top left there interview party Kyle Hitchcock interview date January 12, 2024. See that I see that yes in terms of the prior page, page 49 and see in the middle there interview summary.

MS. RISTER: Has got sure the following you see that?

Q. Under any summary I'm with you. I'm just trying to find sure the following real quick.

A. Yes. I do on 1/12. OK, so this is your interview.

MS. RISTER: First, this happened, right? You have this interview about Mr. Biering, right? Correct. OK.

A. We're going down to this movie summary.

MS. RISTER: From your interview. A little bit towards the middle on the left, you can see the words he, Ben, Joshua, Kyle and quitting. So yes, OK, so we're quitting. There's a dash right there. See a dash?

A. Yes, this is Kyle knew that Kellyanne worked closely with Joshua. Run the same page.

MS. RISTER: Now we're going down. To the bottom.

A. I should do that dash to show that you were talking about Kellyanne Kimball.

MS. RISTER: Let's go towards the bottom, the fifth line from the bottom. Says he asked her.

A. He meaning you.

MS. RISTER: Ask Kellyanne if everything was OK and how she was doing. Kyle stated. Kyle stated that Kellyanne just stared at Kyle, which is not Likert.

Q. couple of days later, I'm gonna stop there. So in your interview, you told the interviewer.

A. I I went to Kellyanne after how she was doing, she just stared at me.

MS. RISTER: Does not like her. And the conversation just ended.

A. I mean, you realize looking at this that sounds.

MS. RISTER: Kind of that didn't I mean. Stared at you. And that's how the conversation ended, right?

A. Shoot, yes, it was a very awkward interaction, OK.

MS. RISTER: So you approached a person? Kellyanne Kimball. The conversation and you said how you're doing. She just stared at you. Conversation ended. Walked away.

A. This is a summary of it. I don't remember the exact words, but if there's anything that you need because it was a very awkward interaction, please let me know. Just I don't remember the exact words or interaction, but there was nothing in material because. But it didn't end up be just leading in silence. But there was no material.

A. Communication after that, but it was a sense of if there's anything you need, let me know because that was a very awkward interaction.

A. Well, I wasn't there.

MS. RISTER: So she stared at you. And then you said, let me know if there's something you need.

Q. And then it ended. Something along those lines. Let me know, yes, if there's anything you need.

A. She stared at you. You said let me know if there's anything you need conversation over.

MS. RISTER: How many times have you had conversations with subordinates? You asked how they're doing. They just stared at you. And you responded by saying, well, let me know if there's anything you need in the conversation just ends.

A. I don't know that I've had another one like that.

MS. RISTER: And then you meet up with her two days later.

A. Yes.

MS. RISTER: And her Kellyanne Kimball's husband was involved in that, in that meeting, right?

A. He was. He was present, yes.

MS. RISTER: In fact, her husband took Miss Kimball. Through the meeting with you, correct?

A. OK. 3 Council, both Council. Just so that I'm oriented on the time schedule, isn't she on administrative leave at this stage? Not yet, OK. Thank you.

MS. RISTER: Tuesday.

A. I'm trying to track Tuesday. That's their interaction. And then Thursday Mr. Hitchcock meets with Miss Kimball and Miss Kimball's husband, and then the next day, Friday.

MS. RISTER: Hate admin leave.

A. OK. Saturday wasn't OK. Thank you. That sounds right, that chronological. OK, so at this meeting between you, Miss Kimball and her husband, where was that? Starbucks in Fort Worth.

MS. RISTER: How long is the beer?

A. Approximately 20 minutes.

MS. RISTER: How many beans have you had with a subordinate and the subordinate's spouse?

A. I I can't think of any others in that.

MS. RISTER: Why was her husband now?

A. I didn't know at the time. But he was there to drive her there and provide, as I understand the support.

MS. RISTER: What did he say during the meeting?

A. He was not sitting with us at the meeting, he was sitting in the car while we sat and spoke inside of Starbucks.

MS. RISTER: What? What was discussed about her husband?

A. We did not discuss. Her husband at a level that I can recall at that meeting. I will, yeah, he simply said. She said that he helped her get to the meeting and that formulated her thoughts that she came to, to be able to talk to me. Because he had. She she explained that her husband had discovered her text messages and that was part of why he was involved in this right. I don't recall that, but all I recall is what I supposed to share.

MS. RISTER: What else can you recall? Actually, you didn't really told us anything specific. Specifically, anything. In this conversation with Miss Kimball. Was discussed about her husband in any way. Floor is yours. I mean, I'm not. I'm not sure. This guy. I mean, the floor is literally yours because none of us were there. So what? What about her husband came up?

A. She. He helped her put the words what she wanted to share about an event that was traumatic for her. And he brought her there and she shared.

Q. The the right up that she put together with him.

A. To put their words, what she experienced.

MS. RISTER: So you're. In all these interviews. Summaries from you, you don't mention, there's no mention of the husband by you and these is it right?

A. I I will read these and I don't know. I don't know what's.

Q. Without reading these to tell you that or not.

A. But that has not been something that has ever been withheld within reason.

MS. RISTER: We haven't heard about the husband from Mr. Jacobs. Anybody. Who'd you tell? I'll ask you a question. You should know. Who did you tell?

A. That miss, Miss Kimball.

MS. RISTER: Formulated her thoughts with her husband to meet with you right?

Q. Who did? You tell it to Whose interviews are these? These are Mrs. Sanchez in January. This is after the fact because I I don't recall him being interviewed during the initial decision.

MS. RISTER: Thank you, I can. Clarify. That's OK. I just so you recall meeting with Miss Sanchez. Yes. OK. So the original complaint.

A. That was drafted by her. She explained that when she said formulated her notes and thoughts, her and her husband drafted that complaint together. Yes.

Q. Did you say she had a write up?

A. Yes, she did. So when we met, she had typed it out on a computer screen because she said the words were too challenging for say out loud. And she asked me to and she opened it up and asked me to read that in in her presence and then. I talked to her, so she she handed you her computer, said this is what I want to talk to you about.

Q. Would you please read?

A. This because it's too hard for me and she said that her husband had helped her put that.

Q. Together, that's correct. They talked that through. OK, is that effective? Is that ever produced or printed anywhere? Not from my perspective, no. Were you ever asked for? You. Know Well, in all fairness, it's not a JP Morgan document, so.

MS. RISTER: If it was up that computer. What? What computer was that? She had a laptop, you know. It was JP Morgan One or not I know.

A. I don't actually OK.

MS. RISTER: And did you tell Miss Stainback that? Miss Kimball's. Write up Complaint was drafted by Miss Kimball with her husband. You don't mean Mr. Steinberg, You mean Miss Sanchez, don't you?

A. Well, did you ever talk awesome about our question? Did you ever have any discussions with Miss Stainback and HR about Miss Kimball's? About your conversation with Miss Kimball at the coffee? Shop yes, that was the first thing I did after hearing this was go back to the office and reach out.

MS. RISTER: To Mr. You talked to Miss Stainback. Did you tell Miss Stanback? I've got I saw a write up for Miss Kimball that was drafted jointly by her and her husband.

A. Yes, I believe I would have, yes.

MS. RISTER: Did you ever? There's another investigator named Jonathan Jacobs. Did you hear that name? I've heard that name. Did you tell Mister Jacobs?

A. That when you had the meeting with Kimball. She had a written write up that had been drafted jointly by her and her husband. I can't. I don't recall if I told him that, but I would have said this exact same thing to anybody would have spoken to so I would assume.

Q. With that, yes. OK, let me get some clarification here. Did you ever talk to Mr. Jacobs? The name rings a bell. I remember Sanchez. I don't remember Jacobs as well. I've talked to a number of individuals internally about this. Don't know that I remember that specifically. OK. OK, so who would? JP Morgan? You explained that Miss Kimball had a written write up and jointly drafted by her and. Her husband I went and was called Stephanie stand back and. Asked her where this needs to go next and told that.

MS. RISTER: To her, did she say it was drafted by her husband or they worked through it and.

A. I never heard drafted. OK, besides Miss Stainback, who else did you say that Miss? The written write up from Miss Kimball was by her and her husband. I would think it would have been to Miss Sanchez when I was interviewed for the the next round, I would believe.

MS. RISTER: So in January 2024, you mentioned the husband, but if we don't see that mentioning here. Who else besides staying back and Sanchez? Stanchions months later after resignation? Who else besides staying back? Did you tell back on October 2023 that the Kimball complaint was by her and her husband, with her husband sitting in the car outside?

A. I can't think past Stephanie Sandbach who that would have gone to because that was who I relied on, for what the next steps would be at that point.

MS. RISTER: So the answer is no one else besides standing.

A. That you recall here today. Yeah, correct. That's right. That's. Right. So I'm not trying to be a deaf horse with this question. I'll be my last one about who it was. But you did not tell Ben Stewart, you did not tell J.T.

Q. Aughinbaugh that the written complaint by Miss Kimball was by her plus her husband, right?

A. I don't know. I don't think so.

MS. CLEMENT: Before you leave this document, can I ask a quick question? I know you didn't write this. I understand that the the person did, but they make a comment in there that says, and I just have a question on that. It says after Kyle spoke to Joshua, Kyle began to think that Kellyanne not being herself could be related to Joshua. That is a statement from the the investigator. I appreciate that. Why did you reach that conclusion that the investigator would have said that it was related to Joshua?

A. I this was immediately after having coffee with Josh and there was a level of disorientation that concerned me that he was going through and I didn't know why. And I had known that they had worked together very closely for a long period of time and it occurred to me.

A. As I'm walking in and I saw her, I just said if in my mind, if somebody had been working that closer together, has their are you OK? Just are you OK to ask that question?

A. Not knowing anything that could have been wrong, just simply checking in.

MS. CLEMENT: So there's nothing that Joshua. Had said to you leading up to that point to reach that conclusion that Kellyanne was somehow involved in whatever. Case. Was going.

A. On no, it was just simply what I observed and that they were close together. That's.

Q. That before you had this meeting in January?

A. With Kellyanne.

MS. CLEMENT: Before you had this meeting in January with Kellyanne, wait, was it October? This is October. I'm talking about the interview with Sanchez, with Julie Sanchez.

A. OK.

Q. You're saying that the meeting I had with Kellyanne was in October?

A. Yes.

A. Directly after having coffee with Josh, like walking back to the office and just checking in right after that.

MS. CLEMENT: And then you subsequently told that to the investigator, that it happened in January. Is that where this came from?

THE CHAIRPERSON: OK, the reason we're disoriented, and I'll say this to counsel, is because the investigation that was done in October that resulted in the termination was by a different individual than Ms. Sanchez. And it doesn't appear from any of his notes that he ever spoke to this witness.

Q. But you're certain that after this meeting, you went back and you shared at least some of what Kellyanne had said to you with Ms. Stainback?

A. Yes, I am. And as I read this, I was interviewed on January 12th. That's how I read this. Yes, that's correct, as I understand that to be.

Q. But in October, you're convinced that you called Ms. Stainback after talking to Kellyanne and reading the statement that was on her computer screen?

A. Yes. The first thing I did was go back and call Stainback.

Q. Did you talk to Mr. Biering about your conversation with Kellyanne?

A. No.

Q. All right. I think I'm oriented now. So the 24th was the meeting with Biering, right?

A. Correct.

A. October 24th, is that right?

A. Yes. That was the Vaquero/Starbucks meeting.

Q. Let's look at Exhibit 214. These are chats between Ben Stewart and Stephanie Stainback. You see that?

A. I do.

Q. Look in the middle. There's a message from Ben Stewart on October 24th. It says, 'and yet another update.' You see that?

A. I do.

Q. That same day, Ben Stewart is sharing with HR that Biering is resigning. You've got the same information about Biering. You and Ben Stewart certainly talked about Biering resigning too, right?

A. I don't know in what context. Not necessarily, no.

Q. You and Aughinbaugh meet pretty much every day and have discussions every day, right?

A. We do.

Q. The top performer in the office is telling you and Stewart that he's resigning, and Stewart is telling HR that he's resigning. But you and Stewart don't talk about this?

A. That is not my purview. I do not oversee Josh Biering.

Q. That message says 16:04. Remember, there's an issue with the UTC time. That's actually 11:04 in the morning, right? And then Mr. Biering goes on PTO a couple of days later, on Friday, and he's told he's being put on paid administrative leave. Do you know that?

A. I do know that happened. I can't confirm the date, but that sounds correct.

Q. huge part about that and at least from my perspective is the risk aspect for a client making sure we're getting that, thinking about that along the way. So when I said it in that context, as far as risk goes, that's. Why I was thinking about that. I assume by the way, that you have those kinds of. Disagreements with all sorts of brokers. Yes, I can't. I can't think of a single one. I haven't had a professional disagreement and I sort of do. That as my job is to make sure we're going through that. All right, let's switch gears a little bit. Let's talk about Kellyanne Kimball. OK? When did you first meet her?

A. Met her when she joined the firm as an analyst.

Q. Do you recall approximately what year that was?

A. That would have been post COVID. I would. I would think that was 2021, I can't remember exactly.

Q. Was was her joining the firm as an analyst in her about 21 was that her first professional job in in the financial services industry if you.

A. Know as I understand the financial services she had had spent a year I think it was at Texas Instruments prior to which that was not part of the financial.

Q. Services How old was she, if you know when she started at the firm?

A. I don't know exactly, I never asked her that, but that would have been, I would have assumed, 2223.

Q. You know young 23 that that time frame, OK. Describe the kind of employee that Kellyanne Kimball was. Very organized, very decisive. Very. Very, very driven and. Very direct. OK. Did you have a sense for any, you know, striving to succeed or any desire to be successful in the business from her? Did I see that in her or yes, absolutely I did when you know somebody that really wanted to to outperform was was absolutely what she. All right. So let's move to 2023 and I want to talk. How often would you interact with Miss Kimball? You know, let's say on a weekly basis?

A. On an organized basis, I don't know that it was that organized, but I would. I would see her and talk to her.

Q. Specifically, you know, conversations a couple times a week, but I would see her every day because we're all on the same floor and you can pass by, have a couple conversations. Did you get to know anything?

A. About her personal life. She did share that she was a Christian. She shared that because that she saw that I was a Christian and that she was I was something that she would like to seek mentorship in because that was something that. That she really felt like she wanted to, to kind of follow through with and learn more about how I how I went about my day-to-day as a result of that.

Q. Would you have considered yourself, back in 2023, a mentor of hers?

A. I would. It was it as a result of of you both being Christians or was it a result of other things, or what was that?

Q. Or why did that relationship develop? Mainly that because she had sort of expressed that desire that that intent to just to grow in that I, I view myself in my role as somebody that should always be ready to be an event. Role because that is, you know, as a leader, something that people are listening, whether I like it or realize it or not. And so from that perspective, I, I want to be above approaching that in that way. But she did specifically note that that aspect of me being a Christian and her wanting to learn and, and and have a career where she lived by those values. That would be the specific reason. Why did you learn at that time where she actually lived?

A. I didn't know that. No, I did not.

Q. When when she was working at JP Morgan in 23. Do you know now where? Where she lived.

A. I do now, yes.

Q. Where did she live?

A. She lived in.

A. South of Southlake I believe it's the town of Hearst. Could have been Euless, but right in between Dallas and Fort Worth.

A. Kind of near DFW airport. OK, so she she didn't live in Dallas. Well, not that I understand, no.

Q. Did her Do you know where her husband worked?

A. I do know her husband worked in Dallas. She did share that. OK.

Q. Now, you know, as, as, as claimants, counsel has said a lot has come before you. So I don't want to go over, you know, and be redundant. But did there come a time when you noticed that Miss Kimball was, you know, acting strangely or maybe not herself? Did it start with that stair that we described?

A. Or no, it was. It did not start with that. It was there was a a distance and a disorganization. That felt like it was building and only in hindsight can I really say that that that I really noticed that, but that absolutely was was occurring.

Q. Was can you pinpoint for us you know a month in 2023 when even upon further reflection when they when you realize that started?

A. It would have been. I don't know if anybody might be within late summer and into the fall that I would have, that I would have really noticed that was happening. OK.

Q. Did did you ultimately hear anything about a golf outing prior to having the meeting with her, or was that when you learned of that?

Q. Not OK. Did you ever disparage him or or say something false about him to any client or third party after he after before he was terminated?

A. No, I absolutely did the best I could just to speak with the utmost care and facts, but while also not having anything come out that would allude to anything disparaging.

Q. Are are you aware of anybody else at JP Morgan who said anything disparaging or defamatory if. You know what that word means about Mr. Biering.

A. I don't know, I I won't project on what happened but I don't know and haven't heard anybody. Like saying outside of requested that.

Q. Did you ever tell anyone?

A. That Mr. Biering was discharged from the firm. I don't remember using that terminology now.

Q. Did you ever tell anyone that Mr. Biering was no longer?

A. With the firm. Yes, I.

Q. Did do that OK? Do you ever do anything to retaliate against Mr. Biering? Did there come a time after December 1 of 2023 when Kellyanne Kimball communicated with you about any text messages from Mr. Biering or in connection with any?

A. Text message with me about text messages. I don't remember the exact dates and time but yes and that would sound.

MS. CLEMENT: Like about the time frame. Can you restate what they you said referenced?

A. I said after December 1 of 23.

MS. CLEMENT: Thank you. I just sit here. OK, no problem.

Q. What? What do you remember about that? Kyle, I remember. I asked you whether you recalled ever meeting with her individually after the meeting at the coffee shop. Did you talk with her about these texts? And these were this was not an in person conversation. My answer to you was in person. And that's what I thought you were. You were asking all right. Maybe I should clarify. Did you have phone calls with her?

A. Yes, I did speak with her phone. I thought you more than once. It wouldn't have been more than two or three times, but it would be in that ballpark of one to three times after.

Q. Did she initiate those calls?

A. Yes.

Q. And was one of those calls the One Year Council is about to talk to you about with respect to text messages?

A. Well, this would be the time where her husband and my wife would have joined on to yes to follow up on a text of It would have started with a text message and then followed up with if we're going to do this I wanted to be with. Not just me. I was very, that was something that was very important to me, that. That was not the case. OK, I'm sorry I interrupted, but I I wasn't careful enough with my questions, apparently.

Q. Could you look in the big book there at Exhibit EE please? Did you say double? EE So it's it's the bigger book. Some of them have numbers, some of them have yeah, it might be. Buried over there.

A. OK, behind exhibit double EI want to go to the second page of that that has a Bates number on the bottom right of 25397. OK. And there it is up on.

Q. The screen there do you do you? See a text message in the middle of that page? Are you familiar with that text message?

A. This is the text message that I'm referring to that followed up with a phone call for. Prayer with my wife and her husband. OK, read for the record out loud what the text message from Kellyanne to you says. It says Hi Kyle, I hope you all are having a wonderful evening. I hate to interrupt it but I would just ask for prayers from you and Tasha. I unfortunately received a text from Josh that really freaked me out. I am not sure what next steps are and feel a little afraid to be back in downtown Fort Worth at this time, but I did just want to share this in the case I end up taking an extra day or two of vacation time. Although that may.

Q. Not be necessary, OK. And did you at that time? Kyle read the text message. That she said she received from Josh, which is reproduced here. Yes, I do remember seeing that. OK. And if you'll scroll please for us, Sarah, it's it's really small. We've been through this before you got here. Can you see there at the bottom of?

A. There we go. She's going to try to make it bigger. There you go, there you go.

Q. Do you? Do you see what it says there at the bottom?

A. I guess I.

Q. Do can you can. You read that for the record. Please, this is Josh. You ruined my career. And then there's another one from Josh above. Do you see what that says? Oh, I hope you find peace in that. So was your. Response to this. Setting up a call to prayer to pray together you and your wife and and Kellyanne Kimball and her husband. How? How did you do that? Did you give her a call? Yeah, so I engaged my wife and I, I just said, would you be comfortable if we had a phone call here? I just received a text. And my goal and my part in this was I see somebody who says she's scared and I was a human being. What do I do here with the utmost care? Because again, I'm not equipped for this. There's so many things I know that I don't know. So I engage my wife. I called her and I asked her husband would get on the line further with the four of us to then simply pray for it

because I didn't know what to do. I wasn't equipped. And for the record, there's mention here of Tasha that you're. My wife, That's my wife, Natasha, who goes by Tasha. OK, OK. All right. Do you do you remember how long that telephone conversation took? Was it just about prayer or was it about something?

A. It was, it was. It really was. It was 5 or 10 minutes and and.

Q. Part of why she even referenced Tasha was my whole heart in this is I want to the extent that you can be around women, I, I want there to be people that can help you. That may not be me as a man, like I, I don't want to abdicate my responsibility as a leader, but I also know with things like this it is so sensitive and tender and I don't know what's right and I don't know if it's not. And so from the beginning, I said I would, if there's any need, I would love for, for her to be involved. And so that's what that was. And the only thing we need to do, honestly, the only thing we need to do. What's right and wrong? But guys, I believe in Jesus. I believe he was real, and what I knew was to lift that up to a higher power and allow him to. To interview. That was my heart met. Now finally, are you aware of what a form? U-5 is.

A. Yes.

Q. What's a Form U-5? What do you? Know it to be as as I understand that the Form U-5 is related to FINRA and it is it is. It has to do with and I'm not going to be able to tell you exactly, but it has to do.

A. With a record or and then I don't.

Q. What has to do with termination or not, but that would have been what I would have thought that has to do. With it, were you in any way, shape or form in this particular case involved with what Mr. Biering's formed U-5 said.

A. No, I was not. If I get up. A moment. I'm sorry, nothing further. I have to before you get back to so we can make sure you can both cover it.

Q. Mr. Hitchcock, you had no direct supervisory role over Kellyanne, correct?

A. Correct. I would not. Who?

MS. CLEMENT: Was her immediate supervisor.

A. As an analyst, she would have been under the supervision of analysts and managers, which at the time I believe that was Allison Westmoreland and Brooklyn, OK. It's not surprised, right?

MS. CLEMENT: And you said you were kind of a mentor torture. How did that come?

Q. To be. She had mentioned that she saw that as a I had stated that I was a Christian and as a Christian herself she would she wanted to to see how do I live that out the way I had looked it out. How did you do that over time?

Message

App. 0748

**From:** Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com]
**Sent:** 12/22/2023 1:49:38 AM
**To:** Tidwell-Neal, Rachel L [rachel.l.tidwell-neal@jpmchase.com]; Sebastian, Nancy R [nancy.r.sebastian@jpmorgan.com]; Sanchez, Julie [julie.sanchez@jpmchase.com]
**CC:** Cohen, Jena B [jena.b.cohen@jpmorgan.com]
**Subject:** FW: Josh Biering

# Redacted - Privilege

**From:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>
**Sent:** Thursday, December 21, 2023 7:16 PM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Cc:** Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Subject:** RE: Josh Biering

This is very serious. Outright threats. Stephanie, so you know who in security I can notify?

Thank you for escalating, JT.

---

**Pete Chilian** | Managing Director | South Region Head | **J.P. Morgan** | 1900 N. Akard St. - Floor 5 | Dallas, TX 75201 | T: 214 965 3198 | peter.c.chilian@jpmorgan.com | privatebank.jpmorgan.com

**Alternative Contact**: Evette Campbell | T: 214 965 3471 | evette.campbell@jpmorgan.com

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail).** For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. For questions, please call your J.P. Morgan representative. JPMorgan Chase & Co. and its affiliates and employees do not provide tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any financial transactions. Please submit personal information to J.P. Morgan through a secure manner (e.g., Secure Message Center, Client Exchange, postal mail, fax or in person). **Important risk considerations for certain investment products and asset classes can be found HERE.**

**Swap related material subject to the Swap Dealer Associated Persons Disclosurehas been prepared by a Swap Dealer Associated Person of JPMorgan**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

---

**From:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>
**Date:** Thursday, Dec 21, 2023 at 7:03 PM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>, Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>, Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Cc:** Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>, Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Subject:** Josh Biering

Not sure if there is anything to do about it, but wanted to circulate text messages sent by Josh Biering to Kelly Ann, Ben, and myself tonight. Redacted - Privilege Redacted - Privilege Available to discuss further at your convenience. Please let us know if there is any additional action to take. Thank you.




App. 0749

6:32

JB BS

2 People

New photo available from Josh

Update

and happy to make myself available should anything come up.

Josh

Tue, Oct 24 at 12:23 PM

Josh Biering

Any chance we could meet off site or in a different location at 1?

If not- I can come to client center no problem

Nvm. I'm in client center whenever free

Today 5:41 PM

Josh Biering

You all are malicious. Cruel. And you will be seeing me again.

---

**J.T. Aughinbaugh** | Managing Director | **J.P. Morgan** | 420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 |
T: 817 884 4463 | john.t.aughinbaugh@jpmorgan.com | jpmorgan.com/privatebank

**J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.**

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail).** For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. **Important risk considerations for certain investment products and asset classes can be found HERE.**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

# Aughinbaugh Cross (Relied Excerpts)

**App. 0752-0757**

Aughinbaugh cross-examination relied excerpts (UMF 109). Public per 2026-08-18 operator instruction.

133 **Q.** Any of those exceptions get granted while he was on garden leave?
134 **A.** I feel like you're leading up to something specific. I don't recall.
135 **Q.** While he was on garden leave, did the Fort Worth team offer a $20 million loan to MB2 that had previously been denied by Mr. Biering?
136 **A.** I don't recall that being denied.
137 **Q.** So do you... is there any… you can't think of, any exceptions he had asked for? Well, let me ask this while we're on the topic of MB2 – you recall who MB2 Dental is right?
138 **A.** I do.
139 **Q.** A client he had sourced and was signing up with JP Morgan, right?
140 **A.** Yeah.
141 **Q.** The business is there with your branch, right?
142 **A.** Yes.
143 **Q.** OK. Before you informed him of termination... the days before that... folks from your team, from the Fort Worth team, were meeting with MB2, right?
144 **A.** Before Josh's termination.
145 **Q.** While he was on garden leave?
146 **A.** That would probably happen, yes.
147 **Q.** Before Mr. Biering was... before you informed Mr. Biering that he was terminated, and during that garden leave, did you meet at any means with MB2, or you or anyone else on your team told MB2 that Josh was, "canned"?
148 **A.** I certainly did not, and I'm not aware of that.
149 **Q.** I asked if you or anybody from the Fort Worth team.
150 **THE CHAIRPERSON:** He said he's not aware of that.
151 **Q.** I thought he said for himself, but…
152 **THE CHAIRPERSON:** He said, "I didn't and I'm not aware of that."
153 **Q.** I'm using the word "canned". Are you aware of anybody from you or your team informed the MB2 folks that Mr. Biering was being terminated or let go from JP Morgan before you informed Mr. Biering of termination?
154 **A.** No.

*[ZOOM0033 ~0:15:49.6]*

155 **Q.** Back to 188. On page 58. Highlighted... [inaudible] highlighted. As reference to the foundations... it says the foundation was not

182 **Q.** And that's consistent that October 24th is when it felt like he was resigning all the way out and asking about incentive comp. or some other payment?

183 **A.** I believe so.

184 **Q.** Hold on. One last question. Let's look at Exhibit 113, please? Mr. Aughinbaugh, we're going to a text message string between Mr. Biering and Dr. Mauricio Dardano. Dr. Dardano is associated with MB2 Dental, right?

185 **A.** I couldn't tell you for certainty.

186 **Q.** OK. In the middle there, we see October 28th for this individual and Mr. Biering traded messages on November 28th. You informed Mr. Biering two days later that he was being terminated from JP Morgan. Is that right?

187 **A.** I don't see a date on here, so I don't know what that…

188 **Q.** [inaudible]

189 **A.** OK.

190 **Q.** And then, [inaudible] November 28th point there.

191 **THE CHAIRPERSON:** Yes, it is. I can tell you that's before he was terminated. You don't need to go look. I know that. And the testimony about these particular text message is that it was from a person with that dental company that was a large customer of Mr. Biering's and your office, and that somebody from JP Morgan had said this information. Did you… Were you aware of that? Were you in that meeting?

192 **A.** This is the first time I've seen this.

193 **THE CHAIRPERSON:** OK. And were you at a meeting with the personnel from whatever the proper name of the dental company was a couple of days before you told Josh that he was fired?

194 **A.** Was I with?

195 **THE CHAIRPERSON:** Yeah. Were you at a meeting with, what's it 2D Dental?

196 **MR. MCALLISTER:** MB2 Dental

197 **THE CHAIRPERSON:** …MB2 Dental, a couple of days before you notified Josh that he was being terminated?

198 **A.** I don't recall a meeting a few days before his… I was in a meeting with Josh, and one of the members that has the lead of this group at some point in the past, at Josh's introduction, and so I don't


S.11a.ii-011

recall the date of that, and I don't know if this person was in that room or not.

199 **THE CHAIRPERSON:** Did you let anybody in your office other than Mr. Stewart know that Mr. Biering was going to be terminated before you told Mr. Biering?

200 **A.** Well, at this point, we did not know there was going to be a Recommendation for Termination, if I think of that timeline.

201 **THE CHAIRPERSON:** So nobody either knew or should have been telling a client that Mr. Biering was going to get canned.

202 **A.** Correct. Frankly, who knows what Josh was telling people, because that's...what

203 **THE CHAIRPERSON:** OK.

Q: [inaudible]

204 **MR.DUNLAP:** I've got nothing further.

205 **THE CHAIRPERSON:** Do either of you have questions?

*[ZOOM0033 ~ 0:25:46.8]*

206 **MS. RISTER:** I do. I have a couple. I apologize. So you said that Mr. Biering continuously was requesting exceptions and that they were outside of policy, and those are not permitted, generally speaking. And his conduct was being aggressive. You said – And this was generally in context that you were coaching him yourself personally. Why did you not document any of his behavior if it was increasing such that it was a concern on his conduct within the office and overall?

207 **A.** I don't think... I did not feel at that time... well, one, I wanted to protect Josh from himself and help him. And so perhaps I took on too much of that. I didn't want to file any kind of official report. I felt like it was coaching and helping Josh, and then the behavior escalated pretty quickly to a level of...

208 **MS. RISTER:** So I just want to be clear on your testimony. Your testimony was you were trying to protect him. You didn't want to... you wanted to coach and take it on yourself as to his asking for things outside the exception. But then you ultimately testified – and correct me if I'm wrong – that you in fact complained to HR about the fact that on a social meeting, outside at a bar when he told you to 'F off,' that that was enough to trigger you to file a complaint. So policies of

JP Morgan were not sufficient, but him telling you to fuck off was? Is that your testimony?

209 **A.** I didn't file a complaint.

210 **MS. RISTER:** You said you reported it to HR.

211 **A.** I think, well…

212 **MS. RISTER:** [inaudible]

213 **A.** Someone said Ben did. I don't recall whether I mentioned it in a conversation mentioned it, or if Ben Stewart did. I mean, it was known, and I don't remember who told… There was not a complaint or a report filed. I don't...

214 **MS. RISTER:** If you reach out to HR, is that not a complaint in context? Like, if you're not keeping it within your building and you reach out to HR and say, 'Hey, this person told me to fuck off,' is that not a complaint to HR? Do they not document that?

215 **A.** I guess so.

216 **MS. RISTER:** So other people have left your building since you've been the market manager, right? And excuse me if that's the wrong title, correct?

217 **A.** Yes.

218 **MS. RISTER:** And when they leave, do they generally take their clients with them, or does it just depend on the person?

219 **A.** They generally do not.

220 **MS. RISTER:** They generally do not take their clients?

221 **A.** They generally do not. Our model is service of clients with a team of specialists, who all have individual roles and specialties. We have a team-based approach on clients, and when an advisor – there are probably other firms that use a single independent advisor model, but that is not the JP Morgan model. We have multiple team members who are involved in covering the clients. And so for us to be in contact with clients after a departure or during a leave, we're covering our clients and making sure their needs are being met. And so, no, Josh is not being singled out in this manner. There's…

222 **MS. RISTER:** So my question is, isn't there multiple models within JP Morgan: A single coverage and a team coverage model?

223 **A.** Single coverage and partner coverage.

224 **MS. RISTER:** OK. So single coverage, does that still have a team of people working on it?

225 **A.** It does.

226 **MS. RISTER:** OK. So those people have contacts with those clients on an ongoing basis?

227 **A.** Correct.

228 **MS. RISTER:** And you said that there were certain clients that suggested that they didn't want – or certain members of those teams that did not want, to continue to work with Josh's clients. Is that.. That was your testimony?

229 **A.** Yes.

230 **MS. RISTER:** What did you do with those clients?

231 **A.** Kyle Hitchcock and I took on some of those responsibilities, or senior, more experienced advisors who may have had contact with the clients were asked to step in if there was sensitivity from advisors that didn't want to be involved in the harassment… in the situation.

232 **MS. RISTER:** OK. So with the clients that stayed, and we're talking about Josh's clients generally, those clients that didn't leave when he departed, whether with him or otherwise, just generally – How does that directly affect your compensation? The fact that they didn't... it doesn't change it. Is that fair to say?

233 **A.** Directly affect my compensation?

234 **MS. RISTER:** Correct.

235 **A.** No.

236 **MS. RISTER:** So your compensation has no metric that includes a bonus based on the money that's under management in your market, correct?

237 **A.** A bonus based on... we are all charged with growing our revenues and our businesses, and so… but there's no formulaic bonus calculation on retention of assets or long-term growth of our business.

238 **MS. RISTER:** So if all of his clients would have left, that would have no effect on Fort Worth's business, overall profitability, and/or your compensation?

239 **A.** Would not have an immediate effect on my compensation. It would reduce the revenues of our office.

240 **MS. RISTER:** OK. So you said 'immediate,' and that word always triggers something. So it would ultimately, though, have an effect on your

compensation if you did not replace those clients with new business. True?

241 **A.** True.

242 **MS. RISTER:** That’s all. No further questions.

243 **MS. RISTER:** I have none.

244 **THE CHAIRPERSON:** Nor do I. May this witness be excused?

[speaker tag uncertain]: Yes, please.

245 **THE CHAIRPERSON:** OK. You're excused.

246 **A.** Thank you.

247 **THE CHAIRPERSON:** Drive safely.

[speaker tag uncertain]: Are we going off the record?

248 **THE CHAIRPERSON:** Yes. Let's go off the record.

# Notice-Period Policy and Restrictions

**App. 0759-0776**

Notice Period Policy - U.S., pay/clawback, and future-leaver planning records.

Policy

# Notice Period Policy - U.S.

Current Effective Date: June 20, 2023

TABLE OF CONTENTS


1. Summary or Rationale .... 2
2. Scope .... 2
3. Changes from Previous Version .... 2
4. Policy Statements .... 2
5. Notice Period .... 2
   5.1. Employee's Responsibilities During the Notice Period .... 3
   5.2. Consequences of Breach/Remedies .... 3
   5.3. Employment-At-Will .... 4
6. Defined Terms .... 4
7. Legal and Other .... 4
8. Firm References .... 4
9. Document Information .... 4


HUMAN RESOURCES

Exhibit
CX16

## 1. Summary or Rationale

JPMorgan Chase operates in a highly competitive industry. Our success is based, in large part, on our employees' efforts to build and maintain client relationships both internally and outside the organization. As a result, it's critical that the firm protect its ability to sustain those client relationships and ensure business continuity in times of employee transition.

## 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| **Lines of Business** | • Refer to the Notice Period Policy Overview Chart | • n/a |
| **Function(s)** | • Refer to the Notice Period Policy Overview Chart | • Human Resources |
| **Locations** | • United States | |
| **Legal Entities** | • All | |

## 3. Changes from Previous Version

There are no significant changes as a result of the re-approval of the policy.

## 4. Policy Statements

Notice Period. JPMorgan Chase requires that all identified employees (as outlined in section 5) provide the Firm with advance notice of the resignation of their employment.

## 5. Notice Period

The firm requires that certain employees at or above the level of Vice President or the equivalent, provide their manager advance notice of the resignation of their employment. Some employees below the Vice President level may also have a notice period requirement. Employees should provide this notice in writing. In addition, employees should submit their resignation via me@jpmc.

Additionally, if you have a separate agreement or terms for your business area that provides for a longer notice period than is stated under this Policy, the longer notice period will apply.

To determine if you are subject to this Notice Period Policy and, if so, the number of days of advance notice (referred to as "Notice Period") you are required to provide, please click on the link below:

Notice Period Policy Overview Chart

The notice period will start the day you provide your resignation. For instance, if you submit your resignation on 6/1 and have a 30-day notice period requirement, then the end of the notice period would be on 6/30.

Generally, the firm will seek to enforce its Notice Period Policy. In certain cases, however, the firm may, in its sole discretion, decide to waive all or any part of your Notice Period and set an earlier termination date. If this occurs, you will be paid in lieu of notice and will receive a lump-sum payment equivalent to your base salary for all or the remaining part of the applicable Notice Period (less applicable deductions).

Line of business (LOB) managers may not waive notice period requirements. In very rare circumstances where an exception to the Notice Period is considered, the exception **must** be approved by the LOB Head (OC Member), the HR LOB Executive (HR OC Member) and, if applicable, the Regional HR Executive (HR OC Member); or in leave of absence scenarios, the HR LOB Executive.

### 5.1. Employee's Responsibilities During the Notice Period

During the Notice Period, you will remain an employee of the firm and will be prohibited from working for, or performing any services for, another employer or from being self-employed. You will continue to be paid at your current base salary throughout your Notice Period and will remain benefits eligible. Once you provide notice of your resignation, you will no longer be eligible for any discretionary incentive compensation or equity award, even if your Notice Period includes the date on which such an award would otherwise be granted or paid.

As an employee of JPMorgan Chase, you will have a continuing duty of loyalty to the firm throughout your Notice Period and will remain bound by the provisions of the firm's Code of Conduct, including its requirements regarding confidential and proprietary information, non-solicitation of employees and customers, and no-hire obligations, as well as any other applicable employment policies.

It's within the firm's sole discretion to determine whether you will be expected to continue to perform your duties or otherwise provide services during the Notice Period. The firm may remove you from any assigned duties, assign other duties to you, require you to refrain from performing any job duties or from reporting to work, and may prohibit you from directly or indirectly contacting its customers, suppliers or employees until your employment ends. Regardless of the extent to which the firm directs you to perform your duties or report to work during the Notice Period, you will be expected to be available as reasonably necessary and will continue to work cooperatively and professionally with the firm to ensure an effective transition of your responsibilities.

In addition, you remain obligated to cooperate fully with, and provide full and accurate information to JPMorgan Chase and its counsel and other advisors in connection with any matter (including any audit, tax proceeding, litigation, investigation, governmental or regulatory proceeding) with respect to which you may have knowledge or information.

### 5.2. Consequences of Breach/Remedies

Failure to comply with this policy constitutes a breach of a term of your employment with the firm and may impact your eligibility for rehire. JPMorgan Chase reserves its rights to pursue any legal and equitable remedies to which it may be entitled.

HUMAN RESOURCES

### 5.3. Employment-At-Will

At all times you remain an employee at will, which is to say that the firm can alter the terms of your employment and end your employment at any time.

This Notice Period Policy shall supersede any prior notice period policies set forth in any previous communications, except that, to the extent you have a separate specific agreement that provides for a longer notice period than is provided under this Policy for your business area, the longer notice period will continue to apply.

By continuing your employment, you agree to provide the required notice and to abide by the terms and conditions of this Policy as described above. This requirement is also included in the terms and conditions of any equity awards you may receive.

## 6. Defined Terms

| | |
|---|---|
| **Notice Period** | The number of calendar days of advance written notice of resignation of employment covered employees are required to provide to their manager. Certain responsibilities apply during the Notice Period. See Section 5.1 |

## 7. Legal and Other

| | |
|---|---|
| **Enterprise Library Application (ELA) Link** | • n/a |
| **Statutes, Laws, Rules, Regulations or External Guidance** | • None |

## 8. Firm References

| | |
|---|---|
| **Other Firm Policies or Standards** | • Notice Period Policy |
| **Policy Supplements, Procedures, and Other Documents** | • Code of Conduct<br>Notice Period Policy Overview Chart |
| **Forms and Systems** | • |

## 9. Document Information

| | | | |
|---|---|---|---|
| **Policy Level** | Level 3 | | |
| **Policy Type** | Country | | |
| **Document Owner-Approver \| Function or Line of Business \|Country** | Lynda Cantatore, U374562, Executive Director | Human Resources | United States |

| | |
|---|---|
| **Document Primary Contact** | HR Answers |
| **Document Manager** | Tracy Peterson, N619222, Vice President |
| **Annual Approval Date** | June 20, 2023 |
| **Initial Effective Date** | March 1, 2014 |
| **Additional Contacts** | HR Answers |

App. 0764

JPMORGAN CHASE & CO.

# Notice Period Policy Overview Chart

***Updated July 2023***

Number of calendar days

| **JPMC Operating Committee (OC)** | | 90 | | |
|---|---|---|---|---|
| **Region** | **Business** | **MD/SVP* (605)** | **ED* (604)** | **VP* (603)** |
| **North America** | **All businesses and functions except below** | 90 | 60 | 30 |
| | **Chase Wealth Management & JPMA** Financial Advisors and First Republic Wealth Managers<br>**Commercial Banking** Commercial Term Lending Client Managers/Sr Client Associates<br>**Consumer Banking** Branch Managers | 0 | 0 | 0 |
| | **Corporate & Investment Banking** Algorithmic Trading & eTrading Technology | 180 | 180 | 180 |
| **Latin America** | **All businesses and functions** | 90 | 60 | 30 |
| **EMEA – UK, Ireland & Channel Islands** | **All businesses and functions except below** | 90 | 90 | 60 |
| | **Corporate & Investment Banking** Algorithmic Trading & eTrading Technology | 180 | 180 | 180 |
| **EMEA – All Other Countries** | **All businesses and functions** | Refer to local HR | | |
| **APAC** | **All businesses and functions except below** | 90 | 90 | 60 |
| | **Philippines Corporate Centers** | 90 | 60 | 30 |
| | **Corporate & Investment Banking** Algorithmic Trading & eTrading Technology | 180 | 180 | 180 |

**NOTE**: For those businesses that do not use MD/SVP, ED or VP officer titles, those at the equivalent level are subject to the Notice Period Policy. In addition, former First Republic Bank exempt employees who joined JPMorgan Chase on July 2, 2023, with less than $200,000 base salary or draw have a 14- day notice period, and exempt employees with a $200,000 or greater base salary or draw have a 30-day notice period.

* In certain jurisdictions notice periods may be longer or shorter than the firm's policy or apply to certain positions below the VP Corporate title level. Refer to HR Answers or the HR Business Advisor in your location for details.

For JPMC Internal Use Only

**Notification Overpayment Letters**



**From:** Notification Overpayment Letters
**Sent:** Thursday, December 14, 2023 4:50 PM
**To:** 'josh.biering@gmail.com'
**Subject:** Important information regarding an overpayment – SID: I662283 Case 13272046-0 for Employee BIERING,JOSHUA

Hello Joshua Biering,

We are writing to address a recent overpayment of wages paid to you. We apologize for any inconvenience this may have caused, and we greatly appreciate your help in making the repayment to the company to ensure the correct reporting of wages and taxes on your W2.

We want to partner with you to get this resolved quickly. Please "Reply All" to this email within seven (7) calendar days with the option you prefer. After we receive your response, we will take the appropriate action to collect your repayment.

In order to process a correct W2 for the current year, a full repayment must be received by 12/15/2023. If any amount is repaid between 12/16/2023 and 2/29/2024, a W2C form for 2023 will be issued to correct all Wages and Taxes. Any balance still due on 3/1/2024 will be recalculated and the GROSS less Social Security and Medicare taxes will be due. The IRS requires that any amount repaid in a subsequent year of the original overpayment is not eligible for Federal and State Income Tax reductions.

The overpayment details and repayment options are provided below.

If you have any questions or concerns, please include them in your email response, as well.

Thank you in advance for your prompt response,
Komal Niranjan
Payroll Operations / Overpayment Team

**Overpayment Details:**

| Paycheck Date | Description of Overpayment | Original GROSS Earnings Received | Correct GROSS Earnings Due | Gross Over/(Under) Payment |
|---|---|---|---|---|
| 11/30/2023 | LOA – Manual Leave Processing | $19,602.30 | $0.00 | $19,602.30 |
| 12/15/2023 | LOA – Manual Leave Processing | $11,538.39 | $852.27 | $10,686.12 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | **TOTAL GROSS Overpayment** | | | **$30,288.42** |
| | **Less Taxes and Deductions** | | | **$8,152.61** |
| | **Total NET Overpayment** | | | **$22,135.81** |

Exhibit
CX52

**Repayment details:**

<table>
<tr><td>Option 1:<br>Single Payment</td><td>Make a single payment of $22,135.81, which is the amount you were overpaid afte[r] taxes and deductions. If the repayment is made by 12/15/2023, the wages and taxes associated with this overpayment will be adjusted and a correct W2 will generate for the current tax. If repayment is made between 12/16/2023 and 2/29/2024, a W2C will generate for the 2023 Tax Year.<br><br>To select this option: Click “Reply All” to this email and indicate Option 1 as your repayment choice.<br>• To pay by debit/credit card or an ACH withdrawal from your bank account: Make your payment online - https://ipn.paymentus.com/cp/jprl<br><br>Please wait 24 hours from receipt of this communication to make payment online.<br><br>or<br><br>Call HR Answers at 1-877-576-2427. HR specialists are available Monday through Friday from 8:00 a.m. to 7:00 p.m. ET, except on certain U.S. holidays.<br><br>If you choose to make your payment online, a confirmation email of the payment will be sent to you by Paymentus.<br>• To pay by Personal Check / Cashier Check / Money Order: mail the check payable to JPMorgan Chase Bank to the address below:<br><br>Attn: Payroll<br>1111 Polaris Parkway – Floor 1E<br>Columbus, OH 43240<br>Please include your SID in the Memo Section.</td></tr>
<tr><td>Option 2:<br>Pay in Installments</td><td>Pay back the NET OVERPAYMENT amount of $22,135.81 over time. Dividing the NET overpayment amount over 3 payments, $7,378.60 is repaid on a monthly basis via payment by debit/credit card, ACH withdrawal from your bank account, or personal check. Upon the full repayment, the wages and taxes associated with this overpayment will be adjusted and a correct W2 will be generated at the end of the year or a W2C will be generated for any repayments made after 12/16/2023.<br><br>To select this option: Click “Reply All” to this email and indicate Option 2 as your repayment choice.<br>• To pay by debit/credit card or an ACH withdrawal from your bank account: a specialist will reach out to you to process the repayment<br>• To pay by Personal Check / Cashier Check / Money Order: mail the check payable to JPMorgan Chase Bank to the address below:<br><br>Attn: Payroll<br>1111 Polaris Parkway – Floor 1E<br>Columbus, OH 43240<br>Please include your SID in the Memo Section.</td></tr>
</table>

App. 0767

**Case Number - 13272046-0**

| Category |
|---|
| **Event Summary**<br>(who, what, when, where) |
| **Value of Overpayment**<br>(Net Value in relevant currency) |
| **Fund Recovery** (if applicable) |
| **Occurrence Date** |
| **Discovery Date** |
| **Date(s) of Overpayment / Economic Impacts** (Loss or Gain) |
| **Responsible Party / Contributing Parties** (if applicable) |
| **Control Failure / Root Cause** |
| **Legal Entity Mapping** |
| **Corrective Actions** (Immediate and Follow-on) |

App. 0768

SID - I662283

**Event Data**

Employee has been overpaid in 11/30/2023 and 12/15/2023 paycheck with Paid Admin Leave

$22,135.81

Not yet

11/30/2023 and 12/15/2023

12/8/2023

11/30/2023

LOA team

LOA - Manual leave processing

254896 (802)

| Guidance / Format |
|---|
| On mm/dd/yyyy, Responsible Party did (or did not), resulting in XYZ. Due to this, the …. error occurred. # of Overpayments (Economic Loss/Gain) in the amount of $$$ over …. Time period.<br>On mm/dd/yyyy, Contributing Party also did (or did not) .... which would have prevented error.<br>On mm/dd/yyyy, the error/overpayment was discovered by …. (discovering party and control or process).<br>Recovery status |
| Will need evidence provided (payslip or GL Entry), as well as GL Account, Cost Center, and Company ID, and individual Impact Dates |
| Will need evidence provided (payslip or GL Entry), as well as GL Account, Cost Center, and Company ID, and individual Impact Dates |
| This is the date of the initial error which occurred - must match in Event Summary. **Requires Evidence** |
| This is the date when JPM knew (or should have known) that the error occurred - must match in Event Summary. **Requires Evidence** |
| For RED reporting, individual payments and dates will need to be evidenced and entered singly, including Value and GL Account info.<br>**Required Evidence** |
| Responsible Party is the team where initial 'error' or missed control occurred which would have stopped the event from occuring<br>Contributing Party is the team whose subsequent controls or checks also may have caught the error prior to occurrence |
| The regular process step which was not performed properly (or lack thereof) - will require mapping to CORE Controls if applicable (CORE Controls can be identified by Control Managers)<br>Why was the process step / control missed? (i.e. Human Error, Systemic Failure, Missing Process Control, etc) |
| Responsible and Impacted Legal Entities are required to be mapped in RED, and is also utilized in reporting forums and risk mapping |
| Corrective Actions should address the Root Cause/failed Control at a minimum. Ongoing actions, or future actions will be tracked by CM's for implementation, and determination if formal Issue/AP is required to be entered in CORE (i.e. missing key control, significant error) |

App. 0770

| *OP Team Notes* |
|---|
| *Description of the OP based on case notes / who opened the case* |
| *Net amount of the Overpayment or Gross less FICA* |
| *Has any funds been recovered from the employee?* |
| *Dates of the overpaid paycheck(s)* |
| *When was the case originally opened?* |
| *Dates of the overpaid paycheck(s)* |
| *Who reported the overpayment?* |
| *Loss Reason Description from Edit Form* |
| *Company ID and Cost Center* |
| *n/a* |

Message

**From:** Chiu, Phyllis C [phyllis.c.chiu@jpmchase.com]
**Sent:** 11/10/2023 3:58:18 PM
**To:** Cohen, Jena B [jena.b.cohen@jpmorgan.com]
**Subject:** Re: Cohen, Jena B (WM, USA) sent you a message in Skype for Business

Yes and yes

---

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Friday, November 10, 2023 10:57:54 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>; Chiu, Phyllis C (HR, USA) <phyllis.c.chiu@jpmchase.com>
**Subject:** Cohen, Jena B (WM, USA) sent you a message in Skype for Business

Cohen, Jena B (WM, USA) 11:40 AM:

free?

Cohen, Jena B (WM, USA) 11:41 AM:

i think on the spend sheet we need to make 3 adjustments

Cohen, Jena B (WM, USA) 11:42 AM:

1. add 5.5 to the inc pool total to account for the missing funding for monica and varcity

Cohen, Jena B (WM, USA) 11:42 AM:

2. strange formula in X24

Cohen, Jena B (WM, USA) 11:42 AM:

3. removal of $ from family wealth for the 2 terms that are going back to top of house

Chiu, Phyllis C (HR, USA) 11:44 AM:

yes free

Chiu, Phyllis C (HR, USA) 11:44 AM:

zoom?

Cohen, Jena B (WM, USA) 12:42 PM:

deep breath, i will explain

Chiu, Phyllis C (HR, USA) 12:42 PM:

thank you jena :(

Cohen, Jena B (WM, USA) 2:45 PM:

free?

Chiu, Phyllis C (HR, USA) 2:46 PM:

yes

Cohen, Jena B (WM, USA) 2:46 PM:

zooming you

Chiu, Phyllis C (HR, USA) 2:46 PM:

Exhibit
CX209

will dial



Cohen, Jena B (WM, USA) 2:46 PM:

ok

Cohen, Jena B (WM, USA) 9:26 PM:

I (insert heart emoji) you

Cohen, Jena B (WM, USA) 9:36 AM:

GM!

Cohen, Jena B (WM, USA) 9:36 AM:

can you remind me where we landed on keeping josh biering (future leaver in Fort Worth) i believe you told Steph she could keep it

Cohen, Jena B (WM, USA) 9:37 AM:

also, Dave is asking mary if we can keep terms in the pool after pools were cut

Cohen, Jena B (WM, USA) 9:37 AM:

he sent a note to mary asking for the scott money back

Chiu, Phyllis C (HR, USA) 10:19 AM:

:)

Chiu, Phyllis C (HR, USA) 10:21 AM:

i remember talking about josh biering but don't rememebr if i said she could keep

Cohen, Jena B (WM, USA) 12:43 PM:

can you please look up planned TC for Andrea Finan and Sam Palmer

Cohen, Jena B (WM, USA) 12:43 PM:

they are comparable to TJ

Chiu, Phyllis C (HR, USA) 12:50 PM:

they are the 2 sittingin CCB?

Cohen, Jena B (WM, USA) 12:53 PM:

yes

Cohen, Jena B (WM, USA) 12:53 PM:

also is there a product review meeting next week

Cohen, Jena B (WM, USA) 12:54 PM:

that patty will lead

Chiu, Phyllis C (HR, USA) 12:54 PM:

i will not be able to join until the south meeting

Cohen, Jena B (WM, USA) 12:54 PM:

ok no worries

Cohen, Jena B (WM, USA) 12:55 PM:

product meeting with patty



Chiu, Phyllis C (HR, USA) 12:57 PM:

andrea was 2.225M TC in 2022

Chiu, Phyllis C (HR, USA) 12:57 PM:

sam was 1.5M in 2022

Chiu, Phyllis C (HR, USA) 12:57 PM:

but has a 2.0M in VOS for this year

Cohen, Jena B (WM, USA) 1:04 PM:

thank you and is there a patty product review next week with mary?

Cohen, Jena B (WM, USA) 10:54 AM:

GM

Cohen, Jena B (WM, USA) 10:54 AM:

there is something wrong with my spend report, its corrupt and wont open :(

Chiu, Phyllis C (HR, USA) 10:54 AM:

that's ok

Chiu, Phyllis C (HR, USA) 10:54 AM:

i'm working on it

Chiu, Phyllis C (HR, USA) 10:54 AM:

will send out soon

Cohen, Jena B (WM, USA) 10:54 AM:

can you open the version i sent out last night and see if it opens on your end and is fixable

Cohen, Jena B (WM, USA) 10:54 AM:

the one i sent last night has a lot of changes in it

Cohen, Jena B (WM, USA) 10:55 AM:

and is crashing my excel

Chiu, Phyllis C (HR, USA) 6:18 PM:

which room are you in?

Cohen, Jena B (WM, USA) 6:18 PM:

314

Cohen, Jena B (WM, USA) 6:18 PM:

want to come here and work with us

Chiu, Phyllis C (HR, USA) 6:18 PM:

coming

Cohen, Jena B (WM, USA) 6:18 PM:

about to order dinner



Cohen, Jena B (WM, USA) 6:19 PM:

bring your laptop since you stole it from here

Cohen, Jena B (WM, USA) 10:04 PM:

there is 75K extra in there

Cohen, Jena B (WM, USA) 8:41 AM:

good morning, am i in good shape to run a spend report

Cohen, Jena B (WM, USA) 8:41 AM:

and can you please let me know how the NH funding should be updated in the spend tracker?

Chiu, Phyllis C (HR, USA) 8:43 AM:

mm....i guess we should add in a column for new hires not funded

Chiu, Phyllis C (HR, USA) 8:43 AM:

want to send me your version once you have ran the latest?

Chiu, Phyllis C (HR, USA) 8:44 AM:

also what time did you say pencils down?

Chiu, Phyllis C (HR, USA) 8:44 AM:

diane will be running a FW one so just thinking about timing

Cohen, Jena B (WM, USA) 8:44 AM:

11am

Chiu, Phyllis C (HR, USA) 8:45 AM:

thanks!

Cohen, Jena B (WM, USA) 8:50 AM:

i am nervous to run it

Cohen, Jena B (WM, USA) 9:49 AM:

hi, sorry, need your help

Cohen, Jena B (WM, USA) 9:49 AM:

can you please spare me a few?

Chiu, Phyllis C (HR, USA) 9:49 AM:

calling you now

Chiu, Phyllis C (HR, USA) 10:27 AM:

sent back to you

Cohen, Jena B (WM, USA) 10:27 AM:

what was wrong with it?

Cohen, Jena B (WM, USA) 10:28 AM:

also, can you do another upload for me please?



Chiu, Phyllis C (HR, USA) 10:29 AM:

i think when you added columns yesterday you saved a version that moved the lookup columns

Cohen, Jena B (WM, USA) 10:29 AM:

yikes

Cohen, Jena B (WM, USA) 10:29 AM:

so i broke it

Chiu, Phyllis C (HR, USA) 10:29 AM:

so the formulas weren't looking in the right columns

Chiu, Phyllis C (HR, USA) 10:29 AM:

haha

Chiu, Phyllis C (HR, USA) 10:29 AM:

easily fixed

Cohen, Jena B (WM, USA) 10:29 AM:

by you.. my hero

Chiu, Phyllis C (HR, USA) 10:29 AM:

will run another report now

Cohen, Jena B (WM, USA) 10:30 AM:

wait, please run, after you upload

Cohen, Jena B (WM, USA) 10:30 AM:

just sent you the list

Chiu, Phyllis C (HR, USA) 10:30 AM:

ah ok

Chiu, Phyllis C (HR, USA) 10:30 AM:

thought i missed something

Cohen, Jena B (WM, USA) 10:30 AM:

also, if you teach me how to uplad it then i will

Chiu, Phyllis C (HR, USA) 10:31 AM:

i can but you don't have access to upload :)

Chiu, Phyllis C (HR, USA) 10:55 AM:

heading over to 390 now

Cohen, Jena B (WM, USA) 10:55 AM:

great, JG upload is done right?

Cohen, Jena B (WM, USA) 10:56 AM:

and i should use the latest spend report

# RFT/U5 Narrative and Registration Routing

**App. 0778-0796**

November 29 RFT routing and manager approvals; registration file; Thompson/Jacobs narrative.

Message

App. 0778

**From**: Jacobs, Jonathan (HR, USA) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=0DA06F12967A49D88BF7186AAF76FD60-764AC4D3-47]
**Sent**: 11/29/2023 7:38:04 PM
**To**: Aughinbaugh, John T (WM, USA) [john.t.aughinbaugh@jpmorgan.com]; Stewart, Ben (WM, USA) [ben.stewart@jpmorgan.com]
**CC**: Stainback, Stephanie (WM, USA) [Stephanie.Stainback@jpmorgan.com]
**Subject**: Draft RFT - Approvals Needed
**Attachments**: RFT draft - Biering.docx

Hello, John and Ben,

Please review the attached draft Recommendation for Termination (RFT) for Joshua "Josh" Biering. Once you have had the chance to review, I would ask that you both please respond to this email chain with your approval. (You can simply write "I approve.") If you have any edits or questions, please raise them to me at your earliest convenience. Once both approvals have been received by ER, I will then sign the RFT and send it back to you for administration.

Please do not process or communicate the termination in me@JPMC until you receive the signed RFT from me. In addition, @Stewart, Ben (WM, USA), I would be happy to provide you with talking points, if that would be beneficial.

Please let me know of any questions or concerns.

Best,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

Exhibit
CX163

JPMORGAN CHASE & CO.



# RECOMMENDATION FOR TERMINATION

| | |
|---|---|
| Prepared by: Jonathan Jacobs, Employee Relations – D639971<br><br>On behalf of: Ben Stewart, Executive Director - N682989 | Date: November x, 2023 |

**Recommendation for Termination of Employment of:**
Joshua Biering, Executive Director - I662283

I am recommending that Joshua Biering be terminated from employment for misconduct.

JPMC's annual Code of Conduct reinforces to employees our commitment to integrity in work dealings and our expectations of employees with regard to their personal and professional conduct. The firm also has in place its Equal Opportunity, Anti-Discrimination, and Anti-Harassment Policy ("the Policy," effective March 3, 2023)

Following an Employee Relations ("ER") review, it was found that Biering engaged in inappropriate conduct in violation of the Code of Conduct and the Policy.

Biering's actions violate the JPMC Code of Conduct and the Policy, expose the bank to risk, and negatively impact our customer and work experience. Therefore, I am recommending termination of employment.

| | |
|---|---|
| HR/ER Representative's Signature: | Date: November x, 2023 |

Copies to: HRBP or HR Support Team and Employee Records: Employee.Records@Chase.com

Revised 1/19

Message



**From**: Aughinbaugh, John T (WM, USA) [john.t.aughinbaugh@jpmorgan.com]
**Sent**: 11/29/2023 7:42:04 PM
**To**: Jacobs, Jonathan (HR, USA) [jonathan.jacobs@jpmchase.com]; Stewart, Ben (WM, USA) [ben.stewart@jpmorgan.com]
**CC**: Stainback, Stephanie (WM, USA) [Stephanie.Stainback@jpmorgan.com]
**Subject**: RE: Draft RFT - Approvals Needed

I approve

**J.T. Aughinbaugh** | Managing Director | **J.P. Morgan** | 420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 |
T: 817 884 4463 | john.t.aughinbaugh@jpmorgan.com | jpmorgan.com/privatebank

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail).** For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. **Important risk considerations for certain investment products and asset classes can be found HERE.**

**INVESTMENT PRODUCTS: NOT FDIC INSURED • NO BANK GUARANTEE • MAY LOSE VALUE**

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Wednesday, November 29, 2023 1:38 PM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Cc:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Draft RFT - Approvals Needed

Hello, John and Ben,

Please review the attached draft Recommendation for Termination (RFT) for Joshua "Josh" Biering. Once you have had the chance to review, I would ask that you both please respond to this email chain with your approval. (You can simply write "I approve.") If you have any edits or questions, please raise them to me at your earliest convenience. Once both approvals have been received by ER, I will then sign the RFT and send it back to you for administration.

Please do not process or communicate the termination in me@JPMC until you receive the signed RFT from me. In addition, @Stewart, Ben (WM, USA), I would be happy to provide you with talking points, if that would be beneficial.

Please let me know of any questions or concerns.

Best,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

Message

**From:** Stewart, Ben (WM, USA) [ben.stewart@jpmorgan.com]
**Sent:** 11/29/2023 7:44:08 PM
**To:** Jacobs, Jonathan (HR, USA) [jonathan.jacobs@jpmchase.com]; Aughinbaugh, John T (WM, USA) [john.t.aughinbaugh@jpmorgan.com]
**CC:** Stainback, Stephanie (WM, USA) [Stephanie.Stainback@jpmorgan.com]
**Subject:** Re: Draft RFT - Approvals Needed

I approve.

Yes, let's find time to go over talking points.

---

**Ben Stewart Jr., CFP®** | Executive Director | Market Team Lead | **J.P. Morgan Private Bank** |
420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 | T: 817 884 4003 | M: 817 845 9676 |
ben.stewart@jpmorgan.com | privatebank.jpmorgan.com

**Client Service Team**: 877 576 2874

Click here to see the JPMorgan Chase Privacy Policy: https://www.jpmorgan.com/pages/privacy

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

Our *Form CRS* (Client Relationship Summary) and *Guide to Investment Services and Brokerage Products* contain important information about the ways we can serve you, the different investment products and services we offer, their fees and costs, how we are compensated and potential conflicts of interest we may have.

**NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail).** For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. For questions, please call your J.P. Morgan representative. JPMorgan Chase & Co. and its affiliates and employees do not provide tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any financial transactions. Please submit personal information to J.P. Morgan through a secure manner (e.g., Secure Message Center, Client Exchange, postal mail, fax or in person). **Important risk considerations for certain investment products and asset classes can be found HERE.**

**INVESTMENT AND INSURANCE PRODUCTS: • NOT A DEPOSIT • NOT FDIC INSURED • NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY • NO BANK GUARANTEE • MAY LOSE VALUE**

**JPMorgan Chase Bank, N.A.** and its affiliates (collectively "JPMCB") offer investment products, which may include bank-managed accounts and custody, as part of its trust and fiduciary services. Other investment products and services, such as brokerage and advisory accounts, are offered through **J.P. Morgan Securities LLC** ("JPMS"), a member of FINRA and SIPC. Annuities and insurance products are made available through Chase Insurance Agency, Inc. ("CIA"), a licensed insurance agency, doing business as Chase Insurance Agency Services, Inc. in Florida. JPMS and CIA are affiliated companies under the common control of JPMorgan Chase & Co. Products not available in all states.

---

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Wednesday, November 29, 2023 1:38:04 PM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Cc:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Draft RFT - Approvals Needed

Hello, John and Ben,

Exhibit
CX166

Please review the attached draft Recommendation for Termination (RFT) for Joshua "Josh" Biering. On[illegible] the chance to review, I would ask that you both please respond to this email chain with your approval. (You can simply write "I approve.") If you have any edits or questions, please raise them to me at your earliest convenience. Once both approvals have been received by ER, I will then sign the RFT and send it back to you for administration.

Please do not process or communicate the termination in me@JPMC until you receive the signed RFT from me. In addition, @Stewart, Ben (WM, USA), I would be happy to provide you with talking points, if that would be beneficial.

Please let me know of any questions or concerns.

Best,

Jonathan

**Jonathan A. Jacobs** | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

**Bush, Carla A (Compliance, USA)**



**From:** Thompson, Greg (Compliance, USA)
**Sent:** Wednesday, December 06, 2023 8:45 AM
**To:** Jacobs, Jonathan (HR, USA); Tidwell-Neal, Rachel L (Legal, USA); Bush, Carla A (Compliance, USA)
**Subject:** RE: Term - U5

Thanks, Jonathan.

---

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Wednesday, December 06, 2023 8:40 AM
**To:** Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Subject:** RE: Term - U5

Good morning, Greg,

Absolutely – please below. If you require any additional information or any points to be more fully detailed, please let me know and I am happy to get that to you.

Best,

Jonathan

Joshua Biering attempted to state that his relationship with [redacted] was "very professional," and both acknowledged that the vast majority of [redacted] work was solely to support Subject's book of business, putting him at minimum in a quasi-supervisory role. [redacted]

Jonathan A. Jacobs | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

---

**From:** Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Sent:** Wednesday, December 06, 2023 8:15 AM
**To:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Subject:** RE: Term - U5

Thanks, Jonathan. In order to ensure the for U5 language is accurate, can you please provide me with a summary of the inappropriate conduct involved?

**Greg Thompson** | Vice President – Employee Conduct Lead| **J.P. Morgan Securities LLC - Compliance Registration** | 1111 Polaris Parkway, Suite 2J, Columbus, Ohio 43240 | Phone (614) 217-8041.

---

**From:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Sent:** Tuesday, December 05, 2023 12:52 PM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** [redacted]

[redacted]

Jonathan A. Jacobs | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

---

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Tuesday, December 05, 2023 12:50 PM
**To:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Cc:** Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Subject:** [redacted]

[redacted]

---

**From:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Sent:** Tuesday, December 05, 2023 11:49 AM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** [redacted]

[redacted]

---

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Tuesday, December 05, 2023 12:46 PM
**To:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>; Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>
**Subject:** [redacted]

[redacted]

---

**From:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Sent:** Friday, December 01, 2023 1:53 PM
**To:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; Thompson, Greg (Compliance, USA)

<greg.thompson@chase.com>
**Subject:** [redacted]

App. 0785

[redacted]

[redacted]

Carla Bush | Associate – Employee Conduct Sr Officer | **J.P. Morgan Securities LLC – Compliance Registration** |1111 Polaris Parkway, Suite 2J, Columbus, OH 43240 | 614 213-8677 | Compliance Registration Website| go/vic

---

**From:** Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>
**Sent:** Friday, December 01, 2023 2:32 PM
**To:** Thompson, Greg (Compliance, USA) <greg.thompson@chase.com>; Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Subject:** [redacted]

[redacted]

[redacted]

[redacted]

**Rachel Tidwell-Neal** | Assistant General Counsel | **JPMorgan Chase** | 10 S. Dearborn, 6th Floor, Chicago, IL 60603 | P: (312) 732-6517 | rachel.l.tidwell-neal@jpmchase.com

JPMorgan Chase & Co.

App. 0786

# RECOMMENDATION FOR TERMINATION

| | |
|---|---|
| Prepared by: Jonathan Jacobs, Employee Relations – D639971<br><br>On behalf of: Ben Stewart, Executive Director - N682989 | Date: November 30, 2023 |

**Recommendation for Termination of Employment of:**
Joshua Biering, Executive Director - I662283

I am recommending that Joshua Biering be terminated from employment for misconduct.

JPMC's annual Code of Conduct reinforces to employees our commitment to integrity in work dealings and our expectations of employees with regard to their personal and professional conduct. The firm also has in place its Equal Opportunity, Anti-Discrimination, and Anti-Harassment Policy ("the Policy," effective March 3, 2023)

Following an Employee Relations ("ER") review, it was found that Biering engaged in inappropriate conduct in violation of the Code of Conduct and the Policy.

Biering's actions violate the JPMC Code of Conduct and the Policy, expose the bank to risk, and negatively impact our customer and work experience. Therefore, I am recommending termination of employment.

| | |
|---|---|
| HR/ER Representative's Signature: /s Jonathan Jacobs | Date: November 30, 2023 |

Copies to: HRBP or HR Support Team and Employee Records: Employee.Records@Chase.com

Exhibit
CX36

Revised 1/19

# EC_NA_1020239740

**STATEMENT OF ALLEGATION(S):**

I am an HR Business Advisor. One of the managers who I support, Ben Stewart, reported to me that he thinks his employee, Joshua Biering, has been repeatedly charging and expensing personal charges to JPM. The manager became concerned after he received details on prior expense report(s) with no known reason for these charges. The repeated charges are at a country club and include alcohol, golf fees and meals and total approximately $3500.

**APPLICABLE CODE OF CONDUCT/POLICES:**

The allegations above implicate, but are not limited to, the following Code of Conduct Sections:

2.2 Managing Information

2.2.3 Using Firm Assets

**INVESTIGATION DETAILS & METHODOLOGY**

As part of this investigation, GS conducted the following:

1. Communicated with Executive Director, Ben Stewart Jr. (N682989)
2. Communicated with VP Employee Relations, Beth A. Wilson (I396012)
3. Communicated with Executive Director/HR Business, Stephanie Stainback (U729056)
4. Communicated with VP Employee Relations, Jonathan A. Jacobs (D639971)
5. Reviewed attachments
6. Reviewed Emails
7. Communicated with Executive Director/Travel Services, Van T. Huynh (U174832)
8. Employee Expense Report
9. Redacted - Privilege
10. Attorney retained for Executive Director, Joshua Biering (I662283)
11. Interview with Executive Director, Joshua Biering (I662283)

**OUTLINE OF FINDINGS:**

Stewart, reported to me that he thinks his employee, Joshua Biering, has been repeatedly charging and expensing personal charges to JPM. The manager became concerned after he received details on prior expense report(s) with no known reason for these charges. The

repeated charges are at a country club and include alcohol, golf fees and meals and total approximately $3500".

On 10/23/2023, GS was notified via ICM Web Referral/Navex regarding a potential code of conduct violation involving JPMC Executive Director, Joshua Biering (Josh).

On 10/23/2023, GS communicated with Executive/Managing Director, Ben Stewart (Ben) regarding the matter. Ben reported that he had noticed a corporate card expense by Josh on the following dates:

09/17/2023: $664.45 [redacted]
09/04/2023: $754.00
08/31/2023: $311.56
08/30/2023: $551.45

Ben reported Josh is going through a divorce and believed he had been abusing alcohol. Ben explained that the above expenses appeared to be personal expenses for the following reasons:

09/17/2023: Event was not listed on Josh's calendar and the prospect client did not golf with him or the other employees. Employee Keith Wiley confirmed the prospect client (J[redacted] M[redacted]) was at the [redacted] on this date.

09/04/2023: Event was not listed on Josh's calendar and event was on a Monday (labor day/bank holiday). Ben reported it was "not typical" to see clients on holidays. Ben reported the charges were separated and Ben believed there was "potential abuse" of company limitations.

08/30/2023 and 08/31/2023: Ben believed it was "extremely unlikely" to golf with the same clients "two days in a row". Ben suspected Josh separated the charges and believed Josh was "covering up a personal outing on 08/30/2023". Ben expressed his concerns; however, there was no evidence produced by management that validated these were personal expenses in lieu of common line of business expenses associated with the corporate expense policy.

On 10/24/2023, GS communicated with VP Employee Relations, Beth Wilson (Beth) who reported she had other information regarding Josh that "HR" is currently investigating. Beth reported matters such as behavioral and alcohol abuse issues as it related to his personal life (separation/divorce).

On 10/31/2023, GS communicated with the line of business Human Resource Executive Director, Stephanie Stainback (Stephanie) who reported the same concerns as Beth. Stephanie elaborated that Josh is currently going through a divorce and his behavior at work had been "aggressive". Stephanie was asked about engaging the Global Security Work Place Violence team to which she explained Josh had not overtly showed aggression but his behavior was escalating. Stephanie mentioned Employee Relations (ER) and Human Resources (HR) were currently investigating a separate matter.

On 11/01/2023, GS received a phone call from Josh and requested information about his "involuntarily leave". GS had no knowledge about Josh being placed on leave. Josh informed GS that he was placed on paid leave by his manager (Ben) on Friday 10/27/2023 without reason. Josh explained he was provided GS information (Investigator name and phone number) to contact to explain the paid administrative leave. GS advised Josh that he would need to contact his manager for the explanation and GS did not have that information. Josh volunteered information to include his attorney's name and contact information. Josh also explained he submitted his voluntary resignation on Saturday 10/28//2023 and was on "garden leave" until 12/26/2023. Josh asked GS to contact him at any time to discuss any related issues. Josh provided his cell phone number and hours of availability for reference.

On 11/01/2023, GS communicated with Stephanie and the assigned HR personnel, Jonathan Jacobs (Jon) who advised GS that they had placed Josh on a paid administrative leave on Friday 10/27/2023 for a separate issue that involved allegations of sexual misconduct with another employee. Jon requested an HR/GS joint interview with Josh.

**Redacted - Privilege**

On 11/08/2023, GS was notified by Jon that he had concluded his investigation. Jon advised he had a successful interview with Josh. No further details were provided.

On 11/15/2023, GS conducted an interview by phone (912-308-5781) with Josh who reported the following: He has been with JPMC over six (6) years and his current role is an Executive Director in Private Bank (Asset and Wealth Management).

Josh advised he had retained an attorney but wanted to speak to GS about "corporate card expenses" that he was informed about by HR. Josh was asked about his recent expenses on 08/30/2023, 08/31/2023, 09/04/2023 and 09/17/2023. Josh stated he is very meticulous with his expense reports and often has administrative assistants (Katy Lind, Michelle Marlin and Tana McClure) complete his expense report(s) as well. Josh voluntarily stated that he has never falsified any information when submitting expenses regarding the use of his corporate card. Josh asked GS to compare his expense report to his peers, naming Keith Wiley, Ben Stewart, Allison Westmoreland, Patrick Borer, Madison Nadler and Tye McClue.

Josh explained there are controls and monitoring regarding expenses and Private Bank has a "high level" access when it comes to corporate expenses and reimbursement. Josh explained everything is written in the policy; however, he has been reporting his expenses similarly over the last two years. Josh stressed that GS would find nothing different between his expense report and the expense report of his peers. Josh noted the Private Bank operates differently than other lines of businesses.

Josh was asked about an expense report where he listed "J[redacted] M[redacted]" as a prospect client. Josh explained while he no longer had access to his work calendar, he recalled he had a team

building golf event at River Crest Country Club in September and while with his coworkers saw M[redacted] at the venue. Josh explained he purchased M[redacted] at least one alcoholic beverage and described it as a "transfusion". Josh explained M[redacted] did not join their outing; however, since he purchased him a drink or two, he listed it on the same expense report as he normally would. (GS compared this information to the receipt and to the information another employee provided Ben and all information was corroborated).

Josh was asked about his back to back golf outing with a client in late August. Josh immediately stated that while not always frequent, often times he will have a back to back outings with a client. Josh voluntarily stated that he paid for expenses for the "L[redacted] family" at the same golfing venue [redacted] [redacted] [redacted] [redacted] on both dates, 08/30/2023 and 08/31/2023. Josh advised he recorded everything in his expense report.

Josh explained he did not abuse any corporate expense reimbursement policy. Josh volunteered information about his personal situation (divorce and mental health); however, explained he did not use his corporate card at any time for personal reasons without reporting true and accurate information. Josh denied any and allegations of fraud and/or theft.

GS compared expense reports amongst his peers (Keith Wiley and Ben) and found similar patterns of expense activity. Similar expenses between his peers were identified as golf venues, travel, entertainment, concerts and alcohol. Most, if not all receipts list a business client, prospect client, prospect business client, spouse of business client and spouse of prospect client.

GS did not find any extreme differences in expense reports between Josh and his peers. Expense reports were fairly consistent for at least 12 months.

On 11/16/2023, GS communicated with Stephanie about comparable data used in this investigation. Stephanie explained she believed HR had enough reason to "term" Josh and wanted to ensure GS completed their investigation into the potential falsification issue before proceeding with termination. GS advised Stephanie that GS did not have access to "potential business clients" to validate falsification regarding the "guests" Josh noted on his expense report; however, GS had spoken with Josh who provided information about each outing Ben reported. Stephanie advised she would get with Ben and their management team to determine if there was any evidence to substantiate Josh falsified any information as it pertained to the four dates given or at any other time.

During the course of this investigation, GS was in receipt of two emails Josh provided as it pertained to JPMC and his role. They have been attached in ICM for reference.

As of 11/29/2023, GS was not in receipt of any evidence to substantiate the allegations.

Based on the totality of the information/investigation, GS determined there is no evidence to support the allegations of Theft from Firm/Expense Reimbursement.

**Bush, Carla A (Compliance, USA)**

App. 0791

| | |
|---|---|
| **From:** | Muraira, Nadia |
| **Sent:** | Wednesday, November 29, 2023 2:42 PM |
| **To:** | Compliance Registration |
| **Subject:** | Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL |
| **Attachments:** | Compliance Registration Summary Results.pdf |

See attached Summary Results.

RE: JPMC Executive Director, Private Banker, Joshua Biering (I662283)/CRD#6883842
Allegations: Theft from Firm/Expense Reimbursement
Disposition: Allegations NOT supported.

Case opened: 10/23/2023
Case RTC: 11/29/2023

**Nadia Muraira** | Investigator VP | Global Security | JP Morgan Chase & Co. | 712 Main Street, Houston, TX 77002 | T: 713-216-7247 |
nadia.muraira@jpmchase.com

**Learn more at** go/besecure
Be secure

**Bush, Carla A (Compliance, USA)**

**From:** Tidwell-Neal, Rachel L (Legal, USA)
**Sent:** Friday, December 01, 2023 2:32 PM
**To:** Thompson, Greg (Compliance, USA); Bush, Carla A (Compliance, USA)
**Subject:** Term - U5

Hi,

Redacted - Privilege

Thanks,
Rachel

**Rachel Tidwell-Neal** | Assistant General Counsel | **JPMorgan Chase** | 10 S. Dearborn, 6th Floor, Chicago, IL 60603 | P: (312) 732-6517 | rachel.l.tidwell-neal@jpmchase.com

Message

**From:** Muraira, Nadia [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=9AF9C792477A47E9AB8A7A07534D73E0-I780946]
**Sent:** 12/1/2023 8:02:17 PM
**To:** Compliance Registration [compliance.registration@jpmorgan.com]
**Subject:** RE: Josh Biering SID: I662283

Hello Carla,

Case summary was sent via Compliance Registration on Wed. 11/29/2023. I sent forwarded you the original email for your convenience. Will you confirm receipt?

---

**From:** Compliance Registration <compliance.registration@jpmorgan.com>
**Sent:** Friday, December 01, 2023 1:58 PM
**To:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Subject:** Josh Biering SID: I662283

Nadia,

Please provide the investigation summary and the interview summary in regard to the dismissal of **Josh Biering SID: I662283**.

Thank you,

Carla Bush | Associate | J.P. Morgan Securities LLC – Compliance Registration |1111 Polaris Parkway, Suite 2J, Columbus, OH 43240 | 614 213-3677 | Compliance Registration Website

Exhibit
CX32

Message

**From:** Muraira, Nadia [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=9AF9C792477A47E9AB8A7A07534D73E0-I780946]
**Sent:** 12/1/2023 8:18:35 PM
**To:** Bush, Carla A (Compliance, USA) [carla.a.bush@chase.com]
**Subject:** RE: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

No worries. I just want to make sure you got it 😉

Have a safe day and wonderful weekend ahead!!

---

**From:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Sent:** Friday, December 01, 2023 2:14 PM
**To:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Subject:** RE: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

Thank you! I apologize, I couldn't locate it because I was searching using his SID.

---

**From:** Muraira, Nadia <nadia.muraira@jpmchase.com>
**Sent:** Friday, December 01, 2023 3:00 PM
**To:** Bush, Carla A (Compliance, USA) <carla.a.bush@chase.com>
**Subject:** FW: Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

---

**From:** Muraira, Nadia
**Sent:** Wednesday, November 29, 2023 1:42 PM
**To:** Compliance Registration <compliance.registration@jpmorgan.com>
**Subject:** Global Security Investigation-EC_NA_1020239740-CONFIDENTIAL

See attached Summary Results.

RE: JPMC Executive Director, Private Banker, Joshua Biering (I662283)/CRD#6883842
Allegations: Theft from Firm/Expense Reimbursement
Disposition: Allegations NOT supported.

Case opened: 10/23/2023
Case RTC: 11/29/2023

**Nadia Muraira** | Investigator VP | Global Security | JP Morgan Chase & Co. | 712 Main Street, Houston, TX 77002 | T: 713-216-7247 |
nadia.muraira@jpmchase.com

**Learn more at** go/besecure
Be secure

Message

**From:** Jacobs, Jonathan (HR, USA) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=0DA06F12967A49D88BF7186AAF76FD60-764AC4D3-47]
**Sent:** 12/4/2023 9:14:41 PM
**To:** er partnersupport americas [er.partnersupport.americas@jpmchase.com]; Marilla, Aileen M (HR, PHL) [aileen.m.marilla@chase.com]
**Subject:** RE: Joshua Biering SID: I662283
**Attachments:** RE: Draft RFT - Approvals Needed; RFT - Biering.pdf

Good afternoon,

Yes, Ben Stewart (Joshua's manager) is aware of the termination. Please see attached the email he sent to me on Friday. Also please see attached the signed RFT, that was approved by both Ben and Ben's manager.

Please note, this employee had resigned on October 28, 2023. He was on "garden leave" when the termination was delivered on Friday, December 1, 2023.

Thank you.

Jonathan

Jonathan A. Jacobs | Vice President | Employee Relations, HR Special Investigations | JPMorgan Chase & Co. | 545 Washington Blvd, Floor 12, Jersey City, New Jersey 07310|
(t) 551-205-4056| jonathan.jacobs@jpmchase.com | Pronouns: he/him/his

---

**From:** er partnersupport americas <er.partnersupport.americas@jpmchase.com>
**Sent:** Monday, December 04, 2023 4:03 PM
**To:** Compliance Registration <compliance.registration@jpmorgan.com>; Jacobs, Jonathan (HR, USA) <jonathan.jacobs@jpmchase.com>
**Subject:** RE: Joshua Biering SID: I662283

Hello,

We have not received the HCM termination request yet for this employee.

Hi @Jacobs, Jonathan (HR, USA), please advise if the manager have been advised about the submission of the termination for this employee. This appears to be on your ICM case EC_NA_1026230312.

Thanks,

**Aileen Marilla** | **Employee Relations - Intake** | **Human Resources** | **JPMorgan Chase & Co.**

- For general HR help and resources, visit me@jpmc.

Exhibit
CX33

**From:** Compliance Registration <compliance.registration@jpmorgan.com>
**Sent:** Monday, December 04, 2023 3:08 PM
**To:** er partnersupport americas <er.partnersupport.americas@jpmchase.com>
**Subject:** Joshua Biering SID: I662283

Please provide the RFT for Joshua.

Thank you,

**Carla Bush** | Associate – Employee Conduct Sr Officer | **J.P. Morgan Securities LLC – Compliance Registration** | 1111 Polaris Parkway, Suite 2J, Columbus, OH 43240 | 614 213-8677 | Compliance Registration Website | go/vic

# Payroll, Hours, Staffing, and Personnel-System Records

**App. 0798-0853**

Continuous payroll, sick/vacation hours, Tarrant County staffing, and final-pay records.

JPMORGAN CHASE & CO.

App. 0798

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 09/15/2022 | 09/01/2022 | 09/15/2022 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 257,999.95 |
| Total Taxes | 1,276.44 | 61,836.88 |
| Total Deductions | 695.39 | 11,529.97 |
| Net Pay | 6,361.50 | 184,633.10 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 09/01/2022 | 09/15/2022 | | | | 8,333.33 | 137,499.95 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 500.00 |
| **Earnings Total** | | | | | | **8,333.33** | **257,999.95** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 34.00 |
| Imputed Spousal Lodging & Meal | | 687.74 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,082.70 | 48,479.37 | 7,660.75 | 247,545.49 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 193.74 | 4,243.51 | 8,244.08 | 257,170.44 |
| **Taxes Total** | **1,276.44** | **61,836.88** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 9,624.95 |
| Medical | Before | 77.50 | 1,317.50 |
| Dental PPO | Before | 10.35 | 175.95 |
| Vision Plan | Before | 3.40 | 57.80 |
| LTD Long Term Disability | After | 15.19 | 258.23 |
| Group Legal | After | 5.62 | 95.54 |
| **Before Tax Subtotal** | | **674.58** | **11,176.20** |
| **After Tax Subtotal** | | **20.81** | **353.77** |
| **Deductions Total** | | **695.39** | **11,529.97** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 60537805771 | CHECKING | XXXX9625 | 6,361.50 |

JPMORGAN CHASE & CO.

App. 0799

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 09/30/2022 | 09/16/2022 | 09/30/2022 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 266,333.28 |
| Total Taxes | 1,267.59 | 63,104.47 |
| Total Deductions | 731.69 | 12,261.66 |
| Net Pay | 6,334.05 | 190,967.15 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 09/16/2022 | 09/30/2022 | | | | 8,333.33 | 145,833.28 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 500.00 |
| **Earnings Total** | | | | | | **8,333.33** | **266,333.28** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 36.00 |
| Imputed Spousal Lodging & Meal | | 687.74 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,074.71 | 49,554.08 | 7,624.45 | 255,169.94 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 192.88 | 4,436.39 | 8,207.78 | 265,378.22 |
| **Taxes Total** | **1,267.59** | **63,104.47** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 10,208.28 |
| Medical | Before | 77.50 | 1,395.00 |
| Dental PPO | Before | 23.80 | 199.75 |
| Dental PPO Adjustment | Before | 16.81 | 16.81 |
| Vision Plan | Before | 6.08 | 63.88 |
| Vision Adjustment | Before | 3.36 | 3.36 |
| LTD Long Term Disability | After | 15.19 | 273.42 |
| Group Legal | After | 5.62 | 101.16 |
| **Before Tax Subtotal** | | **710.88** | **11,887.08** |
| **After Tax Subtotal** | | **20.81** | **374.58** |
| **Deductions Total** | | **731.69** | **12,261.66** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 61785968036 | CHECKING | XXXX9625 | 6,334.05 |

JPMORGAN CHASE & CO.

App. 0800

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 10/14/2022 | 10/01/2022 | 10/15/2022 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 274,666.61 |
| Total Taxes | 1,272.50 | 64,376.97 |
| Total Deductions | 711.52 | 12,973.18 |
| Net Pay | 6,349.31 | 197,316.46 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 10/01/2022 | 10/15/2022 | | | | 8,333.33 | 154,166.61 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 500.00 |
| **Earnings Total** | | | | | | **8,333.33** | **274,666.61** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 38.00 |
| Imputed Spousal Lodging & Meal | | 687.74 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,079.15 | 50,633.23 | 7,644.62 | 262,814.56 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 193.35 | 4,629.74 | 8,227.95 | 273,606.17 |
| **Taxes Total** | **1,272.50** | **64,376.97** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 10,791.61 |
| Medical | Before | 77.50 | 1,472.50 |
| Dental PPO | Before | 23.80 | 223.55 |
| Vision Plan | Before | 6.08 | 69.96 |
| Dental PPO Adjustment | Before | | 16.81 |
| Vision Adjustment | Before | | 3.36 |
| LTD Long Term Disability | After | 15.19 | 288.61 |
| Group Legal | After | 5.62 | 106.78 |
| **Before Tax Subtotal** | | **690.71** | **12,577.79** |
| **After Tax Subtotal** | | **20.81** | **395.39** |
| **Deductions Total** | | **711.52** | **12,973.18** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 63110062102 | CHECKING | XXXX9625 | 6,349.31 |

JPMORGAN CHASE & CO.



## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 10/31/2022 | 10/16/2022 | 10/31/2022 |

### Summary

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,565.33 | 283,231.94 |
| Total Taxes | 1,329.00 | 65,705.97 |
| Total Deductions | 711.52 | 13,684.70 |
| Net Pay | 6,524.81 | 203,841.27 |

### Earnings

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 10/16/2022 | 10/31/2022 | | | | 8,333.33 | 162,499.94 |
| LTIP Dividends US | 07/01/2022 | 09/30/2022 | | | | 232.00 | 732.00 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| **Earnings Total** | | | | | | **8,565.33** | **283,231.94** |

### Taxable Benefits

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 40.00 |
| Imputed Spousal Lodging & Meal | | 687.74 |

### Taxes

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,130.19 | 51,763.42 | 7,876.62 | 270,691.18 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 198.81 | 4,828.55 | 8,459.95 | 282,066.12 |
| **Taxes Total** | **1,329.00** | **65,705.97** | | |

### Deductions

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 11,374.94 |
| Medical | Before | 77.50 | 1,550.00 |
| Dental PPO | Before | 23.80 | 247.35 |
| Vision Plan | Before | 6.08 | 76.04 |
| Dental PPO Adjustment | Before | | 16.81 |
| Vision Adjustment | Before | | 3.36 |
| LTD Long Term Disability | After | 15.19 | 303.80 |
| Group Legal | After | 5.62 | 112.40 |
| **Before Tax Subtotal** | | **690.71** | **13,268.50** |
| **After Tax Subtotal** | | **20.81** | **416.20** |
| **Deductions Total** | | **711.52** | **13,684.70** |

### Tax Data

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

### Leave Balances

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

### Net Pay Distribution

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 64559530900 | CHECKING | XXXX9625 | 6,524.81 |

JPMORGAN CHASE & CO.

App. 0802

**Pay Statement**

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 11/15/2022 | 11/01/2022 | 11/15/2022 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 291,565.27 |
| Total Taxes | 1,272.51 | 66,978.48 |
| Total Deductions | 711.52 | 14,396.22 |
| Net Pay | 6,349.30 | 210,190.57 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 11/01/2022 | 11/15/2022 | | | | 8,333.33 | 170,833.27 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 732.00 |
| **Earnings Total** | | | | | | **8,333.33** | **291,565.27** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 42.00 |
| Imputed Spousal Lodging & Meal | | 687.74 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,079.15 | 52,842.57 | 7,644.62 | 278,335.80 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 193.36 | 5,021.91 | 8,227.95 | 290,294.07 |
| **Taxes Total** | **1,272.51** | **66,978.48** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 11,958.27 |
| Medical | Before | 77.50 | 1,627.50 |
| Dental PPO | Before | 23.80 | 271.15 |
| Vision Plan | Before | 6.08 | 82.12 |
| Dental PPO Adjustment | Before | | 16.81 |
| Vision Adjustment | Before | | 3.36 |
| LTD Long Term Disability | After | 15.19 | 318.99 |
| Group Legal | After | 5.62 | 118.02 |
| **Before Tax Subtotal** | | **690.71** | **13,959.21** |
| **After Tax Subtotal** | | **20.81** | **437.01** |
| **Deductions Total** | | **711.52** | **14,396.22** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 65793416404 | CHECKING | XXXX9625 | 6,349.30 |

JPMORGAN CHASE & CO.

**App. 0803**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 11/30/2022 | 11/16/2022 | 11/30/2022 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 299,898.60 |
| Total Taxes | 1,301.84 | 68,280.32 |
| Total Deductions | 711.52 | 15,107.74 |
| Net Pay | 6,319.97 | 216,510.54 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 11/16/2022 | 11/30/2022 | | | | 8,333.33 | 179,166.60 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 732.00 |
| **Earnings Total** | | | | | | **8,333.33** | **299,898.60** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Spousal Lodging & Meal | 120.46 | 808.20 |
| Imputed Basic Life | 2.00 | 44.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,105.65 | 53,948.22 | 7,765.08 | 286,100.88 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 196.19 | 5,218.10 | 8,348.41 | 298,642.48 |
| **Taxes Total** | **1,301.84** | **68,280.32** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 12,541.60 |
| Medical | Before | 77.50 | 1,705.00 |
| Dental PPO | Before | 23.80 | 294.95 |
| Vision Plan | Before | 6.08 | 88.20 |
| Dental PPO Adjustment | Before | | 16.81 |
| Vision Adjustment | Before | | 3.36 |
| LTD Long Term Disability | After | 15.19 | 334.18 |
| Group Legal | After | 5.62 | 123.64 |
| **Before Tax Subtotal** | | **690.71** | **14,649.92** |
| **After Tax Subtotal** | | **20.81** | **457.82** |
| **Deductions Total** | | **711.52** | **15,107.74** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 67130899371 | CHECKING | XXXX9625 | 6,319.97 |

JPMORGAN CHASE & CO.

App. 0804

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 12/15/2022 | 12/01/2022 | 12/15/2022 |

### Summary

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 308,231.93 |
| Total Taxes | 1,272.51 | 69,552.83 |
| Total Deductions | 711.52 | 15,819.26 |
| Net Pay | 6,349.30 | 222,859.84 |

### Earnings

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 12/01/2022 | 12/15/2022 | | | | 8,333.33 | 187,499.93 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 732.00 |
| **Earnings Total** | | | | | | **8,333.33** | **308,231.93** |

### Taxable Benefits

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 46.00 |
| Imputed Spousal Lodging & Meal | | 808.20 |

### Taxes

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,079.15 | 55,027.37 | 7,644.62 | 293,745.50 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 193.36 | 5,411.46 | 8,227.95 | 306,870.43 |
| **Taxes Total** | **1,272.51** | **69,552.83** | | |

### Deductions

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 13,124.93 |
| Medical | Before | 77.50 | 1,782.50 |
| Dental PPO | Before | 23.80 | 318.75 |
| Vision Plan | Before | 6.08 | 94.28 |
| Dental PPO Adjustment | Before | | 16.81 |
| Vision Adjustment | Before | | 3.36 |
| LTD Long Term Disability | After | 15.19 | 349.37 |
| Group Legal | After | 5.62 | 129.26 |
| **Before Tax Subtotal** | | **690.71** | **15,340.63** |
| **After Tax Subtotal** | | **20.81** | **478.63** |
| **Deductions Total** | | **711.52** | **15,819.26** |

### Tax Data

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

### Leave Balances

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

### Net Pay Distribution

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 68885201997 | CHECKING | XXXX9625 | 6,349.30 |

JPMORGAN CHASE & CO.

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 12/30/2022 | 12/16/2022 | 12/31/2022 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 316,565.26 |
| Total Taxes | 1,272.50 | 70,825.33 |
| Total Deductions | 711.52 | 16,530.78 |
| Net Pay | 6,349.31 | 229,209.15 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 12/16/2022 | 12/31/2022 | | | | 8,333.33 | 195,833.26 |
| Annual Cash Incentive Award | | | | | | | 120,000.00 |
| LTIP Dividends US | | | | | | | 732.00 |
| **Earnings Total** | | | | | | **8,333.33** | **316,565.26** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 48.00 |
| Imputed Spousal Lodging & Meal | | 808.20 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,079.15 | 56,106.52 | 7,644.62 | 301,390.12 |
| Social Security Employee Withheld | | 9,114.00 | | 147,000.00 |
| Medicare Employee Withheld | 193.35 | 5,604.81 | 8,227.95 | 315,098.38 |
| **Taxes Total** | **1,272.50** | **70,825.33** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 13,708.26 |
| Medical | Before | 77.50 | 1,860.00 |
| Dental PPO | Before | 23.80 | 342.55 |
| Vision Plan | Before | 6.08 | 100.36 |
| Dental PPO Adjustment | Before | | 16.81 |
| Vision Adjustment | Before | | 3.36 |
| LTD Long Term Disability | After | 15.19 | 364.56 |
| Group Legal | After | 5.62 | 134.88 |
| **Before Tax Subtotal** | | **690.71** | **16,031.34** |
| **After Tax Subtotal** | | **20.81** | **499.44** |
| **Deductions Total** | | **711.52** | **16,530.78** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 70279295458 | CHECKING | XXXX9625 | 6,349.31 |

JPMORGAN CHASE & CO.

App. 0806

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 01/13/2023 | 01/01/2023 | 01/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,333.33 | 8,333.33 |
| Total Taxes | 1,657.44 | 1,657.44 |
| Total Deductions | 752.73 | 752.73 |
| Net Pay | 5,923.16 | 5,923.16 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 01/01/2023 | 01/15/2023 | | | | 8,333.33 | 8,333.33 |
| **Earnings Total** | | | | | | **8,333.33** | **8,333.33** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 2.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,030.29 | 1,030.29 | 7,614.75 | 7,614.75 |
| Social Security Employee Withheld | 508.28 | 508.28 | 8,198.08 | 8,198.08 |
| Medicare Employee Withheld | 118.87 | 118.87 | 8,198.08 | 8,198.08 |
| **Taxes Total** | **1,657.44** | **1,657.44** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 583.33 |
| Medical | Before | 93.00 | 93.00 |
| Dental PPO | Before | 34.15 | 34.15 |
| Vision Plan | Before | 10.10 | 10.10 |
| LTD Long Term Disability | After | 26.53 | 26.53 |
| Group Legal | After | 5.62 | 5.62 |
| **Before Tax Subtotal** | | **720.58** | **720.58** |
| **After Tax Subtotal** | | **32.15** | **32.15** |
| **Deductions Total** | | **752.73** | **752.73** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 72154386189 | CHECKING | XXXX9625 | 5,923.16 |

JPMORGAN CHASE & CO.

App. 0807

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 01/13/2023 | 01/01/2023 | 01/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 2,504.61 | 10,837.94 |
| Total Taxes | 834.87 | 2,492.31 |
| Total Deductions | 1,669.74 | 2,422.47 |
| Net Pay | 0.00 | 5,923.16 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| RSU 1 | 01/19/2021 | 01/13/2023 | | | | 2,504.61 | 2,504.61 |
| Regular Salary | | | | | | | 8,333.33 |
| **Earnings Total** | | | | | | **2,504.61** | **10,837.94** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | | 2.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 643.26 | 1,673.55 | 2,504.61 | 10,119.36 |
| Social Security Employee Withheld | 155.29 | 663.57 | 2,504.61 | 10,702.69 |
| Medicare Employee Withheld | 36.32 | 155.19 | 2,504.61 | 10,702.69 |
| **Taxes Total** | **834.87** | **2,492.31** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | | 583.33 |
| Medical | Before | | 93.00 |
| Dental PPO | Before | | 34.15 |
| Vision Plan | Before | | 10.10 |
| RSU Net Value 1 | After | 1,669.74 | 1,669.74 |
| LTD Long Term Disability | After | | 26.53 |
| Group Legal | After | | 5.62 |
| **Before Tax Subtotal** | | **0.00** | **720.58** |
| **After Tax Subtotal** | | **1,669.74** | **1,701.89** |
| **Deductions Total** | | **1,669.74** | **2,422.47** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

JPMORGAN CHASE & CO.

**App. 0808**

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 01/24/2023 | 01/16/2023 | 01/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 104,000.00 | 114,837.94 |
| Total Taxes | 30,836.00 | 33,328.31 |
| Total Deductions | 0.00 | 2,422.47 |
| Net Pay | 73,164.00 | 79,087.16 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Annual Cash Incentive Award | 01/01/2022 | 12/31/2022 | | | | 104,000.00 | 104,000.00 |
| Regular Salary | | | | | | | 8,333.33 |
| RSU 1 | | | | | | | 2,504.61 |
| **Earnings Total** | | | | | | **104,000.00** | **114,837.94** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | | 2.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 22,880.00 | 24,553.55 | 104,000.00 | 114,119.36 |
| Social Security Employee Withheld | 6,448.00 | 7,111.57 | 104,000.00 | 114,702.69 |
| Medicare Employee Withheld | 1,508.00 | 1,663.19 | 104,000.00 | 114,702.69 |
| **Taxes Total** | **30,836.00** | **33,328.31** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | | 583.33 |
| Medical | Before | | 93.00 |
| Dental PPO | Before | | 34.15 |
| Vision Plan | Before | | 10.10 |
| RSU Net Value 1 | After | | 1,669.74 |
| LTD Long Term Disability | After | | 26.53 |
| Group Legal | After | | 5.62 |
| **Before Tax Subtotal** | | **0.00** | **720.58** |
| **After Tax Subtotal** | | **0.00** | **1,701.89** |
| **Deductions Total** | | **0.00** | **2,422.47** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 72935331510 | CHECKING | XXXX9625 | 73,164.00 |

JPMorgan Chase & Co.

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 200,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 01/31/2023 | 01/16/2023 | 01/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 8,565.33 | 123,403.27 |
| Total Taxes | 1,738.94 | 35,067.25 |
| Total Deductions | 752.73 | 3,175.20 |
| Net Pay | 6,073.66 | 85,160.82 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 01/16/2023 | 01/31/2023 | | | | 8,333.33 | 16,666.66 |
| LTIP Dividends US | 10/01/2022 | 12/31/2022 | | | | 232.00 | 232.00 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,504.61 |
| **Earnings Total** | | | | | | **8,565.33** | **123,403.27** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Spousal Lodging & Meal | 42.89 | 42.89 |
| Imputed Basic Life | 2.00 | 4.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,090.76 | 25,644.31 | 7,889.64 | 122,009.00 |
| Social Security Employee Withheld | 525.32 | 7,636.89 | 8,472.97 | 123,175.66 |
| Medicare Employee Withheld | 122.86 | 1,786.05 | 8,472.97 | 123,175.66 |
| **Taxes Total** | **1,738.94** | **35,067.25** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 583.33 | 1,166.66 |
| Medical | Before | 93.00 | 186.00 |
| Dental PPO | Before | 34.15 | 68.30 |
| Vision Plan | Before | 10.10 | 20.20 |
| LTD Long Term Disability | After | 26.53 | 53.06 |
| Group Legal | After | 5.62 | 11.24 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **720.58** | **1,441.16** |
| **After Tax Subtotal** | | **32.15** | **1,734.04** |
| **Deductions Total** | | **752.73** | **3,175.20** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 73584943296 | CHECKING | XXXX9625 | 6,073.66 |

JPMORGAN CHASE & CO.

App. 0810

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 179954 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 02/15/2023 | 02/01/2023 | 02/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 132,778.27 |
| Total Taxes | 1,950.25 | 37,017.50 |
| Total Deductions | 825.65 | 4,000.85 |
| Net Pay | 6,599.10 | 91,759.92 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 02/01/2023 | 02/15/2023 | | | | 9,375.00 | 26,041.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,504.61 |
| LTIP Dividends US | | | | | | | 232.00 |
| **Earnings Total** | | | | | | **9,375.00** | **132,778.27** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 6.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,243.41 | 26,887.72 | 8,583.50 | 130,592.50 |
| Social Security Employee Withheld | 572.87 | 8,209.76 | 9,239.75 | 132,415.41 |
| Medicare Employee Withheld | 133.97 | 1,920.02 | 9,239.75 | 132,415.41 |
| **Taxes Total** | **1,950.25** | **37,017.50** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 1,822.91 |
| Medical | Before | 93.00 | 279.00 |
| Dental PPO | Before | 34.15 | 102.45 |
| Vision Plan | Before | 10.10 | 30.30 |
| LTD Long Term Disability | After | 26.53 | 79.59 |
| Group Legal | After | 5.62 | 16.86 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **793.50** | **2,234.66** |
| **After Tax Subtotal** | | **32.15** | **1,766.19** |
| **Deductions Total** | | **825.65** | **4,000.85** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 74996323684 | CHECKING | XXXX9625 | 6,599.10 |

JPMORGAN CHASE & CO.

**App. 0811**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 02/28/2023 | 02/16/2023 | 02/28/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 142,153.27 |
| Total Taxes | 1,879.66 | 38,897.16 |
| Total Deductions | 1,063.75 | 5,064.60 |
| Net Pay | 6,431.59 | 98,191.51 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 02/16/2023 | 02/28/2023 | | | | 9,375.00 | 35,416.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,504.61 |
| LTIP Dividends US | | | | | | | 232.00 |
| **Earnings Total** | | | | | | **9,375.00** | **142,153.27** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 8.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,191.03 | 28,078.75 | 8,345.40 | 138,937.90 |
| Social Security Employee Withheld | 558.10 | 8,767.86 | 9,001.65 | 141,417.06 |
| Medicare Employee Withheld | 130.53 | 2,050.55 | 9,001.65 | 141,417.06 |
| **Taxes Total** | **1,879.66** | **38,897.16** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 2,479.16 |
| CECARE Child Elder Care Act | Before | 238.10 | 238.10 |
| Medical | Before | 93.00 | 372.00 |
| Dental PPO | Before | 34.15 | 136.60 |
| Vision Plan | Before | 10.10 | 40.40 |
| LTD Long Term Disability | After | 26.53 | 106.12 |
| Group Legal | After | 5.62 | 22.48 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **1,031.60** | **3,266.26** |
| **After Tax Subtotal** | | **32.15** | **1,798.34** |
| **Deductions Total** | | **1,063.75** | **5,064.60** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 0.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 76313352136 | CHECKING | XXXX9625 | 6,431.59 |

JPMORGAN CHASE & CO.



## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 03/08/2023 | 03/01/2023 | 03/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 139.14 | 142,292.41 |
| Total Taxes | 139.14 | 39,036.30 |
| Total Deductions | 0.00 | 5,064.60 |
| Net Pay | 0.00 | 98,191.51 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| RSU 1 | 01/19/2021 | 01/13/2023 | | | | 139.14 | 2,643.75 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| Regular Salary | | | | | | | 35,416.66 |
| LTIP Dividends US | | | | | | | 232.00 |
| **Earnings Total** | | | | | | **139.14** | **142,292.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Spousal Lodging & Meal | | 42.89 |
| Imputed Basic Life | | 8.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 128.51 | 28,207.26 | 139.14 | 139,077.04 |
| Social Security Employee Withheld | 8.62 | 8,776.48 | 139.14 | 141,556.20 |
| Medicare Employee Withheld | 2.01 | 2,052.56 | 139.14 | 141,556.20 |
| **Taxes Total** | **139.14** | **39,036.30** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | | 2,479.16 |
| Medical | Before | | 372.00 |
| CECARE Child Elder Care Act | Before | | 238.10 |
| Dental PPO | Before | | 136.60 |
| Vision Plan | Before | | 40.40 |
| RSU Net Value 1 | After | | 1,669.74 |
| LTD Long Term Disability | After | | 106.12 |
| Group Legal | After | | 22.48 |
| **Before Tax Subtotal** | | **0.00** | **3,266.26** |
| **After Tax Subtotal** | | **0.00** | **1,798.34** |
| **Deductions Total** | | **0.00** | **5,064.60** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

JPMORGAN CHASE & CO.

**App. 0813**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 03/15/2023 | 03/01/2023 | 03/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 151,667.41 |
| Total Taxes | 1,879.67 | 40,915.97 |
| Total Deductions | 1,063.75 | 6,128.35 |
| Net Pay | 6,431.58 | 104,623.09 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 03/01/2023 | 03/15/2023 | | | | 9,375.00 | 44,791.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 232.00 |
| **Earnings Total** | | | | | | **9,375.00** | **151,667.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 10.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,191.03 | 29,398.29 | 8,345.40 | 147,422.44 |
| Social Security Employee Withheld | 558.11 | 9,334.59 | 9,001.65 | 150,557.85 |
| Medicare Employee Withheld | 130.53 | 2,183.09 | 9,001.65 | 150,557.85 |
| **Taxes Total** | **1,879.67** | **40,915.97** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 3,135.41 |
| CECARE Child Elder Care Act | Before | 238.10 | 476.20 |
| Medical | Before | 93.00 | 465.00 |
| Dental PPO | Before | 34.15 | 170.75 |
| Vision Plan | Before | 10.10 | 50.50 |
| LTD Long Term Disability | After | 26.53 | 132.65 |
| Group Legal | After | 5.62 | 28.10 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **1,031.60** | **4,297.86** |
| **After Tax Subtotal** | | **32.15** | **1,830.49** |
| **Deductions Total** | | **1,063.75** | **6,128.35** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 77624676165 | CHECKING | XXXX9625 | 6,431.58 |

JPMorgan Chase & Co.

App. 0814

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 03/31/2023 | 03/16/2023 | 03/31/2023 |

### Summary

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 161,042.41 |
| Total Taxes | 1,879.65 | 42,795.62 |
| Total Deductions | 1,317.12 | 7,445.47 |
| Net Pay | 6,178.23 | 110,801.32 |

### Earnings

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 03/16/2023 | 03/31/2023 | | | | 9,375.00 | 54,166.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 232.00 |
| **Earnings Total** | | | | | | **9,375.00** | **161,042.41** |

### Taxable Benefits

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 12.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

### Taxes

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,191.03 | 30,589.32 | 8,345.40 | 155,767.84 |
| Social Security Employee Withheld | 558.10 | 9,892.69 | 9,001.65 | 159,559.50 |
| Medicare Employee Withheld | 130.52 | 2,313.61 | 9,001.65 | 159,559.50 |
| **Taxes Total** | **1,879.65** | **42,795.62** | | |

### Deductions

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 3,791.66 |
| CECARE Child Elder Care Act | Before | 238.10 | 714.30 |
| Medical | Before | 93.00 | 558.00 |
| Dental PPO | Before | 34.15 | 204.90 |
| Vision Plan | Before | 10.10 | 60.60 |
| 401K Loan Repayment | After | 253.37 | 253.37 |
| LTD Long Term Disability | After | 26.53 | 159.18 |
| Group Legal | After | 5.62 | 33.72 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **1,031.60** | **5,329.46** |
| **After Tax Subtotal** | | **285.52** | **2,116.01** |
| **Deductions Total** | | **1,317.12** | **7,445.47** |

### Tax Data

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

### Leave Balances

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

### Net Pay Distribution

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 79224450363 | CHECKING | XXXX9625 | 6,178.23 |

JPMORGAN CHASE & CO.

App. 0815

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 04/14/2023 | 04/01/2023 | 04/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 170,417.41 |
| Total Taxes | 1,361.27 | 44,156.89 |
| Total Deductions | 1,572.25 | 9,017.72 |
| Net Pay | 6,441.48 | 117,242.80 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 04/01/2023 | 04/15/2023 | | | | 9,375.00 | 63,541.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 232.00 |
| **Earnings Total** | | | | | | **9,375.00** | **170,417.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 14.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,191.03 | 31,780.35 | 8,345.40 | 164,113.24 |
| Social Security Employee Withheld | 39.71 | 9,932.40 | 640.50 | 160,200.00 |
| Medicare Employee Withheld | 130.53 | 2,444.14 | 9,001.65 | 168,561.15 |
| **Taxes Total** | **1,361.27** | **44,156.89** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 4,447.91 |
| CECARE Child Elder Care Act | Before | 238.10 | 952.40 |
| Medical | Before | 93.00 | 651.00 |
| Dental PPO | Before | 34.15 | 239.05 |
| Vision Plan | Before | 10.10 | 70.70 |
| 401K Loan Repayment | After | 508.50 | 761.87 |
| LTD Long Term Disability | After | 26.53 | 185.71 |
| Group Legal | After | 5.62 | 39.34 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **1,031.60** | **6,361.06** |
| **After Tax Subtotal** | | **540.65** | **2,656.66** |
| **Deductions Total** | | **1,572.25** | **9,017.72** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 80473984333 | CHECKING | XXXX9625 | 6,441.48 |

JPMORGAN CHASE & CO.

App. 0816

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 04/28/2023 | 04/16/2023 | 04/30/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,775.00 | 180,192.41 |
| Total Taxes | 1,415.35 | 45,572.24 |
| Total Deductions | 1,572.25 | 10,589.97 |
| Net Pay | 6,787.40 | 124,030.20 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 04/16/2023 | 04/30/2023 | | | | 9,375.00 | 72,916.66 |
| LTIP Dividends US | 01/01/2023 | 03/31/2023 | | | | 400.00 | 632.00 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| **Earnings Total** | | | | | | **9,775.00** | **180,192.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 16.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,279.03 | 33,059.38 | 8,745.40 | 172,858.64 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 136.32 | 2,580.46 | 9,401.65 | 177,962.80 |
| **Taxes Total** | **1,415.35** | **45,572.24** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 5,104.16 |
| CECARE Child Elder Care Act | Before | 238.10 | 1,190.50 |
| Medical | Before | 93.00 | 744.00 |
| Dental PPO | Before | 34.15 | 273.20 |
| Vision Plan | Before | 10.10 | 80.80 |
| 401K Loan Repayment | After | 508.50 | 1,270.37 |
| LTD Long Term Disability | After | 26.53 | 212.24 |
| Group Legal | After | 5.62 | 44.96 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **1,031.60** | **7,392.66** |
| **After Tax Subtotal** | | **540.65** | **3,197.31** |
| **Deductions Total** | | **1,572.25** | **10,589.97** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 81682274140 | CHECKING | XXXX9625 | 6,787.40 |

JPMORGAN CHASE & CO.

App. 0817

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 05/15/2023 | 05/01/2023 | 05/15/2023 |

### Summary

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 189,567.41 |
| Total Taxes | 1,321.55 | 46,893.79 |
| Total Deductions | 1,572.25 | 12,162.22 |
| Net Pay | 6,481.20 | 130,511.40 |

### Earnings

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 05/01/2023 | 05/15/2023 | | | | 9,375.00 | 82,291.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 632.00 |
| **Earnings Total** | | | | | | **9,375.00** | **189,567.41** |

### Taxable Benefits

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 18.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

### Taxes

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,191.03 | 34,250.41 | 8,345.40 | 181,204.04 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 130.52 | 2,710.98 | 9,001.65 | 186,964.45 |
| **Taxes Total** | **1,321.55** | **46,893.79** | | |

### Deductions

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 5,760.41 |
| CECARE Child Elder Care Act | Before | 238.10 | 1,428.60 |
| Medical | Before | 93.00 | 837.00 |
| Dental PPO | Before | 34.15 | 307.35 |
| Vision Plan | Before | 10.10 | 90.90 |
| 401K Loan Repayment | After | 508.50 | 1,778.87 |
| LTD Long Term Disability | After | 26.53 | 238.77 |
| Group Legal | After | 5.62 | 50.58 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **1,031.60** | **8,424.26** |
| **After Tax Subtotal** | | **540.65** | **3,737.96** |
| **Deductions Total** | | **1,572.25** | **12,162.22** |

### Tax Data

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

### Leave Balances

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

### Net Pay Distribution

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 83232827130 | CHECKING | XXXX9625 | 6,481.20 |

JPMORGAN CHASE & CO.

App. 0818

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 05/31/2023 | 05/16/2023 | 05/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 198,942.41 |
| Total Taxes | 1,368.46 | 48,262.25 |
| Total Deductions | 1,372.25 | 13,534.47 |
| Net Pay | 6,634.29 | 137,145.69 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 05/16/2023 | 05/31/2023 | | | | 9,375.00 | 91,666.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 632.00 |
| **Earnings Total** | | | | | | **9,375.00** | **198,942.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 20.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 35,485.44 | 8,545.40 | 189,749.44 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 133.43 | 2,844.41 | 9,201.65 | 196,166.10 |
| **Taxes Total** | **1,368.46** | **48,262.25** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 6,416.66 |
| Medical | Before | 93.00 | 930.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,466.70 |
| Dental PPO | Before | 34.15 | 341.50 |
| Vision Plan | Before | 10.10 | 101.00 |
| 401K Loan Repayment | After | 508.50 | 2,287.37 |
| LTD Long Term Disability | After | 26.53 | 265.30 |
| Group Legal | After | 5.62 | 56.20 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **9,255.86** |
| **After Tax Subtotal** | | **540.65** | **4,278.61** |
| **Deductions Total** | | **1,372.25** | **13,534.47** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 0.000 | 96.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 84602622713 | CHECKING | XXXX9625 | 6,634.29 |

JPMORGAN CHASE & CO.

**App. 0819**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 06/15/2023 | 06/01/2023 | 06/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 208,317.41 |
| Total Taxes | 1,416.76 | 49,679.01 |
| Total Deductions | 1,372.25 | 14,906.72 |
| Net Pay | 6,585.99 | 143,731.68 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 06/01/2023 | 06/15/2023 | | | | 9,375.00 | 101,041.66 |
| SCK Sick Entitlement Retroactive | 05/16/2023 | 05/31/2023 | 4.000 | | | 390.63 | 390.63 |
| Regular Salary Retroactive | 05/16/2023 | 05/31/2023 | | | | -390.63 | -390.63 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 632.00 |
| **Earnings Total** | | | | | | **9,375.00** | **208,317.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 22.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 36,720.47 | 8,545.40 | 198,294.84 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 181.73 | 3,026.14 | 9,201.65 | 205,367.75 |
| **Taxes Total** | **1,416.76** | **49,679.01** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 7,072.91 |
| Medical | Before | 93.00 | 1,023.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,504.80 |
| Dental PPO | Before | 34.15 | 375.65 |
| Vision Plan | Before | 10.10 | 111.10 |
| 401K Loan Repayment | After | 508.50 | 2,795.87 |
| LTD Long Term Disability | After | 26.53 | 291.83 |
| Group Legal | After | 5.62 | 61.82 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **10,087.46** |
| **After Tax Subtotal** | | **540.65** | **4,819.26** |
| **Deductions Total** | | **1,372.25** | **14,906.72** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 4.000 | 92.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 86015428785 | CHECKING | XXXX9625 | 6,585.99 |

JPMORGAN CHASE & CO.

App. 0820

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 06/30/2023 | 06/16/2023 | 06/30/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 217,692.41 |
| Total Taxes | 1,451.27 | 51,130.28 |
| Total Deductions | 1,372.25 | 16,278.97 |
| Net Pay | 6,551.48 | 150,283.16 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 06/16/2023 | 06/30/2023 | | | | 9,375.00 | 110,416.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 632.00 |
| SCK Sick Entitlement Retroactive | | | | | | | 390.63 |
| Regular Salary Retroactive | | | | | | | -390.63 |
| **Earnings Total** | | | | | | **9,375.00** | **217,692.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 24.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 37,955.50 | 8,545.40 | 206,840.24 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 3,242.38 | 9,201.65 | 214,569.40 |
| **Taxes Total** | **1,451.27** | **51,130.28** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 7,729.16 |
| Medical | Before | 93.00 | 1,116.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,542.90 |
| Dental PPO | Before | 34.15 | 409.80 |
| Vision Plan | Before | 10.10 | 121.20 |
| 401K Loan Repayment | After | 508.50 | 3,304.37 |
| LTD Long Term Disability | After | 26.53 | 318.36 |
| Group Legal | After | 5.62 | 67.44 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **10,919.06** |
| **After Tax Subtotal** | | **540.65** | **5,359.91** |
| **Deductions Total** | | **1,372.25** | **16,278.97** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 4.000 | 92.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 87316146173 | CHECKING | XXXX9625 | 6,551.48 |

CONFIDENTIAL JPMS000141

JPMORGAN CHASE & CO.

App. 0821

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 07/14/2023 | 07/01/2023 | 07/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 227,067.41 |
| Total Taxes | 1,451.27 | 52,581.55 |
| Total Deductions | 1,372.25 | 17,651.22 |
| Net Pay | 6,551.48 | 156,834.64 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 07/01/2023 | 07/15/2023 | | | | 9,375.00 | 119,791.66 |
| SCK Sick Entitlement Retroactive | 06/01/2023 | 06/15/2023 | 8.000 | | | 852.27 | 1,242.90 |
| Regular Salary Retroactive | 06/01/2023 | 06/15/2023 | | | | -852.27 | -1,242.90 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| LTIP Dividends US | | | | | | | 632.00 |
| **Earnings Total** | | | | | | **9,375.00** | **227,067.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 26.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 39,190.53 | 8,545.40 | 215,385.64 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 3,458.62 | 9,201.65 | 223,771.05 |
| **Taxes Total** | **1,451.27** | **52,581.55** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 8,385.41 |
| Medical | Before | 93.00 | 1,209.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,581.00 |
| Dental PPO | Before | 34.15 | 443.95 |
| Vision Plan | Before | 10.10 | 131.30 |
| 401K Loan Repayment | After | 508.50 | 3,812.87 |
| LTD Long Term Disability | After | 26.53 | 344.89 |
| Group Legal | After | 5.62 | 73.06 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **11,750.66** |
| **After Tax Subtotal** | | **540.65** | **5,900.56** |
| **Deductions Total** | | **1,372.25** | **17,651.22** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 12.000 | 84.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 88601029340 | CHECKING | XXXX9625 | 6,551.48 |

CONFIDENTIAL

JPMORGAN CHASE & CO.

App. 0822

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 07/31/2023 | 07/16/2023 | 07/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,775.00 | 236,842.41 |
| Total Taxes | 1,548.67 | 54,130.22 |
| Total Deductions | 1,372.25 | 19,023.47 |
| Net Pay | 6,854.08 | 163,688.72 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 07/16/2023 | 07/31/2023 | | | | 9,375.00 | 129,166.66 |
| LTIP Dividends US | 04/01/2023 | 06/30/2023 | | | | 400.00 | 1,032.00 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,775.00** | **236,842.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 28.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,323.03 | 40,513.56 | 8,945.40 | 224,331.04 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 225.64 | 3,684.26 | 9,601.65 | 233,372.70 |
| **Taxes Total** | **1,548.67** | **54,130.22** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 9,041.66 |
| Medical | Before | 93.00 | 1,302.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,619.10 |
| Dental PPO | Before | 34.15 | 478.10 |
| Vision Plan | Before | 10.10 | 141.40 |
| 401K Loan Repayment | After | 508.50 | 4,321.37 |
| LTD Long Term Disability | After | 26.53 | 371.42 |
| Group Legal | After | 5.62 | 78.68 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **12,582.26** |
| **After Tax Subtotal** | | **540.65** | **6,441.21** |
| **Deductions Total** | | **1,372.25** | **19,023.47** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 12.000 | 84.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 90513582812 | CHECKING | XXXX9625 | 6,854.08 |

JPMorgan Chase & Co.

App. 0823

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 08/15/2023 | 08/01/2023 | 08/15/2023 |

### Summary

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 246,217.41 |
| Total Taxes | 1,451.27 | 55,581.49 |
| Total Deductions | 1,372.25 | 20,395.72 |
| Net Pay | 6,551.48 | 170,240.20 |

### Earnings

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 08/01/2023 | 08/15/2023 | | | | 9,375.00 | 138,541.66 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **246,217.41** |

### Taxable Benefits

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 30.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

### Taxes

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 41,748.59 | 8,545.40 | 232,876.44 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 3,900.50 | 9,201.65 | 242,574.35 |
| **Taxes Total** | **1,451.27** | **55,581.49** | | |

### Deductions

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 9,697.91 |
| Medical | Before | 93.00 | 1,395.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,657.20 |
| Dental PPO | Before | 34.15 | 512.25 |
| Vision Plan | Before | 10.10 | 151.50 |
| 401K Loan Repayment | After | 508.50 | 4,829.87 |
| LTD Long Term Disability | After | 26.53 | 397.95 |
| Group Legal | After | 5.62 | 84.30 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **13,413.86** |
| **After Tax Subtotal** | | **540.65** | **6,981.86** |
| **Deductions Total** | | **1,372.25** | **20,395.72** |

### Tax Data

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

### Leave Balances

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 12.000 | 84.000 |

### Net Pay Distribution

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|
| Direct Deposit | 91949544898 | CHECKING | XXXX9625 | 6,551.48 |

JPMORGAN CHASE & CO.

**App. 0824**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 08/31/2023 | 08/16/2023 | 08/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 255,592.41 |
| Total Taxes | 1,451.27 | 57,032.76 |
| Total Deductions | 1,372.25 | 21,767.97 |
| Net Pay | 6,551.48 | 176,791.68 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 08/16/2023 | 08/31/2023 | | | | 8,593.75 | 147,135.41 |
| SCK Sick Entitlement Payment | 08/16/2023 | 08/31/2023 | 8.000 | | | 781.25 | 781.25 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **255,592.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 32.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 42,983.62 | 8,545.40 | 241,421.84 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 4,116.74 | 9,201.65 | 251,776.00 |
| **Taxes Total** | **1,451.27** | **57,032.76** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 10,354.16 |
| Medical | Before | 93.00 | 1,488.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,695.30 |
| Dental PPO | Before | 34.15 | 546.40 |
| Vision Plan | Before | 10.10 | 161.60 |
| 401K Loan Repayment | After | 508.50 | 5,338.37 |
| LTD Long Term Disability | After | 26.53 | 424.48 |
| Group Legal | After | 5.62 | 89.92 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **14,245.46** |
| **After Tax Subtotal** | | **540.65** | **7,522.51** |
| **Deductions Total** | | **1,372.25** | **21,767.97** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 20.000 | 76.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Direct Deposit | 93721652247 | CHECKING | XXXX9625 | 6,551.48 |

JPMorgan Chase & Co.

**App. 0826**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 09/15/2023 | 09/01/2023 | 09/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 264,967.41 |
| Total Taxes | 1,451.26 | 58,484.02 |
| Total Deductions | 1,372.25 | 23,140.22 |
| Net Pay | 6,551.49 | 183,343.17 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 09/01/2023 | 09/15/2023 | | | | 9,375.00 | 156,510.41 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| SCK Sick Entitlement Payment | | | | | | | 781.25 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **264,967.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 34.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 44,218.65 | 8,545.40 | 249,967.24 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.23 | 4,332.97 | 9,201.65 | 260,977.65 |
| **Taxes Total** | **1,451.26** | **58,484.02** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 11,010.41 |
| Medical | Before | 93.00 | 1,581.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,733.40 |
| Dental PPO | Before | 34.15 | 580.55 |
| Vision Plan | Before | 10.10 | 171.70 |
| 401K Loan Repayment | After | 508.50 | 5,846.87 |
| LTD Long Term Disability | After | 26.53 | 451.01 |
| Group Legal | After | 5.62 | 95.54 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **15,077.06** |
| **After Tax Subtotal** | | **540.65** | **8,063.16** |
| **Deductions Total** | | **1,372.25** | **23,140.22** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 20.000 | 76.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Direct Deposit | 95247002166 | CHECKING | XXXX9625 | 6,551.49 |

JPMORGAN CHASE & CO.

App. 0828

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 09/29/2023 | 09/16/2023 | 09/30/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 274,342.41 |
| Total Taxes | 1,451.27 | 59,935.29 |
| Total Deductions | 1,372.25 | 24,512.47 |
| Net Pay | 6,551.48 | 189,894.65 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 09/16/2023 | 09/30/2023 | | | | 6,562.50 | 163,072.91 |
| SCK Sick Entitlement Payment | 09/16/2023 | 09/30/2023 | 24.000 | | | 2,812.50 | 3,593.75 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **274,342.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 36.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 45,453.68 | 8,545.40 | 258,512.64 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 4,549.21 | 9,201.65 | 270,179.30 |
| **Taxes Total** | **1,451.27** | **59,935.29** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 11,666.66 |
| Medical | Before | 93.00 | 1,674.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,771.50 |
| Dental PPO | Before | 34.15 | 614.70 |
| Vision Plan | Before | 10.10 | 181.80 |
| 401K Loan Repayment | After | 508.50 | 6,355.37 |
| LTD Long Term Disability | After | 26.53 | 477.54 |
| Group Legal | After | 5.62 | 101.16 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **15,908.66** |
| **After Tax Subtotal** | | **540.65** | **8,603.81** |
| **Deductions Total** | | **1,372.25** | **24,512.47** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 44.000 | 52.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

CONFIDENTIAL JPMS000149

| | | | | |
|---|---|---|---|---|
| Direct Deposit | 96522575367 | CHECKING | XXXX9625 | 6,551.48 |

JPMORGAN CHASE & CO.

App. 0830

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 10/13/2023 | 10/01/2023 | 10/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 283,717.41 |
| Total Taxes | 1,553.55 | 61,488.84 |
| Total Deductions | 1,372.25 | 25,884.72 |
| Net Pay | 6,449.20 | 196,343.85 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 10/01/2023 | 10/15/2023 | | | | 6,562.50 | 169,635.41 |
| SCK Sick Entitlement Payment | 10/01/2023 | 10/15/2023 | 24.000 | | | 2,812.50 | 6,406.25 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **283,717.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Spousal Lodging & Meal | 233.68 | 276.57 |
| Imputed Spousal Travel | 186.35 | 186.35 |
| Imputed Basic Life | 2.00 | 38.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,327.44 | 46,781.12 | 8,965.43 | 267,478.07 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 226.11 | 4,775.32 | 9,621.68 | 279,800.98 |
| **Taxes Total** | **1,553.55** | **61,488.84** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 12,322.91 |
| Medical | Before | 93.00 | 1,767.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,809.60 |
| Dental PPO | Before | 34.15 | 648.85 |
| Vision Plan | Before | 10.10 | 191.90 |
| 401K Loan Repayment | After | 508.50 | 6,863.87 |
| LTD Long Term Disability | After | 26.53 | 504.07 |
| Group Legal | After | 5.62 | 106.78 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **16,740.26** |
| **After Tax Subtotal** | | **540.65** | **9,144.46** |
| **Deductions Total** | | **1,372.25** | **25,884.72** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 68.000 | 28.000 |

| Net Pay Distribution | | | | |
|---|---|---|---|---|
| Payment Type | Payment Reference | Account Type | Account Number | Amount |
| Direct Deposit | 97950283961 | CHECKING | XXXX9625 | 6,449.20 |

JPMORGAN CHASE & CO.

**App. 0832**

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 10/31/2023 | 10/16/2023 | 10/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,795.00 | 293,512.41 |
| Total Taxes | 1,553.54 | 63,042.38 |
| Total Deductions | 1,372.23 | 27,256.95 |
| Net Pay | 6,869.23 | 203,213.08 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 10/16/2023 | 10/31/2023 | | | | 9,375.00 | 179,010.41 |
| LTIP Dividends US | 07/01/2023 | 09/30/2023 | | | | 420.00 | 1,452.00 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| SCK Sick Entitlement Payment | | | | | | | 6,406.25 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,795.00** | **293,512.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 40.00 |
| Imputed Spousal Lodging & Meal | | 276.57 |
| Imputed Spousal Travel | | 186.35 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,327.43 | 48,108.55 | 8,965.42 | 276,443.49 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 226.11 | 5,001.43 | 9,621.67 | 289,422.65 |
| **Taxes Total** | **1,553.54** | **63,042.38** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 12,979.16 |
| Medical | Before | 93.00 | 1,860.00 |
| CECARE Child Elder Care Act | Before | 38.08 | 1,847.68 |
| Dental PPO | Before | 34.15 | 683.00 |
| Vision Plan | Before | 10.10 | 202.00 |
| 401K Loan Repayment | After | 508.50 | 7,372.37 |
| LTD Long Term Disability | After | 26.53 | 530.60 |
| Group Legal | After | 5.62 | 112.40 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.58** | **17,571.84** |
| **After Tax Subtotal** | | **540.65** | **9,685.11** |
| **Deductions Total** | | **1,372.23** | **27,256.95** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 68.000 | 28.000 |

JPMORGAN CHASE & CO.

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 08/31/2023 | 08/16/2023 | 08/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 255,592.41 |
| Total Taxes | 1,451.27 | 57,032.76 |
| Total Deductions | 1,372.25 | 21,767.97 |
| Net Pay | 6,551.48 | 176,791.68 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 08/16/2023 | 08/31/2023 | | | | 8,593.75 | 147,135.41 |
| SCK Sick Entitlement Payment | 08/16/2023 | 08/31/2023 | 8.000 | | | 781.25 | 781.25 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **255,592.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 32.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 42,983.62 | 8,545.40 | 241,421.84 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 4,116.74 | 9,201.65 | 251,776.00 |
| **Taxes Total** | **1,451.27** | **57,032.76** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 10,354.16 |
| Medical | Before | 93.00 | 1,488.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,695.30 |
| Dental PPO | Before | 34.15 | 546.40 |
| Vision Plan | Before | 10.10 | 161.60 |
| 401K Loan Repayment | After | 508.50 | 5,338.37 |
| LTD Long Term Disability | After | 26.53 | 424.48 |
| Group Legal | After | 5.62 | 89.92 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **14,245.46** |
| **After Tax Subtotal** | | **540.65** | **7,522.51** |
| **Deductions Total** | | **1,372.25** | **21,767.97** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 20.000 | 76.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Direct Deposit | 93721652247 | CHECKING | XXXX9625 | 6,551.48 |

JPMORGAN CHASE & CO.

App. 0835

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 09/15/2023 | 09/01/2023 | 09/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 264,967.41 |
| Total Taxes | 1,451.26 | 58,484.02 |
| Total Deductions | 1,372.25 | 23,140.22 |
| Net Pay | 6,551.49 | 183,343.17 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 09/01/2023 | 09/15/2023 | | | | 9,375.00 | 156,510.41 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| SCK Sick Entitlement Payment | | | | | | | 781.25 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **264,967.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 34.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 44,218.65 | 8,545.40 | 249,967.24 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.23 | 4,332.97 | 9,201.65 | 260,977.65 |
| **Taxes Total** | **1,451.26** | **58,484.02** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 11,010.41 |
| Medical | Before | 93.00 | 1,581.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,733.40 |
| Dental PPO | Before | 34.15 | 580.55 |
| Vision Plan | Before | 10.10 | 171.70 |
| 401K Loan Repayment | After | 508.50 | 5,846.87 |
| LTD Long Term Disability | After | 26.53 | 451.01 |
| Group Legal | After | 5.62 | 95.54 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **15,077.06** |
| **After Tax Subtotal** | | **540.65** | **8,063.16** |
| **Deductions Total** | | **1,372.25** | **23,140.22** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 20.000 | 76.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Direct Deposit | 95247002166 | CHECKING | XXXX9625 | 6,551.49 |

JPMORGAN CHASE & CO.

App. 0837

## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 09/29/2023 | 09/16/2023 | 09/30/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 274,342.41 |
| Total Taxes | 1,451.27 | 59,935.29 |
| Total Deductions | 1,372.25 | 24,512.47 |
| Net Pay | 6,551.48 | 189,894.65 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 09/16/2023 | 09/30/2023 | | | | 6,562.50 | 163,072.91 |
| SCK Sick Entitlement Payment | 09/16/2023 | 09/30/2023 | 24.000 | | | 2,812.50 | 3,593.75 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **274,342.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 36.00 |
| Imputed Spousal Lodging & Meal | | 42.89 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,235.03 | 45,453.68 | 8,545.40 | 258,512.64 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 216.24 | 4,549.21 | 9,201.65 | 270,179.30 |
| **Taxes Total** | **1,451.27** | **59,935.29** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 11,666.66 |
| Medical | Before | 93.00 | 1,674.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,771.50 |
| Dental PPO | Before | 34.15 | 614.70 |
| Vision Plan | Before | 10.10 | 181.80 |
| 401K Loan Repayment | After | 508.50 | 6,355.37 |
| LTD Long Term Disability | After | 26.53 | 477.54 |
| Group Legal | After | 5.62 | 101.16 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **15,908.66** |
| **After Tax Subtotal** | | **540.65** | **8,603.81** |
| **Deductions Total** | | **1,372.25** | **24,512.47** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 44.000 | 52.000 |

**Net Pay Distribution**

| Payment Type | Payment Reference | Account Type | Account Number | Amount |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Direct Deposit | 96522575367 | CHECKING | XXXX9625 | 6,551.48 |

JPMORGAN CHASE & CO.



## Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 10/13/2023 | 10/01/2023 | 10/15/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,375.00 | 283,717.41 |
| Total Taxes | 1,553.55 | 61,488.84 |
| Total Deductions | 1,372.25 | 25,884.72 |
| Net Pay | 6,449.20 | 196,343.85 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 10/01/2023 | 10/15/2023 | | | | 6,562.50 | 169,635.41 |
| SCK Sick Entitlement Payment | 10/01/2023 | 10/15/2023 | 24.000 | | | 2,812.50 | 6,406.25 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| LTIP Dividends US | | | | | | | 1,032.00 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,375.00** | **283,717.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Spousal Lodging & Meal | 233.68 | 276.57 |
| Imputed Spousal Travel | 186.35 | 186.35 |
| Imputed Basic Life | 2.00 | 38.00 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,327.44 | 46,781.12 | 8,965.43 | 267,478.07 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 226.11 | 4,775.32 | 9,621.68 | 279,800.98 |
| **Taxes Total** | **1,553.55** | **61,488.84** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 12,322.91 |
| Medical | Before | 93.00 | 1,767.00 |
| CECARE Child Elder Care Act | Before | 38.10 | 1,809.60 |
| Dental PPO | Before | 34.15 | 648.85 |
| Vision Plan | Before | 10.10 | 191.90 |
| 401K Loan Repayment | After | 508.50 | 6,863.87 |
| LTD Long Term Disability | After | 26.53 | 504.07 |
| Group Legal | After | 5.62 | 106.78 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.60** | **16,740.26** |
| **After Tax Subtotal** | | **540.65** | **9,144.46** |
| **Deductions Total** | | **1,372.25** | **25,884.72** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 68.000 | 28.000 |

| Net Pay Distribution | | | | |
|---|---|---|---|---|
| Payment Type | Payment Reference | Account Type | Account Number | Amount |
| Direct Deposit | 97950283961 | CHECKING | XXXX9625 | 6,449.20 |

JPMORGAN CHASE & CO.

App. 0841

# Pay Statement

| Employer Name | Employer Address | State - Employer BIN |
|---|---|---|
| JPMorgan Chase Bank, National Association | 1111 Polaris Parkway<br>Columbus, OH<br>43240 | TX - NO STATE TAX |
| **Employee Name** | **Payroll Company** | **FLSA Status** |
| Joshua Biering | 0802 | Salaried Exempt |
| **Employee Address** | **Department** | **Base Rate** |
| 3900 Bent Elm Ln<br>Fort Worth, TX<br>76109 | 254896 | 225,000.00 |
| **Person Number (SID)** | **Payroll** | **Shift Diff (% of Eligible Wages)** |
| I662283 | Semimonthly | N/A |

| Pay Date | Pay Period Begin Date | Pay Period End Date |
|---|---|---|
| 10/31/2023 | 10/16/2023 | 10/31/2023 |

**Summary**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Gross Pay | 9,795.00 | 293,512.41 |
| Total Taxes | 1,553.54 | 63,042.38 |
| Total Deductions | 1,372.23 | 27,256.95 |
| Net Pay | 6,869.23 | 203,213.08 |

**Earnings**

| Description | Earnings Begin Date | Earnings End Date | Hours | Rate | Multiplier | Current Amount | YTD Amount |
|---|---|---|---|---|---|---|---|
| Regular Salary | 10/16/2023 | 10/31/2023 | | | | 9,375.00 | 179,010.41 |
| LTIP Dividends US | 07/01/2023 | 09/30/2023 | | | | 420.00 | 1,452.00 |
| Annual Cash Incentive Award | | | | | | | 104,000.00 |
| SCK Sick Entitlement Payment | | | | | | | 6,406.25 |
| RSU 1 | | | | | | | 2,643.75 |
| SCK Sick Entitlement Retroactive | | | | | | | 1,242.90 |
| Regular Salary Retroactive | | | | | | | -1,242.90 |
| **Earnings Total** | | | | | | **9,795.00** | **293,512.41** |

**Taxable Benefits**

| Description | Current Amount | YTD Amount |
|---|---|---|
| Imputed Basic Life | 2.00 | 40.00 |
| Imputed Spousal Lodging & Meal | | 276.57 |
| Imputed Spousal Travel | | 186.35 |

**Taxes**

| Description | Current Amount | YTD Amount | Taxable Wages | YTD Taxable Wages |
|---|---|---|---|---|
| FIT Withheld | 1,327.43 | 48,108.55 | 8,965.42 | 276,443.49 |
| Social Security Employee Withheld | | 9,932.40 | | 160,200.00 |
| Medicare Employee Withheld | 226.11 | 5,001.43 | 9,621.67 | 289,422.65 |
| **Taxes Total** | **1,553.54** | **63,042.38** | | |

**Deductions**

| Description | Tax Type | Current Amount | YTD Amount |
|---|---|---|---|
| 401K Per Pay Contribution | Before | 656.25 | 12,979.16 |
| Medical | Before | 93.00 | 1,860.00 |
| CECARE Child Elder Care Act | Before | 38.08 | 1,847.68 |
| Dental PPO | Before | 34.15 | 683.00 |
| Vision Plan | Before | 10.10 | 202.00 |
| 401K Loan Repayment | After | 508.50 | 7,372.37 |
| LTD Long Term Disability | After | 26.53 | 530.60 |
| Group Legal | After | 5.62 | 112.40 |
| RSU Net Value 1 | After | | 1,669.74 |
| **Before Tax Subtotal** | | **831.58** | **17,571.84** |
| **After Tax Subtotal** | | **540.65** | **9,685.11** |
| **Deductions Total** | | **1,372.23** | **27,256.95** |

**Tax Data**

| Type | Marital Status | Allowances | Addl. Amount |
|---|---|---|---|
| FEDERAL | Married filing jointly or Qualifying widow(er) | 0 | 0.00 |
| STATE / TX - Work/Resident | | 0 | 0.00 |

**Leave Balances**

| Description | Hours Taken | Available Hours |
|---|---|---|
| Sick Exempt | 68.000 | 28.000 |

| Net Pay Distribution | | | | |
|---|---|---|---|---|
| Payment Type | Payment Reference | Account Type | Account Number | Amount |
| Direct Deposit | 99392501756 | CHECKING | XXXX9625 | 6,869.23 |




# Supporting Greater DFW for more than 105 years

| $34.5M | 190+ | 615+ | 16.7K | 221K | 1.9M |
|---|---|---|---|---|---|
| in philanthropic contributions from 2019-2022 | branches | ATMs | employees | small business clients[1] | consumer banking customers[2] |

**The Greater Dallas-Fort Worth area[3] is not only a place where we do business, it is home to our customers, clients, employees and community partners. The strength of our company allows us to leverage our resources, expertise and data insights to help bolster communities and create a more inclusive economy for all.**

## Business Growth and Entrepreneurship

**$1.8M** new market tax credit equity invested to fund the construction of a temporary emergency shelter owned and operated by **Arlington Life Shelter**, a nonprofit organization that serves persons experiencing homelessness in Arlington.

Provided **$750K** in philanthropic capital to the **Dallas Entrepreneur Center** to strengthen local small businesses and foster inclusive growth for underrepresented business owners.

Provided **$110K** in philanthropic capital to the **Center for Transforming Lives** to accelerate development and expansion for low income minority-owned businesses in East and Southeast Fort Worth.

## Careers and Skills

Committed **$7M** to the **Commit Partnership** to support a collaborative effort that builds on the firm's $3M investment in the Dallas County Promise scholarship program by aligning it with in-demand careers and real world experiences for students.

Provided **$2M** in philanthropic capital to the **Tarrant to & Through Partnership** to expand postsecondary completion, improve workforce outcomes and close the achievement gap.

Provided a **$500K** in philanthropic capital to **Paul Quinn College** to support the development of a data science pathway that will lead to industry recognized credentials for high demand tech jobs in the region.

**80** fellows sponsored as part of **The Fellowship Initiative (TFI)**, a program that supports young men of color through high school and college.

Hired more than **4,000** veterans in Texas since 2011.[4]

## Community Development

Provided **$6M** in philanthropic capital to **TREC Community Investors** to implement a community driven approach to equitable development in three southern Dallas neighborhoods that are vulnerable to rapid transition.

Committed **$500K** to **Capital Impact Partners** to provide formalized technical assistance and capital to developers of color in southern Dallas.

## Financial Health and Wealth Creation

Provided **$250K** in philanthropic capital to the **Women's Center of Tarrant County** to create career pathways for low-income individuals through financial coaching and career advancement services.

Deepening relationships and expanding our presence with more than **23** community branches, including our **Oak Cliff Community branch** where we host events, financial health workshops, skills training and small business pop-ups.

Since 2020, we hosted more than **260** free financial health events supporting customers, community members and employees.[5]

### Did You Know?

Dallas is one of the key Global Technology Centers for JPMorgan Chase with more than **3K** technologists working locally, including software engineers and developers specializing in critical areas like cybersecurity, artificial intelligence and machine learning.

*(1) Small business clients are an aggregate of active business checking and savings customers. (2) Consumer banking customers are an aggregate of active personal checking and savings customers. (3) Greater Dallas represents Dallas-Fort Worth-Arlington, TX MSA. (4) Veterans data is aggregated at the state level and is based on self identification through April 2022. (5) Financial health events include student and employee events through May 2022. Data provided is fr[illegible] App. 0843 [illegible]imated JPMorgan Chase & Co. (NYSE: JPM) is a leading financial services firm based in the United States of America ("U.S."), with operations worldwide. JPMorgan Chase had $3.8 trillion in assets and $288 billion in stock[illegible]22. The Firm is a leader in investment banking, financial services for consumers and small businesses, commercial banking, financial transaction processing and asset management. Under the J.P. Morgan and Chase brand[illegible]rs in the U.S., and many of the world's most prominent corporate, institutional and government clients globally. Information about JPMorgan Chase & Co. is available at www.jpmorganchase.com.*

*Content last updated November 2022*

# J.P. Morgan Chase & Co.

For nearly 150 years J.P. Morgan and our predecessor banks have served the Fort Worth community. Though locally positioned, our bank has a global reach that extends far beyond the boundaries of Tarrant County into every corner of Texas, across the country, and around the world.

**28.2K**

**NUMBER OF J.P. MORGAN EMPLOYEES IN TEXAS**

**16.15%**

**PERCENT OF J.P. MORGAN EMPLOYEES IN THE U.S.**

**2.4K**

**NUMBER OF J.P. MORGAN EMPLOYEES IN TARRANT COUNTY**

### JPMC INVESTING IN FORT WORTH

| | |
|---|---|
| $3.0M | Commitment by Fort Worth's Market Leadership Team to improve workforce outcome and close the achievement gap. |
| $3.5M | Investment in the Ronald McDonald House of Fort Worth. |
| $4.8M | Investment in ACH Child and Family Services. |
| $5.3M | Investment in Meals on Wheels of Tarrant County. |
| $10.3M | Investment in Cook Children's Health Care System. |

**$382B+**

Amount of J.P. Morgan financing across the oil & gas life cycle since 2016.[1]

**$10B+**

Amount J.P. Morgan increased Fossil Fuel financing from 2020 to 2021.[1]

**#1**

Financer of transactions relating to Fossil Fuels over the last 5 years.[1]

**180+**

Years in the oil and gas industry.

**50**

Relationships with investor-owned utilities and power companies.

# The Fort Worth Private Bank

Local Decision Making

Local Charitable Organizations

Local Impact

**$584M+**

Market value of local Charitable Trusts & Foundations that entrust JPMorgan with the administration and management of their assets.[2]

**$17M+**

Over 238 charitable trust grants to Texas community organizations and foundations in 2022.




[1] Bloomberg Finance L.P., urgewald e.V., and Rystad Energy AS provided by Oil Change International
[2] As of October 2022

I662283

App. 0845

# 2022 Annual Compensation Summary
# JOSHUA BIERING

## 2022 Compensation

| | |
|---|---|
| **Total Compensation** *(Salary + Incentives)* | $330,000 |
| **Salary** *(as of December 31, 2022)* | $200,000 |
| **Incentive Awards** | $130,000 |
| *Cash Incentive* | *$104,000* |
| *Restricted Stock Units (RSU)* | *$26,000* |

## Effective February 1, 2023

| | |
|---|---|
| **Recommended Salary** | **$225,000** |
| *Salary Increase* | *$25,000* |
| **New Job Information** | |
| Corporate Title | EXECDIR |
| Grade | 604 |
| Job Title | Banker |

**Notes**

- Because we manage on a total compensation basis, this salary increase will be an offset to a portion of any incentive award you may receive for 2023 performance. See your manager if you have any questions.
- Your new salary will be reflected in the pay you receive in February 2023.
- You will not receive an Incentive Award if you are not employed by JPMorgan Chase on the payment date and/or the grant date or if you have given notice of termination prior to those dates.
- Incentive Awards are subject to the JPMorgan Chase Performance-Based Incentive Compensation Plan and JPMorgan Chase Bonus Recoupment Policy. Equity awards are earned over a future period and are subject to recovery provisions and restrictive covenants and other terms and conditions set forth in the award agreement. You will be provided an opportunity to decline awards. If you do not decline by the specified date, you will be deemed to have accepted the terms and conditions.
- Your Cash Incentive Payment will be subject to any applicable taxes and deductions.
- Due to the change in your grade and/or corporate title, your notice period may change effective February 1, 2023. By accepting this change, you are agreeing to any notice period change. Please refer to the global notice period overview chart; https://me.jpmchase.net/mejpmc/file/media/271818/notice_period_policy_overview_chart.pdf
- **Cash Incentive**: Your Cash Incentive for performance year 2022 is expected to be distributed by January 31, 2023. For specific country pay dates, please contact your manager or HR Advisor.
- **Restricted Stock**: You will be granted restricted stock units (RSUs) on January 17, 2023. The exact number of RSUs granted will be determined by dividing the RSU Incentive Award amount above by the Grant Date value (which is the Fair Market Value (FMV) of one share of JPMorgan Chase common stock), rounded up to the next whole unit. Subject to the terms and conditions of your award your RSUs will vest in accordance with the vest schedule detailed on your award agreement, provided that you are employed on such vest dates. Through the vesting period, you will receive dividend equivalents with respect to your RSUs for any dividends paid on the common stock of JPMorgan Chase. Your award agreement will be available to you online prior to the end of February and will specify the number of RSUs granted to you, the vest dates/number of units vesting, and the terms and conditions of your award.
- You are solely responsible for any taxes associated with the grant of RSUs to you.

- The FMV equals the average of the high and the low selling prices of JPMorgan Chase common stock on the New York Stock Exchange composite tape on the Grant Date.
- Most employees can access MyRewards on me@jpmc to see a full, personalized summary of the benefits you receive as a JPMorgan Chase & Co. employee. Note: information in My Rewards & Retirement Savings as of the distribution of this statement may differ due to timing of actual incentive payments and RSU grants.

App. 0847

## Calculate GROSS TO NET for LOA Overpayment

INPUT

***2023 Overpayment - Case Opened in 2023***

| | |
|---|---|
| **Employee Name:** | Joshua Biering |
| **SID:** | I662283 |
| **Exempt or NON-Exempt** | Exempt/Semi-Monthly |
| **Employee Status:** | Term |
| **Worked in STATE:** | TX |

| | | Paycheck 1 | | Paych |
|---|---|---|---|---|
| **Pay Date:** | | 11/30/2023 | | 12/15 |
| **Pay Period:** | | | | |
| **Notes:** | | | | |
| | | **Original Payment (HCM Payslip)** | **Correct Payment (Recalculation)** | **Original Payment (HCM Payslip)** |
| **EARNINGS:** | **401K Eligible?** | | | |
| REG Regular Salary | Y | $ 9,375.00 | | $ 852.27 |
| L60 Leave of Absence Partial 60 | Y | | | |
| FVP Final Vacation Pay | N | | | $ 11,538.39 |
| MES Misc Earning | N | | | |
| PAL Paid Admin Leave | Y | $ 18,750.00 | | |
| MPH Military Pay Hourly | Y | | | |
| MLF Military Pay Offset | Y | | | |
| | | | | |
| UPD Unpaid Reduced Payment LOA | Y | $ (8,522.70) | | $ (852.27) |
| NJO New Jersey Off Set | Y | | | |
| | Y | | | |
| **EARNINGS TOTAL** | | **$ 19,602.30** | **$ -** | **$ 11,538.39** |
| ***Difference per paycheck*** | | | ***$ 19,602.30*** | |
| | | | | |
| ***IMPUTED INCOME (Taxable Benefits)*** | | *$ 2.00* | *$ -* | *$ 2.00* |
| | | | | |
| **TAXES:** | **State / City / County** | | | |
| FIT Withheld | | $ 3,657.03 | $ - | $ 1,909.75 |
| Social Security Employee Withheld | | | $ - | |

| | | | | |
|---|---|---|---|---|
| Medicare Employee Withheld | | $ 457.48 | $ - | $ 267.98 |
| SIT Withheld | | | $ - | |
| | | | $ - | |
| **TAXES TOTAL** | | **$ 4,114.51** | **$ -** | **$ 2,177.73** |
| | | *21%* | *#DIV/0!* | *19%* |
| **DEDUCTIONS BEFORE TAX:** | **% for 401K** | | | |
| B401K Per Pay Contribution | 7.00% | $ 1,372.16 | $ - | |
| PPOMED Medical PPO | | $ 93.00 | $ - | $ 93.00 |
| PPODEN Dental PPO | | $ 34.15 | $ - | $ 34.15 |
| VISION Vision Plan | | $ 10.10 | $ - | $ 10.10 |
| | | | $ - | |
| **DEDUCTIONS BEFORE TAX TOTAL** | | **$ 1,509.41** | **$ -** | **$ 137.25** |
| | | | | |
| **DEDUCTIONS AFTER TAX:** | **% for ROTH** | | | |
| A401K Per Pay Contribution Roth | | | $ - | |
| JPMC 401KLN 401K Loan Repayment | | $ 508.50 | $ - | $ 508.50 |
| LTD Long Term Disability | | $ 26.53 | $ - | |
| LEGAL Group Legal | | $ 5.62 | $ - | $ 5.62 |
| | | | $ - | |
| **DEDUCTIONS AFTER TAX TOTAL** | | **$ 540.65** | **$ -** | **$ 514.12** |
| | | | | |
| **TOTAL DEDUCTIONS** | | **$ 2,050.06** | **$ -** | **$ 651.37** |
| | | | | |
| **NET PAY** | | **$ 13,437.73** | **$ -** | **$ 8,709.29** |
| *Check Figure* | | *$ 13,437.73* | *$ -* | *$ 8,709.29* |
| *Variance = Must be $0.00* | | *$ -* | *$ -* | *$ -* |
| *Net OP per Paycheck* | | | *$ 13,437.73* | |
| *Percent Net/Gross* | | *68.6%* | *#DIV/0!* | *75.5%* |

App. 0849

| | | | |
|---|---|---|---|
| **Type of Leave:** | Paid Admin leave | **Approved Leave Dates:** | 11/1/2023-12/1/2023 |
| **First Date of Leave:** | 11/1/2023 | **Return to Work Date:** | 12/2/2023(term) |
| **Partial Pay Begin Date:** | | **State Offset Weekly Rate:** | |
| **Waiting Period** | | | |

| **eck 2** | **Paycheck 3** | | **Paycheck 4** | |
|---|---|---|---|---|
| /2023 | | | | |
| | | | | |
| | | | | |
| **Correct Payment (Recalculation)** | **Original Payment (HCM Payslip)** | **Correct Payment (Recalculation)** | **Original Payment (HCM Payslip)** | **Correct Payment (Recalculation)** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| $ 852.27 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **$ 852.27** | **$ -** | **$ -** | **$ -** | **$ -** |
| ***$ 10,686.12*** | | ***$ -*** | | ***$ -*** |
| | | | | |
| *$ 2.00* | | *$ -* | | *$ -* |
| | | | | |
| | | | | |
| $ 113.18 | | $ - | | $ - |
| $ - | | $ - | | $ - |

| | | | | |
|---|---|---|---|---|
| $ 16.85 | | $ - | | $ - |
| $ - | | $ - | | $ - |
| $ - | | $ - | | $ - |
| **$ 130.03** | **$ -** | **$ -** | **$ -** | **$ -** |
| *15%* | *#DIV/0!* | *#DIV/0!* | *#DIV/0!* | *#DIV/0!* |
| | | | | |
| $ 59.66 | | $ - | | $ - |
| $ 93.00 | | $ - | | $ - |
| $ 34.15 | | $ - | | $ - |
| $ 10.10 | | $ - | | $ - |
| $ - | | $ - | | $ - |
| **$ 196.91** | **$ -** | **$ -** | **$ -** | **$ -** |
| | | | | |
| | | | | |
| $ - | | $ - | | $ - |
| $ 508.50 | | $ - | | $ - |
| $ - | | $ - | | $ - |
| $ 5.62 | | $ - | | $ - |
| $ - | | $ - | | $ - |
| **$ 514.12** | **$ -** | **$ -** | **$ -** | **$ -** |
| | | | | |
| **$ 711.03** | **$ -** | **$ -** | **$ -** | **$ -** |
| | | | | |
| **$ 11.21** | **$ -** | **$ -** | **$ -** | **$ -** |
| *$ 11.21* | *$ -* | *$ -* | *$ -* | *$ -* |
| *$ -* | *$ -* | *$ -* | *$ -* | *$ -* |
| *$ 8,698.08* | | *$ -* | | *$ -* |
| *1.3%* | *#DIV/0!* | *#DIV/0!* | *#DIV/0!* | *#DIV/0!* |

2023-12-11 08:33:31 - Namratha K.a (Additional comments)
Hello Joshua,

My name is Namratha.K.A, thank you for contacting JPMorgan Chase & Co, HR NA Final pay Team. I will be glad to assist you with your query.

You were due with $9,375.00 Paid Admin leave for 11/30/2023 pay period, However the 11/30/2023 payslip had incorrect pay generated .Hence we have stopped the
11/30/2023 paylip and paid you the $9,375.00 Paid Admin leave amount due for 11/30/2023 pay period in 11/29/2023 offcycle (refer to 11/29/2023 paycheck ) and you recieved the pay on 11/30/2023.
As per our review you have accrued 106.66 vacation hours (13.33 days) and which will be paid to you in 12/15/2023 pay period and pay day is 12/15/2023 and please find below the calculation of vacation hours below :-

You accrued 162.666 hours (Vacation Hours: 146.666, Personal Hours: 0, Floating Holidays Hours: 0, Carryover Hours: 16); used 56 hours. Hence due with 106.666
Final Vacation pay . ( $ 11538.39 )

we have intiated a task HRT0160673 for your incentive query to the concerned team and you can refer to the case for the response

Did this response answer your question? To let us know, please go to “Tasks/To-Dos”. Select “Yes” to accept the resolution or “No” to ask a follow-up question and reject the resolution. For questions about a different topic, please create another request so we can best assist you.

Thank you,
Namratha.K.A
HR NA Final pay Team

2023-12-10 11:41:48 - Joshua Biering (Additional comments)
User Joshua Biering has initiated a Final Pay Inquiry request

Work notes:

2023-12-13 12:49:51 - France Caubang (Work notes)
HRC0467259 has been associated with IMS0126287

| | |
|---|---|
| Related List Title | Task List |
| Table name | task |
| Query Condition | Parent = HRC0467259 |
| Sort Order | Number in ascending order |

1 Tasks

| Number ▲ | Priority | State | Assigned to | Short description | Task type |
|---|---|---|---|---|---|
| HRT0160673 | 4 - Low | Closed Incomplete | | my incentive compensation for the recognized gold performance I had for metric year ending 9/30/2023.EE SID - I662283 | HR Task |

**Reg Type: KYC**
**Standard ID:** I662283
**Empl ID:** 40262P
**Name:** Joshua Biering
**Corp Title:** EXECDIR
**Job Title:** SC Banker
**Date Last Loaded:** **25-Feb-2024**
**Work Location:** Fort Worth,TX
**Home Country:** United States
**EE Indicator:** E
**Heritage/Bank Flag:** -
**CS Hier #5:** ASSET & WEALTH MANAGEMENT
**CS Hier #6:** GLOBAL PRIVATE BANK
**FT/PT:** F
**Status:** Terminated
**Action ID/Desc:** -
**Action Reason/Desc:** -
**Action Date:**
**Assignment LE:**
**Original Hire:** 23-May-2016
**Current Hire:** 23-May-2016
**JPMC Hire:** 1-Jan-1900
**VLSR:** 23-May-2016
**Last Day Paid:** 1-Dec-2023
**Last Day Worked:** 26-Oct-2023
**Work Phone:** 8172123096

GENERAL

Case **13272046-0** for Employee **BIERING,JOSHUA**

| | | |
|---|---|---|
| Type | Payroll/Overpayments B | |
| Sub Type: | Terms Without Sev | |
| Subject: | NOT AN OP - reversed funds during processing | |
| Priority: | Standard | SLA Expected Days: 14 |
| Outcome: | | |

STATUS

Permit Employee to close case via ESS: ☐

Permit Manager to view case via ESS: ☐

| Opened: | By: | Assigned: | To: |
|---|---|---|---|
| **8-Dec-2023 9:22:19 AM** | **Ashwini R Poojari** | **14-Dec-2023 8:18:47 AM** | **Recovery Advisor** |
| Closed: | By: | | |
| **27-Dec-2023 5:37:05 PM** | **Teri L Witherspoon** | | |

SOURCE OF INQUIRY

| | | | |
|---|---|---|---|
| Relationship: | Employee | Notification Method: | |
| Name: | | SID: | Phone: |

HR REP INFORMATION

HR Rep SID: HR Rep Name:
HR Rep Email Address:



NOTES

| ESS | Mgr | Date | Note | Author |
|---|---|---|---|---|
| ⊗ | ⊗ | 27-Dec-2023 5:30 PM | This was not an Overpayment. We were able to recover the funds during the payroll process. Funds came back in 009 account. reclassed those funds to the 3340 and Payroll Support reversed the payment in HCM. A letter should not have been sent to the employee and no RED event reported. Send email to Controls Team and removed from the Red Event summary report. | Teri L Witherspoon |
| ⊗ | ⊗ | 27-Dec-2023 5:02 PM | Employee is not overpaid. This is an invalid case for review.<br>Kindly close this case as no action is required<br><br>Note - Employee was not overpaid for 11/30 paycheck, as the ACH was deleted. The due payments were processed on the 11/29 offcycle. Also the 12/15 paycheck employee was paid the FVP, which is not an overpayment | Santosh Nag (LOABglr) |
| ⊗ | ⊗ | 14-Dec-2023 8:07 AM | First Notification to former employee's personal email address:<br><br>josh.biering@gmail.com<br><br>Total Gross Overpayment: $30,288.42<br><br>Total Net Overpayment DUE: $22,135.81 | Komal Niranjan |
| ⊗ | ⊗ | 14-Dec-2023 7:42 AM | Employee has been overpaid in 11/30/2023 paycheck with gross pay $30288.42 | Ashwini R Poojari |
| ⊗ | ⊗ | 8-Dec-2023 12:17 PM | Audited | Sheela Moncy (LOABglr) |
| ⊗ | ⊗ | 8-Dec-2023 9:22 AM | Employee has been overpaid in 11/30/2023 paycheck with PAL. | Ashwini R Poojari |

HISTORY OF CHANGES