**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| JOSHUA DAVID SAPPI BIERING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:26-cv-950-P-BJ |
| v. | § | |
| | § | |
| J.P. MORGAN SECURITIES, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

# DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING AND BRIEF IN SUPPORT


**GREENBERG TRAURIG, LLP**

Christopher S. Dodrill
Texas Bar No. 24110696
Email: christopher.dodrill@gtlaw.com
Elizabeth A. Bones
Texas Bar No. 24074026
Email: beth.bones@gtlaw.com
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

Jennifer Tomsen
Texas Bar No. 24064535
tomsenj@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, TX 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ... ii

I. INTRODUCTION ... 1

II. BACKGROUND ... 2

A. From 2016 to 2023, Plaintiff Worked as a Chase Banker and Agreed to Arbitrate Employment-Related Disputes. ... 2

B. In December 2023, Chase Terminated Plaintiff for Sexual Misconduct. ... 3

C. In February 2024, Plaintiff Filed Administrative Charge of Discrimination. ... 3

D. In June 2024, Plaintiff Invoked the Binding Arbitration Agreement and Sought Relief against Defendants in FINRA. ... 4

D. In February 2026, Plaintiff Asserted *Pro Se* Employment-Related Claims against Defendants in AAA Arbitration. ... 5

E. Plaintiff Filed a Vacatur Action Challenging the FINRA Award. ... 6

F. Plaintiff Filed this Complaint after Chief Judge O'Connor's Ruling. ... 6

III. APPLICABLE LEGAL STANDARD ... 7

IV. ARGUMENT AND AUTHORITIES ... 9

A. Plaintiff Formed an Agreement to Arbitrate with Defendants. ... 9

B. The Binding Arbitration Agreement Delegates Questions of Scope and Enforceability to the Arbitrator. ... 11

C. In any Event, Plaintiff's Claims Are within the Scope of the Binding Arbitration Agreement. ... 12

D. The EFAA Does Not Allow Plaintiff to Avoid Arbitration. ... 14

1. The EFAA requires a plausible claim of sexual assault or sexual harassment. ... 14

2. Plaintiff's allegations, if true, do not state a claim for sexual harassment. ... 15

3. In any event, Plaintiff's sexual harassment claim is time-barred and administratively unexhausted. ... 19

E. Plaintiff is Estopped from Avoiding the Binding Arbitration Agreement. ... 20

F. This Action Should Be Stayed Pending Arbitration. ... 22

V. CONCLUSION ... 22

# TABLE OF AUTHORITIES

**Cases**

*Alamo Heights Indep. Sch. Dist. v. Clark*,
544 S.W.3d 755 (Tex. 2018) .......... 16

*Amerigas USA, LLC v. Standard Cap. SA, Inc.*,
No. 3:21-CV-0072-B, 2021 WL 5052658 (N.D. Tex. Nov. 1, 2021).......... 8

*Armstrong v. Assoc. Int'l Holdings Corp.*,
242 Fed. App'x 955 (5th Cir. 2007) .......... 8

*Arnold v. Homeaway, Inc.*,
890 F.3d 546 (5th Cir. 2018) .......... 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).......... 7

*B.C. v. Steak N Shake Ops., Inc.*,
512 S.W.3d 276 (Tex. 2017) .......... 15

*Barrios v. AT&T Servs., Inc.*,
SA-24-CV-01075-FB, 2025 WL 1841254 (W.D. Tex. Jan. 7, 2025).......... 10

*Baudoin v. Mid-Louisiana Anesthesia Consults., Inc.,*
306 F. App'x 188 (5th Cir. 2009) .......... 13

*Brown v. Patel*,
No. 4:24-CV-05036, 2025 WL 1168282 (S.D. Tex. Apr. 22, 2025) .......... 17

*Elkjer v. Scheef & Stone, LLP*,
8 F. Supp. 3d 845 (N.D. Tex. 2014).......... 13

*Fuller v. CIG Fin., LLC*,
No. 3:22-CV-1289-D, 2023 WL 8850756 (N.D. Tex. Dec. 21, 2023), *aff'd sub nom.*, 2025 WL 570092 (5th Cir. Feb. 21, 2025) .......... 19

*Gallagher v. Vokey*,
860 F. App'x 354 (5th Cir. 2021) .......... 9

*Glazman v. Citigroup, Inc.*,
No. 8:26-CV-1522-TPB-AEP, 2026 WL 2253820 (M.D. Fla. Aug. 5, 2020).......... 15

*Grant v. Houser*,
469 F. App'x 310 (5th Cir. 2012) (per curiam) .......... 8

*Gross v. GGNSC Southaven, L.L.C.*,
817 F.3d 169 (5th Cir. 2016) .......... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019).......... 8

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002).......... 11

*Hunter v. Baylor Health Care Sys.*,
No. 3:18-CV-0881-N, 2019 WL 2995899 (N.D. Tex. July 9, 2019) ........ 8

*In re Dallas Peterbilt, Ltd., L.L.P.*,
196 S.W.3d 161 (Tex. 2006) ........ 10

*In re Halliburton Co.*,
80 S.W. 3d 566 (Tex. 2002) ........ 10, 11

*Jaster v. Comet II Constr., Inc.*,
438 S.W.3d 556 (Tex. 2014) ........ 18

*Kubala v. Supreme Prod. Servs.*,
830 F.3d 199 (5th Cir. 2016) ........ 9

*Lambert v. Leidos, Inc.*,
No. 4:24-CV-00911-P, 2025 WL 242247 (N.D. Tex. Jan. 16, 2025) ........ 9

*Lewis v. Circuit City Stores, Inc.*,
500 F.3d 1140 (10th Cir. 2007) ........ 20

*Lopez v. AT&T Mobility Servs. LLC*,
767 F. Supp. 3d 406 (W.D. Tex. 2025) ........ 16, 20

*Madison v. Niagara Bottling, LLC*,
No. H-25-5701, 2026 WL 1042477 (S.D. Tex. Apr. 17, 2026) ........ 15, 17

*Malin Intern. Ship Repair & Drydock, Inc. v. Oceanografia*,
817 F.3d 241 (5th Cir. 2016) ........ 21

*Mangum v. Ross Dress for Less, Inc.*,
777 F. Supp. 3d 519 (E.D.N.C. 2025) ........ 18

*Martin v. City of Fort Worth*,
No. 4:24-CV-00480-P, 2024 WL 4314988 (N.D. Tex. Sep. 26, 2024) ........ 9

*Martinez v. Bally's Louisiana, Inc.*,
244 F.3d 474 (5th Cir. 2001) ........ 10

*Matter of Amberson*,
54 F.4th 240 (5th Cir. 2022) ........ 8, 13

*Misrendino v. Schunk*,
No. 1:25-CV-01773-RP, 2026 WL 1763633 (W.D. Tex. June 15, 2026) ........ 18

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ........ 7

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
112 F.4th 74 (2d Cir. 2024) ........ 14

*Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*,
320 F.3d 362 (2d Cir. 2003) ........ 20

*Owens v. Dallas Cnty. Cmty. Coll. Dist.*,
No. 3:16-CV-3162-L, 2017 WL 3190727 (N.D. Tex. May 16, 2017), *report and recommendation adopted*, 2017 WL 3172748 (N.D. Tex. July 26, 2017) ........ 19

*Panchumarthi v. Tech Mahindra*,
No. 4:24-CV-01017-SDJ-BD, 2025 WL 3687142 (E.D. Tex. Dec. 15, 2025), *report and recommendation adopted*, 2026 WL 317747 (E.D. Tex. Feb. 4, 2026) .................................. 16

*Pennzoil Expl. & Prod. Co. v. Ramco Energy, Ltd.*,
139 F.3d 1061 (5th Cir. 1998) ........................................................................................ 13

*Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.*,
687 F.3d 671 (5th Cir. 2012) .........................................................................................11

*Rachal v. Reitz*,
403 S.W.3d 840 (Tex. 2013) ......................................................................................... 21

*Raupp v. Compass Grp. USA, Inc.*,
No. 24-10565, 2024 WL 4948838 (E.D. Mich. Dec. 3, 2024) ............................................... 18

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 62 (2010).......................................................................................................8, 11

*Russell v. Univ. of Tex. of Permian Basin*,
234 F. App'x 195 (5th Cir. 2007) (per curiam) .................................................................. 16

*Shaik v. Charles Schwab & Co. Inc.*,
No. 4:24-CV-00817-P, 2025 WL 750686 (N.D. Tex. Mar. 10, 2025)........................................ 9

*Slaney v. Int'l Amateur Athletic Fed'n*,
244 F.3d 580 (7th Cir. 2001) ......................................................................................... 20

*Smith v. Spizzirri*,
601 U.S. 472 (2024)......................................................................................................... 22

*Sosa v. MVM-Travel Youth Care*,
No. 3:25-CV-00147-KC, 2026 WL 2536530 (W.D. Tex. Aug. 10, 2026), *report and recommendation adopted as modified sub nom.*, 2026 WL 2538344 (W.D. Tex. Aug. 27, 2026) ......................................................................................................................... 20

*Soto v. El Paso Nat. Gas Co.*,
942 S.W.2d 671 (Tex. App. 1997)..................................................................................... 16

*Stephens v. DFW LinQ Transp., Inc.*,
No. 3:24-CV-00352-N, 2025 WL 1697537 (N.D. Tex. June 16, 2025)............................... 9, 17

*Su Ai v. Tencent Am. LLC*,
No. 26-CV-02498-NW, 2026 WL 2170875 (N.D. Cal. July 28, 2026).................................... 18

*Victory Cap. Mgmt., Inc. v. Bass*,
No. 04-23-00824-CV, 2025 WL 1452050 (Tex. App.—San Antonio May 21, 2025, no pet.) . 17

*Wright v. Ford Motor Co.*,
508 F.3d 263 (5th Cir. 2007) ......................................................................................... 18

**Statutes**

9 U.S.C. § 1, *et seq*.................................................................................................... 1, 7

9 U.S.C. § 2..................................................................................................................... 7

9 U.S.C. § 401(3) ... 15
9 U.S.C. § 401(4) ... 15, 20
9 U.S.C. § 402 ... 2, 14
9 U.S.C. § 402(a) ... 17
9 U.S.C. §§ 3, 4 ... 9
9 U.S.C. §§ 401-402 ... 2, 15
TEX. GOV'T CODE § 311.011(a) ... 18
TEX. LAB. CODE § 21.141(2) ... 15
TEX. LAB. CODE § 21.202 ... 19
TEX. LAB. CODE § 21.256 ... 19

**Other Authorities**

FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13201, *available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13200 ... 4
FINRA Rule 13200 of the Code of Arbitration Procedure for Industry Disputes, available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/13200 ... 1
Rule R-7(a), AAA Emplmt. Arb. Rules & Mediat. Proc., https://www.adr.org/sites/default/files/CommercialRules_Web.pdf ... 12

Defendants J.P. Morgan Securities, LLC ("JPMS"), JPMorgan Chase Bank, N.A., and J.P. Morgan Chase & Co. move under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") to compel pro se Plaintiff Joshua David Sappi Biering to arbitrate his claims under a binding arbitration agreement.

## I. INTRODUCTION

Plaintiff is a former JPMorgan Chase banker who was terminated in 2023 after an investigation found he violated the firm's code of conduct by sexually harassing a female subordinate. In his Complaint, Plaintiff claims that Defendants discriminated against him by treating him differently than other employees, including the woman he harassed. Plaintiff also alleges that Defendants violated the Family and Medical Leave Act ("FMLA"), discriminated against him because of his Brazilian ancestry, and did not accommodate his disabilities. While Defendants deny Plaintiff's allegations, his claims are governed by his agreement to arbitrate all employment-related claims. Plaintiff's claims belong in arbitration, not in court.

When Plaintiff accepted his employment offer in 2016, he agreed to arbitrate "all legally protected employment-related claims . . . that I now have or in the future may have against [Defendants] . . . which arise out of or relate to my employment or separation from employment with JPMorgan Chase." (App. 8-9, Ex. A-1, Offer Letter & Binding Arb. Agrmt.)[1] Plaintiff has twice invoked that Binding Arbitration Agreement to pursue these same claims, first in the dispute

[1] Plaintiff also agreed to arbitrate any non-statutory employment claim with JPMS in FINRA through his Form U4, which he was required to complete to apply for securities industry registration. (App. 28, Ex. B-1, FINRA Form U4.) FINRA members (including broker-dealer firms like JPMS) and their associated persons (such as Plaintiff) must arbitrate most business-related disputes before FINRA's dispute resolution forum. *See* FINRA Rule 13200 of the Code of Arbitration Procedure for Industry Disputes, available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/13200 (last accessed Aug. 28, 2026).

resolution forum of the Financial Industry Regulatory Authority ("FINRA") and recently in the American Arbitration Association ("AAA"). (Compl. ¶¶ 86, 87.)

Plaintiff does not deny agreeing to arbitrate these claims. He instead argues that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401-402 ("EFAA") allows him to avoid the Binding Arbitration Agreement. (Compl. ¶¶ 101-02.) But the EFAA—which allows *victims* of sexual assault and harassment to elect to bring arbitrable claims for sexual assault and sexual harassment in court—does not apply here. Plaintiff—the perpetrator of sexual harassment—is not "the person alleging conduct constituting a sexual harassment dispute," 9 U.S.C. § 402, and does not plausibly allege a claim for "sexual harassment" under the Texas Labor Code. The EFAA does not allow Plaintiff to avoid his agreement to arbitrate.

As shown below, an agreement to arbitrate exists, the agreement delegates scope questions to the Arbitrator, and Plaintiff cannot carry his burden of invoking the EFAA. The FAA mandates that Plaintiff arbitrate his claims.

## II. BACKGROUND

### A. From 2016 to 2023, Plaintiff Worked as a Chase Banker and Agreed to Arbitrate Employment-Related Disputes.

In February 2016, Plaintiff accepted employment as a banker by executing his employment offer letter. (App. 3-14, Ex. A-1; App. 266, Ex. D-1, Cl.'s Prot. Stmt. Cl. & Req. Stay Pending Jud. Det. ¶ 22 ("Claimant and Respondents are parties to a Binding Arbitration Agreement").) The offer letter attached the Binding Arbitration Agreement, which Plaintiff acknowledged was "a condition of my employment with JPMorgan Chase." (App. 8-9, Ex. A-1.)

The Binding Arbitration Agreement requires arbitration of "[a]ny and all 'Covered Claims'" between Plaintiff and "JPMorgan Chase," defined as "JPMorgan Chase & Co. and all of

its direct and indirect subsidiaries." (App. 9, Ex. A-1; App. 238, Ex. C-3).[2] "Covered Claims" include "all legally protected employment-related claims . . . which arise out of or relate to my employment or separation from employment with JPMorgan Chase." (App. 9, Ex. A-1 ¶ 2.) Examples include "claims of employment discrimination or harassment if protected by applicable federal, state or local law," "tortious acts," "wrongful, retaliatory and/or constructive discharge," "breach of express or implied contract, promissory estoppel, unjust enrichment," and "violations of any other common law, federal, state or local statute, ordinance, regulation or public policy, including, but not limited to . . . the Family Medical Leave Act of 1993[.]" (App. 9, Ex. A-1 ¶ 2.)

**B. In December 2023, Chase Terminated Plaintiff for Sexual Misconduct.**

On December 1, 2023, Chase terminated Plaintiff's employment after an investigation determined that Plaintiff had violated its anti-harassment policy through "a very serious allegation of sexual assault." (Compl. ¶¶ 67, 83.) JPMS reported Plaintiff's termination on his FINRA Form U5 as "Discharged," explaining that Plaintiff "was terminated for inappropriate behavior. Not related to the sale of securities or any customer complaints." (*Id.* ¶ 82; App. 31, Ex. B-2, FINRA U5.)

**C. In February 2024, Plaintiff Filed Administrative Charge of Discrimination.**

On February 25, 2024, Plaintiff filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"). (Compl. ¶ 85.)

[2] J.P. Morgan Securities, LLC and JPMorgan Chase Bank, N.A. are subsidiaries of J.P. Morgan Chase & Co. [*See* ECF No. 13.]

**D. In June 2024, Plaintiff Invoked the Binding Arbitration Agreement and Sought Relief against Defendants in FINRA.**

On June 3, 2024, Plaintiff filed a Statement of Claim against JPMS in FINRA, claiming that JPMS had improperly reported his termination on his Form U5 and asserting various tort claims, including "Sex Discrimination." (Compl. ¶ 86; App. 37-141, Ex. C-1, FINRA Stmt. Cl. ¶¶ 75-145.) Plaintiff amended his Statement of Claim two months later to add Chase and JPMorgan—both non-FINRA-registered entities—as respondents. (App. 142-237, Ex. C-2, FINRA First Am. Stmt. Cl.) Plaintiff's lawyer represented to FINRA that the Binding Arbitration Agreement was "the Arbitration Agreement compelling arbitration for newly added parties J.P. Morgan Chase & Co. and JPMorgan Chase Bank, N.A." (App. 238, Ex. C-3, Iacuone Letter, Sep. 4, 2024.)

The FINRA panel did not adjudicate Plaintiff's claims against Chase and JPMorgan because it lacked jurisdiction over those non-FINRA-member entities and did not adjudicate Plaintiff's statutory employment claims against any respondent because those claims were not arbitrable in FINRA. (Compl. ¶¶ 9, 86; App. 252, Ex. C-4, FINRA Award); FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13201, *available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13200 ("A claim alleging employment discrimination in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.") (last accessed Sep. 14, 2026). This left FINRA-member JPMS as the only proper respondent in the FINRA arbitration.

All claims, except Plaintiff's statutory employment claims, were tried before a three-member FINRA panel. On December 29, 2025, after a multi-day evidentiary hearing, the FINRA panel entered its Award, ordering expungement of Plaintiff's Form U5 but denying the rest of Plaintiff's claims "in their entirety." (Compl. ¶ 87; App. 252, Ex. C-4.)

**D. In February 2026, Plaintiff Asserted *Pro Se* Employment-Related Claims against Defendants in AAA Arbitration.**

On February 10, 2026, Plaintiff filed a Demand for Arbitration in AAA against Defendants in what he characterized as "a necessary protective measure to preserve Claimant's statutory and tort claims—and to toll the statute of limitations" on his claims. (Compl. ¶ 87; App. 261, Ex. D-1 ¶ 1.) In AAA, Plaintiff asserts claims against Defendants for "Statutory Discrimination and Retaliation" under the Texas Commission on Human Rights Act, defamation, business disparagement, tortious interference with business relations, unfair competition, wrongful discharge, "Weaponization of U5," breach of contract, promissory estoppel, quantum meruit, "Illegal Forfeiture of Earned Compensation," "Forfeiture of Deferred Compensation," and "Violation of Texas and/or New York Labor and Wage Laws." (App. 267-268, Ex. D-1 § VI.) Plaintiff also asserts "[f]ederal statutory claims . . . protectively and, in the alternative, only[.]" (App. 268, Ex. D-1 ¶ 31.)

In his AAA filing, Plaintiff asserted that he "has always conceded to and intended to arbitrate all claims against all Respondents in a single, efficient forum." (App. 261, Ex. D-1 ¶ 3.) "Indeed," Plaintiff continued, "Claimant's June 3, 2024, Original Statement of Claim in FINRA asserted 14 causes of action against all three entities defined as 'the Firm' under the Binding Arbitration Agreement ('BAA')." (App. 261, Ex. D-1 ¶ 3.) As plaintiff maintained, "Claimants and Respondents are parties to a Binding Arbitration Agreement ('BAA'), attached as Exhibit A, which defines 'JPMorgan Chase and the Firm' to include JPMC and its direct and indirect subsidiaries" and that "[a]ll three entities are proper Respondents" in AAA. (App. 265, Ex. D-1 ¶ 20.) At Plaintiff's request, the AAA Arbitration is currently in administrative abeyance. (Compl. ¶¶ 96, 107.)

### E. Plaintiff Filed a Vacatur Action Challenging the FINRA Award.

A month and a half after initiating AAA arbitration, Plaintiff filed a vacatur action in the Northern District of Texas. *See* Ver. Pet., ECF No. 1, *Biering v. J.P. Morgan Sec., LLC, et al.*, No. 4:26-CV-00381-O-BP (N.D. Tex. Mar. 30, 2026). In that case, Plaintiff asked the court to partially confirm, partially modify, and partially vacate the FINRA Award, but again acknowledged his Binding Arbitration Agreement with all three Defendants that "requires" arbitration of "Covered Claims" in "a single, final, and binding arbitration." Am. Ver. Pet. at 4, ECF No. 11, *Biering v. J.P. Morgan Sec., LLC*, No. 4:26-CV-00381-O-BP (N.D. Tex. April 13, 2026). JPMS did not oppose the confirmation of the FINRA Award, but opposed Plaintiff's other requested relief. *See* Resp. Opp. Am. Ver. Pet., ECF No. 41, *Biering v. J.P. Morgan Sec., LLC*, No. 4:26-CV-00381-O-BP (N.D. Tex. May 26, 2026).

On July 14, 2026, Magistrate Judge Ray recommended that the court confirm the FINRA Award but deny the other relief that Plaintiff sought. *See* Recom., ECF No. 51, *Biering v. J.P. Morgan Sec., LLC*, No. 4:26-CV-00381-O-BP (N.D. Tex. July 14, 2026). Plaintiff objected to the Magistrate Judge's recommendation on nine grounds. *See* Pet'r's Obj., ECF No. 53, *Biering v. J.P. Morgan Sec.*, No. 4:26-CV-00381-O-BP (N.D. Tex. July 28, 2026). On July 31, 2026, Chief Judge O'Connor accepted the recommendation, confirmed the FINRA Award, and denied the rest of Plaintiff's petition. *See* Order, ECF No. 54, *Biering v. J.P. Morgan Sec., LLC*, No. 4:26-CV-00381-O-BP (N.D. Tex. July 31, 2026). Plaintiff is challenging Chief Judge O'Connor's ruling. *See, e.g.*, Mot. Alter J., ECF No. 56, *Biering v. J.P. Morgan Sec., LLC*, No. 4:26-CV-00381-O-BP (N.D. Tex. Aug. 5, 2026).

### F. Plaintiff Filed this Complaint after Chief Judge O'Connor's Ruling.

On August 3, 2026, three days after Judge O'Connor's ruling on his vacatur petition, Plaintiff filed this action. Plaintiff asserts 13 causes of action related to his employment and

termination: declaratory relief under the EFAA, sex discrimination under TEXAS LABOR CODE § 21.051; sexual harassment and hostile work environment under TEXAS LABOR CODE §§ 21.051, 21.141-.032; national origin discrimination under TEXAS LABOR CODE § 21.051; disability discrimination under TEXAS LABOR CODE § 21.051; failure to accommodate under TEXAS LABOR CODE §§ 21.051, 21.128; retaliation under TEXAS LABOR CODE § 21.055; FMLA interference under 29 U.S.C.§§ 2615(a)(1), 2617; Family and Medical Leave Act retaliation under 29 U.S.C. §§ 2615(a)(2), 2617; tortious interference with prospective business relations; fraud and fraudulent nondisclosure; breach of contract and quantum meruit; and civil conspiracy.

In his Complaint, Plaintiff recognizes the Binding Arbitration Agreement but contends that he is not required to arbitrate because his Complaint "relates to a sexual-harassment dispute within the meaning of" the EFAA. (Compl. ¶¶ 1, 101.)

## III. APPLICABLE LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind.").[3] With a valid arbitration clause, the court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation modified). Courts resolve doubts in favor of coverage. *Id.*

As movants, Defendants have the initial burden of proving an arbitrable dispute by showing (1) "a valid agreement to arbitrate between the parties" and (2) "the dispute in question falls within

[3] Unless otherwise noted, all internal citations and quotation marks are omitted.

the scope of that arbitration agreement." *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (citation modified). To fall with an arbitration agreement's scope, "a party's allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *Matter of Amberson*, 54 F.4th 240, 266 (5th Cir. 2022). Defendants must make this showing by the preponderance of the evidence. *See Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam). Courts may look beyond the pleadings and motion papers to evidence submitted by the parties. *See Armstrong v. Assoc. Int'l Holdings Corp.*, 242 Fed. App'x 955, 959 (5th Cir. 2007). "To determine if evidence in support of a motion to compel arbitration is admissible, courts apply a similar standard as that applied to a motion for summary judgment." *Amerigas USA, LLC v. Standard Cap. SA, Inc.*, No. 3:21-CV-0072-B, 2021 WL 5052658, at *2 (N.D. Tex. Nov. 1, 2021).

While "[t]he Court ordinarily determines whether an arbitration agreement covers the claims at issue," that process is different "when an arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim[.]" *Hunter v. Baylor Health Care Sys.*, No. 3:18-CV-0881-N, 2019 WL 2995899, at *3 (N.D. Tex. July 9, 2019) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 62, 76 (2010)). The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). If the parties have so delegated, "a court possesses no power to decide the arbitrability issue . . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 68. As the Fifth Circuit has explained, "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it

evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016). And " [i]f there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* ("[A] valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.").

Once Defendants make their showing, the burden shifts to Plaintiff "to show why the agreement should not be enforced." *Martin v. City of Fort Worth*, No. 4:24-CV-00480-P, 2024 WL 4314988, at *1 (N.D. Tex. Sep. 26, 2024). After the movant produces "competent evidence showing the formation of an agreement to arbitrate . . . [the] party resisting arbitration [must] produce *some* contrary evidence to put the matter 'in issue.'" *Lambert v. Leidos, Inc.*, No. 4:24-CV-00911-P, 2025 WL 242247, at *2 (N.D. Tex. Jan. 16, 2025) (quoting *Gallagher v. Vokey*, 860 F. App'x 354, 357-58 (5th Cir. 2021)). Plaintiff has the burden of showing that he is entitled to elect to avoid arbitration under the EFAA. *See Stephens v. DFW LinQ Transp., Inc.*, No. 3:24-CV-00352-N, 2025 WL 1697537, at *4 (N.D. Tex. June 16, 2025).

If the dispute is arbitrable, "the court has no discretion to deny a motion to compel arbitration." *Shaik v. Charles Schwab & Co. Inc.*, No. 4:24-CV-00817-P, 2025 WL 750686, at *1 (N.D. Tex. Mar. 10, 2025); *see also* 9 U.S.C. §§ 3, 4.

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiff Formed an Agreement to Arbitrate with Defendants.

When determining the existence of an agreement to arbitrate, federal courts "apply ordinary state-law principles that govern the formation of contracts." *Lambert*, 2025 WL 242247, at *2. In Texas, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *Barrios v. AT&T Servs., Inc.*, SA-24-CV-01075-FB, 2025 WL 1841254, at *3 (W.D.

Tex. Jan. 7, 2025) (citing *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006)). An employee's continued employment constitutes acceptance of an arbitration agreement, even without a signature. *See In re Halliburton Co.*, 80 S.W. 3d 566, 572-73 (Tex. 2002) (ruling that employee accepted arbitration provision by continuing employment).

There is no genuine dispute that Defendants have shown an agreement to arbitrate. Plaintiff has alleged in federal pleadings that he "executed the Binding Arbitration Agreement ('BAA') and is a 'Covered Party' as defined therein." *See* Am. Pet. ¶ 3, ECF No. 11, *Biering v. J.P. Morgan Sec., LLC*, No. 4:26-CV-00381-O-BP (N.D. Tex. Apr. 13, 2026).[4] Plaintiff's counsel had also submitted the Binding Arbitration Agreement in FINRA, asserting that it is "the Arbitration Agreement compelling arbitration for newly added parties J.P. Morgan Chase & Co. and JPMorgan Chase Bank, N.A." (App. 238-249, Ex. C-3.) Each of these statements is a binding judicial admission on formation. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them.").

Aside from his judicial admissions, Plaintiff manifested his assent to the Binding Arbitration Agreement in at least two other ways. *First*, Plaintiff electronically signed the Binding Arbitration Agreement when he accepted his employment offer. (App. 8-9, Ex. A-1 ("employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement detailed below") ("By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a

---

[4] Biering separately agreed to arbitrate non-statutory employment claims against FINRA-member JPMS in FINRA. (App. 28, Ex. B-1, FINRA Form U4.)

condition of my employment with JPMorgan Chase.”).) Plaintiff has never challenged his signature on his employment offer or the Binding Arbitration Agreement.

*Second*, Plaintiff manifested assent by continuing to work for Chase for nearly eight years after being presented with the Binding Arbitration Agreement as a condition of his employment. *See In re Halliburton*, 80 S.W. 3d at 572-73. And *third*, Plaintiff manifested assent by expressly invoking the Binding Arbitration Agreement to assert substantially identical claims against Defendants in arbitration. (App. 37-141, Ex. C-1; App. 142-237, Ex. C-2; App. 238-249, Ex. C-3.)

Defendants have thus carried their burden of proving formation of an agreement to arbitrate by a preponderance of the evidence.

**B. The Binding Arbitration Agreement Delegates Questions of Scope and Enforceability to the Arbitrator.**

The Supreme Court recognizes that “parties can agree to arbitrate ‘gateway questions of arbitrability,’ such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.” *Rent-A-Ctr.*, 561 U.S. at 68-69. To do so, the agreement must “clearly and unmistakably” express an intent to arbitrate gateway questions of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Courts consistently hold that incorporating AAA rules “presents clear and unmistakable evidence” that the parties agreed to delegate arbitrability. *Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

The Binding Arbitration Agreement delegates any questions of scope or enforceability (other than determinations under the EFAA) to the Arbitrator by incorporating AAA Rules. The Binding Arbitration Agreement provides:

> Arbitration under this Agreement shall be conducted before a single neutral arbitrator of the American Arbitration Association (‘AAA’) (unless the Parties agree upon another mutually acceptable arbitrator, in which case the **arbitration will be conducted** before such mutually acceptable arbitrator) **in accordance with** and selected pursuant to **the rules and procedures of the Employment Arbitration**

> **Rules of the AAA ('AAA Rules')** to the extent the AAA Rules do not conflict with the terms of this Agreement or applicable law.

(App. 10-11, Ex. A-1 ¶ 6 (emphasis added). AAA Rules, in turn, make clear that questions of scope and arbitrability are for the arbitrator. *See* Rule R-7(a), AAA Emplmt. Arb. Rules & Mediat. Proc., https://www.adr.org/sites/default/files/CommercialRules_Web.pdf ("The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.") (last accessed Sep. 8, 2026). Thus, once the Court finds an agreement to arbitrate between Plaintiff and Defendants and the EFAA does not preclude enforcement, the Court should compel these claims to arbitration. *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018) ("an agreement to arbitrate under the AAA rules constitutes express incorporation of those rules, which constitutes clear and unmistakable evidence of the parties' intent" to delegate arbitrability to arbitrator).

**C. In any Event, Plaintiff's Claims Are within the Scope of the Binding Arbitration Agreement.**

Faced with a valid arbitration agreement and a delegation provision, the Court should not proceed further into the question of scope. But even if the Court were to consider that question, it would have no choice but to conclude that Plaintiffs' claims against Chase fall squarely within the scope of the Binding Arbitration Agreement.

Plaintiff agreed to arbitrate "any and all legally protected employment-related claims . . . which arise out of or relate to my employment or separation from employment with JPMorgan Chase," including statutory employment claims, related tort claims, and breach of contract and quasi-contract claims. (App. 9; Ex. A-1 ¶ 2.) "JPMorgan Chase" encompasses all three Defendants. (App. 9, Ex. A-1.) Plaintiff even asserted in his previous federal court action that "the Binding Arbitration Agreement ('BAA') defines 'JPMorgan Chase' and 'the Firm' to include JPMC and all

direct and indirect subsidiaries as 'Covered Parties' and mandates a single, final, and binding arbitration of all 'Covered Claims.'" Am. Ver. Pet. at 4, ECF No. 11, *Biering v. J.P. Morgan Sec., LLC* (N.D. Tex. Apr. 13, 2026). Plaintiff cannot dispute that his claims— "statutory employment claims and related Texas tort and contract claims"—are "Covered Claims" within the Binding Arbitration Agreement's scope. (Compl. ¶ 1.)

Arbitration agreements with language like this are "broad" in scope and are "not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy, Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998); *see also Baudoin v. Mid-Louisiana Anesthesia Consults., Inc.,* 306 F. App'x 188, 192 (5th Cir. 2009) (recognizing that "broad arbitration clauses are those where the language of the clause requires arbitration of any dispute that arises out of or relates to 'the agreement, or disputes that are "in connection with" the agreement.'"). In deciding scope, a court "looks to the factual allegations of the complaint, not the legal causes of action." *Elkjer v. Scheef & Stone, LLP*, 8 F. Supp. 3d 845, 854 (N.D. Tex. 2014). As the Fifth Circuit has recognized, "Texas courts are to find that a claim falls within the scope of the arbitration agreement *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *Matter of Amberson*, 54 F.4th at 266.

Plaintiff's claims are "employment-related claims . . . against JPMorgan Chase . . . which arise out of or relate to [his] employment or separation from employment with JPMorgan Chase" and within the Binding Arbitration Agreement's broad scope. (App. 9, Ex. A-1 ¶2) Plaintiff's allegations and claims arise out of his employment and termination. Plaintiff concedes scope by having filed *these same claims* for adjudication in FINRA and AAA under the Binding Arbitration

Agreement. (*See* Compl. ¶ 4 ("The original [FINRA] pleading included statutory employment-discrimination, harassment, retaliation, leave-related, tort, and contractual claims arising from Plaintiff's employment, termination, and Form U5."). Indeed, his counsel submitted the Binding Arbitration Agreement to FINRA, identifying it as "the Arbitration Agreement compelling arbitration for newly added parties J.P. Morgan Chase & Co. and JPMorgan Chase Bank, N.A." (App. 238-249, Ex. C-3.) In his AAA demand for arbitration, Plaintiff also identifies the Binding Arbitration Agreement as "the applicable arbitration agreement." (App. 263, 265, Ex. D-1 ¶¶ 9, 20.) Plaintiff's claims arise out of his employment, are within the scope of the Binding Arbitration Agreement, and must be submitted to arbitration.

**D. The EFAA Does Not Allow Plaintiff to Avoid Arbitration.**

Plaintiff incorrectly argues that he is not required to arbitrate his claims because "[t]his case is filed under federal and state law and relates to a sexual-harassment dispute within the meaning of 9 U.S.C. 401(4)." (Compl. ¶ 101.) The EFAA simply does not apply here.

**1. The EFAA requires a plausible claim of sexual assault or sexual harassment.**

Enacted in 2022, the EFAA amends the FAA and exempts allegations of sexual assault and sexual harassment from mandatory arbitration:

> [A]t the election of **the person alleging** conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual **assault** dispute or the sexual **harassment** dispute.

9 U.S.C. § 402 (emphasis added). The EFAA was intended to "render[] arbitration agreements invalid and unenforceable, at the election of the complainant, in sexual assault and sexual harassment cases." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 77 (2d Cir. 2024); *see also* 9 U.S.C. § 402. Whether the EFAA applies "shall be determined by a court, rather than an arbitrator." 9 U.S.C. § 402(b).

Under the EFAA, a "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment *under applicable Federal, Tribal, or State law*." 9 U.S.C. §§ 401(4) (emphasis added), 402(a).[5] "[A] majority of district courts to have addressed the issue have held that the EFAA's exclusion of sexual harassment claims from arbitration applies only when the plaintiff states a plausible claim of sexual harassment, which requires that the claim be capable of surviving a Rule 12(b)(6) motion." *Glazman v. Citigroup, Inc.*, No. 8:26-CV-1522-TPB-AEP, 2026 WL 2253820, at *3 (M.D. Fla. Aug. 5, 2020); *see also Madison v. Niagara Bottling, LLC*, No. H-25-5701, 2026 WL 1042477, at *2 (S.D. Tex. Apr. 17, 2026) ("Courts must first review whether the plaintiff adequately alleged a claim within the scope of the EFAA before denying a motion to compel arbitration.").

**2. Plaintiff's allegations, if true, do not state a claim for sexual harassment.**

While Count III is labeled as a claim for "Sexual Harassment and Hostile Work Environment" under TEXAS LABOR CODE § 21.051 and § 21.141 and -.142, Plaintiff cannot invoke the EFAA by simply attaching the label "sexual harassment" to his claim. *See B.C. v. Steak N Shake Ops., Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) ("The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled[.]"). Even if Plaintiff's allegations were true, Plaintiff does not plead a claim for sexual harassment "under applicable . . . State law." 9 U.S.C. § 401(4).

The Texas Labor Code defines "sexual harassment" as "an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature." *See* TEX. LAB. CODE § 21.141(2). A sexual harassment claim in Texas can either be one for quid pro quo or for a hostile work environment. *See Soto v. El Paso Nat. Gas Co.*, 942 S.W.2d 671, 677 (Tex. App.

[5] The EFAA defines "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact." 9 U.S.C. § 401(3). Plaintiff does not contend that this is a sexual assault dispute.

1997). Quid pro quo requires a plaintiff to allege that he or she suffered a tangible employment action that resulted from his or her acceptance or rejection of a supervisor's sexual advances. *See Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 201 (5th Cir. 2007) (per curiam). A hostile work environment requires that the sexual harassment be sufficiently severe or pervasive to alter the conditions of employment and create a hostile or abusive work environment. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 806 (Tex. 2018).

Plaintiff does not allege being subject to any conduct of a sexual nature, necessary for a sexual harassment claim, but confuses harassment with discrimination. *See Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 425 (W.D. Tex. 2025) ("The former involves unwelcome sexual advances or other verbal or physical conduct of a sexual nature, whereas the latter refers to discriminating against someone because of their protected characteristic.") (citation modified). The Eastern District's decision in *Panchumarthi v. Tech Mahindra* highlights the distinction between harassment and discrimination. No. 4:24-CV-01017-SDJ-BD, 2025 WL 3687142 (E.D. Tex. Dec. 15, 2025), *report and recommendation adopted*, 2026 WL 317747 (E.D. Tex. Feb. 4, 2026).

Panchumarthi sued her former employer for wrongful termination and sought to avoid arbitration under the EFAA. The court, however, rejected her argument because the EFAA "applies only to sexual-assault and sexual-harassment claims." *Panchumarthi*, 2025 WL 3687142, at *2. Recognizing that "sexual harassment is conceptually distinct from sex discrimination," the court ruled that Panchumarthi had not alleged a sexual harassment claim. *Id.* The court explained that "Panchumarthi alleges that she was fired because of her sex and age so that she could be replaced with a younger man." *Id.* at *3. "If true," the court continued, "that could constitute sex and age discrimination," but "not [ ] sexual harassment, so EFAA does not apply." *Id.*

That same reasoning applies here because Plaintiff does not allege a sexual harassment claim under "applicable . . . State law," *i.e.*, Texas law. Plaintiff alleges that he "was subjected to unwelcome harassment consisting of the false sexualized characterization of his conduct" and that he was accused of "predatory sexual misconduct" and that his female accuser "was not so characterized, investigated, or disciplined." (Compl. ¶¶ 118-19.) Aside from the absurdity of complaining that he was harassed because his victim was not disciplined, this at best would allege sex *discrimination*, not sexual *harassment*. *See Madison*, 2026 WL 1042477, at *2 ("Importantly, federal and state discrimination law distinguishes claims of sexual harassment from claims of sex discrimination."); *Stephens*, 2025 WL 1697537, at *4 ("[B]ecause Stephens has not pled facts supporting a sexual assault or sexual harassment claim, EFAA does not apply to this dispute."); *Brown v. Patel*, No. 4:24-CV-05036, 2025 WL 1168282, at *3 (S.D. Tex. Apr. 22, 2025) (rejecting EFAA argument when plaintiff "has not alleged any conduct constituting sexual harassment—only sex discrimination"). The EFAA simply does not apply here. *See Victory Cap. Mgmt., Inc. v. Bass*, No. 04-23-00824-CV, 2025 WL 1452050, at *6 (Tex. App.—San Antonio May 21, 2025, no pet.) (mem. op.) ("Even though Bass alleged she was subjected to a hostile work environment, none of her allegations are 'sexual in nature' nor does she allege she was subjected to 'sexual harassment' as it is defined in the caselaw or the Texas Labor Code.").

A contrary ruling would rewrite the EFAA. The statute requires that a plaintiff allege "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 402(a). If these allegations passed as a sexual harassment claim and allowed Plaintiff to evade his arbitration agreement, then a plaintiff in any employment dispute could avoid arbitration in any employment case by merely labeling a claim as one for sexual harassment, regardless of its content and whether it stated a claim. *See Su Ai v. Tencent Am. LLC*, No. 26-CV-

02498-NW, 2026 WL 2170875, at *4 (N.D. Cal. July 28, 2026) ("[R]eading the EFAA to void arbitration agreements even where a plaintiff cannot plausibly plead a claim for sexual harassment could incentivize the bringing of facially unsustainable claims as a mechanism to evade otherwise binding arbitration agreements."); *Mangum v. Ross Dress for Less, Inc.*, 777 F. Supp. 3d 519, 528 (E.D.N.C. 2025) ("allowing implausibly alleged claims to defeat arbitration agreements would affront Congress's intent").

To be sure, no authority supports Plaintiff's argument that he may invoke the EFAA by arguing that the allegations *against him* amount to the required "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *See Raupp v. Compass Grp. USA, Inc.*, No. 24-10565, 2024 WL 4948838, at *2 (E.D. Mich. Dec. 3, 2024) ("To the extent Plaintiff argues that he may elect to invalidate the arbitration agreement because of the sexual harassment accusation against *him*, the Court disagrees."); *see also Misrendino v. Schunk*, No. 1:25-CV-01773-RP, 2026 WL 1763633, at *3 (W.D. Tex. June 15, 2026) (report and recommendation) (citing *Raupp*, "[b]ecause [Defendant] alleged sexual assault, Plaintiffs cannot invoke the EFAA to invalidate the arbitration clause").

Applying the EFAA here would also expand the Texas Labor Code by conflating sex discrimination claims with sexual harassment claims, contrary to Texas law. *See* TEX. GOV'T CODE § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage[.]"); *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) ("We must enforce the statute as written and refrain from rewriting text that lawmakers chose."); *Wright v. Ford Motor Co.,* 508 F.3d 263, 269 (5th Cir. 2007) ("When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute."). For instance, a claim of sexual

harassment must be filed with the Texas Workforce Commission within 300 days of the harassment, while a claim for sex discrimination has a shorter 180-day limitations period. *See* TEX. LAB. CODE § 21.202. Blurring the distinction between the claims would effectively eliminate the difference in these limitations period, contrary to the Texas Legislature's intent.

**3. In any event, Plaintiff's sexual harassment claim is time-barred and administratively unexhausted.**

Even if Plaintiff did allege sexual harassment, it would be untimely. Claims under the Chapter 21 of the Texas Labor Code (also known as the Texas Human Rights Commission Act ("TCHRA") must be filed within two years of the filing of an administrative charge of discrimination with the EEOC or TWC. *See* TEX. LAB. CODE § 21.256; *Owens v. Dallas Cnty. Cmty. Coll. Dist.*, No. 3:16-CV-3162-L, 2017 WL 3190727, at *4 (N.D. Tex. May 16, 2017), *report and recommendation adopted*, 2017 WL 3172748 (N.D. Tex. July 26, 2017) (dismissing claims under Rule 12(b)(6)). Plaintiff filed his EEOC charge on February 25, 2024. (Compl. ¶ 85.) But he waited over two years, until August 2026, to file this lawsuit. Plaintiff's sexual harassment claims is time barred. *See Owens*, 2017 WL 3190727, at *4 ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred").[6]

The claim would also fail under Rule 12(b)(6) for failure to exhaust. The TCHRA requires a plaintiff to exhaust administrative remedies by filing a timely charge of discrimination with the EEOC or the TWC. *See Owens*, 2017 WL 3190727, at *4. A charge does not exhaust a claim without facts describing the harassment toward the charging party. *See Lopez v. AT&T Mobility*

[6] Plaintiff's AAA demand did not toll this limitations period (Compl. ¶ 96), as "a demand for arbitration does not toll the statute of limitations." *Fuller v. CIG Fin., LLC*, No. 3:22-CV-1289-D, 2023 WL 8850756, at *4 (N.D. Tex. Dec. 21, 2023), *aff'd sub nom.*, 2025 WL 570092 (5th Cir. Feb. 21, 2025). Plaintiff "invokes" several tolling doctrines but pleads no facts supporting any of them. (*See* Compl. ¶ 95.)

*Serv. LLC*, 767 F. Supp. 3d 406, 423 (W.D. Tex. 2025). Plaintiff's charge did not allege any facts remotely suggesting sexual harassment toward Plaintiff. (App. 259-260, Ex. C-5, Pl.'s EEOC Charge.) Thus, Count III is not exhausted. *See Sosa v. MVM-Travel Youth Care*, No. 3:25-CV-00147-KC, 2026 WL 2536530, at *6 (W.D. Tex. Aug. 10, 2026), *report and recommendation adopted as modified sub nom.*, 2026 WL 2538344 (W.D. Tex. Aug. 27, 2026) (dismissing *pro se* harassment/hostile-work-environment claim for failure to exhaust).

Thus, for each of these reasons, Plaintiff cannot elect to avoid arbitration under the EFAA because he does not adequately allege a "sexual harassment dispute" under State law. 9 U.S.C. § 401(4).

**E. Plaintiff is Estopped from Avoiding the Binding Arbitration Agreement.**

Even if Plaintiff could invoke the EFAA, which he cannot, Plaintiff has either waived that argument or he is estopped from avoiding arbitration because he has invoked the Binding Arbitration Agreement to pursue these claims to a Final Award in FINRA arbitration with full knowledge of the facts and to obtain direct benefits. *See Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) ("[I]t is clear that our usual rules regarding waiver and estoppel apply to prevent a party from complaining about the enforceability of an arbitration agreement if he already has fully participated in arbitration without any relevant objection."). Equity does not permit Plaintiff to try his hand at arbitration, and after seeing how it would turn out, refuse his obligations under the Binding Arbitration Agreement. *See Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.,* 320 F.3d 362, 368 (2d Cir. 2003) ("[I]f a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration."); *Slaney v. Int'l Amateur Athletic Fed'n,* 244 F.3d 580, 591 (7th Cir. 2001) ("Slaney could not sit back and allow the arbitration to go forward, and only after it was all done . . . say: oh by the way, we never

agreed to the arbitration clause. That is a tactic that the law of arbitration, with its commitment to speed, will not tolerate.") (quotation omitted).

Plaintiff has sought to benefit from the Binding Arbitration Agreement and may not now disavow his obligation to arbitrate these claims. Plaintiff asserted his claims in FINRA—including one for "Sex Discrimination" based on these same allegations—insisting that these claims are subject to the Binding Arbitration Agreement. (App. 171-172, Ex. C-2, FINRA First Am. Stmt. Cl. ¶ 123 (alleging that "JPM discriminated against Biering because of his sex in connection with the terms, conditions, and privileges of his employment."); *see also* App. 261, Ex. D-1 ¶ 3 ("Claimant's June 3, 2024, Original Statement of Claim in FINRA asserted 14 causes of action against all three entities defined as 'the Firm' under the Binding Arbitration Agreement ('BAA')."). Plaintiff's lawyer submitted the Binding Arbitration Agreement to FINRA as "the Arbitration Agreement compelling arbitration for newly added parties J.P. Morgan Chase & Co. and JPMorgan Chase Bank, N.A." in FINRA, with full knowledge of these same allegations and without reserving any objection to arbitration under the EFAA. (App. 238-249, Ex. C-3.) Plaintiff continues to recognize his Binding Arbitration Agreement in this Court, asserting that he "submitted the dispute to arbitration *as the Binding Arbitration Agreement required*," but simply contends that he "does not consent to remand to a second arbitral forum." (Compl. ¶ 92 (emphasis added).)

Having sought to enforce the Binding Arbitration Agreement, Plaintiff may not disavow it. *Cf. Malin Intern. Ship Repair & Drydock, Inc. v. Oceanografia*, 817 F.3d 241, 250 (5th Cir. 2016) ("[I]f a party acts in a manner that recognizes the validity of a contract with full knowledge of the material terms of the contract, the party has ratified the contract and may not later withdraw its ratification and seek to avoid the contract."); *Rachal v. Reitz*, 403 S.W.3d 840, 847 (Tex. 2013) (recognizing that plaintiff could not seek to benefit from trust but avoid its arbitration terms). The

agreement, not Plaintiff's shifting preferences, controls. Having sought to enforce the Binding Arbitration Agreement, Plaintiff is estopped from refusing to comply with it now.

**F. This Action Should Be Stayed Pending Arbitration.**

The FAA provides that the Court "upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration . . . *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3 (emphasis added). The Court should thus stay all further proceedings until the parties complete arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-79 (2024).

## V. CONCLUSION

Plaintiff concedes that he agreed to arbitrate his claims, which fall within the Binding Arbitration Agreement's broad scope. Plaintiff cannot now avoid his agreement by improperly invoking the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act by simply pleading a "sexual harassment" claim that alleges no sexual harassment. The Court should grant this Motion, compel Plaintiff to arbitrate his claims in the American Arbitration Association, stay this action pending arbitration, and grant Defendants all other relief to which they are entitled.

Dated: September 18, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Christopher S. Dodrill*
Christopher S. Dodrill
Texas Bar No. 24110696
christopher.dodrill@gtlaw.com
Elizabeth A. Bones
Texas Bar No. 24074026
beth.bones@gtlaw.com
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 665-3600
Fax: (214) 665-3601

Jennifer Tomsen
Texas Bar No. 24064535
tomsenj@gtlaw.com
1000 Louisiana Street, Suite 6700,
Houston, TX 77002
Telephone: (713) 374-3610
Fax: (713) 374-3505

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF CONFERENCE

I certify that on August 11, 2026, I conferred with Plaintiff regarding relief requested in this Motion. Plaintiff is opposed.

/s/ *Elizabeth A. Bones*
Elizabeth A. Bones

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, a true and correct copy of the foregoing document was electronically filed with the Court's CM/ECF system, which will electronically serve the *pro se* Plaintiff.

/s/ *Christopher S. Dodrill*
Christopher S. Dodrill