**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| | § | **Case No.** 4:26-cv-00950-P-BJ |
| Plaintiff, *Pro Se*, | § | |
| v. | § | Related Case No. 4:26-cv-00381-O |
| | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE BANK, N.A.,** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE & CO., AND** | § | AAA Case No. 01-26-0000-7215 |
| **J.P. MORGAN SECURITIES LLC,** | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS (DKT. 41)**

**TABLE OF CONTENTS**


I. INTRODUCTION AND SEQUENCING....................1

II. STANDARD....................1

III. COUNTS II–X ARE NOT SUBJECT TO DISMISSAL ON LIMITATIONS....................2

A. The Pleaded Chronology and FINRA Rule 13206(c)....................2

B. TCHRA Counts II–VII: TEX. LAB. CODE § 21.256....................4

C. JPM Bank and JPMC....................8

D. FMLA Counts VIII–IX: 29 U.S.C. § 2617(c)....................8

E. Count X....................9

IV. COUNT III IS WITHIN THE SCOPE OF THE CHARGE....................10

V. THE COMPLAINT STATES EACH CLAIM....................11

A. Count I (Declaratory Relief)....................11

B. Counts II and IV (Sex and National-Origin Discrimination)....................12

C. Count III (Sexual Harassment)....................13

D. Counts V and VI (Disability Discrimination and Accommodation)....................14

E. Count VII (TCHRA Retaliation)....................16

F. Counts VIII and IX (FMLA)....................17

G. Count X (Tortious Interference with Prospective Relations)....................18

H. Count XI (Fraud and Fraudulent Nondisclosure)....................19

I. Count XII (Contract and Quantum Meruit)....................20

J. Count XIII (Civil Conspiracy) and Preemption....................21

VI. LEAVE TO AMEND AND CONCLUSION....................22

## TABLE OF AUTHORITIES

**Cases**

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017)....................15

*Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755 (Tex. 2018)....................16

*Amerisure Ins. Co. v. Thermacor Process, Inc.*, No. 4:20-cv-01089-P, 2021 WL 1056435 (N.D. Tex. Mar. 19, 2021)....................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................1

*Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500 (5th Cir. 2024)....................11

*Bailey v. Gardner*, 154 S.W.3d 917 (Tex. App.—Dallas 2005, no pet.)....................7

*Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965 (N.D. Tex. 2014)....................20

*B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276 (Tex. 2017)....................22

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019)....................20

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)....................16

*Campos v. Steves & Sons, Inc.*, 10 F.4th 515 (5th Cir. 2021)....................17

*Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467 (5th Cir. 2016)....................13

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019)....................1, 12, 13

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013)....................18

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)....................2

*Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352 (Tex. App.—Fort Worth 2005, no pet.)....................4, 7

*Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476 (5th Cir. 2016)....................15

*Downey v. Strain*, 510 F.3d 534 (5th Cir. 2007)....................17

*EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444 (5th Cir. 2013) (en banc)....................14

*EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606 (5th Cir. 2009)....................15

*Erickson v. Pardus*, 551 U.S. 89 (2007)....................1

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018)....................9

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017)....................22

*Fonseca v. USG Ins. Servs., Inc.*, 467 F. App’x 260 (5th Cir. 2012)....................7

*Forrest v. Vital Earth Res.*, 120 S.W.3d 480 (Tex. App.—Texarkana 2003, pet. denied)....................4

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) (en banc)................................2, 7, 9, 10

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).......................................................................2

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)................................................................................................................ 22

*Grizzle v. Tex. Commerce Bank, N.A.*, 38 S.W.3d 265 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002)...........................................21

*Hale v. King*, 642 F.3d 492 (5th Cir. 2011)......................................................................................22

*Hamilton v. Segue Software Inc.*, 232 F.3d 473 (5th Cir. 2000)..................................................19

*Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir. 2000)..........................................................................23

*Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289 (5th Cir. 2010)...............................5

*Hensgens v. Deere & Co.*, 869 F.2d 879 (5th Cir. 1989)................................................................2

*Hester v. Bell-Textron, Inc.*, 11 F.4th 301 (5th Cir. 2021)..........................................................17, 18

*In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732 (Tex. 2005)....................................................21

*In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010).......................................................4

*Innova Hosp. San Antonio, Ltd. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018).........................................................................................................20

*Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375 (5th Cir. 2008)........................................................13

*Jenkins v. Tahmahkera*, 151 F.4th 739 (5th Cir. 2025).......................................................................7

*Jones v. Alcoa, Inc.*, 339 F.3d 359 (5th Cir. 2003).............................................................................2

*Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157 (5th Cir. 2007).........................................14

*Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 670 S.W.3d 622 (Tex. 2023).....................7

*Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857 (Tex. 2000).........................................5

*Matter of KP Eng'g, L.P.*, 63 F.4th 452 (5th Cir. 2023)....................................................................21

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976).....................................................12

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)..................................................................8

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629 (Tex. 2012)..................................12

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)..........................................................9

*Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021).......................................................15

*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006)....................................................................10, 11

*Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297 (4th Cir. 2019).......................................14

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002)......................................................17

*Raj v. La. State Univ.*, 714 F.3d 322 (5th Cir. 2013)....12, 13

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)....16

*Rohde v. K.O. Steel Castings, Inc.*, 649 F.2d 317 (5th Cir. Unit A June 1981)....13

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)....10

*Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302 (5th Cir. 2019)....7

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007)....16

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)....1

*Taylor v. Charter Med. Corp.*, 162 F.3d 827 (5th Cir. 1998)....2

*Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46 (Tex. 2021)....16

*United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009 (5th Cir. 1976)....7

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375 (5th Cir. 2003)....19

*Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299 (Tex. 2009)....21

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010)....14, 22

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001)....18

*Watkins v. Tregre*, 997 F.3d 275 (5th Cir. 2021)....17

*Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997)....19

*Woods v. STS Servs., L.L.C.*, No. 25-10673 (5th Cir. Jan. 12, 2026)....13

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)....4

**Statutes and Rules**

9 U.S.C. §§ 401–402....1, 11

29 U.S.C. § 2617(c)....8

TEX. CIV. PRAC. & REM. CODE § 16.064....4

TEX. LAB. CODE § 21.051....8, 14

TEX. LAB. CODE § 21.125(a)....12, 15

TEX. LAB. CODE § 21.141(2)....14

TEX. LAB. CODE § 21.256....4, 5, 6

FED. R. CIV. P. 8(d)....21

FED. R. CIV. P. 9(b)....9, 19, 22, 23

FED. R. CIV. P. 12(b)(6) ........ 1, 6, 7, 22, 23

FED. R. CIV. P. 12(d) ........ 2, 23

FED. R. CIV. P. 15(a)(2) ........ 22, 23

**Regulations and Other Authorities**

29 C.F.R. § 825.300 ........ 9, 17

FINRA Rule 13206 ........ 2, 3, 4

Order Granting Approval of Proposed Rule Change, Exchange Act Release No. 34-59906, 74 Fed. Reg. 23462 (May 19, 2009) ........ 4

## I. INTRODUCTION AND SEQUENCING

Defendants move under Rule 12(b)(6) "subject to and in the alternative of" their motion to compel arbitration, which they state "should be decided first." DKT. 41 at 7 n.1. Plaintiff agrees with that order of decision. If the Court compels a claim to arbitration, the limitations and pleading challenges to that claim are for the arbitrator, whom the Binding Arbitration Agreement ("BAA") authorizes to dismiss claims "barred by the applicable statute of limitations." DKT. 40 App. 13 ¶ 7(e). If the Court denies DKT. 39, it should deny DKT. 41: limitations is an affirmative defense that the Complaint does not establish; Count III is within the scope of the charge; Defendants' merits arguments apply summary-judgment standards to a pleading; and no other claim in the case resolves the questions Count I presents. This brief is filed without waiver of Plaintiff's election under 9 U.S.C. § 402(a), his opposition to DKT. 39, or his alternative requests. Compl. ¶¶ 17, 108–10.

Docket citations use the page numbers in the ECF header. "DKT. 42 App." and "DKT. 40 App." are Defendants' appendices, "Pl. App." is Plaintiff's appendix, and "381 DKT." is the docket in No. 4:26-cv-00381-O-BP (N.D. Tex.).

## II. STANDARD

A complaint survives Rule 12(b)(6) if it pleads facts that, accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pro se complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). An employment-discrimination plaintiff "need not plead a prima facie case of discrimination," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); he must plausibly allege the two ultimate elements, an adverse employment action taken because of protected status. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019).

Limitations is an affirmative defense, and "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." *Frame v. City of Arlington*, 657 F.3d 215, 239–40 (5th Cir. 2011) (en banc). A complaint is subject to dismissal on that ground if its allegations "affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Id.* at 240; *accord Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). State law governs the tolling of state-law claims. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989).

The Court may consider the Complaint, documents it references that are central to the claims, and matters of public record. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Filings in another case may be noticed for the fact of what was filed. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–31 (5th Cir. 1998). Plaintiff cites the charge, Award, and AAA demand that Defendants attached (DKT. 42); the BAA that the Complaint references (Compl. ¶¶ 22, 92, 100, 105; DKT. 40 App. 8–14); and filings in this Court, for the fact of what was filed and stated. *See* Compl. ¶¶ 5, 85–87, 95–96. If the Court considers other matters outside the pleadings, the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

## III. COUNTS II–X ARE NOT SUBJECT TO DISMISSAL ON LIMITATIONS

### A. The Pleaded Chronology and FINRA Rule 13206(c)

The Complaint and documents on file establish these dates. Defendants terminated Plaintiff on December 1, 2023, and J.P. Morgan Securities LLC ("JPMS") filed the Form U5 on December 22, 2023. Compl. ¶¶ 79, 82. Plaintiff filed his charge on February 25, 2024. *Id.* ¶ 85; DKT. 42 App. 3–4. He filed a FINRA statement of claim naming JPMS on June 3, 2024, and amended it on August 12, 2024 to add JPMorgan Chase Bank, N.A. ("JPM Bank") and JPMorgan Chase & Co.

("JPMC"); both pleadings asserted sex and disability discrimination under the TCHRA. DKT. 42 App. 5; DKT. 40 App. 37, 65–67, 142, 171–73; *see* Compl. ¶¶ 4, 86 (describing the proceeding as filed against all three Defendants). On September 6, 2024, FINRA wrote that, "[a]bsent a post-dispute agreement to arbitrate or a court order compelling arbitration at FINRA, we do not have jurisdiction over these claims," and directed Plaintiff to delete them by September 20, 2024. DKT. 9-4 at 2 (Pl. App. 6). Plaintiff filed an amended statement of claim without them on October 11, 2024. Compl. ¶ 86; DKT. 42 App. 5–7. The Award was served on December 29, 2025. DKT. 42 App. 11. Plaintiff filed the AAA demand on February 10, 2026, Compl. ¶ 87; DKT. 41 at 9, and this action on August 3, 2026. DKT. 1; *see* Pl. App. 3–5 (chronology and intervals).

Defendants describe the June 3, 2024 statement of claim as "asserting business, tort, Form U5, contract, ERISA, and wage-related claims." DKT. 41 at 8. It also asserted the statutory claims. DKT. 40 App. 65–67. Defendants state that "no facts support" the doctrines the Complaint invokes, DKT. 41 at 13, but address only the AAA demand pleaded in ¶ 96, *id.* at 14, not its allegations that FINRA retained the statutory claims until directing their removal, that Defendants represented that another forum remained available, and that Plaintiff acted diligently.

Defendants state that FINRA Rule 13206(c) "governs arbitral eligibility." DKT. 41 at 14. Subsection (a) is the six-year eligibility rule. Subsection (c), titled "Effect of Rule on Time Limits for Filing Claim in Court," states that the rule "does not extend applicable statutes of limitations" and then provides: "However, when a claimant files a statement of claim in arbitration, any time limits for the filing of the claim in court will be tolled while FINRA retains jurisdiction of the claim." FINRA Rule 13206(c). In 2009 FINRA deleted the qualifier "where permitted by applicable law" from that sentence, explaining that the rule should be read to provide that "a firm or associated person has implicitly agreed to suspend any statute of limitations defense for the time

period that the matter was in FINRA's jurisdiction." Order Granting Approval of Proposed Rule Change, Exchange Act Release No. 34-59906, 74 Fed. Reg. 23462, 23463 (May 19, 2009). JPMS is a FINRA member. Compl. ¶ 24.

The TCHRA sex and disability claims now pleaded in Counts II, V, and VI were filed in FINRA against JPMS on June 3, 2024. DKT. 40 App. 65–67. JPMS responded on August 13, 2024 that it "does not agree to arbitrate Claimant's statutory employment discrimination claims in this forum." DKT. 9-5 at 2 (emphasis omitted) (Pl. App. 8). From June 3, 2024 it was 95 days to FINRA's September 6 letter, 109 days to the September 20 deadline, and 130 days to the October 11 amended pleading. Pl. App. 5. Whether and for how long FINRA "retain[ed] jurisdiction" of those claims is not resolved by the pleadings. *Compare* Compl. ¶ 96, *with* DKT. 42 App. 7. Rule 13206(c) suspends the period as to JPMS for that time. Timeliness of the TCHRA Counts does not depend on it; it rests on the facts in Part III.B, which apply to every Defendant and every TCHRA Count.

### B. TCHRA Counts II–VII: TEX. LAB. CODE § 21.256

Section 21.256's two-year period is "mandatory but not jurisdictional." *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010) (holding suit barred where TEX. CIV. PRAC. & REM. CODE § 16.064 did not apply). It is a defense with which "compliance can be waived," *id.* at 307, and the court cited *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), for the rule that a non-jurisdictional filing requirement, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *United Servs. Auto. Ass'n*, 307 S.W.3d at 311. Under Texas law, estoppel bars a limitations defense when "the defendant engages in conduct that induces the plaintiff to forego a timely suit regarding a cause of action that the plaintiff knew existed." *Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352, 358 (Tex. App.—Fort Worth 2005, no pet.) (cited at DKT. 41 at 14); *see Forrest v. Vital Earth Res.*, 120 S.W.3d 480, 486–88 (Tex. App.—Texarkana

2003, pet. denied) (reversing summary judgment for employer that had told employees they had three years to sue). Quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). As a defense to limitations it requires "a statement or conduct by the opposing party *prior to the running of the limitations period* waiving its right to assert that bar." *Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289, 299 (5th Cir. 2010) (rendering judgment where the only pre-expiration document did "not speak to the limitations period").

The Complaint invokes those doctrines, Compl. ¶¶ 95–96, 105, and the conduct on which they rest preceded February 25, 2026. The BAA, which Defendants ask the Court to enforce, refers to "arbitration as the sole and exclusive forum for all Covered Claims within its scope," DKT. 40 App. 13 ¶ 8, and provides that a Covered Party subject to FINRA's arbitration requirements "who wishes to pursue arbitration of a Covered Claim, must file such Covered Claim with AAA." *Id.* at 11 ¶ 6. It then addresses the limitations period:

> [W]hether or not a Covered Party chooses to file with administrative agencies, his/her arbitration must still be initiated as an arbitration within the applicable administrative, statutory or judicial filing time frame, as required by law, and the demand for arbitration must be received at the address above within the time period allowed pursuant to the statute, regulation or other law applicable to the alleged act or omission giving rise to the dispute.

*Id.* The same paragraph states that nothing in the BAA "releases a Covered Party from any obligation to comply with timely filing requirements and statutes of limitations" or is "intended or should be construed to shorten or extend the statute(s) of limitations." *Id.* Plaintiff does not contend that ¶ 6 extends § 21.256. Unlike the document in *Hartford*, ¶ 6 speaks to the limitations period: it measures the timeliness of a Covered Claim by the date arbitration is initiated. Before the period ran, JPMS told FINRA that Plaintiff's "AAA Agreement indicates that Claimant and his former employer – which is JPMorgan Chase Bank, N.A. – agreed to arbitrate certain claims before a

single arbitrator of the American Arbitration Association," DKT. 9-5 at 3 (Pl. App. 9), and FINRA informed Plaintiff that the agreement "specifies that statutory employment discrimination claims are to be arbitrated at AAA." DKT. 9-4 at 2 (Pl. App. 6).

Plaintiff filed the AAA demand on February 10, 2026, fifteen days before the second anniversary of the charge. Compl. ¶¶ 87, 96; DKT. 41 at 9. The demand attaches the BAA, identifies February 25, 2026 as the § 21.256 deadline, states that "[t]his filing is made on or before that date," and states its purpose "to preserve Claimant's statutory and tort claims—and to toll the applicable statute of limitations." DKT. 42 App. 14 ¶ 1, 16 ¶¶ 9, 10(iii). It asserts TCHRA claims for sex discrimination and sexual harassment, disability discrimination and failure to accommodate, and retaliation against all three Defendants. *Id.* at 20 ¶ 30.

Defendants' later statements are consistent with their earlier position. On May 26, 2026 they told the Court in No. 4:26-cv-00381-O-BP that Plaintiff "has another forum where he is arbitrating his claims against Chase and JPMC," so that "the fact that FINRA did not have jurisdiction over JPMC and Chase did not bar Biering from seeking relief against them." 381 DKT. 41 at 15 n.5 (Pl. App. 11). They now ask this Court to compel arbitration of "these same claims" in the AAA, DKT. 39 at 7–8, 28, while asserting here that the period for those claims expired on February 25, 2026, fifteen days after the demand. DKT. 41 at 11, 14.

On those facts the defense cannot be resolved under Rule 12(b)(6). Defendants' agreement required Covered Claims to be filed with the AAA and measured their timeliness by the date arbitration is initiated; Plaintiff filed his demand there within the statutory period; and Defendants maintain in DKT. 39 that these claims must be arbitrated there. Whether Defendants may also assert that the period ran while the claims were pending in that forum turns on what they represented before the period ran, whether Plaintiff relied on it, and his diligence. Those are questions of fact,

and limitations "is an issue that must be resolved through discovery and summary judgment or trial." *Frame*, 657 F.3d at 240. Defendants' Texas authority was decided on a summary-judgment record. *Dean*, 166 S.W.3d at 358–61.

The pleaded dates show diligence. Compl. ¶ 96. Plaintiff filed the charge 86 days after his termination, the FINRA claim 99 days after the charge, and the AAA demand 43 days after the Award. Pl. App. 5. Defendants did not oppose the AAA's holding the arbitration in abeyance "but only until the district court rules" in No. 4:26-cv-00381-O-BP. 381 DKT. 50-1 at 1–2; *see* DKT. 9-7 at 2; DKT. 9-8. That ruling issued on Friday, July 31, 2026, and Plaintiff filed this action on Monday, August 3. Compl. ¶ 87; DKT. 1. *Compare Jenkins v. Tahmahkera*, 151 F.4th 739, 2025 WL 2396746, at *6–7 (5th Cir. 2025) (affirming Rule 12(b)(6) dismissal where the complaint showed that the plaintiff had not acted diligently).

Texas applies equitable tolling "sparingly," *Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 670 S.W.3d 622, 628 (Tex. 2023), but recognizes it where a claimant "was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 312 (5th Cir. 2019) (quoting *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.)). *Levinson*, which declined to toll for the pendency of an earlier suit dismissed for a procedural defect, did not involve inducement or address estoppel.

Defendants rely on *Fonseca v. USG Insurance Services, Inc.*, 467 F. App'x 260 (5th Cir. 2012). DKT. 41 at 14. *Fonseca* is unpublished and "is not precedent." 467 F. App'x at 260 n.* (Pl. App. 12). It reviewed for abuse of discretion a summary-judgment ruling that declined equitable tolling. *Id.* at 261 (Pl. App. 13). The statement on which Defendants rely was, as the panel noted, "dicta" from a Miller Act case. *Id.* (citing *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1013 (5th Cir. 1976)). The AAA had declined to

administer the arbitration, the plaintiff had "ample time both before and after the AAA's refusal" to sue, and the record held "no evidence that she was misled by defendants." *Id.* (Pl. App. 13–14). The panel did not consider Texas estoppel, a contract term like ¶ 6, or a defendant moving to compel the same claims to the arbitration the plaintiff had initiated.

Defendants note that the AAA demand does not name national origin. DKT. 41 at 9 n.3, 14 n.5. The BAA requires a demand to state "the nature of the dispute, including the alleged act or omission at issue," not each legal theory. DKT. 40 App. 11 ¶ 6(a). The demand pleads § 21.051 discrimination arising from the investigation, the termination, and the Form U5, and states that its claims "track" the charge, which alleges that Plaintiff was treated differently from a co-worker "of a different national origin." DKT. 42 App. 3, 20 ¶¶ 29–30. Whether the demand preserved Count IV is not resolvable on the pleadings.

### C. JPM Bank and JPMC

As to JPM Bank and JPMC, timeliness of the TCHRA Counts rests on Part III.B. The BAA defines "JPMorgan Chase" and the "Firm" as "JPMorgan Chase & Co. and all of its direct and indirect subsidiaries," so ¶ 6 is the agreement of each Defendant. DKT. 40 App. 9. Neither entity submitted to FINRA arbitration, and the panel "made no determination with respect to the claims against" them. DKT. 42 App. 7. The AAA demand names both, *id.* at 14, 20, and both now move to compel arbitration there. DKT. 39 at 28.

### D. FMLA Counts VIII–IX: 29 U.S.C. § 2617(c)

An FMLA action for a willful violation "may be brought within 3 years of the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(2). A violation is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiff requested FMLA leave for his own serious health condition on October 6, 2023; the alleged

retaliatory acts occurred between October 26 and December 22, 2023. Compl. ¶¶ 52, 60, 66, 72, 78–79, 82. The Complaint was filed on August 3, 2026, within three years of each of those events. Plaintiff relies on the March 2023 events, *id.* ¶¶ 48–50, as evidence of willfulness. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (prior acts may be used "as background evidence in support of a timely claim").

Defendants argue that Plaintiff pleads willfulness by label. DKT. 41 at 12–13. Willfulness bears only on the limitations defense, which a plaintiff need not anticipate, *Frame*, 657 F.3d at 239–40, and "knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b); *see Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018). The Complaint also pleads facts. In March 2023, management and Human Resources told Plaintiff that taking FMLA leave would prohibit him from communicating with clients. Compl. ¶¶ 48–49. On October 6, 2023 Plaintiff "expressly raised FMLA leave for his own serious health condition" with Human Resources. *Id.* ¶ 52. JPM Bank did not grant the leave, issue an eligibility, rights-and-responsibilities, or designation notice, or request a certification. *Id.* ¶ 53; *see* 29 C.F.R. § 825.300(b)(1), (c)(1), (d)(1). Three investigative tracks opened within three weeks, and leave, a zero incentive-compensation decision, termination, and the Form U5 followed. Compl. ¶¶ 60, 72, 78–79, 82. Those facts permit the inference that Defendants knew the FMLA applied to Plaintiff's request and disregarded it. The two Fifth Circuit decisions Defendants cite on willfulness are unpublished summary-judgment affirmances. DKT. 41 at 12–13.

**E. Count X**

Under the rule Defendants state, a claim for interference with prospective relations accrues when the interference ends the negotiations and harm results. DKT. 41 at 13. Defendants identify no accrual date other than the December 22, 2023 Form U5 filing. *Id.* The Complaint pleads that Merrill Lynch "did not proceed" after that filing and that Plaintiff's clients were retained by

Defendants; it states no date for either event. Compl. ¶¶ 84, 157, 159. A defense that depends on an unpleaded accrual date is not established by the Complaint's allegations. *Frame*, 657 F.3d at 240. To the extent the claim accrued on or after February 10, 2024, the AAA demand, which asserts tortious interference against all Respondents, DKT. 42 App. 20–21, was filed within two years, and Part III.B applies. Defendants do not challenge the timeliness of Counts XI–XIII.

## IV. COUNT III IS WITHIN THE SCOPE OF THE CHARGE

A claim is exhausted if it falls within "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Because most charges are prepared pro se, a charge is construed liberally and read for "its substance rather than its label"; a plaintiff need not "check a certain box or recite a specific incantation." *Id.* at 788–89, 792.

Plaintiff's charge alleges that Defendants investigated him, and not the female co-worker, over a consensual relationship; that he complained about that difference; that Defendants declined to consider his evidence that the conduct was consensual and reciprocated, terminated him for violating the anti-harassment policy, and would not tell him the details; that he "was treated differently from a female, non-disabled, and of a different national origin co-worker engaging in same actions"; and that the Form U5 was marked "discharged" in retaliation. DKT. 42 App. 3–4; Compl. ¶¶ 85, 89.

Count III alleges that the harassment was Defendants' false, sex-specific characterization of that conduct, which began with the October 26, 2023 intake, was repeated to the decision-makers on October 27, and was adopted in the termination and the Form U5. Compl. ¶¶ 67, 70–71, 118–22. An investigation of the charged events—why Defendants investigated only the male participant in

reciprocal conduct and terminated him under the anti-harassment policy—would reach how Defendants characterized his conduct and to whom. The scope test asks what investigation the charge would reasonably trigger, not what the charging party could then prove. *Pacheco*, 448 F.3d at 792. In *Ayorinde v. Team Industrial Services Inc.*, 121 F.4th 500, 509–10 (5th Cir. 2024), decided on summary judgment, the charges alleged that a supervisor refused to readminister a practical test, failed to forward assessment results, and refused to call the plaintiff for jobs. Plaintiff's charge describes the conduct on which Count III rests: Defendants' treatment of consensual, reciprocal conduct as a violation of the anti-harassment policy by the male participant alone. DKT. 42 App. 3.

## V. THE COMPLAINT STATES EACH CLAIM

### A. Count I (Declaratory Relief)

Defendants argue that Count I duplicates their motion to compel. DKT. 41 at 10–11. The rule they invoke is discretionary and compares a declaratory claim with the other claims in the case: a declaratory claim is redundant "if resolution of the affirmative claims and counterclaims before the Court would resolve all questions that the declaratory judgment action raises." *Amerisure Ins. Co. v. Thermacor Process, Inc.*, No. 4:20-cv-01089-P, 2021 WL 1056435, at *7 (N.D. Tex. Mar. 19, 2021) (Pl. App. 30). *Amerisure* denied both motions to dismiss. Pl. App. 31, 35. Defendants' motion to compel is not a claim in the case, and no other claim presents the questions in Count I: the applicability of 9 U.S.C. §§ 401–402 and the validity and enforceability of the agreements, which § 402(b) assigns to the Court; waiver and estoppel; and the alternative relief concerning the AAA matter. Compl. ¶¶ 99–110, 181(a)–(i). If DKT. 39 were withdrawn, or denied on a ground that does not reach § 402, those questions would remain. The Magistrate Judge has stated that Plaintiff may "request early resolution of his claim for declaratory relief" in the Joint Status Report. DKT. 34. If

the Court were to find Count I redundant after deciding DKT. 39, the disposition would be dismissal without prejudice.

### B. Counts II and IV (Sex and National-Origin Discrimination)

Defendants argue that the female participant is not a valid comparator and that the Dallas comparator is not described in enough detail. DKT. 41 at 15–18. A court "inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss," and scrutiny of whether co-workers were "really 'similarly situated'" is "more suited to the summary judgment phase." *Cicalese*, 924 F.3d at 767–68; *see Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The two federal decisions Defendants cite on the Count II comparator were decided on summary judgment. DKT. 41 at 16. Under the TCHRA, which Title VII precedent guides, *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012), a plaintiff need show only that the protected characteristic was "a motivating factor." TEX. LAB. CODE § 21.125(a).

The Complaint alleges that two employees of different sexes participated in the same consensual, reciprocal conduct; that a senior Human Resources executive described "a very serious allegation of sexual assault by the male subject"; that only Plaintiff was investigated, placed on leave, denied incentive compensation, terminated, and reported on a Form U5 marked "Discharged"; and that the female participant was not investigated or disciplined and received favorable treatment. Compl. ¶¶ 67, 70, 72–73, 78–79, 82, 113–15. Defendants' description of her as "the target of his harassment," DKT. 41 at 16, contradicts the Complaint, which alleges consensual and reciprocal conduct and must be taken as true. Compl. ¶ 73. A complaint alleging that participants in the same misconduct were disciplined differently because of a protected characteristic states a Title VII claim, and a rule requiring the plaintiff to plead "the degree of similarity" with particularity "too narrowly constricts the role of the pleadings." *McDonald v.*

*Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 & n.11 (1976); *see Rohde v. K.O. Steel Castings, Inc.*, 649 F.2d 317, 322 (5th Cir. Unit A June 1981) ("What is relevant is that two employees are involved in or accused of the same offense and are disciplined in different ways.").

Count IV pleads that Plaintiff is Brazilian-American and that a non-Brazilian, non-disabled male in a comparable senior position in the Dallas office, subject to the same promotion metrics and compensation pool, engaged in materially the same consensual conduct with a female colleague, was not investigated, disciplined, terminated, or reported, and was promoted. Compl. ¶¶ 20, 56–57, 125–27. The charge identified him. DKT. 42 App. 3. The details Defendants demand —his decision-makers and management's knowledge of his conduct—are in Defendants' possession. In *Chhim v. University of Texas at Austin*, 836 F.3d 467, 471 (5th Cir. 2016), on which Defendants rely, the plaintiff pleaded "no facts that suggest the applicant hired by the University was less qualified than Chhim or was similarly situated." Count IV pleads those facts. It pleads each element even under *Woods v. STS Services, L.L.C.*, No. 25-10673, slip op. at 3 (5th Cir. Jan. 12, 2026), which lists the prima facie elements as matters a plaintiff must plead; to the extent *Woods* conflicts with *Raj* and *Cicalese*, the earlier decisions control. *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

**C. Count III (Sexual Harassment)**

Defendants argue that "being accused of sexual harassment is not itself sexual harassment." DKT. 41 at 17. Count III rests on Defendants' own statements. Management submitted the intake, which stated that management believed Plaintiff may have made inappropriate sexual advances toward a female analyst. Compl. ¶ 67. A senior Human Resources executive then wrote to Employee Relations leadership of "a very serious allegation of sexual assault by the male subject towards a female employee" and recommended leave. *Id.* ¶ 70. No investigator adopted a finding of sexual assault, and the characterization was not corrected in the records circulated to the

decision-makers. *Id.* ¶ 71. The conduct was consensual and reciprocal, and only the male participant was so characterized. *Id.* ¶¶ 73, 119. The characterization reached Plaintiff's colleagues, clients, industry contacts, and family members, and leave, exclusion from client contact, termination, and the Form U5 followed. *Id.* ¶¶ 72, 79, 82, 120–21.

The TCHRA defines sexual harassment to include "verbal or physical conduct of a sexual nature" that has "the purpose or effect of unreasonably interfering with an individual's work performance" or of "creating an intimidating, hostile, or offensive working environment." TEX. LAB. CODE § 21.141(2)(C)–(D). An employer's circulation of a false sexual rumor about an employee, and its sanction of the employee based on it, can be harassment because of sex where the rumor rests on a sex-based stereotype. *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 299–300, 303–05 (4th Cir. 2019) (reversing dismissal of hostile-environment claim); *see* Compl. ¶ 119. In this Circuit a plaintiff "may establish a sexual harassment claim with evidence of sex-stereotyping," *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 456 (5th Cir. 2013) (en banc), and "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment." *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007). Count III is also pleaded under § 21.051, Compl. ¶¶ 117–23, and Texas treated sexual harassment as "a recognized cause of action under Title VII and the TCHRA" before §§ 21.141–.142 were enacted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010). Count III states a sexual-harassment claim under either provision.

### D. Counts V and VI (Disability Discrimination and Accommodation)

Defendants argue that Count V pleads causation in conclusory terms and that the investigation is an intervening explanation. DKT. 41 at 18. The Complaint alleges that Plaintiff, a service-connected disabled veteran, disclosed his condition to his manager and Human Resources on September 7, September 14, and October 6, 2023; that he told his managers he was being treated

differently because of his disability; that three investigative tracks opened between October 17 and October 26; that the persons who received his disclosures opened the escalation, decided the disposition, and executed the termination; and that the expense inquiry closed as "Not Supported." Compl. ¶¶ 19, 46–47, 52, 55, 60, 68, 130–32. An unlawful practice is established when disability "was a motivating factor for an employment practice, even if other factors also motivated the practice." TEX. LAB. CODE § 21.125(a). Under that standard the investigation Defendants cite does not negate a disability motive as a matter of pleading. Defendants' own statement of the elements requires no comparator, DKT. 41 at 18, and in *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021), the complaint made only "a conclusory allegation" of disability discrimination.

For Count VI, an employee need not use the words "reasonable accommodation"; he must explain that the adjustment he seeks "is for a medical condition-related reason," after which the employer must engage in an interactive process. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Time off can be a reasonable accommodation. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481–82 (5th Cir. 2016). Plaintiff told his manager on September 7, 2023, "We need to figure something out"; asked Human Resources on September 14 for contact with the firm's EAP resource; and on October 6 contacted Human Resources about his health, raised FMLA leave, "and requested reasonable accommodation." Compl. ¶ 52. JPM Bank granted no leave, provided no accommodation, and did not engage in an interactive process. *Id.* ¶¶ 53, 137. *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017), holds that a request for FMLA leave alone is not an accommodation request; the Complaint pleads a request for accommodation in addition to FMLA leave. Whether the EAP referral Defendants cite, DKT. 41 at 19 n.6, satisfied the duty is a merits question.

**E. Count VII (TCHRA Retaliation)**

Protected activity includes opposing a discriminatory practice and filing an internal complaint that alerts the employer "to the employee's reasonable belief that unlawful discrimination is at issue." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786 (Tex. 2018); *see Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 59–60 (Tex. 2021). Plaintiff told his managers on multiple occasions that he believed he was being treated differently because of his disability, which identifies the protected characteristic. Compl. ¶ 55. The Complaint also pleads accommodation requests on September 7, September 14, and October 6, 2023, and an escalation that opened within three weeks of the last. *Id.* ¶¶ 141–42. On December 7, 2023 Plaintiff submitted a retaliation complaint through the Code of Conduct reporting line. *Id.* ¶ 80. The charge states that he complained that Defendants had investigated him and not the female co-worker. DKT. 42 App. 3. Between December 6 and December 20 he objected in writing to a "Discharged" Form U5. Compl. ¶ 81. JPMS filed that Form U5 on December 22, fifteen days after the December 7 complaint. *Id.* ¶¶ 82, 142. Causation at the prima facie stage "can be satisfied merely by proving close timing." *Clark*, 544 S.W.3d at 782.

Defendants argue that Plaintiff had already been terminated on December 7. DKT. 41 at 20. The anti-retaliation provision protects former employees, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997), and "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). That a Form U5 must be filed does not dictate what it says; the confirmed Award found this one "inaccurate." Compl. ¶ 12; DKT. 42 App. 8. *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), is a summary-judgment decision at the pretext stage, and it recognizes that very close temporal proximity can establish a prima facie case.

**F. Counts VIII and IX (FMLA)**

Count VIII pleads each element of interference: eligibility, a covered employer, entitlement to leave, notice, and denial. Compl. ¶¶ 52–53, 146–48; *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021). Defendants argue that the Complaint shows no denial and no prejudice. DKT. 41 at 21. Paragraph 53 alleges that JPM Bank "did not grant the requested leave" and issued none of the required notices. Failure to follow the notice requirements "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). Prejudice is pleaded: Plaintiff did not receive the leave he requested, continued working while his health deteriorated, and three weeks later was removed from work and then terminated, which ended his ability to take protected leave. Compl. ¶¶ 72, 79, 149; *see Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Downey v. Strain*, 510 F.3d 534, 542 (5th Cir. 2007).

For Count IX, Defendants cite *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 525 (5th Cir. 2021), for the proposition that "requesting FMLA leave is not protected activity." DKT. 41 at 22. The passage they cite concerns retaliation under Chapter 21 of the Texas Labor Code: "There is no authority that taking FMLA leave is a protected activity under this Texas statute." *Campos*, 10 F.4th at 525–26. On the FMLA claim, *Campos* reversed summary judgment for the employer and held that a one-month interval was "close enough in time to create a causal connection." *Id.* at 527–29. A plaintiff states an FMLA retaliation claim by alleging that "the adverse decision was made because of the plaintiff's request for leave." *Hester*, 11 F.4th at 305; *see Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021). Count VII does not rest on FMLA leave, so the Chapter 21 passage in *Campos* does not apply to it.

The Complaint pleads causation. Plaintiff requested leave on October 6, 2023; coordination between his manager and Human Resources began by about October 9; and the Rapid Response

matter, leave, the zero incentive-compensation decision, and termination followed 20, 21, 41, and 56 days after the request. Compl. ¶¶ 52, 60, 62, 66, 72, 78–79; Pl. App. 5. The reasons Defendants offer for the termination are "not fatal" at the pleading stage, because a plaintiff "is not required to allege that his protected FMLA activity was the sole cause." *Hester*, 11 F.4th at 305–06.

**G. Count X (Tortious Interference with Prospective Relations)**

Count X requires a reasonable probability of a business relationship, a conscious desire to prevent it, independently tortious or unlawful conduct, proximate cause, and damage. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Defendants first argue that JPMS, not JPM Bank or JPMC, filed the Form U5. DKT. 41 at 22–23. The Complaint alleges that JPMC personnel received the allegations, conducted the investigations, recommended the disposition, approved or executed the termination, "and supplied or approved the information used in the Form U5," and that JPM Bank employed Plaintiff and administered his separation. Compl. ¶¶ 34, 36.

Second, conduct is independently tortious if it "would be actionable under a recognized tort," and the plaintiff need not "prove an independent tort"; a defendant who makes fraudulent statements about the plaintiff to a third person is liable. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). The Complaint alleges that Defendants' own system recorded the separation as voluntary, that Plaintiff objected in writing to a "Discharged" marking before it was filed, that the Form U5 was nonetheless marked "Discharged," and that the confirmed Award found it inaccurate and timed to hinder his transfer. Compl. ¶¶ 12, 75, 81–82. Those facts permit the inference that Defendants knew the "Discharged" marking was false when they supplied or approved it. The panel did not find "the reasons for termination given in the Form U-5 to be 'defamatory,'" found the Form U5 "inaccurate," and "made no determination" as to JPM Bank and

JPMC. DKT. 42 App. 7–8. Those statements do not resolve whether JPM Bank and JPMC personnel supplied a marking they knew to be false.

Third, Defendants argue that the Complaint does not explain how the Form U5 caused Merrill Lynch's decision, citing ¶ 158. DKT. 41 at 24. Paragraph 84 alleges that Merrill Lynch did not proceed with the signed onboarding and that "[t]he reason given was the U5 and its timing."

**H. Count XI (Fraud and Fraudulent Nondisclosure)**

Rule 9(b) requires the "time, place, and contents of the false representations," the identity of the speaker, and why the statements were fraudulent. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–79 (5th Cir. 1997). The Complaint identifies the content (the resignation was accepted and the notice period was being administered in the ordinary course through December 26, 2023); the period (October 28 to December 1, 2023); the speakers by entity and function (JPM Bank and JPMC personnel administering the separation); and why the statements were false (a termination-related disposition had already been recorded or prepared, JPMC's Global Head of Human Resources was "hoping to wrap" the matter "with a term" on October 27, and the zero incentive-compensation decision was made by November 16). Compl. ¶¶ 74, 78, 162–63. The same facts support the inference that Defendants did not intend to administer the notice period through December 26 when they said so. *See* DKT. 41 at 25 n.9. The Complaint pleads that the proof lay in internal communications produced only under motions to compel in 2025, Compl. ¶ 167, and the standard is relaxed where the facts "are peculiarly within the perpetrator's knowledge." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003).

On the duty to disclose, Defendants state that none of the recognized duty-triggering situations "arise in an at-will employment relationship." DKT. 41 at 26. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 481 (5th Cir. 2000), held only that employment is not a fiduciary relationship and that on its facts "nothing at all was disclosed." Texas recognizes a duty where a

defendant "made a partial disclosure that created a false impression" or "voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019). Paragraph 164 pleads that trigger: Defendants spoke to Plaintiff about the status of his separation and withheld the disposition already prepared. Reliance and causation are pleaded: Plaintiff stayed in the notice period and deferred his transition, and during that period Defendants terminated him and filed the Form U5, after which Merrill Lynch did not proceed. Compl. ¶¶ 165–66. Count XI does not depend on a guarantee of employment through December 26; it alleges that Defendants represented that the notice period was being administered in the ordinary course after a termination disposition had been prepared. *Id.* ¶¶ 162–63.

**I. Count XII (Contract and Quantum Meruit)**

Defendants argue that the Complaint identifies no contract provision, relying on *Baker v. Great Northern Energy, Inc.*, 64 F. Supp. 3d 965, 971–72 (N.D. Tex. 2014). DKT. 41 at 27–28. The Fifth Circuit has since held that a district court "erred" in requiring a plaintiff to "identify a specific provision of the contract that was allegedly breached," where the plaintiff had sought the contract documents and had not received them; pleading valid contracts, performance, breach, and damages sufficed. *Innova Hosp. San Antonio, Ltd. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731–32 (5th Cir. 2018). Plaintiff requested his personnel records and "the operative notice-period terms" through Defendants' human-resources portal; Defendants denied the personnel-file request on December 22, 2023 and directed him to subpoena records. Compl. ¶ 93. The Complaint pleads the notice-period arrangement and the annual non-ERISA incentive arrangements for his role, his performance, the November 16, 2023 "in for zero IC" determination made before any investigative finding, and nonpayment. *Id.* ¶¶ 75, 78, 169–70. A promise of incentive pay to an at-will employee

"became enforceable upon the employees' performance." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 304 (Tex. 2009).

Defendants also argue that ¶ 75 shows no breach because the notice-period arrangement ran "unless Defendants ended the relationship earlier." DKT. 41 at 28. Paragraph 75 describes the duration of employment. Paragraph 169 pleads an obligation to pay through December 26, 2023 in exchange for Plaintiff's availability and compliance, and ¶ 170 pleads compensation earned on 2023 production. Whether early termination ended either obligation, and whether the arrangements left Defendants discretion, depends on terms that are not before the Court.

Quantum meruit is pleaded in the alternative. Compl. ¶ 171; FED. R. CIV. P. 8(d)(2)–(3). "A party to a contract may . . . seek alternative relief under both contract and quasi-contract theories." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). In *Matter of KP Engineering, L.P.*, 63 F.4th 452, 456–57 (5th Cir. 2023), the plaintiff's own pleading established an express contract covering the services and asserted no contract claim. Here Defendants contend that the Complaint identifies no enforceable contract. DKT. 41 at 27–28. The services are identified: the originations and revenue described in ¶¶ 40–43 and the transactions Plaintiff closed while on shortened parental leave, the benefit of which Defendants retained. Compl. ¶¶ 50, 171.

**J. Count XIII (Civil Conspiracy) and Preemption**

Count XIII is pleaded in the alternative, "only to the extent Defendants are treated as separate legal actors," which is their position. Compl. ¶ 173; FED. R. CIV. P. 8(d)(2)–(3). Texas courts of appeals are divided on whether a parent and its wholly owned subsidiary can conspire; the Dallas court, following "the majority of our sister courts of appeals that have considered this issue," held that they can. *Grizzle v. Tex. Commerce Bank, N.A.*, 38 S.W.3d 265, 284 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002). The underlying torts are Counts X and XI. The Complaint pleads the object, overt acts, and facts showing a meeting of the

minds, including internal discussion of whether Defendants could "fall back on performance," the JPMC executive's "hoping to wrap" the matter "with a term," and the "Urgent Request: Josh Biering Book" email sent the day after the resignation. Compl. ¶¶ 65, 74, 77, 174–75; *see First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). To the extent Count XIII rests on Count XI, Part V.H answers Defendants' Rule 9(b) footnote. DKT. 41 at 30 n.10.

Defendants' preemption footnote cites *Waffle House*. DKT. 41 at 23 n.8. "Where the gravamen of a plaintiff's case is TCHRA-covered harassment, the Act forecloses common-law theories predicated on the same underlying sexual-harassment facts." *Waffle House*, 313 S.W.3d at 813. The test is gravamen and "a clear repugnance" between the statutory and common-law claims, *id.* at 802, and the Texas Supreme Court held an assault claim not foreclosed "even when predicated on the same facts that would presumably constitute a sexual-harassment claim." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 285 (Tex. 2017). The gravamen of Counts X–XIII is interference with a move to a competitor, misrepresentation about the separation, and unpaid compensation.

## VI. LEAVE TO AMEND AND CONCLUSION

A court should not dismiss a pro se complaint under Rule 12(b)(6) "without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case." *Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011); *see* FED. R. CIV. P. 15(a)(2); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Complaint has not been amended. If the Court finds any Count deficient, Plaintiff requests leave to amend and would plead: the BAA's terms and his reliance on them in filing the AAA demand; the filing and service of that demand; Defendants' statements of August 13, 2024 and May 26, 2026

and the AAA abeyance correspondence; the dates of the client losses pleaded in Count X; the dates, recipients, and content of the complaints pleaded in ¶¶ 55 and 80; the accommodation requested; and the Rule 9(b) particulars, *see Hart v. Bayer Corp.*, 199 F.3d 239, 247–48 n.6 (5th Cir. 2000), filing any confidential document as DKT. 36 directs.

Plaintiff requests that the Court:

(1) **DECIDE** Defendants' Motion to Compel Arbitration (DKT. 39) before DKT. 41;

(2) **DENY** Defendants' 12(b)(6) Motion to Dismiss (DKT. 41);

(3) alternatively, as to any Count the Court finds deficient, **GRANT** leave to amend under FED. R. CIV. P. 15(a)(2) rather than dismiss with prejudice; and

(4) **GIVE** notice and a reasonable opportunity to respond under FED. R. CIV. P. 12(d) before considering any matter outside the pleadings that is not identified in Part II.

Respectfully submitted,

Joshua David Sappi Biering

**JOSHUA DAVID SAPPI BIERING**
Plaintiff, *Pro Se*
4635 Washburn Avenue
Fort Worth, Texas 76107
(682) 218-6738
jdsb@bierfam.com

Dated: September 20, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2026, a true and correct copy of the foregoing brief was served upon counsel of record for all Defendants via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

Joshua David Sappi Biering

**Joshua David Sappi Biering**
Plaintiff, *Pro Se*